# IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN**<br>2127 Espey Court, Suite 204<br>Crofton, Maryland 21114<br><br>and<br><br>**CLAUDIA ENGELHORN, AS TRUSTEE OF THE WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**<br>2127 Espey Court, Suite 204<br>Crofton, Maryland 21114<br><br>and<br><br>**WHITE PEARL, LLC**<br>1209 Orange Street<br>Wilmington, Delaware 19801<br><br>*Plaintiffs*<br><br>v.<br><br>**ERIK D. BOLOG**<br>9312 Chesley Road<br>Potomac, Maryland 20854<br><br>and<br><br>**ERIK D. BOLOG, AS TRUSTEE OF THE JAREB IRREVOCABLE TRUST AGREEMENT DATED OCTOBER 11, 2021**<br>The Bolog Law Group<br>1763 Columbia Road, NW, Suite 450N<br>Washington, DC 20018<br><br>and<br><br>**WHITEFORD, TAYLOR & PRESTON, LLP**<br>Seven St. Paul Street<br>Suite 1900<br>Baltimore, Maryland 21202 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No.:**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Serve On:                                          )
Resagent, Inc.                                     )
Seven St. Paul Street                              )
Suite 1900                                         )
Baltimore, Maryland 21202                          )
                                                   )
and                                                )
                                                   )
**MICHAEL POSTAL**                                 )
4302 Broken Arrow Court                            )
Clinton, Maryland 20735                            )
                                                   )
and                                                )
                                                   )
**POJO LAPLATA LLC**                               )
4302 Broken Arrow Court, Apt. 606                  )
Clinton, Maryland 20735                            )
    Serve On:                                      )
    Anjon Jones                                    )
    4302 Broken Arrow Court                        )
    Clinton, Maryland 20735                        )
                                                   )
and                                                )
                                                   )
**DARNESTOWN ROAD, INC.**                          )
8938 Abbey Terrace                                 )
Potomac, Maryland 20854                            )
    Serve On:                                      )
    Erik D. Bolog                                  )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )
**SCIENCE PARK ASSOCIATES, LLC**                   )
6701 Democracy Boulevard                           )
Suite 515                                          )
Bethesda, Maryland 20717                           )
    Serve On:                                      )
    Erik D. Bolog, Esq.                            )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )

**SWAIN LANDING LAPLATA JC, LLC**    )
4302 Broken Arrow Court    )
Clinton, Maryland 20735    )
    Serve On:    )
    Anjon Jones    )
    4302 Broken Arrow Court    )
    Clinton, Maryland 20735    )
    )
    and    )
    )
**TENACITY INVESTMENTS, LLC**    )
7333 New Hampshire Avenue    )
Unit 103    )
Takoma Park, Maryland 20912    )
    **Serve On:**    )
    Mike Postal    )
    7333 New Hampshire Avenue    )
    Unit 103    )
    Takoma Park, Maryland 20912    )
    )
    *Defendants*.    )

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

## PARTIES

1.      That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee. Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3

2.      That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust").  Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3.      That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.      That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.      That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia.  Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021.  Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854.  Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.      That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland.  Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland.

7.      That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.      That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business

4

associate of, and client of Defendant Bolog. Defendant Postal has also been represented by Defendant WTP.

9. That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland. Defendant POJO is a forfeited entity.

10. That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland. The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog. Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11. That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12. That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant POJO (30% owner); and (3) Defendant Postal (20%). That the proposed operating agreement for Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite #450N, Washington, D.C. 20036, as its principal office and place of business; however, such proposed operating agreement apparently remains unsigned.

13. That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments, LLC") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14. That jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(5).

15. That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16. That venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8). To the extent that any of the Defendants are found to be nonresidents, then venue would also be proper under Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

17. That this Honorable Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18. That, at all times relevant hereto, Defendant Bolog was an attorney licensed in Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a Senior Counsel and/or Partner at WTP.

19. That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a
financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and
converting monies for which he was not entitled, as evidenced by the following matters:

a.     The Harbor School Corporation sued Defendant Bolog in the District Court
of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which
resulted in a judgment for $90.00 after the inclusion of a filing fee.  *See* Case No.: 0602-
0006927-2002.

b.     The State of Maryland filed a Certification of Assessment and Tax Lien
under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006.
*See* Case No.: 268674-V.

c.     The Law Offices of William Johnson sued My New Hampshire, LLC,
Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States
Bankruptcy Court for the District of Columbia ("USDC Action").  That it was alleged in
the USDC Action that Defendants Bolog and Postal had acquired shares of the
Metropolitan Cooperative Association and became shareholders therein.  It was further
alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement
entered into by Metropolitan Cooperative Association, but that they failed to pay the sums
allegedly due as guarantors.  Defendants Bolog and Postal were represented by several
attorneys from Defendant WTP in the USDC Action.  The USDC Action appears to have
resulted in a settlement.

d.     The United States of America filed a Federal tax lien against Defendant
Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of
$7,218.00.  *See* 87230F.

7

e.      On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in

*In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against

Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the

Eastern District of Kentucky, Pikesville Division ("EDK Action").  *See* Case No.: 13-

07009.  In that Complaint, Defendant Bolog was sued because he "wrongfully converted

and transferred property of the [bankruptcy] Estate" to himself and others.  Defendant

Bolog and The Bolog Firm settled the claims against them.  The Bolog Firm is a law firm

that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.      The Takoma Overlook Condominium Association, Inc. sued Defendants

Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland,

on March 25, 2015.  *See* 402700-V.  Julianne E. Dymowski, Esquire of Defendant WTP,

represented Messrs. Postal and Bolog in that matter.

g.      Congressional Bank sued Erik and Debra Bolog in the matter of

*Congressional Bank v. Debra Bolog, et al.*, on May 8, 2018, in the Circuit Court for

Montgomery County.  *See* Case No.: 447498.

h.      American Express National Bank filed a lawsuit against Defendant Bolog

for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior

Court of the District of Columbia, Case No.: 2019 CA 006319 C.  American Express

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor & Preston, LLP.  *See* Case No.: 14-07006-aes in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2).  In that Complaint, Mr. Westenhoefer alleged that Defendant Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog.  In that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had engaged in other fraudulent activity.  Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor…"  Ultimately, the Court entered an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford, Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

i.      American Express National Bank filed a separate lawsuit against Defendant Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of Columbia, Case No.: 2019 CA 006316 C.   American Express National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

21.     That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite having express knowledge as to his financial issues and conversion of monies that did not belong to him and other fraudulent behavior.

22.     That, based on its representation of Defendant Bolog and publicly available information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions and address his financial distress.   Defendant Bolog's failure to live within his means, satisfy his debts, and meet financial obligations were examples of his poor self-control, lack of judgment, and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability to competently oversee the monies of clients and third parties.   Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.     That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

### Fraudulent $10 Million "Gift"

24.     That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.     That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.     That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.     That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her. There is no balance due and owing to Defendant WTP.

28.     That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.     That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

Maryland

An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related

10

persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

Md. Rule 19-301.8(c).

Commonwealth of Virginia

A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

District of Columbia

A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.    That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a "revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

31.    That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of

11

Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.    That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA. On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.    That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees. Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.    That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.    That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland. That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services. The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to distribute the net income and principal of this Trust to himself. According to the terms of this Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his children. The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered

$10 million to the JAREB Irrevocable Trust. That said funds were transferred from a bank account owned by Plaintiff Engelhorn.

36.     That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something signed. Defendant Bolog also stated that he needed the documents notarized, so he had Sarah Mayo arrive and notarize the documents. Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents that were upside down. Unbeknownst to Plaintiff, Defendant Bolog tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB Irrevocable Trust Agreement dated October 11, 2021. Defendant Bolog did not explain the documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature. Plaintiff Engelhorn trusted and relied on Defendant Bolog and, as a result, signed the documents. At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

37.     That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal advice with respect to the $10 million gift. The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while

13

on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.    That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship." That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.    That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift. Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.    That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel. She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift. After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies. Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

41.    That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to

make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.     That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes.  Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.     That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.     That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

### Fraud and Embezzlement by Science Park Associates, LLC

46.     All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

47.     That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5

million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt

Property, a commercial building and real estate in Prince George's County, Maryland. Thereafter,

the Deed of Trust was properly recorded in Prince George's County, Maryland. In addition to the

Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC,

guaranteed the Loan Agreement.

48.    That on or about November 26, 2014, Defendant Bolog, on behalf of himself and

as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan

Agreement between Defendant Science Park and the bank.

49.    That, upon information and belief, Defendant Bolog's company, Defendant Science

Park, derived rental income from the Greenbelt Property.

50.    That, in or around March 2022, upon information and belief, Defendant Bolog

drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security

Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment"). Under the terms

of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt

on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security

interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property. As a

result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the

bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan

Agreement, was extinguished.

51.    That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank

account to wire approximately $3,352,650 to the bank, consistent with the March 2022

Assignment.

52.     That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.     That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.     That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.     That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.     That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.     That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

58. That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff Trust to remove Defendant Bolog as a Trustee.

59. That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP, wrote an email stating that the payoff for the Trust was $3,689,662.77.

60. That, in or around this time, the Plaintiff Trust learned about the sale of the Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation under the 2022 Promissory Note. As a result of this demand, the Plaintiff Trust was paid $3,689,662.77 from the sales proceeds.

61. That the Plaintiffs had not received any mortgage payments or assignment of rent payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

### Embezzlement of $350,000: Darnestown Road, Inc. Scheme

62. That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63. That, on or about December 21, 2021, as a result of Defendant Bolog's wire instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to Darnestown Road, Inc.'s bank account.

64. That, upon information and belief, Defendant Bolog was an officer of and maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

65. That Defendant Bolog neither obtained anything of value in return for the Plaintiff Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up, concealed, and failed to disclose his interest in this company before authorizing the transaction

and further failed to conceal that these monies were used to replace funds that he had embezzled from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.    That the Plaintiff Trust has never been repaid these monies.

67.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained $350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in damages.

### Embezzlement of $585,000: Swain Landing Scheme

68.    That Defendant Postal is a long-time business associate of Defendant Bolog's and a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset House Condominium Unit Owners Association, et al.*, which was filed on or about August 31, 2020, in the Superior Court of the District of Columbia.

69.    That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747 High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58 deposited into a Bank of America account ending in 3122. An entity owned by Plaintiff Engelhorn, White Pearl, LLC, was the account owner of the account ending in 3122. Defendant Bolog knew that Plaintiff Engelhorn realized these monies from the sale of her home.

70.    That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog, stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.    That Defendant Postal, as the managing member and an owner of Defendant Swain Landing, was a long-time business partner with Defendant Bolog and his former client.

72.      That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl,

LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to

the account set forth below [Swain Landing], relating to a real estate investment."

73.      That, on or about January 6, 2022, $585,000.00 was transferred from the account

ending in 3122 to an account maintained by Defendant Swain Landing.

74.      That Defendant Bolog neither obtained anything of value in return for White Pearl,

LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to

repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered

up, concealed, and failed to disclose his interest in this company and/or his connection to its

members before authorizing the transaction, contrary to his ethical and fiduciary duties.  Defendant

Bolog willfully and, with reckless disregard, failed to make reasonable efforts to verify facts

relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.      That Plaintiffs have never been repaid these monies.

76.      That, as a direct and proximate result of Defendant Bolog's material

misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused

$585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing

Plaintiff White Pearl to suffer $585,000 in damages.

## CAUSES OF ACTION

### COUNT I – FRAUD
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

77.      That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

78.     That, beginning in or about early October 2021, Defendant Bolog intentionally defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.     That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into believing that she was signing routine legal documents, whereas she was signing a Notice of Gift, the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.     That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11, 2021. At the time Defendant Bolog made, presented to Plaintiff, and used these documents to transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, he was her attorney, not related to her, and knew these documents contained these false statements and misrepresentations or he made them with reckless indifference to truth.

81.     That Defendant Bolog made these misrepresentations for the purpose of defrauding Plaintiff Engelhorn.

82.     That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth. Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.    That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT II – NEGLIGENT HIRING AND RETENTION
### (Plaintiffs v. Defendant WTP)

84.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.    That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney. That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients. Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies. A reasonable and prudent employer would not have ignored such indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come

into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.     That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.     That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.     That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.     That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care, the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed Defendant Bolog to have access to their monies, such that he would not have been placed in the position of executing a fraudulent, Notice of Gift and other documents.

90.     That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT III – FRAUD
#### (Plaintiff Trust v. Defendant Bolog)

91.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

92.    That, in or around March 2022, Defendant Bolog, individually and on behalf of Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's $4,655,765 debt.

93.    That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant Bolog apparently sold the Greenbelt Property for $5,545,820.

94.    That, as a result of having this confidential and fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and had a financial interest in the transaction or, alternatively, that he had an interest in the entities encumbered by the original debt, such as Tenacity Investments, LLC. Defendant Bolog also had a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property, the security interest of the Trust.

95.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Science Park and had a financial interest in the transactions involving Defendant Science Park.

96.     That had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have acquired and assumed Defendant Science Park's significant debt.

97.     That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage payments, and suffered other damages, as described herein.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog)

98.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

99.     That, beginning in or about December 2021, Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust. To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.     That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

101.     That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before

the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

102.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown Road, Inc.

104.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog)

105.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

106.    That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.    That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the

Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction,

namely, that he was a member of Defendant Swain Landing and had a financial interest in the

transaction or, at a minimum, it was an entity owned and operated by his close, business colleague,

Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he

was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a

minimum, Defendant Swain Landing was an entity owned and operated by his close, business

colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from

Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not

authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent

concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog

for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action,

and such further relief as this Court deems appropriate.

## COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

114.    That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust

maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other

lawyers at Defendant WTP. That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

    a.    On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," *i.e.*, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

    b.    On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."

    c.    On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."

    d.    On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."

    e.    On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."

    f.    On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."

115.    That, as a result of the attorney-client relationship between Plaintiff Engelhorn and Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to exercise care and skill to comply with the accepted and reasonable standards of care for performing

such services. Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff

Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust:

(a) the duty of competent representation; (b) the duty of conflict-free representation, including the

prohibition against soliciting any substantial gift from a client; (c) the duty to refrain from entering

into a business transaction with a client; (d) the duty to meaningfully communicate by explaining

matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed

decisions regarding the representation; and (e) to otherwise act in accordance with the standard of

care.

116.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply

with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff

Trust.

117.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise

a reasonable degree of care and skill in the performance of their duties.

118.    That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently

breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

      a.    Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the
          alleged $10M gift;

      b.    Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes,
          she would have to use most of her lifetime exemption up if the $10M
          transfer was a gift, which would mean anything in her estate over the
          lifetime exemption amount is subject to a 40% tax;

      c.    Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021,
          and/or the document(s) that lead to the formation of the JAREB Irrevocable

Trust Agreement Dated October 11, 2021, and the transfer of the $10M to

the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d. Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the

JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e. Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement

Dated October 11, 2021;

f. Engaging in transactions on behalf of Plaintiffs in matters for which

Defendant Bolog maintained a financial interest or stood to benefit and in

which Defendant Bolog knew or reasonably should have known that his

personal financial and business interests were adverse to the object of

representation, yet failing to disclose his personal interests or obtaining

Plaintiffs' consent; and

g. Undertaking and maintaining representation of Plaintiffs and failing to

competently conduct any due diligence related to the investment of

Plaintiffs' money.

119. That Plaintiffs have collectively suffered damages of at least $10M as a direct and

proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and

Ms. Willman.

120. That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms.

Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's

business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog)

121.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.    That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.    That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive

damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VIII – RESCISSION OF GIFT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents. As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

129.    That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.    That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.    That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

## COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.    That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.    Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

135.    That, under the principles of equity and good conscience, Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust Agreement Dated October 11, 2021.

136.    That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff Engelhorn.

137.    That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021. In the alternative, Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens, mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

139.    That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

140.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel. Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

34

141.    That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142.    That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143.    That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road.    In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145.    That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.    Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147.    That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148.    That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149.    That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing.  In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (Plaintiff White Pearl, LLC v. Defendant Postal)

150.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151.    That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

153.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154.    That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155.    That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests. Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing. Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A.    Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B.    Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.    Granting such other and further equitable relief as deemed just and proper.

## COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)
(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

37

157.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

158.     That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-related matters, the nefarious condition under which the Plaintiff Trust became a member, and coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

    a.    Requiring the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including the sale of Defendant Swain Landing and/or its assets so that Plaintiff White Pearl, LLC's payment of $585,000.00 can be reimbursed in full);

    b.    Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost and all professional fees incurred in carrying out the remedies so ordered; and

    c.    Awarding damages from Defendants Bolog, Postal, and Swain Landing, jointly and severally, for $585,000.00, plus prejudgment interest, so that White Pearl, LLC can be and is repaid in full.

**COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE REMEDIES) AT COMMON LAW**
(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00, plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a.      Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b.      Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings: (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c.      As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.    Ordering such other and further relief as this Honorable Court deems appropriate, including fashioning such alternative equitable remedies as may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the circumstances.

## COUNT XV – DECLARATORY JUDGMENT
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was invalid as a matter of law and that monies should be returned to her by Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021, for her costs, and for such other and further relief as may be appropriate under the circumstances.

## COUNT XVI – UNJUST ENRICHMENT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

174.    That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176.    That client "gifts" to attorneys are presumptively fraudulent.  Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

177.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178.    That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179.    That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby

rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation of the Maryland Uniform Fraudulent Conveyance Act. The assets so conveyed exceeded the amounts due to Plaintiff Trust.

180.    That Defendant Science Park conveyed and transferred substantially all of its assets to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform Fraudulent Conveyance Act.

181.    That these transfer of assets by Defendant Science Park were fraudulent as to Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.    That each of the Defendants had knowledge of the fraud at the time of each transfer and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment as follows:

a.    Declaring that each of the aforesaid conveyances and transfer as fraudulent as to Plaintiff Trust;

b.    Setting aside all such conveyances and transfers of assets by Defendant Science Park to Defendant Bolog with such transfers returned to Defendant Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.    Awarding Plaintiff interest from the date of each transfer and conveyance.

d.    Entering a judgment against Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

e.    For such other and further relief as may be appropriate under the circumstances.

## COUNT XVIII – FRAUD
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was an owner of Defendant Science Park and had a financial interest in the transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XIX – UNJUST ENRICHMENT
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

190.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.    That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.    That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.    That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.    That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

196.    That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

Respectfully submitted:

/s/Wes P. Henderson
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable before a jury.

/s/ Wes P. Henderson
Wes P. Henderson, Esq. (AIS #0212180062)

IN THE CIRCUIT COURT FOR Baltimore City
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

FORM FILED BY: ☒PLAINTIFF   ☐DEFENDANT   CASE NUMBER

(Clerk to insert)

CASE NAME: Claudia Engelhorn vs. Erik D. Bolog, et al.
  Plaintiff               Defendant

PARTY'S NAME: Claudia Engelhorn   PHONE:

PARTY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S E-MAIL:

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Wes P. Henderson   PHONE: 410.721.1979

PARTY'S ATTORNEY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S ATTORNEY'S E-MAIL: wph@hendersonlawllc.com

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known:

ANTICIPATED LENGTH OF TRIAL?:   hours   10   days

### PLEADING TYPE

New Case: ☒Original   ☐Administrative Appeal   ☐Appeal
Existing Case: ☐Post-Judgment   ☐Amendment
*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint - DOB of Youngest Plt:
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☒ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment
  (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☒ Appointment of Receiver
- ☒ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☒ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☒ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☒ Judgment-Declaratory
- ☐ Judgment-Default

- ☒ Judgment-Interest
- ☒ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☒ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above*, mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☒ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

- ☐ Under $10,000
- ☐ $10,000 - $30,000
- ☐ $30,000 - $100,000
- ☒ Over $100,000

- ☐ Medical Bills $_____
- ☐ Wage Loss $_____
- ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation ☒ Yes ☐ No          C. Settlement Conference ☒ Yes ☐ No
B. Arbitration ☐ Yes ☒ No          D. Neutral Evaluation ☐ Yes ☒ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**. (Case will be tracked accordingly)*

- ☐ 1/2 day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time

- ☐ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions**, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

- ☐ **Expedited**- Trial within 7 months of Defendant's response
- ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response        ☐ **Standard** - Trial within 18 months of Defendant's response

### IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff ............................ . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

September 10, 2024
Date

2127 Espey Court, Suite 204
Address

Crofton          MD     21114
City          State   Zip Code

/s/ WPH (AIS #0212180062)
Signature of Counsel / Party

Wes P. Henderson
Printed Name

IN THE CIRCUIT COURT FOR Baltimore City
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

FORM FILED BY: ☒PLAINTIFF ☐DEFENDANT    CASE NUMBER _____
(Clerk to insert)

**CASE NAME:** Claudia Engelhorn           vs.   Erik D. Bolog, et al.
_____Plaintiff_____            _____Defendant_____

PARTY'S NAME: Claudia Engelhorn                    PHONE: _____

PARTY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S E-MAIL: _____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Wes P. Henderson        PHONE: 410.721.1979

PARTY'S ATTORNEY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S ATTORNEY'S E-MAIL: wph@hendersonlawllc.com

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  10 days

### PLEADING TYPE

**New Case:** ☒Original    ☐Administrative Appeal   ☐ Appeal

**Existing Case:** ☐Post-Judgment   ☐Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☒ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment
(Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 04/2017)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☒ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☒ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☒ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☒ Judgment-Declaratory
- ☐ Judgment-Default

- ☒ Judgment-Interest
- ☒ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☒ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above*, mark one of the following.  This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☒ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000   ☐ $10,000 - $30,000   ☐ $30,000 - $100,000   ☒ Over $100,000

☐ Medical Bills $_____   ☐ Wage Loss $_____   ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101?  (Check all that apply)

A. Mediation ☒ Yes ☐ No          C. Settlement Conference ☒ Yes ☐ No
B. Arbitration ☐ Yes ☒ No          D. Neutral Evaluation ☐ Yes ☒ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*          ***(Case will be tracked accordingly)***

- ☐ 1/2 day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time

- ☐ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions**, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

- ☐ **Expedited**- Trial within 7 months of Defendant's response
- ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❑ **Expedited** - Trial within 7 months of Defendant's response    ❑ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ❑ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❑ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ❑ | Custom | Scheduling order entered by individual judge. |
| ❑ | Asbestos | Special scheduling order. |
| ❑ | Lead Paint | Fill in: Birth Date of youngest plaintiff _____ . |
| ❑ | Tax Sale Foreclosures | Special scheduling order. |
| ❑ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ❑ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❑ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❑ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❑ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| September 10, 2024 | /s/ WPH (AIS #0212180062) |
|---|---|
| Date | Signature of Counsel / Party |
| 2127 Espey Court, Suite 204 | Wes P. Henderson |
| Address | Printed Name |

| Crofton | MD | 21114 |
|---|---|---|
| City | State | Zip Code |

## AFFIDAVIT OF DUE DILIGENCE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864274 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations, LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Erik D. Bolog, Resident Agent for Darnestown Road, Inc. | | | |

I, Aaron Alberts, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Erik D. Bolog, Resident Agent for Darnestown Road, Inc., Home: 8938 Abbey Terrace, Potomac, MD 20854

**Manner of Service:**   Unsuccessful Attempt

**Documents:**   Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC.

**Additional Comments:**
1) Unsuccessful Attempt: Sep 30, 2024, 2:38 pm EDT at Home: 8938 Abbey Terrace, Potomac, MD 20854
Asian woman answered the door and stated that was possibly a previous owner. Subject unknown.

2) Unsuccessful Attempt: Oct 7, 2024, 11:56 am EDT at Home: 8938 Abbey Terrace, Potomac, MD 20854
No answer at door.

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____   10/07/2024

Aaron Alberts                         **Date**

Maverick Process Service & Investigations, LLC
9 Westminster Shopping Center 384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

FILED: Baltimore City Circuit Court
Docket: 10/14/2024 12:43 PM; Submission: 10/14/2024 12:43 PM
Envelope: 18393050

## AFFIDAVIT OF NON-SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864262 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Erik D. Bolog, Resident Agent for Science Park Associates, LLC.. | | | |

I, AARON Alberts, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**    Erik D. Bolog, Resident Agent for Science Park Associates, LLC.., Home: 8938 Abbey Terrace, Potomac, MD 20854

**Manner of Service:**    Unsuccessful Attempt

**Documents:**    Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC.

**Additional Comments:**
1) Unsuccessful Attempt: Sep 30, 2024, 2:38 pm EDT at Home: 8938 Abbey Terrace, Potomac, MD 20854
Asian woman answered the door and stated that was possibly a previous owner. Subject unknown.

2) Unsuccessful Attempt: Oct 7, 2024, 11:56 am EDT at Home: 8938 Abbey Terrace, Potomac, MD 20854
No answer at door.

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____    10/09/2024
AARON Alberts    **Date**

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

## AFFIDAVIT OF SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864274 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Erik D. Bolog, Resident Agent for Darnestown Road, Inc. | | | |

I, Rodney Getlan, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  SDST Agent, State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202

**Manner of Service:**  Government Agency, Oct 10, 2024, 1:36 pm EDT

**Documents:**  Two (2) Copies of the Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC; Affidavit of Non Service and Service fee check in the amount of $50

**Additional Comments:**
1) Successful Attempt: Oct 10, 2024, 1:36 pm EDT at State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202 received by State Department pf Assessment & Taxation Agent. Age: 60; Ethnicity: African American; Gender: Female; Weight: 155; Height: 5'4"; Hair: Black; Eyes: Brown; Relationship:

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____        10/10/2024

Rodney Getlan                                          **Date**

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

## AFFIDAVIT OF SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864410 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Anjon Jones, Resident Agent for POJO LaPlata, LLC. | | | |

I, Monet Ballard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Anjon Jones, Home: 4302 Broken Arrow Court, Clinton, MD 20735

**Manner of Service:**   Registered Agent, Oct 8, 2024, 1:39 pm EDT

**Documents:**   Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC

**Additional Comments:**
1) Successful Attempt: Oct 8, 2024, 1:39 pm EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735 received by Anjon Jones. Age: 50; Ethnicity: African American; Gender: Male; Weight: 300; Height: 6'0"; Hair: Black; Eyes: Black; Other: Resident Agent;
The recipient was served by delivering and leaving a true copy of the above referenced document(s).

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

| | |
|---|---|
| _____ | 10/11/2024 |
| Monet Ballard | Date |

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

E-FILED; Baltimore City Circuit Court
Docket: 10/14/2024 12:43 PM; Submission: 10/14/2024 12:43 PM;
Envelope: 18393050

## AFFIDAVIT OF SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864262 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Erik D. Bolog, Resident Agent for Science Park Associates, LLC.. | | | |

I, Rodney Getlan, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| Recipient Name / Address: | State Department of Assessment and Taxation Agent, State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202 |
| Manner of Service: | Government Agency, Oct 10, 2024, 1:36 pm EDT |
| Documents: | Two (2) copies of the Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC; Affidavit of Non Service and Service fee check in the amount of $50 |

**Additional Comments:**
1) Successful Attempt: Oct 10, 2024, 1:36 pm EDT at State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202 received by State Department of Assessment and Taxation Agent. Age: 60; Ethnicity: African American; Gender: Female; Weight: 155; Height: 5'4"; Hair: Black; Eyes: Brown; Relationship:

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____          10/12/2024
Rodney Getlan                            Date

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

## AFFIDAVIT OF SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864416 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>Anjon Jones, Resident Agent for Swain Landing LaPlata JC, LLC. | | | |

I, Monet Ballard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Anjon Jones, Home: 4302 Broken Arrow Court, Clinton, MD 20735

**Manner of Service:**   Registered Agent, Oct 8, 2024, 1:39 pm EDT

**Documents:**   Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC.

**Additional Comments:**
1) Successful Attempt: Oct 8, 2024, 1:39 pm EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735 received by Anjon Jones. Age: 50; Ethnicity: African American; Gender: Male; Weight: 300; Height: 6'0"; Hair: Black; Eyes: Black; Other: Resident Agent; The recipient was served by delivering and leaving a true copy of the above referenced document(s).

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____        10/15/2024
Monet Ballard                          Date

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

FILED: Baltimore City Circuit Court
Docket: 10/23/2024 10:38 AM; Submission: 10/23/2024 10:38 AM
Envelope: 18517945

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

CLAUDIA ENGELHORN, *et al.*,

    Plaintiffs,

    v.

ERIK D. BOLOG, *et al.*,

    Defendants.

Civil Case No. C-24-CV-24-002631

### STIPULATION AND ORDER EXTENDING TIME FOR DEFENDANT WHITEFORD, TAYLOR & PRESTON, LLP TO RESPOND TO PLAINTIFFS' COMPLAINT

Plaintiffs Claudia Engelhorn; Claudia Engelhorn, as trustee of the Whitewater Revocable Trust Dated September 30, 2021; and White Pearl, LLC (collectively, "Plaintiffs"), and Defendant Whiteford, Taylor & Preston LLP ("Whiteford"), through their respective undersigned counsel, stipulate to an extension of the time for Whiteford to respond to Plaintiffs' complaint through and including November 8, 2024.

/s/ Patrick D. Gardiner
Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
(410) 721-1979
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ John J. Connolly
William J. Murphy
John J. Connolly
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332-0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com

**ATTORNEYS FOR DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP**

APPROVED AND SO ORDERED this **23rd** day of **October**, 2024.

_____ 10/23/2024 12:37:25 PM
JUDGE
Circuit Court for Baltimore City, Maryland

9293540.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2024, a copy of the foregoing

Stipulation and Order Extending Time for Defendant Whiteford, Taylor & Preston, LLP to

Respond to Plaintiffs' Complaint was served via postal mail on:

Erik D. Bolog
9312 Chesley Road
Potomac, MD 20854

       Counsel:
       Douglas Gansler
       Cadwalader, Wickersham & Taft LLP
       1919 Pennsylvania Avenue NW
       Washington, DC 20006

Erik D. Bolog, Trustee
JAREB Irrevocable Trust Agreement Dated October 11, 2021
The Bolog Law Group
1763 Columbia Road NW
Washington, DC 20018

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735

POJO LaPlata LLC
Attn: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 20735

Darnestown Road, Inc.
Attn: Erik D. Bolog
8938 Abbey Terrace
Potomac, MD 20854

Science Park Associates, LLC
Attn: Erik D. Bolog
8938 Abbey Terrace
Potomac, MD 20854

Swain Landing LaPlata JC, LLC
Attn: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Tenacity Investments, LLC
Attn: Michael Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

    /s/ John J. Connolly
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN** | ) |
| 2127 Espey Court, Suite 204 | ) |
| Crofton, Maryland 21114 | ) |
| | ) |
| and | ) |
| | ) |
| **CLAUDIA ENGELHORN, AS TRUSTEE OF** | ) |
| **THE WHITEWATER REVOCABLE TRUST** | ) |
| **DATED SEPTEMBER 30, 2021** | ) |
| 2127 Espey Court, Suite 204 | ) |
| Crofton, Maryland 21114 | ) |
| | ) |
| and | ) |
| | ) |
| **WHITE PEARL, LLC** | ) |
| 1209 Orange Street | ) |
| Wilmington, Delaware 19801 | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.:**    **C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG** | ) |
| 9312 Chesley Road | ) |
| Potomac, Maryland 20854 | ) |
| | ) |
| and | ) |
| | ) |
| **ERIK D. BOLOG, AS TRUSTEE OF THE** | ) |
| **JAREB IRREVOCABLE TRUST** | ) |
| **AGREEMENT DATED OCTOBER 11, 2021** | ) |
| The Bolog Law Group | ) |
| 1763 Columbia Road, NW, Suite 450N | ) |
| Washington, DC 20018 | ) |
| | ) |
| and | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON, LLP** | ) |
| Seven St. Paul Street | ) |
| Suite 1900 | ) |
| Baltimore, Maryland 21202 | ) |

Serve On:                                        )
Resagent, Inc.                                   )
Seven St. Paul Street                            )
Suite 1900                                       )
Baltimore, Maryland 21202                        )
                                                 )
        and                                      )
                                                 )
**MICHAEL POSTAL**                               )
4302 Broken Arrow Court                          )
Clinton, Maryland 20735                          )
                                                 )
        and                                      )
                                                 )
**POJO LAPLATA LLC**                             )
4302 Broken Arrow Court, Apt. 606                )
Clinton, Maryland 20735                          )
        Serve On:                                )
        Anjon Jones                              )
        4302 Broken Arrow Court                  )
        Clinton, Maryland 20735                  )
                                                 )
        and                                      )
                                                 )
**DARNESTOWN ROAD, INC.**                        )
8938 Abbey Terrace                               )
Potomac, Maryland 20854                          )
        Serve On:                                )
        Erik D. Bolog                            )
        8938 Abbey Terrace                       )
        Potomac, Maryland 20854                  )
                                                 )
        and                                      )
                                                 )
**SCIENCE PARK ASSOCIATES, LLC**                 )
6701 Democracy Boulevard                         )
Suite 515                                        )
Bethesda, Maryland 20717                         )
        Serve On:                                )
        Erik D. Bolog, Esq.                      )
        8938 Abbey Terrace                       )
        Potomac, Maryland 20854                  )
                                                 )
        and                                      )
                                                 )

**SWAIN LANDING LAPLATA JC, LLC**  )
4302 Broken Arrow Court  )
Clinton, Maryland 20735  )
    Serve On:  )
    Anjon Jones  )
    4302 Broken Arrow Court  )
    Clinton, Maryland 20735  )
    )
    and  )
    )
**TENACITY INVESTMENTS, LLC**  )
7333 New Hampshire Avenue  )
Unit 103  )
Takoma Park, Maryland 20912  )
    **Serve On:**  )
    Mike Postal  )
    7333 New Hampshire Avenue  )
    Unit 103  )
    Takoma Park, Maryland 20912  )
    )
    *Defendants*.  )

---

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this Amended Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

## PARTIES

1.    That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee.  Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3

2.      That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust").  Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3.      That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.      That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.      That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia.  Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021.  Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854.  Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.      That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland.  Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland.  At all relevant times, Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein.  At all relevant times, Defendant Bolog and the other attorneys identified herein were the actual and/or apparent agents of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them.

4

7.     That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.     That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business associate of, and client of Defendant Bolog.  Defendant Postal has also been represented by Defendant WTP.

9.     That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland.  Defendant POJO is a forfeited entity.

10.     That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland.  The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11.     That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12.     That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant

5

POJO (30% owner); and (3) Defendant Postal (20%). That the proposed operating agreement for Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite #450N, Washington, D.C. 20036, as its principal office and place of business; however, such proposed operating agreement apparently remains unsigned.

13.    That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments, LLC") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14.    That jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(5).

15.    That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16.    That venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8). To the extent that any of the Defendants are found to be nonresidents, then venue would also be proper under Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

17.    That this Honorable Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed in Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a Senior Counsel and/or Partner at WTP.

6

19.     That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and converting monies for which he was not entitled, as evidenced by the following matters:

a.      The Harbor School Corporation sued Defendant Bolog in the District Court of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which resulted in a judgment for $90.00 after the inclusion of a filing fee. *See* Case No.: 0602-0006927-2002.

b.      The State of Maryland filed a Certification of Assessment and Tax Lien under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006. *See* Case No.: 268674-V.

c.      The Law Offices of William Johnson sued My New Hampshire, LLC, Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States Bankruptcy Court for the District of Columbia ("USDC Action"). That it was alleged in the USDC Action that Defendants Bolog and Postal had acquired shares of the Metropolitan Cooperative Association and became shareholders therein. It was further alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement entered into by Metropolitan Cooperative Association, but that they failed to pay the sums allegedly due as guarantors. Defendants Bolog and Postal were represented by several attorneys from Defendant WTP in the USDC Action. The USDC Action appears to have resulted in a settlement.

d.    The United States of America filed a Federal tax lien against Defendant Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of $7,218.00. *See* 87230F.

e.    On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in *In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division ("EDK Action"). *See* Case No.: 13-07009. In that Complaint, Defendant Bolog was sued because he "wrongfully converted and transferred property of the [bankruptcy] Estate" to himself and others. Defendant Bolog and The Bolog Firm settled the claims against them. The Bolog Firm is a law firm that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.    The Takoma Overlook Condominium Association, Inc. sued Defendants Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland, on March 25, 2015. *See* 402700-V. Julianne E. Dymowski, Esquire of Defendant WTP, represented Messrs. Postal and Bolog in that matter.

g.    Congressional Bank sued Erik and Debra Bolog in the matter of *Congressional Bank v. Debra Bolog, et al.*, on May 8, 2018, in the Circuit Court for Montgomery County. *See* Case No.: 447498.

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor & Preston, LLP. *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2). In that Complaint, Mr. Westenhoefer alleged that Defendant Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog. In that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had engaged in other fraudulent activity. Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor…" Ultimately, the Court entered an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford, Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

h.    American Express National Bank filed a lawsuit against Defendant Bolog

for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior

Court of the District of Columbia, Case No.: 2019 CA 006319 C. American Express

National Bank identified Defendant Bolog's address as being Defendant WTP's D.C.

office, 1800 M Street, NW, #450N, Washington, DC 20036.

i.    American Express National Bank filed a separate lawsuit against Defendant

Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of

Columbia, Case No.: 2019 CA 006316 C. American Express National Bank identified

Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW,

#450N, Washington, DC 20036.

21.    That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP

settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and

fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite

having express knowledge as to his financial issues and conversion of monies that did not belong

to him and other fraudulent behavior.

22.    That, based on its representation of Defendant Bolog and publicly available

information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of

monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to

misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions

and address his financial distress. Defendant Bolog's failure to live within his means, satisfy his

debts, and meet financial obligations were examples of his poor self-control, lack of judgment,

and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant

WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability

to competently oversee the monies of clients and third parties. Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.    That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

### Fraudulent $10 Million "Gift"

24.    That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.    That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.    That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.    That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her. There is no balance due and owing to Defendant WTP.

28.    That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.    That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

10

Maryland

An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

Md. Rule 19-301.8(c).

District of Columbia

A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.    That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a "revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

11

31.     That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.     That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA. On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.     That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees. Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.     That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.     That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland. That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services. The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to distribute the net income and principal of this Trust to himself. According to the terms of this Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his

12

children. The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered $10 million to the JAREB Irrevocable Trust. That said funds were transferred from a bank account owned by Plaintiff Engelhorn.

36.     That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something signed. Defendant Bolog also stated that he needed the documents notarized, so he had Sarah Mayo arrive and notarize the documents. Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents that were upside down. Unbeknownst to Plaintiff, Defendant Bolog tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB Irrevocable Trust Agreement dated October 11, 2021. Defendant Bolog did not explain the documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature. Plaintiff Engelhorn trusted and relied on Defendant Bolog and, as a result, signed the documents. At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

37.     That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal advice with respect to the $10 million gift. The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while

13

on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.     That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship." That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.     That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift. Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.     That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel. She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift. After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies. Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

41.     That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to

14

make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.     That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes. Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.     That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.     That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

### Fraud and Embezzlement by Science Park Associates, LLC

46.     All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

47.     That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5

15

million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt Property, a commercial building and real estate in Prince George's County, Maryland. Thereafter, the Deed of Trust was properly recorded in Prince George's County, Maryland. In addition to the Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC, guaranteed the Loan Agreement.

48.    That on or about November 26, 2014, Defendant Bolog, on behalf of himself and as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan Agreement between Defendant Science Park and the bank.

49.    That, upon information and belief, Defendant Bolog's company, Defendant Science Park, derived rental income from the Greenbelt Property.

50.    That, in or around March 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment"). Under the terms of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property. As a result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan Agreement, was extinguished.

51.    That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank account to wire approximately $3,352,650 to the bank, consistent with the March 2022 Assignment.

52.     That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.     That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.     That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.     That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.     That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.     That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

58.    That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff Trust to remove Defendant Bolog as a Trustee.

59.    That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP, wrote an email stating that the payoff for the Trust was $3,689,662.77.

60.    That, in or around this time, the Plaintiff Trust learned about the sale of the Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation under the 2022 Promissory Note.  As a result of this demand, the Plaintiff Trust was paid $3,689,662.77 from the sales proceeds.

61.    That the Plaintiffs had not received any mortgage payments or assignment of rent payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

### Embezzlement of $350,000: Darnestown Road, Inc. Scheme

62.    That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63.    That, on or about December 21, 2021, as a result of Defendant Bolog's wire instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to Darnestown Road, Inc.'s bank account.

64.    That, upon information and belief, Defendant Bolog was an officer of and maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

65.    That Defendant Bolog neither obtained anything of value in return for the Plaintiff Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up, concealed, and failed to disclose his interest in this company before authorizing the transaction

18

and further failed to conceal that these monies were used to replace funds that he had embezzled from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.    That the Plaintiff Trust has never been repaid these monies.

67.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained $350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in damages.

### Embezzlement of $585,000: Swain Landing Scheme

68.    That Defendant Postal is a long-time business associate of Defendant Bolog's and a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset House Condominium Unit Owners Association, et al.,* which was filed on or about August 31, 2020, in the Superior Court of the District of Columbia.

69.    That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747 High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58 deposited into a Bank of America account ending in 3122. An entity owned by Plaintiff Engelhorn, White Pearl, LLC, was the account owner of the account ending in 3122. Defendant Bolog knew that Plaintiff Engelhorn realized these monies from the sale of her home.

70.    That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog, stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.    That Defendant Postal, as the managing member and an owner of Defendant Swain Landing, was a long-time business partner with Defendant Bolog and his former client.

19

72.     That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl,

LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to

the account set forth below [Swain Landing], relating to a real estate investment."

73.     That, on or about January 6, 2022, $585,000.00 was transferred from the account

ending in 3122 to an account maintained by Defendant Swain Landing.

74.     That Defendant Bolog neither obtained anything of value in return for White Pearl,

LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to

repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered

up, concealed, and failed to disclose his interest in this company and/or his connection to its

members before authorizing the transaction, contrary to his ethical and fiduciary duties. Defendant

Bolog willfully and, with reckless disregard, failed to make reasonable efforts to verify facts

relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.     That Plaintiffs have never been repaid these monies.

76.     That, as a direct and proximate result of Defendant Bolog's material

misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused

$585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing

Plaintiff White Pearl to suffer $585,000 in damages.

## CAUSES OF ACTION

### COUNT I – FRAUD

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021 and Defendant WTP)

77.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

78.    That, beginning in or about early October 2021, Defendant Bolog intentionally
defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to
Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.    That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into
believing that she was signing routine legal documents, whereas she was signing a Notice of Gift,
the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which
documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated
October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.    That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely
represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and
directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11,
2021. At the time Defendant Bolog made, presented to Plaintiff, and used these documents to
transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement
Dated October 11, 2021, he was her attorney, not related to her, and knew these documents
contained these false statements and misrepresentations or he made them with reckless
indifference to truth.

81.    That Defendant Bolog made these misrepresentations for the purpose of defrauding
Plaintiff Engelhorn.

82.    That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth. Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.    That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

**WHEREFORE,** Plaintiff Engelhorn demands judgment against Defendants Bolog and WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT II – NEGLIGENT HIRING AND RETENTION
(Plaintiffs v. Defendant WTP)

84.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.    That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney. That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients. Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies. A reasonable and prudent employer would not have ignored such

22

indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.    That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.    That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.    That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.    That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care,

23

the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed

Defendant Bolog to have access to their monies, such that he would not have been placed in the

position of executing a fraudulent, Notice of Gift and other documents.

90.     That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory

damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest,

costs of this action, and such further relief as this Court deems appropriate.

### COUNT III – FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

91.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

92.     That, in or around March 2022, Defendant Bolog, individually and on behalf of

Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's

$4,655,765 debt.

93.     That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant

Bolog apparently sold the Greenbelt Property for $5,545,820.

94.     That, as a result of having this confidential and fiduciary relationship with Plaintiff

Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to

Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and

had a financial interest in the transaction or, alternatively, that he had an interest in the entities

encumbered by the original debt, such as Tenacity Investments, LLC.  Defendant Bolog also had

a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property,

the security interest of the Trust.

95.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Science Park and had a financial interest in the transactions involving Defendant Science Park.

96.    That had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have acquired and assumed Defendant Science Park's significant debt.

97.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage payments, and suffered other damages, as described herein.

**WHEREFORE,** Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

98.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

99.    That, beginning in or about December 2021, Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust. To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.   That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

25

101.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

102.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown Road, Inc.

104.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog and Defendant WTP)

105.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

106.    That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.    That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

26

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, it was an entity owned and operated by his close, business colleague, Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, Defendant Swain Landing was an entity owned and operated by his close, business colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

114.    That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other lawyers at Defendant WTP. That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

    a.    On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," *i.e.*, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

    b.    On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."

    c.    On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."

    d.    On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."

    e.    On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."

    f.    On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."

115.    That, as a result of the attorney-client relationship between Plaintiff Engelhorn and Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to exercise care and skill to comply with the accepted and reasonable standards of care for performing such services. Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust: (a) the duty of competent representation; (b) the duty of conflict-free representation, including the prohibition against soliciting any substantial gif from a client; (c) the duty to refrain from entering into a business transaction with a client; (d) the duty to meaningfully communicate by explaining matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed decisions regarding the representation; and (e) to otherwise act in accordance with the standard of care.

116.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff Trust.

117.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise a reasonable degree of care and skill in the performance of their duties.

118.    That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

      a.    Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the alleged $10M gift;

      b.    Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes, she would have to use most of her lifetime exemption up if the $10M

transfer was a gift, which would mean anything in her estate over the
lifetime exemption amount is subject to a 40% tax;

c.    Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021,
and/or the document(s) that lead to the formation of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021, and the transfer of the $10M to
the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d.    Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the
JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e.    Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement
Dated October 11, 2021;

f.    Engaging in transactions on behalf of Plaintiffs in matters for which
Defendant Bolog maintained a financial interest or stood to benefit and in
which Defendant Bolog knew or reasonably should have known that his
personal financial and business interests were adverse to the object of
representation, yet failing to disclose his personal interests or obtaining
Plaintiffs' consent; and

g.    Undertaking and maintaining representation of Plaintiffs and failing to
competently conduct any due diligence related to the investment of
Plaintiffs' money.

119.    That Plaintiffs have collectively suffered damages of at least $10M as a direct and
proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and
Ms. Willman.

120.    That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog and Defendant WTP)

121.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.    That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.    That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

31

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VIII – RESCISSION OF GIFT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents. As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

129.   That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.   That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.   That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

## COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.   That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.   That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.   That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.   Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

135.    That, under the principles of equity and good conscience, Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust Agreement Dated October 11, 2021.

136.    That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff Engelhorn.

137.    That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021. In the alternative, Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens, mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

139.    That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

34

140. That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel. Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

141. That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142. That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143. That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road. In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144. That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145. That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146. That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel. Defendant Bolog breached his fiduciary duties by causing, permitting,

35

facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147. That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148. That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149. That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing. In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiff White Pearl, LLC v. Defendant Postal)

150. That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151. That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152. That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

153.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154.    That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155.    That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests.  Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing.  Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A.    Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B.    Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.    Granting such other and further equitable relief as deemed just and proper.

37

## COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)

(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

157.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

158.    That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-related matters, the nefarious condition under which the Plaintiff Trust became a member, and coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

a.    Requiring the judicial dissolution of Defendant Swain Lnading, the winding up of its affairs, and the distribution of its assets (including the sale of Defendant Swain Landing and/or its assets so that Plaintiff White Pearl, LLC's payment of $585,000.00 can be reimbursed in full);

b.    Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost and all professional fees incurred in carrying out the remedies so ordered; and

c.    Awarding damages from Defendants Bolog, Postal, and Swain Landing, jointly and severally, for $585,000.00, plus prejudgment interest, so that White Pearl, LLC can be and is repaid in full.

## COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE REMEDIES) AT COMMON LAW

(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00,

plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a.  Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b.  Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings; (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c.  As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus

prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly
and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.      Ordering such other and further relief as this Honorable Court deems
appropriate, including fashioning such alternative equitable remedies as
may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the
circumstances.

## COUNT XV – DECLARATORY JUDGMENT
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to
practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the
alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of
the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law
and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the
alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was
invalid as a matter of law and that monies should be returned to her by Defendant Bolog,
Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021,
for her costs, and for such other and further relief as may be appropriate under the circumstances.

41

## COUNT XVI – UNJUST ENRICHMENT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

174.   That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175.   That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176.   That client "gifts" to attorneys are presumptively fraudulent.  Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

177.   That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178.   That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179.   That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation of the Maryland Uniform Fraudulent Conveyance Act.  The assets so conveyed exceeded the amounts due to Plaintiff Trust.

43

180.    That Defendant Science Park conveyed and transferred substantially all of its assets to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform Fraudulent Conveyance Act.

181.    That these transfer of assets by Defendant Science Park were fraudulent as to Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.    That each of the Defendants had knowledge of the fraud at the time of each transfer and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment as follows:

a.    Declaring that each of the aforesaid conveyances and transfer as fraudulent as to Plaintiff Trust;

b.    Setting aside all such conveyances and transfers of assets by Defendant Science Park to Defendant Bolog with such transfers returned to Defendant Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.    Awarding Plaintiff interest from the date of each transfer and conveyance.

d.    Entering a judgment against Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

e.    For such other and further relief as may be appropriate under the circumstances.

## COUNT XVIII – FRAUD

44

(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and
misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the
encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants
Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the
Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction,
namely, that he was an owner of Defendant Science Park and had a financial interest in the
transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he
was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from
Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not
authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent
concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant
Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in
excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of

$20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XIX – UNJUST ENRICHMENT
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

190.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.    That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.    That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.    That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.    That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

196.    That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiffs v. Defendant WTP)

197.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

198.     That Defendant WTP aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

199.     That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

200.     That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

201.     That Defendant WTP colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

202.     That Defendant WTP participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing its own interests.  Defendant WTP obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog.

203.     Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive

damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief

as this Court deems appropriate.

Respectfully submitted:

/s/*Wes P. Henderson*
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable

before a jury.

/s/ *Wes P. Henderson*
Wes P. Henderson, Esq. (AIS #0212180062)

48

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October, 2024, I served a copy of the

aforegoing via MDEC's electronic filing and service function on the following:

> William J. Murphy, Esq.
> John J. Connolly, Esq.
> Zuckerman Spaeder, LLP
> 100 East Pratt Street, Suite 2440
> Baltimore, MD 21202

> Counsel for Defendant Whiteford, Taylor & Preston, LLP

AND via first class mail, postage prepaid on the following;

> Douglas Gansler, Esq.
> Cadwalader, Wickersham & Taft, LLP
> 1919 Pennsylvania Avenue, N.W.
> Washington, DC 20006

> Counsel for Defendants Erik D. Bolog, Individually,
> and as Trustee of The JAREB Irrevocable Trust
> Agreement dated October 11, 2021

> Michael Postal
> 4302 Broken Arrow Court
> Clinton, MD 20735

> Defendant pro se

> POJO LaPlata, LLC
> 4302 Broken Arrow Court, Apt 606
> Clinton, MD 20735

> Defendant pro se

> Darnestown Road, Inc.
> 8938 Abbey Terrace
> Potomac, MD 20854

> Defendant pro se

Science Park Associates, LLC
6701 Democracy Blvd, Suite 515
Bethesda, MD  20717

Defendant pro se

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

Defendant pro se

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

Defendant pro se

/s/ *Wes P. Henderson*
Wes P. Henderson, Esq. (AIS #0212180062)



**P**

US POSTAGE & FEES PAID
PRIORITY MAIL
ZONE 1 MEDIUM FLAT-RATE BOX
Commercial

062S0014950519
4969288
FROM 21114

Stamps
10/31/2024

# USPS PRIORITY MAIL ®

WES HENDERSON
2127 ESPEY COURT, SUITE 204
CROFTON MD 21114

**0003**

C068

SHIP
TO:

DOUGLAS GANSLER, ESQ.
Cadwalader, Wickersham & Taft, LLP
1919 PENNSYLVANIA AVE NW STE 600
WASHINGTON DC 20006-3420

**USPS TRACKING #**



9405 5112 0620 5418 8640 78

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, ET AL.                    )
                                             )
    *Plaintiffs*                             )
                                             )
v.                                           )    **Case No.: C-24-CV-24-002631**
                                             )
ERIK D. BOLOG, ET AL.                        )
                                             )
    *Defendants.*                            )

## NOTICE OF SERVICE OF DISCOVERY MATERIALS

Plaintiff, Claudia Engelhorn, by and through her undersigned attorneys, hereby certifies

that on this 31st day of October 2024, that she served via MDEC's electronic filing and service

system; (1) Plaintiff's Request for Admissions to Defendant Whiteford, Taylor & Preston, LLP,

and (2) this Notice of Service of Discovery Materials, on the following:

    William J. Murphy, Esq.
    John J. Connolly, Esq.
    Zuckerman Spaeder, LLP
    100 East Pratt Street, Suite 2440
    Baltimore, MD 21202

    *Counsel for Defendant Whiteford, Taylor & Preston, LLP*

AND via first class mail, postage prepaid on the following;

    Douglas Gansler, Esq.
    Cadwalader, Wickersham & Taft, LLP
    1919 Pennsylvania Avenue, N.W.
    Washington, DC 20006

    *Counsel for Defendants Erik D. Bolog, Individually,*
    *and as Trustee of The JAREB Irrevocable Trust*
    *Agreement dated October 11, 2021*

1

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Darnestown Road, Inc.
8938 Abbey Terrace
Potomac, MD 20854

*Defendant pro s*
Science Park Associates, LLC
6701 Democracy Blvd, Suite 515
Bethesda, MD 20717

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ WPH (AIS# 0212180062)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October, 2024 that a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

AND via first class mail, postage prepaid on the following:

Douglas Gansler, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021*

3

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Darnestown Road, Inc.
8938 Abbey Terrace
Potomac, MD 20854

*Defendant pro se*

Science Park Associates, LLC
6701 Democracy Blvd, Suite 515
Bethesda, MD  20717

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

<u>        /s/ WPH (AIS# 0212180062)        </u>
Wes P. Henderson, Esq. (AIS# 0212180062)

4



**US POSTAGE & FEES PAID**
PRIORITY MAIL
ZONE 1 MEDIUM FLAT-RATE BOX
Commercial

062S0014950519
4969288
FROM 21114



🖸 Stamps
10/31/2024

# USPS PRIORITY MAIL ®

WES HENDERSON
2127 ESPEY COURT, SUITE 204
CROFTON MD 21114

**0003**

C068

**SHIP TO:**  DOUGLAS GANSLER, ESQ.
Cadwalader, Wickersham & Taft, LLP
1919 PENNSYLVANIA AVE NW STE 600
WASHINGTON DC 20006-3420

## USPS TRACKING #



**9405 5112 0620 5418 8640 78**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S REQUEST FOR ADMISSIONS TO DEFENDANT WHITEFORD, TAYLOR & PRESTON, LLP

TO:      Whiteford, Taylor & Preston, LLP, Defendant

FROM:  Claudia Engelhorn, Plaintiff

Plaintiff Claudia Engelhorn, pursuant to Maryland Rule 2-424, requests that Defendant, Whiteford, Taylor & Preston, LLP, within 30 days after service of these requests or within 15 days after the date on which the Defendant's initial pleading or motion is required, whichever is later, admit that each of the following statements of fact are true. Defendant, Whiteford, Taylor & Preston, LLP, if unable to admit to any of the following statements of fact are requested to set forth in detail the reasons why they cannot admit the truth of any such statements or the genuineness of any such documents, in whole or in part.

### INSTRUCTIONS

1.      Each response to a request shall set out the Request in full, and Defendant's response shall follow and be designated as "RESPONSE."

2.      As required by Maryland Rule 2-424, as to each matter of which an admission is requested, the response shall set forth each Request for admission and shall specify an objection, or shall admit or deny the matter, or shall set forth in detail the reason why Defendant cannot truthfully admit or deny it.

3.      All reasons for any objection shall be stated.

4.      A denial shall fairly meet the substance of the requested admission, and when good faith requires Defendant to qualify an answer or deny only a part of the matter of which an admission is requested, Defendant shall specify so much of it as is true and deny or qualify the remainder.

5.      Defendant may not give lack of information or knowledge as a reason for failure to admit or deny unless Defendant states that after reasonable inquiry, the information known or readily obtainable by him/it is insufficient to enable him/it to admit or deny.

6.      If Defendant fails to respond within the time required by Maryland rule 4-424, the matter(s) set forth in these Requests may be deemed admitted and conclusively established against him/it. If Defendant fails to admit a fact that is subsequently established, he/it may be responsible for Plaintiffs' costs of establishing such fact.

## DEFINITIONS

A.      All times referenced in the following Request for Admissions refer to the time frames identified in the Complaint and any amendments thereto unless otherwise specified.

B.      The terms "Defendant" and "you" shall refer to the party to whom these requests are addressed, and their agents, servants, or employees.

C.      The term "Complaint" shall refer to the Complaint and any amendments thereto filed in this action.

D.      The term "incident" or "occurrence" shall refer to the events set forth in the Complaint or any amendments thereto.

E.      The terms "retainer agreement" and "engagement agreement" shall be used interchangeably and refer to any writing signed by Claudia Engelhorn that establishes the professional relationship between any of the Plaintiffs and Defendant, Whiteford, Taylor & Preston, LLP, detailing the terms under which legal services will be provided, the scope of legal representation, and fee arrangements (e.g., hourly rates, flat fees, or contingency fees).

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that Whiteford, Taylor & Preston, LLP did not have a written retainer agreement with White Pearl, LLC.

**REQUEST NO. 2:**   Admit that Whiteford, Taylor & Preston, LLP does not have a written retainer agreement with White Pearl, LLC.

**REQUEST NO. 3:**   Admit that Whiteford, Taylor & Preston, LLP did not have a written retainer agreement with Claudia Engelhorn, as Trustee for the Whitewater Revocable Trust dated September 30, 2021.

2

**REQUEST NO. 4:**   Admit that Whiteford, Taylor & Preston, LLP does not have a written retainer agreement with Claudia Engelhorn, as Trustee for the Whitewater Revocable Trust dated September 30, 2021.

**REQUEST NO. 5:**   Admit that Whiteford, Taylor & Preston, LLP did not have a written retainer agreement with Claudia Engelhorn as of September 1, 2021 that authorized it to bill in excess of $500.00 per hour.

**REQUEST NO. 6:**   Admit that Whiteford, Taylor & Preston, LLP does not possess a writing wherein Claudia Engelhorn admitted that she was fully informed of the scope and effect of any arbitration provision contained in any engagement agreement executed by Claudia Engelhorn with Whiteford, Taylor & Preston, LLP.

**REQUEST NO. 7:** Admit that Whiteford, Taylor & Preston, LLP does not possess any writing exchanged with Claudia Engelhorn wherein Whiteford, Taylor & Preston, LLC explains the material risks of entering into an arbitration agreement with it.

**REQUEST NO. 8:** Admit that Whiteford, Taylor & Preston, LLP does not possess any writing wherein it described the differences between litigation in the courts and arbitration proceedings as it relates to any arbitration provision in any engagement agreement entered into between Whiteford, Taylor & Preston, LLP and Claudia Engelhorn.

**REQUEST NO. 9:**   Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discussed the fees associated with an arbitration proceeding as opposed to fees associated with litigation.

**REQUEST NO. 10:**  Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discusses the difference between the availability of discovery in an arbitration proceeding and discovery available in civil litigation.

3

**REQUEST NO. 11:**  Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discusses the difference between the right to a jury trial in a civil lawsuit verse the absence of a jury trial in an arbitration proceeding.

**REQUEST NO. 12:**  Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discusses the difference between the right to an appeal in an arbitration proceeding and in civil litigation.

**REQUEST NO. 13:**  Admit that attorneys with Whiteford, Taylor & Preston, LLP drafted the Jareb Irrevocable Trust Agreement Dated October 11, 2021.

**REQUEST NO. 14:**  Admit that attorneys with Whiteford, Taylor & Preston, LLP requested an employer identification number for the Jareb Irrevocable Trust Agreement Dated October 11, 2021.

**REQUEST NO. 15:**  Admit that the highest hourly rate that Whiteford, Taylor & Preston, LLP indicated in any retainer agreement entered into with Claudia Engelhorn that it would bill her for services was $500.00 per hour.

**REQUEST NO. 16:**  Admit that Whiteford, Taylor & Preston, LLP has never communicated with Claudia Engelhorn, in writing, that it would be charging rates in excess of $500.00 per hour.

**REQUEST NO. 17:**  Admit that there were times after September 1, 2021 wherein Whiteford, Taylor & Preston, LLP billed Claudia Engelhorn at rates higher than $500.00 per hour.

**REQUEST NO. 18:**  Admit that Claudia Engelhorn was not represented by independent counsel when she allegedly entered into a retainer agreement with Whiteford, Taylor & Preston, LLP on or about February 27, 2020.

4

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ WPH (AIS# 0212180062)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October, 2024 that a copy of the foregoing

was sent via MDEC to the following:

>William J. Murphy, Esq.
>John J. Connolly, Esq.
>Zuckerman Spaeder, LLP
>100 East Pratt Street, Suite 2440
>Baltimore, MD 21202
>
>*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

AND via first class mail, postage prepaid on the following:

>Douglas Gansler, Esq.
>Cadwalader, Wickersham & Taft, LLP
>1919 Pennsylvania Avenue, N.W.
>Washington, DC 20006
>
>*Counsel for Defendants Erik D. Bolog, Individually,
>and as Trustee of The JAREB Irrevocable Trust
>Agreement dated October 11, 2021*
>
>Michael Postal
>4302 Broken Arrow Court
>Clinton, MD 20735
>
>*Defendant pro se*
>
>POJO LaPlata, LLC
>4302 Broken Arrow Court, Apt 606
>Clinton, MD 20735
>
>*Defendant pro se*
>
>Darnestown Road, Inc.
>8938 Abbey Terrace
>Potomac, MD 20854
>
>*Defendant pro se*

Science Park Associates, LLC
6701 Democracy Blvd, Suite 515
Bethesda, MD  20717

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ WPH (AIS# 0212180062)
Wes P. Henderson, Esq. (AIS# 0212180062)



**US POSTAGE & FEES PAID**
PRIORITY MAIL
ZONE 1 MEDIUM FLAT-RATE BOX
Commercial

062S0014950519
4969288
FROM 21114

Stamps
10/31/2024

# USPS PRIORITY MAIL ®

WES HENDERSON
2127 ESPEY COURT, SUITE 204
CROFTON MD 21114

**0003**

C068

**SHIP TO:**
DOUGLAS GANSLER, ESQ.
Cadwalader, Wickersham & Taft, LLP
1919 PENNSYLVANIA AVE NW STE 600
WASHINGTON DC 20006-3420

## USPS TRACKING #



9405 5112 0620 5418 8640 78

E-FILED; Baltimore City Circuit Court
Docket: 10/31/2024 1:11 PM; Submission: 10/31/2024 1:11 PM
Envelope: 18639704

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN**<br>2127 Espey Court, Suite 204<br>Crofton, Maryland 21114 | ) ) ) ) |
| and | ) ) |
| **CLAUDIA ENGELHORN, AS TRUSTEE OF**<br>**THE WHITEWATER REVOCABLE TRUST**<br>**DATED SEPTEMBER 30, 2021**<br>2127 Espey Court, Suite 204<br>Crofton, Maryland 21114 | ) ) ) ) ) ) |
| and | ) ) |
| **WHITE PEARL, LLC**<br>1209 Orange Street<br>Wilmington, Delaware 19801 | ) ) ) ) |
| *Plaintiffs* | ) ) ) |
| v. | )     Case No.:   C-24-CV-24-002631 |
| | ) ) |
| **ERIK D. BOLOG**<br>9312 Chesley Road<br>Potomac, Maryland 20854 | ) ) ) ) |
| and | ) ) |
| **ERIK D. BOLOG, AS TRUSTEE OF THE**<br>**JAREB IRREVOCABLE TRUST**<br>**AGREEMENT DATED OCTOBER 11, 2021**<br>The Bolog Law Group<br>1763 Columbia Road, NW, Suite 450N<br>Washington, DC 20018 | ) ) ) ) ) ) ) |
| and | ) ) |
| **WHITEFORD, TAYLOR & PRESTON, LLP**<br>Seven St. Paul Street<br>Suite 1900<br>Baltimore, Maryland 21202 | ) ) ) ) |

Serve On:                                    )
Resagent, Inc.                               )
Seven St. Paul Street                        )
Suite 1900                                   )
Baltimore, Maryland 21202                    )
                                             )
    and                                      )
                                             )
**MICHAEL POSTAL**                           )
4302 Broken Arrow Court                      )
Clinton, Maryland 20735                      )
                                             )
    and                                      )
                                             )
**POJO LAPLATA LLC**                         )
4302 Broken Arrow Court, Apt. 606            )
Clinton, Maryland 20735                      )
    Serve On:                                )
    Anjon Jones                              )
    4302 Broken Arrow Court                  )
    Clinton, Maryland 20735                  )
                                             )
    and                                      )
                                             )
**DARNESTOWN ROAD, INC.**                    )
8938 Abbey Terrace                           )
Potomac, Maryland 20854                      )
    Serve On:                                )
    Erik D. Bolog                            )
    8938 Abbey Terrace                       )
    Potomac, Maryland 20854                  )
                                             )
    and                                      )
                                             )
**SCIENCE PARK ASSOCIATES, LLC**             )
6701 Democracy Boulevard                     )
Suite 515                                    )
Bethesda, Maryland 20717                     )
    Serve On:                                )
    Erik D. Bolog, Esq.                      )
    8938 Abbey Terrace                       )
    Potomac, Maryland 20854                  )
                                             )
    and                                      )
                                             )

**SWAIN LANDING LAPLATA JC, LLC**    )
4302 Broken Arrow Court    )
Clinton, Maryland 20735    )
       Serve On:    )
       Anjon Jones    )
       4302 Broken Arrow Court    )
       Clinton, Maryland 20735    )
       )
  and    )
       )
**TENACITY INVESTMENTS, LLC**    )
7333 New Hampshire Avenue    )
Unit 103    )
Takoma Park, Maryland 20912    )
       <u>Serve On:</u>    )
       Mike Postal    )
       7333 New Hampshire Avenue    )
       Unit 103    )
       Takoma Park, Maryland 20912    )
       )
    *Defendants.*    )

---

## <u>AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this <u>Amended</u> Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

### <u>PARTIES</u>

1.    That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee.  Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3

2.     That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust"). Due to concerns about her personal safety, Plaintiff Engelhorn has used her counsel's address in the caption of this matter.

3.     That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.     That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.     That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia. Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021. Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854. Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.     That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland. Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland. At all relevant times, Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein. At all relevant times, Defendant Bolog and the other attorneys identified herein were the actual and/or apparent agents of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them.

4

7.      That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.      That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business associate of, and client of Defendant Bolog.  Defendant Postal has also been represented by Defendant WTP.

9.      That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland.  Defendant POJO is a forfeited entity.

10.     That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland.  The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11.     That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12.     That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant

5

POJO (30% owner); and (3) Defendant Postal (20%). That the proposed operating agreement for Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite #450N, Washington, D.C. 20036, as its principal office and place of business; however, such proposed operating agreement apparently remains unsigned.

13.    That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments, LLC") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14.    That jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(5).

15.    That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16.    That venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8). To the extent that any of the Defendants are found to be nonresidents, then venue would also be proper under Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

17.    That this Honorable Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed in Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a Senior Counsel and/or Partner at WTP.

6

19.     That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and converting monies for which he was not entitled, as evidenced by the following matters:

    a.     The Harbor School Corporation sued Defendant Bolog in the District Court of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which resulted in a judgment for $90.00 after the inclusion of a filing fee. *See* Case No.: 0602-0006927-2002.

    b.     The State of Maryland filed a Certification of Assessment and Tax Lien under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006. *See* Case No.: 268674-V.

    c.     The Law Offices of William Johnson sued My New Hampshire, LLC, Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States Bankruptcy Court for the District of Columbia ("USDC Action"). That it was alleged in the USDC Action that Defendants Bolog and Postal had acquired shares of the Metropolitan Cooperative Association and became shareholders therein. It was further alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement entered into by Metropolitan Cooperative Association, but that they failed to pay the sums allegedly due as guarantors. Defendants Bolog and Postal were represented by several attorneys from Defendant WTP in the USDC Action. The USDC Action appears to have resulted in a settlement.

d.      The United States of America filed a Federal tax lien against Defendant

Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of

$7,218.00. *See* 87230F.

e.      On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in

*In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against

Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the

Eastern District of Kentucky, Pikesville Division ("EDK Action"). *See* Case No.: 13-

07009. In that Complaint, Defendant Bolog was sued because he "wrongfully converted

and transferred property of the [bankruptcy] Estate" to himself and others. Defendant

Bolog and The Bolog Firm settled the claims against them. The Bolog Firm is a law firm

that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.      The Takoma Overlook Condominium Association, Inc. sued Defendants

Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland,

on March 25, 2015. *See* 402700-V. Julianne E. Dymowski, Esquire of Defendant WTP,

represented Messrs. Postal and Bolog in that matter.

g.      Congressional Bank sued Erik and Debra Bolog in the matter of

*Congressional Bank v. Debra Bolog, et al.*, on May 8, 2018, in the Circuit Court for

Montgomery County. *See* Case No.: 447498.

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor
& Preston, LLP. *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of
Kentucky, Pikesville Division (EDK Action #2). In that Complaint, Mr. Westenhoefer alleged that Defendant
Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog. In
that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had
engaged in other fraudulent activity. Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over
immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor..." Ultimately, the Court entered
an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford,
Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

8

    h.    American Express National Bank filed a lawsuit against Defendant Bolog for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior Court of the District of Columbia, Case No.: 2019 CA 006319 C. American Express National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

    i.    American Express National Bank filed a separate lawsuit against Defendant Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of Columbia, Case No.: 2019 CA 006316 C. American Express National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

21.    That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite having express knowledge as to his financial issues and conversion of monies that did not belong to him and other fraudulent behavior.

22.    That, based on its representation of Defendant Bolog and publicly available information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions and address his financial distress. Defendant Bolog's failure to live within his means, satisfy his debts, and meet financial obligations were examples of his poor self-control, lack of judgment, and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability

9

to competently oversee the monies of clients and third parties. Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.    That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

### Fraudulent $10 Million "Gift"

24.    That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.    That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.    That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.    That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her. There is no balance due and owing to Defendant WTP.

28.    That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.    That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

10

Maryland

An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

Md. Rule 19-301.8(c).

Formatted: ss_paracontent, Font color: Auto

Formatted: Indent: First line: 0"

District of Columbia

A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.    That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a

"revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

31.    That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.    That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA. On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.    That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees. Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.    That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.    That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland. That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services. The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to

12

distribute the net income and principal of this Trust to himself.  According to the terms of this

Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his

children.  The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered

$10 million to the JAREB Irrevocable Trust.  That said funds were transferred from a bank account

owned by Plaintiff Engelhorn.

36.    That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape

Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something

signed.  Defendant Bolog also stated that he needed the documents notarized, so he had Sarah

Mayo arrive and notarize the documents.  Defendant Bolog directed Plaintiff Engelhorn to sign

numerous documents that were upside down.  Unbeknownst to Plaintiff, Defendant Bolog tricked

Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice

of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer

money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB

Irrevocable Trust Agreement dated October 11, 2021.  Defendant Bolog did not explain the

documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into

believing the documents concerned routine matters requiring her signature.  Plaintiff Engelhorn

trusted and relied on Defendant Bolog and, as a result, signed the documents.  At the time Plaintiff

signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any

money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware

that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable

Trust at the time she signed the aforementioned documents.

37.    That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant

Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal

13

advice with respect to the $10 million gift. The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.     That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship." That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.     That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift. Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.     That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel. She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift. After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies. Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

14

41.    That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.    That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes.  Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.    That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.    That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

### Fraud and Embezzlement by Science Park Associates, LLC

46.    All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

15

47. That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5 million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt Property, a commercial building and real estate in Prince George's County, Maryland. Thereafter, the Deed of Trust was properly recorded in Prince George's County, Maryland. In addition to the Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC, guaranteed the Loan Agreement.

48. That on or about November 26, 2014, Defendant Bolog, on behalf of himself and as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan Agreement between Defendant Science Park and the bank.

49. That, upon information and belief, Defendant Bolog's company, Defendant Science Park, derived rental income from the Greenbelt Property.

50. That, in or around March 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment"). Under the terms of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property. As a result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan Agreement, was extinguished.

51.     That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank account to wire approximately $3,352,650 to the bank, consistent with the March 2022 Assignment.

52.     That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.     That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.     That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.     That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.     That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.    That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

58.    That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff Trust to remove Defendant Bolog as a Trustee.

59.    That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP, wrote an email stating that the payoff for the Trust was $3,689,662.77.

60.    That, in or around this time, the Plaintiff Trust learned about the sale of the Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation under the 2022 Promissory Note.  As a result of this demand, the Plaintiff Trust was paid $3,689,662.77 from the sales proceeds.

61.    That the Plaintiffs had not received any mortgage payments or assignment of rent payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

**Embezzlement of $350,000: Darnestown Road, Inc. Scheme**

62.    That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63.    That, on or about December 21, 2021, as a result of Defendant Bolog's wire instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to Darnestown Road, Inc.'s bank account.

64.    That, upon information and belief, Defendant Bolog was an officer of and maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

18

65.    That Defendant Bolog neither obtained anything of value in return for the Plaintiff Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up, concealed, and failed to disclose his interest in this company before authorizing the transaction and further failed to conceal that these monies were used to replace funds that he had embezzled from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.    That the Plaintiff Trust has never been repaid these monies.

67.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained $350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in damages.

**Embezzlement of $585,000: Swain Landing Scheme**

68.    That Defendant Postal is a long-time business associate of Defendant Bolog's and a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset House Condominium Unit Owners Association, et al.*, which was filed on or about August 31, 2020, in the Superior Court of the District of Columbia.

69.    That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747 High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58 deposited into a Bank of America account ending in 3122. An entity owned by Plaintiff Engelhorn, White Pearl, LLC, was the account owner of the account ending in 3122. Defendant Bolog knew that Plaintiff Engelhorn realized these monies from the sale of her home.

19

70.    That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog, stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.    That Defendant Postal, as the managing member and an owner of Defendant Swain Landing, was a long-time business partner with Defendant Bolog and his former client.

72.    That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl, LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing], relating to a real estate investment."

73.    That, on or about January 6, 2022, $585,000.00 was transferred from the account ending in 3122 to an account maintained by Defendant Swain Landing.

74.    That Defendant Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties. Defendant Bolog willfully and, with reckless disregard, failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.    That Plaintiffs have never been repaid these monies.

76.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused $585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing Plaintiff White Pearl to suffer $585,000 in damages.

## CAUSES OF ACTION

### COUNT I – FRAUD
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021 and Defendant WTP)

77.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

78.    That, beginning in or about early October 2021, Defendant Bolog intentionally defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.    That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into believing that she was signing routine legal documents, whereas she was signing a Notice of Gift, the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.    That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11, 2021. At the time Defendant Bolog made, presented to Plaintiff, and used these documents to transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, he was her attorney, not related to her, and knew these documents contained these false statements and misrepresentations or he made them with reckless indifference to truth.

81.    That Defendant Bolog made these misrepresentations for the purpose of defrauding Plaintiff Engelhorn.

21

82.    That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth. Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.    That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

**WHEREFORE,** Plaintiff Engelhorn demands judgment against ~~Defendant~~Defendants Bolog and WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT II – NEGLIGENT HIRING AND RETENTION
(Plaintiffs v. Defendant WTP)

84.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.    That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney. That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients. Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies. A reasonable and prudent employer would not have ignored such

22

indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.    That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.    That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.    That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.    That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care,

23

the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed

Defendant Bolog to have access to their monies, such that he would not have been placed in the

position of executing a fraudulent, Notice of Gift and other documents.

90.   That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory

damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest,

costs of this action, and such further relief as this Court deems appropriate.

<div align="center">

**COUNT III – FRAUD**
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

</div>

91.   That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

92.   That, in or around March 2022, Defendant Bolog, individually and on behalf of

Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's

$4,655,765 debt.

93.   That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant

Bolog apparently sold the Greenbelt Property for $5,545,820.

94.   That, as a result of having this confidential and fiduciary relationship with Plaintiff

Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to

Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and

had a financial interest in the transaction or, alternatively, that he had an interest in the entities

encumbered by the original debt, such as Tenacity Investments, LLC.  Defendant Bolog also had

a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property,

the security interest of the Trust.

<div align="center">24</div>

95.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Science Park and had a financial interest in the transactions involving Defendant Science Park.

96.    That had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have acquired and assumed Defendant Science Park's significant debt.

97.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage payments, and suffered other damages, as described herein.

**WHEREFORE,** Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

98.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

99.    That, beginning in or about December 2021, Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust.  To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.    That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

25

101.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

102.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown Road, Inc.

104.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog and Defendant WTP)

105.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

106.    That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.    That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

26

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, it was an entity owned and operated by his close, business colleague, Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, Defendant Swain Landing was an entity owned and operated by his close, business colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

27

114.    That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other lawyers at Defendant WTP.  That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

      a.      On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," *i.e.*, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

      b.      On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."

      c.      On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."

      d.      On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."

      e.      On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."

      f.      On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."

28

115.    That, as a result of the attorney-client relationship between Plaintiff Engelhorn and

Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to

exercise care and skill to comply with the accepted and reasonable standards of care for performing

such services.  Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff

Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust:

(a) the duty of competent representation; (b) the duty of conflict-free representation, including the

prohibition against soliciting any substantial gif from a client; (c) the duty to refrain from entering

into a business transaction with a client; (d) the duty to meaningfully communicate by explaining

matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed

decisions regarding the representation; and (e) to otherwise act in accordance with the standard of

care.

116.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply

with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff

Trust.

117.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise

a reasonable degree of care and skill in the performance of their duties.

118.    That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently

breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

        a.    Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the

            alleged $10M gift;

        b.    Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes,

            she would have to use most of her lifetime exemption up if the $10M

29

transfer was a gift, which would mean anything in her estate over the lifetime exemption amount is subject to a 40% tax;

c.    Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and/or the document(s) that lead to the formation of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and the transfer of the $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d.    Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e.    Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

f.    Engaging in transactions on behalf of Plaintiffs in matters for which Defendant Bolog maintained a financial interest or stood to benefit and in which Defendant Bolog knew or reasonably should have known that his personal financial and business interests were adverse to the object of representation, yet failing to disclose his personal interests or obtaining Plaintiffs' consent; and

g.    Undertaking and maintaining representation of Plaintiffs and failing to competently conduct any due diligence related to the investment of Plaintiffs' money.

119.    That Plaintiffs have collectively suffered damages of at least $10M as a direct and proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman.

30

120.    That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog and Defendant WTP)

121.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.    That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.    That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

31

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT VIII – RESCISSION OF GIFT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents. As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

32

129.    That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.    That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.    That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

### COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.    That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.  Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

33

135.    That, under the principles of equity and good conscience, Defendant JAREB
Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of
Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust
Agreement Dated October 11, 2021.

136.    That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been
unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff
Engelhorn.

137.    That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the
JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the
imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to
Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021.  In the alternative,
Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon
Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for
the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October
11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens,
mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may
claim to be necessary and proper.

## COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

139.    That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's
money to be transferred to Defendant Darnestown Road.

140.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.  Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

141.    That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142.    That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143.    That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road.  In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

### COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145.    That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.  Defendant Bolog breached his fiduciary duties by causing, permitting,

35

facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147.    That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148.    That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149.    That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing. In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

### COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiff White Pearl, LLC v. Defendant Postal)

150.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151.    That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

36

153. That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154. That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155. That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests. Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing. Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156. Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A. Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B. Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D. Granting such other and further equitable relief as deemed just and proper.

37

**COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY
UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)**
(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v.
Defendants Bolog, Postal, POJO, and Swain Landing)

157. That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

158. That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-related matters, the nefarious condition under which the Plaintiff Trust became a member, and coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

a. Requiring the judicial dissolution of Defendant Swain Lnading, the winding up of its affairs, and the distribution of its assets (including the sale of Defendant Swain Landing and/or its assets so that Plaintiff White Pearl, LLC's payment of $585,000.00 can be reimbursed in full);

b. Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost and all professional fees incurred in carrying out the remedies so ordered; and

c. Awarding damages from Defendants Bolog, Postal, and Swain Landing, jointly and severally, for $585,000.00, plus prejudgment interest, so that White Pearl, LLC can be and is repaid in full.

**COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF
DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL
FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE
REMEDIES) AT COMMON LAW**
(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00,

plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a. Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b. Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings; (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c. As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus

40

prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly

and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.    Ordering such other and further relief as this Honorable Court deems

appropriate, including fashioning such alternative equitable remedies as

may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the

circumstances.

## COUNT XV – DECLARATORY JUDGMENT
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was invalid as a matter of law and that monies should be returned to her by Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021, for her costs, and for such other and further relief as may be appropriate under the circumstances.

41

## COUNT XVI – UNJUST ENRICHMENT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

42

174.    That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176.    That client "gifts" to attorneys are presumptively fraudulent. Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

177.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178.    That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179.    That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby

43

rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation

of the Maryland Uniform Fraudulent Conveyance Act.  The assets so conveyed exceeded the

amounts due to Plaintiff Trust.

180.    That Defendant Science Park conveyed and transferred substantially all of its assets

to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the

actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust

and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform

Fraudulent Conveyance Act.

181.    That these transfer of assets by Defendant Science Park were fraudulent as to

Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in

amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.    That each of the Defendants had knowledge of the fraud at the time of each transfer

and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment

as follows:

a.      Declaring that each of the aforesaid conveyances and transfer as fraudulent
        as to Plaintiff Trust;

b.      Setting aside all such conveyances and transfers of assets by Defendant
        Science Park to Defendant Bolog with such transfers returned to Defendant
        Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.      Awarding Plaintiff interest from the date of each transfer and conveyance.

d.      Entering a judgment against Defendants, jointly and severally, for an
        amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

44

e.     For such other and further relief as may be appropriate under the circumstances.

## COUNT XVIII – FRAUD
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was an owner of Defendant Science Park and had a financial interest in the transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

45

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT XIX – UNJUST ENRICHMENT
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

190.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.    That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.    That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.    That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.    That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

46

196.    That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT XX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
#### (Plaintiffs v. Defendant WTP)

197.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

198.    That Defendant WTP aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

199.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

200.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

201.    That Defendant WTP colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

202.    That Defendant WTP participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing its own interests. Defendant WTP obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog.

47

203.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

Respectfully submitted:

/s/Wes P. Henderson
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable before a jury.

/s/ Wes P. Henderson
Wes P. Henderson, Esq. (AIS #0212180062)

48

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October, 2024, I served a copy of the

aforegoing via MDEC's electronic filing and service function on the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

Counsel for Defendant Whiteford, Taylor & Preston, LLP

AND via first class mail, postage prepaid on the following:

Douglas Gansler, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735

Defendant pro se

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

Defendant pro se

Darnestown Road, Inc.
8938 Abbey Terrace
Potomac, MD 20854

Defendant pro se

49

_____    Science Park Associates, LLC
_____    6701 Democracy Blvd, Suite 515
_____    Bethesda, MD  20717

_____
_____    Defendant pro se

_____    Swain Landing LaPlata JC, LLC
_____    4302 Broken Arrow Court
_____    Clinton, MD 20735

_____    Defendant pro se

_____    Tenacity Investment, LLC
_____    7333 New Hampshire Ave., Unti 103
_____    Takoma Park, MD 20912

_____    Defendant pro se

/s/ Wes P. Henderson
Wes P. Henderson, Esq. (AIS #0212180062)

Formatted: No underline



**P**

US POSTAGE & FEES PAID
PRIORITY MAIL
ZONE 1 MEDIUM FLAT-RATE BOX
Commercial

062S0014950519
4969288
FROM 21114

Stamps
10/31/2024

# USPS PRIORITY MAIL ®

WES HENDERSON
2127 ESPEY COURT, SUITE 204
CROFTON MD 21114

**0003**

C068

**SHIP TO:**
DOUGLAS GANSLER, ESQ.
Cadwalader, Wickersham & Taft, LLP
1919 PENNSYLVANIA AVE NW STE 600
WASHINGTON DC 20006-3420

## USPS TRACKING #



9405 5112 0620 5418 8640 78

☐ **SUPREME COURT OF MARYLAND** ☐ **APPELLATE COURT OF MARYLAND**
☒ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Baltimore City
City/County

Located at 111 N Calvert Street, Baltimore, MD 21202    Telephone 4103965188
Court Address

Case No. C-24-cv-24-002631

STATE OF MARYLAND        or

Claudia Engelhorn _____ vs. ____ Eric D. Bolog, et al. _____
Plaintiff                                             Defendant

## NOTICE OF APPEARANCE
### (Md. Rules 2-131, 3-131, 4-214, 7-107, and 8-402)

Please enter my appearance for Whiteford Taylor & Preston, LLP _____,

the ☒ defendant ☐ plaintiff ☐ other: _____

in the above entitled action.

Kirk E. MacKinnon Morrow   2410241018              100 E Pratt Street, Suite 2440
Signature                          Attorney Number                          Address
November 4, 2024                                   Baltimore, MD  21202
Date                                                     City, State, Zip
Kirk E. MacKinnon Morrow                           (410) 949-1158
Printed Name                                           Telephone
Zuckerman Spaeder LLP                   kmackinnonmorrow@zuckerman.com  (410) 659-0436
Firm Name                                  E-mail                          Fax

## CERTIFICATE OF SERVICE

I certify that I served a copy of this Notice of Appearance upon the following party or parties by

mailing ☒ first-class mail, postage prepaid, ☐ hand delivery, on November 4, 2024 to:
Date

All Counsel of record via MDEC ___
Name                                                     Address

_____                  _____
City, State, Zip

_____                  _____
Name                                                     Address

_____                  _____
City, State, Zip
Kirk E. MacKinnon Morrow/CPF#2410241018
Name                                       Signature of Party Serving/Attorney

Check applicable:
☐ Court appointed
☒ Private
☐ Public Defender
☐ Pro Bono Counsel

**CC-DC-084** (Rev. 12/2022)

E-FILED; Baltimore City Circuit Court
Docket: 11/14/2024 9:19 PM; Submission: 11/14/2024 9:19 PM
Envelope: 18746765

## AFFIDAVIT OF NON-SERVICE

| Case: C-24-CV-24-002631 | Court: Circuit Court for Baltimore City | County: Baltimore City, MD | Job: 11864393 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Claudia Engelhorn, et al. | | **Defendant / Respondent:** Erik Bolog, et al. | |
| **Received by:** Maverick Process Service & Investigations LLC | | **For:** Henderson Law, LLC | |
| **To be served upon:** Michael Postal, Resident Agent for Tenacity Investments, LLC. | | | |

I, Monet Ballard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| **Recipient Name / Address:** | Michael Postal, Resident Agent for Tenacity Investments, LLC., Home: 1801 16th Street Northwest APT. 608, Washington, DC 20009 |
| **Manner of Service:** | Unsuccessful Attempt |
| **Documents:** | Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC. |

**Additional Comments:**
1) Unsuccessful Attempt: Oct 8, 2024, 1:39 pm EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735
Attempt made, not served. Current resident Anjon Jones offered to accept the paperwork for Michael Postal.

2) Unsuccessful Attempt: Oct 16, 2024, 11:31 am EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735
Attempted. Not served. Spoke with Anjon who stated that Michael doesn't live at this address.

3) Unsuccessful Attempt: Oct 16, 2024, 12:59 pm EDT at Second Possible Address for Michael Postal only if unable to serve at home address: 7333 New Hampshire Avenue Unit 103, Takoma Park, MD 20912
Attempted. Not served. Went to address and was able to gain access into building. Knocked but got no answer. There was a package at the door but did not have Michael's name on it. Went to rental office and asked if Michael lives in 103. She stated that the owner of the building lives in 103. She also said that Michael stayed with the owner for a while but left about a year ago. See attached

4) Unsuccessful Attempt: Oct 22, 2024, 12:19 pm EDT at Home: 1801 16th Street Northwest APT. 608, Washington, DC 20009
Attempted, not served. Knocked but got no answer and heard no movement, however the receptionist did confirm that he does indeed live here.

5) Unsuccessful Attempt: Oct 23, 2024, 9:51 am EDT at Home: 1801 16th Street Northwest APT. 608, Washington, DC 20009
Attempted. Not served. Building is locked and no one is at the front desk

6) Unsuccessful Attempt: Oct 28, 2024, 6:05 pm EDT at Home: 1801 16th Street Northwest APT. 608, Washington, DC 20009
Attempt made, not served. No answer at apartment door. I asked the receptionist if he knows when he is typically home and he stated he does not.

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

| | |
|---|---|
| Monet Ballard | 11/05/2024 |
| | Date |

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

E-FILED; Baltimore City Circuit Court
Docket: 11/14/2024 9:19 PM; Submission: 11/14/2024 9:19 PM
Envelope: 18746765

## AFFIDAVIT OF SERVICE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>12123681 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Claudia Engelhorn, et al. | | Defendant / Respondent:<br>Erik Bolog, et al. | |
| Received by:<br>Maverick Process Service & Investigations LLC | | For:<br>Henderson Law, LLC | |
| To be served upon:<br>State Department of Assessment and Taxation for Tenacity Investments, LLC. | | | |

I, Rodney Getlan, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** SDAT Employee , State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202

**Manner of Service:** Government Agency, Nov 6, 2024, 1:37 pm EST

**Documents:** 2 (two) copies of the Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC., Letter , Affidavit of Non Service , Service fee check in the amount of $50

**Additional Comments:**
1) Successful Attempt: Nov 6, 2024, 1:37 pm EST at State Department of Assessment and Taxation : 700 East Pratt Street, Baltimore, MD 21202 received by SDAT Employee . Age: 60; Ethnicity: African American; Gender: Female; Weight: 130; Height: 5'3"; Hair: Black; Eyes: Brown; Relationship: SDAT Employee ;
Served a SUITABLE AGE PERSON (over the age of 18) by delivering and leaving a true copy of the document at this location. The person served stated they are authorized to accept service on behalf of the agency named.

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____    11/08/2024

Rodney Getlan                          **Date**

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

CLAUDIA ENGELHORN, *et al.*,

     Plaintiffs,

v.

ERIK D. BOLOG, *et al.*,

     Defendants.

No. C-24-CV-24-002631

### AFFIDAVIT OF C. ALLEN FOSTER

1. I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2. I am currently Senior Counsel at Whiteford, Taylor & Preston LLP ("Whiteford"), where I have worked since approximately 2014. I am admitted to practice law in the District of Columbia and North Carolina and in various federal courts across the country.

3. I worked closely with Erik Bolog in various matters while he was at Whiteford and, previously, at other firms. I worked with Mr. Bolog on Claudia Engelhorn's challenge to her father's estate. Although Mr. Bolog had the initial contact through which Ms. Engelhorn was introduced to the firm, I played a significant role in bringing the matter to the firm and in the ensuing representation.

4. Through a mutual friend, Richard Bussman, Ms. Engelhorn's adult son, referred Ms. Engelhorn to Mr. Bolog in 2019. Mr. Bolog discussed the potential matter with Mr. Bussman and we prepared an engagement letter for Ms. Engelhorn. A copy of a draft

engagement letter dated October 3, 2019, is attached hereto as Exhibit 1. A copy of an email reflecting that Mr. Bolog sent the draft engagement letter to Ms. Engelhorn on October 3, 2019, is attached hereto as Exhibit 2.

5. A copy of a Whiteford business record reflecting an email dated October 14, 2019, between Mr. Bussman and Mr. Bolog, is attached hereto as Exhibit 3.

6. Whiteford had continuing discussions with Mr. Bussman and Ms. Engelhorn about a possible representation through the winter of 2019-20. I regularly discussed the potential matter with Mr. Bolog, along with the possible terms of the representation.

7. On February 11, Mr. Bolog's and my legal assistant/paralegal sent another version of an engagement letter to Ms. Engelhorn, copying Mr. Bolog and me. Copies of that email and the draft engagement letter are attached hereto as Exhibits 4 and 5.

8. A copy of a Whiteford business record reflecting an email string dated February 12, 2020, between Ms. Engelhorn and Mr. Bolog is attached hereto as Exhibit 6.

9. On February 12, 2020, Mr. Bolog sent a copy of a draft engagement letter to Mr. Bussman, with a copy to Ms. Engelhorn and me. Copies of that email and the draft engagement agreement are attached hereto as Exhibits 7 and 8.

10. On February 20, 2020, Mr. Bolog's and my legal assistant/paralegal sent a revised version of the engagement agreement to Ms. Engelhorn, with a copy to me. Copies of the email and the engagement agreement are attached hereto as Exhibits 9 and 10.

11. I know from Whiteford business records and I personally recall that Mr. Bolog and I met with Ms. Engelhorn in Denver on February 28, 2020. I had arranged for the meeting to take place at the Denver office of a law firm where I'd previously worked. Copies of relevant records are attached hereto as Exhibits 11 and 12.

12. At the meeting, we gave Ms. Engelhorn ample opportunity to ask questions about the engagement agreement and we did discuss certain of the payment provisions in detail. I am confident that I personally discussed the arbitration clause with Ms. Engelhorn because it was my practice to include such a clause in all engagement agreements and, in this particular case, I was concerned that Ms. Engelhorn was dissatisfied with her European counsel and intended to change the lead in the representation from them to us. Our continuing legal education frequently reminds us to be cautious when clients are changing lawyers.

13. I do not recall exactly when we learned that Ms. Engelhorn had signed the engagement agreement, although I do recall learning at some point that she had signed it. My best recollection is that, after the discussion of the provisions of the engagement agreement in the February 28 Denver meeting, Ms. Engelhorn and her daughter separately discussed the potential representation and then told us that they were satisfied with the terms. Whiteford's business records reflect that, on February 28, 2020, Mr. Bolog sent a photograph of the signature page of the engagement agreement dated February 20, 2020, to his assistant and me, and that Ms. Engelhorn's signature is dated February 27, 2020. I do not recall whether Ms. Engelhorn gave us

3

the signature page at the meeting or supplied it later to Mr. Bolog.  Copies of Mr.

Bolog's February 28 email and the signature page from Ms. Engelhorn are attached

hereto as Exhibit 13 and 14. The complete engagement agreement consists of Exhibits

10 and 14.


I solemnly affirm under the penalties of perjury that the contents of this document
are true to the best of my knowledge, information, and belief.

_____
C. Allen Foster        10/14/24

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(1)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405
MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

October 3, 2019

**VIA ELECTRONIC MAIL**
richbuss@gmail.com

Mrs. Claudia Engelhorn
c/o Mr. Richard Bussman

Re:        **Retainer Letter re: All Claims Regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure speaking with you and Richard regarding the above-referenced matter. I am truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate. (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

PHASE 1.

We will investigate the claims, review whatever materials are available regarding Your claims and attend a to be scheduled meeting with Your current lawyers to fully assess Your options.  For these tasks, we will charge our typical hourly rates ($850.00 for Allen Foster and

October 3, 2019
Page 2

myself and for our other partners and associates, between $350.00-$650.00 per hour), plus expenses. We agree to place a fee cap for Phase 1 work at $25,000.00, plus expenses.

PHASE 2.

After the completion of Phase 1, if You choose to move forward with Your claims, WTP will agree to continue the representation on a blended fee arrangement. As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself. Our other partners and associates charge between $350.00-$650.00 per hour. For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates. In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and

October 3, 2019
Page 3

are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

Attachment

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____
Claudia Engelhorn

October 3, 2019
Page 4

# WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

## Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

## Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

## Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

October 3, 2019
Page 5

## Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

## Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

## Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

You have the right at any time to terminate our services and representation upon written notice to the firm. We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred

October 3, 2019
Page 6

on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(2)

| | |
|---|---|
| **From:** | Bolog, Erik[EBolog@wtplaw.com] |
| **Sent:** | Wed 2/5/2020 2:53:50 PM (UTC-05:00) |
| **To:** | West, Nicole[NWest@wtplaw.com] |
| **Subject:** | FW: Bolog Folios |
| **Attachment:** | 2019.10.03 - Engagement Ltr to Bussman re Engelhorn.PDF |

Put this in our binders.

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Bolog, Erik
**Sent:** Thursday, October 03, 2019 3:59 PM
**To:** 'richbuss@gmail.com' <richbuss@gmail.com>
**Subject:** FW: Bolog Folios

Richard,

Please find attached an engagement letter.  Please call with any questions or comments.

Best,

Erik

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(3)

**From:**          Richard Bussmann[richbuss@gmail.com]
**Sent:**          Mon 10/14/2019 12:29:52 PM (UTC-04:00)
**To:**            Bolog, Erik[EBolog@wtplaw.com]
**Subject:**       [EXTERNAL] RE: new matter

Good morning Erik,

She is in the process of reviewing the situation with the Swiss lawyers as there are still a number of
questions outstanding. I had a discussion with her over the weekend and she is not signing the
settlement but is scheduling weekly meetings to evaluate where we really are.

She attended a brief by the Swiss Lawyers and has some questions related to how you would really be
able to help considering it is a swiss case in swiss courts.

For now nothing is off the table but she isn't ready to sign a retainer letter. I will let you know as this
situation develops, right now we are processing and collecting the information from the current legal
team.

Thanks!

Richard

**From:** Bolog, Erik
**Sent:** Monday, October 14, 2019 11:22 AM
**To:** richbuss@gmail.com
**Subject:** new matter

Richard,

Should we expect to hear back from you and your mother re the matter we discussed?

Please advise.

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

 **Whiteford | Taylor | Preston**

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768

Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(4)

| **From:** | West, Nicole[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NWRAY] |
|---|---|
| **Sent:** | Tue 2/11/2020 2:58:37 PM (UTC-05:00) |
| **To:** | Claudia Chimarro[rcpclaudia76@gmail.com] |
| **Cc:** | Foster, C. Allen[CAFoster@wtplaw.com]; Bolog, Erik[EBolog@wtplaw.com] |
| **Subject:** | RE: [EXTERNAL] Re: info |
| **Attachment:** | 2020.02.11 - Engagement Ltr to Engelhorn.PDF |

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com | www.wtplaw.com

*WTP is a proud member of two global law firm networks.*

 

 Please consider the environment before printing this email.

---

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my

father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

 **Whiteford | Taylor | Preston**.

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:

Thank you for sending.  I will read them all and be prepared to deal with the issues when we meet on Monday.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 6:03 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Hi Eric

I flooded your inbox.

Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:

> Then we shall meet Monday.  I will provide you the details of where and when later this week.

> Best regards,

> Erik

> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com

> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as well.

Thanks,
Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:35 PM, Bolog, Erik
> <EBolog@wtplaw.com> wrote:
>
>
> Claudia,
>
> I would like to have my partner Allen Foster join us as well.
> He is unavailable Friday.  He is available Thursday (but you
> mentioned that you have a doctor's appointment in SF on
> Thursday).  We could meet you in SF on Thursday afternoon,
> after your Doctor's appointment, or meet in Denver on
> Monday.  If neither of these options work, I will meet you on
> Friday in Denver.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and looking
forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC |
20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of
Whiteford, Taylor & Preston LLP which may be confidential
and/or privileged. The information is intended to be for the
exclusive use of the planned recipient. If you are not the intended
recipient, be advised that any disclosure, copying, distribution or
other use of this information is strictly prohibited. If you have
received this transmission in error, please notify the sender
immediately.

# EXHIBIT A(5)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C. 20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 11, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:          **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter. We are truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf. This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a blended fee arrangement. As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself. Our other partners and associates charge between $350.00-$650.00 per hour. For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates. In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a

**Whiteford, Taylor & Preston L.L.P. is a limited liability partnership. Our Delaware offices are operated under a separate Delaware limited liability company, Whiteford, Taylor & Preston L.L.C.*

February 11, 2020
Page 2

contingency fee of any recovery that we obtain on Your behalf, as follows:  (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent.  We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses.  Cost and expenses include, for example, Court filing fees, service of process fees,  expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like.  Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice.  You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us.  You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

February 11, 2020
Page 3

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
     Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____

Claudia Engelhorn

February 11, 2020
Page 4

## WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

### Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

### Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 11, 2020
Page 5

### Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

### Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

### Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

### Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 11, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm.  We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(6)

**From:**          Claudia Chimarro[rcpclaudia76@gmail.com]
**Sent:**          Wed 2/12/2020 5:30:58 PM (UTC-05:00)
**To:**            Bolog, Erik[EBolog@wtplaw.com]
**Subject:**       [EXTERNAL] Re: let me know when we can touch base

Yes thanks

Sent from my iPhone


On Feb 12, 2020, at 3:16 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:


Can I call you at 4 pm your time?

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>


1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 12, 2020 4:04 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: let me know when we can touch base

You can call me in an hour if possible.
Claudia

Sent from my iPhone


On Feb 12, 2020, at 12:05 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:


**Erik D. Bolog|** *Senior Counsel*

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which
may be confidential and/or privileged. The information is intended to be for the exclusive use of the
planned recipient. If you are not the intended recipient, be advised that any disclosure, copying,
distribution or other use of this information is strictly prohibited. If you have received this transmission
in error, please notify the sender immediately.

# EXHIBIT A(7)

**From:**      Bolog, Erik[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP
              (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BOLOG, ERIK722]

**Sent:**      Wed 2/12/2020 6:18:55 PM (UTC-05:00)

**To:**        richbuss@gmail.com[richbuss@gmail.com]

**Cc:**        Claudia Chimarro[rcpclaudia76@gmail.com]; Foster, C.
              Allen[CAFoster@wtplaw.com]

**Subject:**   FW: [EXTERNAL] Re: info

**Attachment:** 2020.02.11 - Engagement Ltr to Engelhorn.PDF

Richard,

I hope all is well.  Allen Foster and I met with your mother on Monday in Denver.  I have attached the
retainer letter we have sent to her for your review and comment.

Please let me know if you have any questions.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** West, Nicole <NWest@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 2:59 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; Bolog, Erik <EBolog@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com  | www.wtplaw.com

 

 Please consider the environment before printing this email.

---

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

**Whiteford | Taylor | Preston.**℠

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

> On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>
> Thank you for sending.  I will read them all and be prepared to deal with the issues when we meet on Monday.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 6:03 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>

**Subject:** [EXTERNAL] Re: info

Hi Eric

I flooded your inbox.

Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com>
> wrote:

Then we shall meet Monday.  I will provide you the details of
where and when later this week.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as
well.

Thanks,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:35 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:


Claudia,

I would like to have my partner Allen Foster join us as
well.  He is unavailable Friday.  He is available
Thursday (but you mentioned that you have a
doctor's appointment in SF on Thursday).  We could
meet you in SF on Thursday afternoon, after your
Doctor's appointment, or meet in Denver on
Monday.  If neither of these options work, I will meet
you on Friday in Denver.

Best regards,

Erik

**Erik D. Bolog**| *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com


**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and
looking forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N |
Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

# EXHIBIT A(8)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 11, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:     **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter.  We are truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a blended fee arrangement.  As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself.  Our other partners and associates charge between $350.00-$650.00 per hour.  For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates.  In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a

February 11, 2020
Page 2

contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

February 11, 2020
Page 3

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____                Date: _____

Claudia Engelhorn

February 11, 2020
Page 4

# WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

## Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

## Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 11, 2020
Page 5

**Billing**

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

**Advanced Fees/Retainers**

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

**Professional Ethics/Confidentiality**

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

**Termination of Services**

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 11, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm.  We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(9)

| | |
|---|---|
| **From:** | West, Nicole[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NWRAY] |
| **Sent:** | Thur 2/20/2020 2:34:31 PM (UTC-05:00) |
| **To:** | Claudia Chimarro[rcpclaudia76@gmail.com] |
| **Cc:** | Foster, C. Allen[CAFoster@wtplaw.com]; Bolog, Erik[EBolog@wtplaw.com] |
| **Subject:** | RE: [EXTERNAL] Re: info |
| **Attachment:** | 2020.02.20 - Engagement Ltr to Engelhorn.PDF |

Good Afternoon Claudia:
Attached is our firms revised engagement letter for your review and signature. Once signed, you can email it back to me.
Thank you,
Nicole

---

**From:** West, Nicole
**Sent:** Tuesday, February 11, 2020 2:59 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; Bolog, Erik <EBolog@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com | www.wtplaw.com

*WTP is a proud member of two global law firm networks.*

 

🖨 Please consider the environment before printing this email.

---

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*

 **Whiteford | Taylor | Preston.**LLP

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

> On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>
>> Thank you for sending.  I will read them all and be prepared to deal with the issues
>> when we meet on Monday.
>>
>> Best regards,
>>
>> Erik
>>
>> **Erik D. Bolog|** *Senior Counsel*
>> <image001.jpg>
>> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
>> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
>> ebolog@wtplaw.com | www.wtplaw.com
>>
>> Legal Assistant & Paralegal:
>> Nicole W. West
>> Phone: 202.659.6768
>> Fax: 703.259.6532
>> nwest@wtplaw.com
>>
>>
>> **From:** Claudia Chimarro <rcpclaudia76@gmail.com>
>> **Sent:** Tuesday, February 04, 2020 6:03 PM
>> **To:** Bolog, Erik <EBolog@wtplaw.com>
>> **Subject:** [EXTERNAL] Re: info
>>
>> Hi Eric
>>
>> I flooded your inbox.
>>
>> Claudia
>>
>> Sent from my iPhone
>>
>>> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>>>
>>>> Then we shall meet Monday.  I will provide you the details of where and
>>>> when later this week.
>>>>
>>>> Best regards,
>>>>
>>>> Erik

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as well.

Thanks,
Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:35 PM, Bolog, Erik
> <EBolog@wtplaw.com> wrote:
>
> Claudia,
>
> I would like to have my partner Allen Foster join us as well.
> He is unavailable Friday.  He is available Thursday (but you
> mentioned that you have a doctor's appointment in SF on
> Thursday).  We could meet you in SF on Thursday afternoon,
> after your Doctor's appointment, or meet in Denver on
> Monday.  If neither of these options work, I will meet you on
> Friday in Denver.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and looking
forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC |
20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of
Whiteford, Taylor & Preston LLP which may be confidential
and/or privileged. The information is intended to be for the
exclusive use of the planned recipient. If you are not the intended
recipient, be advised that any disclosure, copying, distribution or
other use of this information is strictly prohibited. If you have
received this transmission in error, please notify the sender
immediately.

# EXHIBIT A(10)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 20, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:                **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter.  I am truly sorry about the circumstances making our meeting necessary. We are, however, pleased that you  ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights or other rights you may have concerning Trusts established by him. (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.  You have put us in contact with Tina Wuestemann of the firm Bar & Karrer, AG, the firm that has been representing you in the Matter, and have instructed us that we are to take the lead henceforth.  Because of the current state of the Matter and the settlement negotiations which have been underway, it is our intention to meet with them as soon as possible in order to develop our recommendations to you about the path forward.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a hybrid fee arrangement.  As set forth above, our

February 20, 2020
Page 2

typical hourly rates are $850.00 for Allen Foster and myself. Our other partners and associates charge between $350.00-$650.00 per hour. For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates. In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs, travel expenses and the like), we will also be paid out a contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention. By way of illustration, assume that you obtain a gross recovery of $350,000,000. Our fee would be -0- on the first one hundred million, 10% or $10,000,000 on the second hundred million, 15% or $15,000,000 on the third hundred million and 20% or $10,000,000 on the last fifty million. In other words, the contingency fee would total $35,000,000. In addition, responsive to your inquiry and request, we are willing to credit against this contingent fee the fees you have paid us on an hourly basis, by crediting 50% of those fees against the 10% contingency on the second hundred million and crediting the remaining fees against the 15% contingency on the third hundred million Using the example above, if you have paid us $2 million as of the time of resolution of the Matter, our contingent fee of $10,000,000 on the second hundred million would be reduced by $1 million to $9,000,000 and our contingent fee of $15,000,000 on the third hundred million would be reduced by $1 million to $14,000,000.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive. You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals

February 20, 2020
Page 3

and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
    Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____
Claudia Engelhorn

February 20, 2020
Page 4

## WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

### Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

### Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 20, 2020
Page 5

## Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

## Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

## Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

## Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 20, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm. We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm. We look forward to a mutually satisfying and rewarding relationship.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM; Envelope: 18816799

# EXHIBIT A(11)

| | |
|---|---|
| **From:** | Bolog, Erik[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BOLOG, ERIK722] |
| **Sent:** | Thur 2/27/2020 3:43:33 PM (UTC-05:00) |
| **To:** | Claudia Chimarro[rcpclaudia76@gmail.com] |
| **Subject:** | getting together |

Claudia,

I am looking forward to getting together tomorrow (if that still works for you).  We do need to get the retainer letter signed.  Let me know if you have any more questions.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM;
Envelope: 18816799

# EXHIBIT A(12)

| | |
|---|---|
| **From:** | mobleye@gtlaw.com[mobleye@gtlaw.com] |
| **Sent:** | Thur 2/27/2020 4:20:46 PM (UTC-05:00) |
| **To:** | seaborgj@contract.gtlaw.com[seaborgj@contract.gtlaw.com] |
| **Cc:** | Bolog, Erik[EBolog@wtplaw.com] |
| **Subject:** | [EXTERNAL] Denver GT Conference room, Friday Feb 28, |

Josh, I am copying Mr. Bolog on this email.  Below are the 4 guests that will use the Aspen Room tomorrow starting at 11 am through mid-afternoon (I booked it until 4 pm.)

Erik Bolog

Allen Foster

Claudia Engelhorn

Courtney Engelhorn

Thank you!

**Evonne Mobley**
Executive Assistant to Hon. Joe R. Reeder; Gen (ret) John D. Altenburg, Jr. & Ms. Juliana Laurello
Greenberg Traurig, LLP
2101 L Street N.W. | Washington, D.C. 20037
T 202.533.2325 | F 202.331.3101 | C 786.634.8847

mobleye@gtlaw.com  |  www.gtlaw.com [gtlaw.com]

 GT GreenbergTraurig

PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT A(13)

| | |
|---|---|
| **From:** | Bolog, Erik[EBolog@wtplaw.com] |
| **Sent:** | Fri 2/28/2020 5:59:02 AM (UTC-05:00) |
| **To:** | West, Nicole[NWest@wtplaw.com]; Foster, C. Allen[CAFoster@wtplaw.com] |
| **Subject:** | IMG_1480.jpeg |
| **Attachment:** | IMG_1480.jpeg |
| **Attachment:** | ATT00001.txt |

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM;
Envelope: 18816799

# EXHIBIT A(14)

and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____
Claudia Engelhorn

Date: 02-27-2020

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT B(1)

## Murphy, Bill

| | |
|---|---|
| **From:** | Williams, Anthony <anthony.williams@dentons.com> |
| **Sent:** | Thursday, May 25, 2023 3:08 PM |
| **To:** | Bernstein, Gregg |
| **Cc:** | Murphy, Bill; Lincoln, Patricia L. |
| **Attachments:** | 2021-10-11 JAREB Irrevocable Trust Agreement.pdf; 2021-10-11 Notice of Gift from C. Engelhorn to E. Bolog.pdf; 2021-10-12 Transfer Instructions from C. Engelhorn to BoA.pdf |

**EXTERNAL**

Dear Gregg:

Thank you for your email. Attached are the documents relating to the $10 million "gift". It is our client's contention that she did not understand all of the implications of this.

With regard to the escrow, could you please resend a history of the escrow from its opening until today. I believe we received information in the past which was incomplete. After receipt of that, we will identify the problem disbursements.

Thank you.

**Anthony Williams**
+1 212 905 8308
anthony.williams@dentons.com   |   Bio   |   Website
Assistant: Catherine Warwick +1 212 905 8347
Dentons US LLP

**大成 DENTONS**

Our Legacy Firms   |   Client Experience (CX)

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT B(2)

<u>NOTICE OF GIFT</u>

TO:          ERIK D. BOLOG

FROM:     CLAUDIA A. ENGELHORN

REGARDING:  INTENT TO MAKE A GIFT TO ERIK D. BOLOG

DATE:       OCTOBER 11, 2021

Dear Erik,

The purpose of this Notice of Gift is to set forth my intentions relating to making a gift to an irrevocable trust for the benefit of you and your family.

1. The Swiss Litigation has concluded, resulting in an enormous payment to me personally, thanks to your leadership, skill and guidance of this cross-border matter. You and I battled this matter between the United States, Switzerland and Monaco, during the heart of the Covid pandemic. You risked yourself for me. You were much more than a lawyer, but, were also my social worker (for me), strategist and confidant. You believed in me when all others, including our Swiss team, turned on me.

2. I have paid all legal fees owed to Whiteford Taylor and Preston, PLLC. Moreover, I have funded a significant escrow (over $400,000) at your firm for all future work that will be done on my behalf. If that escrow is exhausted, I will replenish it.

3. I recently approached you and let you know that I, as a result of our friendship and my financial ability to do so, had determined to fund as a grantor, $10M USD to an irrevocable trust for your family. You never requested anything from me other than what was due your law firm pursuant to the retainer agreement.

4. In fact, after hearing about my intention relating to funding the irrevocable trust on behalf of your family, you strongly tried to discourage the gift. As you have learned over the past several years, I am not easily discouraged and once I have decided to do something, I do it.

5. The gift has nothing to do with the legal services that you have provided to me, nor any legal services that you or your firm will perform on my behalf prospectively. As stated above, all legal fees and expenses are paid and the firm is well funded by me for future work to be done on my behalf and as the Life Trustee of the Mannheim Trust.

6. After realizing that you were not going to change my mind relating to the making of the gift referenced above, you advised (begged) me to hire independent counsel to advise me relating to the gift, so that no one could ever suggest that you influenced me in any way nor took advantage of me and our relationship in any way relating to the gift. You also advised me that independent counsel should review the gift and any conveyance documents to avoid any appearance of impropriety or a conflict of interest. I assessed your admonishment relating to retaining independent counsel relating to the gift and independently determined that I did not wish to follow your guidance in relation to the hiring of another attorney to review the gift nor the documentation of the gift. I completely understand all of the issues relating to the gift and the documentation necessary for completing it.

7. The gift to the trust for the benefit of you and your family is being made by me because of our relationship and my desire to share my good fortune with my very dear friend and his family.

8. I want to be perfectly clear, the gift has nothing to do with your law firm, nor legal

services that you have or will provided to me.

IN WITNESS WHEREOF, I, **CLAUDIA ENGELHORN**, have hereunto set my hand and seal

this 11th day of October, 2021.

Signed, sealed and delivered
in the presence of:

_____

_____

_____(SEAL)
**CLAUDIA ENGELHORN**

**STATE OF** Massachusetts ;
**CITY/COUNTY OF** _____, **to-wit:**

The foregoing instrument was acknowledged before me on the 11th day of Octob ___

_____, 2021 by **CLAUDIA ENGELHORN**, Grantor.

_____
Notary Public

SARAH K. MAYO
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

My commission expires: 08/25/2025
Notary Registration No.: n/a

E-FILED; Baltimore City Circuit Court
Docket: 11/15/2024 11:54 AM; Submission: 11/15/2024 11:54 AM
Envelope: 18816799

# EXHIBIT B(3)

# JAREB
# IRREVOCABLE TRUST AGREEMENT
# DATED OCTOBER 11, 2021

THIS JAREB IRREVOCABLE TRUST AGREEMENT ("Agreement") is made this 11th day of October, 2021, by and between **CLAUDIA A. ENGELHORN** (hereinafter referred to as the "Grantor"), and Erik D. Bolog (hereinafter referred to as the "Trustee").

## ARTICLE I - NAME OF TRUST

This Trust shall, for convenience, be known as the "**JAREB IRREVOCABLE TRUST DATED THE 11th DAY OF OCTOBER, 2021**", and it shall be sufficient that it be referred to as such in any instrument of transfer, deed, assignment, bequest or devise.

## ARTICLE II - TRUST PROPERTY

The Grantor hereby transfers and delivers to the Trustee the property listed in Schedule A annexed hereto, to have and to hold the same and any cash, securities, or other real and personal property which the Trustee may, pursuant to any of the provisions hereof, at any time hereafter hold or acquire, all of such property being hereinafter referred to as the "Trust Estate", for the uses and purposes and upon the terms and conditions herein set forth.

## ARTICLE III - ADDITIONAL PROPERTY

The Grantor, with the consent of the Trustee, may add other property to the Trust hereby created, by transferring such property to the Trustee hereunder by deed, assignment or other instruments of transfer or bequest or devise, and if so added, such property shall be governed by the provisions hereof, the same as if originally included hereunder.

1

## ARTICLE IV - IRREVOCABILITY

Any trusts hereby created shall be irrevocable, and the Grantor expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source she may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke or terminate any trust or any of the terms of this Trust Agreement in whole or in part. By this instrument, the Grantor relinquishes absolutely and forever all the Grantor's possession or enjoyment of or right to principal and income from the Trust Estate, and all the Grantor's rights and powers, whether alone or in conjunction with others, to designate the persons who shall possess or enjoy the Trust Estate or the income therefrom.

## ARTICLE V – DISPOSITIVE PROVISIONS

A.      <u>Distributions of Net Income and Principal</u>.  During the lifetime of Erik D. Bolog, the Trustee shall distribute to or for the benefit of Erik D. Bolog so much of the net income and principal of this Trust as the Trustee, in her/his/its sole and absolute discretion, may deem necessary for his health, education, maintenance and support.

B.      <u>Distribution Upon Death</u>. Upon the death of Erik D. Bolog, the Trustee shall divide the rest, residue and remainder of the Trust Estate into as many equal shares as Erik D. Bolog shall then have children living and children deceased with issue surviving, one equal share for each living child and one equal share for the collective living descendants of each deceased child, <u>per stirpes</u>. Any share established for a living child shall be distributed absolutely to such child. Any share established for the descendants of a deceased child shall be retained in a separate trust and administered by the Trustee in accordance with provisions of paragraph C below.

2

C.    <u>Trust for Descendants of Deceased Child</u>.   Any trust established for the collective descendants of a deceased child of Erik D. Bolog as provided hereinabove shall be held and administered by the Trustee as follows:

1.    <u>Discretionary Distributions</u>.  The Trustee shall distribute to or for the benefit of any one or more of such descendants so much of the net income and principal of the trust as the Trustee, in her/his/its complete and absolute discretion, deems necessary for their proper health, education, maintenance and support.  Distributions of principal from the trust may be made at any time and from time to time to any one or more of the descendants with no obligation of the Trustee to make substantially similar or equal distributions of principal to any one or more of the other descendants, and to the exclusion of any one or all of the other descendants.

2.    <u>When Oldest Reaches Age 21</u>.  When the oldest living person who is a beneficiary of the trust attains twenty-one (21) years of age, the Trustee shall divide the trust assets into equal shares, one share for the oldest living beneficiary, one share for each sibling of the oldest living beneficiary and one share for any deceased sibling of the oldest living beneficiary who has descendants then living.  The oldest living beneficiary and each living sibling of the oldest living beneficiary shall be referred to herein as the "Primary Beneficiary" with respect to her or his share of the trust. The Trustee shall hold each separate share as a separate trust and may continue to make discretionary distributions of net income and principal from each separate trust for the health, care, maintenance and support of the Primary Beneficiary and her/his/descendants. Any share established for the descendants of a deceased sibling of the oldest living beneficiary shall be held and administered as a separate trust for such collective descendants as provided in this paragraph C.

3.    <u>Right to Withdraw</u>. Each Primary Beneficiary shall have the right to withdraw

3

one-half (1/2) of the remaining principal and undistributed income of her or his separate trust upon

attaining the age of thirty (30) years, and the balance of the principal and undistributed income of her

or his separate trust upon attaining the age of thirty five (35) years. If the Primary Beneficiary dies

before withdrawing her or his entire trust, the balance of the trust shall be distributed to the Primary

Beneficiary's estate. If all of the descendants who are the beneficiaries of any trust die before

withdrawing the entire trust, such trust shall be distributed to the remaining Primary Beneficiaries,

per stirpes.

        4.     Termination of Trusts.  Notwithstanding any provision of the Agreement, if

at any time after the division of this Trust into shares the Trustee determines that the continuation

of any share in trust under this Trust Agreement is not warranted because of size or cost, the

Trustee is authorized to terminate that share of the Trust and distribute it to the income beneficiary.

<div align="center">

## ARTICLE VI
## TRUST FOR CERTAIN BENEFICIARIES

</div>

    A.    Beneficiaries Under Impairment.  Whenever any trust interest is to be distributed

to a beneficiary who, in the opinion of the Trustee is unable to manage her or his financial affairs

by reason of a physical or mental impairment (including, but not limited to, a drug, alcohol or

gambling addiction), the Trustee may continue to hold the interest in trust. The Trustee shall have

no obligation to inquire into or seek a judicial determination of (1) the ability of any beneficiary

to manage her or his financial affairs or (2) the existence of any physical or mental impairment.

The Trustee may pay to or for the benefit of the beneficiary as much of the net income or principal

of the trust as the Trustee may deem appropriate for the beneficiary's health, education,

<div align="center">4</div>

maintenance and support. When, in the opinion of the Trustee, the beneficiary is able to manage her or his financial affairs, the Trustee shall distribute the trust assets to the beneficiary.

B.    <u>Distribution to Custodian.</u>  The Trustee may also distribute any interest vesting in a beneficiary under the age of twenty-one to a custodian under the Maryland Uniform Transfers to Minors Act.

### <u>ARTICLE VII - DEALING WITH THE ESTATE OF ERIK D. BOLOG</u>

A.    Notwithstanding any other provisions of this Agreement to the contrary, within a reasonable period of time after the death of Erik D. Bolog, the Trustee may, within her/his/its sole and absolute discretion, purchase assets from the estate of Erik D. Bolog at a fair value using for this purpose the assets of this Trust. The propriety of the purchase, the amount of such assets purchased, and the ascertainment of fair value shall be solely within the discretion of the Trustee, and the Trustee shall incur no liability as a result of such purchase or purchases whether or not such assets constitute investments which may be legally made by the Trustee.  If the Trustee uses all or any portion of the proceeds of any policies of insurance or other assets of this Trust to purchase assets from the estate of Erik D. Bolog, as authorized above, then such assets or the proceeds of any sale, exchange, or reinvestment of such assets, or the income generated by such assets, shall be held for those purposes provided herein.

B.    Notwithstanding any other provision of this Agreement to the contrary, within a reasonable period of time after the death of Erik D. Bolog, the Trustee may, within her/his/its sole and absolute discretion, loan funds to the estate of Erik D. Bolog for any purpose on the terms and conditions as the Trustee deems appropriate; however, in no event or under any circumstances shall the Trustee make any loan or take any action under this Article which would cause the assets

5

of this Trust or any portion thereof to be included in the gross estate of Erik D. Bolog for federal estate tax purposes as determined under the Code, as of the date of death of Erik D. Bolog, or cause an increase in federal estate taxes of the estate of Erik D. Bolog. In the event that the Trustee's power to loan funds to the estate of Erik D. Bolog, or any other power under this Article would cause the assets of this Trust to be included in the gross estate of Erik D. Bolog for federal estate tax purposes, or cause the federal estate taxes on the estate of Erik D. Bolog to increase, then the Trustee's power to loan funds to the estate, or any other such power under this Article shall be null and void.

## **ARTICLE VIII - GENERAL PROVISIONS**

The provisions of this Article shall apply to any and all trusts established hereunder, unless herein provided otherwise:

A. <u>Restraint on Alienation of Income</u>. No income or principal payable to or held for any beneficiary shall, while in the possession of the Trustee, be alienated, disposed of, or encumbered in any manner other than by Trustee action authorized hereby. Throughout the duration of this Trust, no beneficiary thereof shall have the power, voluntarily or involuntarily, to sell, alienate, convey, assign, transfer, mortgage, pledge, or otherwise dispose of or encumber any principal or income thereof or any interest whatever therein until physical distribution or payment is made to her or him, and no interest of any beneficiary in or claim to any trust assets or benefits shall be subject to the claims of any of her or his creditors or to judgment, levy, execution, sequestration, garnishment, attachment, bankruptcy or other insolvency proceedings, or any other legal or equitable process.

6

B.    <u>Reliance by Third Parties</u>.  No grantee, purchaser, or other person dealing with the Trustee while the Trustee is purporting to act in such capacity under any power or authority granted the Trustee herein need inquire into the initial existence of facts upon which the purported power or authority depends, or into the continued existence of the power, the expediency of the transaction, or the proper application of the proceeds or other consideration.

C.    <u>Situs of Trust</u>.  This Trust Agreement has been accepted by the Trustee in the State of Maryland, and it shall be construed and regulated and all rights under it shall be governed by the laws of the State of Maryland.

D.    <u>Notice to Trustee of Beneficiaries</u>.  Until the Trustee shall receive written notice of any birth, marriage, death or other event upon which the right to distribution of the income or principal of any Trust created hereunder may depend, the Trustee shall incur no liability for distributions made in good faith to the persons whose interest may have been affected by that event.

E.    <u>Payment to or for Incompetents or Minors</u>.  The Trustee may make distributions for the benefit of any adult beneficiary hereunder directly to that beneficiary or to her or his legal guardian, if she or he should be incompetent, or in direct payment of her or his expenses of the types that the Trustee is authorized hereby to make.  The Trustee may make payments for the benefit of any minor beneficiary to her or his natural guardian or other person having care or custody of such minor, or in direct payment of her or his expenses of the types the Trustee is authorized hereby to make.  The Trustee shall not be obligated to see to the application of funds so disbursed, and the receipt of the payee shall fully protect the Trustee, if the Trustee exercises due care in selecting the person paid.

7

## ARTICLE IX – TRUSTEE

A.    <u>Appointment of Initial Trustee</u>.  The Grantor hereby appoints Erik D. Bolog, currently of the District of Columbia, as Trustee of the Trust created hereunder. The Trustee may (but shall not be required to) appoint a Co-Trustee to serve with him, but in no event shall any such Co-Trustee be a person who is related to or subordinate to any beneficiary hereunder.

B.    <u>Appointment of Successor Trustees</u>. Upon the resignation, incompetency, incapacity or death of Erik D. Bolog, the Grantor hereby appoints Chandler Jordan Bolog, currently of the State of Maryland, as Successor Trustee hereunder. In the event Chandler Jordan Bolog is unable or unwilling to serve, then the last person or entity named herein who accepted fiduciary duties and is serving as Trustee may, by a notarized written instrument, designate and appoint a successor Trustee to serve as Trustee upon the resignation, death or incapacity of the Trustee then serving. In the event the last person or entity who accepted fiduciary duties and is serving as Trustee fails to designate and appoint a successor Trustee, the adult beneficiaries and the parents, guardians or other adult persons responsible for any minor beneficiaries, acting by majority, may appoint a successor Trustee. If no successor Trustee is so appointed, a successor Trustee may be appointed as provided by law upon application of the resigning Trustee or any beneficiary. Notwithstanding the above, in no event shall any successor Trustee be a person who is related to or subordinate to any beneficiary hereunder.

C.    <u>Written Acceptance</u>. The appointment of a successor Trustee shall be effective upon written acceptance of fiduciary duties by such Trustee and may be revoked at any time before it becomes effective.   Any designated successor Trustee who fails to accept fiduciary duties within thirty (30) days of notice thereof shall be deemed to have declined to serve.

8

D.      <u>Resignation of Trustee</u>.  Any Trustee may resign as Trustee by written notice to the

next successor Trustee named herein, or if there is no additional successor Trustee named herein, by

written notice to the adult beneficiaries and the parents, guardians or other adult persons responsible

for any minor beneficiaries.  The resignation shall be effective upon receipt by the other Trustee then

serving, or if there is no other Trustee then serving, upon receipt by the successor Trustee named

herein, or if there is no successor Trustee named herein, upon the appointment of a successor Trustee

as provided herein.

E.      <u>Actions of Predecessor</u>.  No Trustee serving under this Agreement shall be responsible

for or required to inquire into any fiduciary actions occurring before such Trustee's appointment.

F.      <u>Trustee's Management Powers</u>.  The Trustee, and any successor Trustee, shall have

fullest power to deal with any property held in the Trust Estate, which may be exercised without

the prior or subsequent approval of any court or judicial authority, at all times.  No persons dealing

with the Trustee shall be required to inquire into the propriety of any of its actions, or to inquire

into the application of any funds or any property it may receive.  The Trustee shall, however,

exercise all powers in a fiduciary capacity for the best interest of the beneficiaries of the trusts

created hereunder. Without in any way limiting the generality of the foregoing, the Trustee

(hereafter sometimes referred to as the "fiduciary," singularly or collectively as the case may be)

shall have the following specific powers in addition to, and not in limitation of, all powers

conferred by the applicable law:

1.      To retain, invest in, sell at public or private sale, mortgage, lease, exchange,

manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls,

futures and futures options, exercise stock options, or otherwise deal with or dispose of any real

9

or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.  The Trustee is authorized to sell, lease or mortgage any property of the Trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

2.     To buy, sell and trade in securities of any nature, including short sales and on margin.  The Trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the Trustee with such brokers as security for loans and advances made to the Trustee.  The Trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the Trustee may choose.

3.     To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

4.     To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

5.     To execute, acknowledge, and deliver documents.

6.     To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets.  The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

10

7.    To borrow funds from any party, or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the Trustee considers advisable.

8.    To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

9.    To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The Trustee may determine in a fair, equitable and practical manner how all Trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income.

10.    To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary. Each trust shall be a spendthrift trust to the maximum extent permitted by law and no interest in any trust hereunder shall be subject to a beneficiary's liabilities or creditor claims, assignment or anticipation. If the Trustee shall determine that a beneficiary would not benefit as greatly from any outright distribution of trust income or principal because of the availability of the distribution to the beneficiary's creditors, the Trustee shall instead expend those amounts for the benefit of the beneficiary. This direction is intended to enable the Trustee to give the beneficiary the maximum possible benefit and enjoyment of all the trust income and principal to which the beneficiary is

11

legally entitled. All benefits granted to a beneficiary under this instrument shall be the separate property of such beneficiary (as distinguished from marital property, community property, quasi-community property or any other form of property as to which such beneficiary's spouse might have a claim or interest arising out of the marital relationship under the law of any jurisdiction, domestic or foreign). All benefits granted to a beneficiary hereunder shall also be free of any interference from, or control or marital power of, her or his spouse. For purposes of this paragraph, the term "benefits" shall include real or personal property, tangible or intangible, and the provisions of this paragraph shall apply not only to benefits actually paid to any beneficiary but also to trust property allocated to a trust in which the beneficiary possesses an interest hereunder.

11.    To allocate within the meaning of Treasury Reg. Section 1.643(a)-3(b) to income or to principal, or partly to income and partly to principal, all or part of the realized gains from the sale or exchange of trust assets.

12.    To deem, within the meaning of Treasury Reg. Section 1.643(a)-3(e), any discretionary distribution of principal as being paid from capital gains realized during the year. The Trustee may take any action that may be necessary in order for such deeming to be respected for tax purposes.

13.    Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

12

14.     The Trustee may elect to hold any S corporation stock held by the Trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the Trustee may consider any changes to the terms and conditions of the Trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

15.     If the Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the Trust or portion thereof as an "electing small business trust", the Trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

16.     To treat any trust as a common fund for investment and administrative purposes.

17.     To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

18.     Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or

13

more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

19.     In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the Trustee considers appropriate, any other income or financial resources reasonably available to the person.  No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust.  All aspects of decisions with respect to discretionary payments of income and principal shall be made by the Trustee in its absolute discretion and are binding on all persons.

20.     To pay any net income of any other trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary.  If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

21.     Without limiting the foregoing, as long as the Trust is being administered in the State of Maryland, the Trustee shall have all powers granted by law and the powers set forth in the Maryland Code, including any amendments thereto, regardless of when said amendments are or were made, and that Section is hereby incorporated in this agreement by this reference. If

14

the Trust is ever administered in any other State, the Trustee shall have the powers set forth in the applicable fiduciary powers statute or Code Section in such State, and such statute or Code Section is hereby incorporated in this Agreement by this reference.

G.   Compensation.  Any person serving as Trustee may receive reasonable compensation for fiduciary services as determined under applicable law and may be reimbursed for reasonable expenses incurred in connection with such services. Any corporate or professional fiduciary may receive the compensation specified in its published fee schedule in effect at the time it renders services, or in accordance with its then standard hourly rate then in effect, and its compensation may vary from time to time based on that schedule or its then applicable standard hourly rate.

H.   Certain Investments.  Assets may be transferred to this Trust that would not meet the standard under applicable law as suitable trust investments.  The Trustee may nevertheless retain the transferred assets for as long as the Trustee considers appropriate even if the assets represent an over concentration or do not meet the standard of prudence.

I.   Delegation of Authority.   If there is more than one Trustee serving under this Agreement at any time, the Trustees may agree that one or any number of them may exercise a power vested in all of them, except that discretionary powers granted only to a specific Trustee (or Trustees) shall not be delegated to any other Trustee.  The agreement shall be in writing and may be revoked by a writing delivered by a Trustee to the other Trustee or Trustees then serving.  When such an agreement has been made and has not been revoked, a Trustee who has delegated a power shall not be liable for the exercise of or the failure to exercise such power by the Trustee or Trustees to whom the delegation has been made.  Any person dealing with a Trustee may rely upon the certificate of any Trustee concerning the delegation of a power permitted by this paragraph.

15

J.     <u>Fiduciary Discretion</u>.  The powers and discretion granted to the Trustee are exercisable only in a fiduciary capacity and may not be used to enlarge or shift any beneficial interest except as an incidental consequence of the discharge of fiduciary duties.

K.     <u>Professional Investment Advisor</u>.   The Trustee may employ a professional investment advisor ("Professional Investment Advisor") to provide additional advice in managing the assets of the Trust Estate.   The Trustee may rely in good faith upon the investment recommendations of the Professional Investment Advisor without liability to any beneficiary. For so long as the Trustee retains a Professional Investment Advisor, and to the extent that it delegates investment responsibility to the Professional Investment Advisor, the following rules shall apply:

1.     The Professional Investment Advisor may be given sole authority to direct the investment of the delegated portion of the Trust Fund;

2.     The Trustee shall carry out the investment directions of the Professional Investment Advisor and shall be liable only as a ministerial agent for its actions or inactions; and

3.     The Trustee shall not be liable for any loss resulting from the making or retention of any investment pursuant to the direction of the Professional Investment Advisor.

Notwithstanding anything to the contrary hereinabove, the Trustee shall always retain sole authority over any and all investments of the Trust (including veto power over any particular investment suggested by the Professional Investment Adviser), and the Trustee shall exercise such management authority or veto power over any investment of the Trust, at any time it determines in its sole and absolute discretion that such investment is not in the best interest of the Trust or its beneficiaries.

16

L.    Trust Protector. Judge Robert M. Mandelbaum (NY Supreme Court), is hereby appointed as the Trust Protector and, as such, shall have the power to (1) resolve a deadlock when two or more Trustees are then serving, (2) exercise or decline to exercise any power otherwise vested in the Trustee in her fiduciary capacity, where the existence or exercise of such power could constitute a transfer of trust property by the Trustee under relevant estate, gift or inheritance tax law or where the Trustee is otherwise prohibited from exercising such power, (3) amend this trust agreement in the most minimal manner necessary, consistent with the purposes of the trust, to mitigate or eliminate adverse legal or tax consequences, (4) correct ambiguities that might otherwise require court construction, (5) correct a drafting error that defeats the Grantor's intent, or (6) subject to the consent of the Trustee, to designate the law of any jurisdiction (under the terms of any trust created by or pursuant to this agreement shall be capable of taking effect) to be the governing law of any trust created by or pursuant to this agreement.

In all events, the Trust Protector shall determine the Grantor's intent and consider the interests of current and future beneficiaries as a whole, and shall act in a manner to benefit the beneficiaries as a group (even if particular beneficiaries may be disadvantaged) or further the Grantor's wishes in an appropriate way. Unless otherwise permitted herein, no amendment by any Trust Protector, however, may add or eliminate beneficiaries of the Trust, nor expand or limit any power of appointment exercisable in a person's individual capacity. Any Successor Trust Protector shall be appointed by written designation provided by the Grantor to the Trustee then serving. If the appointed Trust Protector is unable or unwilling to serve, or if the Grantor should fail to designate a Trust Protector, then (1) the last serving Trust Protector, if living and able to do so, or (2) if not, the adult beneficiaries of the Trust, by majority vote as their interests may appear,

17

or (3) if there are no adult beneficiaries or if they are for any reason not able to do so, the Trustee

then serving shall designate one or more individuals, or a series of individuals in succession, to

serve as Trust Protector. Any Trust Protector appointed hereunder shall be an individual (but not

a person who is related to or subordinate to any beneficiary hereunder as defined in the Maryland

Code or a bank, trust company or law firm. Any Trust Protector shall be entitled to reasonable

compensation from the Trust commensurate with the level of activity required of such Trust

Protector and, in the event such Trust Protector is an attorney duly licensed to practice law, shall

be entitled to compensation at her or his standard hourly rate at the time such services are rendered.

M.     Indemnification. The trust shall indemnify any Trustee and Trust Protector, and their

respective successors, estates, personal representatives, heirs and assigns, against, and shall hold any

Trustee and Trust Protector harmless from, any and all damages, losses, claims, liabilities, demands,

charges, suits, penalties, costs or expenses, including but not limited to court costs and attorneys' fees,

which any of them may incur or suffer personally or to which any of them may be subjected, as a

result of their serving as a Trustee or Trust Protector under this Agreement, unless such Trustee or

Trust Protector shall have engaged in willful misconduct or bad faith in the performance of its duties

as Trustee or Trust Protector hereunder.

N.     Qualification of Trustee. To the extent permitted by law, the Trustee shall not be

required to (1) qualify as Trustee in any court; (2) post any bond, either with or without surety; or (3)

file any statement of its account with any court, commissioner of accounts or other public official.

O.     Records. Any person or organization serving as Trustee hereunder shall keep true and

accurate records concerning each trust created herein and shall furnish to the adult persons who are

then permissible beneficiaries of income or principal from such trust an accounting at least once a

18

year showing the condition of such trust and the receipts and disbursements during the period covered thereby.

      P.      <u>Subchapter S Stock</u>.

      1.      If at any time any trust under this Agreement holds stock of any corporation which is taxable under Subchapter S of the Code, the Grantor intends for such trust to be an eligible S corporation shareholder under the applicable provisions of the Code, whether as a Grantor trust, a Qualified Subchapter S Trust ("QSST") or as an Electing Small Business Trust ("ESBT") or as another kind of trust which is an eligible S corporation shareholder. To this end, the Trustee shall make any election required under the applicable provisions of the Code to qualify such trust, or any part thereof, as a QSST, as an ESBT or as another eligible trust. In addition, if any trust under this agreement would qualify as a QSST but for the requisite election by the then current income beneficiary, the Grantor requests that the income beneficiary of any such trust make the requisite election to cause the trust to qualify as a QSST.

      2.      If any trust under this Agreement, or any part thereof, qualifies as a QSST or as an ESBT and if the Trustee makes the requisite election to qualify such trust or any part thereof a QSST or as an ESBT, the Trustee may hold all shares of S corporation stock in such QSST or ESBT as a separate trust within this Trust. The Trustee shall apportion expenses of the trust between the two shares (the QSST share and the non-QSST share or the ESBT share and the non-ESBT share), in a manner not inconsistent with the Code and the applicable Regulations.

      3.      The Trustee or Trust Protector may amend this agreement in any manner required to ensure that any trust under this Agreement holding stock in a Subchapter S corporation qualifies as a trust eligible to hold Subchapter S stock, whether as a QSST, as an ESBT or as

19

another eligible trust, and otherwise to meet the objectives described in the preceding paragraphs of this Article with respect to Subchapter S stock, but any such amendment made by the Trustee or Trust Protector shall not increase the class of beneficiaries. Any such amendment may be made by a written instrument signed by the Trustee or Trust Protector and delivered to the persons then eligible to receive distributions of income from the trust.

Q.  <u>References and Joint Powers</u>. All references in this agreement to "Trustee" or "Trustees" shall mean Trustee in any case where a sole Trustee is serving hereunder. Except as otherwise provided herein, whenever more than one Trustee is serving hereunder, all of the powers granted to the Trustee shall be exercised by them jointly and acting together, unless they shall otherwise agree in writing.

R.  <u>Fiduciary Discretion</u>. The powers and discretion granted to the Trustee are exercisable only in a fiduciary capacity and may not be used to enlarge or shift any beneficial interest except as an incidental consequence of the discharge of fiduciary duties. No individual serving as Trustee shall have a voice in any discretionary decision to distribute income or principal of any trust in order to discharge a legal obligation of the individual or for such Trustee's pecuniary benefit.

S.  <u>Accountings</u>. The Trustee shall render informal annual accounts to the then current income beneficiary or beneficiaries hereunder showing receipts and disbursements of principal and income. For any period, the Trustee shall be released and discharged, as against such beneficiary, or beneficiaries, of and from any and every claim, demand, reckoning, and liability of every kind and nature whatsoever arising from or in any manner connected with this Agreement or any trust created by this Agreement, or any fund held or administered hereunder, or the administration of any such trust or fund as shown by such account, except as to any matter as to

20

which such beneficiary within six (6) months from and after the delivery to her of such account shall give notice in writing to the Trustee that she objects and shall specify therein the grounds of her objection or shall commence an appropriate action or proceeding against the Trustee. No particular form shall be required for an account but any writing in whatever form furnished by the Trustee containing information as to transactions pertaining to the trust shall be deemed to constitute such an account as to all matters and things contained and embraced in such writing. For purposes of the foregoing provisions of this paragraph, if any person entitled to an account is a minor or disabled, such accounting shall be given to, and any written approval of or objection to any such account shall be made by, the person having custody of such minor or disabled person or by the parent or legally appointed guardian or conservator of the estate of such minor or disabled person, as the case may be.

## ARTICLE X – BUSINESS INTERESTS

A. <u>Retention of Closely-Held Business Interests</u>. The Trust may own stock, partnership interests, membership interests, debt securities or other interests in certain closely-held entities (together, the "Interests"). The Grantor is of the opinion that such Interests which become part of the Trust will be of investment merit and worthy of retention by the Trustee, or worthy of consideration by my Trustees in determining the best interests of this Trust and the beneficiaries hereof. Although that opinion shall not impair or restrict the Trustee's power and discretion with respect to the sale, exchange or purchase of such Interests, the Trustee shall not be liable to the beneficiaries of the trust for any loss or decrease in the value of the assets of the trust arising from such stock, loans or business interests.

B. <u>Special Powers of Trustee with Respect to Entities</u>. The Grantor grants to the Trustee

21

the following discretionary powers set forth below applicable to such Interests, or such businesses, to be exercised in the Trustee's sole and absolute discretion (to the extent of the voting power therein) without the consent or approval of the beneficiaries or any court, which powers are intended to be in addition to the powers conferred by law and those contained elsewhere in this agreement:

1.      The power to participate in the conduct or management of any such business or to rely upon others to do so and to take or delegate to others discretionary powers to take such action with respect to its management and affairs which an individual could take as outright owner of the Interest in such business, including the determination of all questions or policies;

2.      The power (i) to act as or to select or employ any person to act as a director, officer or employee or other representative of such Business, including agents, attorneys, consultants, and accountants, (ii) to pay reasonable compensation, including incentive compensation, without regard to the compensation to which my Trustees may be entitled under this agreement, and (iii) to discharge any person from the employ of such business;

3.      The power (i) to determine the dividend policy of such business and other fiscal policies, (ii) to establish and maintain reserves for repairs, improvements, upkeep, obsolescence, redemption of interests, depreciation, technological changes, expansion, and other business purposes, (iii) to rely on reports furnished by the regularly retained auditors or accountants of such business as to the operation and financial condition of such business, without making independent investigation, and (iv) to render accounts of the operations and financial condition of such business in a manner conforming to accounting practices customarily used by similar businesses:

4.      The power to invest assets of the Trust in any such business, or to lend assets of the Trust to any such business, upon any terms and conditions, for any period, with security

22

deemed adequate by the Trustee, for any purpose which will benefit the Trust and the beneficiaries;

5. The power to sell or exchange all or any portion of the assets or Interests of such business, or to vote such Interests held by the Trustee for the approval of any merger, consolidation or reorganization involving such corporation.

## ARTICLE XI - DEFINITIONS

Whenever used in this Trust Agreement, unless the context of any passage thereof requires otherwise, the following definitions shall apply:

A. The term "Grantor" refers to **CLAUDIA ENGELHORN**.

B. The term "Trustee" refers to the single, multiple and successor Trustees who at any time may be appointed and acting in a fiduciary capacity under the terms of this Trust Agreement.

C. The term "Trust Estate" refers to the property itemized and described in Schedule A attached hereto, which the Grantor acknowledges she has transferred, delivered, assigned and conveyed to the Trustee, together with such other property that hereafter may be transferred, assigned, conveyed, bequeathed or devised to the Trustee by the Grantor.

D. The use of the masculine in the foregoing paragraphs shall be deemed to include the feminine or neuter, the use of the feminine shall be deemed to include the masculine or neuter, the use of the neuter shall be deemed to include the masculine or feminine and the singular to include the plural and the plural the singular, where the context would so require.

23

## ARTICLE XII - CONSTRUCTION OF AGREEMENT

The headings and subheadings used throughout this Agreement are for convenience only and have no significance in the interpretation of the body of this Agreement, and the Grantor directs that they be disregarded in construing the provisions of this Agreement.

IN WITNESS WHEREOF, I, **CLAUDIA ENGELHORN**, as Grantor of the foregoing Trust Agreement, have hereunto set my hand and seal this 11th day of October, 2021.

Signed, sealed and delivered
in the presence of:

_____

_____

_____(SEAL)
**CLAUDIA ENGELHORN**, Grantor

**STATE OF** _Massachusetts_
**CITY/COUNTY OF** _Barnstable_____, to-wit:

The foregoing instrument was acknowledged before me on the _11_ th day of _October_ _____, 2021 by **CLAUDIA ENGELHORN**, Grantor.

_____
Notary Public

SARAH K. MAYO
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

My commission expires: _08/29/2025_
Notary Registration No.: ___n/a___

24

## ACCEPTANCE BY TRUSTEE

The undersigned hereby accepts the Trust imposed by the foregoing Trust Agreement, and

agrees to serve as Trustee upon the terms and conditions therein set forth.

Signed, sealed and delivered
in our presence as Witnesses:

By: _____
　　　Erik D. Bolog, Trustee

**STATE OF** _Massachusetts_　　;
**CITY/COUNTY OF** _Barnstable_　　, **to-wit:**

The foregoing instrument was acknowledged before me on the _11_ day of _October_

_____, 2021, by _Erik D. Bolog_, the Trustee.

_____
Notary Public

My commission expires: _08/29/2025_
Notary Registration No.: _N/a_

SARAH K. MAYO
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

25

## SCHEDULE "A"
## TO THE FOREGOING IRREVOCABLE TRUST

1.      $10,000,000.00

_____
Witness

_____
Witness

_____
**CLAUDIA ENGELHORN**

# EXHIBIT B(4)

TRANSFER INSTUCTIONS
CLAUDIA A. ENGELHORN
ACCOUNT NUMBER

TO:          JENNIFER SHAW, Managing Director, Bank of America
FROM:        CLAUDIA A. ENGELHORN
REGARDING:   TRANSDER OF FUNDS
DATE:        OCTOBER 12, 2021

Jenn,

    I hereby direct that $10,000,000 be transferred from my account, ending in 9342, to the Bank of America checking account of JAREB Irrevocable Trust dated October 12, 2021.  It is my understanding that the JAREB account is currently being formed at Bank of America, and as soon as that account is opened, please transfer the funds referenced above.

    If you have any questions, please feel free to contact me.

Signed, sealed and delivered
in the presence of:

_____

_____

_____(SEAL)
CLAUDIA ENGELHORN

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

   Plaintiffs,

  v.

ERIK D. BOLOG, *et al.*,

   Defendants.

No. C-24-CV-24-002631

### AFFIDAVIT OF WILLIAM J. MURPHY

1. I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2. I am a partner at Zuckerman Spaeder LLP and I represent Whiteford, Taylor & Preston LLP ("Whiteford") in the captioned action.

3. Attached hereto as Exhibit 1 is a copy of an email I received on May 25, 2023, from Anthony Williams, a lawyer at Dentons and at the time counsel for Plaintiff Claudia Engelhorn.

4. Attached hereto as Exhibit 2 is a copy of a Notice of Gift that was attached to the email of May 25, 2023.

5. Attached hereto as Exhibit 3 is a copy of a JAREB Irrevocable Trust Agreement that was attached to the email of May 25, 2023

6. Attached hereto as Exhibit 4 is a copy of a Transfer Instructions document that was attached to the email of May 25, 2023.

I solemnly affirm under the penalties of perjury that the contents of this document
are true the best of my knowledge, information, and belief.

William J. Murphy

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS AND MOTION TO DISMISS OR STAY

Dated: November 15, 2024

William J. Murphy (#8406010273)
John J. Connolly (#9112170144)
Kirk E. MacKinnon Morrow
 (#2410241018)
ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,
Taylor & Preston, LLP*

I.   INTRODUCTION ................................................................................................ 1

II.   MATERIAL FACTS ......................................................................................... 3

    A.   Allegations in the Complaint ................................................................ 3

    B.   Claims against Whiteford. ................................................................. 10

    C.   Additional facts relevant to arbitration ............................................. 14

III.  ARGUMENT ................................................................................................... 16

    A.   The Court should (1) immediately stay all proceedings against
        Whiteford pending adjudication of this petition to arbitrate and (2)
        issue an order compelling arbitration. ............................................... 16

        1.   The Court should apply Maryland law on procedural issues and
             Colorado law on any substantive question about the validity and
             enforceability of the arbitration agreement. .................................... 16

        2.   Under Maryland law, the Court should issue an immediate stay of
             all proceedings against Whiteford pending disposition of this
             petition and motion. ...................................................................... 17

        3.   Under Maryland law, the Court should issue an order compelling
             arbitration in accordance with the parties' agreement. ................... 21

        4.   The arbitration clause also applies to Ms. Engelhorn in her
             capacity as trustee and to White Pearl, an LLC solely owned by
             Ms. Engelhorn. ............................................................................. 22

        5.   Under Colorado law, a lawyer may enforce an arbitration
             agreement against a client. ............................................................ 25

    B.   The Complaint fails to state a valid claim for relief against Whiteford. ......... 27

        1.   Under Maryland procedure, a plaintiff must plead *facts* sufficient
             to state a claim, and fraud claims must plead facts with
             particularity. ................................................................................. 27

        2.   District of Columbia substantive law applies to Plaintiffs' claims
             against Whiteford. ........................................................................ 28

3.  Count 2 fails to state a claim for negligent hiring and supervision
    against Whiteford................................................................................................. 29

4.  Count 6 should be dismissed because the allegations of fact
    establish that Mr. Bolog was acting outside the scope of his
    employment............................................................................................................. 31

5.  Count 1 should be dismissed because the allegations of fact
    establish that Mr. Bolog was acting outside the scope of his
    employment with respect to the $10 million alleged gift. ......................... 35

6.  Count 3 should be dismissed because no factual allegations
    establish that Mr. Bolog was acting within the scope of his
    employment in the Science Park transaction. ................................................... 37

7.  Count 4 should be dismissed because no factual allegations
    suggest that Mr. Bolog acted within the scope of his employment
    in the Darnestown transaction. ............................................................................. 38

8.  Count 5 should be dismissed because no factual allegations
    suggest that Mr. Bolog acted within the scope of his employment
    in the White Pearl transaction................................................................................ 39

9.  Count 7 should be dismissed because Whiteford cannot be liable
    for Mr. Bolog's alleged breaches of fiduciary duty........................................... 39

10. Count 20 should be dismissed because Whiteford cannot be
    liable for aiding and abetting a breach of fiduciary duty............................. 40

IV.  CONCLUSION..................................................................................................................... 41

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT WHITEFORD, TAYLOR &
PRESTON LLP's PETITION FOR AN ORDER COMPELLING ARBITRATION AND
STAYING PROCEEDINGS AND MOTION TO DISMISS OR STAY**

Defendant Whiteford, Taylor & Preston LLP ("Whiteford"), by its undersigned
counsel, submits this memorandum in support of its petition for an order compelling
arbitration and motion to dismiss all claims in the Amended Complaint ("Complaint")
against Whiteford.

## I.   INTRODUCTION

The Complaint in this case is fundamentally a dispute between Claudia Engelhorn,
an heir to an immense fortune arising from her father's interest in the European
chemical giant BASF, and Erik D. Bolog, an experienced and outwardly successful
lawyer who worked for Whiteford for about a decade—until May 1, 2023, when the
firm fired him for cause. While he was at Whiteford, Mr. Bolog represented Ms.
Engelhorn in Swiss proceedings challenging her father's estate, which resulted in a
$130 million settlement for Ms. Engelhorn. After Whiteford fired Mr. Bolog, in part
because of irregularities in his expense-accounting on the Engelhorn matter, the firm

worked cooperatively with Ms. Engelhorn's counsel at Dentons to identify and rectify the improper expenses. During those discussions Whiteford learned for the first time that Ms. Engelhorn had made a "gift" of $10 million to Mr. Bolog. The firm requested and received from Ms. Engelhorn's counsel the papers documenting the gift, including an extraordinary "Notice of Gift," signed and notarized by Ms. Engelhorn, which stated repeatedly that the gift had nothing to do with Whiteford or Mr. Bolog's work as a lawyer for Ms. Engelhorn. Following lengthy discussions with Dentons, Whiteford ended up eliminating numerous questionable expenses Mr. Bolog applied to Ms. Engelhorn's matter, restored hundreds of thousands of dollars to Ms. Engelhorn's trust account, and entirely wrote off a final bill sent by Mr. Bolog that contained questionable entries. Ms. Engelhorn, evidently satisfied with the firm's response, issued a release in favor of Whiteford, but not Mr. Bolog. Nevertheless, Ms. Engelhorn subsequently retained new counsel and now claims that her $10 million gift to Mr. Bolog, not a penny of which came to Whiteford, was somehow Whiteford's fault.

Although Ms. Engelhorn's claims against Whiteford are meritless, they cannot be decided by this Court because Ms. Engelhorn and Whiteford agreed to arbitrate all disputes arising from their relationship. As set forth below, the Court should issue an order staying all claims against Whiteford pending a decision on arbitration, and should then issue a permanent stay and an order compelling Ms. Engelhorn to abide by the arbitration clause in her agreement. *See infra* Part III.A. If for any reason the

Court concludes that this matter is not arbitrable, it should dismiss all claims against Whiteford for failure to state a claim, for the reasons set forth in Part III.B below.

## II.  MATERIAL FACTS

### A.  Allegations in the Complaint

According to Plaintiffs' Complaint, Whiteford has a "long-standing relationship with Defendant Bolog" as his employer and, from time to time, his lawyer and co-counsel. Compl. ¶ 19. Plaintiffs contend that Whiteford should have known that Mr. Bolog had financial difficulty before the firm hired him. They cite a handful of public records that are in some cases trivial and in others completely misunderstood. *Id.* ¶ 20. The first citation is to a judgment against Mr. Bolog of $90.00, and the second is to a tax lien in the amount of $397.88. *Id.* ¶¶ 20.a-20.b. The Complaint helpfully provides case numbers[1] for these debts but fails to disclose that the $90.00 judgment was entered on an affidavit and was promptly satisfied on September 16, 2002, about a decade before Mr. Bolog began working at Whiteford. *See Harbor School Corp. v. Bolog*, Case No. 06-02-0006927-2002 (Dist. Ct. Md.). The Complaint also fails to disclose that the $398 tax lien was satisfied in March 2006, about five weeks after it was entered and long before Mr. Bolog began work at Whiteford. *See Maryland State v. Bolog*, Case No. 268674V (Cir. Ct. Md.).[2]

---

[1] The court may take judicial notice of information in public dockets in this State. *See, e.g.*, *Hanover Investments* v. *Volkman*, 455 Md. 1 n.5 (2017).

[2] The Complaint also mentions a federal tax lien entered against Mr. Bolog and his wife in the amount of $7,218. Compl. ¶ 20.d. This was satisfied in 2015. *See United States v. Bolog*, Case No. 87230F (Cir. Ct. Md.).

Plaintiffs cite a 2009 action in the U.S. Bankruptcy Court for the District of Columbia that alleged that Mr. Bolog and Defendant Michael Postal had become guarantors on a lawyer's retainer agreement for a bankrupt entity. Compl. ¶ 20.c. Plaintiffs allege that the "Action appears to have resulted in a settlement," *id.*, but the docket reflects only that the case was dismissed with prejudice, after the defendants in the case filed a 30-page motion for sanctions against the plaintiff. (The defendants withdrew the motion after the dismissal.) *See In re Metropolitan Coop. Ass'n (Law Offices of William Johnson v. M Y New Hampshire), LLC*, Adv. Proc. No. 09-10047, ECF Nos. 10, 18, 19 (Bankr. D.D.C.). Plaintiffs make no allegation, nor could they, about the terms of a settlement.

Plaintiffs also cite to events from several cases occurring after Mr. Bolog joined Whiteford. The most serious allegation states that Mr. Bolog was sued in 2013 in a bankruptcy court adversary action "sounding in fraud and other allegations." Compl. ¶ 20.e. Plaintiffs allege that the case settled, but they do not understand the nature of the settlement or whether it had anything to do with fraud or conversion because the relevant documents are under seal. Suffice it to say that allegations in a complaint are not reliable evidence of the outcome of a matter. And Plaintiffs cite a complaint by a condominium association against Mr. Bolog and Mr. Postal "among others," Compl. ¶ 20.f, but provide no information about the case whatever. The case involved a dispute between the condominium association and the developers of the condominium (Mr. Bolog was one of about a dozen defendants) and concerned competing claims about

the construction of the condominium. That case also was settled. *See* Docket, *Takoma Overlook Condo. Ass'n v. Tenacity 7333 New Hampshire Ave. LLC*, Case No. 402700V (Cir. Ct. Md.).

Plaintiffs also cite three collection actions against Mr. Bolog or Mr. Bolog and his wife, filed in 2018 and 2019. See Compl. ¶¶ 20.g – 20.i. One was voluntarily dismissed seven weeks after it was filed; *see Congressional Bank v. Debra Bolog*, Case No. 447498V (Cir. Ct. Md.); and two others filed by American Express were apparently settled with virtually no substantive activity on the dockets. *See American Express N.B. v. Bolog*, Case Nos. 2019-CA-006319-C, Case No. 2019 CA-006316-C (Sup. Ct. D.C.).

The Complaint then sets forth factual allegations relating to four transactions that form the basis for Plaintiffs' legal claims in this case. The first is labeled "Fraudulent $10 Million 'Gift.'" Plaintiffs begin that section by averring that "Plaintiff Engelhorn retained Defendant [Whiteford] on an hourly fee basis to represent her with respect to a legal dispute." Compl. ¶ 24.[3] Plaintiffs do not mention the nature of the representation or the outcome, except that it "resulted in Plaintiff Engelhorn receiving a monetary settlement." *Id.* ¶ 26.

Plaintiffs assert that Whiteford attorneys drafted the trust instrument for the Whitewater Revocable Trust dated September 30, 2021, and that Mr. Bolog was one

---

[3] Plaintiffs' allegation suggests that Ms. Engelhorn did not review her engagement agreement before filing her Complaint, as that agreement sets forth an elaborate "hybrid fee arrangement" that is part hourly and part contingency. *See* Ex. A(10) at 1-2. The agreement also includes an arbitration clause that Plaintiffs have ignored. *See infra.*

of the trustees. Compl. ¶¶ 31-33. On or about October 7, 2021, Whiteford wired

"approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's

personal Bank of America account and the remainder to the Plaintiff's Trust's savings

account." *Id.* ¶ 34.

Plaintiffs contend that Bolog, "with the assistance of other lawyers at" Whiteford,

established a second trust called the JAREB Irrevocable Trust, "with Plaintiff

Engelhorn as the Grantor and Defendant Bolog as the Trustee." Compl. ¶ 35; *see* Ex. B,

Affidavit of William J. Murphy; Exs. B(2)-B(4) (copies of Notice of Gift, JAREB Trust,

and Transfer Instructions).[4] The Complaint recounts an extraordinary scene

occurring on October 11, 2021, when Ms. Engelhorn was vacationing in Cape Cod,

Massachusetts, and "Defendant Bolog arrived and advised her that he needed

something signed." Compl. ¶ 36. Plaintiffs allege that "Defendant Bolog directed

Plaintiff Engelhorn to sign numerous documents that were upside down," and that

Bolog "tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated

October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's

benefit, and wire instructions to transfer money from Plaintiff's personal account to

Defendant Bolog's irrevocable [JAREB] trust."[5] *Id.* According to Plaintiffs, "Defendant

---

[4] Plaintiffs well know that other lawyers at Whiteford did *not* assist Mr. Bolog in establishing the JAREB Trust; on the contrary, they were deceived by Mr. Bolog into creating a trust instrument that would have evidenced a much smaller gift from Ms. Engelhorn to one of her longtime employees, but those Whiteford lawyers learned only two years later that Mr. Bolog had taken the template of that instrument and modified it to make *him* the beneficiary of a *$10 million* gift from Ms. Engelhorn.

[5] Because the Complaint refers to and relies on these documents, this Court can consider their full content on a motion to dismiss inasmuch as they are uncontroverted and simply supplemental to the complaint. *See, e.g., Advance Telecom Process LLC* v. *DSFederal, Inc.*, 224 Md. App. 164, 175 (2015)

Bolog did not explain the documents to [Ms. Engelhorn], did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature." *Id.* Whiteford has no personal knowledge of what occurred on Cape Cod, but it observes that Ms. Engelhorn not only signed both the JAREB Trust instrument and the Notice of Gift, she signed them under oath in the presence of a notary public. Ex. B(2), B(3). Moreover, Ms. Engelhorn signed a two-paragraph "Transfer Instructions" document that plainly directs Bank of America to transfer $10 million from her personal account to JAREB's account. Ex. B(4). This document is not notarized but it was signed in the presence of two witnesses (one of whom appears to have been the notary). *See id.*

Plaintiffs' Complaint implies that Mr. Bolog violated ethical rules prohibiting lawyers from soliciting gifts from clients or from preparing instruments giving the lawyer a substantial gift from a client. Compl. ¶ 29. It also alleges that Ms. Engelhorn "did not intend to give" Bolog a $10 million gift, and that Mr. Bolog did not advise her to obtain independent counsel, despite what the Notice of Gift states. *Id.* ¶ 39. She avers that after she realized that "Defendant Bolog had defrauded her into making a gift of $10M, [she] sent an email on July 6, 2022, demanding a return of the monies."

---

(citing *Margolis* v. *Sandy Spring Bank*, 221 Md. App. 703, 710 n.4 (2015) and *Smith* v. *Danielczyk*, 400 Md. 98, 105 (2007)) (on motion to dismiss, court can rely on a document that "merely supplements the allegations of the complaint" and is not controverted). Whether Ms. Engelhorn knowingly signed the documents may be controverted, but what they say and the fact that she signed them are not.

*Id.* ¶ 40. The email demanding the return of the funds was sent nine months after the gift was made.

Ms. Engelhorn does *not* allege, nor could she allege, that Whiteford attorneys other than Mr. Bolog had any knowledge of the "gift," or that the firm received one penny of the $10 million. *See* Compl. ¶ 44 ("Defendant Bolog has refused to return the $10M to her or Plaintiff Trust."). The Notice of Gift that Ms. Engelhorn signed in the presence of a notary states:

> 1. The Swiss litigation has concluded, resulting in an enormous payment to me personally, thanks to your leadership, skill and guidance of this cross-border matter. You and I battled this matter between the United States, Switzerland and Monaco, during the heart of the Covid pandemic. You risked yourself for me. You were much more than a lawyer, but, were also my social worker (for me), strategist and confidant. You believed in me when all others, including our Swiss team, turned on me.
>
> ....
>
> 5. The gift has nothing to do with the legal services that you have provided to me, nor any legal services that you or your firm will perform on my behalf prospectively. ...
>
> ...
>
> 7. The gift to the trust for the benefit of you and your family is being made by me because of our relationship and my desire to share my good fortune with my very dear friend and his family.
>
> 8. I want to be perfectly clear, the gift has nothing to do with your law firm, nor legal services that you have or will provided [sic] to me.

Ex. B(2).

The second transaction at issue in the Complaint relates to defendant Science Park Associates, LLC, which owned an office building in Greenbelt. Plaintiffs contend that

in 2009, before Mr. Bolog began working at Whiteford, Science Park entered into a

$5.5 million loan agreement, signed by Mr. Bolog as manager member of Science Park.

Compl. ¶ 47. In March 2022, Mr. Bolog allegedly caused the loan and security

documents to be assigned to the Whitewater Trust, and caused Whitewater to wire

$3.35 million to the bank holding the loan. Compl. ¶¶ 50-51. Plaintiffs allege, in

essence, that Mr. Bolog thereafter failed to cause Science Park to remit interest

payments to the Whitewater Trust. *Id.* ¶¶ 52, 54. They also allege that Mr. Bolog failed

to disclose that Science Park reached an agreement to sell the property, but that other

Whiteford lawyers notified the closing agent that Whitewater would be due some $3.7

million from the closing proceeds, and that those funds were delivered to the Trust in

or around April 2023. Compl. ¶¶ 57-60. In other words, the Complaint itself states

that Whitewater earned more than $335,000 on an investment of $3.35 million, or a

10 percent return over about 14 months. Plaintiffs' complaint is that "Plaintiffs," by

which they can only mean Plaintiff Whitewater Trust, "had not received any mortgage

payments or assignment of rent payments as of the time of the sale in April 2023, such

that they lost out on the use of these monies." Compl. ¶ 61.

Second, Plaintiffs allege that Mr. Bolog embezzled $350,000 from the Whitewater

Trust in December 2021 and directed those funds to an entity called Darnestown

Road, Inc., in which Mr. Bolog allegedly had an ownership interest. Compl. ¶¶ 62-63.

Plaintiffs contend that Mr. Bolog used the funds "to replace funds that he had

embezzled from Darnestown Road, Inc." and that Whitewater has not been repaid the $350,000. *Id.* ¶ 65.

Third, Plaintiffs allege that Mr. Bolog and Mr. Postal orchestrated the embezzlement of $585,000 from Plaintiff White Pearl, an entity wholly owned by Ms. Engelhorn. The Complaint alleges that Mr. Postal was the managing member and an owner of Defendant Swain Landing, which was developing a parcel of real estate. *Id.* ¶ 71. On January 5, 2022, Mr. Bolog allegedly caused White Pearl to transfer $585,000 to a Swain Landing account, and that White Pearl did not receive appropriate security for its investment. Compl. ¶¶ 74-76. Plaintiffs allege that Mr. Bolog concealed his interest in Swain Landing, and "failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes." *Id.* ¶ 74.

### B.  Claims against Whiteford.

Based on these facts, three plaintiffs filed a complaint against Mr. Bolog and several entities affiliated with him, and against Whiteford. In the initial complaint, only two of the nineteen counts applied to Whiteford: a claim for "negligent hiring and retention" of Mr. Bolog (Count 2), and a claim for legal malpractice (Count 6). On October 31, 2024, before Whiteford or any other defendant filed a response, Plaintiffs filed an amended complaint. The amended complaint contained no new factual allegations, except for a generic allegation that Mr. Bolog and other attorney-employees of Whiteford "were the actual and/or apparent agents" of Whiteford.

Compl. ¶ 6. Nevertheless, the amended complaint added one new count against Whiteford (Count 20) for "aiding and abetting breaches of fiduciary duty." It also added Whiteford as a defendant in four existing fraud counts against Mr. Bolog or his entities (Counts 1, 3, 4, and 5) and one count for breach of fiduciary duty (Count 7).

In Count 1, Ms. Engelhorn alleges that Mr. Bolog "tricked and deceived Plaintiff Engelhorn" into signing the Notice of Gift and related documents that conveyed a $10 million gift to Mr. Bolog and the JAREB trust. Compl. ¶ 79. Plaintiffs do not explain how Whiteford possibly could be liable for these acts.

Count 2 is styled as a claim by "Plaintiffs" against Whiteford for "negligent hiring and retention." Plaintiffs in unison allege that Whiteford had a duty to hire and supervise lawyers who were "fit for their duties" and that a "reasonable and prudent employer would not have ignored" Mr. Bolog's "financial issues and conversion of monies." Compl. ¶ 85. In essence, Plaintiffs contend that "the likelihood of the risk of [Bolog's] stealing from a client, such as Plaintiffs, was foreseeable." *Id.* ¶ 86. Plaintiffs' theory of causation against Whiteford is thin, but in essence they claim that but for Whiteford's alleged negligence they "would not have worked with or continued to work with Defendant Bolog, or allowed Defendant Bolog to have access to their monies." *Id.* ¶ 89.

In Count 3, Ms. Engelhorn as Whitewater's Trustee alleges that Mr. Bolog fraudulently caused the Trust to lend $3.35 million to acquire a bank loan made to a Bolog-affiliated entity called Science Park, which owned an office building in

Greenbelt. *See* Compl. ¶¶ 92-93. Although the Trust was repaid with interest when the office building was sold, it claims damages in the form of loss of use of its funds and a failure to receive certain mortgage payments. *Id.* ¶ 97.

In Count 4, Ms. Engelhorn as Trustee alleges that Mr. Bolog "embezzle[ed] and misappropriate[ed] approximately $350,000," Compl. ¶ 99, by causing the Trust to send those funds to an entity called Darnestown Road, Inc. without securing the Trust's right to repayment. *See id.* ¶¶ 62-67. Mr. Bolog is alleged to have concealed a partial ownership interest in Darnestown and to have used the funds to replace money he had embezzled from Darnestown. *See id.* ¶ 103. The Trust seeks return of its $350,000.

In Count 5, Plaintiff White Pearl alleges that Mr. Bolog "embezzle[ed] and misappropriate[ed] approximately $585,000," Compl. ¶ 107, by causing White Pearl to wire $585,000 to defendant Swain Landing. *Id.* ¶ 108. Mr. Bolog is alleged to have made this transaction without obtaining an investment security or promise of repayment for White Pearl. *Id.* ¶ 74. Again, Mr. Bolog is said to have concealed a personal financial interest in Swain Landing. *Id.* In both Counts 4 and 5, Plaintiffs allege that they would not have authorized the transfers had they known of Mr. Bolog's personal ownership interests in the entities. *Id.* ¶¶ 103, 111.

Count 6 is styled as a claim for "legal malpractice/negligence" against both Mr. Bolog and Whiteford. Although ostensibly brought on behalf of all three "Plaintiffs," Count 6 contains no allegations relevant to Plaintiff White Pearl, and therefore it can

only apply to Ms. Engelhorn and Whitewater Trust. Plaintiffs, reading an invoice that was later written off, claim that several lawyers other than Mr. Bolog worked on the JAREB Trust documents. Compl. ¶ 114. As Plaintiffs well know, however, those lawyers did *not* know that the trust instrument they drafted would be converted by Mr. Bolog into a receptacle for a $10 million gift to him from a client, and no allegation in the Complaint suggests that they had such knowledge. Amazingly, Plaintiffs allege that three Whiteford lawyers (other than Mr. Bolog) failed to advise Ms. Engelhorn that she could owe gift taxes on the $10 million gift and failed to insure that Ms. Engelhorn intended to transfer $10 million to JAREB. Compl. ¶ 118. Plaintiffs do not explain how the Whiteford lawyers (other than Mr. Bolog) would have given such advice when they had no knowledge of the $10 million gift.

In Count 7, "Plaintiffs" allege that Mr. Bolog and Whiteford breached fiduciary duties to them. Count 7 makes no specific allegations against Whiteford, but instead avers that Mr. Bolog breached his fiduciary duties by soliciting and preparing the Notice of Gift for $10 million and engaging in self-dealing and failing to obtain security for the transactions involving Science Park, Darnestown, and White Pearl.

Finally, in Count 20, "Plaintiffs" allege that Whiteford aided and abetted breaches of Mr. Bolog's fiduciary duties "as set forth above." Compl. ¶ 199. That count contains only conclusory—and wholly irresponsible—allegations that Whiteford "was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed

13

to Plaintiffs." *Id.* ¶ 201. In this count and the fraud counts, Plaintiffs seek $20 million in punitive damages.

### C.    Additional facts relevant to arbitration

Documents retained in Whiteford's files establish that Mr. Bolog discussed as early as September 2019 an engagement with Ms. Engelhorn to represent her as additional counsel in litigation in Switzerland arising from her father's estate. As recounted in the attached affidavit of Allen Foster, the matter came to Mr. Bolog through Richard Bussman, Ms. Engelhorn's son. *See* Ex. A ¶¶ 4, 6. On October 3, 2019, Whiteford prepared a retainer letter and sent it to Mr. Bussman. Ex. A(1). That letter included an arbitration clause in a form that would not change through subsequent drafts of the engagement agreement. *See id.* On October 14, 2019, Mr. Bussman reported that Ms. Engelhorn was "reviewing the situation with the Swiss lawyers" and considering Mr. Bolog's representation, "but she isn't ready to sign a retainer letter." Ex. A(3).

In early February 2020, after Ms. Engelhorn rejected a settlement gesture from her family in the Swiss litigation, Ms. Engelhorn turned back to Mr. Bolog. On February 11, Mr. Bolog's assistant sent an engagement letter to Ms. Engelhorn, copying Mr. Bolog and Allen Foster, a Whiteford attorney who was working with Mr. Bolog on the engagement. Ex. A(4). The next day Mr. Bolog sent the engagement letter to Mr. Bussman, copying Ms. Engelhorn and Mr. Foster. Ex. A(7).

On February 12, 2020, Mr. Bolog sent a revised version of the engagement agreement to Mr. Bussman and Ms. Engelhorn, again copying Mr. Foster. Ex. A(7). That draft retainer letter contained the same arbitration clause. Ex. A(8) at 3. On February 20, 2020, Mr. Bolog's assistant sent a revised version of the engagement letter to Ms. Engelhorn. Again, this version contained the same arbitration clause. Ex. A(10). Mr. Bolog told Ms. Engelhorn by email on February 27, 2020, that he was "looking forward to getting together tomorrow" and "[w]e do need to get the retainer letter signed. Let me know if you have any more questions." Ex. A(11). Mr. Bolog and Mr. Foster in fact met with Ms. Engelhorn and another of her children in Denver on February 28. As Mr. Foster recounts in an attached affidavit, he and Mr. Bolog explained certain provisions of the engagement agreement to Ms. Engelhorn in detail, and he is confident he personally discussed the arbitration clause. Ex. A ¶ 12. They gave both Ms. Engelhorn and her daughter ample opportunity to discuss the agreement and ask any questions. *See id.* ¶ 13. Ms. Engelhorn executed the signature page and provided it to Mr. Bolog. Mr. Bolog emailed a photograph of the signature page to Whiteford staff. Ex. A ¶ 13; Exs. A(13), A(14).

The executed engagement agreement includes the following arbitration clause:

> Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

Ex. A(14).

### III. ARGUMENT

**A. The Court should (1) immediately stay all proceedings against Whiteford pending adjudication of this petition to arbitrate and (2) issue an order compelling arbitration.**

**1. The Court should apply Maryland law on procedural issues and Colorado law on any substantive question about the validity and enforceability of the arbitration agreement.**

Because plaintiffs filed their claim in the Circuit Court for Baltimore City, the procedural law of Maryland applies. *See Doughty* v. *Prettyman*, 219 Md. 83, 88 (1959). But because the relevant events did not occur in Maryland, before the Court addresses any substantive questions about arbitrability it must first consider which body of substantive law applies. *See id.* Arbitration is grounded in contract law, and therefore the Court must consider choice-of-law principles for actions in contract.

Maryland courts still follow the rule of *lex loci contractus*, which means that "in deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made." *Erie Ins. Exch.* v. *Heffernan*, 399 Md. 598, 618 (2007) (quotations and citations omitted). In most cases "a contract is made where the last act necessary to make the contract binding occurs." *Commercial Union Ins. Co.* v. *Porter Hayden Co.*, 116 Md. App. 605, 672 (1997). The last act necessary to make a bilateral contract binding is typically a signature. *Baker* v. *Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011); *see also Continental Cablevision, Inc.* v. *United Broadcasting Co.*, 873 F.2d

717, 720-21 (4th Cir. 1989); *Chesapeake & Potomac Tel. Co.* v. *Allegheny Constr. Co.*, 340 F. Supp. 734, 739 (D. Md. 1972).

Here, the parties' arbitration agreement is embedded in their engagement agreement dated February 20, 2020. The agreement is in the form of a letter from Mr. Bolog to Ms. Engelhorn. The letter is printed on Whiteford's letterhead indicating the D.C. office address for the firm and for Mr. Bolog. It was sent to Ms. Engelhorn by email, but the letter includes her physical address in Colorado. Mr. Bolog (presumably) signed the agreement in the District of Columbia, but Ms. Engelhorn spent several months contemplating whether to execute the agreement. After considerable reflection, and some negotiated revisions to the draft agreement, two Whiteford lawyers met with Ms. Engelhorn in Colorado, and she signed the agreement in that State. Thus, the last act necessary to make the contract binding occurred in Colorado, and Colorado law applies to questions of interpretation and validity—if any such questions are raised by Plaintiffs.

### 2. Under Maryland law, the Court should issue an immediate stay of all proceedings against Whiteford pending disposition of this petition and motion.

At the outset, the Court should issue an order staying all proceedings against Whiteford during its consideration of this petition and motion. Maryland's Uniform Arbitration Act ("MUAA") is unequivocal: "A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made." Md. Code Ann., Cts. & Jud.

17

Proc. § 3-209(a) (emphasis added); *see Questar Homes of Avalon, LLC* v. *Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). Whiteford has filed a petition for an order to arbitrate based on a signed agreement to arbitrate between Ms. Engelhorn and Whiteford. *See* Ex. A(14). Ms. Engelhorn may or may not contest the enforceability of that provision, but she cannot credibly contest its existence. Nor can she contest that it encompasses the disputes at issue here: the agreement broadly covers "[a]ny claim or dispute arising out of or relating to ... our relationship with You." *Id.* Accordingly, the Court should issue a stay of proceedings during the pendency of this motion.[6]

Plaintiffs may argue that two of the three plaintiffs, Claudia Engelhorn as Trustee of the Whitewater Revocable Trust and White Pearl, LLC, do not have an express arbitration agreement with Whiteford. As set forth below, however, the arbitration agreement applies to *all* plaintiffs. Even if it did not, the interim stay would apply to all claims against Whiteford by all parties. The MUAA requires staying "an action" if it "involv[es] an issue subject to arbitration." The plain language of § 3-209(a) requires a stay as to the entire action that plaintiffs chose to file in a single case.

To be sure, § 3-209(b) provides that "[i]f the issue subject to arbitration is severable, the court *may* order the stay with respect to this issue only." (Emphasis added.) As to the claims against Whiteford, however, the clearly arbitrable issues

---

[6] A stay would apply to discovery, of course, which is important in this case because Plaintiffs have already served extensive document requests, interrogatories, and requests for admissions on Whiteford, and discovery under the parties' agreed-upon arbitration rules is far more limited. *See* Rule 17, JAMS Comprehensive Arbitration Rules & Procedures.

involving Ms. Engelhorn are not reasonably severable from the issues involving Ms. Engelhorn as Trustee of the Whitewater Trust or White Pearl. In the first place, Ms. Engelhorn agreed to arbitrate "any claim or dispute arising out of or relating to this agreement, our services under it, or *our relationship with You*." Ex. A(14) (emphasis added). Arbitration provisions covering claims or disputes "arising out of or relating to" the parties' "relationship" are among the broadest known to the law. *See Crown Oil & Wax Co.* v. *Glen Constr. Co.*, 320 Md. 546, 560 (1990). To the extent that White Pearl or Ms. Engelhorn as Trustee have claims against Whiteford, those claims assuredly arise out of or relate to Whiteford's relationship with Ms. Engelhorn. According to the Complaint, "Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust" of which Ms. Engelhorn is Trustee.

Further, White Pearl is a limited liability company whose sole member is Ms. Engelhorn. The Complaint alleges that Ms. Engelhorn sold a home and deposited the proceeds into her White Pearl account, and that Mr. Bolog then caused some of those funds to be transferred to a different entity without Ms. Engelhorn's knowledge. *See* Compl. ¶ 69-74. Whiteford is allegedly liable for damages arising from these events for failing to supervise or for negligently hiring Mr. Bolog, or vicariously for Mr. Bolog's alleged fraud. Whatever the merits of these claims—and there are none as to Whiteford—they are clearly part and parcel of Whiteford's "relationship" with Ms. Engelhorn.

Moreover, Plaintiffs often do not even differentiate their claims among individual plaintiffs. Count 2, for instance, is styled as "Negligent Hiring and Retention (Plaintiffs v. Defendant WTP)." The allegations in Count 2 refer to acts by or against "Plaintiffs" rather than by or against a specific plaintiff. *See*, *e.g.*, Compl. ¶ 85 ("Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.").[7] Because Plaintiffs themselves have merged their claims against Whiteford rather than differentiating them by plaintiff, the arbitrable issues are not reasonably "severable." Further, in the remaining claims against Whiteford for derivative liability based on the alleged frauds and breaches of fiduciary duty committed by Defendant Bolog (Counts 1, 3, 4, 5, 7 and 20), the theory of liability against Whiteford clearly arises out of the relationship between Ms. Engelhorn and the law firm. *See infra* Part III.A.4.

Accordingly, for all these reasons, the Court should issue an immediate stay of all proceedings against Whiteford pursuant to MUAA § 3-209(a).[8]

---

[7] Count 6 is styled as "Legal Malpractice/ Negligence (Plaintiffs v. Defendants Bolog and WTP)." Count 6 never mentions White Pearl, and the caption appears to be a mistake to the extent it was intended to include all three plaintiffs. At any rate, the allegations in Count 6 refer to acts by or against "Plaintiff Engelhorn and Plaintiff Trust," rather than differentiating between them. *See* Compl. ¶¶ 114, 115, 116.

[8] Nevertheless, Whiteford includes in this filing its preliminary motion to dismiss all claims against Whiteford, should the Court decide for any reason that a stay is not warranted or arbitration is not compulsory. This is an accepted form of response in these circumstances. *See Walther* v. *Sovereign Bank*, 386 Md. 412 (2005).

### 3. Under Maryland law, the Court should issue an order compelling arbitration in accordance with the parties' agreement.

Under the MUAA, when one party refuses to arbitrate, the other "may file a petition with a court to order arbitration." Md. Code Ann., Cts. & Jud. Proc. § 3-207(a). "If the court determines that the agreement exists, *it shall order arbitration*." *Id.* § 3-207(c) (emphasis added). Under the Act, therefore, "the sole question before the court in an action to compel arbitration is whether an agreement to arbitrate exists." *Holmes* v. *Coverall N. Am., Inc.*, 336 Md. 534, 545 (1994).

This unequivocal language reflects Maryland's strong public policy favoring the enforcement of arbitration agreements. *See*, *e.g.*, *Walther* v. *Sovereign Bank*, 386 Md. 412, 424-25 (2005); *Crown Oil*, 320 Md. at 558. When the parties dispute whether the arbitration provision is enforceable, "the resolution of that issue is for the court. All doubts, however, are to be resolved in favor of submitting the dispute to arbitration." *Bloch* v. *Bloch*, 115 Md. App. 368, 375 (1997) (citations omitted). Further, when the parties "use a broad, all encompassing" arbitration clause, as they did here, "it is presumed they intended all matters to be arbitrated." *Crown Oil*, 320 Md. at 558. Parties are presumed to have read and understood contracts they signed, including arbitration agreements. *See Lyles* v. *Santander Consumer USA Inc.*, ___ Md. App. ___, Case No. 1459, slip op. at 19 (App. Ct. Md. Oct. 31, 2024).

Whiteford has attached to this petition a signed engagement agreement containing a very broad arbitration clause that clearly covers all claims by Plaintiffs against Whiteford. *See* Ex. A(14). Whiteford has also attached an affidavit and

documents clearly showing that Ms. Engelhorn had ample opportunity to consider the engagement agreement, and in fact did consider it over a period of several months before she voluntarily decided to execute it. Accordingly, Whiteford has met all the requirements for an order compelling arbitration under § 3-207(c).

For these reasons, the Court should issue an order requiring Ms. Engelhorn to submit her claims to arbitration in accordance with the engagement agreement between her and Whiteford, and staying all proceedings against Whiteford pending the outcome of that arbitration.

### 4.  The arbitration clause also applies to Ms. Engelhorn in her capacity as trustee and to White Pearl, an LLC solely owned by Ms. Engelhorn.

Plaintiffs may argue that two of the three plaintiffs, Claudia Engelhorn as Trustee of the Whitewater Revocable Trust and White Pearl, LLC, do not have an express arbitration agreement with Whiteford. If plaintiffs raise that issue, however, it should be resolved by the arbitrators. When the parties have agreed to a broad arbitration provision covering, for instance, "any and all disputes arising out of the contract," courts "should promote the legislative policy favoring arbitration and leave the issue of arbitrability to the arbitrators." *Crown Oil*, 320 Md. at 560; *see also Contract Constr., Inc.* v. *Power Tech. Ctr. L.P.*, 100 Md. App. 173, 178 (1994).

If the Court declines to refer that issue to the arbitrators, it should conclude that an arbitration agreement that covers the entire "relationship" between Ms. Engelhorn and Whiteford plainly applies to Ms. Engelhorn as Trustee of the Whitewater Trust. Ms. Engelhorn, even in her capacity as a trustee, is a natural person, not an entity apart

22

from herself. And the plaintiff is Ms. Engelhorn as Trustee, not the Whitewater Trust as a separate entity. *See Ayres* v. *Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 262 (D. Md. 2015) ("Under Maryland law, 'a trust as an entity does not have the capacity to be sued and that … capacity exists only in its trustees.") (citations omitted). Moreover, the trust instrument that created the Whitewater Trust was prepared by Whiteford lawyers and funded with the proceeds of a settlement of Ms. Engelhorn's claim against her father's estate, which was litigated by Whiteford lawyers.

The arbitration agreement also applies to White Pearl, which is defined in the Complaint as "a single-member, limited liability company … with Plaintiff Engelhorn being the sole member." Compl. ¶ 3. Although the general rule is that nonsignatories are not bound by an arbitration clause, at least two recognized exceptions apply here. *First*, when a party's claim "presumes the existence of" the written agreement that contains an arbitration clause, equitable estoppel prevents the party from avoiding arbitration. *See Case Handyman* v. *Schuele*, 183 Md. App. 44 (2008) (nonsignatory home-improvement franchisor could enforce arbitration agreement between franchisee and homeowner in homeowner's claims arising out of contract), *vacated for lack of final judgment*, 412 Md. 555 (2010); *District Moving & Storage Co.* v. *Gardiner & Gardiner, Inc.*, 63 Md. App. 96 (1985) (warehouse tenant required to arbitrate claims against architect and contractor for defective construction of warehouse when developer's agreement with defendants included arbitration clause), *aff'd*, 306 Md. 286 (1986); *American Bankers Ins. Group, Inc.* v. *Long*, 453 F.3d

623, 628 (4th Cir. 2006) (estoppel can also apply against a nonsignatory who sues a signatory when the underlying claims seek a direct benefit or arise from the contract containing the arbitration clause).

White Pearl's fraud claim against Whiteford (Count 5) depends on its allegation that Mr. Bolog, "as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, … had a duty to disclose certain material facts to Plaintiffs before the transaction." Compl. ¶ 109; *see also id.* ¶ 122 (alleging, in Count 7 for breach of fiduciary duty, that "as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn"); *id.* ¶ 199 (alleging, in Count 20 for aiding and abetting breach of fiduciary duty, that "Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above."). The "fiduciary relationship" between Mr. Bolog and Ms. Engelhorn arises from the engagement agreement, which includes an arbitration provision, and (according to Plaintiffs) that agreement provides a direct benefit to White Pearl in its creation of a fiduciary duty. White Pearl is thus estopped from denying the agreement and its arbitration clause. *See Coll. of Notre Dame* v. *Morabito Consultants, Inc.*, 132 Md. App. 158, 183 (2000) (parties are estopped from denying the existence of an arbitration agreement when their claims are intertwined with the arbitrable claims).

*Second*, an arbitration provision can be enforced against the alter ego of a signatory to an arbitration agreement. *See*, *e.g.*, *Thompson* v. *Witherspoon*, 197 Md. App. 69, 84 (2011); *Smith* v. *Multi-Financial Secs. Corp.*, 171 P.3d 1267, 1274 (Colo.

App. 2007). White Pearl is wholly owned by Ms. Engelhorn and effectively her alter ego. Given the breadth of the arbitration agreement that Ms. Engelhorn signed— applying to "[a]ny claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You"—the Court should conclude that Ms. Engelhorn included White Pearl within the scope of the arbitration provision.

For these reasons, the Court should refer any contention of nonarbitrability by Ms. Engelhorn as Trustee or White Pearl to the arbitrators or, in the alternative, order that all Plaintiffs are covered by the arbitration clause in the Whiteford-Engelhorn engagement agreement.

> **5. Under Colorado law, a lawyer may enforce an arbitration agreement against a client.**

Ms. Engelhorn may argue that the arbitration agreement is unenforceable on the ground that lawyers in some jurisdictions have an ethical obligation to provide thorough explanations of arbitration clauses in engagement agreements with clients. Questions about the validity of an arbitration agreement, however, must be resolved by the arbitrators. *Holmes*, 336 Md. at 545. If this Court were to consider a defense to the petition to arbitrate grounded on invalidity, however, the Court's analysis would be governed by the substantive law of Colorado. *See supra* Part III.A.1.

Colorado, like Maryland, recognizes a "presumption favoring arbitrability unless the court can say with 'positive assurance' that the [arbitration clause] is not susceptible of any interpretation that encompasses the subject matter of the dispute." *Smith*, 171 P.3d at 1270 (citations and quotations omitted). Moreover, "[w]hen an

arbitration clause uses the phrase 'arising out of' or 'relating to,' it is broad in scope,"
and "[a]ny doubts regarding the scope of an arbitration clause must be resolved in
favor of arbitration." *Id.*

Moreover, Colorado's rules of professional conduct do "not ... prohibit a lawyer
from entering into an agreement with the client to arbitrate legal malpractice claims,
provided such agreements are enforceable and the client is fully informed of the scope
and effect of the agreement." Colo. R. Prof'l Cond. 1.8 cmt. [17]. And courts applying
Colorado law have held that lawyers may enforce arbitration agreements against their
clients. In *Hartley* v. *Harman*, Civ. No. 16-277, 2016 WL 9344232 (D. Colo. Oct. 18,
2016), *recommendation adopted*, 2016 WL 9344068 (D. Colo. Nov. 8, 2016), for
instance, the court considered the public policy arguments often tendered by clients
attempting to avoid arbitration, but concluded that the client's signature on the
agreement and the state policy favoring arbitration overcame any failure by the
lawyer to provide a full explanation of the meaning of arbitration. *See id.* at *8; *see also
Tolliver* v. *True*, Civ. No. 06-2574, 2007 WL 2909393, at *4 (D. Colo. Sep. 28, 2007)
(arbitration agreement enforceable by lawyer against client notwithstanding client's
argument that lawyer failed to fully and adequately explain the arbitration clause). In
addition, in *Hartley*, the court relied on the decision in *Buckwalter* v. *Napoli, Kaiser &
Bern LLP*, Civ. No. 01-10868, 2005 WL 736216 (S.D.N.Y. Mar. 29, 2005), which held
that arbitration clauses in a lawyer's engagement agreement were enforceable against
clients even when the clients contended "they had no idea that such agreements

26

contained arbitration clauses, or what the implications of the arbitration clauses were." *Id.* at \*6. *Buckwalter* held that ethics opinions requiring lawyers to provide detailed explanations of arbitration were not binding on courts considering the impact of an arbitration clause and did not overcome the presumption in favor of arbitration. *Id.* at \*7. And as in this case, *Buckwalter* observed that the law firm gave the clients ample opportunity to ask questions about the agreement. *See id.* at \*8. The clients' failure to ask about arbitration was an important factor in determining that the agreements were enforceable, notwithstanding the clients' later contention that they did not even understand that their agreements contained arbitration clauses. *Id.*

Based on the attached affidavit from Mr. Foster, Ex. A, Whiteford contends that the arbitration provision was explained to Ms. Engelhorn. Even if it had not been, however, the available authority under Colorado law counsels that the arbitration provision in the Whiteford-Engelhorn engagement agreement is fully enforceable.

For these reasons, the Court should reject any argument by Plaintiffs that the arbitration provision is not enforceable based on public policy considerations derived from principles of legal ethics.

**B.    The Complaint fails to state a valid claim for relief against Whiteford.**

**1.    Under Maryland procedure, a plaintiff must plead *facts* sufficient to state a claim, and fraud claims must plead facts with particularity.**

The Maryland Rules do not permit notice pleading. *See Shepter* v. *Johns Hopkins Univ.*, 334 Md. 82, 104 (1994). Under Rule 2-305, a pleading "shall contain a *clear statement of the facts* necessary to constitute a cause of action." (Emphasis added.)

Moreover, at least four of the counts applicable to Whiteford allege fraud, which is subject to a higher standard of pleading. Under Maryland procedure, fraud must be pleaded with particularity. *E.g.*, *McCormick* v. *Medtronic*, 219 Md. App. 485, 527-28 (2014).

### 2. District of Columbia substantive law applies to Plaintiffs' claims against Whiteford.

All the direct and derivative counts in the Amended Complaint against Whiteford are grounded in negligence, breach of fiduciary duty, or fraud, and accordingly Maryland's rule of *lex loci delicti* determines the substantive law applicable to those tort claims. *See*, *e.g.*, *Chambco* v. *Urban Masonry Corp.*, 338 Md. 417, 420 (1995). Although application of the *lex loci* rule in a multi-plaintiff, multi-defendant, and multi-jurisdictional case inevitably implicates the law of multiple jurisdictions, the central facts here point to District of Columbia law. Mr. Bolog principally worked from the District of Columbia office of Whiteford, and that office is the central location from which he represented the Plaintiffs. Moreover, Maryland has adopted § 380(2) of the Restatement (First) of Conflicts of laws, which provides an exception to the general rule that the place of the wrong is where the last event occurs that gives rise to the tort. Under § 380(2), if "the liability-creating character of the actor's conduct depends upon the application of a standard of care, 'and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum.'" *Lab. Corp.* v. *Hood*, 395 Md. 608, 616 (2006). Mr. Bolog's and Whiteford's conduct is governed by a

standard of care, and District of Columbia law defines a standard for legal malpractice, breach of fiduciary duty, negligent hiring, and negligent supervision. *See, e.g.*, *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 582 (D.C. 2015) (breach of fiduciary duty); *Phelan* v. *City of Mount Rainier*, 805 A.2d 930, 938 & n.8 (D.C. 2002) (negligent supervision and retention in both D.C. and Maryland); *O'Neil* v. *Bergan*, 452 A.2d 337, 341 (D.C. 1982) (professional negligence).

Accordingly, District of Columbia law applies to the tort claims against Whiteford.

### 3. Count 2 fails to state a claim for negligent hiring and supervision against Whiteford.

Count 2 of the Complaint alleges that Whiteford's decision to hire and retain Mr. Bolog was negligent because the firm knew or should have known from public pleadings or docket entries that he had "financial issues" and, therefore, was likely to steal money from his clients. Compl. ¶ 85. Count 2 asserts direct rather than vicarious liability: Plaintiffs must show that *Whiteford's* conduct in hiring and retaining Mr. Bolog breached the standard of care, and that the breach proximately caused injury to Plaintiffs. *See Phelan*, 805 A.2d at 940. But no reasonable jury could conclude from the factual allegations in the Complaint that a reasonable employer would have foreseen that Mr. Bolog would steal client money.

First, many of the docket entries themselves are trivial and not evidence of anything. That Plaintiffs are forced to rely on a judgment of $90 and a lien of $388, both of which were promptly paid years before Whiteford hired Mr. Bolog, reflects the weakness of Plaintiffs' direct claim against Whiteford.

As to the allegations from other pleadings that involve more money or more serious claims, they all fall apart under the barest scrutiny. *See supra* Part I.A. It bears emphasizing that Plaintiffs' reliance on docket entries or pleadings within those dockets are not allegations of fact, they are allegations of allegations made in other proceedings, which typically have little to no probative value. *See Gilbert* v. *Wells Fargo Bank, NA*, 698 F. Supp. 3d 844, 851 (D.S.C. 2023) (allegations of existence of other lawsuits are not probative of wrongdoing and not enough to support a claim for unfair trade practices); *Davis* v. *Harris*, Civ. No. 03-3007, 2006 WL 3513918, at *3 (C.D. Ill. Dec. 5, 2006) ("the existence of other lawsuits is not evidence that any of the claims in those lawsuits are true").

In other words, Plaintiffs allege that because some third party made an *allegation* against Mr. Bolog, Whiteford should have (1) known about the allegation, (2) believed the allegation, and (3) declined to hire Mr. Bolog or discharged him because of the allegation. But any responsible employer would have read the allegations against Mr. Bolog in context, which would have included learning about the outcome of the case. Plaintiffs have not bothered to do that, at least insofar as their Complaint articulates. An employer cannot be responsible for hiring someone who was accused of fraud if it turns out that the accusations were dropped or dismissed. That is exactly what happened in the more serious cases cited in the Complaint, but the Court need not make that finding on this motion. It is enough to conclude that allegations about allegations are not sufficient to support a claim of negligent hiring or retention.

30

Second, even if Plaintiffs' litany of docket entries were reliable indicators that Mr. Bolog had "financial difficulties," a reasonable jury could not infer from those allegations that Whiteford negligently employed him, much less that Mr. Bolog would allegedly defraud a client out of $10 million. *See Phelan*, 805 A.2d at 941-42 (police officer's instances of "uncontrollable outbursts of rage and lack of control or discipline," combined with other documented disciplinary issues, did not support a claim that the police department should have known that the officer would use his service revolver in a dangerous manner). Untold numbers of employees have been sued in collection actions. If employers could be held responsible for negligently employing or retaining those employees, employment markets might collapse.

Plaintiffs are overreaching in their effort to make Whiteford directly liable for Mr. Bolog's acts. Because the allegations in the Complaint do not permit an inference that would support direct liability against Whiteford for negligently hiring or retaining Mr. Bolog, the Court should dismiss Count 2 for failure to state a claim.

### 4. Count 6 should be dismissed because the allegations of fact establish that Mr. Bolog was acting outside the scope of his employment.

Count 6 of the Complaint alleges that Whiteford is vicariously liable in malpractice chiefly for Mr. Bolog's conduct in orchestrating a $10 million gift from Ms. Engelhorn.[9] The Complaint attempts to involve other Whiteford lawyers in Mr. Bolog's scheme, but

---

[9] The caption of Count 6 states that it is filed by "Plaintiffs" against "Defendants Bolog and WTP." But Count 6 does not include allegations relating to Plaintiff White Pearl. And Whiteford's argument in the text applies equally to Plaintiffs Engelhorn and Whitewater Trust.

those factual allegations amount to nothing more than a recital of certain time entries that appeared on an invoice that was later written off by the firm. *See* Compl. ¶ 114.a to 114.e. Plaintiffs allege, for instance, that a Whiteford lawyer "recorded a time entry for 'draft[ing] of irrevocable trust agreement." *Id.* ¶ 114.a. The Plaintiffs further allege that four Whiteford lawyers, including Mr. Bolog, failed "to advise Plaintiff Engelhorn that she could owe gift taxes on the alleged $10M gift," *id.* ¶ 118.a, and failed "to ensure that Plaintiffs Engelhorn [sic] intended to transfer $10M to the JAREB Irrevocable Trust." *Id.* ¶ 118.e. These allegations are maddening to the Whiteford lawyers who were deceived by Mr. Bolog about the purpose of the trust instrument they drafted, and who knew nothing about the Engelhorn "gift," until after it was disclosed to Whiteford by Ms. Engelhorn's prior attorneys with Dentons nearly two years later. Yet the Court need not resolve that dispute on this motion. Instead, it can rely on the factual allegations in the Complaint that unequivocally and repeatedly assert that Mr. Bolog, acting by himself, effectively stole $10 million from Ms. Engelhorn by fraud, deceit, and trickery. *See* Compl. ¶¶ 36, 40, 41, 43, 78-81, 127, 128, 133, 169, 170. That alleged theft was the sole cause of Ms. Engelhorn's claimed damage, and Whiteford cannot be held vicariously liable for it.

Although a law firm is ordinarily liable for the malpractice of its employed attorneys, the extraordinary factual allegations in this case establish as a matter of law that Mr. Bolog was acting outside the scope of his employment. The District of

Columbia generally determines scope of employment by the test set forth at § 228 of

the Restatement (Second) of Agency:

> 1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, *at least in part,* by a purpose to serve the master; and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Schecter* v. *Merchants Home Delivery, Inc.*, 892 A.2d 415, 427-28 (D.C. 2006) (emphasis

in original) (quoting Restatement (Second) of Agency § 228). Under D.C. law, scope of

employment "becomes a question of law for the court ... if there is not sufficient

evidence from which a reasonable juror could conclude that the action was within the

scope of the employment." *Boykin* v. *District of Columbia*, 484 A.2d 560, 562 (D.C.

1984).[10]

---

[10] In *Boykin*, the District of Columbia Court of Appeals held that D.C. public schools could not be held liable for a school employee's sexual assault of a student during the school day and in a school building. The court observed that the perpetrator's assault "was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of Boyd's independent, malicious, mischievous and selfish purposes." *Id.* at 562; *see also District of Columbia* v. *Bamidele,* 103 A.3d 516, 525 (D.C. 2014); *Tall* v. *Bd. of School Comm'rs*, 120 Md. App. 236, 257-59 (1998) (following *Boykin* under Maryland law).

33

It is settled in D.C. and elsewhere that theft by an employee for the employee's sole benefit is not within the scope of employment under both subsection (1) and (2) of the Restatement, because such conduct is not actuated at least in part by a purpose to serve the master. *E.g. Schecter*, 892 A.2d at 428. To determine whether an employee's theft was solely for the employee's benefit, "[t]he key inquiry is the employee's intent at the moment the tort occurred." *Majano* v. *United States*, 469 F.3d 138, 142 (D.C. Cir. 2006). "[T]he moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends." *Id.* (citations and quotations omitted).

In this case, the Notice of Gift itself unequivocally establishes that Mr. Bolog's intent was to obtain a gift solely for himself, and *not* for Whiteford. The Notice states repeatedly that Ms. Engelhorn's gift "has nothing to do with [Whiteford], nor legal services that you have or will provided [sic] to me." The fact that Mr. Bolog personally received the $10 million and never informed Whiteford about the gift, let alone offered to share any portion of the gift with the law firm, should seal the outcome.

To be sure, Ms. Engelhorn alleges that *she* did not understand (or possibly even read) the Notice of Gift. Indeed, she alleges that "Defendant Bolog tricked [her] into signing" the relevant documents by "lull[ing] her into believing the documents concerned routine matters requiring her signature." Compl. ¶ 36. But even she does

not allege that Whiteford received any portion of the $10 million (and it did not). Moreover, the test is *Mr. Bolog's* intent—and the Notice of Gift makes indisputable his intent to benefit himself and not Whiteford. And even without the Notice of Gift, the allegations in the Complaint require the same conclusion. The Complaint alleges that Mr. Bolog alone defrauded Ms. Engelhorn, and that Mr. Bolog alone received the benefits of his fraud. No allegations suggest that other Whiteford personnel participated in Mr. Bolog's procurement of the gift or received any portion of it. The Complaint's allegations do not support an inference that Mr. Bolog intended to serve Whiteford's interests in any way when he allegedly induced the $10 million gift, and as such Whiteford cannot be vicariously liable for his actions in doing so.

In sum, the allegations in Count 6 do not state a claim for vicarious liability against Whiteford. For these reasons, the Court should dismiss Count 6 against Whiteford.

**5. Count 1 should be dismissed because the allegations of fact establish that Mr. Bolog was acting outside the scope of his employment with respect to the $10 million alleged gift.**

In their Amended Complaint, Plaintiffs added Whiteford as a defendant in Count 1, which alleges that "Defendant Bolog intentionally defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million" and by deceiving her into signing the Notice of Gift and other "gift" documents. Compl. ¶¶ 78-79. But the Amended Complaint added no new *factual* allegations that could possibly make Whiteford liable for Mr. Bolog's alleged fraud, much less the particular factual allegations required for stating a claim in fraud. As set forth in the preceding section, the Notice of Gift makes

absolutely clear that Mr. Bolog was acting in his personal capacity and on his own behalf. And nothing in the Complaint suggests in any way that Whiteford benefited from the $10 million that Mr. Bolog received through the JAREB Trust.

Under the District of Columbia precedent set forth in the preceding section, Whiteford cannot be vicariously liable for the intentionally tortious conduct of its employee acting outside the scope of his employment. In *International Distrib. Co.* v. *American Dist. Tel. Co.*, 385 F. Supp. 871 (D.D.C. 1974), an alarm-installation company was sued by a customer when two installers stole $57,000 worth of goods from the customer's warehouse while working for the installation company. The court granted summary judgment for the installation company, even though the company "put [the installers] in a position, clothed with apparent authority, to be on plaintiff's premises and effect the burglaries." *See id.* at 872. The Court found that the installers acted on their own behalf and their employer did not benefit from those actions or ratify them, and therefore granted judgment as a matter of law to the company. *Id.* at 873.

Here, Plaintiff's claim for vicarious liability against Whiteford is doomed by the complete absence of any allegation that would support a finding that Mr. Bolog was acting for Whiteford's benefit when he orchestrated a $10 million gift to himself. Nothing in the Complaint supports an inference that Whiteford authorized, ratified, or benefited from Mr. Bolog's alleged fraud. For these reasons, Count 1 of the Amended Complaint should be dismissed as to Whiteford for failure to state a claim.

**6.  Count 3 should be dismissed because no factual allegations establish that Mr. Bolog was acting within the scope of his employment in the Science Park transaction.**

Count 3 of the amended complaint alleges that Mr. Bolog had a duty to disclose to the Whitewater Trust that he "was a principal of Defendant Science Park and had a financial interest" in the loan Whitewater made to Science Park, and further alleges that Whitewater would not have made the loan if it had known about Mr. Bolog's ownership interest. As a result, Whitewater allegedly "lost the use of its funds" and "failed to receive mortgage payments" (although it did receive a repayment of its investment, with interest). *See* Compl. ¶ 97.

Whatever the merits of the claim against Mr. Bolog, the Complaint contains no factual allegations that would support a fraud claim against Whiteford. The Complaint alleges that a Whiteford lawyer (not Mr. Bolog) "wrote an email stating that the payoff for the Trust was $3,689,662.77," and that the amount was paid to the Whitewater Trust from the proceeds of the office building sale. Compl. ¶¶ 59-60. But those allegations *contravene* any theory that Whiteford is liable for fraud.

Instead, Plaintiffs apparently contend that Whiteford is vicariously liable for Mr. Bolog's actions in concealing his alleged interest in Science Park, but nothing in the Complaint indicates that Mr. Bolog was acting for Whiteford's benefit with respect to the Science Park transaction. Whitewater does not allege, for instance, that *Whiteford* had an interest in Science Park, or that Whiteford received any benefit from the Whitewater Trust loan to Science Park. Nor does Whitewater allege that Whiteford

billed the Whitewater Trust or Science Park for Mr. Bolog's work on the loan purchase transaction.

Fraud cannot be alleged through conclusory statements. *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 187 (1997). Whitewater has ample opportunity to prove a claim against Mr. Bolog or Science Park. But because the Complaint contains no allegations suggesting that Mr. Bolog was acting within the scope of his employment by Whiteford with respect to the Science Park transaction, the claims against Whiteford in Count 3 should be dismissed.

### 7. Count 4 should be dismissed because no factual allegations suggest that Mr. Bolog acted within the scope of his employment in the Darnestown transaction.

Count 4 alleges that "Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust." Compl. ¶ 99. As with the Science Park transaction, the Whitewater Trust alleges that Mr. Bolog failed to disclose that "he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction." *Id.* ¶ 100. Once again, however, the Complaint does not allege facts suggesting that Whiteford had any interest in Darnestown Road or that it benefited in any way from the $350,000 transaction. The Trust may have a remedy against Darnestown or Mr. Bolog, but it has failed to allege facts that would make Whiteford vicariously liable for Mr. Bolog's acts, and for that reason the claims against Whiteford in Count 4 should be dismissed.

### 8. Count 5 should be dismissed because no factual allegations suggest that Mr. Bolog acted within the scope of his employment in the White Pearl transaction.

In Count 5, Plaintiffs allege that Mr. Bolog "defrauded Plaintiffs by embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC." Compl. ¶ 107. Again, Plaintiffs allege that Mr. Bolog had an undisclosed relationship with "Defendant Swain Landing," *id.* ¶ 109, and that White Pearl would not have authorized a transfer of $585,000 had it known of Mr. Bolog's interest. *Id.* ¶ 111. But the Complaint contains no facts suggesting that Whiteford had any interest in Swain Landing, or that it knew about Mr. Bolog's alleged interest. Nor does the Complaint contain any factual allegations suggesting that Whiteford benefited from Mr. Bolog's alleged embezzlement. Again, White Pearl may have a remedy against Swain Landing or Mr. Bolog, but it has failed to allege facts that would make Whiteford vicariously liable for Mr. Bolog's alleged fraud, and for that reason the claims against Whiteford in Count 5 should be dismissed.

### 9. Count 7 should be dismissed because Whiteford cannot be liable for Mr. Bolog's alleged breaches of fiduciary duty.

In their Amended Complaint, Plaintiffs added Whiteford as a defendant in Count 7, which alleges breaches of fiduciary duty by Mr. Bolog through a series of his alleged acts of misconduct already addressed in other counts. Compl. ¶ 123.[11] But Plaintiffs have not added any factual allegations against Whiteford except for a generic

---

[11] Count 7 also alleges that Mr. Bolog failed to record Whitewater's deed of trust securing the Science Park loan, Compl. ¶ 123; *see also* Compl. ¶ 53. But Plaintiffs cannot show any harm from that allegation because they admit that the loan was repaid with interest. *Id.* ¶ 59.

allegation that Whiteford is vicariously liable for Mr. Bolog's actions. For the reasons set forth above, Mr. Bolog was not acting within the scope of his employment for Whiteford when he committed any alleged breaches of his fiduciary duties owed to Plaintiffs. Plaintiffs do not allege that Mr. Bolog's breaches of duty were known to Whiteford or benefited Whiteford in any way. Accordingly, Whiteford can no more be vicariously liable for breach of fiduciary duty than it can be for malpractice or fraud.

### 10.   Count 20 should be dismissed because Whiteford cannot be liable for aiding and abetting a breach of fiduciary duty.

The District of Columbia has not specifically recognized a claim for aiding and abetting a breach of fiduciary duty. *See Pietrangelo* v. *Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 (D.C. 2013); *see also, e.g., He Depu* v. *Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 244 (D.D.C. 2021) (predicting D.C. would recognize such a claim). Nevertheless, the D.C. Court of Appeals has suggested that if it were to recognize the claim, it would require proof of the following elements: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of this breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Pietrangelo*, 68 A.3d at 711. Although Count 20 nominally recites these elements (or comparable language), nothing in the Complaint remotely alleges facts tending to show that Whiteford rendered substantial assistance or encouragement of Mr. Bolog's alleged wrongdoing. For that reason Count 20 should be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons stated, the Court should (1) stay all claims pending adjudication

of the petition for an order to arbitrate; and (2) issue an order compelling Plaintiffs to

arbitrate their claims against Whiteford and staying any further proceedings against

Whiteford in this matter; or (3) dismiss all claims against Whiteford for failure to state

a claim upon which relief can be granted.

Dated: November 15, 2024                    Respectfully submitted,

                                            ZUCKERMAN SPAEDER LLP

                                            By:   /s/ William J. Murphy
                                                  William J. Murphy (#8406010273)
                                                  John J. Connolly (#9112170144)
                                                  Kirk E. MacKinnon Morrow
                                                    (#2410241018)

                                            100 E. Pratt St., Suite 2440
                                            Baltimore, Maryland 21201
                                            410 332 0444
                                            wmurphy@zuckerman.com
                                            jconnolly@zuckerman.com
                                            kmackinnonmorrow@zuckerman.com

                                            *Attorneys for Defendant Whiteford,*
                                            *Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of November, 2024, I caused copies of

the foregoing document to be sent by email and/or electronic service to the following

persons:

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2024, a copy of the foregoing was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br>*Counsel for Erik D. Bolog*<br>By email to Douglas.Gansler@cwt.com | Erik D. Bolog, Trustee<br>JAREB Irrevocable Trust Agreement<br>Dated October 11, 2021<br>The Bolog Law Group<br>1763 Columbia Road NW<br>Washington, DC 20018<br>By first class mail |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Darnestown Road, Inc.<br>Attn: Erik D. Bolog<br>8938 Abbey Terrace<br>Potomac, MD 20854<br>By first class mail | Science Park Associates, LLC<br>Attn: Erik D. Bolog<br>8938 Abbey Terrace<br>Potomac, MD 20854<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |
| Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br>(410) 721-1979<br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com | |

 /s/ John J. Connolly
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

|  |  |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

## DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS AND MOTION TO DISMISS OR STAY
## (HEARING REQUESTED)

Defendant Whiteford, Taylor & Preston LLP ("Whiteford"), by its undersigned counsel, hereby

PETITIONS for an order to arbitrate all claims against Whiteford in accordance with the Maryland Uniform Arbitration Act and, consistent with Md. Code Ann., Cts. & Jud. Proc. § 3-209(a)(1), a stay of all proceedings against Whiteford upon the filing of the Petition; and, in the alternative,

MOVES to dismiss or stay all claims against Whiteford for failure to state a claim upon which relief can be granted pursuant to Maryland Rule 2-322.

The grounds in support of this motion are set forth in the accompanying memorandum in support and exhibits to the memorandum, which are incorporated by reference herein.

## REQUEST FOR HEARING

Pursuant to Maryland Rule 2-311(f), Whiteford respectfully requests a hearing on

the foregoing motion.

Dated: November 15, 2024                    Respectfully submitted,

                                            ZUCKERMAN SPAEDER LLP

                                            By:  /s/ William J. Murphy
                                                William J. Murphy (#8406010273)
                                                John J. Connolly (#9112170144)
                                                Kirk MacKinnon Morrow
                                                 (#2410241018)

                                            100 E. Pratt St., Suite 2440
                                            Baltimore, Maryland 21201
                                            410 332 0444
                                            wmurphy@zuckerman.com
                                            jconnolly@zuckerman.com
                                            KMackinnonMorrow@zuckerman.com

                                            *Attorneys for Defendant Whiteford,*
                                            *Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2024, a copy of the foregoing

was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br>*Counsel for Erik D. Bolog*<br>By email to Douglas.Gansler@cwt.com | Erik D. Bolog, Trustee<br>JAREB Irrevocable Trust Agreement<br>Dated October 11, 2021<br>The Bolog Law Group<br>1763 Columbia Road NW<br>Washington, DC 20018<br>By first class mail |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Darnestown Road, Inc.<br>Attn: Erik D. Bolog<br>8938 Abbey Terrace<br>Potomac, MD 20854<br>By first class mail | Science Park Associates, LLC<br>Attn: Erik D. Bolog<br>8938 Abbey Terrace<br>Potomac, MD 20854<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |
| Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br>(410) 721-1979<br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com | |

   __/s/ John J. Connolly_____
   John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | **HEARING REQUESTED** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN'S MOTIONS (A) TO STRIKE, (B) FOR A MORE DEFINITE STATEMENT, AND (C) TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

PRELIMINARY STATEMENT ...................................................................................... 6

FACTUAL ALLEGATIONS ........................................................................................... 8

LEGAL STANDARD ..................................................................................................... 12

ARGUMENT .................................................................................................................. 12

    I.    The Court Should Strike Certain Allegations in the Complaint ........................... 12

    II.    Plaintiffs Fail to Properly Plead Requirements for Jurisdiction with This
Court ..................................................................................................................... 14

    III.    The Court Should Dismiss All Claims Against the Bolog Defendants ............... 16

        A.    Court Should Dismiss Counts I, III-V, and XVIII Alleging Fraud
for Failing to Plead with Requisite Specificity ....................................... 16

        B.    The Court Should Dismiss Count VI Alleging Legal Malpractice
for Failure to Show Neglect of Reasonable Duty .................................... 19

        C.    The Court Should Dismiss Count VII Alleging Breach of Fiduciary
Duty .......................................................................................................... 20

        D.    Counts VIII, XV, and XVI are Wholly Dependent on Establishing
the Same Defective Allegations of Fraud in Count I and Therefore
Must Fail for the Same Reasons .............................................................. 21

        E.    The Court Should Dismiss Counts XIII and XIV .................................... 22

        F.    Counts XVII, XVIII, and XIX Should Be Dismissed for Failure to
Satisfy the Pleading Standard .................................................................. 23

        G.    Count X Should Be Dismissed ................................................................. 24

CONCLUSION ............................................................................................................... 24

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants") hereby move under Maryland Rules 2-322(b), 2-322(d), 2-322(e) to strike allegations in the Amended Complaint, for a more definite statement, and to dismiss all claims against the Bolog Defendants in the Amended Complaint.[1]  The grounds for this Motion to Strike, Motion for More Definite Statement, and Motion to Dismiss the Amended Complaint in its entirety and all claims as to the Bolog Defendants (collectively, the "Motion") are set forth below.[2]

## INTRODUCTION

The vast majority of the outrageous, spurious allegations and defamatory and untrue statements set forth in the Amended Complaint are the product of Ms. Engelhorn's apparent "Gifter's Remorse" to recover an irrevocable gift she made to JAREB in October 2021, which, recognizing the weakness of her claim to revoke an irrevocable gift, Ms. Engelhorn shamelessly tries to bolster her efforts by citing to totally irrelevant and, in some cases, ancient public records which have all been dealt with and resolved between 10-30 years ago, never with any finding of any wrongdoing by Mr. Bolog (for example, an $80 bill purportedly owed to a private school out of a $35,000 tuition; a dispute with American Express relating to fraudulent charges; and a $7,000 resolved tax lien resulting from a disagreement between Mr. Bolog's CPA Firm and the State of Maryland).  As always, context will be helpful.

---

[1] Count IX, which is brought against JAREB directly and seeks a constructive trust should be dismissed on the grounds that the Amended Complaint does not identify JAREB as a defendant in the case caption and does not list JAREB in the parties section of the Amended Complaint. Moreover, it does not appear that a summons was issued for, much less served on, JAREB.

[2] The Bolog Defendants request a hearing on the Motion.

Ms. Engelhorn is the daughter of Curt Engelhorn, who at one time was the self-proclaimed wealthiest man in Germany (at the time of his death his estate and its affiliated entities had a value of approximately $10,000,000,000). Mr. Engelhorn died while purportedly residing in Schtad, Switzerland to avoid German inheritance taxes. Approximately 25 years prior to his death, Mr. Engelhorn had funded a trust for the benefit of Ms. Engelhorn and her children in the amount of $500,000,000 (which has been managed as a family office), to which Ms. Engelhorn has served as the life trustee for the trust (with the complete authority to manage and remove all other trustees at her discretion) and for which she had been paid a salary in excess of $1,000,000 per year. She has also taken favorable loans from the trust in the approximate amount of $30,000,000 to fund her lifestyle. Although Mr. Engelhorn left his entire estate to his (fourth) wife Heidi, Ms. Engelhorn maintained a forced heirship claim to her statutory entitlement from her father's estate under the laws of Switzerland (her father had disinherited her from the will itself). This resulted in cross-border litigation, which was successfully led by Mr. Bolog.

Mr. Bolog successfully represented Ms. Engelhorn in this massive legal undertaking, during the global COVID pandemic, traveling back and forth from the United States to Europe, with purported threats on his life because of his involvement in this very public legal battle. As a result of his efforts, Mr. Bolog btained a $130,000,000 settlement on behalf of Ms. Engelhorn. Thereafter, after paying 100 percent of her legal fees and expenses to Whiteford Taylor & Preston, LLP ("WTP"), Ms. Engelhorn decided, on her own, to fund an irrevocable trust in favor of Mr. Bolog's children in the amount of $10,000,000. Ms. Engelhorn then gifted the $10,000,000 from her personal account at Bank of America in New York City ("BoA") to JAREB. This gift was accomplished by Ms. Engelhorn calling BoA, instructing BoA, on a recorded line, after providing BoA with a verification code that BoA texted to her and required her to read back to it, to transfer

the funds from her personal account to the JAREB account, irrevocably.   She also executed a notarized Notice of Gift on October 11, 2021, which sets forth the history and purpose of the $10 million gift.  The Notice of Gift is not a legal instrument, but instead, a memorandum, explaining Ms. Engelhorn's thought process relating to the irrevocable gift.   The actual gifting occurred several days after the Notice of Gift was signed, when she verbally directed BoA to transfer the funds to JAREB.

From the date of the irrevocable gift (the actual transfer of the $10,000,000) through the early summer of 2022, Ms. Engelhorn continued her professional and personal relationship with Mr. Bolog.  During that time frame, Ms. Engelhorn, and others, travelled internationally with Mr. Bolog (for vacations in Spain, Ireland, Hawaii, and the Bahamas) and spent countless days and trips together, including New Year's Eve together (all after the irrevocable gift had been made). Then, on July 6, 2022, after Ms. Engelhorn and Mr. Bolog had a falling out because of his disapproval of her racist comments to others, and approximately 9 months after the irrevocable gift had been irrevocably made to JAREB by Ms. Engelhorn, Ms. Engelhorn for the first time, demanded the irrevocable gift back.

But Ms. Engelhorn's story has changed considerably since that time. In her first email, demanding a return of the irrevocable gift, she stated that she signed the Notice of Gift when she was "alcoholically induced"; and stated that Mr. Bolog had transferred the funds from her personal account at BoA to the JAREB account at BoA (which is absurd on its face and patently untrue). The Notice of Gift was signed on October 11, 2021 at her summer home in Hyannis Port, Massachusetts at approximately 9:00 am, before a Notary Public and the funds were not transferred until several days later, which transfer was done by Ms. Engelhorn and not in the presence of Mr. Bolog.  Tellingly, her email also stated that if he would return the irrevocable gift, Ms. Engelhorn

would continue on with their professional relationship (which, of course, makes no sense if she actually believed that he had done anything improper).    In a later email, Ms. Engelhorn communicated that she did not understand the documents relating to the irrevocable gift when she signed them.  Now, changing her story again, the Amended Complaint asserts that Ms. Engelhorn, the lead trustee of a $500,000,000 family office, and trustee of her own $130,000,000 Whitewater Trust, signed documents related to the irrevocable gift that were upside down when signed, that she did not read such documents, nor understand the documents.    All of these inconsistent explanations miss the mark, but highlight the lack of credibility in all of her assertions set forth in the Amended Complaint.    None of the documents complained about in the Amended Complaint relating to the irrevocable gift were legal instruments and the irrevocable gift was the result of Ms. Engelhorn's verbal directive to BoA, which only she could have done, and which BoA has a recording of in its business records.

After the settlement of the Switzerland litigation, Ms. Engelhorn also requested that Mr. Bolog act as her co-trustee for the Whitewater Revocable Trust, which he did, to assist her in managing the settlement proceeds Mr. Bolog obtained for her.   In that regard, and with Ms. Engelhorn's full knowledge and consent, the Whitewater Revocable Trust loaned an entity, Science Park Associates, LLC, approximately $3,352,650.    This loan was secured by a deed of trust on an office building located in Greenbelt, Maryland.    The property was sold and the Whitewater Revocable Trust was repaid all principal, interest and costs. Ms. Engelhorn was fully apprised by Mr. Bolog about his and WTP's relationships with Science Park.  This was an opportunistic investment and was very profitable for Ms. Engelhorn and the Whitewater Revocable Trust.  Mr. Bolog was also completely authorized by Ms. Engelhorn to make this investment on behalf of the Whitewater Revocable Trust.  Thereafter, at the time of the payoff, Whitewater Trust

was represented by a large international law firm that provided the payoff calculation to Science Park and accepted, without any objection or complaint, the total amount due under the loan it made.

Similarly, the Whitewater Revocable Trust loaned Darnestown funds relating to an operating shopping center located in Richmond, Virginia. Ms. Engelhorn learned of this opportunity while sitting in Mr. Bolog's office listening to him discuss a loan for the property with another lender. Ms. Engelhorn, who is a sophisticated business person, in charge of greater than $630,000,000 assets, requested, after full disclosure of all conflicts, that she be able to make the loan to profit from the interest instead of another lender. Complete loan documents and conflict waivers were discussed and signed and the loan is not due until December 31, 2025. At the time the loan was made, interest rates at banks were paying approximately 1%. The loan was at an interest rate of 8%.

Plaintiffs' counsel has also included in the Amended Complaint a litany of false and defamatory statements directed at Mr. Bolog that are as irrelevant to the claims against him as they are outrageous, including among numerous others that Mr. Bolog has engaged in the "conversion of monies," failed "to live within his means," is "unwilling to abide by rules and regulations," and poses a risk of engaging in the "misuse [of] client funds." Compl. ¶ 22; *see also Id* ¶ 20-21 (containing multiple false statements concerning Mr. Bolog's financial dealings.). Because these malicious fabrications are irrelevant, they are not protected from an action for defamation by the immunity otherwise afforded to statements made in judicial proceedings. Furthermore, because they are in the public record, they meet the "publication" element for a defamation claim.

While the Bolog Defendants have moved to strike those allegations, the Plaintiffs' and Plaintiffs' counsel independently face immediate liability for these statements. Unless Plaintiffs'

counsel withdraws the Amended Complaint *and* takes all necessary action to remove it from the public domain by November 27, 2024, Mr. Bolog and the Bolog Defendants will pursue an action for defamation and slander against all responsible.

## **PRELIMINARY STATEMENT**

The Bolog Defendants move for three different forms of relief.  *First*, the motion to strike seeks the Court strike prejudicial, untrue, and misleading allegations concerning Mr. Bolog's personal finances and that Ms. Engelhorn has any reason to fear Mr. Bolog.  *Second*, the motion for a more definite statement requests the Court dismiss the Amended Complaint due to Plaintiffs' failure to state Ms. Engelhorn's address. Plaintiffs' failure to include this information is prejudicial to the Bolog Defendants' ability to support a full defense of this action.  *Third*, the motion to dismiss seeks dismissal of all claims against the Bolog Defendants.

The Complaint alleges 14 claims against Mr. Bolog in his individual capacity (Counts I, III-VIII, XIII-XIX) and four against him in his capacity as JAREB's Trustee (Counts I, VIII, XV-XVI).  The Complaint also alleges three claims against Science Park (Counts XVII-XIX) and one against Darnestown (Count X).  All of these claims are deficient, on multiple scores, and for the reasons set forth below, must be dismissed.

The Complaint is devoid of factual allegations necessary to state valid causes of action and should be dismissed in its entirety. With respect to Mr. Bolog, Counts I, III-V, and XVIII allege fraud, but fail to plead the claims with the specificity required by Maryland law.  While the lack of specificity in and of itself requires dismissal, it is clear from the generalized allegations that no set of facts sufficient to state claims for fraud can be pleaded in good faith.  The Complaint does not allege that Mr. Bolog made any misrepresentations of any kind.  As for Counts VI and VII for legal malpractice and breaches of fiduciary responsibility, respectively, Plaintiff Engelhorn acknowledges in the Amended Complaint that Mr. Bolog implored her to seek outside counsel in

connection with her decision to make an irrevocable gift to JAREB, that Mr. Bolog never solicited a gift of any kind from Plaintiffs, and instead begged Ms. Engelhorn to seek outside counsel in connection with the $10 million gift. Finally, the claims against Science Park and Darnestown are patently defective. The Amended Complaint alleges that Science Park paid in full what Plaintiff Whitewater Trust claimed in its payoff letter that it was owed (which fully satisfied all sums due pursuant to the loan documents).[3] The claim against Darnestown (Count X) fails because the Amended Complaint neglects to allege that Darnestown has failed, at this time, to repay any monies actually due to be repaid to Plaintiff Trust, nor does it allege any losses.

Additionally, the Amended Complaint recites various provisions of the rules of professional conduct governing the practice of law in Maryland, the District of Columbia, and the Commonwealth of Virginia that purportedly applied to Mr. Bolog's actions in this case. However, neither in that paragraph nor elsewhere in the complaint is there a single factual allegation of conduct in violation of any of those rules. Nowhere do the Plaintiffs allege that Mr. Bolog actually solicited a gift or drafted an "instrument" that had the legal force and effect of "giving" him anything of value.

As set forth in full below, the Bolog Defendants respectfully submit that the Court should dismiss all Counts in the Amended Complaint against the Bolog Defendants in their entirety, dismiss the Amended Complaint for failure to state Ms. Engelhorn's address, and strike all references to any prior actions against Mr. Bolog (*see* Compl. ¶ 20).

---

[3] The Whitewater Trust was represented by the international law firm Dentons in relation to the payoff of this loan.

## FACTUAL ALLEGATIONS

The balance of the allegations of the Amended Complaint are, for the most part, manifestly and categorically false, but must be taken as true for purposes of the Motion to Dismiss, and are therefore set forth consistent with the Amended Complaint and without need of correction at this stage of the litigation (subject to Rule 1-311, requiring, *inter alia*, "that to the best of the attorney's knowledge, information, and belief there is good ground to support [the Amended Complaint]" (Md. Rule 1-311)).

The Amended Complaint alleges, that at relevant times, Mr. Bolog was licensed to practice law in Maryland, the District of Columbia, and Virginia, and was Senior Counsel or Partner at the law firm of Whiteford, Taylor & Preston, a law firm based in Baltimore Maryland. Compl. ¶ 18. The Amended Complaint further alleges that Mr. Bolog had a "long-standing relationship" with WTP, not only as a lawyer there but also as a client and co-counsel. *Id* ¶ 19.

The Amended Complaint alleges that Ms. Engelhorn retained Defendant Whiteford, Taylor, and Preston to represent her in a legal dispute, *Id* ¶ 24, and that Mr. Bolog, then a partner at the firm, handled the representations and obtained a massive, favorable settlement for Ms. Engelhorn. *Id* ¶ 25-26.

Paragraphs 24 through 45 allege facts related to a supposedly "Fraudulent 10 Million Gift." Specifically, this section of the Amended Complaint alleges that Ms. Engelhorn retained WTP to represent her in a legal dispute on an hourly basis and that Mr. Bolog handled the dispute. *Id* ¶¶ 24-25. Ms. Engelhorn allegedly received a monetary settlement from the dispute, the proceeds of which were wired to WTP's escrow account and/or IOLTA account. *Id* ¶¶ 26, 31-32. Ms. Engelhorn claims to have "paid WTP all undisputed fees and expenses due and owing" in connection with this representation. *Id* ¶ 26.

Attorneys for WTP submitted time entries in bills to Ms. Engelhorn showing work on drafting a "revocable trust," which is believed to be the Whitewater Revocable Trust. *Id* ¶ 30. Mr. Bolog and attorneys at WTP also established a bank account ending in 4855 in the name of the Whitewater Revocable Trust. *Id* ¶ 31. Mr. Bolog, in his individual capacity or as an agent or employee of WTP, wired proceeds from the Settlement into an escrow account operated by WTP and/or IOLTA. Mr. Bolog was named as one of the trustees of the Whitewater Revocable Trust. *Id* ¶ 33. WTP then transferred approximately $11 million of the proceeds from the settlement to Ms. Engelhorn's personal bank account and the remainder to the Whitewater Revocable Trust account. *Id* ¶ 34.

The Amended Complaint goes on to allege that an attorney for WTP, Mary Ellen Williams, drafted the Whitewater Revocable Trust, dated September 30, 2021. *Id* ¶¶ 30, 33. Notably, there is no allegation that Mr. Bolog had any role in drafting that document. In the vaguest of language, the Amended Complaint alleges that Mr. Bolog and WTP attorneys "coordinated the establishment of a bank account" for the name of the Whitewater Trust, with WTP's Washington, D.C. address on the account. *Id* ¶ 31. WTP then allegedly wired $11 million of the settlement proceeds to Ms. Engelhorn's personal Bank of America account, with the balance of those proceeds going to Plaintiff Trust's savings account. *Id* ¶ 34.

The complaint then alleges that, four days later, Mr. Bolog, assisted by WTP attorneys, "established" JAREB, with Ms. Engelhorn as the grantor and Mr. Bolog as trustee, under the laws of the state of Maryland, (*Id* ¶ 35), but there is no allegation, nor could there be, that Mr. Bolog drafted any of the JAREB documents.

Paragraph 36 alleges a comically implausible scene in which Ms. Engelhorn claims not to have known she was making a gift that she clearly and indisputably intended to make to Mr.

Bolog.  According to the fantastical account in the Amended Complaint, Mr. Bolog visited Ms.
Engelhorn on October 11, 2021, while she was vacationing in Cape Cod, Massachusetts, where he
allegedly told Ms. Engelhorn that he needed some unspecified "documents" notarized.  Bizarrely,
Ms. Engelhorn alleges that Mr. Bolog "directed [her] to sign numerous documents that were upside
down," as if, even if true, Ms. Engelhorn was incapable of turning the documents right side up
before she signed them. *Id* ¶ 36.

The fairy tale continues with allegations that Mr. Bolog "tricked" Ms. Engelhorn into
signing the documents, "lull[ing] her into believing" that the documents concerned "routine
matters requiring her signature." *Id* ¶ 36. The only document allegedly prepared by Mr. Bolog
was a notice of intent to make the $10 million gift that in itself has no legal force or effect. The
Notice of Gift is not in any way a legal instrument.  Although this document was a mere two pages
long and written in simple, plain English without "legalese," Ms. Engelhorn alleges that she did
not read it and therefore did not know she was giving away $10 million.  She does *not* allege that
she lacked the capacity to read and understand it, or that the Notice of Gift in any way was a legally
binding document—indeed, the Notice of Gift is not a legal instrument and serves only to evidence
Ms. Engelhorn's intent to make a gift. The only way for the gift to have been effectuated was for
Ms. Engelhorn herself to initiate the transfer through a direct phone call with BoA days after the
document was signed through the use of a personal confirmation code. Her instruction to transfer
the funds were verbally confirmed and recorded by BoA without any involvement by Mr. Bolog.

Furthermore, as shown on the face of the Notice of Gift and acknowledged by Plaintiffs,
Mr. Bolog "begged" Ms. Engelhorn to discuss the gift with independent counsel, though she claims
that "there would not have been an opportunity [her] to consult with independent counsel" because

she was in the middle of vacationing in Cape Cod.[4]  *Id* ¶¶ 36-37.  In other words, the allegation is

that Ms. Engelhorn could not have called, texted, or emailed a lawyer during her Cape Cod

vacation before deciding to give away $10 million.   It is ludicrous for Ms. Engelhorn to allege that

she had no time to share the Notice of Gift with anyone from whom she wished to seek counsel.

And, regardless, the Notice of Gift is not an instrument; the gift itself was only made when Ms.

Engelhorn directed the monies to be transferred from BoA to JAREB and when JAREB accepted

the gift. There is of course, no allegation whatsoever that she was forced or coerced into making

the gift, or that for some reason she was compelled to sign the notice of intent on that very day,

instead of perhaps waiting until after her vacation, or not signing it at all. Accordingly, the

contradictory allegation in paragraph 39 that Ms. Engelhorn did not intend to make the gift and

could not have retained independent counsel before doing so is facially implausible and must be

disregarded. *Id* ¶ 39.

The Amended Complaint further alleges that Mr. Bolog omitted certain connections with

investment vehicles in which he caused Plaintiffs to invest. For example, under the terms of a

certain March 2022 Assignment, Plaintiff Trust was assigned and acquired certain debt on a Loan

Agreement in the name of Science Park secured by a Deed of Trust in a certain Greenbelt Property.

*Id* ¶ 50. The Complaint also alleges that Plaintiff Trust was paid back its original investment plus

an additional $300,000.  *Id* ¶¶ 56-60. Additionally, the Complaint alleges that Mr. Bolog failed to

disclose his interest in Darnestown Road, Inc., while investing $350,000.00 of Plaintiff Trust's

---

[4] While the Bolog Defendants recognize that a plaintiff's allegations should be accepted as true on
a motion to dismiss, Ms. Engelhorn actually signed the Notice of Gift at a compound in Hyannis
Port, Massachusetts, where she lived (not vacationed) for the entirety of the summer in a home
owned by the Mannheim Trust, of which she is a life trustee. These factual inaccuracies are littered
throughout the Amended Complaint.

monies in such company. *Id* ¶¶ 62-67. But the Amended Complaint does not allege when those monies were due to be repaid or if they are currently due to be repaid.

## LEGAL STANDARD

A defendant may move to dismiss under Rule 2-322(b) on the grounds that the complaint fails "to state a claim upon which relief can be granted" because it lacks such "statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." Md. Rules 2-303(b); *see also Sullivan v. Caruso Builder Belle Oak, LLC*, 253 A.3d 1142, 1149 (Md. Ct. Spec. App. 2021) ("A pleading must contain such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense.") (internal citations and quotations omitted). Under Rule 2-305, a pleading must "contain a clear statement of the facts necessary to constitute a cause of action." Md. Rules 2-305.

Under Maryland Rule 2-322(d), "[i]f a pleading to which an answer is permitted is so vague or ambiguous that a party cannot reasonably frame an answer, the party may move for a more definite statement before answering" and "point out the defects complained of and the details desired." Md. Rules 2-322(d). The main purpose of the Rule allowing a motion for more definite statement is to allow a party to put its opponent on notice about issues of vagueness that prevent movant from properly responding to the pleading. *See G & H Clearing & Landscaping v. Whitworth*, 66 Md. App. 348, 354 (1986) ("the proper method for complaining about vagueness is a motion for more definite statement[.]")

## ARGUMENT

## I.    THE COURT SHOULD STRIKE CERTAIN ALLEGATIONS IN THE COMPLAINT

A party may move to strike "any improper, immaterial, impertinent, or scandalous matter" from a pleading. Md. Rules 2-322(e). Plaintiffs allegations' that Ms. Engelhorn has reason to fear

12

for her safety, without stating any basis why this is the case, should be stricken. Such allegation is fabricated from whole cloth, creates the outrageous implication that Mr. Bolog might somehow pose a threat to Ms. Engelhorn's safety, is libelous, and may not be protected by privileges against defamation afforded to participants in a judicial proceeding. *See Norman v. Borison*, 418 Md. 630, 650 (2011) ("For attorneys whose appearances are entered in a case, however, we follow the majority American rule and require that the defamatory statement have some rational relation to the matter at bar before unfurling the umbrella of absolute privilege."). There are no factual allegations offered to support such accusations, nor could there be. Ms. Engelhorn believes that her father's 85 year old wife, who inherited approximately $10,000,000,000, wants to exact revenge upon her for suing her father's estate. This type of fantasy should not be condoned. Counsel for Plaintiffs must amend the Complaint and remove this allegation immediately, and set forth Ms. Engelhorn's address pursuant to Md. Rule 1-301.

Moreover, references to decades-old financial disputes involving Mr. Bolog, should be stricken from Plaintiffs' Amended Complaint. *See* Compl. ¶ 20. These allegations are unnecessary and redundant, impertinent and irrelevant, and libelous as to Mr. Bolog. To begin with, many of the references are to cases involving such miniscule amounts of money that they are not indicative of any pattern of "financial issues." Second, even the allegations stemming from prior actions involving Mr. Bolog that amount to substantive monetary amounts are insufficient to substantiate inclusion within this pleading. These types of allegations of allegations are typically rejected by a court because they have little to no probative value, do not allow for the appropriate context, and are instead solely inserted to harass defendant. *See Ethox Chem., LLC v. Coca-Cola Co.*, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) ("These conclusory allegations, without supportive facts, are not enough to survive [a] motion to dismiss. Even if [defendant] has been accused of similar

past violations, which the court is not assuming without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts.")

Accordingly, the Court should strike the phrase "[d]ue to concerns about her personal safety" in paragraphs 1 and 2 of the Amended Complaint, the entirety of paragraph 20 of the Amended Complaint (containing unsubstantiated allegations of allegations from prior actions against Mr. Bolog), and certain false and defamatory statements directed at Mr. Bolog, including that Mr. Bolog has engaged in the "conversion of monies," failed "to live within his means," is "unwilling to abide by rules and regulations," and poses a risk of engaging in the "misuse [of] client funds." Compl. ¶ 22; s*ee also Id* ¶ 20-21 (containing multiple false statements concerning Mr. Bolog's financial dealings.)

## II.    PLAINTIFFS FAIL TO PROPERLY PLEAD REQUIREMENTS FOR JURISDICTION WITH THIS COURT

In the Amended Complaint, Plaintiff refused to provide her address, instead using "her counsel's address in the caption of this matter" on the grounds that she has "concerns about her personal safety." Compl. ¶¶ 1-2. The Amended Complaint should otherwise be dismissed for failure to comply with Maryland's Rules *requirement* for an original pleading because it does not set forth Ms. Engelhorn's current address, as required by Rule 1-301 so parties and the Court can determine issues related to jurisdiction and other matters impacting the Court's ability to adjudicate the allegations and claims. *See* Md. Rule 1-301 (an "original pleading shall contain the names and addresses, including zip code, of all parties to the action"). This omission cannot be excused and is prejudicial to the Bolog Defendants in preparing their defense: Ms. Engelhorn could have, but affirmatively chose not to, file a motion to seal, seeking this Court's permission to redact her address, or otherwise request leave to omit her address from the Amended Complaint. Defendants are entitled to this information, which relates to questions of jurisdiction, including whether this

case may be removed to federal court. Ms. Engelhorn has not yet been so brazen as to include the laughable assertion that her very own address is "unknown" to her, which would be the only permissible justification for omitting it. Nothing in the Rule or case law suggests that substituting counsel's address is sufficient to meet the Rule's requirement.

The issue of Ms. Engelhorn's address is of paramount concern for an effective response to the Amended Complaint and raises questions of the court's jurisdiction over this matter. *See G & H Clearing & Landscaping*, 66 Md. App at 355 (defendant "was entitled to a better statement" on a "number of important details" to mount a proper defense). The Bolog Defendants, and the other Defendants, have every right to know the grounds for Plaintiff's assertion that she is a citizen of the State of Tennessee to properly test certain theories that would be the subject of an effective response to the Amended Complaint. She has provided no rational, plausible, or factually grounded basis for refusing to provide this information, filed no motion to seal, and provided no argument in support of why this basic information included in a complaint could not be provided here. Her conclusory assertion of a fear for her security without filing a motion to seal the complaint or provide support for otherwise concealing information is not adequate. If Ms. Engelhorn wants to file a motion setting forth why she has safety issues by sharing her address, then that burden is on her, but the Bolog Defendants and the other Defendants are entitled to this information.

Accordingly, the Bolog Defendants respectfully submit that the Court should dismiss the Amended Complaint for failure to provide Ms. Engelhorn's address.

### III.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE BOLOG DEFENDANTS

#### A.    Court Should Dismiss Counts I, III-V, and XVIII Alleging Fraud for Failing to Plead with Requisite Specificity

Nowhere in the Amended Complaint do Plaintiffs allege the necessary elements to satisfy a claim for fraud allegedly committed by Mr. Bolog.  To satisfy a cause of action for fraud, a plaintiff must show five elements: (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Bocchini v. Gorn Mgmt. Co.*, 69 Md. App. 1, 19 (1986) (internal citations and quotations omitted); *see also Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524 (2008). Additionally, Maryland courts hold that claims rooted in fraud must be plead with a heightened level of specificity or particularity for these types of claims. *See John B. Parsons Home, LLC v. John B. Parsons Found.*, 217 Md. App. 39, 70 (2014). (dismissing claims of fraud in the "absence of any particularized facts necessary to withstand a motion to dismiss for failure to state a claim"); *see also McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 528 (2014) ("The requirement of particularity ordinarily means that a plaintiff must identify who made what false statement, when, and in what manner (*i.e.,* orally, in writing, etc.); why the statement is false; and why a finder of fact would have reason to conclude that the defendant acted with scienter (*i.e.,* that the defendant either knew that the statement was false or acted with reckless disregard for its truth) and with the intention to persuade others to rely on the false statement.")

Plaintiffs do not allege, nor can they allege, that Mr. Bolog made any false statements to Plaintiff—instead, they summarily state that Mr. Bolog "tricked" Ms. Engelhorn into signing

certain documents, including the JAREB Irrevocable Trust Agreement, a Notice of Gift, and certain wire instructions. Compl. ¶ 36. Nowhere do Plaintiffs allege that she did not understand what she was signing, had not read the documents before signing, or had been otherwise told misrepresentations about the nature and implication of the documents. Furthermore, nowhere do Plainttiffs state what, allegedly, Mr. Bolog might have said to Ms. Engelhorn to "trick" her into signing the documents. The surface-level allegation in the Amended Complaint is that Mr. Bolog informed Plaintiff that these were documents concerning "routine matters" would not excuse Ms. Engelhorn from reading the short document she was signing, nor do they explain why Ms. Engelhorn would not have considered the documents to be "routine" under the circumstances. Furthermore, some of Ms. Engelhorn's allegations are patently absurd. For example, she alleges that Mr. Bolog asked her to sign documents "upside down." *Id*. While a court should normally accept plaintiff's allegations as written in a complaint when evaluating a motion to dismiss, a court need not consider "[b]ald allegations and conclusory statements [that] are insufficient to state a claim. *Sullivan v. Caruso Builder Belle Oak, LLC*, 253 A.3d 1142, 1149 (Md. Ct. Spec. App. 2021). Regardless, these allegations are a red herring. Plaintiffs' Amended Complaint is devoid of any allegations that Mr. Bolog had any role in actually causing the gift to be sent from Ms. Engelhorn's personal BoA bank account to JAREB. The Notice of Gift and other documents Ms. Engelhorn purportedly signed upside down have no relevance on the delivery of the gift, which was caused solely by Ms. Engelhorn. Nowhere do Plaintiffs' allegations rise to the level of particularity necessary to survive a motion to dismiss claims for fraud and, accordingly, these claims should be dismissed.

With respect to Counts III-V—which allege fraud in connection with Plaintiffs' investments in Science Park, Darnestown Road, and Swain Landing—Plaintiffs also fail to plead

with the requisite specificity (and with respect to Swain Landing, as will be explained further below, Mr. Bolog had no relationship; Count V should be dismissed for this reason alone (*See infra*, Section III.E)). While Plaintiffs allege that Mr. Bolog did not state certain connections he may have had to certain investment vehicles, nowhere in the Complaint do Plaintiffs allege that Mr. Bolog did so for the purpose of defrauding Plaintiffs nor do they state why any alleged omissions had any bearing on their decisions to invest (or not invest). Plaintiffs' vague allusions to Mr. Bolog's alleged omitted disclosures do not satisfy Maryland's specificity requirement for fraud claims—Plaintiffs fail altogether to explain why Mr. Bolog should have included the disclosures, how they influenced Plaintiffs' expected monetary returns on investment, and what would have constituted an appropriate disclosure. *See McCormick*, 219 Md. App.at 528 (2014) (dismissing claims where plaintiff did not specifically allege how defendants "failed to disclose material facts that were necessary to make other statements not misleading" and instead only asserted "vague references to [defendant's] failure to accurately" disclose certain risks.).

Even more glaringly, in respect to the Darnestown Loan, Plaintiffs only plead they have yet to be repaid the monies which were invested, without any calculation of alleged damages beyond blanket summary assumptions. Plaintiffs instead seek only punitive and compensatory damages amounting to many multiples of the original investments without any attempt to quantify any loss of investments stemming from Mr. Bolog's alleged omissions. And, as concerns Science Park, Plaintiffs have even acknowledged that they received a lucrative payoff reflecting a nearly 9% return on a *loan* in less than one year (Compl. ¶¶ 55-61) when interest rates offered by commercial banks were negligible.

Because Plaintiffs have not alleged any statements made by Mr. Bolog to indicate fraudulent actions, Counts I, III-V, and XVIII must be dismissed.

**B.    The Court Should Dismiss Count VI Alleging Legal Malpractice for Failure to Show Neglect of Reasonable Duty**

Plaintiff has failed to state a claim for legal malpractice; accordingly Count VI should be dismissed.  To prevail on a claim for legal malpractice, a claimant must show three factors: (1) the attorney's employment,  (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately  caused by neglect of such duty. *Conwell L. LLC v. Tung*, 221 Md. App. 481, 514, 109 A.3d 1227, 1247 (2015) ( "To properly state a claim for legal malpractice, the Firm had to allege facts to support a finding of "strict privity,"  which requires a showing of " '(1) the attorney's employment,  (2) [the attorney's] neglect of a reasonable duty, and (3) loss to the client proximately  caused by that neglect of duty.'") (internal citations and quotations omitted).

Plaintiff has not alleged sufficient facts to support a claim for legal malpractice.  Nowhere in the Amended Complaint do Plaintiffs allege that Mr. Bolog neglected a reasonable duty; indeed, Plaintiffs allege just the opposite.  Plaintiffs acknowledge that Ms. Engelhorn signed a document stating that Mr. Bolog "begged" her to seek and "retain independent  counsel to provide her with independent  legal advice with respect to the $10 million gift." Compl. ¶ 37.

Additionally,  the Notice of Gift is not an instrument that effectuated the $10 million irrevocable gift to JAREB. It is simply a memorandum explaining  Ms. Engelhorn's  thought process relating to the irrevocable gift Ms. Engelhorn made to JAREB.  Whatever role Mr. Bolog may have played in the drafting the Notice of Gift and related documents, he had no role in the making of the gift by Ms. Engelhorn to JAREB, which resulted only from Ms. Engelhorn directing BoA to transfer $10,000,000  from her personal account at BoA to the JAREB account at BoA. There is no allegation  that Mr. Bolog had anything to do with the making of this phone call and the directive that Ms. Engelhorn gave to BoA relating to the irrevocable gift to JAREB.  *See Daniels v. Daniels*, 217 Md. App. 406, 412 (2014) ("In order for the conveyance to be held legally

effective, all necessary elements of a gift must occur, including the intent to transfer the property, relinquishment of control, delivery, and acceptance by the donee."); *see also Zeidman v. Zeidman*, 49 Misc. 3d 963, 965 (N.Y. Dist. Ct. 2015) ("The elements necessary to establish an inter vivos gift are: (1) donative intent to make an irrevocable transfer of ownership; (2) actual physical or constructive delivery of the property; and (3) acceptance of the gift by the donee."). The Amended Complaint is devoid of any allegation that Mr. Bolog caused monies to be transferred from Ms. Engelhorn's personal account at BoA to JAREB, and accordingly, the Amended Complaint is fatally defective in alleging any legal malpractice as to support Count VI .

Nor has Plaintiff alleged any facts that Mr. Bolog *solicited* a gift from Ms. Engelhorn (which the Notice of Gift entirely refutes). Plaintiff attempts to pull a sleight of hand, by alleging that jurisdictions in which Mr. Bolog practices law "have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients" (Compl. ¶ 29), but then cites only to rules stating that a lawyer "shall not solicit any substantial gift from a client." Md. Rule 19-301.8(c); *see also* Va Sup. Ct. R. pt. 6 sec. 11, 1.8(c) ("A lawyer shall not solicit . . . any substantial gift."). Plaintiffs provide no support for the proposition that it was malpractice to receive the gift, and the Amended Complaint does not allege that Mr. Bolog *solicited* a gift from Plaintiff. *See* SOLICITATION, Black's Law Dictionary (12th ed. 2024) ("The act or an instance of requesting or seeking to obtain something[.]"). Accordingly, Count VI alleging legal malpractice must be dismissed.

### C.    The Court Should Dismiss Count VII Alleging Breach of Fiduciary Duty

For similar reasons as Plaintiff's failure to state a claim for legal malpractice, the Court should also dismiss Count VII for breach of fiduciary duty. To succeed on such a claim, Ms. Engelhorn would need to show (1) the existence of a fiduciary relationship; (2) breach of the duty

owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 559 (2020).

Ms. Engelhorn cannot show that Mr. Bolog breached his fiduciary duties to Ms. Engelhorn—instead she has (inadvertently) pleaded just the opposite. Plaintiffs acknowledge that Mr. Bolog never solicited a gift from Ms. Engelhorn and "begged" her to seek different counsel in connection with the gift, which was made to JAREB, not to Mr. Bolog. Moreover, the allegations of the Amended Complaint are that other WTP lawyers, not Mr. Bolog, prepared the legal documents related to JAREB. Mr. Bolog did not prepare any documents transferring funds to JAREB.

With respect to allegations related to Science Park and Darnestown, the Amended Complaint fails to allege any resulting damages or identify the precise duty which was purportedly breached. Instead, Plaintiffs simply make blanket summary statements that they suffered damages without alleging how Mr. Bolog's course of action caused any harm.

Accordingly, Count VII alleging breach of fiduciary duty must be dismissed.

**D.      Counts VIII, XV, and XVI are Wholly Dependent on Establishing the Same Defective Allegations of Fraud in Count I and Therefore Must Fail for the Same Reasons**

Counts VIII and XV do not independently allege actionable conduct but seek remedies (rescission and declaratory relief) for the supposed fraud in connection with the gift to JAREB that is alleged in Count I. As discussed above, those allegations of fraud are defective and fail to state a claim. Accordingly, these counts seeking remedies for a defective claim are themselves defective. Similarly, Count XVI, which alleges unjust enrichment in connection with the $10 million gift to JAREB, fails to allege any facts suggesting that the gift was unjust, other than the defective fraud allegations. Because there was no fraud, these counts must fail as well.

Therefore, Counts VII, XV, and XVI likewise fail to state a claim and must be dismissed.

### E.    The Court Should Dismiss Counts XIII and XIV

In Counts XIII and XIV, Plaintiffs seek the liquidation of Swain Landing, as well as the

appointment of a receiver over Swain Landing for the dispossession of assets. However, the

Complaint is devoid of any factual allegations necessary to connect Mr. Bolog with Swain

Landing. The Complaint pleads that Whitewater Revocable Trust is a 50% owner of Swain

Landing and that Mr. Bolog had been named as a trustee of Whitewater when it was first

established in September 2021. ¶¶ 12, 33. But Mr. Bolog has absolutely nothing to do with Swain

Landing and never has—and nothing in the Amended Complaint suggests otherwise. In fact, Ms.

Engelhorn independently found this deal, negotiated its terms, and instructed Mr. Bolog to execute

the transaction for Whitewater—Plaintiffs later pleaded that Ms. Engelhorn removed Mr. Bolog

as a trustee of Whitewater. Accordingly, Mr. Bolog has no connection with Whitewater and no

connection with Swain Landing. Instead of pleading allegations connecting Mr. Bolog with Swain

Landing, the Complaint does just the opposite. The Bolog Defendants respectfully submit that

Counts XIII and XIV should be dismissed on this basis alone.

Even assuming that Plaintiff had plead facts sufficient to connect Mr. Bolog with Swain

Landing (which do not exist), it should not liquidate or dissolve Swain Landing. A court may do

so only when it is "not reasonably practicable to carry on the business in conformity with the

articles of organization or the operating agreement." Md. Code Ann., Corps. & Ass'ns § 4A-903.

This is an extraordinary remedy; even when a member of an LLC could show valid and

irreconcilable points of disagreement (which Plaintiffs cannot), before seeking dissolution, a

disgruntled member of an organization should first seek other forms of relief. *See Norino

Properties, LLC v. Balsamo*, 253 Md. App. 226 (2021) ("Although there had been disputes

between the parties in recent years, the court found that it was 'reasonably practicable to carry on

the business in conformity with the articles of organization.' The court did, however, grant some relief . . . including ordering an independent accounting of BNP member capital accounts.")

For similar and necessarily related reasons, Plaintiffs common law claims for liquidation and dissolution should be dismissed.

### F.    Counts XVII, XVIII, and XIX Should Be Dismissed for Failure to Satisfy the Pleading Standard

Claims, XVII and XVIII bring causes of action for fraudulent conveyance and fraud, respectively, against Mr. Bolog and Science Park. Yet, Plaintiffs wholesale fail to allege what losses were suffered by Plaintiffs or how any of Mr. Bolog's alleged omissions caused losses to Plaintiffs. Instead, Plaintiffs plead the opposite. Plaintiffs allege they wired approximately $3,352,650 to Science Park (Compl. ¶ 51) and received, in return, $3,689,662.77. Compl. ¶ 60. Plaintiff Trust's return on investment represents more than $300,000.00 in profits within a year on a *loan*, representing an approximately 9% return in profits. Absent more particularized and specific details, Plaintiffs' allegations fail to satisfy the heightened pleading standard for fraud.

Plaintiffs also fail to satisfy the pleading standard for unjust enrichment as stated in Claim XIX, which requires a showing: (a) a benefit conferred upon defendant by plaintiff; (b) knowledge by defendant of the benefit; and (c) acceptance or retention of the benefit by defendant under such circumstances to render retention inequitable without payment of its value. *See Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). Nowhere does the Complaint propound any allegations that Mr. Bolog or Science Park have retained any benefit provided Plaintiffs—indeed, Plaintiffs state the opposite. They acknowledge that they were returned their monies invested, with interest, and received more than the full benefit of the bargain.

Accordingly, the Bolog Defendants respectfully submit that Counts XVII, XVIII, and XIX should be dismissed.

### G.    Count X Should Be Dismissed

Count X against Darnestown for constructive trust fails. "The constructive trust, like its counterpart remedies 'at law,' is a remedy for unjust enrichment." *Washington Suburban Sanitary Comm'n v. Utilities, Inc. of Maryland*, 365 Md. 1, 39, (2001). Here, as noted above, the Complaint is devoid any factual allegations necessary to support a claim for fraud, breach of fiduciary duties, unjust enrichment, or any other cause of action necessary to support an equitable claim for constructive trust. Additionally, the Complaint fails to allege that Darnestown has failed, at this time, to repay any monies actually due to be repaid to Plaintiff Trust.

Accordingly, Count X should be dismissed.

### CONCLUSION

For the foregoing reasons, the Bolog Defendants respectfully submit that Court should hold a hearing on the Motion and grant the Motion in its entirety.

Dated:    November 18, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2024, a copy of the foregoing

Motion was served electronically via MDEC upon counsel of record, and remaining parties

served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

☐ **SUPREME COURT OF MARYLAND** ☐ **APPELLATE COURT OF MARYLAND**
☒ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Baltimore City
City/County

Located at  Courthouse East, 111 N Calvert St, Baltimore, MD 21202  Telephone  (410) 396-5188
Court Address

Case No.  C-24-CV-24-002631

Claudia Engelhorn, et al.                    vs.        Erik Bolog, et al.
Plaintiff                                                      Defendant

## NOTICE OF APPEARANCE
### (Md. Rules 2-131, 3-131, 4-214, 7-107, and 8-402)

Please enter my appearance for  *see attached Appendix 1*                    ,

the ☒ defendant ☐ plaintiff ☐ other: _____

in the above entitled action.

Signature                    8912180208
Attorney Number

11/18/2024
Date

Douglas F. Gansler
Printed Name

Cadwalader, Wickersham & Taft LLP
Firm Name

1919 Pennsylvania Ave NW
Address

Washington, DC 20006
City, State, Zip

202-862-2300
Telephone

Douglas.Gansler@cwt.com          202-862-2400
E-mail                                          Fax

## CERTIFICATE OF SERVICE

I certify that I served a copy of this Notice of Appearance upon the following party or parties by

mailing ☐ first-class mail, postage prepaid, ☐ hand delivery, on 11/18/2024          to:
Date

*see attached Certificate of Service*
Name                                          Address

                                                    City, State, Zip

Name                                          Address

                                                    City, State, Zip

Name                                          Signature of Party Serving/Attorney

Check applicable:
☐ Court appointed
☒ Private
☐ Public Defender
☐ Pro Bono Counsel

**CC-DC-084** (Rev. 12/2022)

## <u>APPENDIX 1</u>

Please enter my appearance for Defendants:

- Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021

- Darnestown Road, Inc.

- Science Park Associates, LLC

## <u>CERTIFICATION BY SIGNING-ATTORNEY WITH OUT-OF-STATE OFFICE</u>

      Pursuant to Maryland Rule 1-313, I, Douglas F. Gansler, hereby certify that I am admitted

to practice law in the State of Maryland.

          Respectfully,

Douglas F. Gansler (8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave NW
Washington D.C. 20006
douglas.gansler@cwt.com
(202) 862-2300

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2024, a copy of the foregoing

Notice of Appearance was served electronically via MDEC upon counsel of record, and

remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

☐ **SUPREME COURT OF MARYLAND** ☐ **APPELLATE COURT OF MARYLAND**
☒ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Baltimore City
City/County

Located at  Courthouse East, 111 N Calvert St, Baltimore, MD 21202   Telephone  (410) 396-5188
Court Address

Case No.  C-24-CV-24-002631

Claudia Engelhorn, et al. _____ vs. _____ Erik Bolog, et al. _____
Plaintiff                                                     Defendant

## NOTICE OF APPEARANCE
### (Md. Rules 2-131, 3-131, 4-214, 7-107, and 8-402)

Please enter my appearance for  *see attached Appendix 1* _____ ,

the ☒ defendant ☐ plaintiff ☐ other: _____

in the above entitled action.

| | |
|---|---|
| _~signature~_  9106200125 | 1919 Pennsylvania Ave NW |
| Signature          Attorney Number | Address |
| 11/18/2024 | Washington, DC 20006 |
| Date | City, State, Zip |
| John B. Howard, Jr. | 202-862-2409 |
| Printed Name | Telephone |
| Cadwalader, Wickersham & Taft LLP | J.B.Howard@cwt.com          202-862-2400 |
| Firm Name | E-mail                          Fax |

## CERTIFICATE OF SERVICE

I certify that I served a copy of this Notice of Appearance upon the following party or parties by

mailing ☐ first-class mail, postage prepaid, ☐ hand delivery, on 11/18/2024 _____ to:
Date

*see attached Certificate of Service* _____           _____
Name                                                     Address

_____           _____
                                                     City, State, Zip

_____           _____
Name                                                     Address

_____           _~signature~_
Name                                                     City, State, Zip
                                            Signature of Party Serving/Attorney

Check applicable:
☐ Court appointed
☒ Private
☐ Public Defender
☐ Pro Bono Counsel

**CC-DC-084** (Rev. 12/2022)

## <u>APPENDIX 1</u>

Please enter my appearance for Defendants:

- Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021

- Darnestown Road, Inc.

- Science Park Associates, LLC

## CERTIFICATION BY SIGNING-ATTORNEY WITH OUT-OF-STATE OFFICE

Pursuant to Maryland Rule 1-313, I, John B. Howard, Jr., hereby certify that I am admitted to practice law in the State of Maryland.

Respectfully,

John B. Howard, Jr. (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave NW
Washington D.C. 20006
J.B.Howard@cwt.com
(202) 862-2409

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2024, a copy of the foregoing

Notice of Appearance was served electronically via MDEC upon counsel of record, and

remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

John B. Howard, Jr. (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
J.B.Howard@cwt.com
Telephone: (202) 862-2400
*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

## <u>CONSENT MOTION TO EXTEND RESPONSE DEADLINES</u>

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, by and through their undersigned counsel, with the consent of Defendants, Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Darnestown Road, Inc., and Science Park Associates, LLC, hereby move to extend Plaintiffs' deadlines for responding to: (1) Defendant Whiteford, Taylor & Preston LLP's Petition for an Order Compelling Arbitration and Stay Proceedings and Motion to Dismiss or Stay; and (2) Defendants Bolog, Science Park, and Darnestown's Motions (a) to Strike, (b) for a More Definite Statement; and (c) to Dismiss for failure to state a claim upon which relief can be granted, and respectfully state as follows:

1.       That this is a complex civil case involving allegations of legal malpractice, fraud, and breach of fiduciary duty, among other alleged claims.

2.       That Defendant, Whiteford, Taylor & Preston LLP, filed a Petition for an Order Compelling Arbitration and Stay Proceedings and Motion to Dismiss or Stay on November 15, 2024.

3.      That Defendants, Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown") filed Motions (a) to Strike, (b) for a More Definite Statement; and (c) to Dismiss for failure to state a claim upon which relief can be granted on November 18, 2024.

4.      That, given the volume of the filings and the intervening Thanksgiving Holiday, the above-referenced Defendants have consented to extend Plaintiffs' deadlines to respond to the above filings to December 17, 2024, so as to address the factual and legal issues fully.

5.      That having the Plaintiffs' responses to the Defendants' motions due on a single day will facilitate a streamlined approach to briefing and will serve the interests of judicial economy by eliminating expenditure of the Court's valuable time that otherwise would be devoting to reading briefing on separate occasions.  Likewise, a uniform deadline for purposes of oppositions will relieve the Court from consideration of piecemeal responses that are more efficiently considered in conjunction with one another.

6.      That the requested extension would afford the Court ample time to: (1) review and consider the Defendants' Motions and Plaintiffs' responses thereto; and (b) schedule a hearing on the Defendants' motions in a timely manner.

7.      That an extension of Plaintiffs' time to respond to the Defendants' Motions will not unduly delay any scheduled proceedings in this action.

8.      That this extension of time is requested in good faith and is not interposed for the purpose of delay.

9.      That good cause exists to extend Plaintiffs' time to respond to the Defendants' Motions.

10.     That no party will be prejudiced by the requested extension.

11.     That a proposed Order is submitted with this Motion.

WHEREFORE, Plaintiffs and Defendants, Erik D. Bolog, Whiteford, Taylor & Preston, LLP, Darnestown Road, Inc., and Science Park Associates, LLC respectfully request that this Honorable Court Grant this Joint Motion, and extend Plaintiffs' deadline to respond to the motions referenced above, such that Plaintiffs' responses to the above motions will be due by December 17, 2024.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ WPH (AIS# 0212180062)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

____/s/ William J. Murphy (WPH w/permission)
William J. Murphy, Esq. (AIS #8406010273)
John J. Connolly, Esq. (AIS # 9112170144)
Kirk E. MacKinnon Morrow (AIS #2410241018)
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

3

    /s/ Douglas F. Gansler (WPH w/permission)
Douglas F. Gansler, Esq. (AIS #8912180208)
John B. Howard, Jr., Esq. (AIS# 9106200125)
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown
Road, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of November, 2024 that a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

5

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

                  /s/ WPH (AIS# 0212180062)
              Wes P. Henderson, Esq. (AIS# 0212180062)

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

---

### ~~(PROPOSED)~~ ORDER

Upon consideration of the Consent Motion to Extend Response Deadlines, and for good cause, it is this **22nd** day of **November**, 2024, by the Circuit Court for Baltimore City, Maryland, hereby:

**ORDERED**, that the Consent Motion to Extend Response Deadlines be and hereby is, **GRANTED**; it is further

**ORDERED**, that Plaintiffs' responses to (1) Defendant Whiteford, Taylor & Preston LLP's Petition for an Order Compelling Arbitration and Stay Proceedings and Motion to Dismiss or Stay; and (2) Defendants Bolog, Science Park, and Darnestown's Motions (a) to Strike, (b) for a More Definite Statement; and (c) to Dismiss for failure to state a claim upon which relief can be granted, will be due by **December 17, 2024**.


11/22/2024 2:45:11 PM

_____
Judge, Circuit Court for Baltimore City, Maryland

cc: All Counsel of Record
and Defendants *pro se*

1

FILED; Baltimore City Circuit Court
Docket: 12/2/2024 1:01 PM; Submission: 12/2/2024 1:01 PM
Envelope: 19013936

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

**DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP'S NOTICE OF SERVICE OF DISCOVERY**

Defendant Whiteford, Taylor & Preston, LLP ("Whiteford"), by and through its undersigned counsel, hereby submits notice that it has served the discovery documents listed below to counsel as identified in the attached certificate of service: Defendant Whiteford's Response to Plaintiffs' Request for Admissions; Defendant Whiteford's Response to Plaintiffs' Request for Production of Documents and Things; and Defendant Whiteford's Response to Plaintiffs' First Set of Interrogatories.

Dated: December 2, 2024

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:   /s/ William J. Murphy
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford, Taylor & Preston, LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2d day of December, 2024, a copy of the foregoing was

served in the manner indicated on the following persons:

Douglas Gansler
John B. Howard, Jr.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue NW
Washington, DC 20006
*Counsel for Erik D. Bolog, Eric D. Bolog,*
*Trustee, Darnestown Road, Inc., and Science*
*Park Associates*
By email to:
Douglas.Gansler@cwt.com
J.B.Howard@cwt.com

Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
(410) 721-1979
By email to:
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735
By first class mail

POJO LaPlata LLC
Attn: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 20735
By first class mail

Swain Landing LaPlata JC, LLC
Attn: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735
By first class mail

Tenacity Investments, LLC
Attn: Michael Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912
By first class mail

    /s/ *John J. Connolly*           
John J. Connolly

E-FILED; Baltimore City Circuit Court
Docket: 12/17/2024 4:25 PM; Submission: 12/17/2024 4:25 PM
Envelope: 19222875

# Exhibit A

Sign in

Ethics Hotline & Opinions

# Ethics Docket No. 1990-12

MARYLAND STATE BAR ASSOCIATION, INC.

COMMITTEE ON ETHICS

ETHICS DOCKET NO. 1990-12

Arbitration Clause in Fee Agreement

Your inquiry raises the issue as to whether an attorney may enter into a written retainer agreement with a client, which agreement would provide that all disputes arising out of the attorney-client relationship would be submitted to mandatory arbitration. This would include fee disputes as well as claims by the client against the lawyer for malpractice, professional negligence, and the like.

The Committee believes that the answer to your inquiry is governed by Rule 1.8(h) of the Maryland Rules of Professional Conduct, which provides:

"A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith."

The key issue in your inquiry is whether an agreement to submit all disputes arising out of the attorney-client relationship to arbitration constitutes an effort prospectively to limit the lawyer's liability to a client for malpractice. Assuming *arguendo*, either as a matter of law or as specified in the agreement, that arbitrators can award any and all types of damages (including punitive damages) which might be awarded by a court or jury, there is still the question as to whether a written agreement which takes away the right to a court or jury trial an be viewed as prospectively limiting the lawyer's liability to a client for malpractice. In a very technical sense, one could argue that there is no prospective limitation of the lawyer's liability provided that the arbitrators can award all damages that a court or jury could award. However, in this day and age, there are many lawyers and non-lawyers who would be quick to argue that juries are more likely to award larger judgments against professionals than would be the case with arbitration panels. In addition, there are significant differences between arbitration proceedings and court proceedings in terms of the admissibility or evidence, appellate review, and other factors which bear on this issue. Although one might easily and persuasively argue that these factors go to procedural differences rather than remedial ones, nevertheless, the Committee believes that the over-all effect of the decision whether to opt for arbitration versus a court or jury trial is sufficiently related to the issue of prospectively limiting a lawyer's liability, so that Rule 1.8(h) must be followed.

The dichotomy in Rule 1.8(h) between the situation where a lawyer is prospectively attempting to limit his liability to a client versus the situation where a lawyer is settling a claim for such liability with an unrepresented client or former client is significant. Interestingly, in the latter situation, a lawyer can settle a claim asserted by the unrepresented or former client provided the lawyer first advises that person in writing to seek independent representation in connection with the settlement of the claim. If the claimant fails to follow the lawyer's advice, provisions of the Rules, is free to settle the matter with the unrepresented or former client.

On the other hand, when the lawyer prospectively attempts to seek independent representation is not enough. In this situation Rule 1.8(h) mandates that the client be independently represented before making such an agreement. Thus, if the client fails or refuses to obtain independent representation, the lawyer cannot enter into any agreement prospectively limiting his liability.

Accordingly, the Committee is of the opinion that before a lawyer can enter into a written agreement with a client providing for the submission to arbitration of all disputes arising out of the attorney-client relationship, the client must be represented by independent counsel in connection with that written agreement. If the client refuses to seek independent counsel, then the lawyer is prohibited from entering into such a written agreement. In this case, obviously, the lawyer will simply have to decide whether he wants to represent the client absent such a written agreement.



**DISCLAIMER:** Opinions of the Maryland State Bar Association (MSBA) Ethics Committee are an uncompensated service of the MSBA. This Committee's opinions are not binding on the Maryland Court of Appeals, Maryland Attorney Grievance Commission, MSBA or this Committee. The reader is advised that subsequent judicial opinions, revisions to the rules of professional conduct, and future opinions of this Committee may render the Opinions stated herein outdated. As such, the Committee's opinions are advisory only and neither the Committee nor the MSBA assumes any liability whatsoever with respect thereto. Accordingly, reliance upon the opinions of this Committee is solely at the risk of the user.



QUICK LINKS

▸ MSBA Engage

▸ Attorney Security Pass

▸ Dispute an Attorney Fee

▸ Contact Us

MSBA SITE

▸ For Members

▸ Learning & Events

▸ Resources & Tools

▸ Advocacy

▸ About Us

PARTNER SITES

▸ Fastcase

▸ Maryland Bar Foundation

▸ MD Access to Justice Commission

▸ My Law

▸ Pro Bono Resource Center

**Maryland State Bar Association, Inc.**

520 W. Fayette St

Baltimore, Maryland, 21201

410-685-7878

**LAWYER ASSISTANCE:**

888-388-5459

     

Copyright    Privacy Policy    Terms & Conditions

E-FILED; Baltimore City Circuit Court
Docket: 12/17/2024 4:25 PM; Submission: 12/17/2024 4:25 PM
Envelope: 19222875

# Exhibit B

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Defendant Whiteford, Taylor & Preston, LLP ("Whiteford"), by and through its undersigned counsel, hereby submits the following responses and objections to the Requests for Admissions served by Plaintiff Claudia Engelhorn ("Engelhorn").  This Response is served pursuant to Rule 2-424(b) of the Maryland Rules of Civil Procedure.

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

1.      In responding to these Requests for Admission, Whiteford does not waive and does not intend to waive the arguments made in the pending Petition to Compel Arbitration it has filed in this matter, which asserts that all claims or disputes arising out of the services Whiteford has provided to Engelhorn, or that are related to its relationship with Engelhorn, are to be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. This Response is being filed within the time limits set forth in Maryland Rule 2-424(b) so as to avoid the impact of that Rule, which provides that matters "of which an admission is requested shall be deemed admitted," unless a response is timely filed.

2.      Whiteford does not waive or intend to waive any objections to the admissibility of the matters referred to herein, but rather reserves the right to object on all appropriate grounds to the introduction of any evidence covered or referred to in the specific Responses below.

3.      The Responses stated below are based on reasonable inquiries undertaken by

Whiteford and its undersigned counsel with respect to the matters addressed in the Requests.

## <u>RESPONSES TO REQUESTS FOR ADMISSIONS</u>

**<u>REQUEST NO. 1:</u>** Admit that Whiteford, Taylor & Preston, LLP did not have a written
retainer agreement with White Pearl, LLC.

**<u>RESPONSE NO. 1:</u>** Whiteford admits that it did not have a written retainer agreement

with White Pearl, LLC, but avers that the terms of its written retainer agreement with Engelhorn

should be deemed applicable to White Pearl, LLC, given that Engelhorn has alleged that White

Pearl, LLC is a single member entity solely owned by her.

**<u>REQUEST NO. 2:</u>** Admit that Whiteford, Taylor & Preston, LLP does not have a written
retainer agreement with White Pearl, LLC.

**<u>RESPONSE NO. 2:</u>** Whiteford admits that it does not have a written retainer agreement

with White Pearl, LLC, but avers that the terms of its written retainer agreement with Engelhorn

should be deemed applicable to White Pearl, LLC, given that Engelhorn has alleged that White

Pearl, LLC is a single member entity solely owned by her.

**<u>REQUEST NO. 3:</u>** Admit that Whiteford, Taylor & Preston, LLP did not have a written
retainer agreement with Claudia Engelhorn, as Trustee for the Whitewater Revocable Trust dated
September 30, 2021.

**<u>RESPONSE NO. 3:</u>** Whiteford admits that it did not have a written retainer agreement

with Engelhorn that identified her as the Trustee for the Whitewater Revocable Trust dated

September 30, 2021, in part because that Trust had not been formed when the written retainer

agreement with Engelhorn was executed on or about February 27, 2020.  Whiteford further avers

that the terms of its written retainer agreement with Engelhorn should be deemed applicable to

services provided to her in her role as Trustee of the Whitewater Revocable Trust in that this

Trust was formed with the assistance of Whiteford attorneys as part of Engelhorn's estate

2

planning efforts following the settlement of litigation against her father's estate, and Engelhorn

was represented in the estate litigation by Whiteford pursuant to the terms of the firm's written

retainer agreement with her.

**REQUEST NO. 4:** Admit that Whiteford, Taylor & Preston, LLP does not have a written
retainer agreement with Claudia Engelhorn, as Trustee for the Whitewater Revocable Trust dated
September 30, 2021.

**RESPONSE NO. 4:**   Whiteford admits that it does not have a written retainer agreement

with Engelhorn that identified her as the Trustee for the Whitewater Revocable Trust dated

September 30, 2021, in part because that Trust had not been formed when Whiteford's written

retainer agreement with Engelhorn was executed on or about February 27, 2020.  Whiteford

further avers that the terms of its written retainer agreement with Engelhorn should be deemed

applicable to services provided to her in her role as Trustee of the Whitewater Revocable Trust in

that this Trust was formed with the assistance of Whiteford attorneys as part of Engelhorn's

estate planning efforts following the settlement of litigation against her father's estate, and

Engelhorn was represented in the estate litigation by Whiteford pursuant to the terms of the

firm's written retainer agreement with her.

**REQUEST NO. 5:** Admit that Whiteford, Taylor & Preston, LLP did not have a written
retainer agreement with Claudia Engelhorn as of September 1, 2021 that authorized it to bill in
excess of $500.00 per hour.

**RESPONSE NO. 5:**   This Response is being provided subject to the objection outlined

in Response No. 17 below.  Answering further, and without waiving any objections, Whiteford

admits that it did not have a written retainer agreement with Claudia Engelhorn as of September

1, 2021, that authorized it to bill for attorney's services in excess of $500.00 per hour.  Whiteford

further states that after reasonable inquiry it has not been able to determine whether there existed

an oral agreement between Engelhorn and defendant Erik Bolog, which provided that services to

3

be performed by Whiteford attorneys for Engelhorn in matters that post-dated the settlement of

her litigation against her father's estate would be billed by the firm at the customary hourly rates

of the lawyers providing those services, without regard to the $500.00 per hour cap on partner's

time that was part of the hybrid hourly/contingent fee arrangement that was applied to

Whiteford's representation of Engelhorn in connection with the estate litigation, as set out in the

written retainer agreement executed in February 2020.  Moreover, it appears from Whiteford's

billing records and invoices sent to Engelhorn that the $500.00 per hour cap was not applied to

professional services rendered to Engelhorn following the successful resolution of the estate

litigation.  Moreover, it would make little sense for such a cap to apply to Whiteford's

representation of Engelhorn following the successful resolution of the estate litigation, given that

those services were not subject to any form of potential contingent recovery.

    **REQUEST NO. 6:** Admit that Whiteford, Taylor & Preston, LLP does not possess a
writing wherein Claudia Engelhorn admitted that she was fully informed of the scope and effect
of any arbitration provision contained in any engagement agreement executed by Claudia
Engelhorn with Whiteford, Taylor & Preston, LLP.

    **RESPONSE NO. 6:**  Whiteford admits that it is not in possession of any such writing,

other than the arbitration provision that was contained in the written retainer agreement that

Engelhorn executed on or about February 27, 2020.  Whiteford further avers that Engelhorn was

fully informed of the scope and effect of that arbitration provision, as described in the Affidavit

of C. Allen Foster, filed in this matter on November 15, 2024. Moreover, the rules governing

arbitration proceedings administered by JAMS, Inc., which are referenced in the written retainer

agreement, are publicly available on the JAMS website.

    **REQUEST NO. 7:** Admit that Whiteford, Taylor & Preston, LLP does not possess any
writing exchanged with Claudia Engelhorn wherein Whiteford, Taylor & Preston, LLC explains
the material risks of entering into an arbitration agreement with it.

**RESPONSE NO. 7:** Whiteford admits that it is not in possession of any such writing, other than the arbitration provision that was contained in the written retainer agreement that Engelhorn executed on or about February 27, 2020. Whiteford further avers that Engelhorn was fully informed of the scope and effect of that arbitration provision, as described in the Affidavit of C. Allen Foster, filed in this matter on November 15, 2024. To the extent that there were any material risks associated with the arbitration agreement, Engelhorn had the opportunity to discuss those matters during the four-month period in which she considered entering into the retainer agreement and in which she consulted with her other advisors about the terms of that agreement.

**REQUEST NO. 8:** Admit that Whiteford, Taylor & Preston, LLP does not possess any writing wherein it described the differences between litigation in the courts and arbitration proceedings as it relates to any arbitration provision in any engagement agreement entered into between Whiteford, Taylor & Preston, LLP and Claudia Engelhorn.

**RESPONSE NO. 8:** Whiteford admits that it is not in possession of any such writing, other than the arbitration provision that was contained in the written retainer agreement that Engelhorn executed on or about February 27, 2020. Whiteford further avers that Engelhorn was fully informed of the scope and effect of that arbitration provision, as described in the Affidavit of C. Allen Foster, filed in this matter on November 15, 2024. Moreover, to the extent that the differences between litigation in the courts and arbitration proceedings were of any concern to Engelhorn or her other advisors, Engelhorn had the opportunity to discuss those matters during the four-month period in which she considered entering into the retainer agreement and in which she consulted with her other advisors about the terms of that agreement. In addition, the rules governing arbitration proceedings administered by JAMS, Inc., which are referenced in the written retainer agreement, are publicly available on the JAMS website.

**REQUEST NO. 9:** Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discussed the fees associated with an arbitration proceeding as opposed to fees associated with litigation.

**RESPONSE NO. 9:** Whiteford admits that it is not in possession of any such writing, other than the arbitration provision that was contained in the written retainer agreement that Engelhorn executed on or about February 27, 2020.  Whiteford further avers that Engelhorn was fully informed of the scope and effect of that arbitration provision, as described in the Affidavit of C. Allen Foster, filed in this matter on November 15, 2024. To the extent that Engelhorn had any concerns about the fees associated with arbitration proceedings as opposed to fees associated with litigation, Engelhorn had the opportunity to discuss those matters during the four-month period in which she considered entering into the retainer agreement and in which she consulted with her other advisors about the terms of that agreement. In addition, the fees associated with arbitration proceedings conducted pursuant to the rules and procedures of JAMS, Inc., which are referenced in the written retainer agreement, are publicly available on the JAMS website.

**REQUEST NO. 10:** Admit that Whiteford, Taylor & Preston, LLP does not possess any writing with Claudia Engelhorn wherein it discusses the difference between the availability of discovery in an arbitration proceeding and discovery available in civil litigation.

**RESPONSE NO. 10:** Whiteford admits that it is not in possession of any such writing, other than the arbitration provision that was contained in the written retainer agreement that Engelhorn executed on or about February 27, 2020.  Whiteford further avers that Engelhorn was fully informed of the scope and effect of that arbitration provision, as described in the Affidavit of C. Allen Foster, filed in this matter on November 15, 2024. To the extent that Engelhorn had any concerns about the availability of discovery in an arbitration proceeding, as opposed to civil litigation, Engelhorn had the opportunity to discuss those matters during the four-month period in which she considered entering into the retainer agreement and in which she consulted with her

6

other advisors about the terms of that agreement. In addition, the discovery procedures available

in arbitration proceedings conducted pursuant to the rules and procedures of JAMS, Inc., which

are referenced in the written retainer agreement, are publicly available on the JAMS website.

**REQUEST NO. 11:** Admit that Whiteford, Taylor & Preston, LLP does not possess any
writing with Claudia Engelhorn wherein it discusses the difference between the right to a jury
trial in a civil lawsuit verse [sic] the absence of a jury trial in an arbitration proceeding.

**RESPONSE NO. 11:** Whiteford admits that it is not in possession of any such writing,

other than the arbitration provision that was contained in the written retainer agreement that

Engelhorn executed on or about February 27, 2020.  Whiteford further avers that Engelhorn was

fully informed of the scope and effect of that arbitration provision, as described in the Affidavit

of C. Allen Foster, filed in this matter on November 15, 2024. To the extent that Engelhorn had

any concerns about the absence of a jury trial in an arbitration proceeding, as opposed to civil

litigation, Engelhorn had the opportunity to discuss those matters during the four-month period

in which she considered entering into the retainer agreement and in which she consulted with her

other advisors about the terms of that agreement. In addition, the nature of arbitration

proceedings conducted pursuant to the rules and procedures of JAMS, Inc., which are referenced

in the written retainer agreement, are thoroughly set forth—including express discussion of the

absence of a jury trial—in materials publicly available on the JAMS website.

**REQUEST NO. 12:** Admit that Whiteford, Taylor & Preston, LLP does not possess any
writing with Claudia Engelhorn wherein it discusses the difference between the right to an appeal
in an arbitration proceeding and in civil litigation.

**RESPONSE NO. 12:** Whiteford admits that it is not in possession of any such writing,

other than the arbitration provision that was contained in the written retainer agreement that

Engelhorn executed on or about February 27, 2020, which describes arbitration as "final and

binding."  Whiteford further avers that Engelhorn was fully informed of the scope and effect of

7

that arbitration provision, as described in the Affidavit of C. Allen Foster, filed in this matter on

November 15, 2024. To the extent that Engelhorn had any concerns about the finality of an

arbitrator's award, Engelhorn had the opportunity to discuss those matters during the four-month

period in which she considered entering into the retainer agreement and in which she consulted

with her other advisors about the terms of that agreement. In addition, the nature of arbitration

proceedings conducted pursuant to the rules and procedures of JAMS, Inc., which are referenced

in the written retainer agreement, are thoroughly set forth—including express discussion of the

unavailability of appeal—in materials publicly available on the JAMS website.

**REQUEST NO. 13:**  Admit that attorneys with Whiteford, Taylor & Preston, LLP
drafted the Jareb Irrevocable Trust Agreement Dated October 11, 2021.

**RESPONSE NO. 13:**  As framed, this Request is denied.  As previously disclosed to

Engelhorn's attorneys with Dentons, the JAREB Irrevocable Trust Agreement dated October 11,

2021, appears to have been created by Defendant Erik Bolog from a draft that he had requested

other Whiteford attorneys to prepare that would have created a trust for the benefit of a friend

and longtime employee of Engelhorn's, named Marcia Bosco.  The attorneys who created that

draft trust agreement were not aware until the summer of 2023 that the draft would be modified

to provide benefits to Mr. Bolog and his family, were not aware of the size of the trust corpus,

and were not aware that the trust entity was to be called the JAREB Trust.  Whiteford believes

that Mr. Bolog was involved in drafting the JAREB Irrevocable Trust Agreement, but he is no

longer an attorney with Whiteford.

**REQUEST NO. 14:** Admit that attorneys with Whiteford, Taylor & Preston, LLP
requested an employer identification number for the Jareb Irrevocable Trust Agreement Dated
October 11, 2021.

**RESPONSE NO. 14:**  As framed, this Request is denied.  Whiteford believes that an

employer identification number for the JAREB Irrevocable Trust Agreement was obtained by

defendant Bolog, or at the direction of defendant Bolog by one or more Whiteford paralegal

assistants.  Mr. Bolog is no longer an attorney with Whiteford.

**REQUEST NO. 15:** Admit that the highest hourly rate that Whiteford, Taylor & Preston,
LLP indicated in any retainer agreement entered into with Claudia Engelhorn that it would bill
her for services was $500.00 per hour.

**RESPONSE NO. 15:**  This Response is being provided subject to the objection outlined

in Response No. 17 below.  Answering further, and without waiving any objections, Whiteford

admits that the written retainer agreement executed on or about February 27, 2020, included a

provision capping the hourly rates of partners with the firm at $500.00 per hour for services

rendered in connection with Engelhorn's litigation against her father's estate. For the reasons set

forth in Response No. 5 above, Whiteford believes that this hourly rate cap was not applicable to

services provided to Engelhorn after the settlement of the litigation that she successfully pursued

against her father's estate.

**REQUEST NO. 16:** Admit that Whiteford, Taylor & Preston, LLP has never
communicated with Claudia Engelhorn, in writing, that it would be charging rates in excess of
$500.00 per hour.

**RESPONSE NO. 16:**  This Response is being provided subject to the objection outlined

in Response No. 17 below.  Answering further, and without waiving any objections, Whiteford

admits that it is not aware of any written communication with Engelhorn stating that it would be

charging her for services rendered at hourly rates in excess of $500.00 per hour. But as described

in Response No. 5 above, Whiteford believes that the hourly rate cap set forth in the February 27,

2020 retainer agreement was no longer applicable to services provided to Engelhorn after the

settlement of the litigation that she successfully pursued against her father's estate.

**REQUEST NO. 17:** Admit that there were times after September 1, 2021 wherein Whiteford, Taylor & Preston, LLP billed Claudia Engelhorn at rates higher than $500.00 per hour.

**RESPONSE NO. 17:** Whiteford objects on relevance grounds to this Request based on the Settlement Agreement and Limited Release between Whiteford and Engelhorn dated October 9, 2023.  Answering further, and without waiving this objection, Whiteford admits that it forwarded an invoice to Engelhorn, dated December 13, 2022, that included some services that were provided to Engelhorn that were billed at rates higher than $500.00 per hour.  Those services were performed during the period between October 1, 2021 and June 23, 2022. However, Whiteford agreed to write off the entirety of that invoice, totaling $152,154.01, as part of the above referenced Settlement Agreement and Limited Release dated October 9, 2023. Moreover, in that Settlement Agreement and Limited Release, Engelhorn specifically released Whiteford from any claims regarding the expenses, disbursements and legal fees arising from or relating to any of Whiteford's professional services provided to Engelhorn.

**REQUEST NO. 18:** Admit that Claudia Engelhorn was not represented by independent counsel when she allegedly entered into a retainer agreement with Whiteford, Taylor & Preston, LLP on or about February 27, 2020.

**RESPONSE NO. 18:**  After reasonable inquiry, Whiteford lacks sufficient information to admit or deny this Request. Whiteford believes that Engelhorn had independent counsel representing her in connection with the litigation she was pursuing against her father's estate and related estate planning matters, including counsel affiliated with the Dentons firm.  Whether Engelhorn consulted with her independent counsel about the retainer agreement with Whiteford during the lengthy four-month period in which she was reviewing the terms of that agreement, is peculiarly within the knowledge of Engelhorn and her consultants and advisors.

10

Dated: December 2, 2024

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:  /s/ William J. Murphy    
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk MacKinnon Morrow
      (#2410241018)

100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
KMackinnonMorrow@zuckerman.com

*Attorneys for Defendant Whiteford, Taylor &*
*Preston, LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2d day of December, 2024, a copy of the foregoing was

served in the manner indicated on the following persons:

Douglas Gansler
John B. Howard, Jr.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue NW
Washington, DC 20006
*Counsel for Erik D. Bolog, Eric D. Bolog,*
*Trustee, Darnestown Road, Inc., and Science*
*Park Associates*
By email to:
Douglas.Gansler@cwt.com
J.B.Howard@cwt.com

Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
(410) 721-1979
By email to:
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Michael Postal
4302 Broken Arrow Court
Clinton, MD 20735
By first class mail

POJO LaPlata LLC
Attn: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 20735
By first class mail

Swain Landing LaPlata JC, LLC
Attn: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735
By first class mail

Tenacity Investments, LLC
Attn: Michael Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912
By first class mail

   /s/ *John J. Connolly*
John J. Connolly

12

# Exhibit C

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
### DATED
### SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN**, hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____ witness NC

_____ witness NC

_____ Fairfax VA

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

_____ (SEAL)
CLAUDIA ENGELHORN, Trustee

_____ (SEAL)
ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be her act and deed.

_____
Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION
EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be his act and deed.

_____
Notary Public

Fairfax, VA

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION
EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*

4

# Exhibit D





## MaryEllen Willman

**PARTNER, CO-CHAIR OF TAX & PRIVATE WEALTH SECTION**

mwillman@whitefordlaw.com

**COLUMBIA**
T: 410.347.8720
F: 410.884.2422

**FALLS CHURCH**
T: 410.347.8720
F: 410.884.2422

## BIOGRAPHY

Ms. Willman counsels clients in a wide range of wealth profiles and personal circumstances with respect to estate planning and incapacity planning. Ms. Willman also has experience in designing and drafting estate plans to address each client's personal goals and needs, from basic planning to more complex planning involving generation-skipping trusts, special needs trusts, charitable trusts and family limited liability companies. She is a true master of estates & trust litigation as she represents trustees, personal representatives and beneficiaries in a wide range of fiduciary litigation matters. Furthermore, Ms. Willman has instituted proceedings against agents, personal representatives and trustees to compel accountings and produce books and records.

## RECOGNITIONS

- AV Preeminent®: Martindale-Hubbell® Peer Review Ratings™

## PRACTICES & INDUSTRIES

Tax and Private Wealth
Trusts and Estates
International Tax
Estates & Trust Litigation
Business Succession Planning
COVID-19

## EDUCATION

American University, Washington College of Law, 1986, J.D.

State University of New York (SUNY) Stonybrook, 1981, B.A.

## ADMISSIONS

Maryland

Virginia

District of Columbia

## MEMBERSHIPS & ACTIVITIES

- Member: Whiteford, Taylor & Preston Executive Committee
- Member: Maryland State Bar Association
- Member: Virginia State Bar Association
- Member: District of Columbia Bar Association
- Member: American Bar Association, Real Property and Estates and Trust Section
- Member: Howard County Estate Planning Council
- Working knowledge of Spanish, Italian and Russian

---

## ESTATE PLANNING & ADMINISTRATION

- Counsels clients in a wide range of wealth profiles and personal circumstances with respect to estate planning and incapacity planning
- Designs and drafts estate plans to address each client's personal goals and needs, from basic planning to more complex planning involving generation-skipping trusts, special needs trusts, charitable trusts and family limited liability companies
- Represents non-U.S. citizens with regard to estate planning utilizing qualified domestic trusts and other planning techniques
- Works with multiple generations of family members to provide intergenerational estate planning
- Advises business owners on how to transfer of business interests and plan for ownership succession
- Handles guardianships, conservatorships, probate of decedents' estates and post-mortem administration of trusts in Maryland, Virginia and the District of Columbia

## ESTATES & TRUST LITIGATION

- Prosecuted actions for breach of fiduciary duty to recover misappropriated estate and trust funds
- Instituted proceedings against agents, personal representatives and trustees to compel accountings and produce books and records
- Handled inter partes probate actions

• Prosecuted actions to establish heirship
• Represents trustees, personal representatives and beneficiaries in a wide range of fiduciary litigation matters
• Represented beneficiary electing spousal share of augmented estate
• Obtained seven-figure settlement from trustee on behalf of a trust beneficiary for trustee's breach of fiduciary duty

## INSIGHTS

Frequently lectures to financial advisors, accountants and others on topics related to estate planning and estate taxation

E-FILED; Baltimore City Circuit Court
Docket: 12/17/2024 4:25 PM; Submission: 12/17/2024 4:25 PM
Envelope: 19222875

# Exhibit E

12/17/24, 11:53 AM    David Baker | LinkedIn

 



## David Baker  (He/Him) · 3rd

Paralegal at Davis, Agnor, Rapaport & Skalny, LLC

  

- Davis, Agnor, Rapaport & Skalny LLC

- Leiden University

Columbia, Maryland, United States · Contact info

296 connections

[ 🔗 Connect ]  [ Message ]  [ More ]

---

### Activity

297 followers

David Baker commented on a post · 3mo

Hey Chuck - we should catch up - that's 2 miles from my office in Columbia.   Hope you are well.

Show all comments →

---

### Experience

 **Senior Paralegal**
Davis, Agnor, Rapaport & Skalny LLC · Full-time
Oct 2024 - Present · 3 mos
Columbia, Maryland, United States · On-site

☉ Estate Tax Planning, Tax Preparation and +3 skills

 **Paralegal**
Whiteford, Taylor & Preston · Full-time
Mar 2010 - Oct 2024 · 14 yrs 8 mos
Baltimore, Maryland

Estates and Trust, Real Estate, Corporate and Tax

 **Paralegal**
Kalinoski & Riordan, P.A.
Oct 1996 - Mar 2010 · 13 yrs 6 mos

---

### Education

 **Leiden University**
Political Science and Government

## Licenses & certifications

**IRS RTRP**
Internal Revenue Service
Issued Dec 2012

## Volunteering

**Chair**
Towsontowne Recreation Council Adult Soccer
Aug 2003 - Present · 21 yrs 5 mos

## Skills

**Financial Analysis**

Senior Paralegal at Davis, Agnor, Rapaport & Skalny LLC

**Tax Preparation**

Senior Paralegal at Davis, Agnor, Rapaport & Skalny LLC

1 endorsement

Show all 24 skills →

## Languages

**Dutch**
Native or bilingual proficiency

**French**
Limited working proficiency

Show all 3 languages →

## Interests

**Companies**    Schools

**Leiden University**
306,400 followers

+ Follow

**Whiteford, Taylor & Preston LLP**
5,432 followers

+ Follow

Show all companies →

## Causes

Politics



**Sell on Amazon**

Patrick follow Sell on Amazon for the
latest!

Stay informed on industry news and trends

[ Follow ]



**More profiles for you**

**Nicholas King** · 3rd+
Principal at PARAGON OUTLETS

[ 👤+ Connect ]

**Grant Adams** · 3rd+
Attorney

[ 👤+ Connect ]

**Georgie Lellman** · 3rd+
Judicial Law Clerk, Circuit Court for Baltimore City

[ 👤+ Connect ]

**Ashok Aggarwal** · 3rd+
Senior Electrical Engineer at AECOM

[ 👤+ Connect ]

**Jason Price** · 3rd+
Electrical Engineer, Associate B+P at AECOM | Aviation

[ 👤+ Connect ]

Show all



**People you may know**
From David's school

**Dr. Jana Jentzsch**
Technology Lawyer 💡 Software Use 💡 AI Implications 💡 Data Compliance

[ 👤+ Connect ]

**Fiona P.** 🔗
Legal Consultant

[ 👤+ Connect ]

**Dr. Roland Pühler**
Head of Corporate Legal, Antitrust & Insurance bei Axel Springer SE

[ 👤+ Connect ]



**Yüksel Alper Ecevit**
Associate Professor of Comparative Politics and Quantitative Research Methods

⊕+ Connect

**Catherine Gerin**
Avocat chez Schiltz & Schiltz S.A.

⊕+ Connect

Show all

## You might like
Pages for you

**American Bar Association**
Legal Services
286,290 followers

1 connection follows this page

+ Follow

**United States Courts**
Administration of Justice
84,355 followers

1 connection follows this page

+ Follow

Show all

Promoted ···

**$1,989/month extra cash**
That's the average earned on a 3-bedroom US Vrbo listing, 11/2020-12/2021.

**Kimberly-Joy** also follows Vrbo

**Subscribe with Google.**
Get WSJ, Just $2/Week.

**Nader** & 2 other connections also follow The Wall Street Journal



About                              Accessibility

Professional Community Policies    Careers

Privacy & Terms ▼                  Ad Choices

Sales Solutions                    Mobile

Safety Center

Talent Solutions

Marketing Solutions

Advertising

Small Business

❓ Questions?
Visit our Help Center.

⚙ Manage your account and privacy
Go to your Settings.

🛡 Recommendation transparency
Learn more about Recommended Content.

Select Language

English (English)                  ▼

LinkedIn Corporation. © 2024

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS BOLOG'S, SCIENCE PARK'S, AND DARNESTOWN'S MOTIONS (A) TO STRIKE, (B) FOR A MORE DEFINITE STATEMENT, AND (C) TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**</u>
**(Hearing Requested)**

Plaintiffs, Claudia Engelhorn ("Engelhorn" when referred to individually), *et al.*, by and through their undersigned counsel, file this Response in Opposition to Defendants Bolog's, Science Park's, and Darnestown's Motions (A) to Strike (B) for a More Definite Statement, and (C) to Dismiss for failure to state a claim upon which relief can be granted.

## I.    <u>INTRODUCTION</u>

Defendant Erik D. Bolog ("Bolog"), an attorney who has been credibly accused of misappropriating $10 million from a client, Engelhorn, seeks to evade accountability by filing a Motion to Dismiss.  Bolog is the same attorney who was ultimately fired by Defendant Whiteford, Taylor & Preston, LLP ("WTP") for "irregularities in his expense-accounting."[1]  Bolog is also the same attorney whom WTP, albeit in an effort to avoid its own liability to Plaintiffs, contends

---

[1] *See* WTP's Memorandum in Support of Petition for Order Compelling Arbitration and Staying Proceedings and Motion to Dismiss, at 1. Bolog "worked for Whiteford for about a decade—until May 1, 2023, when the firm fired him for cause." *Id*. WTP disclosed in its Memorandum that "Whiteford fired Mr. Bolog, in part because of ***irregularities in his expense-accounting*** on the Engelhorn matter…" *Id*. (emphasis supplied).

"deceived" other WTP lawyers who, along with Bolog, also provided legal representation to Plaintiffs.[2]  Apparently adhering to the concept of "no matter how bad things are, you can always make things worse," Bolog has brazenly threatened opposing counsel with a meritless defamation claim in an attempt to intimidate and deflect attention from his own egregious misconduct.  Such tactics are not only legally unsound but also represent a flagrant abuse of the judicial process.

This Court should not countenance these Defendants' attempt to weaponize procedural mechanisms to shield themselves from scrutiny.  The allegations against Bolog (individually and as trustee), Science Park, and Darnestown (collectively "the Bolog Defendants") are serious, well-supported, sufficient to state claims upon which relief can be granted, and demand adjudication on the merits.  The Bolog Defendants' threats against opposing counsel further underscore their bad faith and lack of credibility and serve as a transparent effort to distract from the gravity of their own actions.  This Court should deny the Bolog Defendants' motion in its entirety.

The Bolog Defendants' motion consists of a series of unsupported, uncited, and unverified factual allegations which purport to challenge the facts alleged by Plaintiffs in the First Amended Complaint ("FAC").  It is manifest that this is improper under Maryland law in a motion to dismiss.  Maryland law is well established that this Court is required to assume the truth of all facts pled by Plaintiffs in the FAC and that this Court is required to draw all reasonable inferences from those facts in favor of the Plaintiffs in ruling on the Bolog Defendants' motion to dismiss.  The Bolog Defendants may disagree with the factual allegations in the FAC or the reasonable inferences to be drawn therefrom, but on a motion to dismiss, the only question is whether the well-pleaded facts on their face, as well as the reasonable inferences that can be drawn therefrom in favor of the pleading party, state a claim upon which relief can be granted.  For this reason, the Bolog

---

[2]  See, WTP Mem. at 6 n.4 (asserting that Bolog deceived WTP), and *id* at 32 (same).

Defendants' unsupported factual assertions are irrelevant to the disposition of their motion. Moreover, the motion makes many erroneous statements that go beyond the FAC, as these statements do not relate to allegations that are included in the FAC.

This Court should also deny the Bolog Defendants' motion, inasmuch as it seeks to strike allegations concerning Bolog's financial dealings and prior case history. These allegations are relevant to causes of action pled in the FAC; they are all sourced from and established by public records (which Plaintiffs cite in the FAC). These allegations also form the basis, at least in part, for the Plaintiffs' allegations against WTP, including that WTP negligently hired and supervised Bolog FAC, Count II.

Finally, the Bolog Defendants admit in their motion as to having knowledge that Engelhorn has concern with an individual "exact[ing] revenge upon her," but then speciously assert that her assertion as to having concern for her safety somehow forms the basis for one or more of his multiple motions. Engelhorn is not in fear of Bolog. Engelhorn is an heir to a vast fortune and a very wealthy person. Engelhorn is an unmarried woman who lives in a rural part of Tennessee, and she would prefer that her current address is not publicly available in Maryland Judiciary Case Search or in the public filings in this case, where it is irrelevant. Engelhorn also believes that the Defendants, in this case, already know her current address, and she has no issue sharing said address with the Defendants in a confidential fashion or in response to a discovery request. Nevertheless, Engelhorn disclosed that she is a citizen of Tennessee in the initial Complaint and in the FAC so that the Defendants could assess any jurisdictional issue, though this matter is not subject to removal to U.S. District Court in Maryland as it involves Defendants who are citizens and/or who are organized under the law of Maryland and who maintain their principal place of business in Maryland. In particular, 28 U.S.C. 1441(b)(2) provides that: "[a] civil action otherwise

3

removable solely on the basis of the jurisdiction under section 1332(a) of this title] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Since this action clearly involves Maryland defendants, the Bolog Defendants' regarding the need to assess removal jurisdiction is specious, at best.

For these reasons, as explained in greater detail below, the Bolog Defendants' motion should be denied in its entirety.

## II.   LEGAL STANDARD

### a.   Motion to Strike (Md. Rule 2-322(e))

Pursuant to Md. Rule 2-322(e), "[o]n motion made by a party before responding to a pleading or, if no responsive pleading is required by these rules, on motion made by a party within 15 days after the service of the pleading or on the court's own initiative at any time, the court may order any insufficient defense or any improper, immaterial, impertinent, or scandalous matter stricken from any pleading or may order any pleading that is late or otherwise not in compliance with these rules stricken in its entirety." *Id*. Undersigned counsel have not been able to locate a reported decision where something was stricken per Md. Rule 2-322(e) on the basis that it was "scandalous." Generally, however, the decision whether to grant a motion to strike is within the sound discretion of the trial court. *Lancaster v. Gardiner*, 225 Md. 260, 269-70, 170 A.2d 181, (1961) *cert*. denied, 368 U.S. 836 (1961); *Patapsco Assoc. Ltd. Part. v. Gurany*, 80 Md. App. 200, 204, 560 A.2d 611 (1989).

### b.   Motion for More Definite Statement

Md. Rule 2-322(d) states, in pertinent part: "If a pleading to which an answer is permitted is so vague or ambiguous that a party cannot reasonably frame an answer, the party may move for a more definite statement before answering. The motion shall point out the defects complained of

4

and the details desired." *Id*.  "Unless the complaint actually omits essential elements of the cause of action or is so utterly vague or deficient in articulation as not allege a cognizable cause of action, the proper method for complaining about vagueness is a motion for more definite statement, not a motion to dismiss." *G & H Clearing & Landscaping v. Whitworth*, 66 Md.  App. 348, 354, 503 A.2d 1379 (1986).  A more definite statement is appropriate where "[a] defendant reading this Declaration would really have no way of knowing how properly to answer it." *Id*. at 357.

### c.  Motion to Dismiss for Failure to State a Claim

"Considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action for which relief may be granted." *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010).   "Consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any." *Id*.

### III.   ARGUMENT

### A.  There is no basis to strike the challenged allegations of the First Amended Complaint.

The Bolog Defendants assert that certain allegations in the FAC should be stricken, primarily those in FAC ¶¶ 21-22, as well as instances where the FAC notes that Engelhorn does not want to disclose her address because of concerns for her safety.  FAC ¶¶ 1 and 2.  As stated, *supra*, Engelhorn is not afraid of the Defendants in this action, and she is not concerned about Bolog knowing her address.  Based on information and belief, Bolog probably already knows

Engelhorn's address.    Engelhorn's concerns for her safety stem from the fact that she is a single,

extraordinarily wealthy woman.    This is also why the Plaintiffs avoided disclosing in their

pleadings precisely how much money Engelhorn inherited, though WTP and the Bolog Defendants

apparently did not share this concern as they disclosed this amount in their publicly filed motions

even though it is irrelevant to the bases for their motions.    Plaintiffs included this allegation

regarding Engelhorn's concerns in the FAC as an explanation as to why they did not include

Engelhorn's precise home address rather than excluding the address without explanation.    FAC ¶¶

1 and 2.    This allegation, on its face, is not "improper, immaterial, impertinent, or scandalous."

Md. Rule 2-322(e).    While Bolog takes offense to this allegation, there is no indication in the FAC

that Bolog is a person who is causing Engelhorn to have concerns about her safety.    The Bolog

Defendants' Motion to Strike the paragraphs that mention Engelhorn's concerns for her safety

should be denied.

The Bolog Defendants also seek to strike the allegations contained in FAC ¶¶ 21-22.    The

Bolog Defendants assert that these allegations are "unnecessary, redundant, impertinent, and

irrelevant, and libelous as to Mr. Bolog."    As support, they rely on an <u>unreported opinion of the</u>

<u>United States District Court for the District of South Carolina</u>.    In *Ethox Chem., LLC v. Coca-Cola*

*Co.*, No. 6:12-cv-01682-TMC, 2013 U.S. Dist. LEXIS 870, at *8 (D.S.C. 2013), the District Court

dismissed a complaint that merely alleged that Coca-Cola had been accused of deceptive business

practices in other instances, but the complaint failed to identify any specific deceptive business

practices complained of in the other matters.

*Ethox Chem* has no real relevance to the present case, as it has nothing to do with Maryland

Rule 2-322(e) in particular or motions to strike under Maryland law in general.    The facts of *Ethox*

*Chem.* are also distinguishable from the present case.    The allegations in FAC ¶¶ 21-22, unlike the

allegations of *Ethox Chem.*, are specific, and the FAC references publicly available dockets and filings, as well as the outcomes of relevant cases involving Bolog (as well as Defendants Postal and WTP).  These allegations are relevant to the causes of action Plaintiffs have asserted against WTP because Plaintiffs assert that these prior cases and the allegations therein should have caused WTP concern in hiring and thereafter supervising Bolog.  FAC, Count II and *passim*.  Taken as a whole, WTP knew (because they represented Bolog in some of those matters and/or were co-defendants with him) or should have known (because they were publicly available and Bolog was being sued at WTP's DC address) that they should have been suspicious of Bolog's financial dealings.  WTP was also sued in the same Bankruptcy proceeding in which Bolog was accused of converting bankruptcy assets.  FAC ⁋ 20(e) n. 1.  *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2) and *see* Case No.: 13-07009 (concerning Bolog).  Bolog settled the claims asserted against him in that bankruptcy matter, and WTP also settled and paid 100% of the claim asserted against it.  *Id*.  These allegations are also relevant in establishing that WTP, Bolog, and Defendant Postal all had a prior relationship with each other.  For that reason, these allegations are certainly not "improper, immaterial, [or] impertinent."

Finally, these allegations are not scandalous.  While Bolog asserts, without basis, that they are libelous,[3] Plaintiffs identify the sources of the information, providing citations to the publicly available dockets and case numbers, and describe those matters accurately.  (Bolog does not assert otherwise.)  Bolog was sued by a Chapter 7 Trustee for converting $50,000 of a debtor's assets in

---

[3] Bolog threatens Plaintiffs and their counsel with a baseless defamation action unless they remove the allegedly libelous statements from the FAC.  Plaintiffs' counsel recognize this threat for what it is; nonsense.  The statements are relevant to the allegations in the FAC, summarize publicly available information, and are statements in judicial proceedings that are subject an absolute privilege.

*In Re Brenda Kay Brown*.  *See* Case No.: 13-07009 in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division ("EDK Action").  WTP, who was also sued in connection with Bolog's behavior in that Bankruptcy, agreed to pay $50,000 to settle the Trustee's claims or 100% of the amount Bolog was alleged to have converted.  *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2); FAC ⁋ 20 n.1.  Plaintiffs also reference two lawsuits filed in September 2019, wherein Bolog was sued over his failure to pay two credit card balances, totaling approximately ***$90,000***, in which the American Express sued Bolog using his WTP office address.  FAC ⁋ 20(h) and (j).  Bolog entered a global settlement with American Express in 2022 (*i.e.* after he received the $10 million that Plaintiffs seek to recover in this case).  The fact that Bolog accrued $90,000 in credit card debt, which he failed to pay until after he obtained $10 Million from Plaintiffs, indicates that he was living beyond his means and was facing financial issues immediately prior to being retained by Ms. Engelhorn in February 2020.  All of these allegations are pertinent to Plaintiffs' claims against the Defendants, particularly the claims against WTP, so there is no basis for or need to strike the allegations that are the subject of Bolog's motion.

**B. Engelhorn has adequately pled jurisdiction in accordance with the Rules, and to the extent she has not, Plaintiffs request permission to omit Engelhorn's home address from public filings or leave to Amend and include Engelhorn's address.**

In filing this action, Plaintiffs provided counsel's street and city address in lieu of Engelhorn's street and city address.  Plaintiffs explicitly pled that Engelhorn is a resident of Tennessee and that Plaintiffs omitted her home address due to concerns about her safety, which Plaintiffs discussed, *supra*.  Plaintiffs believe Defendants already know Engelhorn's current home address and that, like the threat of a defamation action, this is just an attempt to intimidate Plaintiffs into abandoning their claims.  Nevertheless, Plaintiffs have no intention of hiding this information

8

from Defendants.  Inasmuch as the Defendants' argument asserts that they are unable to assess jurisdiction, it has no merit.  Defendants provide no explanation of how the inclusion of a specific street address in Tennessee within the pleadings or whether Engelhorn is in or near, for example, Knoxville, Memphis, Nashville, or Chattanooga, changes the jurisdictional calculus or prejudices them in any way.  Moreover, irrespective of where Engelhorn lives in the United States, Defendants cannot remove this action to Federal court.  "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] may not be removed if *any* of the parties in interest properly joined and served as defendants *is a citizen of the State in which such action is brought*."  28 U.S.C.S. § 1441 (b)(2) (emphasis supplied). The majority of the Defendants are either Maryland residents, business entities organized under Maryland law, and/or that have their principal place of business in Maryland or Maryland Trusts. In other words, some of the Defendants are Maryland citizens, and the Plaintiffs sued them in state court in Maryland.  Even if there were a basis for removal based on diversity of citizenship, which there is not, Defendants know (and the FAC states) that Engelhorn is a resident of Tennessee. Plaintiffs have properly pled in accordance with the jurisdiction of the Court, and the Defendants are not prejudiced.

Finally, if this Court finds the identification of Plaintiffs' Counsel's address in the pleading and the allegation that Engelhorn is a resident of Tennessee insufficient, Plaintiffs request leave to amend to provide Engelhorn's home address.  In the alternative, Plaintiffs request permission from this Court to omit Engelhorn's address from the public pleadings because she has disclosed her Tennessee residency in the FAC, her home address will be shared with the Defendants in discovery, and Defendants likely already know where she resides.

**C. The FAC states a claim upon which relief can be granted as to all counts challenged by the Bolog Parties.**

    1. <u>Plaintiffs have adequately pled fraud with respect to each Count where fraud is a necessary element.</u>

Although Md. Rule 2-305 generally requires that a complaint contain only "a clear statement of the facts necessary to constitute a cause of action," Maryland courts have long required parties to plead fraud with particularity. *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 527, 101 A.3d 467, 492 (2014). "The requirement of particularity ordinarily means that a plaintiff must identify who made what false statement, when, and in what manner (*i.e.*, orally, in writing, etc.); why the statement is false; and why a finder of fact would have reason to conclude that the defendant acted with *scienter* (*i.e.*, that the defendant either knew that the statement was false or acted with reckless disregard for its truth) and with the intention to persuade others to rely on the false statement." *McCormick*, 219 Md. App. at 528.

    *a) $10 Million "Gift"*[4]

Plaintiffs have adequately pled a fraud claim with respect to the $10 Million "gift," as the facts alleged in the FAC satisfy the required specificity set forth in *McCormick*:

> That, on or about **October 11, 2021**, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that **he needed something signed**. Defendant Bolog also stated that he needed the documents notarized... Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents **that were upside down**. Unbeknownst to Plaintiff, Defendant Bolog t**ricked Plaintiff into signing the JAREB Irrevocable Trust Agreemen**t dated October 11, 2021, a **Notice of Gift** for an irrevocable trust for Defendant Bolog's benefit and **wire instructions** to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, i.e., the JAREB Irrevocable Trust Agreement dated October 11, 2021. Defendant **Bolog did not explain the documents to Plaintiff**, **did not offer her the opportunity to first**

---

[4] In this Response in Opposition, Plaintiffs refer to the tortious $10 Million transfer of funds to Bolog and his trust as a "gift" solely as shorthand for ease of reference. Plaintiffs' use of the word "gift" is not a waiver or concession that the transaction was in any way a valid gift –it was not a valid gift.

**read them**, and **lulled her into believing the documents concerned routine matters** requiring her signature.  Plaintiff **Engelhorn trusted and relied on Defendant Bolog** and, as a result, signed the documents.  At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

FAC ⁋ 36 (emphasis added).  Also, "[t]hat Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, **namely that Plaintiffs Engelhorn and Trust intended to make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust**, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust." FAC ⁋ 41.

The Bolog Defendants argue that Engelhorn is presumed to have read and understood these documents because she signed them.  This general rule does not apply when an attorney instructs a client to sign a document because of the special relationship between attorney and client.  "[A] confidential relationship, by its nature, gives the confiding party the right to relax his or her vigilance to a certain extent and rely on both the good faith of the other party and that party's duty to disclose all material facts and, as a result, the confiding party has no duty to make inquiries until something occurs to make him or her suspicious."  *Frederick Rd. Ltd. Pshp. v. Brown & Sturm*, 360 Md. 76, 99, 756 A.2d 963, 975-76 (2000); *see also Meeks v. Dashiell*, 166 Md. App. 415, 430, 890 A.2d 779, 788 (2006), affirmed *Dashiell v. Meeks*, 396 Md. 149, 167-68. 913 A.2d 10, 20-21 (2006) (in a legal malpractice case, the former client is not presumed to have read and understood the contents of a document when the attorney assures the client that the document is ready for the

11

client's signature and advises the client to sign the document, so the general "signature" rule does not apply)

Plaintiffs have sufficiently pled Bolog's intentional misrepresentation and fraud with respect to the $10 Million "Gift," these being Count I ($10 Million "Gift" Fraud), Count VII (Breach of Fiduciary Duty), Count VIII (Recission of the $10 Million "Gift"); Count XVI (Unjust Enrichment).

### b) Science Park, Darnestown Road, and Swain Landing Transactions

Maryland law also recognizes fraudulent concealment claims.  The necessary elements of fraud by concealment are: "1) the defendant owed a duty to the plaintiff to disclose a material fact; 2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Lloyd v. GMC*, 397 Md. 108, 138 (2007) (quoting *Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d 1039 (1999)).  "Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure."  *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc*., 283 Md. 296, 323, 389 A.2d 887 (1978).  Such a duty may arise out of a fiduciary relationship.   *Id*. A fiduciary relationship "carries with it the requirement of utmost good faith and loyalty and the obligation of [the fiduciary] to make full disclosure of all known information that is significant and material to the affairs . . . of [the fiduciary relationship] . . . 'the principle of utmost good faith covers not only dealings and transactions occurring during the [fiduciary relationship] but also those taking place during the negotiations leading to the formation of the [fiduciary relationship].'"  *Id*. at 324 (quoting *Allen v. Steinberg*, 244 Md. 119, 128, 223 A.2d 240 (1966)).

12

An attorney-client relationship is such a fiduciary relationship.  "It is well settled that trust and confidence are basic to the attorney-client relationship.  A client is entitled to believe a lawyer who says 'I am your lawyer, why not trust me, I am a lawyer, I would not do anything that is wrong.'"  *Frederick Rd.*, 360 Md. at 101.  A client's right to rely upon his or her attorney's advice is "founded upon public policy, because the confidential and fiduciary relationship enables an attorney to exercise a very strong influence over his client and often affords him opportunities to obtain undue advantage by availing himself of the client's necessities, credulity and liberality."  *Id* (quoting *Hughes v. McDaniel*, 202 Md. 626, 633, 98 A.2d 1 (1953)).

> Thus, it is clear that the attorney-client relationship requires the attorney to act with the utmost good faith and loyalty, **which includes making known to the client all information that is significant and material to the matter that is the subject of the relationship**.  Notwithstanding the provisions of the Maryland Rules of Professional Conduct on the subject, and, indeed, **supplementary thereto**, the requirement of good faith and loyalty is deeply rooted in common law and equity principles, and, therefore, must be upheld as a principle that is rightfully relied upon by the public and integral to the proper function of our judicial system.  **It follows that a client has the right to rely on his or her lawyers' loyalty and to believe the accuracy and candor of the advice they give**.

*Frederick Rd.*, 360 Md. at 103 (footnote and internal citations omitted) (emphasis supplied).  This duty includes those imposed by MARPC 19-301.8(a) (prohibiting attorney-client business transactions absent a full disclosure in writing, an opportunity for independent counsel, and informed consent in writing signed by the client) and MARPC 19-301.8(c) (absolutely prohibiting the solicitation of gifts from clients and/or the attorney's participation in drafting documents to facilitate gifts from clients); MARPC 19-301.4(a)(1) ("[a]n attorney shall . . . promptly inform the client . . . of any circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(g) (1.0), is required by these Rules) and MARPC 19-301.4(b) ("[a]n attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"); and MARPC 19-301.0(g)("'[i]nformed

13

consent' denotes the agreement by a person to a proposed course of conduct after the attorney has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.")

In the present case, the Plaintiffs have pled the existence of a confidential, fiduciary relationship between Engelhorn and Bolog, both because Bolog was her attorney and because Bolog was the co-trustee of the Whitewater Trust. Bolog had an affirmative duty, therefore, to make certain disclosures to the Plaintiffs before funneling their money into Science Park, Darnestown, and Swain Landing. Engelhorn had a right to relax her guard and rely on Bolog's duty to disclose and had a right to assume he would act in her best interests. This same duty extended to the $10 Million "Gift." Plaintiffs have adequately pled that Bolog breached his duties with respect to each of the four primary transactions at issue in the FAC. In fact, Plaintiffs allege that Bolog never disclosed his personal interests in said transactions.[5] Because Bolog had a duty of disclosure, and he failed to make the required disclosures, Plaintiffs have adequately pled fraud by concealment and by intentional misrepresentation, such that the Bolog Defendants' motion must be denied.

Defendants also allege that Plaintiffs have failed to plead that Bolog concealed the Science Park, Darnestown, and Swain Landing transactions (and his interests therein) "for the purpose of defrauding Plaintiffs." The FAC explicitly alleges, however, that "Bolog intentionally failed to disclose his" roles and interests in the various investment vehicles because if he had done so,

---

[5] In their Motion the Bolog Defendants make a series of unsupported contentions that Plaintiffs were in fact fully informed about these transactions, Bolog's interest therein, etc. On a motion to dismiss, however, the question is whether the allegations in the complaint adequately state a claim, which they do.

Plaintiffs would not have allowed him to transfer the funds to Bolog's various failing ventures. FAC ⁋⁋ 95-96, 102-103, 110-111.

The Bolog Defendants also seem to briefly challenge Plaintiffs' articulation of damages. Defs.' Mot. at 18.  On Darnestown, the Bolog Defendants assert that Plaintiffs have failed to plead precisely what amount is owed.  Defendants' argument is undercut by a cursory reading of the FAC.  While an allegation of a precise number, or dollar amount, of damages is not required to state a claim,[6] Whitewater Trust expressly asserts that the entire $350,000 transaction was fraudulent; it should have never occurred, and so "Plaintiffs suffered damages of at least $350,000." FAC ⁋⁋ 103-104.  The Bolog Defendants also assert, with regard to Science Park, that Plaintiffs received a 9% return on the original loan amount.  Plaintiffs allege, however, that the Bolog Defendants failed to make the required monthly interest payments, and Plaintiffs never received any of the assigned leases and rental income.  FAC ⁋⁋ 50 and 61.  Plaintiffs also allege that they lost the use of the funds seized and funneled to Science Park by Bolog.  FAC ⁋ 97.  For these reasons, Counts I, III, IV, V, and XVII and, by extension, all other Counts against the Bolog Defendants, (as all rely in whole or in part on the same fraudulent conduct) sufficiently state a claim and the Bolog Defendants' motion must be denied.

2. <u>Plaintiffs have sufficiently pled Count VI, Legal Malpractice-Negligence against Bolog.</u>

As set forth, *supra*, Plaintiffs have pled that Bolog intentionally breached the standard of care with respect to his representation of the Plaintiffs, *i.e.*, gifting himself $ 10 million and using Plaintiffs funds to support his failing investment vehicles absent informed consent.  These

---

[6] "[D]amages which necessarily result from the wrong complained of may be shown under a general allegation, and, ordinarily, only special damages need be more particularly set forth." *See Rein v. Koons Ford, Inc.*, 318 Md. 130, 141 (1989) (citations omitted).

allegations are sufficient to plead Bolog's neglect of a reasonable duty, and Count VI provides an alternative theory that Bolog conducted these acts not intentionally but negligently (however unlikely that may be).  Additionally, Plaintiffs assert negligent breaches of the standard of care, such as failing to advise Plaintiffs that they would owe gift taxes on the $10 Million transfer, that in lieu of paying gift taxes, the $10 million transfer would exhaust most of her lifetime gift exemption, and generally failing to competently conduct due diligence into the proposed investments and transfers at issue.  FAC ⁋ 118.  As such, Plaintiffs have adequately stated a claim for Legal Malpractice/Negligence in Count VI.

Bolog devotes the remainder of their argument with respect to Count VI to asserting that the documents Bolog helped, along with other WTP attorneys, to prepare and had Engelhorn sign (without independent counsel) had no legal force and effect, and the "gift" was facilitated by a phone call that Bolog asserts occurred between Engelhorn and Bank of America.  The FAC does not allege that Engelhorn called Bank of America, and Bolog's factual assertions are unsupported, as well as unsworn, and have no bearing on whether the FAC alleges facts sufficient to state a claim.  Even assuming *arguendo* that such a call occurred; moreover, it would have undoubtedly taken place under false pretenses created by Bolog.

Bolog concludes his argument on Count VI by asserting that he did not *solicit* the $10 Million "Gift" and that he merely passively received the $10 million.  Once again, the Bolog Defendants make unsupported and unsworn allegations of fact, but ironically, Bolog does not deny that he had a role in drafting the Notice of Gift and "related documents."  That conduct alone violates MARPC 19-301.8(c)("An attorney shall not solicit any substantial gift from a client, including a testamentary gift, *__or__* **prepare** on behalf of a client **an instrument** giving the attorney or a person related to the attorney **any substantial gift** unless the attorney or other recipient of the

gift is related to the client.")[7]; see also MARPC 19-301.8, Comment 6 (treating substantial gifts

from clients to their attorneys as "as presumptively fraudulent."). Thus, as a matter of law, even

if Bolog's recitation of the events surrounding the $10 Million "Gift" were accurate (it is not), the

transfer is "presumptively fraudulent," and Bolog violated MARPC 19-301.8(c) when he engaged

in this transaction.

"To prevail on a claim for legal malpractice, a former client must prove "(1) the attorney's

employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately

caused by that neglect of duty." *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 239,

992 A.2d 413, 418 (2010) (quoting, *Thomas v. Bethea*, 351 Md. 513, 528–29, 718 A.2d 1187, 1195

(1998)). The FAC adequately pleads that Bolog breached the applicable standard of care in many

ways and that his breaches were a proximate cause of damages. The facts alleged in the FAC,

therefore, are sufficient to plead a cause of action for legal malpractice.

       3.   <u>Plaintiffs have sufficiently pled Count VII (Breach of Fiduciary Duty).</u>

As set forth, *supra,* Plaintiffs have pled that they were in a confidential, fiduciary

relationship with Bolog by virtue of his being Engelhorn's attorney and his serving as Engelhorn's

co-trustee on the Whitewater trust. For the same reasons asserted, *supra.* Plaintiffs have

sufficiently pled that Bolog breached his fiduciary duty by engaging in the transactions at issue

and concealing information that he was required to disclose to Plaintiffs by virtue of his

confidential relationship with Plaintiffs.[8]

---

[7] The District of Columbia and Virginia contain substantially the same prohibitions on attorney's
drafting legal documents to facilitate a gift to the attorney absent a familial relationship.

[8] Throughout their Motion, but in this section in particular, the Bolog Defendants intentionally
misrepresent the allegation in FAC ⁋ 37 which provides that the "Notice of Gift prepared by
Defendant Bolog falsely represents that Defendant Bolog 'begged' Plaintiff to retain independent
counsel to provide her with independent legal advice with respect to the $10 million gift." *Id*. The

As the Supreme Court of Maryland has held:

> To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." (Citations omitted). . . . If a plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach is alleged, a court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct. This is consistent with our pleadings practice as established by the Maryland Rules. See Maryland Rule 2-303(c).

*Plank v. Cerneski*, 469 Md. 548, 599. 231 A.3d 436 (2020).

For the same reasons as apply to Counts I, III, IV, and V, Plaintiffs have adequately stated a claim for Breach of Fiduciary Duty in Count VII.

      4.   <u>Counts VIII, XV, and XVI each adequately state a claim because they all stem from Bolog's fraud, whether by intentional misrepresentation or by concealment, concerning the $10 Million "Gift."</u>

The fraudulent conduct set forth with respect to the $10 Million "gift" is sufficient to support Count VIII (Recission of the $10 Million "Gift"), Count XV (Declaratory Judgment), and XVI (Unjust Enrichment). However, the intentional misrepresentations addressed in Count I, while sufficient, are not necessary to plead or prove recission, entitle Plaintiffs to declaratory relief, or obtain a finding of unjust enrichment. "[W]here a gift is obtained by fraud, undue influence, or imposition exerted by the donee, the donor may recover it on the principle that no man should be permitted to secure any benefit from his own wrongful act." *Funger v. Somerset*, 244 Md. 141, 154, 223 A.2d 168 (1966) (citing *Myers v. Myers*, 185 Md. 210, 219, 44 A.2d 455 (1945)). A substantial gift from an attorney to their client is "presumptively fraudulent." MARPC 19-301.8,

---

Bolog Defendants repeatedly misrepresent this section, for example by asserting "Plaintiffs acknowledge that Mr. Bolog never solicited a gift from Ms. Engelhorn and 'begged' her to seek different counsel…" Defs. Mot. 21. This is a blatant misrepresentation and such efforts to mislead this Court should not be countenanced.

Comment 6.    In situations "such as attorney-client or trustee-beneficiary, a confidential relationship is, indeed, presumed as a matter of law." *Upman v. Clarke*, 359 Md. 32, 42, 753 A.2d 4 (2000).  "In the case of an *inter vivos* gift, the existence of a confidential relationship shifts the burden to the donee to show the fairness and reasonableness of the transaction." *Id*.  Once the confidential relationship is established, "the plaintiff is relieved from the necessity of proving the actual exercise of overweening influence, misrepresentation, importunity or fraud, and the defendant has the burden of showing that a fair and reasonable use has been made of the confidence, that the transfer of the property was the deliberate and voluntary act of the grantor and that the transaction was fair, proper and reasonable under the circumstances." *Sanders v. Sanders*, 261 Md. 268, 276-77, 274 A.2d 383 (1971) (internal citations and quotations omitted).  This is a heavy burden, requiring the defendant to establish "by clear and convincing evidence that there has been no abuse of the confidence." *Upman,* 359 Md. at 43. "[W]here a confidential relationship exists, the courts will not allow a transaction between the parties to stand unless there is a full and fair explanation of the whole transaction." *Upman,* 359 Md. at 439 (quoting *Green v. Michael*, 183 Md. 76, 85, 36 A.2d 923 (1944)).

Plaintiffs have pled facts sufficient to establish that Defendant Bolog was in a confidential relationship with Engelhorn and other Plaintiffs by virtue of his attorney-client relationship and his position as co-trustee.  As set forth herein above, the existence of this relationship places a "heavy burden" on the Bolog Defendants to justify the fairness of the $10 Million "Gift" (as well as Bolog's transactions with Science Park, Darnestown, and Swain Landing).  If the Bolog Defendants do not successfully bear the burden of production and the burden of persuasion with the factfinder on this issue, Plaintiffs will be entitled to rescission of the "gift," a declaratory

judgment, and recovery on their unjust enrichment claim.  Plaintiffs have, therefore, sufficiently

alleged an entitlement to the relief requested by Counts VIII, XV, and XVI.

> 5. <u>The Bolog Defendants, by their own admission, do not have standing to seek the Dismissal of Counts XIII and XIV.</u>

Counts XIII and XIV seek statutory and common law liquidation of Swain Landing.  The

Bolog Defendants attempt to distance themselves from these transactions, as they argue that the

FAC "is devoid of any factual allegations necessary to connect Mr. Bolog with Swain Landing"

and "Mr. Bolog has absolutely nothing to do with Swain Landing and never has—and nothing in

the [FAC] suggests otherwise."  Bolog Defs.' Mot.   22. In a paradox, however, the Bolog

Defendants then assert that Counts XIII and XIV must be dismissed as to Swain Landing.   If the

Bolog Defendants' own contention that they have "absolutely nothing to do with Swain Landing

and never [have]" were true, then the Bolog Defendants would lack standing to seek dismissal for

this entity.  While this is a false statement by the Bolog Defendants, "Maryland has long recognizes

the doctrine of estoppel by admission, derived from the rule . . . that '[a] man shall not be allowed

to blow hot and cold, to claim at one time and deny at another.'"  *Eagan v. Calhoun*, 347 Md. 72,

88, 698 A.2d 1097 (1997) (citations omitted).  "Generally speaking, a party will not be permitted

to maintain inconsistent positions[.]"  *Id.*  Counsel for the Bolog Defendants, moreover, have not

entered their appearance for Swain Landing.  Thus, the Court must deny the motion inasmuch as

it seeks the dismissal of claims in which Plaintiffs seek the liquidation of Swain Landing.

> 6. <u>Counts XVII, XVII, and XIX concerning Science Park are sufficiently pled.</u>

In Counts XVII (Fraudulent Conveyance), XVIII (Fraud), and XIX (Unjust Enrichment),

Plaintiffs assert claims against the Bolog Defendants stemming from the Science Park

embezzlement.  The Bolog Defendants assert that Plaintiffs have not pled that they suffered

damages as a result of the Science Park transaction.  To the contrary, Plaintiffs allege that the Bolog

Defendants failed to make the required monthly interest payments, and that Plaintiffs never received any of the assigned leases and rents. FAC ⁋⁋ 50 and 61. Plaintiffs also assert that they lost the use of the funds seized by Bolog and funneled by Bolog to Science Park. FAC ⁋ 97.

The Bolog Defendants also provide the elements of unjust enrichment and cite *Hill v. Cross Country Settlements*, LLC, 402 Md. 281, 295, 936 A.2d 343 (2007), but they do not assert which element is supposedly missing from the FAC. Plaintiffs have pled that Bolog was a member of Science Park. FAC ⁋ 11. As such, when he committed fraud and transferred funds to Science Park, his knowledge could be imputed to Science Park. "One of the general principles of an agency relationship is that the "knowledge of the agent is knowledge of the principal." *Anderson v. General Cas. Ins. Co.,* 402 Md. 236, 248, 935 A.2d 746, 753 (2007). An entity, such as Science Park "can only act through its agents," and notice to an agent is notice to the entity, and the knowledge or an officer or other agent of with regard to transactions is "imputable to" the entity. *Mercy Medical Center v. United Healthcare of the Mid-Atlantic, Inc.*, 149 Md. App. 336, 366-67, 815 A.2d 886 (2003). So, when Science Park received the Plaintiffs' funds, failed to make the required monthly payments of approximately $12,000, and failed to forward collected rents to Plaintiffs, Science Park was retaining those benefits under circumstances that would render retention inequitable.

7.   Count X states a claim for Constructive Trust as to Darnestown Road.

A constructive trust converts the holder of legal title to property into a trustee for one who, in good conscience, should reap the benefits of the property. *Porter v. Zuromski*, 195 Md. App. 361, 368, 6 A.3d 372 (2010). A constructive trust may be imposed by the court where property was acquired through an improper method or a breach of a confidential relationship, *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980) or where there is a "higher equitable call" on

21

that property by the complaining party. *Starleper v. Hamilton*, 106 Md. App. 632, 640, 666 A.2d 867 (1995).

As set forth, *supra*, Plaintiffs allege that Darnestown acquired the Plaintiffs' funds improperly through Bolog's breach of his confidential relationship with the Plaintiffs and his fraudulent conduct regarding the same.  Assuming the facts pled in the FAC by Plaintiffs are true, Plaintiffs have stated a claim for a constructive trust on any monies Darnestown received from them.

8. <u>Count IX states a claim against the JAREB Trust for Constructive Trust.</u>

For the same reasons set forth in the immediately preceding section, Plaintiffs have pled an entitlement to a constructive trust with respect to the $10 Million "Gift" to JAREB stemming from the improper method by which it obtained $10 Million.

In a footnote, the Bolog Defendants seek dismissal of Count IX (but not of any other Counts against JAREB) on the grounds that "the Amended Complaint does not identify JAREB as a defendant in the case caption and does not list JAREB in the parties section of the Amended Complaint.  Moreover, it does not appear that a summons was issued for, much less served on, JAREB."  Bolog Defs. Mot. at n.1. Defendants are mistaken; Plaintiffs sued Bolog individually and as Trustee for the JAREB Irrevocable Trust.  "A trust exists where the legal title to property is held by one or more persons, under an equitable obligation to convey, apply, or deal with such property for the benefit of other persons." *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church, Mid-Atl. II Episcopal Dist.*, 370 Md. 152, 181-82, 803 A.2d 548 (2002).  "At common law, neither a trust nor a trustee in its representative capacity could sue or be sued." *Hector v. Bank of N.Y. Mellon*, 473 Md. 535, 552, 251 A.2d 1102 (2021).  Over the years, the approach has changed.  "[T]he modern approach thus allows a third party to assert a

claim against a trust by proceeding against a trustee in its representative capacity…" *Hector v. Bank of N.Y. Mellon*, 473 Md. 535, 553, 251 A.2d 1102 (2021).  In the present case, the Plaintiffs have properly sued JAREB by suing Bolog in his capacity as the Trustee for JAREB, and as such, the Plaintiffs have sued JAREB, and JAREB is a party to this action.[9]

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs have adequately pled both fraud by intentional misrepresentation and by concealment.  Plaintiffs have alleged that all of the challenged fraudulent transactions occurred within the context of a confidential, fiduciary relationship, both because Bolog was Plaintiffs' attorney and because he was their Trustee.  Under the circumstances alleged, Plaintiffs have adequately stated all of their claims for relief against the Bolog Defendants.  The Bolog Defendants also have no standing to seek the dismissal of claims against Swain Landing.

There is also no basis to strike the allegations challenged by the Bolog Defendants under Md. Rule 2-322(e), as the allegations are true, based on existing publicly available Court records, and are relevant and material to the claims asserted in this matter (particularly against WTP).  The Bolog Defendants also have not, and cannot, articulate any prejudice that would result if Engelhorn's residential address was not disclosed in the FAC.  Plaintiffs have pled that Engelhorn is a resident of Tennessee, and Plaintiffs will disclose her address to the Defendants.  Plaintiffs request that this Court deny the Bolog Defendants' motion in its entirety.

---

[9] The Summons was issued to "Erik D. Bolog, Trustee" and directed to his address "The Bolog Group 1763 Columbia Road, NW Suite 450N, Washington, DC 200018."  Plaintiffs do not control the detail on the summonses issued by the Clerk's Office, but it adequately identifies Bolog as Trustee.  Frankly, this assertion is disingenuous inasmuch as Bolog's counsel agreed to accept service for Bolog, both in his individual capacity and as Trustee for JAREB.

Respectfully submitted:

      /s/ *WPH* (AIS# 0212180062)    
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*


## HEARING REQUESTED

Plaintiffs respectfully request a hearing on all issues raised in the Bolog Defendants' Motion, Plaintiffs' Response in Opposition thereto, and any other document filed with respect to the same.


      /s/ *WPH* (AIS# 0212180062)    
Wes P. Henderson, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th  day of December 2024, a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

25

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*


     /s/ *WPH* (AIS# 0212180062)
Wes P. Henderson, Esq.

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
WHITEFORD, TAYLOR & PRESTON, LLP'S MOTION TO DISMISS**
**(Hearing Requested)**

Plaintiffs, by and through their undersigned counsel, file this Response in Opposition to

Defendant Whiteford Taylor & Preston, LLP's Motion to Dismiss, and respectfully state as

follows:

## I.   <u>INTRODUCTION</u>

This Court should deny Whiteford Taylor & Preston, LLP's ("WTP") Motion to Dismiss.

Plaintiffs have sufficiently pled all causes of action in their First Amended Complaint ("FAC"),

including those that sound in fraud, against WTP.  Most of the Counts against WTP assert that

WTP is vicariously liable to the Plaintiffs for Defendant Bolog's actions under the doctrine of

*respondeat superior.*  These are Counts I ($10 Million Fraud), Count III (Science Park Investment

Fraud), IV (Darnestown Road Investment Fraud), V (Swain Landing Investment Fraud), and VII

(Breach of Fiduciary Duty).  Plaintiffs have adequately pled Bolog's fraud, with the required

specificity, in the FAC, and Plaintiffs have pled that Bolog was acting in the course and scope of

his employment when he engaged in the tortious conduct at issue.  Plaintiffs have also pled that at

all times relevant to the FAC, Bolog was acting as the actual or apparent agent of WTP and that

he made representations to the public, including Plaintiffs, to this effect upon which Plaintiffs

reasonably relied.   The existence and scope of an agency relationship, either actual or apparent, is

a question of fact that is almost always for the jury to decide.   It may be appropriate, in unusual

cases, for courts to grant motions for summary judgment, or motions for judgment during or at the

end of trial on the factual issue of agency.   It is not appropriate, however, for courts to grant

motions to dismiss based on issues of the existence and scope of agency relationships when

Plaintiffs have alleged the existence of an agency relationship and have alleged that tortious acts

were within the scope of the agency relationship.

Plaintiffs also asserted counts in the FAC in which they alleged that WTP is liable for its

own conduct as a law firm that employed Bolog and enabled Bolog to pursue his nefarious actions.

These are Counts II (Negligent Hiring and Retention of Bolog) and XX (Aiding and Abetting

Breaches of Fiduciary Duty).   In the FAC, Plaintiffs have adequately pled facts that, if proven true,

would establish WTP's liability, irrespective of whether Bolog was acting within the course and

scope agency with WTP.

Finally, Count VI (Legal Malpractice/Negligence) alleges that WTP is liable not only

because of Bolog's actions but also because of the negligence of other attorneys employed by

WTP.   In the motion to dismiss, WTP does not allege that it is not legally responsible as the

principal/employer for the actions of its attorney other than Bolog, and WTP concedes that the

FAC alleges that "four Whiteford lawyers," three lawyers in additional to Bolog, were negligent.

(*See*, WTP Memorandum at p. 32.)   WTP repeatedly contends in a conclusory manner that the

multiple other lawyers it employed who represented Engelhorn and/or the other Plaintiffs "were

deceived by Mr. Bolog into creating [the] trust instrument" that gives rise to some of the claims in

the FAC and that is other attorneys "were deceived by Mr. Bolog about the trust instrument they

drafted[.]"  (*See*, WTP Memorandum at p. 6, footnote 4, and p. 32.)    WTP admits, however, that

2

the FAC alleges that Mr. Bolog acted "with the assistance of other lawyers" at WTP in connection

with the legal malpractice, breach of fiduciary duty, and fraud he committed.   (*See*, WTP

Memorandum at p. 6, quoting the FAC at ¶35.)   This Court cannot resolve this dispute of fact

between the allegations of the FAC and WTP's contrary contentions in ruling on a motion to

dismiss.   Even if WTP's contention that its three other attorneys allowed Bolog to manipulate and

deceive them, and thus that WTP allowed Bolog to manipulate and deceive it, are true, moreover,

WTP could still be found liable for negligence for not taking adequate steps to make and keep

itself aware of Bolog's tortious conduct.

## I.   <u>APPLICABLE LAW</u>

### A.  Motion to dismiss for failure to state a claim

A long line of Maryland cases has consistently affirmed the fact that in ruling on a motion

to dismiss (or, in earlier cases, ruling on a demurrer), both the trial court and the reviewing

appellate court shall assume to be true not only all of the well pleaded facts in the complaint but

also the inferences which may reasonably be drawn from those well pleaded facts.   *Simms v.

Constantine*, 113 Md. App. 291, 295 (1997) (citations omitted.)  See, also, *Warner v. Lerner*, 348

Md. 733, 735, 741 (1998); E*dwards v. First National Bank of North East*, 122 Md. App. 96, 102-

03 (1998); and *Flaherty v. Weinberg*, 303 Md. 116, 136 (1985).

"In characterizing the prism or lens through which both the trial court and the appellate

court should examine a complaint that is being subjected to a motion to dismiss (citation omitted),

[Maryland's appellate courts have] explained that the complaint need not specify with minute

particularity every fact that need ultimately be proved.   It is enough that the complaint state with

reasonable certainty the cause of action . . ." but a general statement of the facts is sufficient.

*Simms*, 113 Md. App. 291 at 295.  It is not necessary to state minutely all the circumstances which

may conduce the general charge, as these circumstances are matters of evidence which need not

be recited to enable them to be admitted as proof.  Even though every particular circumstance is

not stated, the [complaint] will be held sufficient if it states the complaint with reasonable certainty,

clearness and accuracy so as to apprise the defendant of the nature of the claim brought against

him." *Simms*, 113 Md. App. at 295-96 (citations omitted.)  Stated otherwise, motions to dismiss

"are solely to provide a minimization test for a cause of action either where a question of law may

be decisive of litigation or the facts alleged do not constitute a cause of action.  The "precise rubric"

itself provides that a mere informal statement of a cause of action will suffice . . ." *Flaherty*, 303

Md. at 136 (citation omitted).

"A freely acknowledged slant in support of sustaining the viability of the complaint is,

moreover, mandated at this state of the proceedings on this particular issue (the pre-trial dismissal

of a complaint).  A denial of a motion to dismiss a complaint says nothing about the merits of the

complaint.  It only establishes that the complaint states a cause of action that is entitled to a full

evidentiary examination to see to what extent the allegations may be true." *Simms*, 113 Md. App.

at 297.  Thus, it is axiomatic that in connection with responding to a motion to dismiss, a party "is

not required to prove the commission of the [causes of action] claimed, but only to allege their

elements with sufficient specificity."  *Cooper v. Bikle*, 334 Md. 608, 618 (1994).  "The motion to

dismiss should be evaluated on the pleadings alone," and it is "an inappropriate inquiry during the

hearing on a motion to dismiss" for the trial court to evaluate the nature or sufficiency of the

evidence supporting the allegations of the pleading. *Howard Cnty. v. Connolley*, 137 Md. App. 99, 113-14 (2001).[1]

## II.    PERTINENT ALLEGATIONS

### A. Vicarious Liability Under the Doctrine of *Respondeat Superior*

Plaintiffs allege that at all times relevant to the FAC, "Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein." FAC ¶6. "Defendant Bolog …[was] the actual and/or apparent agent[ ] of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them." *Id*. Plaintiffs also allege "Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP" at all times relevant to the FAC. FAC ¶7. "[A]t all times relevant hereto, Defendant Bolog was an attorney . . . practicing law with WTP, and was a Senior Counsel and/or Partner at WTP. FAC ¶18. WTP has a long-standing relationship with Bolog, including serving as his attorney, co-counsel, and employer. FAC ¶ 19.

Engelhorn retained WTP to represent her in a legal dispute. FAC ¶24. "WTP assigned [] Bolog to work on [] Engelhorn's legal dispute and . . . WTP permitted him to do so." FAC ¶25. The settlement proceeds of Engelhorn's legal dispute were wired into WTP's IOLTA Account. FAC ¶28. Other WTP lawyers billed Engelhorn for drafting documents to create a revocable trust, which is believed to be the Whitewater Revocable Trust. FAC ¶30. Bolog and/or other WTP attorneys created a bank account for the Whitewater Trust and used WTP's office address to receive

---

[1] A trial court also should not convert a motion to dismiss into a motion for summary judgment, even at the request of one of the parties, unless both parties have been given a reasonable opportunity to develop their evidence prior to the hearing, which in a civil case such as the instant case requires discovery on factual issues. *Howard County*, 137 Md.App. at 935. As WTP acknowledges. "Plaintiffs have already served extensive document requests, interrogatories, and requests for admission" on WTP. (*See*, WTP Memorandum at p. 18, footnote 6.)

account statements.  FAC ¶31. Bolog, individually and as an agent for WTP, coordinated the

delivery of the settlement proceeds via wire into WTP's IOLTA Account. FAC ¶32.  On September

30, 2021, Engelhorn, with legal representation provided by Bolog and other WTP lawyers,

established the Whitewater Trust and named Bolog as a Trustee. FAC ¶33. "Attorneys at [] WTP

had drafted the Whitewater Revocable Trust dated September 30, 2021." FAC ¶33. On or around

October 11, 2021, WTP (presumably directed by Bolog) wired $11,000,000 into Engelhorn's

personal Bank of America Account and the remainder of the settlement funds into an account

Bolog and WTP previously established for the Whitewater Trust. FAC ¶34.

 Plaintiffs have pled that prior to and at the time of the alleged wrongdoing, Bolog was a

partner or senior attorney at WTP, *supra*.  It goes without explanation that attorneys represent

clients in exchange for compensation and generate receivables for their respective firms.  Bolog

also coordinated the transfer of funds into and out of WTP's IOLTA Account, coordinated and

participated in the drafting and creation of trusts, opened bank accounts for trusts, and received

bank statements for trust clients, including the Plaintiffs in this case, *supra.*  Plaintiffs have pled

that WTP "not only knew or should have known of the risks associated with having [] Bolog

oversee client monies" but that WTP also "actually placed him in a position to misuse such

monies[.]" FAC ¶23.  Plaintiffs have also alleged that WTP permitted Bolog to utilize his WTP

email to communicate with banks and to utilize WTP's DC office as the general address for entities

that are involved in this action and as the address at which he received bank account statements

for entities that are involved in this action. FAC ¶¶31, 57, 62.

With regard to the $10,000,000 "Gift"[2], Plaintiffs allege that Bolog, with the assistance of other attorneys at WTP, drafted and created the JAREB Irrevocable Trust.  FAC ¶35. WTP charged the Plaintiffs for the time spent by both Bolog and the other WTP attorneys in drafting the documents necessary to establish JAREB.  *Id*.  Plaintiffs alleged that in so doing, "WTP . . . facilitated" Bolog's tortious conduct "by drafting documents that made him the trustee for the two separate trusts identified herein."  FAC ¶23.  Plaintiffs allege that "at all times relevant to this Complaint" Engelhorn and the Whitewater Trustee "maintained an attorney client relationship with [] Bolog, []WTP, and other lawyers at []WTP."  FAC ¶114.  Plaintiffs recount details of time entries of the other three attorneys at WTP, which WTP represented to Plaintiffs were accurate when WTP included these time entries in an invoice it provided to Plaintiffs.  FAC ¶¶35, 114.

Bolog arranged for the $10 Million to be transferred from Engelhorn's personal bank account and into an account owned by JAREB.  FAC ¶35.  It is a reasonable inference that Bolog created the JAREB account just as he created the Whitewater account, *supra*.  WTP billed Engelhorn for Bolog's time on October 7, 2021, when he sent the trust agreement to Bank of America to confirm that it was in a form acceptable to Bank of America.  FAC ¶114(f).  Bolog then traveled to Cape Cod, obtained a Notary, and had Engelhorn sign the JAREB documents in the presence of a Notary.  FAC ¶36.[3]  Bolog had done the same for the Whitewater Trust, albeit the execution did not occur in Cape Cod.  A reasonable inference can be drawn that Bolog emailed the

---

[2] Herein, Plaintiffs use the term "gift" as a shorthand for the transaction wherein Bolog obtained the $10 Million at issue, as a shorthand.  Plaintiffs in no way are conceding that the transfer was a valid gift.

[3] While not specifically alleged in the FAC, Bolog routinely traveled around the Country to meet with Engelhorn in person as a part of the course and scope of his employment at WTP.  The Retainer Letter envisions Bolog traveling via airline (business class only) and requiring Engelhorn to reimburse him for travel expenses.  Def.' Ex. A(14).  Additionally, WTP asserts that Bolog and Mr. Foster flew to Denver to meet Engelhorn to sign the engagement agreement.  *See, e.g.*, Def.' Ex. A.

7

signed wire instructions and trust documents to Engelhorn's bank to effectuate the transfer since the money was, in fact, transferred.

With regard to the misuse/embezzlement of Plaintiffs' funds for Bolog and his friend's business ventures, Plaintiffs allege that Bolog, who was one of Engelhorn's attorneys at WTP and also a trustee of her Trust, used the Plaintiffs' funds to prop up or bail out entities that he either owned or in which he or his friends had an interest.  With respect to Science Park, Bolog drafted or caused to be drafted a promissory note.  FAC ¶52.  Bolog drafted assignments of rents for this transaction.  FAC ¶50.  Bolog directed Whitewater's Bank to wire $3,352,650 from the Trust's account to pay off Science Park's indebtedness.  FAC ¶51. Bolog failed to record the Deed of Trust, which would have secured the supposed loan.  FAC ¶54.  Shore United Bank corresponded with Bolog at WTP's DC office regarding the payoff of Science Park's indebtedness to Whitewater. FAC ¶57.  Another WTP employee, Alexandria L. Neiferet, wrote an email stating that the payoff for Whitewater's Note was $3.6 Million. FAC ¶59.

With respect to Darnestown Road, Inc., a Defendant in this case, Plaintiffs allege "Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the [Whiteater's] bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown..."  FAC ¶62. As a result of these instructions, the Bank issued a payment of $350,000 to Darnestown.  FAC ¶63.

With respect to Swain Landing LaPlata JC, LLC, a Defendant in this case, *supra*, Plaintiffs allege it was owned by Defendant Postal, a long-time friend of Bolog's, and a client of WTP's and Bolog's.  FAC ¶¶71 and 20(c), (f).   Swain Landing's operating agreement identified its address as WTP's DC office located at 1800 M Street, Suite #450 N. FAC ¶ 12.  White Pearl, a Plaintiff in this case, *supra*, is a limited liability company in which Engelhorn is the sole member.  FAC ¶3. Postal sent Bolog an email at Bolog's WTP email address which merely contained the number

8

$585,000 and Swain Landing's account and routing numbers.  FAC ¶69. In response to Postal's

email, Bolog emailed White Pearl's bank from his WTP email address, stating White Pearl "is

making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing],

relating to a real estate investment."  FAC ¶72.  The Bank, following the instructions in Bolog's

email, transferred $585,000.00 from White Pearl's account to an account maintained by Defendant

Swain Landing. FAC ¶74.

## III.   ARGUMENT

### A. Plaintiffs have satisfied the heightened pleading requirement for causes of action sounding in fraud, with respect to Bolog.

Plaintiffs allege that Defendant Bolog committed various acts of fraud against them, all

while acting within the course and scope of his employment at WTP.  These are Counts I ($10

Million Fraud), Count III (Science Park Investment Fraud), IV (Darnestown Road Investment

Fraud), and V (Swain Landing Investment Fraud).  WTP does not assert that Plaintiffs have failed

to plead fraud as to Bolog with the required specificity, nor could they because Plaintiffs explain

such in detail.  Instead, WTP's argument is, effectively, that Plaintiffs have failed to plead facts

sufficient to establish WTP's vicarious liability under the doctrine of *respondeat superior* liability

under the ordinary pleading standard.  As explained below, Plaintiffs have alleged facts, which this

Court must assume to be true and from which this Court must draw all reasonable inferences in

favor of Plaintiffs to establish WTP's vicarious liability under the doctrine of *respondeat superior*,

irrespective of whether the law of Maryland or the law of the District of Columbia applies to these

claims.

**B. Maryland substantive law applies to Plaintiffs' tort claims against the Defendants under *lex loci delecti*.**

> Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in torts. *Lex loci delicti* dictates that "when an accident occurs in another state substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." ... As a general rule, the place of the tort is considered to be the place of injury…
>
> The place of injury is also referred to as the place where the last act required to complete the tort occurred. See RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (stating that the "place of wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place")[.]

*Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744-46, 752 A.2d 200 (2000)(case citations omitted).

In the present case, the last place where each harm occurred was in Maryland.  For example, each of the entities through which Bolog is alleged to have embezzled assets were organized under Maryland law, with their principal places of business located in Maryland.   With respect to the $10 million "gift," the last act necessary to complete the torts stemming from it occurred when Bolog transferred the $10 million into the JAREB Trust, which is located in Maryland and organized under Maryland law.  WTP's *respondeat superior* liability stems from Bolog's tortious conduct.  And for the Counts which do not stem from Bolog's conduct, WTP's headquarters and principal place of business is located in Maryland, and so WTP's Negligent hiring/retention (Count II), Aiding and Abetting (Count XX) and its direct Legal malpractice (Count VI) all concluded in Maryland.

The laws of the District of Columbia and Maryland are very similar, and the result is the same whether in this case proceeds under either District of Columbia or Maryland law.  In fact, the District of Columbia's common law is derived from Maryland's, and the District of Columbia looks to Maryland law as persuasive authority when there is no controlling District of Columbia authority on a matter.  *See Solid Rock Church, Disciples of Christ v. Friendship Public Charter*

10

*School, Inc.*, 925 S.2d 554, 561 (D.C. 2007) (the District of Columbia " 'derives its common law

from Maryland and decisions of Maryland courts on questions of common law are authoritative in

the absence of District authority'") (citations omitted).  Plaintiffs will highlight the differences

between Maryland and DC law, when relevant below.

> **C.  Plaintiffs have adequately pled that Bolog was acting within the course and scope of his employment with WTP when he was engaging in the tortious conduct as issue, and as such Plaintiffs have adequately stated a Claim in Counts I ($10 Million Fraud), Count III (Science Park Investment Fraud), IV (Darnestown Road Investment Fraud), and V (Swain Landing Investment Fraud), Count IV (breach of fiduciary duty) and as is relevant, Count VI (legal malpractice).[4]**

In separate sections of its Memorandum, WTP argues that the FAC fails to state a claim

against it in Counts I ($10 Million Fraud), Count III (Science Park Investment Fraud), IV

(Darnestown Road Investment Fraud), V (Swain Landing Investment Fraud), Count VII (breach

of fiduciary duty) and  Count VI (legal malpractice).  Because WTP's arguments as to all these

Counts are based on its assertion that Plaintiffs have failed to plead that Bolog was acting within

the course and scope of his employment with WTP when he committed the tortious acts at issue,

Plaintiffs will address all of these arguments together.

> 1.  The FAC adequately alleges *respondeat superior* liability under Maryland law.

Plaintiffs have certainly pled that Bolog was acting within the course and scope of his

employment under Maryland law.  Preliminarily, the existence and scope of a principal-agent

relationship is a question of fact that is ordinarily a matter for the jury, although in appropriate

cases it may be resolved on summary judgment:

> When legally sufficient evidence is produced of an agency relationship, the question of the existence of the agency relationship is a factual matter and must be submitted to the jury. *Faya v. Almaraz*, 329 Md. 435, 460, 620 A.2d 327, 339

---

[4] This section addresses WTP's arguments in Sections B.5, 6, 7, and 8, as well as the portion of B. 4 concerning WTP's *respondeat superior* liability for Count IV (legal malpractice).

(1993)("The existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered."); *P. Flanigan & Sons v. Childs*, 251 Md. 646, 653, 248 A.2d 473, 476 (1968)(declaring that the existence of an agency relationship is ordinarily a question of fact). "[I]t is not for the court to determine the question of agency vel non, but if the testimony as to the fact of the agency tends to prove the existence of that relation, it should be submitted to the jury, who are the exclusive judges of its weight." *Levine v. Chambers*, 141 Md. 336, 343, 118 A. 798, 800 (1922).

If the party alleging the existence of a principal-agent relationship fails to produce sufficient evidence to allow a reasonable fact finder to conclude that such a relationship exists, then summary judgment would be proper on the agency issue. *See, e.g., Proctor*, 75 Md. App. at 21, 540 A.2d at 142 ("We conclude from our review of the record that the Holdens failed to produce any evidence from which a reasonable inference could be drawn that an agency relationship had been created.").

*Green v. H&R Block, Inc.*, 355 Md. 488, 504-05, 738 A.2d 1039 (1999).

As *Green* establishes, because the existence of an agency relationship is a question of fact it generally is a question for the jury, but in some cases summary judgment may be proper on the issue. In *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993), the court determined, *inter alia*, whether the trial court had erred in dismissing a medical malpractice claim against a hospital that was based on the hospital's vicarious liability for the actions of its employee. *Faya*, 329 Md. at 460. "Like any other employer, a hospital is responsible under agency principles for the negligence of its servants or employees, this vicarious liability extends to any apparent agents whom a hospital represents as its employees." *Id.* (citations omitted). "The existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered." *Id.* (citation omitted). Because the plaintiffs had alleged that they believed Dr. Almaraz was the hospital's agent, and that Dr. Almaraz had "operating privileges" at the hospital, "we cannot say as a matter of law that the facts alleged in the appellants' complaints are legally insufficient on their face to aver an agency relationship." *Id.* "Thus, the trial court erred in dismissing appellants' basis negligence complaints against" the hospital. *Id.*

The Supreme Court of Maryland has held:

> for an employee's tortious acts to be considered within the scope of employment, **the acts must have been in furtherance of the employer's business and authorized by the employer.** Ordinarily, the issue of whether a particular act is within the scope of employment **is properly decided by a jury**, however, where there is no conflict in the evidence relating to the question and but one inference can be drawn therefrom, the question is one of law for the court.

*Barclay v. Briscoe*, 427 Md. 270, 283 (2012) (internal quotation marks and citations omitted)(emphasis supplied). "That an act is 'consciously criminal or tortious' does not preclude it from falling within the scope of employment." *Sage Title Group v. Roman*, 455 Md. 188, 212, (citing RESTATEMENT OF AGENCY (SECOND) ) § 231 (1958)). "The "simple test" remains whether the employee's acts were within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him." *Id.* (internal quotations omitted) (citation omitted).   "Express authorization is not required. The analysis considers, instead, whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders." *Id*. at 212-13 (internal quotations and citations omitted). "Another factor is whether the "employee's conduct was 'expectable' or 'foreseeable.'" *Id*.  "While such vicarious liability does not arise from acts that are committed for the employee's personal motives unrelated to the furtherance of the employer's business, those acts **which the employer could reasonably have foreseen** are within the scope of the employment and thus give rise to liability under the doctrine of respondeat superior even when those acts constitute an intentional tort or a crime." *Id* (citation omitted)(emphasis supplied).

In *Sage Title*, a title company's employee, who was also an attorney, defrauded a lender, and the title company was found liable at trial for the fraud of its employee.  On appeal, the

Supreme Court of Maryland affirmed the jury award as to the *respondeat superior* liability of the Title Company. *Sage* Title, 455 Md. at 213-14, 219. While the employee was engaging in a fraudulent scheme, the steps he took to further the scheme, generating business, accepting and depositing checks into the company's escrow account, and withdrawing funds from the escrow account, were all part of his ordinary duties at the Company. *Id*. The Court found that this was sufficient evidence that the employee was acting "in furtherance of the employer's business and authorized by the employer" to survive JNOV. *Id*. Thereafter, the Court noted that there was evidence that the employee's conduct was foreseeable because the employer knew that on two prior occasions, the employee had improperly accepted personal checks into the company's escrow account. *Id*. The fact that the employee's conduct was illegal and against company policy was not sufficient as a matter of law to absolve the employer of *resondeat superior* liability. The inquiry focused on the employee's actions and whether those actions were in the course and scope of their job duty. *See also Aragona v. St. Paul Fire & Marine Ins. Co*., 281 Md. 371 (1977) (a partner at a law firm was found liable for negligence based on another partner's misappropriation of funds that occurred without his knowledge based on his negligent failure to discover the misappropriations).

In the present case, like *Sage*, Bolog's tortious actions were committed within the scope of his ordinary job duties. This is also similar to the situation in *Aragona*. Plaintiffs pled that Bolog was WTP's employee, either in the role of a partner or senior counsel at all times relevant hereto. FAC ¶7 and 12. Bolog's duties entailed moving money between various accounts on Plaintiffs' behalf. FAC ¶30 and ¶34. Bolog used his WTP office as the address for his personal business ventures, such as Swain Landing. FAC ¶ 12. Bolog also used that same address for his American Express Credit Cards because they sued him at WTP's DC Office. FAC ¶ 20(i). Bolog, with the

assistance of other WTP lawyers, created Trust Documents and other documents necessary to establish trusts with client money. FAC ⁋30. Bolog and other WTP counsel created bank accounts for trusts. FAC ⁋31. Bolog served as a Trustee for WTP's clients. FAC ⁋33. Bolog and other WTP employees billed Plaintiffs for their time in providing trust services. FAC ⁋30 and 114. Bolog received bank statements at WTP's office. FAC ⁋31. Finally, Bolog would communicate using his WTP email address with banks to facilitate transactions, as well as with third parties, *supra*.

Bolog was acting within this same scope, when he committed the tortious conduct at issue. Instead of drafting Trust documents (and enlisting other WTP lawyers to assist with the same), creating Trusts, and arranging for the wiring of funds **for the benefit of WTP's clients**, he did those same things for his own benefit. Bolog even communicated with Engelhorn's bank, using his WTP email, prior to the transaction to seek confirmation that the trust documents were in a form acceptable to the bank (and then WTP billed Plaintiff for his time in doing so). Moreover, WTP's employees assisted Bolog in the creation of the JAREB trust (and attendant documents), and WTP billed Plaintiff for those services. FAC ⁋114.

With respect to the various Maryland entities that Bolog used to embezzle funds from Plaintiffs, he was likewise doing the same kinds of work that he performed as an attorney for WTP. With respect to Science Park, he drafted or caused to be drafted a promissory note. FAC ⁋52. Bolog drafted assignments for this transaction. FAC ⁋50. Bolog directed Whitewater's Bank to wire $3,352,650 from the Trust's account to pay off Science Park's indebtedness. FAC ⁋51. Bolog likewise used his WTP email address to direct Whitewater's Bank to wire $350,000 to Darnestown, and the bank did so. FAC ⁋62-63.

Defendant Swain Landing LaPlata JC, LLC's operating agreement identified its address as WTP's DC office located at 1800 M Street, Suite #450 N. FAC ⁋ 12. Postal sent Bolog an email

at his WTP email address which merely contained the number "$585,000" and Swain Landing's account and routing numbers. FAC ¶69. In response to Postal's email, Bolog emailed White Pearl's bank from his WTP email address, stating White Pearl "is making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing], relating to a real estate investment." FAC ¶72.

As with the employee in *Sage Title*, Bolog was committing fraud on Plaintiffs while engaging in his day-to-day activities as a lawyer employed by WTP, in much the same way as the employee's conduct in generating new business, depositing checks into Sage's escrow account, and withdrawing and disbursing said funds, despite doing so with a fraudulent purpose, were sufficient to create a jury question as to *respondeat superior* liability. Again, this is also similar to the situation in *Aragona*. Plaintiffs have pled sufficient facts, which this Court must assume are true and from which this Court must draw all reasonable inferences in favor of Plaintiffs in deciding WTP's motion, which if proven true at trial, would create a jury question as to WTP's vicarious liability under the doctrine of *respondeat superior* for both the $10 million "gift" and the fraudulent transactions with Bolog and Postal's entities, Science Park, Darnestown, and Swain Landing.

2. The FAC adequately alleges *respondeat superior* liability under District of Columbia law.

In the District of Columbia, as in Maryland, *respondeat superior* is almost always a question of fact, and it is not appropriate for determination on a motion to dismiss *Trump v. Carroll*, 292 A.3d 220, 230 (D.C. 2023) ("we also affirm that under our case precedents, whether an employee was acting within the scope of employment is ordinarily a fact-intensive question for the factfinder, and as such is not subject to determination as a matter of law in resolving a motion to dismiss"). The District of Columbia is far more permissive in *respondeat superior* claims than

Maryland, even recognizing that it is possible that an employee could commit sexual assault in the course and scope of his employment. See *Brown v. Argenbright Sec., Inc*., 782 A.2d 752, 758 (D.C. 2001). The District of Columbia has effectively adopted the Restatement (Second) of Agency's formulation of *respondeat superior*. 292 A.3d 220, at 228-9. In a recent case involving President Trump, the District of Columbia Court of Appeals felt the need to restate and summarize District of Columbia law on *respondeat superior*, noting that while the District of Columbia has adopted the Restatement generally, the District of Columbia has also embraced some broader variances, which favor plaintiffs generally. *Trump v. Carroll*, 292 A.3d 220, 229 (D.C. 2023). The restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind [the person] is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master, and
>>
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Rest. (2d) of Agency § 228. For the first element, whether the conduct is the kind the person is employed to perform, the District of Columbia courts have said: "an employee's conduct falls within the meaning of § 228(1)(a) if that conduct is either 'of the same general nature as' or 'incidental to' the conduct authorized so as to be within the scope of employment. *Trump*. 292 A.3d at 230-32. "As to whether the conduct was 'of the same general nature as' the conduct authorized, we view this language from § 229(1) as reflecting an inquiry into the similarity between

the tortious conduct and an individual employee's job functions akin to a plain language reading of § 228(1)(a)." 292 A.3d at 230.

"As to whether the tortious conduct was 'incidental to' the authorized conduct, we view this language as an inquiry into whether the tortious conduct was undertaken in service of carrying out an employee's job function." *Trump,* 292 A.3d at 231. *See, also District of Columbia v. Davis* 386 A.2d 1195, 1203 (D.C. 1978) (an officer who unholstered service weapon and fired it at a social gathering was "surely conduct incidental to" the authorized act of carrying the weapon to ensure officer readiness).  However, the District of Columbia allows a broader nexus between the conduct and terms of employment than the Restatement.  "[O]ur case precedents depart from the Restatement by authorizing victims of intentional torts that do not involve the use of force to prove that the tortious conduct was of the kind the employee was authorized to perform on a narrow theory of foreseeability—that the conduct was "incidental to" the conduct authorized." *Trump,* 292 A.3d at 231.

In the present case, all of Bolog's alleged tortious conduct, whether involving the $10 million "gift" or his misuse of the funds that Plaintiffs entrusted to him, were acts he took while acting as an attorney at WTP, engaging in the same activities for which he was hired to perform (*i.e.*, serving as trustee for WTP's clients, preparing and drafting trust and other documents for clients, communicating with banks on behalf of clients, creating bank accounts and moving funds, using his WTP email address).  Moreover, such conduct was certainly foreseeable, and the FAC outlines Bolog's history of suspicious financial dealings, which WTP either directly knew of or should have been aware of.

As for whether the conduct occurred substantially within the authorized time and space limits, the District of Columbia Court of Appeals has explained: "The employee's conduct does

not need to be absolutely within the authorized space and time of the employment, only "substantially," which counsels against a strict understanding of where and when an employee was on duty." *Trump*, 292 A.3d at 232-3.  The Court also noted that this is a fact-intensive inquiry, resistant to categorical dispositions.  *Id*.

Here, Bolog is alleged to have conducted the tortious activity inside WTP's offices using WTP email, staff, and addresses.  While Bolog traveled to Cape Cod to have Engelhorn sign the $10 million "gift," he frequently traveled the country on WTP business, as evidenced by a specific provision in the retainer Agreement wherein Engelhorn agreed to pay for Bolog to travel via business class.  Moreover, as WTP asserts, Bolog and Mr. Foster traveled from DC to Denver to have Engelhorn sign the retainer agreement.  Bolog's traveling to Cape Cod was certainly not outside of the authorized time and space of his employment.

Next, as to whether the conduct is actuated, <u>*at least in part*</u>, by a purpose to serve the master, the Courts have explained:

> First, the employee must have been "actuated ... by a purpose to serve the master." This is the "purpose" element. Second, the employee need only have been actuated "at least in part" by that purpose. This is the "quantum" element. The third element, however, is not plainly stated in the Restatement, yet is intrinsic to the inquiry in our cases: at what moment—or moments—of time do we consider the employee's motivation? This is the "timing" element.
>
>  . . .
>
> The more challenging question, however, is what minimum quantum of purpose to serve the employer is sufficient to hold an employer liable. The "at least in part" standard strikes us as a minimum requirement for the quantum of purpose that necessitates at least some discernable purpose to serve the employer. **This standard does not foreclose that an employee could be concurrently motivated by a personal purpose**. *See Hechinger Co*., 761 A.2d at 24 ("[I]f the employee acts in part to serve his employer's interest, the employer will be held liable for the intentional torts of his employee even if prompted partially by personal motives, such as revenge."). **Nor does it preclude that such a personal purpose could be the employee's predominant purpose**. *See generally* Rest. (2d) of Agency § 236 cmt. [b] ("The fact that the predominant motive of the servant is to benefit himself ... does not prevent the act from being within the scope of employment."). **If it is**

19

**established that the employee was motivated "at least in part" to serve the employer, the employee's conduct will be considered to be within the scope of employment**. *See  Brown v. Argenbright Sec., Inc.* , 782 A.2d 752, 758 (D.C. 2001) ("While it is probable that the vast majority of sexual assaults arise from purely personal motives, it is nevertheless possible that an employee's conduct may ... still be 'actuated, at least in part, by a desire to serve [the employer's] interest.' " (second alteration in original)).

*Trump*, 292 A.3d 220 at 233-236.

However, "we do not parse out an exact threshold at which an employee was "actuated, at least in part" by a purpose to serve the employer, but "too little actuated" for their condut to be within the scope of employment.  **Instead, this court's decisions have consistently entrusted this question to the factfinder to decide whether, upon a showing that the employee acted with at least a partial purpose to serve their employer's interest, that purpose was not too little actuated**." *Id.* (emphasis supplied).

In the present case, Bolog generated receivables for WTP for his time managing these various trusts, drafting trust and other documents, and transferring Plaintiffs' funds.  In other words, he was acting in accordance with his ordinary duties as a WTP lawyer when he prepared the documents at issue and shunted the funds at issue into businesses and JAREB Trust that would benefit him personally.  The fact that WTP issued invoices for some of his time and sought to have Plaintiffs pay WTP for his and other WTP employee's services shows that his conduct was "actuated, at least in part" by a purpose to serve WTP, sufficient to state a claim under DC law. *See Trump*, 292 A.3d at 241 ("The fact that the predominant motive of the servant is to benefit himself ... does not prevent the act from being within the scope of employment.")(quoting Rest. § 236 cmt. b).

WTP, relying on federal case law (which predate *Trump*), asserts that this Court's inquiry into the timing is limited to the moment the tort occurred.  This is incorrect, as the District of Columbia Court of Appeals in *Trump* explained, "[i]n the case of intentional torts, an additional

20

'timing' element arises, requiring us to address what the pertinent timeframe is for assessing an employee's purpose." *Trump*, 292 A.3d at 237. "Our case law has not defined specifically what period of time is relevant, recognizing that a categorical rule would be **incompatible with our general principle that *respondeat superior* is a fact bound inquiry** and different factual circumstances present different moments in time that inform that inquiry." *Id*. (Emphasis added). In providing guidance for future courts, the District of Columbia Court of Appeals explained "the temporal scope of circumstances the factfinder should consider to discern the employee's purpose in acting should be construed quite broadly." *Id*. "[T]he employee **need not** possess the requisite purpose to serve the employer **at the precise moment of time in which the tort was committed**, but rather *respondeat liability* can be established where the employee **possessed the requisite purpose in the moments preceding the commission of the tort when warranted by the factual context**." *Id*. (Emphasis supplied). "Examining only the split second moment of the actual commission of the tort—absent some context—could unfairly limit employer liability and is otherwise inconsistent with our case precedents." *Id*., at 238.

Thus, Plaintiffs have sufficiently pled that Bolog's conduct in the time leading up to and following the commission of the various frauds meet the requirements of District of Columbia substantive law. The determination of whether the conduct truly was in the course and scope of Bolog's employment with WTP is a factual determination reserved for the jury.  The FAC, however, more than adequately states a claim in this regard for in Counts I ($10 Million Fraud), Count III (Science Park Investment Fraud), IV (Darnestown Road Investment Fraud), V (Swain Landing Investment Fraud), Count VII (Breach of Fiduciary Duty) and as to VI (legal malpractice) in as much as Count IV pleads that WTP is vicariously liable for Bolog's conduct therein.

**D. Count VI (Legal Malpractice) adequately states a claim against WTP both for its vicarious liability for Bolog's actions and also for WTP's independent liability.**

In Count VI, Plaintiffs allege that Bolog committed legal malpractice and that WTP is vicariously liable for his conduct.  However, Plaintiffs also allege that other attorneys employed by WTP negligently breached the applicable standard of care in their representation of the Plaintiffs.  Plaintiffs allege that MaryEllen Willman and Shane Smith, who were both attorneys who assisted Bolog in drafting documents to facilitate the $10 million "gift," and WTP billed Plaintiffs for their services in doing so, were negligent.  FAC ¶114.  Plaintiffs also allege that these WTP employees breached the standard of care by failing to advise that Engelhorn would owe gift taxes on the supposed gift, that she would exhaust most of her lifetime gift exemption, alerting her that the trust documents showed Bolog was receiving $10 million from Plaintiffs, failing to verify that Engelhorn intended to gift Bolog $10 million, and assisting Bolog in a transaction which they and Bolog were prohibited from participating in by virtue of Bolog's conflict of interest and failing to otherwise conduct any due diligence on the transfer.  FAC ¶118.  These are all independent allegations of negligence against WTP employees, other than Bolog, which would subject WTP to vicarious liability for the $10 Million "gift."  Defendant does not even attempt to seriously argue that Count IV fails to state a claim for malpractice stemming from Willman, Baker, and Smith's alleged negligence, and for this reason, the FAC states a claim.[5]  Plaintiffs also allege that Bolog's theft and fraud were perpetrated with the assistance of three other WTP attorneys and that these other WTP attorneys facilitated Bolog's tortious conduct, *supra*.  Even if WTP, through all of its other attorneys (and management personnel), was not aware of Bolog's misappropriation of funds

---

[5] Count VI also alleged *respondeat superior* liability for Bolog's actions. For the reasons set forth in the prior section, Plaintiffs have adequately pleaded that Bolog committed legal malpractice in the course and scope of his employment with WTP.

22

when those misappropriations occurred, as in *Aragona,* WTP could be found negligent for its failure to adequately monitor Bolog's conduct and for its failure to discover his misappropriations in a timely manner.

### E. Count II states a claim against WTP for its negligent hiring and supervision of Defendant Bolog.

Count II asserts direct liability against WTP for its failures in hiring Bolog and in supervising his actions while he was a partner or senior attorney at WTP. WTP does not allege that Count II fails to state a claim upon which relief can be granted because of a failure to plead any required element. Instead, Defendant asserts that the allegations that Bolog's long and publicly available history of financial shenanigans did not and could not have put them on notice that he may be a risk to WTP's clients.[6] Plaintiffs alleged, however, that WTP knew or should have known that Bolog had a history of failing to pay his debts and taxes in a timely manner and apparently converting funds to which he was not entitled. FAC ⁋20.

WTP complains that just because the allegations were made against Bolog, that fact alone is not sufficient to prove that WTP should have "known about the allegation, (2) believed the allegation, and (3) declined to hire Mr. Bolog or discharged him because of the allegation." Def.' Mem. 30.[7] However, Plaintiff alleged these facts because they were (1) publicly available such

---

[6] For this reason Plaintiffs do not recite the elements of the tort, either under Maryland or DC law.

[7] *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002), upon which Defendant relies involved claims of negligent/hiring/retention/ supervision as well as negligent entrustment of a firearm. *Phelan* concerned a motion for summary judgment, not a motion to dismiss. *Id*. at 936. In *Phelan*, a police officer with an extensive disciplinary record, used a service weapon to shoot someone during a an off-duty confrontation over a car. The negligent hiring/etc., claim was dismissed because the officer was not on duty when he fired his gun. The language Defendant cites, that "uncontrollable outbursts of rage and lack of control or discipline" being insufficient to satisfy a claim that the department knew he would misuse his gun, relate to the claim that the department negligently entrusted the officer with a service weapon; not a claim for negligent

that WTP knew or should have known they existed, and (2) WTP absolutely knew about most of these instances because WTP was directly involved in some of them.  Plaintiffs pleaded that in the *Brenda Kay Brown* matter, Bolog was accused of converting property from a Bankruptcy Estate. FA C ¶20(e). WTP would have been aware of this case because WTP was later named as a defendant in that Bankruptcy matter, in part because of WTP's failure to disclose its ongoing relationship with Bolog. *Id* at n.1.   Moreover, WTP ended up settling the claim for 100% of the claimed damages.  *Id*.  Clearly, WTP did not feel it had a strong defense.  Plaintiffs also pleaded that WTP was aware of two prior cases involving Bolog *because they represented him* (and Defendant Postal) as counsel *in those cases*. FAC ¶20(c) and (f).  Plaintiffs allege that despite WTP's participation as a defendant in a case where Bolog was accused of conversion and representing him in cases where he was alleged to have been unable to pay his bills, they hired him and allowed him to oversee WTP's clients' funds without adequate supervision.  FAC ¶21-22.  Finally, after Bolog joined WTP, but before Engelhorn retained WTP, Bolog was sued twice by American Express for a combined amount of approximately $90,000, and in both cases, American Express used Bolog's address at WTP's DC office.  FAC ¶20 (h) and (i). Thus, even before completing discovery, there is significant evidence that WTP knew or should have known that Bolog posed a financial risk to its clients and should have supervised him accordingly.

Finally, Plaintiffs allege that Bolog billed for his time while embezzling said funds and that he and other WTP staff billed Plaintiffs to create Bolog's JAREB trust and attendant documents. FAC ¶114.    Plaintiffs also allege that Ms. Willman and Mr. Smith, who were partners at WTP,

---

hiring/supervision, etc. The officer had no prior history of misusing or mishandling his service weapon on or off the job.  *Id*. at 942.

assisted with the preparation of these documents and knew or should have known that Bolog was

effectively gifting himself $10 Million of Plaintiffs' funds. FAC ¶¶ 30 and 114.

Thus, assuming the well-pleaded facts are true, Plaintiffs have stated a basis for WTP to be

wary of Bolog's behavior and use of funds, that they had reason and opportunity to discover his

malfeasance, such that they were negligent in hiring him, and thereafter negligent in supervising

his activities to detect his tortious conduct.

**F. Count XX should not be dismissed because Plaintiff has adequately pleaded that WTP aided and abetted Bolog's breaches of fiduciary duty.**

As an alternative to a *respondeat superior* theory of breach of fiduciary duty, Plaintiffs pled

that WTP aided and abetted Bolog in his various breaches of fiduciary duty. WTP admits that the

FAC does generally set forth the elements necessary to allege aiding and abettor liability for breach

of fiduciary duty in the District of Columbia. Def's Mem. at 40 (citing *Pietrangelo v. Wilmer

Cutler Pickering Hale & Dorr, LLP*, 68 A.3d. 697, 711 (D.C. 2013). However, WTP asserts that

the FAC fails to provide specific allegations of WTP's "substantial assistance or encouragement

of the wrongdoing." *Id*. To the contrary, Plaintiffs specifically identified the WTP employees who

assisted with the creation of the JAREB trust and the drafting of the various documents necessary

to facilitate Bolog's seizure of $10 million from the Plaintiffs. Plaintiffs even set forth the specific

acts each individual took to assist Bolog. As such, Count XX sufficiently states a claim that WTP

aided and abetted Bolog's breaches of fiduciary duty.

## IV.    <u>CONCLUSION</u>

Then, this Honorable Court should deny the Defendant's Motion inasmuch as it is a motion

to dismiss because each of the Defendant's arguments are premised on the false premise that the

FAC failed to allege that Bolog was acting within the course and scope of his employment when

he engaged in the wrongdoing alleged. As set forth in detail, whether under Maryland or District

of Columbia law, the FAC has adequately alleged that Bolog was acting in the course and scope of his employment as a partner or senior attorney at WTP when he engaged in the conduct at issue. Finally, even absent allegations of *respondeat superior*, Plaintiffs have sufficiently alleged WTP's direct negligence with respect to Count VI (legal malpractice), Count II (negligent hiring/supervision), and Count XX (Aiding and Abetting Breaches of Fiduciary Duty). The Defendant's Motion must be denied in its entirety.

Respectfully submitted:

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*

## HEARING REQUESTED

Plaintiffs respectfully request a hearing on all issues raised in Defendant's Motion to Dismiss, Plaintiff's Opposition thereto, and any other document filed with respect to the same.

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of December 2024, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

27

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

E-FILED; Baltimore City Circuit Court
Docket: 12/17/2024 7:15 PM; Submission: 12/17/2024 7:15 PM
Envelope: 19226092

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN ROAD'S NOTICE OF SERVICE OF RESPONSES AND OBJECTIONS TO PLAINTIFF'S DISCOVERY REQUESTS

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants") hereby submit notice that they have served the discovery documents listed below to counsel listed in the attached certificate of service:

- Defendant Erik D. Bolog's Responses and Objections to Plaintiff's Request for Production of Documents and Things;

- Defendant Erik D. Bolog as Trustee of the JAREB Irrevocable Trust Agreement Dates October 11, 2021's Responses and Objections to Plaintiff's Request for Production of Documents and Things;

- Defendant Darnestown Road Inc.'s Responses and Objections to Plaintiff's Request for Production of Documents and Things;

- Defendant Science Park Associates, LLC's Responses and Objections to Plaintiff's Request for Production of Documents and Things;

- Defendant Erik D. Bolog's Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Erik D. Bolog as Trustee of the JAREB Irrevocable Trust Agreement Dates October 11, 2021's Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Darnestown Road Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Science Park Associates, LLC's Responses and Objections to Plaintiff's First Set of Interrogatories.

Dated:        December 17, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:.

**<u>Counsel of Record Served via MDEC:</u>**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**<u>Parties Served Via First Class Mail:</u>**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

# IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.**, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

## DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN ROAD'S RESPONSE TO WHITEFORD, TAYLOR & PRESTON LLP'S PETITION FOR AN ORDER COMPELLING ARBITRATION AND MOTION TO STAY PROCEEDINGS

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby respond to Whiteford, Taylor & Preston LLP's ("WTP") Petition for an Order Compelling Arbitration (the "Arbitration Petition") and Motion to Stay Proceedings.

None of the claims against the Bolog Defendants is subject to arbitration, and WTP's Petition For An Order Compelling Arbitration does not contend otherwise. The claims against the Bolog Defendants are nonarbitrable because the arbitration provision at issue is found in the engagement letter executed by and between WTP and Ms. Engelhorn—none of the Bolog Defendants is a party to that arbitration agreement. See *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 134 (2002) (A "party cannot be required to submit any dispute to arbitration that it has not agreed to submit."). Accordingly, the Bolog Defendants take no position

on the arbitrability of disputes arising under the engagement letter's arbitration agreement, which is binding on WTP and Plaintiff Engelhorn, but not on any of the Bolog Defendants. *See The Redemptorists*, 145 Md. App. at 151-158 (finding only claims and issues subject to arbitration clause are arbitrable; the remainder are stayed in court).

Nonetheless, the Bolog Defendants join in WTP's related Motion to Stay Proceedings and respectfully submit that if the Court orders the arbitration of any of the claims the Plaintiffs have brought against WTP, all proceedings in this action (including discovery) should be stayed pending a final determination in the arbitration. See *The Redemptorists*, 145 Md. App. at 125 ("The issues as to the non-contracting parties should be stayed pending the outcome of the arbitration."). WTP has already taken the position that it will not respond to discovery requests until resolution of the Arbitration Petition (and subsequent arbitration); allowing claims to proceed against the Bolog Defendants without the benefit of discovery against WTP would prejudice the Bolog Defendants' ability to adequately prepare its defenses in this case. Furthermore, allowing arbitration to conclude before resuming litigation in this action (including discovery) will narrow the outstanding issues and promote judicial economy. Completing arbitration will also materially impact the claims against the Bolog Defendants and determine, what, if any, claims can continue in this Court.

Therefore, a final determination by any arbitration adjudicating the claims brought by Plaintiffs against WTP must precede the litigation of the claims against the Bolog Defendants.

*[Remainder of Page Intentionally Omitted]*

2

Dated:      December 17, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP


Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )   **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WHITEFORD,
TAYLOR & PRESTON, LLP'S PETITION FOR AN ORDER COMPELLING
ARBITRATION AND STAYING PROCEEDINGS AND MOTION TO STAY**
**(Hearing Requested)**

Plaintiffs, by and through their undersigned counsel, file this Response in Opposition to

Defendant Whiteford Taylor & Preston, LLP's Petition for an Order Compelling Arbitration and

Staying Proceedings and Motion to Stay, and respectfully state as follows:

## I.      **INTRODUCTION**

There are three Plaintiffs in this action.  The Plaintiffs are Claudia Engelhorn ("Engelhorn"

when referred to as an individual), Claudia Engelhorn, as Trustee of the Whitewater Revocable

Trust ("Whitewater Trustee"), and White Pearl, LLC ("White Pearl").   There are several

Defendants in this action.  The Defendants are Erik D. ("Bolog"); Erik D. Bolog, as Trustee of the

JAREB Irrevocable Trust Agreement Dated October 11, 2021; Whiteford Taylor & Preston, LLP's

("WTP"). Michael Postal; Pojo LaPlata, LLC; Darnestown Road, Inc.; Science Park Associates,

LLC; Swain Landing LaPlata JC, LLC; and Tenacity Investments, LLC.

WTP has filed a Petition for an Order Compelling Arbitration and Staying Proceedings and

a Motion to Dismiss or Stay.  In this response in opposition, Plaintiffs will separately address

WTP's Petition for an Order Compelling Arbitration and Motion to Stay. In a separate filing, Plaintiffs will address WTP's Motion to Dismiss.

This Court should deny WTP's Petition for an Order Compelling Arbitration (and its concomitant Motion to Stay). WTP argues that this Court should apply the substantive law of Colorado to decide whether an arbitration provision contained in a retainer agreement between WTP and Engelhorn is valid and enforceable. (*See* WTP Memorandum at §III.A.1, pp. 16-17, and §III.A.5, pp. 25-27.) Maryland, however, has a strong public policy against law firms, or attorneys, entering into arbitration agreements that limit clients' rights in the event of subsequent disputes, and thus prospectively limit clients' rights to establish lawyers' liability for malpractice and other civil claims, unless clients are provided sufficient information to give their informed consent to such agreements and unless clients are advised of the desirability of obtaining independent legal advice before entering into such an agreement. As such, a Maryland court will not apply foreign law that is contrary to, or inconsistent with, this strong public policy in deciding the enforceability of such an arbitration agreement. Even assuming *arguendo* that Colorado is the *lex loci contractus* of the retainer agreement that contains the arbitration provision, this Court should apply Maryland substantive law to determine the enforceability of the arbitration provision under the doctrine of *renvoi* because Colorado would apply Maryland law in this instance.

Finally, even if Colorado law applied, the Colorado Rules of Professional Conduct ("CRPC") only permit lawyers to enter into agreements with clients to arbitrate legal malpractice claims "**provided such agreements are enforceable *and* the client is fully informed of the scope and effect of the agreement**." (Bold print and italics added.) (*See* Comment 17 to CRPC 1.8. *See, also* WTP Memorandum at p. 26.) The plain language of Comment 17 to CRPC 1.8 establishes (1) that agreements between attorneys and clients may be unenforceable for reasons

that are independent of whether the client is fully informed of the scope and effect of the agreement "**and**" (2) if a client is not "fully informed of the scope and effect of the agreement" such agreements are unenforceable for this reason, standing alone.  In this case, the arbitration provision of the retainer agreement between WTP and Engelhorn is not enforceable because Engelhorn was not "fully informed of the scope and effect of the agreement" before she signed it (nor was she so informed thereafter).  In fact, the alleged provision at issue does not even state that Engelhorn was so informed.  This action should not, therefore, be stayed.  This action also should not be stayed pending arbitration because only one Plaintiff, Engelhorn, signed the retainer agreement that contains an arbitration provision, and only WTP and Engelhorn are parties to the arbitration provision.  The remaining Plaintiffs did not sign and are not parties to the retainer agreement that contains the arbitration provision, and they never agreed to be bound by such an agreement.

## II.    ARGUMENT

**A. The Court Should Apply Maryland Substantive Law When Determining the Validity and Enforceability of the Arbitration Provision in the Retainer Agreement Between WTP and Engelhorn Because to Do Otherwise Would be Contrary to Maryland's Strong Public Policy.**

WTP correctly notes that Maryland generally follows the doctrine of *lex loci contractus*. This doctrine "requires that, when determining the construction, validity, enforceability, or interpretation of a contract, we apply the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015) (citations omitted). Typically, the *locus contractus* "is the place where the last act is performed which makes an agreement a binding contract."  *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 66, 215 A.2d 467, 471 (1965).  Since 1831, Maryland Courts have held "that the *lex loci contractus* controls the nature, construction, and validity of the contract.  The exceptions are, where it would be dangerous, **against public policy**, or of immoral tendency, to enforce that construction here."

3

*Trasher v. Everhart*, 3 G. & J. 234, 234 (1831) (emphasis added). *See, also Laboratory Corp. of America v. Hood*, 395 Md. 608, 621, 911 A.2d 841, 848 (2006) ("We have just as consistently held, however, that the *lex loci contractus* principle is not inflexible and that it 'does not apply to a contract provision which is **against Maryland public policy**.'" (citing *Bethlehem Steel Corp. v. G.C. Zarnas & Co., Inc.*, 304 Md. 183, 188, 498 A.2d 605, 608 (1985)). In order for Maryland's public policy to override the doctrine, it "**must be very strong** and not merely a situation in which Maryland law is different from the law of another jurisdiction." *Allstate Ins. Co. v. Hart*, 327 Md. 526, 530, 611 A.2d 100, 102 (1992) (citing *Kramer v. Bally's Park Place*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988)).

The Maryland Attorneys' Rules of Professional Conduct ("MARPC") govern the conduct of lawyers licensed to practice law in the State of Maryland and prohibit prospective mandatory arbitration agreements. MARPC 19-301.8(h) prohibits prospective mandatory arbitration agreements between attorneys and their clients, and states in pertinent part:

> (h) An attorney **shall not**:
>
> > (1) make an agreement **prospectively limiting the attorney's liability to a client for malpractice unless the client is independently represented in making the agreement**; or
> > (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person **is advised in writing** of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice in connection therewith.

Md. Rule 19-301.8(h) (emphasis added). The comments to the rule explain that there is a distinction between limiting prospective or future legal malpractice liability and settling existing legal malpractice claims:

> [14] Agreements prospectively limiting an attorney's liability for malpractice ***are prohibited*** unless the client is ***independently represented in making the agreement*** because they are likely to undermine competent and diligent representation. Also,

4

many clients are unable to evaluate the desirability of making such an agreement before a dispute has arisen, particularly if they are then represented by the attorney seeking the agreement. This section does not, however, prohibit an attorney from entering into an agreement with the client to arbitrate _**existing**_ legal malpractice claims, **provided the client is fully informed of the scope and effect of the agreement**…

[15] Agreements settling a claim or a potential claim for malpractice are not prohibited by this Rule. Nevertheless, in view of the danger that an attorney will take unfair advantage of an unrepresented client or former client, the attorney must first _**advise such a person in writing**_ of the appropriateness of independent representation in connection with such a settlement. In addition, the attorney must give the client or former client a reasonable opportunity to find and consult independent attorney.

Md. Rule 19-301.8 Comments (14)-(15).  (Emphasis added.)  Thus, the Rule provides

varying levels of protection to clients depending on whether the limitation on liability concerns

existing or future malpractice.  Highest protection is afforded when an attorney seeks to

prospectively limit their liability to the client, and a Maryland attorney may only do so if the client

_is independently represented in making the agreement_.  _Id_.  This is because, as the comments

explain, "clients are unable to evaluate the desirability of making such an agreement before a

dispute has arisen, particularly if they are then represented by the attorney seeking the agreement."

_Id_.  The second level of protection concerns existing claims of malpractice after a dispute has

arisen.  Only in this instance does MARPC 19-301.8 permit an attorney to enter an agreement with

a client to arbitrate a legal malpractice claim, and only then if "the client is **fully informed** of the

scope and effect of the agreement."  _See_, Comment 14 to MARPC 19-301.8.   (Emphasis added.)

Moreover, even in the case of existing disputes, attorneys must still advise the client _in writing_ of

the desirability of obtaining independent counsel.

The portion of Comment 14 to MARPC 19-301.8 that provides that agreements between

attorneys and clients to arbitrate existing legal malpractice claims are only enforceable if, _inter_

_alia_, "the client is fully informed of the scope and effect of the agreement" is consistent with, _inter_

*alia*, MARPC 19-301.4(b) "[a]n **attorney shall explain a matter** to the extent reasonably necessary to **permit the client to make informed decisions** regarding the representation." (Emphasis added.)  MARPC 19-301.0(g) provides "'[i]nformed consent' denotes the agreement by a person to a proposed course of conduct **after the attorney has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.**"

Plaintiffs contend that Maryland law, not the law of the District of Columbia or the law of Colorado, controls this issue. District of Columbia Rule of Professional Conduct ("DCRPC") 1.0(e), however, is identical to MAPRC 19-301.0(g), and DCRPC 1.4(b) is identical to MARPC 19-301.4(b).  Comment 14 to DCRPC 1.8, moreover, provides the only circumstances in which agreements to arbitrate legal malpractice claims are not prohibited are "to the extent that such an agreement is **valid and enforceable *and* the client is fully informed of the scope and effect of the agreement."**  (Emphasis added.)  Colorado Rule of Professional Conduct ("CRPC") 1(e) is identical to MARPC 19-301.0(g), and CRPC 1.4(b) is identical to MARPC 19-301.4(b). Comment 17 to CRPC 1.8, furthermore, only permit lawyers to enter into agreements with clients to arbitrate legal malpractice claims "**provided such agreements are enforceable *and* the client is fully informed of the scope and effect of the agreement**."  (Bold print and italics added.)

The Maryland State Bar Association Committee on Ethics concluded that the overall effect of a mandatory arbitration provision is that it prospectively limits a lawyer's liability, such that 1.8(h)'s requirement that the client have independent counsel must be followed.  *See* Ethics Docket No. 1990-12.  **Exhibit A**.  "Accordingly, the Committee is of the opinion that before a lawyer can enter into a written agreement with a client providing for the submission to arbitration of all disputes arising out of the attorney-client relationship, the client must be represented by

6

independent counsel in connection with that written agreement. If the client refuses to seek independent counsel, then the lawyer is prohibited from entering into such a written agreement." *Id*.

The Supreme Court of Maryland has not addressed whether a mandatory arbitration clause for prospective or future legal malpractice (or other civil claims) in a retainer agreement is void as being violative of public policy. *See Abramson v. Wildman*, 184 Md. App. 189, 198-200, 664 A.2d 703, 708-09 (2009) (citing case law from around the country in which courts have reached differing results, but declining to address whether an attorney-client arbitration provision in a retainer agreement was unenforceable, as the Circuit Court had held, because as "interesting as this question is, it is one we need not resolve, because we find that the circuit court was correct in its alternative holding that appellant waived his right to arbitration by his participation in the judicial forum.") The Supreme Court of Maryland has, however, held that the MARPC are a statement of public policy with the force and effect of law and that a contract that violates a rule can be unenforceable (depending on other circumstances). *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998), concerned a dispute between two lawyers over the division of a contingency fee. The overall split did not affect the client's net recovery. When the attorneys were not able to agree, Post filed a declaratory judgment action against Bregman, alleging that honoring the fee arrangement would violate then-MLRPC 1.5(e) (current MARPC 19-301.5(e)). *Id*. at 146. Post countersued for declaratory judgment and breach of contract, and the Circuit Court concluded that a violation of 1.5(e) did not render the agreement unenforceable. The Supreme Court was called upon to determine whether the MARPC constituted a cognizable and enforceable statement of public policy equivalent in effect to a statute. *Post,* 349 Md. at 162, 707 A.2d at 815. The Supreme Court held:

7

In Maryland, the rules contained in MLRPC do not constitute "self-imposed internal regulations." They are precatory guidelines adopted by lawyers or by lower levels of the court system, but are rules adopted by this Court (Md. Rule 16-812) in the exercise of its inherent Constitutional authority to regulate the practice of law. *Attorney General v. Waldron*, supra, 289 Md. 683, 426 A.2d 929. Together with the rules governing admission to the Bar, rules pertaining to attorney trust and bank accounts, rules governing the disciplining of lawyers, and other rules governing specific conduct by lawyers (see, for example, Rule 16-401), they serve to regulate virtually every aspect of the practice of law, establishing both general and particular standards for how lawyers must handle funds belonging to them or to others and how they may and may not deal with each other, with the courts, with their clients, with adverse parties, with witnesses, and with the community at large.

Unquestionably, so thorough a regulation of an occupation and professional calling, the integrity of which is vital to nearly every other institution and endeavor of our society, constitutes an expression of public policy having the force of law. We made the point with unmistakable clarity in Waldron -- that "the power generally to regulate matters regarding the profession and its practitioners, are reposed inherently in the judiciary" ( *Waldron*, 289 Md. at 694), that "the obligation of the judicial branch of government to monitor and manage its own house are not hollow proclamations of power, for the placement of this responsibility with the judiciary represents a recognition of the special, and to a degree, unique relationship that has evolved over the years between the legal profession and the tribunals of justice it serves" ( *Waldron*, 289 Md. at 695), and that, although the Legislature may act "to aid the courts in the performance of their judicial functions," the judicial branch nonetheless retains the "fundamental authority and responsibility" to "carry out its constitutionally required function, an aspect of which . . . is the supervision of practicing lawyers." *Waldron*, 289 Md. at 699. See also *In Re Application of Allan S.*, 282 Md. 683, 689 387 A.2d 271, 275 (1978): "Upon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State."

MLRPC represents the exercise of that authority, the discharge of that responsibility. **To the extent, therefore, that the pronouncements of other courts are based on a different view of the function and authority of the Code in their respective States, they are simply not relevant to the Maryland situation. MLRPC constitutes *a statement of public policy* by the only entity in this State having the Constitutional authority to make such a statement, and it *has the force of law*.** The mere fact that lawyers may be disciplined -- even disbarred -- for violating those rules attests to the legal significance of the rules. We thus share the view of the Illinois Supreme Court, expressed in *In re Vrdolyak*, 137 Ill. 2d 407, 560 N.E.2d 840, 845, 148 Ill. Dec. 243 (Ill. 1990), that "as an exercise of this court's inherent power over the bar and as rules of court, the Code operates with the force of law." See also *Succession of Cloud*, 530 So. 2d 1146, 1150 (La. 1988) ("The standards in the Code of Professional Responsibility which govern the conduct of attorneys have the force and effect of substantive law"); *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162 (Alaska 1991).

*Post*, 349 Md. at 162-64, 707 A.2d at 816-17 (emphasis added).  The Court then went on to note that "it would indeed be at least anomalous to allow a lawyer to invoke the court's aid in ***enforcing an unethical agreement*** when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, ***would render the lawyer subject to discipline***." *Post*, 349 Md. at 168, 707 A.2d at 818 (emphasis added).  The Court concluded, "MLRPC Rule 1.5(e) does constitute a **supervening statement of public policy** to which fee-sharing agreements by lawyers are subject, and that the enforcement of Rule 1.5(e) is not limited to disciplinary proceedings.  It may extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e) unenforceable…" *Post*, 349 Md. at 168, 707 A.2d at 818. The Court did not, however, go so far as to hold that any agreement in violation of 1.5(e) was automatically unenforceable or void *per se* because Rule1.5(e) governs attorney's contracts with *other lawyers*, and the court articulated a series of other factors to consider before holding a fee-sharing agreement in violation of 1.5(e) unenforceable; which do not have any relevance to the violation of 1.8(h) at issue here.[1]

---

[1] When presented with a defense resting on Rule 1.5(e), the court must look to all of the circumstances  -- whether the rule was, in fact, violated, and, if violated (1) the nature of the alleged violation, (2) how the violation came about, (3) the extent to which the parties acted in good faith, (4) whether the lawyer raising the defense is at least equally culpable as the lawyer against whom the defense is raised and whether the defense is being raised simply to escape an otherwise valid contractual obligation, (5) whether the violation  has some particular public importance, such that there is a public interest in not enforcing the agreement, (6) whether the client, in particular, would be harmed by enforcing the agreement, and, in that regard, if the agreement is found to be so violative of the Rule as to be unenforceable, whether all or any part of the disputed amount should be returned to the client on the ground that, to that extent, the fee is unreasonable, and (7) any other relevant considerations.

*Post*, 349 Md. at 169-70, 707 A.2d at 819 (footnote omitted). Arguably, of these elements, 5, 6, and 7, are the most relevant to the arbitration provision in the retainer agreement between Engelhorn and WTP.

Also of relevance is MARPC 19-301.8 generally.  Maryland Courts have held that " 'the law makes a presumption against the attorney and in favor of the client. In such cases, the onus is on the attorney to prove the entire bona fides and fairness of the transaction.' " *Attorney Grievance Commission v. Korotki*, 318 Md. 646, 666, 569 A.2d 1224, 1234 (1990) (quoting *Merryman v. Euler*, 59 Md. 588–90 (1883) ).

> [T]he attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

*Attorney Grievance Commission v. McLaughlin*, 372 Md. 467, 506, 813 A.2d 1145, 1168 (2002) (quoting *Attorney Grievance Commission v. Snyder*, 368 Md. 242, 265–66, 793 A.2d 515, 529 (2002)). "In situations where the client has not been 'advised in writing of the desirability of seeking and [was not] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction,' MLRPC 1.8(a)(2), we presume that the agreement between the attorney and client is not a fair and reasonable one." *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 388, 108 A.3d 394 (2015).  An attorney violates Rule 1.8 by failing to advise the client in writing of the desirability of seeking independent legal advice before entering into a settlement agreement with the attorney.  *Shapiro*, 441 Md. at 388 ); see also *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 365 (2006) (determining that the attorney violated Rule 1.8 by seeking to have his client sign a release of any malpractice claims against him without advising the client of the desirability of obtaining independent counsel before signing); *AGC v. Young*, 248 A.3d 996, 473 Md. 94 (attorney violated 1.8(a) and (h) by failing to advise client in writing of the desirability of having independent legal counsel before settling an existing legal malpractice claim.).

In the present case, the alleged Arbitration provision provides the following:

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration

> pursuant to the Rule and Procedures of JAMS, Inc., in Washington, D.C. Judgment
> on any award may be entered in any court of competent jurisdiction.

Def.'s Ex. A(14). This mandatory arbitration clause, on its face, is a prospective limitation on WTP

and Bolog's liability to Engelhorn for malpractice.  The term extends to any "claim or dispute

arising out of or relating to…our relationship with YOU," and would encompass not only claims

of legal malpractice but would extend to any claim that could exist between Engelhorn and WTP,

including outright conversion or even personal injury.   Additionally, per the term, Engelhorn

would be required to submit to arbitration pursuant to the Rules and Procedures of JAMS, Inc.

Nowhere in the Exhibits attached to WTP's  Motion is there any indication that Engelhorn

was represented by independent counsel in making this prospective agreement to limit WTP and

its attorney's liability, as required by Md. Rule 19-301.8(h)(1).[2]  Likewise, there is no indication

that Bolog or anyone else informed Engelhorn *in writing* of the desirability of having independent

counsel review the arbitration term, and so they do not meet the relaxed standard required to settle

---

[2] WTP coyly asserts that Engelhorn had existing counsel in the Switzerland litigation when she signed the agreement, and that this satisfied the independent counsel requirement.  There are multiple problems with this argument.  First, the plain language of the Rule states that the client must be "independently represented in making the agreement," it is not enough that the client could have consulted another lawyer if they chose to do so.  Md. Rule 19-301.8(h)(1), see also Ethics Doc. 1990-12 (**Exhibit A**).  Second, Defendants WTP and Bolog dealt directly with Engelhorn and her children regarding the Agreement; not Swiss counsel. Third, the Swiss legal team were, of course, Swiss, and it is speculative that Swiss lawyers could or would advise an American client as to the ramifications of waiving trial by jury, and what those ramifications meant under the common law of any of the jurisdictions of the United States, since Switzerland does not have jury trials in civil matters, nor is its system of law based on Anglo American common law. Fourth, there is no indication that the Swiss lawyers actually reviewed the retainer or advised Engelhorn with respect to any portion thereof.  Finally, as WTP notes, Englehorn was dissatisfied with her Swiss counsel (Def.'s Ex. A ¶12), which is why she was hiring WTP, and it is unclear why Defendant believes Engelhorn would have sought advice from Swiss counsel regarding the terms under which she was hiring their replacements (WTP nor Bolog nor Foster told her to seek such advice orally or in writing). *See* Def.s Ex. A, *et seq.*

*existing* legal malpractice claims.  WTP admits this in its responses to Engelhorn's Requests for

Admissions.  **Exhibit B**.

Ultimately, WTP pins its entire assertion that it adequately advised Engelhorn regarding

the ramifications of the arbitration provision on the affidavit of C. Allen Foster, discussing his

recollection of the February 28, 2020, meeting. Def.s' Ex. A. Mr. Foster states:

> 12. At the meeting, we gave Ms. Engelhorn ample opportunity to ask questions
> about the engagement agreement and we did discuss certain of the payment
> provisions in detail.  *I am confident* that I personally discussed the arbitration
> clause with Ms. Engelhorn because it was my practice to include such a clause in
> all engagement agreements and, in this particular case, I was concerned that Ms.
> Engelhorn was dissatisfied with her European counsel and intended to change the
> lead in the representation from them to us.  Our continuing legal education
> frequently reminds us to be cautious when clients are changing lawyers.
>
> 13. I do not recall exactly when we learned that Ms. Engelhorn had signed the
> engagement agreement, although I do recall at some point that she had signed it.
> My best recollection is that, after the discussion of the provisions of the engagement
> agreement in the February 28 Denver meeting, Ms. Engelhorn and her daughter
> separately discussed the potential representation and then told us that they were
> satisfied with the terms…

Def.'s Ex. A ¶¶12-13. (emphasis added)[3]. Mr. Foster then signed his affidavit, "I solemnly

affirm under the penalties of perjury that the contents of this document are true to the best of my

knowledge, information, and belief."  Def.s' Ex. A.  Mr. Foster's affidavit would be insufficient as

a matter of law to grant summary judgment in WTP's favor.  An affirmation based on "knowledge,

information, and belief" does "not generate a genuine issue of fact" and is not part of "the record

that may properly be considered on this summary judgment motion."  *Zilichikhis v. Montgomery

County*, 223 Md. App. 158, 179-80 (2015).[4]  Mr. Foster does not specifically recall discussing the

---

[3] Engelhorn's daughter is not a lawyer, nor does WTP assert that she is.

[4] *See* also Md. Rule 1-304 (requiring an affidavit based on personal knowledge to state "I solemnly
affirm under the penalties of perjury and upon personal knowledge that the contents of this
document are true."); see also, Md. Rule 2-501(c) (requiring that an affidavit supporting or
opposing a motion for summary judgment to be made upon "personal knowledge."

arbitration clause but states that he is "confident" that he did so.  By contrast, Mr. Foster specifically recalls, "we did discuss certain of the payment provisions in detail."  Because he does not recall actually discussing the arbitration provision, Mr. Foster's affidavit is devoid of any description of what he may have discussed, if anything, with Engelhorn about arbitration.  Mr. Foster's affidavit, therefore, is woefully insufficient to establish that Engelhorn was "fully informed of the scope and effect of the agreement" as required.

Reasonable inferences can also be drawn **from the absence of important information in the arbitration provision of the retainer agreement, which is often found in arbitration provisions in other retainer agreements, that Mr. Foster did not discuss this important information with Engelhorn.**  For example, unlike the retainer agreement in *Abramson,* the arbitration provision in WTP's retainer agreement with Engelhorn does not contain the language "[y]ou understand that by agreeing to same you are waiving your rights to file suit and have a trial, jury and otherwise, to litigate and resolve these issues." *Abramson*, 114 Md. App. at 195.  Unlike the retainer agreement in *Abramson*, the arbitration agreement in WTP's retainer agreement with Engelhorn also does not expressly state that it applies to "any complaint" Engelhorn may have concerning "the competency of our representation." *Id.*  By way of another example, WTP's retainer agreement with Engelhorn does **not** contain important language that **was** included in the retainer agreement in *Hartley v. Harman*, Civil Action No. 16-cv-00277, 2016 WL 934432 (D. Colo. 2016), which is the primary case cited by WTP in support of its argument that the arbitration provision in its retainer agreement with Engelhorn is valid and enforceable.  (*See*, WTP Memorandum at p. 26.)  The arbitration provision in *Hartley* expressly stated, and specifically called the client's attention to the fact, that it applied to, *inter alia*, "**claims of legal malpractice[.]**" *Hartley*, 2026 WL 9344232, *2.  (Emphasis added.)  Unlike this case, the retainer agreement in

13

*Hartley* expressly stated, "[y]ou acknowledge **that you are aware of the fact that, by agreeing to arbitrate, you waive any right you may have to trial by a judge or jury.**" *Id.* (Emphasis added.)    Unlike this case, the retainer agreement in *Hartley* also expressly stated, "I also understand that the Agreement provides for binding arbitration in the event that there is a dispute between me and the firm." *Id.*

The arbitration provision in the retainer agreement, in this case, is devoid of an explanation that there is no judge or jury involved in arbitration.  Likewise, it is devoid of an explanation to Engelhorn that under the law in the United States she had a right to file a lawsuit in which she could pursue a trial, and in particular a jury trial if she ultimately had civil claims against WTP, much less does it affirmatively advise Engelhorn that she waived that right by signing the retainer agreement.  The arbitration provision, in this case, uses the acronym JAMS, an acronym with which Engelhorn was undoubtedly not familiar, without explaining the nature of the JAMS organization.  The arbitration provision in this case is devoid of an explanation of the "Rules and Procedures" of JAMS.  Similarly, the arbitration provision in this case does not explain that punitive damages would not be available in an arbitration with JAMS but may be available to Engelhorn in an action filed in court.   It is also significant that the arbitration provision, in this case, does not disclose to Engelhorn, in WTP's own words, that "discovery under the [JAMS] arbitration rules is far more limited" than discovery in actions filed in court, "which is important in this case[.]" (*See*, WTP Memorandum at p. 18, footnote 6.)  The arbitration provision in this case also refers to courts and to judgment that may be entered by a court in connection with a claim between Engelhorn and WTP in a manner that was likely to confuse and mislead a non-lawyer who does not understand the nature and technicalities of arbitration, "[j]udgment on any award may be entered in any court of competent jurisdiction."  Much like the "consent form" that a

14

hospital used to "notify arriving patients that the Hospital does not consider the physicians and surgeons providing emergency care to be its employees and agents," the words used in the arbitration provision in WTP's retainer agreement with Engelhorn "are hardly models of clarity." *Williams v. Dimensions Health Corporation*, 480 Md. 24, 53-54, 279 A.3d 954, 970-71 (2022). Just as "[a] lay reader would be unlikely to understand" that the hospital's consent form was a "disclaimer by the Hospital of responsibility for the actions of those who staffed its departments," *id.*, a lay reader would be unlikely to understand the nature and effect of the arbitration provision in WTP's retainer agreement with Engelhorn. The *Williams* Court rejected the hospital's argument that its consent form provided "constructive notice" that the hospital disclaimed responsibility for the actions of those who staffed its departments even though the relevant paragraphs were captioned "PHYSICIANS NOT AS EMPLOYEES" and contained the language "I acknowledge that physicians furnishing services, including but not limited to attending physicians, radiologists, surgeons, emergency department physicians . . . ARE NOT employees or agents of the hospital." *Id.* Finally, Engelhorn signed the retainer agreement with WTP the *day before* the meeting, which is described in Mr. Foster's Affidavit.

Because the MARPC, including MARPC 19-301.8(h), is a statement of strong public policy, *supra,* the arbitration provision is not enforceable because Engelhorn was not represented by independent counsel in the making of the Agreement. The arbitration provision is also unenforceable because WTP has provided no evidence that Engelhorn was "fully informed of the scope and effect of the agreement," which is a requirement under the law of Maryland, the District of Columbia, or Colorado, *supra*. A prospective agreement to arbitrate malpractice claims is a prospective limitation of a lawyer's liability for malpractice under Maryland law, and such an agreement violates MARPC 19-301.8(h)(1) unless the client is represented by independent counsel

"in making the agreement." Ethics Doc. 1990-12 (**Exhibit A**). "[I]t would indeed be at least anomalous to allow a lawyer to invoke the court's aid in enforcing an unethical agreement when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, would render the lawyer subject to discipline." *Post*, 349 Md. at 168, 707 A.2d at 818. Therefore, the correct choice of law analysis is for this Court to apply the strong public policy set forth in the MARPC and decline to enforce the arbitration provision of the retainer agreement between WTP and Engelhorn.

**B. Alternatively, even if Colorado is the *lex locus contractus*, Colorado would apply Maryland law, and so a Maryland Court must apply Maryland law under the doctrine of *renvoi*.**

Even if this Court holds that the MARPC does not constitute a statement of public policy by the only entity in this State having the Constitutional authority to make such a statement that has the force of law, which would directly contradict the holding in *Post*, *supra*, Maryland law would nonetheless apply under the doctrine of *renvoi*. *Lex loci contractus* is not absolute, and its influence has waned in favor of the more "modern" approach embodied in the "most significant contacts" test of Restatement (Second) Conflict of Laws §§ 188 (1971). The most significant relationship test "applies the law of the place having the most significant relationship to the contract issue in dispute. This most significant relationship test is set forth in Restatement § 188." *Am. Motorists Ins. Co. v. ARTRA Grp*., 338 Md. 560, 570 (1995). Restatement § 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

16

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restat 2d of Conflict of Laws, § 188 ("§188"). The Supreme Court of Maryland has not expressly adopted § 188. See *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 619 n. 3, 921 A.2d 799 (2007); and *ARTRA*, 338 Md. at 570-73.[5]

---

[5] Though somewhat confusingly, the Supreme Court has adopted Restat 2d of Conflict of Laws, § 187(2) which looks to § 188. See *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 618 (2007). § 187(2) provides:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, **unless either**

(a) the chosen state **has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice**, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, ___**under the rule of § 188**___, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restat 2d of Conflict of Laws, § 187(2)(a)-(b) (emphasis supplied). Thus, while Maryland has not applied the "most significant contacts" test, it will consider the law of the state with a stronger connection to the dispute over an explicit choice of law term and weigh the factors in § 188 when deciding to whether to do so.

17

While Maryland has not explicitly adopted § 188, Colorado has done so. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447-48, 601 P.2d 1369, 1372 (Colo. 1979) (adopting the Restatement (Second) in contract actions). Even if Colorado law applies, therefore, this Court would apply the "most significant relationship" test under §188, pursuant to the doctrine of *renvoi*. "*Renvoi* is a French word meaning 'send back' or 'remit.'" *ARTRA*, 338 Md. at 574. "The doctrine of *renvoi* is basically that, when the forum court's choice-of-law rules would apply the substantive law of a foreign jurisdiction to the case before the forum court, the forum court may apply the whole body of the foreign jurisdiction's substantive law including the foreign jurisdiction's choice-of-law rules." *ARTRA*, 338 Md. at 574. "If, in applying renvoi principles, the foreign jurisdiction's conflict of law rules would apply the forum's law, this reference back of the forum to its own laws is called a remission." *ARTRA*, 338 Md. at 574.

*ARTRA* concerned a contractual dispute between parties where the parties failed to include a choice of law provision in their contract. *Id*. A dispute arose as to whether to apply the law of the forum, Maryland, or the law of Illinois where the insurance companies were located and where the policies were countersigned by representatives of said companies. However, Illinois adopted the "most significant relationship" test under § 188. *ARTRA*, 338 Md. at 568. The application of the most significant relationship test would have required Illinois to apply Maryland law. *Id*. The Supreme Court of Maryland adopted a limited form of *renvoi* and explained:

> Where the forum would apply the law of the foreign jurisdiction and the foreign jurisdiction would apply the law of the forum, it would seem that the balance should tip in favor of the jurisdiction with the most significant contacts or, if not to the jurisdiction with the most significant contacts, then for ease of application and to prevent forum shopping, the law of the forum should be applied. In the instant case, Maryland is apparently the jurisdiction with the most significant contacts as well as the forum. Maryland courts should, in applying Illinois law, apply Illinois' most significant relationship choice-of-law rule and follow the law an Illinois court would follow if the case was instituted in Illinois -- Maryland law. Thus, whether suit was filed in Maryland or Illinois, Maryland law would govern the contract.

18

. . .The limited *renvoi* exception which we adopt today will allow Maryland courts to avoid the irony of applying the law of a foreign jurisdiction when that jurisdiction's conflict of law rules would apply Maryland law. Under this exception, Maryland courts should apply Maryland substantive law to contracts entered into in foreign states' jurisdictions in spite of the doctrine of *lex loci contractus* when:

1) Maryland has the most significant relationship, or, at least, a substantial relationship with respect to the contract issue presented; and

2) The state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the court.

Our holding that Maryland's adherence to *lex loci contractus* must yield to a test such as Restatement (Second) Conflict of Laws § 188 when the place of contracting would apply Maryland law pursuant to that test is not a total jettisoning of *lex loci contractus.*

*ARTRA*, 338 Md. at 575-76, 579 (emphasis in original) (footnote omitted).

WTP asserts that the last act required to make the contract binding was Engelhorn's signature, and they assert that this signature took place in Colorado.  Preliminarily, Defendant does not know where Engelhorn was located when she signed the Agreement, as she signed it the day before she met with WTP.  *See* Def.'s Ex. A, ¶11.  *See, also* Def.'s Exs. A(11), A(12), A(13), and A(14). The meeting between Engelhorn, Bolog, and Mr. Foster is alleged to have occurred in Colorado on February 28, 2020.  *See* Def.'s Ex. A, ¶11.  *See, also* Def.'s Exs. A(11), A(12), and A(13).  Engelhorn, however, signed the Agreement the *day before* the meeting, *i.e.,* on February 27, 2020.  See, Def.'s Ex. A(14).  Mr. Foster's affidavit, which has many other issues, *supra*, does **not** assert that Engelhorn signed the Agreement in Mr. Foster's presence at the meeting.  *See*, Def.s' Ex. A, *passim*., Mr. Foster also could not have witnessed Engelhorn's signature because the date of the signature did not match with the date of their meeting.  *See* Def.'s Ex. A, ¶11.  *See, also* Def.'s Exs. A(11), A(12), A(13), and A(14).  As Mr. Foster admits, he cannot say "whether Ms. Engelhorn gave us the signature page at the meeting or supplied it later to Mr. Bolog," he could

only affirm that Bolog emailed a photo of the executed signature page on February 28, 2020.  *See*

Def.s' Ex. A, ¶13.

Even assuming that Engelhorn and WTP signed the Retainer Letter in Colorado and

assuming that this act alone was sufficient to make Colorado the *locus contractus*, Colorado would

apply Maryland law to determine if the arbitration provision in the retainer agreement, which is a

contract, is valid and enforceable.  Colorado has adopted §188 and its "most significant

relationship" test in contract actions.  "[W]e now adopt the Restatement (Second) [of Conflict of

Laws] approach for contract actions."  *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198

Colo. 444, 447, 601 P.2d 1369, 1372 (Colo. 1979).

> Where a conflict of laws question is raised, the objective of the Restatement
> (Second) is to locate the state having the "most significant relationship" to the
> particular issue. In analyzing which state has the most significant relationship, the
> principles set forth in Restatement (Second) sections 6 and 188 are to be taken into
> account. Once the state having the most significant relationship is identified, the
> law of that state is then applied to resolve the particular issue.

*Wood Bros. Homes, Inc.*, 601 P.2d at 1372 (footnotes omitted).  *See, also Hartley*, 2016

WL 9344232, *4 ('[f]or contract claims, Colorado courts apply the Restatement (Second) Conflict

of Laws approach, employing the law of the state with the most significant relationship to the

contract"); *Richardson v. Allstate First and Casualty Ins. Co.*, 637 F. Supp.2d 1186, 1190 (D. Colo.

2022) ("Colorado applies the Restatement (Second) of Conflict of Laws to resolution of choice-

of-law questions for both tort and contract claims" and "'the objective of the restatement (Second)

is to locate the state having the 'most significant relationship' to the particular issue'").  In this

case, Maryland is the state with the most significant relationship to the contract issue at hand.

*Factor 1: The place of contracting*

As the Comments to § 188 explain, "[s]tanding alone, the place of contracting is a relatively

insignificant contact."  § 188 Comment (e).  Assuming Engelhorn signed the Agreement in

Colorado the day before she met with Bolog, this factor would be relatively insignificant as WTP does not maintain an office in Colorado, Bolog (and the other WTP attorneys who provided legal representation to Engelhorn) are not admitted to practice in Colorado, and the "Matter" that was the subject of the retainer agreement (see Def.'s Ex. A(1) and A(8) at first page, first ¶) had no connection to Colorado, as WTP has admitted "[w]hile he was at Whiteford, Mr. Bolog represented Ms. Engelhorn in **Swiss proceedings** challenging her father's estate[.]"  (See, WTP Memorandum at §I, p. 1.)  (Emphasis added.)  WTP, through Bolog, moreover, presumably signed the retainer agreement either in Maryland (where he lived and where WTP was headquartered) or the District of Columbia.

### Factor 2: the Place of negotiation of the contract

"This contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone."  § 188 Comment (e)  In the present case, WTP alleges that Bolog sent Engelhorn copies of the proposed Agreement from his DC office.  However, based on the information provided with WTP's Motion, there was no true negotiation; Bolog and his assistant sent the Agreement to Engelhorn repeatedly in the same general form until she signed it on February 27, 2020, before they met in Colorado on February 28, 2020.

### Factor 3: the Place of Performance

The place of performance of the retainer agreement between WTP and Engelhorn is not Colorado.  The place of performance of this contract spanned many States, as well as continents. The scope of the representation set forth in the retainer agreement concerned litigation in Switzerland, *supra*.  Engelhorn paid WTP's fees by sending funds **to WTP's headquarters in Maryland**, while Bolog appears to have operated primarily from WTP's office in DC.  Subsequent

to the execution of the retainer agreement, however, the scope of WTP's representation changed, and by September 30, 2021, Engelhorn had moved to Virginia. *See* **Exhibit C** (Abstract of Whitewater Revocable Trust dated September 30, 2021). Defendant WTP and Bolog created the Whitewater Trust, and per its documents, the Trust was to be governed by the law of Virginia. *Id.* Engelhorn purportedly signed the Trust document in Wilmington, North Carolina. *Id.* at 17. Bolog purportedly signed the Whitewater Trust in Fairfax, Virginia. *Id*.

Thereafter, it is alleged that Bolog (**a Maryland resident**) and others at WTP (**a Maryland entity**) drafted the documents necessary to create Bolog's JAREB Trust. FAC ⁋35. Those others included MaryEllen Willman, Esq., and David J. Baker, who appear to have operated from WTP's Maryland Offices. FAC ⁋114.[6] Additionally, Shane D. Smith, apparently in WTP's Richmond, Virginia Office, also assisted in the creation of the JAREB Trust. *Id*. Finally, the JAREB Trust itself, by its terms, **has its situs in Maryland**. "This Trust Agreement has been **accepted by the Trustee in the State of Maryland, and it shall be construed and regulated and all rights under it shall be governed by the laws of the State of Maryland**." Def.'s Ex. B(3), at 7, also FAC. ⁋35. (Emphasis added.) Bolog and Engelhorn, however, signed the Trust document in Massachusetts. FAC⁋ 36 *see also*, Def.'s Ex. B(3).

Thereafter, it is alleged that Bolog, while acting for the Whitewater Trust and White Pearl, LLC (Engelhorn's single-member LLC), took Whitewater and White Pearl's funds, **invested them in a series of Maryland entities** in which he or his close friends had an interest, and embezzled significant funds therefrom. **All of these events would have occurred in Maryland since that**

---

[6] Plaintiffs do not believe the fact that Ms. Willman and Mr. Baker's conduct occurred in Maryland is controverted. See **Exhibits D** (Willman Bio showing her operating from Columbia Maryland and Falls Church Virginia) and **Exhibit E** (Baker was previously employed at WTP in Baltimore, Maryland).

**is where all of the Defendant entities were located (Science Park, Darnestown Road, and Swain Landing).**

As the Comments to the Restatement explain, "[t]he state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform." § 188, Comment (c). "On the other hand, the place of performance can bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue." *Id*.

*Factor 4: Situs of the subject matter of the contract.*

As previously stated, the original "Matter" that was the subject of the retainer agreement between WTP and Engelhorn was Swiss legal proceedings involving the estate of Engelhorn's father. Subsequently, the matters for which WTP was engaged by Engelhorn included a trust that was governed by Virginia law and a trust that was governed by Maryland law, *supra.*

*Factor 5: Domicile, residence, nationality, place of incorporation, and place of business of the parties.*

"These are all places of enduring relationship to the parties." § 188, Comment (c) This factor weighs heavily in favor of Maryland law. Bolog was a resident of Maryland at all times relevant hereto. Bolog was also licensed to practice law in the State of Maryland. "At least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation…" *Id*. In this case, however, WTP is not only incorporated in the State of Maryland, it has its principal place of business located in the State of Maryland. Some of WTP's attorneys and employees who assisted Bolog with the creation of the JAREB Trust operated from WTP's offices in Maryland (*i.e.*, Ms. Willman and Mr. Baker), and they billed Plaintiffs for their

services in creating the JAREB Trust which itself was created under Maryland law, governed by

Maryland law, and situated in Maryland. The entities through which Bolog shuffled money, from

which he is alleged to have embezzled, said funds were all located in Maryland.

Considering all the factors, including those that are entitled to the most weight, Maryland

is the jurisdiction with the most significant contacts to the Agreement. Even the District of

Columbia and Virginia, however, have more significant contacts to the Agreement than Colorado.

Therefore, under the doctrine of *renvoi,* this Honorable Court should apply Maryland law when

determining the validity and enforceability of the arbitration provision in the Agreement, as well

as in matters of construction and interpretation of the Agreement as a whole.

**C. Colorado would not apply the Arbitration term at issue in this case because WTP did not "fully inform" Engelhorn "as to the scope and effect" of the arbitration term, as required by Colorado's Rules of Professional Conduct, and so the term would be unenforceable as violative of public policy in Colorado.**

As with Maryland, the Supreme Court of Colorado has not opined on whether a mandatory

arbitration clause in a retainer agreement of prospective or future legal malpractice (or other civil

claims) is unenforceable if the clause does not comport with the CRPC. Similar to MARPC 19-

301.8(h), Colorado's equivalent reads:

> (h) A lawyer shall not:
>
> > (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or
> >
> > (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

CRPC 1.8(h). Comment 17 is very similar to Maryland's Comment 14, but it has a significant

relevant difference and provides: "This paragraph does not, however, prohibit a lawyer from

entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and ***__the client is fully informed of the scope and effect of the agreement__***…" CRPC 1.8 Comment 17 (emphasis supplied).  Whereas Maryland's Comment 14 to MARPC 19.301.8 only permits agreements to arbitrate "existing" legal malpractice claims.  As stated, *supra*, CRPC 1(e) is identical to MARPC 19-301.0(g), and CRPC 1.4(b) is identical to MARPC 19-301.4(b).  In 2019 the Supreme Court of Colorado addressed an issue of first impression, whether a contract entered into in violation of Colo. RPC 1.8 is void.  *Calvert v. Mayberry*, 440 P.3d 424, 432 (Colo. 2019). The court held that "a contract entered into in violation of Rule 1.8(a) is presumptively void.  However, because it is possible for a lawyer to enter into a contract in violation of Rule 1.8(a) without that contract offending public policy, this presumption is rebuttable.  To rebut this presumption, a lawyer seeking to enforce the contract must show that the contract does not offend the public policy considerations underlying Rule 1.8(a)." *Calvert*, 440 P.3d at 432. *See* also *Johnson Family L., P.C. v. Bursek*, 541 P.3d 605, 611 (Colo. 2024) (holding that a contract that violates CRPC5.6(a) is unenforceable because it is against public policy).

In arguing that Colorado permits the enforcement of attorney-client agreements to arbitrate, despite the lack of explanation of the meaning of such an agreement to the client, Defendants rely exclusively on *unreported federal* decisions from the Districts of Colorado and New York, all of which predate the Supreme Court of Colorado's opinion in *Calvert v. Mayberry*.  In *Tolliver v. True*, Civil Action No. 06-cv-02574-WDM-BNB, 2007 U.S. Dist. LEXIS 73281, at *10 (D. Colo. Sep. 28, 2007), the court determined that arbitration agreements do not prospectively limit a lawyer's liability to a client, from there the court concluded that the agreement was enforceable under the Federal Arbitration Act.  The court did not, however, cite, address, or even mention

Comment 17 to CRPC 1.8 (or its predecessors- if any)[7] , and the court also did not cite and address

CRPC 1(e) or 1.4(b) and so the court did not address whether the disclosures and explanation of

the arbitration clause to the client were sufficient as a matter of law, to meet the requirement that

the arbitration clause be "enforceable and the client is fully informed of the scope and effect of the

agreement."

Similarly, *Hartley, supra*, is an unreported federal decision concerning the Federal

Arbitration Act, which held that an arbitration term in a retainer agreement was not unenforceable.

*Hartley*, 2016 WL 9344232, **7-8.  Like *Tolliver*, however, the court did not address the

requirement of Comment 17 to CRPC 1.8 that a client be "fully informed of the scope and effect

of the agreement, much less CRPC 1(e) or 1.4(b).

As stated, *supra*, moreover, unlike this case, the arbitration provision in *Hartley* expressly

stated, and specifically called the client's attention to the fact, that it applied to, *inter alia*, "**claims

of legal malpractice[.]"**  *Hartley*, 2026 WL 9344232, *2.  (Emphasis added.)  Unlike this case,

the retainer agreement in *Hartley* expressly stated, "[y]ou acknowledge **that you are aware of the

fact that, by agreeing to arbitrate, you waive any right you may have to trial by a judge or

jury.**" *Id.* (Emphasis added.)  Unlike this case, the retainer agreement in *Hartley* also expressly

stated, "I also understand that the Agreement provides for binding arbitration in the event that there

is a dispute between me and the firm." *Id.*  The court relied on these provisions to determine that

the arbitration provision was enforceable and to determine the scope of the arbitration provision.

*Hartley*, 2026 WL 9344232, **2, 6, 8.

---

[7] In 2007 the prior incarnation of the CRPCs were repealed and readopted, and the current
incarnation became effective in January 2008.

Finally, WTP relies (as did the court in *Hartley*) on *Buckwalter v. Napoli, Kaiser & Bern LLP*, Civil Action No. 01Civ.10868, 2005 WL 736216 (S.D.N.Y. Mar. 29, 2005). *Buckwalter*, aside from being unreported, is a shaky foundation upon which to conclude that Colorado would enforce the arbitration clause at issue here. *Buckwalter* did not even discuss New York's rules of professional conduct as they existed at the time. Rather, the court in *Buckwalter* treated the arbitration clause as an ordinary commercial clause, not as an agreement between attorney and client, and enforced it. Mere months after *Buckwalter* was decided, the court in *Larrison v. Scarola Reavis & Parent LLP*, 11 Misc.3d 572, 812 N.Y.S.2d 243, 248 (N.Y.Sup.Ct.2005), held that an agreement to arbitrate that violated the ethics rules was void as being against public policy. In rendering its decision, the Court noted (contrary to the Court in *Buckwalter*) that attorney-client agreements are not the same as arm's length transactions:

> The court questions whether the insertion of an arbitration clause like the one at issue into a retainer agreement inherently violates the trust between the client and attorney in that it pits the lawyer's interests against that of the client. The terms and features of the arbitration agreement are designed, not for the client's benefit but to protect and advance the lawyer's interest in a forum of the lawyer's choosing. Adoption of such a practice places the lawyer in an irreconcilable ethical conflict which will only serve to further undermine the public's confidence in the profession. A lawyer has an ethical duty, to use his or her best efforts and professional judgment to advance the client's interest, not his or her own. Thus, a retainer agreement that contains a clause to arbitrate in front of the American Arbitration Association, which waives the client's right to access to the courts to resolve disputes arising out of the attorney-client relationship must be viewed as inherently unenforceable and against public policy…

2005 NY Slip Op 25558, 11 Misc.3d 572, 579-80, 812 N.Y.S.2d 243. Whatever precedential weight *Buckwalter* carried, it was extinguished mere months after its determination.

In light of the unreported authority upon which Defendant relies, Plaintiffs proffer that post-*Calvert*, Colorado would not enforce attorney-client agreements to arbitrate malpractice claims if the attorneys failed to comply with the requirements to fully inform the clients as to the scope and effect of the arbitration term as required by C RPC 1.8(h) and Comment 17 thereto (as

27

well as CRPC 1(e) and 1.4(b)). As set forth, *supra,* herein above, WTP does not even know if
Foster or Bolog explained the arbitration provision to Engelhorn before she signed it, and WTP
has produced no evidence of the information, if any, that its agents may have provided Engelhorn
about the arbitration provision. The arbitration provision in this case is also unlike those in
*Abramson* and *Hartley,* which contained considerably more information about the scope and effect
of their respective arbitration provisions. The arbitration provision at issue would not be sufficient
under Colorado law, even if it applied, and there is no binding Colorado authority to the contrary.

**D.  The arbitration provision is not enforceable by or against the other Parties to this
action.**

Finally, even in the unlikely event that the Court finds that the arbitration term at issue is
enforceable by WTP against Engelhorn, the Court must not stay the other claims at issue herein.
Preliminarily, the Whitewater Trust and White Pear, LLC, are not signatories to the Retainer Letter.
Engelhorn did not sign the Retainer Letter in her capacity as a representative for White Pearl or as
the Trustee of Whitewater, nor could she as neither existed on February 27, 2020. Moreover, WTP
and Bolog provided legal services to the Whitewater Trust under different terms than those which
appear in the Retainer Letter, specifically Bolog billed far more than the $500 per hour set forth in
the Retainer. WTP concedes that between October 1, 2021 and December 13, 2022 Bolog and
WTP issued invoices to Engelhorn for legal services at rates higher than the $500 per hour
maximum in the Retainer.[8] Exhibit B at #17. WTP also admits that it did not have a written
agreement with Engelhorn "that authorized [WTP] to bill for attorney's services in excess of
$500.00 per hour." **Exhibit B** at #5. WTP also notes that it is unable to discern whether Bolog
and Engelhorn reached an oral agreement wherein WTP and Bolog would represent Engelhorn at

---

[8] Whitewater was created September 30, 2021.

28

rates above $500.00 per hour with respect to matters which are separate from the Estate Litigation which is the subject of the Retainer Letter. *Id*.   Since it is not apparent whether the Retainer Agreement is actually the pending agreement between the Parties, or if it was superseded by some oral agreement Bolog made with Engelhorn on behalf of WTP, this is another basis to deny WTP's petition to arbitrate.    Indeed, all of the actions complained of in the FAC occurred after the resolution of the Estate Litigation and beginning October 1, 2021 the fees charged to Plaintiffs are no longer capped at $500 per hour.   In fact, Willman, Bolog, and Smith billed Engelhorn at rates exceeding $500 for their role in the creation of the JAREB Irrevocable Trust in early October 2021. FAC ▯ 114 (outlining billing entries in early October 2021 in connection with JAREB).   Clearly, Bolog, Willman, Smith, Baker, and WTP were not operating under the February 27, 2020 Retainer Letter when they facilitated the $10 Million "gift."   Likewise, the fraud with respect to Defendants Swain Landing, Darnestown, and Science Park all occurred after October 1, 2021, when the apparent new oral agreement appears to have commenced. *See* FAC *passim*.   Thus to the extent that WTP argues that Whitewater, White Pearl, and Engelhorn's post settlement behavior "presumes the existence of"[9] an agreement containing an arbitration clause; it is false.   Clearly,

---

[9] The cases WTP relies on in asserting that non-signatories can be bound by arbitration terms all concerned equitable estoppel. *Case Handyman & Remodeling Servs., LLC v. Schuele*, 183 Md. App. 44, 65, 959 A.2d 833, 846 (2008) (non-signatory franchisor could enforce term against signatory parties where the claims against franchisor stemmed solely from the contract); Dist. Moving & Storage Co. v. Gardiner & Gardiner, Inc., 63 Md. App. 96, 104(1985) (arbitration clause enforceable against non-signatory who claimed to be a third-party beneficiary); *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (applying Federal law, a non-signatory forced to arbitrate because it was seeking to enforce an agreement with an arbitration term). This concept is inapplicable here, because all of Plaintiffs claims against Defendant WTP arise from Bolog's role as a trustee (which does not stem from the contract) and his role as their attorney post-settlement which arise in common law and MARPC 19-301.8 and none of the claims allege a breach of a specific term of the Retainer.  *See* Abramson, 184 Md. App. 189 at 202-205.

Plaintiffs claims against the other Defendants are not premised on the existence of any contract with WTP, and so those Defendants cannot force, or be forced, to arbitrate int this matter.

### III.    <u>CONCLUSION</u>

This Court should deny Defendant WTP's motion to stay and compel arbitration because Maryland has a strong public policy prohibiting attorneys and firms from prospectively limiting their liability for malpractice by inserting arbitration clauses in their retainer agreements unless the client is represented by independent counsel in making said agreement.  In this case, Engelhorn was not represented by independent counsel when she entered into the Agreement, and Maryland courts will not enforce agreements that would violate the Maryland Attorney's Rules of Professional Conduct.  Alternatively, Colorado would apply Maryland substantive law, and under *renvoi,* this Honorable Court should apply Maryland law to the arbitration term at issue, which prohibits the arbitration term at issue.  Finally, even if Colorado would apply its own law, Colorado would not enforce the arbitration term under these facts because Defendants failed to fully inform Engelhorn as to the scope and effect of the arbitration term, as required by Colorado's Rules of Professional Conduct.  The Defendant's Motion must be denied in its entirety.

<div style="margin-left:40%">

Respectfully submitted:

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*

</div>

## HEARING REQUESTED

Plaintiffs respectfully request a hearing on all issues raised in Defendant's Petition seeking an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, Plaintiffs' Opposition thereto, and any other document filed with respect to the same.

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 17th day of December 2024, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

32

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

# IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| **v.** | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

## AFFIDAVIT OF DOUGLAS F. GANSLER

1.      I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2.      I am a partner at Cadwalader, Wickersham & Taft LLP and I represent Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") in the above-captioned action.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the December 18, 2024, letter I received from Mr. Wes P. Henderson of the law firm Henderson Law, LLC and counsel for Plaintiff Claudia Engelhorn.

I solemnly affirm on this 23rd day of December, 2024, under penalty of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

Douglas F. Gansler

# **EXHIBIT A**

# HENDERSON | LAW

December 18, 2024

**VIA EMAIL**
Douglas F. Gansler, Esq.
J.B. Howard, Esq.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006

   **Re:**   **Engelhorn, et al. v. Whiteford, Taylor & Preston, LLP, et al.**
      **Case No.: C-24-CV-24-002631**

Dear Messrs. Gansler and Howard:

   I am writing regarding your clients' recent responses to discovery in the above-referenced matter, in which your clients responded, in pertinent part, as follows:

   *"Until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court."*

   As you are aware, the Court has not granted the Motion to Stay Proceedings. Therefore, this case remains active, and the parties are obligated to comply with the applicable rules of discovery. Your clients' responses do not relieve them of their duty to provide full and complete discovery responses in accordance with the Maryland Rules. Additionally, I note that the Answers to Interrogatories your clients provided are not signed under oath, as required by Maryland Rule 2-421(b). This deficiency renders the responses invalid and noncompliant with the rules governing discovery.

   Pursuant to Maryland Rules 2-431, 2-432, and 2-433, I am providing this letter as a good faith effort to resolve these issues without Court intervention. I request that you advise me by **Monday, December 23, 2024**, as to whether your clients will be immediately retracting their position and producing substantive discovery responses in accordance with the Maryland Rules. If we do not receive said assurance by the 23rd, then we will have no choice but to file a motion to compel discovery and seek all appropriate remedies. This letter represents a good faith effort to avoid a discovery dispute.

   Should you have any questions or wish to discuss this matter further, do not hesitate to contact me.

      Sincerely,

      /s/ WPH

      Wes P. Henderson

WPH/kd

cc: Claudia Engelhorn

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**CLAUDIA ENGELHORN**, *et al.*,          )
                                                                    )
                                                                    )
       *Plaintiffs*                                             )
                                                                    )
v.                                                                 )          **Case No.: C-24-CV-24-002631**
                                                                    )
                                                                    )
                                                                    )
**WHITEFORD, TAYLOR & PRESTON,**    )
**LLP** *et al.*,                                           )
                                                                    )
                                                                    )
       *Defendants*.                                        )

---

### DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN ROAD'S MOTION FOR A PROTECTIVE ORDER

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby move for a protective order under Maryland Rule 2-403 against all discovery served by Plaintiff Claudia Engelhorn ("Ms. Engelhorn") pending this Court's resolution of the Petition to Compel Arbitration and Motion to Stay Proceedings filed by Defendant Whiteford, Taylor & Preston, LLP ("WTP").

### PRELIMINARY STATEMENT

Shortly on the heels of filing an Amended Complaint containing multiple scattershot and legally defective claims indiscriminately naming a raft of Defendants, Plaintiff Ms. Engelhorn propounded hundreds of unfocused and largely incomprehensible document requests and interrogatories on the Bolog Defendants, all while meritorious motions to dismiss, a petition to compel arbitration, and a motion to stay are pending before this court. The Bolog Defendants are

entitled to a protective order against Ms. Engelhorn's discovery until at least such time as the Court

has resolved the outstanding motions to stay and for an order compelling arbitration. It would be

colossally wasteful and inefficient to proceed with discovery at this time.

## FACTS

On September 10, 2024, Plaintiffs filed their original complaint, simultaneously

propounding on the Bolog Defendants hundreds of document requests and interrogatories that

appear to have been drafted by paralegals or untrained lawyers. On October 31, 2024, Plaintiffs

filed an amended complaint including additional claims and allegations and, among other things,

named WTP as a Defendant in certain claims not previously brought against them. On November

15, 2024, WTP filed a Petition for an Order Compelling Arbitration (the "Arbitration Petition")

and Staying Proceedings and Motion to Dismiss or Stay. On November 18, 2024, the Bolog

Defendants filed Motions To Strike, For a More Definite Statement, and To Dismiss for Failure to

State Upon a Claim Upon Which Relief can be Granted.

On December 17, 2024, the Bolog Defendants filed a Response to the Arbitration Petition

with this Court, stating that while the "claims against the Bolog Defendants are nonarbitrable,"

this case should nonetheless be stayed in its entirety (including discovery) until the Court rules on

the Arbitration Petition. On that same day, the Bolog Defendants served responses and objections

to Ms. Engelhorn's document requests and interrogatories. Consistent with the position taken in

the Response to the Arbitration Petition, the Bolog Defendants' responses asserted that discovery

was inappropriate during the pendency of the Arbitration Petition. On December 18, 2024, counsel

for Ms. Engelhorn sent a letter to counsel for the Bolog Defendants threatening to file a motion to

compel discovery if the Bolog Defendants did not retract their position and answer the discovery

within three business days of the letter, *i.e.*, today, December 23, 2024. *See* Ex. A to Gansler

Affidavit.

## ARGUMENT

Under Rule 2-403, a party may move for an order "to protect a party from annoyance . . . undue burden or expense." Md. Rules 2-403. Requiring the Bolog Defendants to respond to Plaintiff's hundreds of discovery requests while the Arbitration Petition and accompanying motion for stay are pending would manifestly impose "undue burden" and "expense." Moreover, to do so would allow Plaintiff to "jump the line" in the orderly process that Maryland law provides for in cases where there are or may be parallel arbitration proceedings. There is no doubt that the Court will in due course enter the stay required by the Maryland Uniform Arbitration Act ("MUAA"), which provides: "A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) *A petition for order to arbitrate has been filed*; or (2) An order for arbitration has been made." Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) (emphasis added); *see Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). The statute is clear and unambiguous.

Although the Bolog Defendants contend that the claims against them are not arbitrable in their Response to the Arbitration Petition and Motion to Stay Proceedings, filed on December 17, 2024, the Bolog Defendants nevertheless recognize the possibility that this Court may compel one or more such claims to be arbitrated, or that the arbitration panel may interpret the arbitration agreement as reaching some of those claims and, subsequently, determining what, if any, discovery should be appropriate. Nonetheless, as noted above, the pendency of the Arbitration Petition in and of itself mandates the entry of a stay of at least some of this action. As courts routinely rule, "the interests of judicial economy weigh in favor of a stay" because the Petition to Compel Arbitration "could have a potentially dispositive effect on this case." *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap., LLC*, 2022 WL 16836202, at *1 (M.D.N.C. Sept. 15, 2022) (also finding that "any potential prejudice to Plaintiff due to a stay of discovery is likely

3

minimal"). Discovery against any of the Bolog Defendants is inappropriate until that occurs and, indeed, thereafter while the arbitration is pending. Moreover, this Court's ruling on the Arbitration Petition could have a collateral effect on issues of jurisdiction and venue, creating the possibility that some or all of the claims against the Bolog Defendants might ultimately never go forward in this Court.

For example, the *only* Defendant in this case with any tie to Baltimore City is WTP. If this action were to move forward without WTP as a party, there would be no Defendant as to whom venue is proper in Baltimore Circuit Court. Md. Code Ann., Cts. & Jud. Proc. § 6y-201(b). To proceed with discovery under the aegis of this Court when the case may well be transferred would be inappropriate. Thus, the Bolog Defendants "face[] irreparable prejudice if full-scale discovery proceeds at this time, and Plaintiffs will not be prejudiced by a brief delay in discovery[.]" *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 2122869, at *2 (D. Minn. May 8, 2018). Accordingly, discovery should not proceed until there is clarity on which claims and issues, if any, will properly be before the Court.

Furthermore, even if none of the claims against the Bolog Defendants are submitted to arbitration, those against WTP almost certainly will be; WTP is highly likely to succeed on its Arbitration Petition, which relies on a clear, unambiguous, and enforceable arbitration clause as set forth in the explicit agreement between Ms. Engelhorn and WTP in the retainer agreement. *See* Ex. A(14) to the Arbitration Petition filed on November 15, 2024. At that point, discovery would commence in the arbitration proceeding per the JAMS arbitration rules. But if discovery were allowed to move forward in this Court before the Court ruled on the Arbitration Petition, and thereafter, any arbitration itself, it is all but certain that the parties will become enmeshed in overlapping, duplicative, and piecemeal discovery, resulting in a monumental waste of the Court's

and parties' resources. *See, e.g.*, *Ramirez v. Equifax Info. Servs., LLC*, 2024 WL 3259669, at *2 (E.D. Tex. July 1, 2024) ("Thus, if a stay is not entered, [defendant] faces the burden of discovery in federal court and loses the potential advantage of less intrusive discovery" in arbitration); *Williams v. Bankers Life & Cas. Co.*, 2022 WL 187809, at *2 (M.D. La. Jan. 20, 2022) ("the Court finds that proceeding with discovery in this setting does not further the interest of judicial efficiency, particularly when, as stated above, there is no governing scheduling order in this case and, therefore, no impending discovery deadlines").[1]

Discovery at this stage would be especially wasteful in the context of this case. Plaintiff has propounded hundreds of document requests on the Bolog Defendants, many of them are impossibly broad and incomprehensible; all of the interrogatory requests far exceed the number allowed by the Maryland Rules,[2] the vast majority are unintelligible and incomprehensible, and it would take days of meet-and-confers to understand and determine the scope of the requests and narrow them appropriately. There is unlikely to be agreement on all such issues, and substantial motions practice is all but guaranteed, all while the arbitration process (and the discovery allowed in that process) will be proceeding. Thereafter, weeks of preparation and attorney review would then be required before any documents could be produced.

Plaintiff's push for essentially limitless discovery today on issues encompassing every aspect of this case is inappropriate and wasteful, given the likelihood of the arbitration of at least some of the parties, issues and claims, not to mention that the pending motions to dismiss will

---

[1] While "little Maryland case law providing guidance to trial courts on protective orders in connection with civil discovery matters" Maryland courts have noted that because "Maryland Rule 2-403(a) is based in large part on Federal Rule of Civil Procedure 26(c)," the Court may look for guidance to federal decisions construing the corresponding federal rule[.]" *Saint Luke Inst., Inc. v. Jones*, 471 Md. 312, 339 (2020).

[2] *See* Md. Rule 2-421 ("Interrogatories, however grouped, combined, or arranged and even though subsidiary or incidental to or dependent upon other interrogatories, shall be counted separately.").

likely significantly reduce the number of claims. And, as stated above, depending on the Court's ruling relating to the Arbitration Petition, it is far from certain that this Circuit will be the venue in which this case will proceed. In short, beginning discovery now would prejudice the Bolog Defendants by forcing them to incur substantial costs in complying with these discovery requests that will be duplicative to the arbitration process, irrelevant and premature.

## **CONCLUSION**

For the foregoing reasons, the Bolog Defendants respectfully request that the Court enter a protective order shielding them from discovery until after the Court resolves the pending Petition to Compel Arbitration and Motion for Stay, the Motions to Dismiss and depending on the Court's ruling relating to the Arbitration Petition, any motion for change of venue should WTP be removed from this matter.


*[Remainder of page intentionally omitted.]*

December 23, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2024, a copy of the foregoing, the accompanying proposed order, and Gansler Affidavit were served in the manner indicated on the following:

<u>**Counsel of Record Served via MDEC:**</u>
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

<u>**Parties Served Via First Class Mail:**</u>
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

## <u>MOTION FOR ALTERNATIVE SERVICE</u>

Plaintiffs, by and through their undersigned counsel, respectfully move this Honorable Court for an Order permitting alternative service of process on Defendant, Michael Postal, pursuant to Md. Rule 2-121(c), and respectfully state as follows:

1.      Plaintiffs initiated this action on September 10, 2024, by filing a Complaint and Demand for Jury Trial against Defendant, Michael Postal, and other Defendants.

2.      As evidenced by Exhibits A and B, Plaintiffs have made diligent and repeated efforts to serve Defendant Michael Postal with the pleadings and other papers, including:

      a.   Attempting personal service at Defendant Postal's last known address;

      b.   Conducting inquiries at the last known address to confirm Defendant's residence;

      c.   Utilizing a professional process server who has made numerous attempts to serve Defendant at various times of the day; and

      d.   Conducting a skip trace in order to locate the Defendant.

3.      Despite these efforts, Defendant Michael Postal has evaded service and cannot be personally served through traditional means.

4.      Maryland Rule 2-121(c) permits alternative service of process when personal service is impracticable or when a defendant is evading service.

5.      Courts have discretion to authorize alternative methods of service, including service by publication, posting, or mail, provided such methods are reasonably calculated to provide notice to the defendant and satisfy due process requirements.

6.      Based on a Skip Trace, Defendant's last known address is believed to be **1801 16th Street Northwest Apt 608, Washington DC 20009**. *See* Exhibit B.

7.      In this case, Plaintiffs propose the following alternative method of service, which is reasonably calculated to provide notice to Defendant, Michael Postal:  Service by priority mail, postage prepaid, to Defendant's last known address at 1801 16th Street Northwest Apt 608, Washington DC 20009.

8.      While ordinarily, Plaintiffs would propose posting the service packet on Mr. Postal's door, it appears that 1801 16th Street is a secured apartment building, such that a process server could not access Mr. Postal's door unless Mr. Postal cooperated in letting them into the building.

9.      Plaintiffs have made diligent efforts to serve Defendant, Michael Postal, through traditional means but have been unable to do so due to Defendant's apparent evasion of service.

10.      The proposed alternative method of service is reasonable, complies with due process requirements, and is likely to provide Defendant Postal with actual notice of this action.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant this Motion for Alternative Service and authorize Plaintiffs to serve Defendant, Michael Postal, by mailing the Complaint, as amended, Writ of Summons, and all other papers in the above action to Defendant

Postal via priority mail, postage prepaid to his last known address:  1801 16th Street Northwest Apt

608, Washington DC 20009.

Respectfully submitted:

/s/ PDG
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3<sup>RD</sup> day of January 2025, a copy of the aforegoing

Motion for Alternative Service was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16<sup>th</sup> Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

_____
        /s/ PDG
Patrick D. Gardiner, Esq. (AIS# 1506160113)

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### REVISED AFFIDAVIT OF C. ALLEN FOSTER

1.  I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2.  I am currently Senior Counsel at Whiteford, Taylor & Preston LLP ("Whiteford"), where I have worked since approximately 2014. I am admitted to practice law in the District of Columbia and North Carolina and in various federal courts across the country.

3.  I worked closely with Erik Bolog in various matters while he was at Whiteford and, previously, at other firms. I worked with Mr. Bolog on Claudia Engelhorn's challenge to her father's estate. Although Mr. Bolog had the initial contact through which Ms. Engelhorn was introduced to the firm, I played a significant role in bringing the matter to the firm and in the ensuing representation.

4.  Through a mutual friend, Richard Bussman, Ms. Engelhorn's adult son, referred Ms. Engelhorn to Mr. Bolog in 2019. Mr. Bolog discussed the potential matter with Mr. Bussman and we prepared an engagement letter for Ms. Engelhorn. A copy of a draft

engagement letter dated October 3, 2019, is attached hereto as Exhibit 1. A copy of an email reflecting that Mr. Bolog sent the draft engagement letter to Ms. Engelhorn on October 3, 2019, is attached hereto as Exhibit 2.

5.  A copy of a Whiteford business record reflecting an email dated October 14, 2019, between Mr. Bussman and Mr. Bolog, is attached hereto as Exhibit 3.

6.  Whiteford had continuing discussions with Mr. Bussman and Ms. Engelhorn about a possible representation through the winter of 2019-20.  I regularly discussed the potential matter with Mr. Bolog, along with the possible terms of the representation.

7.  On February 11, Mr. Bolog's and my legal assistant/paralegal sent another version of an engagement letter to Ms. Engelhorn, copying Mr. Bolog and me. Copies of that email and the draft engagement letter are attached hereto as Exhibits 4 and 5.

8.  A copy of a Whiteford business record reflecting an email string dated February 12, 2020, between Ms. Engelhorn and Mr. Bolog is attached hereto as Exhibit 6.

9.  On February 12, 2020, Mr. Bolog sent a copy of a draft engagement letter to Mr. Bussman, with a copy to Ms. Engelhorn and me. Copies of that email and the draft engagement agreement are attached hereto as Exhibits 7 and 8.

10. On February 20, 2020, Mr. Bolog's and my legal assistant/paralegal sent a revised version of the engagement agreement to Ms. Engelhorn, with a copy to me. Copies of the email and the engagement agreement are attached hereto as Exhibits 9 and 10.

11. I know from Whiteford business records and I personally recall that Mr. Bolog and I met with Ms. Engelhorn in Denver on February 28, 2020. I had arranged for the meeting to take place at the Denver office of a law firm where I'd previously worked. Copies of relevant records are attached hereto as Exhibits 11 and 12.

12. At the meeting, we gave Ms. Engelhorn ample opportunity to ask questions about the engagement agreement and we did discuss certain of the payment provisions in detail.  I am confident that I personally discussed the arbitration clause with Ms. Engelhorn because it was my practice to include such a clause in all engagement agreements and, in this particular case, I was concerned that Ms. Engelhorn was dissatisfied with her European counsel and intended to change the lead in the representation from them to us.  Our continuing legal education frequently reminds us to be cautious when clients are changing lawyers.

13. I do not recall exactly when we learned that Ms. Engelhorn had signed the engagement agreement, although I do recall learning at some point that she had signed it. My best recollection is that, after the discussion of the provisions of the engagement agreement in the February 28 Denver meeting, Ms. Engelhorn and her daughter separately discussed the potential representation and then told us that they were satisfied with the terms.  Whiteford's business records reflect that, on February 28, 2020, Mr. Bolog sent a photograph of the signature page of the engagement agreement dated February 20, 2020, to his assistant and me, and that Ms. Engelhorn's signature is dated February 27, 2020.  I do not recall whether Ms. Engelhorn gave us

the signature page at the meeting or supplied it later to Mr. Bolog. Copies of Mr.

Bolog's February 28 email and the signature page from Ms. Engelhorn are attached

hereto as Exhibit 13 and 14. The complete engagement agreement consists of Exhibits

10 and 14.


I solemnly affirm under the penalties of perjury and upon personal knowledge that
the contents of this document are true.

C. Allen Foster

# EXHIBIT A(1)

## Whiteford, Taylor & Preston L.L.P.

Erik D. Bolog
Senior Counsel
Direct Line (202) 659-6770
Direct Fax (202) 689-3162
EBolog@wtplaw.com

1800 M Street, NW, Suite 450N
Washington, D.C.  20036-5405

Main Telephone (202) 659-6800
Facsimile (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

October 3, 2019

**VIA ELECTRONIC MAIL**
richbuss@gmail.com

Mrs. Claudia Engelhorn
c/o Mr. Richard Bussman

Re:        **Retainer Letter re: All Claims Regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure speaking with you and Richard regarding the above-referenced matter. I am truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate. (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

PHASE 1.

We will investigate the claims, review whatever materials are available regarding Your claims and attend a to be scheduled meeting with Your current lawyers to fully assess Your options.  For these tasks, we will charge our typical hourly rates ($850.00 for Allen Foster and

October 3, 2019
Page 2

myself and for our other partners and associates, between $350.00-$650.00 per hour), plus expenses. We agree to place a fee cap for Phase 1 work at $25,000.00, plus expenses.

PHASE 2.

After the completion of Phase 1, if You choose to move forward with Your claims, WTP will agree to continue the representation on a blended fee arrangement. As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself. Our other partners and associates charge between $350.00-$650.00 per hour. For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates. In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and

October 3, 2019
Page 3

are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

Attachment

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____
Claudia Engelhorn

October 3, 2019
Page 4

# WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

## Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

## Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

## Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

October 3, 2019
Page 5

## Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

## Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

## Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

You have the right at any time to terminate our services and representation upon written notice to the firm. We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred

October 3, 2019
Page 6

on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

# EXHIBIT A(2)

| | |
|---|---|
| **From:** | Bolog, Erik[EBolog@wtplaw.com] |
| **Sent:** | Wed 2/5/2020 2:53:50 PM (UTC-05:00) |
| **To:** | West, Nicole[NWest@wtplaw.com] |
| **Subject:** | FW: Bolog Folios |
| **Attachment:** | 2019.10.03 - Engagement Ltr to Bussman re Engelhorn.PDF |

Put this in our binders.

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Bolog, Erik
**Sent:** Thursday, October 03, 2019 3:59 PM
**To:** 'richbuss@gmail.com' <richbuss@gmail.com>
**Subject:** FW: Bolog Folios

Richard,

Please find attached an engagement letter.  Please call with any questions or comments.

Best,

Erik

**Erik D. Bolog|** *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

# EXHIBIT A(3)

**From:**      Richard Bussmann[richbuss@gmail.com]
**Sent:**      Mon 10/14/2019 12:29:52 PM (UTC-04:00)
**To:**        Bolog, Erik[EBolog@wtplaw.com]
**Subject:**   [EXTERNAL] RE: new matter

Good morning Erik,

She is in the process of reviewing the situation with the Swiss lawyers as there are still a number of
questions outstanding. I had a discussion with her over the weekend and she is not signing the
settlement but is scheduling weekly meetings to evaluate where we really are.

She attended a brief by the Swiss Lawyers and has some questions related to how you would really be
able to help considering it is a swiss case in swiss courts.

For now nothing is off the table but she isn't ready to sign a retainer letter. I will let you know as this
situation develops, right now we are processing and collecting the information from the current legal
team.

Thanks!

Richard

**From:** Bolog, Erik
**Sent:** Monday, October 14, 2019 11:22 AM
**To:** richbuss@gmail.com
**Subject:** new matter

Richard,

Should we expect to hear back from you and your mother re the matter we discussed?

Please advise.

Best regards,

Erik

**Erik D. Bolog**| *Senior Counsel*

 **Whiteford | Taylor | Preston**

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768

Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

# EXHIBIT A(4)

| From: | West, Nicole[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NWRAY] |
|---|---|
| Sent: | Tue 2/11/2020 2:58:37 PM (UTC-05:00) |
| To: | Claudia Chimarro[rcpclaudia76@gmail.com] |
| Cc: | Foster, C. Allen[CAFoster@wtplaw.com]; Bolog, Erik[EBolog@wtplaw.com] |
| Subject: | RE: [EXTERNAL] Re: info |
| Attachment: | 2020.02.11 - Engagement Ltr to Engelhorn.PDF |

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com | www.wtplaw.com

*WTP is a proud member of two global law firm networks.*

 

 Please consider the environment before printing this email.

---

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my

father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

 **Whiteford | Taylor | Preston.**

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:

Thank you for sending.  I will read them all and be prepared to deal with the issues when we meet on Monday.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*

&lt;image001.jpg&gt;

1800 M Street, NW, Suite 450N | Washington, DC | 20036

**Telephone:** 202.659.6770 **Fax:** 202.689-3162

ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 6:03 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Hi Eric

I flooded your inbox.

Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>
> Then we shall meet Monday.  I will provide you the details of where and when later this week.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
>
> &lt;image001.jpg&gt;
>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
>
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
>
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as well.

Thanks,
Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:35 PM, Bolog, Erik
> <EBolog@wtplaw.com> wrote:
>
>
> Claudia,
>
> I would like to have my partner Allen Foster join us as well.
> He is unavailable Friday.  He is available Thursday (but you
> mentioned that you have a doctor's appointment in SF on
> Thursday).  We could meet you in SF on Thursday afternoon,
> after your Doctor's appointment, or meet in Denver on
> Monday.  If neither of these options work, I will meet you on
> Friday in Denver.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and looking
forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC |
20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of
Whiteford, Taylor & Preston LLP which may be confidential
and/or privileged. The information is intended to be for the
exclusive use of the planned recipient. If you are not the intended
recipient, be advised that any disclosure, copying, distribution or
other use of this information is strictly prohibited. If you have
received this transmission in error, please notify the sender
immediately.

# EXHIBIT A(5)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 11, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:          **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter.  We are truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a blended fee arrangement.  As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself.  Our other partners and associates charge between $350.00-$650.00 per hour.  For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates.  In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a

February 11, 2020
Page 2

contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

February 11, 2020
Page 3

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____

Claudia Engelhorn

February 11, 2020
Page 4

## WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

### Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

### Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 11, 2020
Page 5

## Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

## Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

## Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

## Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 11, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm.  We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

# EXHIBIT A(6)

**From:**          Claudia Chimarro[rcpclaudia76@gmail.com]
**Sent:**          Wed 2/12/2020 5:30:58 PM (UTC-05:00)
**To:**            Bolog, Erik[EBolog@wtplaw.com]
**Subject:**       [EXTERNAL] Re: let me know when we can touch base

Yes thanks

Sent from my iPhone


On Feb 12, 2020, at 3:16 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:


Can I call you at 4 pm your time?

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>


1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com


**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 12, 2020 4:04 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: let me know when we can touch base

You can call me in an hour if possible.
Claudia

Sent from my iPhone


On Feb 12, 2020, at 12:05 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:


**Erik D. Bolog|** *Senior Counsel*

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which
may be confidential and/or privileged. The information is intended to be for the exclusive use of the
planned recipient. If you are not the intended recipient, be advised that any disclosure, copying,
distribution or other use of this information is strictly prohibited. If you have received this transmission
in error, please notify the sender immediately.

# EXHIBIT A(7)

| From: | Bolog, Erik[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BOLOG, ERIK722] |
|---|---|
| Sent: | Wed 2/12/2020 6:18:55 PM (UTC-05:00) |
| To: | richbuss@gmail.com[richbuss@gmail.com] |
| Cc: | Claudia Chimarro[rcpclaudia76@gmail.com]; Foster, C. Allen[CAFoster@wtplaw.com] |
| Subject: | FW: [EXTERNAL] Re: info |
| Attachment: | 2020.02.11 - Engagement Ltr to Engelhorn.PDF |

Richard,

I hope all is well.  Allen Foster and I met with your mother on Monday in Denver.  I have attached the retainer letter we have sent to her for your review and comment.

Please let me know if you have any questions.

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** West, Nicole <NWest@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 2:59 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; Bolog, Erik <EBolog@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com  | www.wtplaw.com

 

WTP is a proud member of two global law firm networks.

 Please consider the environment before printing this email.

---

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

**Whiteford | Taylor | Preston**℠

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

> On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>
> Thank you for sending.  I will read them all and be prepared to deal with the issues when we meet on Monday.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 6:03 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>

**Subject:** [EXTERNAL] Re: info

Hi Eric

I flooded your inbox.

Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:

> Then we shall meet Monday.  I will provide you the details of where and when later this week.

> Best regards,

> Erik

> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com

> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as well.

Thanks,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:35 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:


Claudia,

I would like to have my partner Allen Foster join us as
well.  He is unavailable Friday.  He is available
Thursday (but you mentioned that you have a
doctor's appointment in SF on Thursday).  We could
meet you in SF on Thursday afternoon, after your
Doctor's appointment, or meet in Denver on
Monday.  If neither of these options work, I will meet
you on Friday in Denver.

Best regards,

Erik

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com


**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and
looking forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N |
Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-
3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law
firm of Whiteford, Taylor & Preston LLP which may be
confidential and/or privileged. The information is
intended to be for the exclusive use of the planned
recipient. If you are not the intended recipient, be
advised that any disclosure, copying, distribution or
other use of this information is strictly prohibited. If
you have received this transmission in error, please
notify the sender immediately.

# EXHIBIT A(8)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 11, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:                 **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter.  We are truly sorry about the circumstances making our meeting necessary. We are pleased that you ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights in Curt Engelhorn's estate (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a blended fee arrangement.  As set forth above, our typical hourly rates are $850.00 for Allen Foster and myself.  Our other partners and associates charge between $350.00-$650.00 per hour.  For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates.  In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs), we will also be paid out a

**Whiteford, Taylor & Preston L.L.P. is a limited liability partnership.  Our Delaware offices are operated under a separate Delaware limited liability company, Whiteford, Taylor & Preston L.L.C.*

February 11, 2020
Page 2

contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to (a) receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

February 11, 2020
Page 3

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____

Claudia Engelhorn

February 11, 2020
Page 4

## WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel.  The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

### Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation.  We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter.  We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services.  We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services.  To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation.  When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter.  Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation.  The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

### Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client.  These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 11, 2020
Page 5

**Billing**

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

**Advanced Fees/Retainers**

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake.  We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation.  We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client.  We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

**Professional Ethics/Confidentiality**

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients.  This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer.  In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation.  Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you.  The confidentiality of our discussions is, however, not without exceptions.  We will explain these exceptions to you if you request us to do so.  Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions.  In those cases, our professional responsibilities are owed to the entity.  Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances.  Like most businesses, our firm customarily arranges for financing with one or more lending institutions.  Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients.  Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

**Termination of Services**

If our invoices are not paid promptly, we reserve the right to terminate the representation.  Generally, any payments made are applied first to the oldest outstanding invoice.  In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 11, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm.  We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

# EXHIBIT A(9)

| **From:** | West, Nicole[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NWRAY] |
|---|---|
| **Sent:** | Thur 2/20/2020 2:34:31 PM (UTC-05:00) |
| **To:** | Claudia Chimarro[rcpclaudia76@gmail.com] |
| **Cc:** | Foster, C. Allen[CAFoster@wtplaw.com]; Bolog, Erik[EBolog@wtplaw.com] |
| **Subject:** | RE: [EXTERNAL] Re: info |
| **Attachment:** | 2020.02.20 - Engagement Ltr to Engelhorn.PDF |

Good Afternoon Claudia:
Attached is our firms revised engagement letter for your review and signature. Once signed, you can
email it back to me.
Thank you,
Nicole

**From:** West, Nicole
**Sent:** Tuesday, February 11, 2020 2:59 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; Bolog, Erik <EBolog@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia: Attached is our firms engagement letter for your review and signature.
Thank you,
Nicole



**Nicole W. West** | *Paralegal*
*Legal Assistant to: Erik D. Bolog*
1800 M Street, NW, Suite 450N | Washington, DC | 20036
t:  202.659.6768 | f:  703.259.6532
nwest@wtplaw.com | www.wtplaw.com

*WTP is a proud member of two global law firm networks.*

 

🌿 Please consider the environment before printing this email.

**From:** Bolog, Erik <EBolog@wtplaw.com>
**Sent:** Tuesday, February 11, 2020 12:29 PM
**To:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Cc:** Foster, C. Allen <CAFoster@wtplaw.com>; West, Nicole <NWest@wtplaw.com>
**Subject:** RE: [EXTERNAL] Re: info

Claudia,

It was a pleasure meeting with the both of you yesterday and we are very much looking forward to working with you.  I will forward you a retainer letter today.  Please review and call me with any questions or comments.  If you have none, please execute and return to me as soon as possible.

We suggest that you forward Martin the following email:

Martin,

As I have advised you, I am not accepting Heidi's most recent offer.  I do not wish to discuss this matter with you any further, other than to say that I will continue the litigation against Heidi and my father's estate.  Please refrain from having any communications on my behalf with anyone relating to the dispute, including the lawyers.  You are not authorized by me to direct the lawyers to take any particular action, nor to make any representation to anyone as to what I will agree to (nor have you ever been).

Also, please do not include our children in this dispute.  I was particularly upset to receive a call from Margaret, pushing me to follow your lead and accept an offer which I do not believe to be in my (or our kids) best interests.

Claudia

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*

 **Whiteford | Taylor | Preston.**

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Wednesday, February 05, 2020 11:38 AM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re: info

Thanks

Sent from my iPhone

> On Feb 5, 2020, at 8:06 AM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>
> Thank you for sending.  I will read them all and be prepared to deal with the issues when we meet on Monday.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*
> <image001.jpg>
> 1800 M Street, NW, Suite 450N | Washington, DC | 20036
> **Telephone:** 202.659.6770 **Fax:** 202.689-3162
> ebolog@wtplaw.com | www.wtplaw.com
>
> Legal Assistant & Paralegal:
> Nicole W. West
> Phone: 202.659.6768
> Fax: 703.259.6532
> nwest@wtplaw.com
>
> ---
>
> **From:** Claudia Chimarro <rcpclaudia76@gmail.com>
> **Sent:** Tuesday, February 04, 2020 6:03 PM
> **To:** Bolog, Erik <EBolog@wtplaw.com>
> **Subject:** [EXTERNAL] Re: info
>
> Hi Eric
>
> I flooded your inbox.
>
> Claudia
>
> Sent from my iPhone
>
>> On Feb 4, 2020, at 2:43 PM, Bolog, Erik <EBolog@wtplaw.com> wrote:
>>
>> Then we shall meet Monday.  I will provide you the details of where and when later this week.
>>
>> Best regards,
>>
>> Erik

**Erik D. Bolog|** *Senior Counsel*

<image001.jpg>

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:39 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

Monday is better for me. This way my daughter would come as well.

Thanks,
Claudia

Sent from my iPhone

> On Feb 4, 2020, at 2:35 PM, Bolog, Erik
> <EBolog@wtplaw.com> wrote:
>
> Claudia,
>
> I would like to have my partner Allen Foster join us as well.
> He is unavailable Friday.  He is available Thursday (but you
> mentioned that you have a doctor's appointment in SF on
> Thursday).  We could meet you in SF on Thursday afternoon,
> after your Doctor's appointment, or meet in Denver on
> Monday.  If neither of these options work, I will meet you on
> Friday in Denver.
>
> Best regards,
>
> Erik
>
> **Erik D. Bolog|** *Senior Counsel*

1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

---

**From:** Claudia Chimarro <rcpclaudia76@gmail.com>
**Sent:** Tuesday, February 04, 2020 4:31 PM
**To:** Bolog, Erik <EBolog@wtplaw.com>
**Subject:** [EXTERNAL] Re:

Hi Eric

This is my e-mail. Thanks for the phone call and looking
forward to meeting you.
I will forward what I can find.

Sincerely,
Claudia

Sent from my iPhone

On Feb 4, 2020, at 2:06 PM, Bolog, Erik
<EBolog@wtplaw.com> wrote:

**Erik D. Bolog|** *Senior Counsel*
<image001.jpg>
1800 M Street, NW, Suite 450N | Washington, DC |
20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

This transmission contains information from the law firm of
Whiteford, Taylor & Preston LLP which may be confidential
and/or privileged. The information is intended to be for the
exclusive use of the planned recipient. If you are not the intended
recipient, be advised that any disclosure, copying, distribution or
other use of this information is strictly prohibited. If you have
received this transmission in error, please notify the sender
immediately.

# EXHIBIT A(10)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

ERIK D. BOLOG
SENIOR COUNSEL
DIRECT LINE (202) 659-6770
DIRECT FAX (202) 689-3162
EBolog@wtplaw.com

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405

MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

February 20, 2020

**VIA ELECTRONIC MAIL**
rcpclaudia76@gmail.com
Ms. Claudia Engelhorn
7681 E. Easter Place
Centennial, CO 80112

Re:            **Retainer Letter re: All Claims regarding Estate of Curt Engelhorn**

Dear Claudia,

It was a pleasure meeting with you yesterday regarding the above-referenced matter.  I am truly sorry about the circumstances making our meeting necessary. We are, however, pleased that you   ("You") have chosen to engage Whiteford, Taylor & Preston L.L.P. ("WTP") to provide legal services in connection with your potential claims against the Estate of Curt Engelhorn (and, potentially, other persons who may come to our attention through the investigation into this matter) relating to your forced heir rights or other rights you may have concerning Trusts established by him. (the "Matter").

This letter, along with the attached Standard Terms of Engagement, sets forth the terms and conditions of our representation, and will constitute our agreement to provide legal services to You in conjunction with the Matter.

We agree to represent You relating to the Matter, including asserting all appropriate common law and statutory claims against all responsible parties and persons as well as to negotiate any potential settlement of the matter on Your behalf.  This agreement extends through trial of the action, but does not include any appeals for which a separate retention agreement will be necessary.  You have put us in contact with Tina Wuestemann of the firm Bar & Karrer, AG, the firm that has been representing you in the Matter, and have instructed us that we are to take the lead henceforth.  Because of the current state of the Matter and the settlement negotiations which have been underway, it is our intention to meet with them as soon as possible in order to develop our recommendations to you about the path forward.

You agree that, as compensation for our efforts, we will be paid as follows:

WTP will agree to represent you on a hybrid fee arrangement.  As set forth above, our

*"Whiteford, Taylor & Preston L.L.P. is a limited liability partnership.  Our Delaware offices are operated under a separate Delaware limited liability company, Whiteford, Taylor & Preston L.L.C.

February 20, 2020
Page 2

typical hourly rates are $850.00 for Allen Foster and myself. Our other partners and associates charge between $350.00-$650.00 per hour. For this matter, however, we agree to charge You flat rates of $500.00 per hour for partners and $250.00 per hour for associates. In addition to our hourly fees, which will be billed monthly along with the costs incurred (for example, expert witness fees, forensic accounting fees, computerized research costs, travel expenses and the like), we will also be paid out a contingency fee of any recovery that we obtain on Your behalf, as follows: (1) zero percent (0%) for the first $100,000,000.00 recovered; (2) Ten percent (10%) for any recovery between $100,000,000.00-$199,999,999.99; (3) Fifteen percent (15%) for any recovery between $200,000,000.00-$299,999,999.99; (4) Twenty percent (20%) for any recovery between $300,000,000.00-$399,999,999.99; (5) Twenty five (25%) for any recovery above $400,000,000.00 "Recovery" shall mean money or anything of value obtained for You from any source related to the claims after the date of our retention. By way of illustration, assume that you obtain a gross recovery of $350,000,000. Our fee would be -0- on the first one hundred million, 10% or $10,000,000 on the second hundred million, 15% or $15,000,000 on the third hundred million and 20% or $10,000,000 on the last fifty million. In other words, the contingency fee would total $35,000,000. In addition, responsive to your inquiry and request, we are willing to credit against this contingent fee the fees you have paid us on an hourly basis, by crediting 50% of those fees against the 10% contingency on the second hundred million and crediting the remaining fees against the 15% contingency on the third hundred million Using the example above, if you have paid us $2 million as of the time of resolution of the Matter, our contingent fee of $10,000,000 on the second hundred million would be reduced by $1 million to $9,000,000 and our contingent fee of $15,000,000 on the third hundred million would be reduced by $1 million to $14,000,000.

You agree that, in order for us to effectively render services, You will fully cooperate with us and You will be available to attend meetings and depositions as scheduled (if necessary).

You agree that we are authorized to negotiate compromises and settlement of Your claims and we agree that You retain final control of any such settlement, and that no authority is given to us to conclude a final settlement without Your advance consent. We agree that any settlement offer will be conveyed to You with our recommendation for acceptance or rejection. If we recommend a settlement to You which You do not accept, You will pay us all outstanding hourly billings and expenses advanced on Your behalf, plus pay us our percentage of the offered settlement from any recovery You ultimately receive. You are free to terminate our services at any time on thirty (30) days written notice and, if so, You will pay us all outstanding hourly billings, plus our percentage of any settlement or recovery obtained thereafter, whether by another lawyer or otherwise, with the understanding that our percentage will be paid first after such ultimate recovery. You agree not to settle this case independently, without having given us prior notice. If You do, we will be entitled to receive our agreed to hourly rates for the work to date, plus expenses and to receive our percentage from such settlement.

As we have discussed the Lawyers' Rules of Professional Conduct allow us to advance the costs and expenses of pursuing Your claim, but You ultimately must remain responsible for the payment of those costs and expenses. Cost and expenses include, for example, Court filing fees, service of process fees, expert witness fees, fees which must be paid to take the deposition testimony of the defendants' experts, court reporting fees, travel expenses (including hotel, meals

February 20, 2020
Page 3

and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
    Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____          Date: _____

Claudia Engelhorn

February 20, 2020
Page 4

# WHITEFORD, TAYLOR & PRESTON L.L.P.
## STANDARD TERMS OF ENGAGEMENT

We appreciate your decision to retain Whiteford, Taylor & Preston L.L.P. as your legal counsel. The following summarizes our billing practices and certain other terms that will apply to our engagement, unless otherwise specified in the accompanying Engagement Letter.

## Fees

When establishing fees for the services that we render, we are guided primarily by the time and labor required, although we also consider other factors, such as the novelty and difficulty of the legal issues involved, the legal skill required to perform the particular assignment, the fee customarily charged to comparable firms for similar legal services, the amount of money involved or at risk and the results obtained, the time constraints imposed by either the client or the circumstances, and any unforeseen circumstances arising in the course of our representation. We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter. We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services. We will attempt to provide as much billing information as the client requires, in the form desired.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the lawyer or lawyers in our firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on the lawyer's ability, experience, and reputation. When selecting lawyers to perform services for a client we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for lawyers' time changes periodically to account for increases in our costs of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. The effect of the foregoing factors upon any particular assignment given to us is difficult to predict with precision and for this reason we generally cannot give exact estimates of the total fees for our representation in connection with a particular matter.

## Disbursements

In addition to legal fees, our invoices include any out-of-pocket expenses we have advanced on behalf of the client. These advanced costs generally include such items as travel expenses, long distance telephone tolls, messenger and delivery service, the costs of terminal time for computer research, postage in excess of the first-class rate for ordinary letters, fees for filing, recording, certification, and registration charged by governmental bodies, and the cost of photocopying materials sent to the client or third parties or required for our use.

February 20, 2020
Page 5

## Billing

We generally bill monthly and our invoices are due within thirty (30) days of receipt. Statements of account are available monthly and generally contain a summary of each matter for which legal services were rendered and a fee was charged.

## Advanced Fees/Retainers

Our firm reserves the right to require an advance fee deposit with respect to new matters we undertake. We apply any advance fee deposit to the last monthly billing for the matter and we refund any excess at the conclusion of our representation. We may request an advance costs deposit (in addition to an advance fee deposit) when we anticipate that we will be required to incur substantial costs on behalf of the client. We reserve the right to use any part of said funds to satisfy a delinquent payment, and to discontinue representation until you forward funds to restore the full retainer.

## Professional Ethics/Confidentiality

As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exists to encourage candid and complete communication between a client and his lawyer. In order for us to maximize the benefit of our services for a client we must be aware of all information that might be relevant to our representation. Consequently, we trust that our attorney-client relationship with you will be based on mutual confidence and unrestrained communication that will facilitate our proper representation of you. The confidentiality of our discussions is, however, not without exceptions. We will explain these exceptions to you if you request us to do so. Additionally, you should be aware that, in instances in which we represent a corporation or similar legal entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners or persons in similar positions. In those cases, our professional responsibilities are owed to the entity. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, except that the consent of all clients may be required under some circumstances. Like most businesses, our firm customarily arranges for financing with one or more lending institutions. Our lenders may require us to collateralize our obligations with our accounts receivable or otherwise require disclosure of financial arrangements with our clients. Thus, the fact of our attorney-client relationship, but not the details of the representation, may be disclosed to our lenders.

## Termination of Services

If our invoices are not paid promptly, we reserve the right to terminate the representation. Generally, any payments made are applied first to the oldest outstanding invoice. In the unlikely event that collection activities are necessary, you agree that we are entitled to reasonable attorneys' fees and court costs in connection with such collection activities.

February 20, 2020
Page 6

You have the right at any time to terminate our services and representation upon written notice to the firm.  We reserve the right to withdraw from our representation in accordance with applicable rules of professional conduct if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. We will be entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf to the date of termination or withdrawal, as well as for services rendered and costs and expenses paid or incurred in connection with acquainting any new counsel with the matter and making copies of documents for the client, any new counsel and the firm.

We want to thank you again for selecting our firm.  We look forward to a mutually satisfying and rewarding relationship.

# EXHIBIT A(11)

| | |
|---|---|
| **From:** | Bolog, Erik[/O=WTP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BOLOG, ERIK722] |
| **Sent:** | Thur 2/27/2020 3:43:33 PM (UTC-05:00) |
| **To:** | Claudia Chimarro[rcpclaudia76@gmail.com] |
| **Subject:** | getting together |

Claudia,

I am looking forward to getting together tomorrow (if that still works for you).  We do need to get the retainer letter signed.  Let me know if you have any more questions.

Best regards,

Erik

**Erik D. Bolog** | *Senior Counsel*



1800 M Street, NW, Suite 450N | Washington, DC | 20036
**Telephone:** 202.659.6770 **Fax:** 202.689-3162
ebolog@wtplaw.com | www.wtplaw.com

Legal Assistant & Paralegal:
Nicole W. West
Phone: 202.659.6768
Fax: 703.259.6532
nwest@wtplaw.com

# EXHIBIT A(12)

| From: | mobleye@gtlaw.com[mobleye@gtlaw.com] |
|---|---|
| Sent: | Thur 2/27/2020 4:20:46 PM (UTC-05:00) |
| To: | seaborgj@contract.gtlaw.com[seaborgj@contract.gtlaw.com] |
| Cc: | Bolog, Erik[EBolog@wtplaw.com] |
| Subject: | [EXTERNAL] Denver GT Conference room, Friday Feb 28, |

Josh, I am copying Mr. Bolog on this email.  Below are the 4 guests that will use the Aspen Room tomorrow starting at 11 am through mid-afternoon (I booked it until 4 pm.)

Erik Bolog

Allen Foster

Claudia Engelhorn

Courtney Engelhorn

Thank you!

**Evonne Mobley**
Executive Assistant to Hon. Joe R. Reeder; Gen (ret) John D. Altenburg, Jr. & Ms. Juliana Laurello
Greenberg Traurig, LLP
2101 L Street N.W. | Washington, D.C. 20037
T 202.533.2325 | F 202.331.3101 | C 786.634.8847

mobleye@gtlaw.com  |  www.gtlaw.com [gtlaw.com]

 GreenbergTraurig

PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT A(13)

**From:**          Bolog, Erik[EBolog@wtplaw.com]

**Sent:**          Fri 2/28/2020 5:59:02 AM (UTC-05:00)

**To:**            West, Nicole[NWest@wtplaw.com]; Foster, C. Allen[CAFoster@wtplaw.com]

**Subject:**       IMG_1480.jpeg

**Attachment:**    IMG_1480.jpeg

**Attachment:**    ATT00001.txt

# EXHIBIT A(14)

February 20, 2020
Page 3

and air fare for our attorneys (Allen Foster and I fly business class, all other lawyers fly economy), consultant fees for jury research and trial or arbitration preparation materials, copying charges (limited to 10 cents per page or less for black and white and 50 cents per page for color), computerized legal research, and the like. Costs and expenses will be billed to You monthly and are payable upon Your receipt of the monthly invoice.

Because the outcome of this litigation is subject to certain risks inherent in the litigation process, You agree that we have made no promises or guarantees to You concerning the outcome and that we cannot do so. Nothing in this contract for representation shall be construed as a promise or guarantee as to the expected results of said litigation.

This agreement may be terminated by either of us, with or without cause, at any time upon reasonable written notice. You agree that reasons for our termination of the agreement for cause may include Your failure to cooperate with us. You also agree that, upon any termination, settlement or verdict, we are entitled to assert a lien on the proceeds of this matter to the greatest extent allowed by law.

Any claim or dispute arising out of or relating to this agreement, our services under it, or our relationship with You will be resolved by final and binding arbitration pursuant to the Rules and Procedures of JAMS, Inc. in Washington, D.C. Judgment on any award may be entered in any court of competent jurisdiction.

If these terms are acceptable to You, please countersign this letter where indicated below and return it to me promptly.

Thank You for providing us the opportunity to represent You in this matter.

Best Regards,

WHITEFORD, TAYLOR & PRESTON, LLP

By: _____
Erik D. Bolog/C. Allen Foster

I have read thoroughly and fully understand and agree with the above contract.

_____
Claudia Engelhorn

Date: 02-27-2020

Case 25-10044-ELG    Doc 40-1    Filed 07/03/25    Entered 09/24/25 19:53:27    Desc Baltimore City Circuit Court
Attachment    Page 593 of 1529

E-FILED; Baltimore City Circuit Court
Docket: 1/3/2025 3:34 PM; Submission: 1/3/2025 3:34 PM
Envelope: 19407561

# Exhibit A

### AFFIDAVIT OF NON SERVICE

| Case: C-24-CV-24-002631 | Court: Circuit Court for Baltimore City | County: Baltimore City, MD | Job: 11864316 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Claudia Engelhorn, et al. | | **Defendant / Respondent:** Erik Bolog, et al. | |
| **Received by:** Maverick Process Service & Investigations LLC | | **For:** Henderson Law, LLC | |
| **To be served upon:** Michael Postal | | | |

I, Monet Ballard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Anjon Jones, Home: 4302 Broken Arrow Court, Clinton, MD 20735

**Manner of Service:**   Substitute Service - Abode, Oct 8, 2024, 1:39 pm EDT

**Documents:**   Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; PLaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC.

**Additional Comments:**
1) Unsuccessful Attempt: Oct 8, 2024, 1:39 pm EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735
Attempt made, not served. Current resident Anjon Jones offered to accept the paperwork for Michael Postal

2) Unsuccessful Attempt: Oct 16, 2024, 11:31 am EDT at Home: 4302 Broken Arrow Court, Clinton, MD 20735
Attempted. Not served. Spoke with Anjon who stated that Michael doesn't live at this address.

3) Unsuccessful Attempt: Oct 16, 2024, 12:59 pm EDT at Second Possible Address for Michael Postal only if unable to serve at home address: 7333 New Hampshire Avenue Unit 103, Takoma Park, MD 20912
Attempted. Not served. Went to address and was able to gain access into building. Knocked but got no answer. There was a package at the door but did not have Michael's name on it. Went to rental office and asked if Michael lives in 103. She stated that the owner of the building lives in 103. She also said that Michael stayed with the owner for a while but left about a year ago. See attached

4) Unsuccessful Attempt: Oct 22, 2024, 12:19 pm EDT at Home: 1801 16th Street Northwest APT 608, Washington, DC 20009
Attempted, not served. Knocked but got no answer and heard no movement, however the receptionist did confirm that he does indeed live here.

5) Unsuccessful Attempt: Oct 23, 2024, 9:51 am EDT at Home: 1801 16th Street Northwest APT 608, Washington, DC 20009
Attempted. Not served. Building is locked and no one is at the front desk

6) Unsuccessful Attempt: Oct 28, 2024, 6:05 pm EDT at Home: 1801 16th Street Northwest APT 608, Washington, DC 20009

Attempt made, not served. No answer at apartment door. I asked the receptionist if he knows when he is typically home and he stated he does not.

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

| | 11/05/2024 |
|---|---|
| Monet Ballard | **Date** |

Maverick Process Service & Investigations LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

E-FILED; Baltimore City Circuit Court
Docket: 1/3/2025 3:34 PM; Submission: 1/3/2025 3:34 PM
Envelope: 19407561

# Exhibit B

# AFFIDAVIT OF DUE DILIGENCE

| Case:<br>C-24-CV-24-002631 | Court:<br>Circuit Court for Baltimore City | County:<br>Baltimore City, MD | Job:<br>11864316 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>Claudia Engelhorn, et al. | | **Defendant / Respondent:**<br>Erik Bolog, et al. | |
| **Received by:**<br>Maverick Process Service & Investigations, LLC | | **For:**<br>Henderson Law, LLC | |
| **To be served upon:**<br>Michael Postal | | | |

I, Brian McClernan, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Anjon Jones, Home: 4302 Broken Arrow Court, Clinton, MD 20735

**Manner of Service:** Substitute Service - Abode, Oct 8, 2024, 1:39 pm EDT

**Documents:** Writ of Summons; Complaint and Demand for Jury Trial; Civil Non-Domestic Case Information Report; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Whiteford Taylor & Preston, LLP; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Michael Postal; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, POJO LaPlata, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Darnestown Road, Inc.; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Science Park Associated, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Swain Landing LaPlata JC, LLC; Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant, Tenacity Investments, LLC; Plaintiff Claudia Engelhorn's Request for Production of Documents and Things to Defendant, Tenacity Investments, LLC. (Received Sep 24, 2024 at 12:00am EDT)

**Additional Comments:**
Oct. 17, 2024. This investigator performed an advance person search in an attempt to locate Michael Postal. The search returned the following:
1801 16TH ST NW APT 608, WASHINGTON, DC 20009-3324 (DISTRICT OF COLUMBIA COUNTY) (09/03/2024 to 10/17/2024)
Possible Subject's Phone
(301) 983-4488(ET) - MICHAEL POSTAL

Under the penalties of perjury I declare that I have read the forgoing Affidavit of Service and the facts stated in it are true.

_____    12/08/2024
Brian McClernan                                                            **Date**

Maverick Process Service & Investigations, LLC
9 Westminster Shopping Center #384
Westminster, MD 21157
877-838-4782
Email: info@mavpi.com

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### DEFENDANT WHITEFORD, TAYLOR & PRESTON, LLP's REPLY TO BOLOG DEFENDANTS' RESPONSE TO PETITION TO COMPEL ARBITRATION

Defendant Whiteford, Taylor & Preston LLP ("Whiteford"), by its undersigned counsel, submits this reply to clarify the scope and effect of its Petition for Order to Compel Arbitration in light of the response thereto filed by Defendants Erik D. Bolog, individually and as Trustee for the JAREB Irrevocable Trust Agreement; Science Park Associates, LLC; and Darnestown Road, Inc. ("Bolog Defendants").

Whiteford doubts the Bolog Defendants' legal conclusion that none of the Bolog Defendants is bound to arbitrate, given that the engagement letter containing the arbitration agreement was executed by Defendant Erik D. Bolog on behalf of Whiteford. *See* Bolog Defs.' Resp. to Arb. at 1. Nevertheless, Plaintiffs argue only that the Bolog Defendants cannot "force, or be forced, to arbitrate," advancing no alternative argument that, in the event Whiteford's petition is granted, any of the Bolog Defendants ought to be compelled to arbitrate as well. Pls.' Opp. to Arb. at 30. If Plaintiffs and the Bolog Defendants mutually agree to litigate their claims in court rather than in arbitration, that is their choice, but it does not affect Whiteford's right

to compel Plaintiffs to arbitrate their claims against Whiteford.  Further, the Court and

all parties should be aware that Whiteford reserves all claims it may have against the

Bolog Defendants arising out of this action, including claims for indemnification and

contribution.

 Dated: January 3, 2025                    Respectfully submitted,

                                           ZUCKERMAN SPAEDER LLP

                                           By:   /s/ William J. Murphy
                                               William J. Murphy (#8406010273)
                                               John J. Connolly (#9112170144)
                                               Kirk E. MacKinnon Morrow
                                                (#2410241018)

                                           100 E. Pratt St., Suite 2440
                                           Baltimore, Maryland 21201
                                           410 332 0444
                                           wmurphy@zuckerman.com
                                           jconnolly@zuckerman.com
                                           kmackinnonmorrow@zuckerman.com

                                           *Attorneys for Defendant Whiteford,
                                           Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3d day of January, 2025, a copy of the foregoing

was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*                          
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS

Dated: January 3, 2025

William J. Murphy (#8406010273)
John J. Connolly (#9112170144)
Kirk E. MacKinnon Morrow
 (#2410241018)
ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,
Taylor & Preston, LLP*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................... 1

II.   ARGUMENT ...................................................................................................................... 2

    A.   Regardless which state's law applies, Plaintiffs have failed to meet
       their procedural burden of proving their defense to arbitration. ....................... 2

    B.   Maryland has no "strong public policy" of rejecting attorney-client
       arbitration provisions between residents of other states. .................................... 5

    C.   Colorado would not apply Maryland law. ................................................................ 11

    D.   Colorado law supports enforcement of the arbitration provision. .................. 15

    E.   The arbitration agreement here is enforceable under any potentially
       applicable state law. ............................................................................................................. 16

    F.   Plaintiffs have failed to rebut Whiteford's prima facie case that the
       arbitration agreement applies to all claims against Whiteford. ....................... 17

III.  CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co.* v. *Hart*, 327 Md. 526 (1992) ............................................................. 5

*American Motorists Ins. Co.* v. *ARTRA Group, Inc.*, 338 Md. 560 (1995) ........................... 15

*Baltimore Cty. FOP Lodge No. 4* v. *Baltimore Cty.*, 429 Md. 533 (2012) ........................... 17

*Buckwalter* v. *Napoli, Kaiser & Bern, LLP*, 2005 WL 736216 (S.D.N.Y. Mar. 29, 2005) ............................................................................................................. 15

*Calvert* v. *Mayberry*, 440 P.3d 424 (Colo. 2019) .......................................................... 16

*Cannon* v. *Cannon*, 384 Md. 537 (2005) .................................................................... 3

*Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79 (2000) ................................................. 3

*Hodges* v. *Reasonover*, 103 So. 3d 1069 (La. 2012) ...................................................... 7

*Holloman* v. *Circuit City Stores, Inc.*, 391 Md. 580 (2006) ........................................ 4, 7, 10

*Inman* v. *Grimmer*, 485 P.3d 396 (Wyo. 2021) ........................................................... 9

*Innovative Images, LLC* v. *Summerville*, 848 S.E.2d 75 (Ga. 2020) ................................... 9

*Johnson, Pope, Bokor, Ruppel & Burns, LLP* v. *Forier*, 67 So. 3d 315 (Fla. App. 2011) ........................................................................................................... 9

*Post* v. *Bregman*, 349 Md. 142 (1998) ...................................................................... 9

*Regina* v. *Envirmech Contracting Corp.*, 80 Md. App. 662 (1989) ...................................... 7

*Roach* v. *Navient Solutions, Inc.*, 165 F. Supp. 3d 343 (D. Md. 2015) ................................ 4

*Royston, Rayzor, Vickery, & Williams, LLP* v. *Lopez*, 467 S.W.3d 494 (Tex. 2015) ............................................................................................................... 3, 9

*Walther* v. *Sovereign Bank*, 386 Md. 412 (2005) .......................................................... 9

*Watts* v. *Polaczyk*, 619 N.W.2d 714 (Mich. App. 2000) .................................................. 9

**STATUTES**

Colo. Code § 13-22-206 ........................................................................................ 16

Md. Code Ann., Cts. & Jud. Proc. § 3-206(a) .............................................................. 3

Md. Code Ann., Cts. & Jud. Proc. § 3-207 .......................................................................................... 3

**RULES**

Colo. R. Prof'l Cond. 1.8(a) ........................................................................................... 16

Md. R. 19-300.1 ........................................................................................................... 8

Md. R. 19-301.8(h)...................................................................................................... 6, 8

Md. R. 2-311(d) ........................................................................................................... 4

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws § 188 ..................................................... 11, 12, 14

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WHITEFORD,
TAYLOR & PRESTON LLP's PETITION FOR AN ORDER COMPELLING
ARBITRATION AND STAYING PROCEEDINGS**

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") submits this reply

memorandum in support of its petition for an order compelling arbitration.[1]

## I.   INTRODUCTION

Whiteford's Petition included two affidavits and accompanying documents that

unquestionably satisfied its minimal burden to show that the parties entered into an

enforceable arbitration agreement that covers Plaintiffs' claims against Whiteford.[2] In

opposition, Plaintiffs have produced no admissible evidence at all—a critical

miscalculation that all but requires the Court to grant the Petition. Plaintiffs' failure to

support their ostensible invalidity defense to the arbitration agreement with

admissible evidence is fatal under Maryland procedural law. The Court should end the

---

[1] Because Plaintiffs filed separate oppositions to Whiteford's combined petition for arbitration and motion to dismiss, Whiteford will file a separate reply in support of its alternative motion to dismiss.

[2] Plaintiffs objected to the subscription for the Foster Affidavit because it was not on personal knowledge. Whiteford has revised the subscription and re-submitted the affidavit without substantive changes as an attachment hereto.

analysis there and compel arbitration of all claims by Plaintiffs against Whiteford, with any ancillary issues to be resolved by the arbitrators.

If the Court reaches Plaintiffs' merits arguments, however, it should apply Colorado substantive law on invalidity. Maryland has no public policy to protect Colorado residents who sue their D.C.-based lawyers for conduct that occurred outside of Maryland. And Colorado law clearly enforces arbitration agreements by lawyers against clients. Indeed, even if the Court were to apply Maryland (or D.C.) law, it should find the arbitration agreement enforceable given the strong public policy favoring arbitration, which cannot be overridden by ethics rules or interpretations of those rules. And to be sure, arbitration is *not* a limitation on malpractice liability; it is a less expensive and faster method of resolving disputes that benefits both lawyer and client. The Court should honor the parties' clear agreement to arbitrate, and issue an order compelling arbitration of all claims against Whiteford.

## II.  ARGUMENT

### A.  Regardless which state's law applies, Plaintiffs have failed to meet their procedural burden of proving their defense to arbitration.

Plaintiffs consistently misunderstand the burden of proof on the petition to arbitrate. Whiteford submitted evidence tending to show that Ms. Engelhorn knowingly executed an arbitration agreement; that Whiteford informed Ms. Engelhorn about the arbitration provision; that Ms. Engelhorn had ample opportunity to study the arbitration agreement and in fact possessed and reviewed it for months before signing it; and that Ms. Engelhorn was represented by independent counsel

throughout this period. That is more than enough to *require* the Court to compel arbitration, *see* Md. Code Ann., Cts. & Jud. Proc. § 3-207(c), unless it finds that certain contractual defenses apply. *See id.* § 3-206(a). Plaintiffs' sole contractual defense to arbitration (as distinct from the scope of arbitration) is that the arbitration agreement is void as against a public policy, a form of contract invalidity. Plaintiffs rely on a supposed public policy emanating from an interpretation of the Rules of Professional Conduct that allegedly requires lawyers to ensure that clients are fully informed or have independent counsel before executing an arbitration provision.

Even if Plaintiffs correctly articulate a valid public policy that can override the strong policy in favor of arbitration—and they do not—they fail to recognize that their argument is a *defense* to arbitrability as to which they bear the burden of proof. *See*, *e.g.*, *Cannon* v. *Cannon*, 384 Md. 537, 573 (2005) ("When a party attacks the validity of a contract as invalid under fraud, duress, coercion, mistake, undue influence, or incompetence, normally that party bears the burden of proof."); *see also Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 91 (2000) ("party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration"); *Royston, Rayzor, Vickery, & Williams, LLP* v. *Lopez*, 467 S.W.3d 494, 499-502 (Tex. 2015) (client failed to sustain defense of unconscionability for failure of attorney-plaintiff to explain arbitration agreement). When a party resisting arbitration "fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof," the court may rule as a matter of law for the party moving to compel

arbitration. *Roach* v. *Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015). "[M]ere allegations or denials" in pleadings are insufficient; the opponent must show specific material facts "by affidavit or other evidentiary showing." *Id.*

To sustain their defense to arbitration, Plaintiffs must proffer admissible evidence that rebuts Whiteford's prima facie case. Plaintiffs make no argument that Ms. Engelhorn did not sign the engagement agreement that included the arbitration provision. Like all competent adults, Ms. Engelhorn is "presumed to have read and understood [the] terms [of the contract she signed] and as such [is] bound by its execution." *Holloman* v. *Circuit City Stores, Inc.*, 391 Md. 580, 595 (2006). To sustain their own public policy argument, therefore, Plaintiffs must show that Ms. Engelhorn was not sufficiently informed about the nature of arbitration. Yet Plaintiffs have introduced *zero* evidence of any kind—to support that proposition or any other. Through their (unsworn) opposition, Plaintiffs want the Court to believe that Ms. Engelhorn did not understand the arbitration agreement and that she did not consult with independent counsel—but they failed to proffer any evidence to support their position.[3] The Court may not credit unsupported assertions in Plaintiffs' response. *See* Md. R. 2-311(d) ("A motion or a response to a motion that is based on facts not contained in the record shall be supported by affidavit and accompanied by any papers on which it is based."). Indeed, as far as the Court (or Whiteford) knows, Ms.

---

[3] Plaintiffs claim that her "Swiss lawyers" could not have advised Ms. Engelhorn on a U.S. arbitration agreement, when Ms. Engelhorn well knows that she had counsel in the United States other than Whiteford throughout this period.

4

Engelhorn could have been fully advised about the arbitration provision by her separate U.S. lawyers at Dentons, or she could have been fully informed and even happy about arbitration based on her long experience in litigation. To allow her to avoid the arbitration agreement she signed without any evidence to support her defense would effectively give all clients an irrefutable right to avoid arbitration—the antithesis of federal and state arbitration law.

Under controlling Maryland procedural law, Plaintiffs have utterly failed to carry their burden to establish their substantive defense to arbitrability. For this reason alone, the Court should grant Whiteford's petition to compel arbitration.

### B. Maryland has no "strong public policy" of rejecting attorney-client arbitration provisions between residents of other states.

Plaintiffs effectively acknowledge that Maryland's baseline choice-of-law rule points to Colorado law for resolving questions of arbitrability. *See* Pl. Opp. 21.[4] Plaintiffs also acknowledge that an in-state public policy "must be very strong" to override an otherwise applicable choice-of-law rule. Pl. Opp. at 4 (quoting *Allstate Ins. Co.* v. *Hart*, 327 Md. 526, 530 (1992)). Nevertheless, Plaintiffs argue that Maryland courts would override the normal choice-of-law rule based on a supposed public policy against enforcing certain arbitration agreements between lawyers and clients, even though the source of Plaintiffs' supposed public policy is not a statute or even an

---

[4] Plaintiffs refuse to admit expressly that Ms. Engelhorn signed the agreement in Colorado, *see* Pl. Opp. at 19-20, presumably hoping for a strategic advantage through gamesmanship. But the evidence that she signed in Colorado is compelling. Plaintiffs' refusal to state under oath where Ms. Engelhorn signed the agreement is telling, and dispositive in light of the contrary evidence.

ethics rule, but rather a nonbinding and elliptical *comment* to an ethics rule, and a (probably superseded) interpretation of the rule by a state bar committee. Plaintiffs' argument is flawed for multiple reasons.

Most significantly, the chief source of public policy in this State is the General Assembly, not the courts, and certainly not a nonbinding comment to an ethics rule. *See Harrison* v. *Montgomery Co. Bd. Of Educ.*, 295 Md. 442, 460 (1983) ("we have always recognized that declaration of the public policy of Maryland is normally the function of the General Assembly"). And the General Assembly has articulated an exceptionally strong public policy favoring arbitration through Maryland's Uniform Arbitration Act (MUAA). By statute, a court *shall* stay any action or proceeding *involving* an issue subject to arbitration if a petition for order to arbitrate has been filed. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-209(a). And if a court determines that an arbitration agreement exists, "it *shall* order arbitration." *Id.* § 3-207(c) (emphasis added). Nothing in the MUAA or any other expression of the General Assembly suggests that the public policy favoring arbitration does not apply to agreements between lawyers and clients, or that it can be superseded by a comment to an ethics rule.

To be sure, the Supreme Court of Maryland has a role in setting public policy for the legal profession, but Plaintiffs are grossly off the mark in describing the strength of the judicial policy respecting arbitration agreements. They cite a Rule of Professional Conduct (19-301.8(h)) for the proposition that a lawyer may not

prospectively limit the attorney's liability to a client for malpractice unless the client is independently represented.[5] But the text of Rule 1.8(h) says nothing about arbitration at all. And contrary to Plaintiffs' strained argument, an arbitration requirement does *not* limit a lawyer's liability to the client. Plaintiffs claim that *discovery* in arbitration is less robust than in litigation; but even if true that is not a limitation on *liability*. Nor is the unavailability of a jury trial a limitation on liability. *See*, *e.g.*, *Hodges* v. *Reasonover*, 103 So. 3d 1069, 1074-75 (La. 2012) ("Provided the arbitrator retains full authority to render an award fully compensating a client for his injuries, most state ethics committees have held an arbitration clause is not a true limitation of an attorney's liability"); *see also Holloman*, 391 Md. at 596 ("the loss of one's right to a jury trial is *generally implicit* in an agreement to arbitrate") (citations and quotations omitted). And arbitrators generally can afford full relief to claimants, particularly relief in the form of money damages, and courts will enforce a valid award of arbitration. Plaintiffs claim without citation that punitive damages would not be available in arbitration. Pet. Opp. 14. Maryland courts have disagreed. *See Regina* v. *Envirmech Contracting Corp.*, 80 Md. App. 662, 674 (1989) ("unless the arbitration agreement precludes it, we see no reason why, in an appropriate case, an arbitrator cannot award punitive damages").

---

[5] Notably, Plaintiffs' claims against Whiteford are not solely for malpractice, so even if Plaintiffs' public policy argument were correct, it would not preclude arbitration of the claims for negligent hiring and retention, fraud, and aiding and abetting breaches of fiduciary duty.

Plaintiffs' argument boils down to comment [14] to Rule 1.8(h), which provides that "[t]his section does not, however, prohibit an attorney from entering into an agreement with the client to arbitrate existing legal malpractice claims, provided the client is fully informed of the scope and effect of the agreement." Plaintiffs argue that the comment's approval of lawyer-client arbitration agreements for "existing" legal malpractice claims must mean disapproval of arbitration for "prospective" legal malpractice claims. But that is not what the comment says. The Maryland version of the Rules, including the comments, simply takes no position on the issue. Even if it did, comments to the ethics rules "are intended as guides to interpretation, but the text of each Rule is authoritative." Md. R. 19-300.1 cmt. [21]. And Plaintiffs acknowledge that the Maryland Supreme Court has not ruled on the issue. Pl. Opp. at 7. A questionable inference from a nonbinding comment to a rule of ethics simply cannot establish a "very strong" public policy—and even if it could, it would not override the exceptionally strong public policy favoring arbitration set forth *by the General Assembly* in the MUAA,[6] as many courts in other jurisdictions have expressly

---

[6] In addition, Plaintiffs' reliance on an ethics opinion from 1990 is hardly worth considering as an expression of Maryland public policy. The opinion expressly states that it is not binding on any court or agency, see Pl. Opp. Ex. A at 3, so it is obviously not an expression of this State's public policy. And like many MSBA ethics opinions, it is not well reasoned. It cites no authority other than the rule, then effectively acknowledges that arbitration is *not* a limitation on liability before counterintuitively concluding that "the over-all effect of the decision whether to opt for arbitration versus a court or jury trial is sufficiently related to the issue of prospectively limiting a lawyer's liability, so that Rule 1.8(h) must be followed." *Id.* at 2. (Notably, the ethics opinion was decided before comment [14] existed.) And the opinion shows no appreciation of Maryland law governing when arbitration agreements are unenforceable, which is based on the concept of invalidity (usually for unconscionability). Maryland courts have rejected arguments that arbitration provisions are unconscionable because one party claims it did not intend to waive its right to a jury trial. *See Walther*

held. *Royston, Rayzor, Vickery, & Williams, LLP* v. *Lopez*, 467 S.W.3d 494, 504-05 (Tex. 2015) (arbitration agreement between lawyer and client enforceable regardless whether attorney explained arbitration to client); *Inman* v. *Grimmer*, 485 P.3d 396, 406-07 (Wyo. 2021) (same, applying Utah law); *Innovative Images, LLC* v. *Summerville*, 848 S.E.2d 75 (Ga. 2020) (same); *Johnson, Pope, Bokor, Ruppel & Burns, LLP* v. *Forier*, 67 So. 3d 315, 318-19 (Fla. App. 2011) (same); *Watts* v. *Polaczyk*, 619 N.W.2d 714 (Mich. App. 2000) (same).[7]

Plaintiffs' lengthy description of *Post* v. *Bregman*, 349 Md. 142 (1998), is inapt and self-defeating. That case considered the enforceability of fee-sharing agreements between attorneys that arguably violated Rule 19-301.5(e), which clearly prohibits such agreements unless certain conditions are met. The Court explained that the Rules of Professional Conduct were a form of public policy within the narrow context

---

v. *Sovereign Bank*, 386 Md. 412, 443 (2005). There is no tenable reason to conclude that an arbitration agreement between lawyer and client is unconscionable when such agreements are enforceable in every other context, including doctor-patient, bank-depositor, and employer-employee (with some statutory refinements), regardless of the relative duties of the parties or the differentials in their knowledge or sophistication.

[7] The out-of-state authority is not uniform. But the cases declining to enforce lawyer-client arbitration agreements in some circumstances are poorly reasoned, and the trend appears to favor enforceability. The contrary decisions typically fail to understand that arbitration provisions in engagement agreements should not be subject to the same fiduciary standard that applies when the lawyer is *representing* a client. An engagement agreement is a transaction *between* lawyer and client, often negotiated before the representation has commenced, when the client manifestly has ample reason to understand that the lawyer is acting in his or her own interest. Indeed, in most cases the lawyer-client relationship does not begin until the client signs the engagement agreement (although a lawyer bears certain obligations to a prospective client). It may or may not be good policy for lawyers to advise clients to seek independent advice about the terms of an engagement agreement, but the failure to provide that advice does not make the entire agreement voidable. It is completely counterintuitive to suggest that an *arbitration* provision in the engagement agreement should be voidable absent independent advice, when public policy, as articulated in federal and state statutory law, strongly favors enforceability of arbitration provisions.

of attorney professional responsibility, but a breach of those Rules would not necessarily void an otherwise valid contract. *See id.* at 167-68. Here, Rule 19-301.8(h) does *not* prohibit arbitration agreements between attorney and client. Most important, however, is that the Court in *Post* was not weighing a Rules-based policy against a contrary policy articulated by the General Assembly, much less against the exceptionally strong public policy favoring arbitration through the MUAA. Because the applicable Rule does not prohibit arbitration agreements, and the General Assembly has enacted a statute enforcing arbitration agreements, the MUAA establishes the public policy that is applicable here.

Plaintiffs' equally lengthy argument complaining about the content of the arbitration provision is unconvincing. In the first place, Plaintiffs ignore the cardinal rule applicable to all contracts, including contracts for arbitration, that Ms. Engelhorn is "presumed to have read and understood" the contract she signed. *Holloman*, 391 Md. at 595. Explanations about the nature of arbitration, including explicit explanations about jury trial waivers, are not generally required. *See id.* Plaintiffs are reduced to complaining that Whiteford did not explain what the "acronym" JAMS stands for, Pl. Opp. 14; a nonrequirement rendered wholly meaningless by the fact that JAMS is not an acronym. *See* https://www.jamsadr.com/knight/ (noting that JAMS was "*formerly* Judicial Arbitration and Mediation Services"). JAMS bills itself as "the world's largest private alternative dispute resolution (ADR) provider," https://www.jamsadr.com/about/, and its services, rules, and policies are very easy

to locate on the Internet. The relevant arbitration provision in the engagement agreement is plainly worded and easy to understand, and Plaintiffs proffer no admissible evidence suggesting that Ms. Engelhorn did not understand its substance.

In short, Maryland public policy does not override the normal choice-of-law rule that points to applicability of Colorado law on questions of arbitrability.

## C. Colorado would not apply Maryland law.

Plaintiffs argue that if this action had been filed in Colorado, a Colorado court would apply Maryland law, and under the doctrine of *renvoi* Maryland courts could also apply Maryland law even though Maryland's baseline choice-of-law rule points to Colorado. This argument fails in its major proposition: a Colorado court would *not* apply Maryland law, and therefore Maryland's version of *renvoi* is inapposite. Plaintiffs argue that Colorado follows the "most significant relationship" test, which is true, but Plaintiffs completely misunderstand the application of that test to the validity of an arbitration agreement rather than its performance.

**Place of contracting**. Plaintiffs all but admit that Colorado was the place of contracting, but they quote a comment to the Restatement § 188 for the proposition that "[s]tanding alone, the place of contracting is a relatively insignificant contact." Pl. Opp. 20 (quoting Restatement (Second) of Conflicts of Laws § 188 cmt. e.). The next sentence of comment e, however, explains that "*issues involving the validity of a contract will, in perhaps the majority of situations, be determined in accordance with the local law of the state of contracting.*" *Id.* (emphasis added). The issue here is the

validity of the arbitration agreement, not the performance of the parties' contract. And the place of contracting is highly significant to that issue.

**Place of negotiation**. Plaintiffs' argument here openly defies the facts. Whiteford introduced admissible evidence showing that the most relevant place of negotiation was Colorado; indeed, two D.C.-based Whiteford lawyers flew to Colorado to meet with Ms. Engelhorn and negotiate the agreement with her there. They also emailed copies of the agreement to Ms. Engelhorn in Colorado in advance of their in-person meetings.

**Place of performance**. As explained above, the place of performance has limited application when the issue is the validity of the contract, as it is here. Moreover, as the Restatement indicates, "the place of performance can bear little weight in the choice of applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue." Restatement (Second) of Conflicts of Laws § 188 cmt. e.

At the time of contracting, the parties expected performance to be in Colorado, where Ms. Engelhorn lived, in D.C., where her lawyers worked, or in Switzerland, where her case was pending. Maryland had nothing to do with the engagement. And after the principal Swiss engagement ended, Mr. Bolog's work for Ms. Engelhorn occurred in multiple jurisdictions. Maryland was one jurisdiction where work occurred, but it was not the predominant one (and Plaintiffs again submit little

admissible evidence to support their assertions of Maryland-based ties). Plaintiffs admit that services also occurred in D.C., Virginia, and North Carolina, Pl. Opp. 22, 31; *see also* Pl. Opp. Arb. Ex. C (showing that Ms. Engelhorn and Mr. Bolog signed the Abstract of Trust for the Whitewater Revocable Trust in D.C.). Key events at issue in the Complaint occurred in Massachusetts, where Mr. Bolog procured Ms. Engelhorn's allegedly unknowing signature on the Notice of Gift and related documents, *see* Am. Compl. ¶ 36; Pet. Comp. Ex. B(2) at 4; in New York, where Ms. Engelhorn held the $10 million that was transferred to Mr. Bolog as a gift; and in Tennessee, where Ms. Engelhorn sold a home. *See* Am. Compl. ¶ 69. Plaintiffs claim on information and belief that Mr. Bolog lived in Maryland, Am. Compl. ¶ 5, but they provide no proof of it. Whiteford believes Mr. Bolog co-owned a house in Maryland but did not live there during the relevant period; instead he lived in D.C. and California.

In short, Plaintiffs wrongly rely on certain Maryland-based events that were completely unknown and unforeseeable at the time of contracting. And even if they had been known, the performance of the contract occurred in multiple jurisdictions, with D.C. at least as significant as Maryland.

**Situs of the subject matter of the contract**. Plaintiffs misunderstand the "subject matter" of this contract, which is not about a specific thing such as real or personal property, but about a service (legal representation). Plaintiffs again ignore the most important line in the Restatement: "When the contract ... affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of

employment, the location of … the risk is significant…. Indeed, when the … risk is the principal subject of the contract, it can often be assumed that the parties … would expect that the local law of the state where the … risk was located would be applied to determine many of the issues arising under the contract." Restatement § 188 comment e. The contract here was for legal services and the chief "risk" at issue was legal malpractice. Mr. Bolog was a D.C.-based employee of Whiteford, and Ms. Engelhorn knew it. The parties would have expected Mr. Bolog to adhere to D.C. standards for lawyers. Most significantly, the arbitration provision itself chooses D.C. as the arbitral forum.

**Domicil, residence, nationality, place of incorporation, and place of business of the parties.**

Contrary to Plaintiffs' assertion, this factor does not weigh in favor of Maryland. Ms. Engelhorn was a resident of Colorado and she signed the agreement in Colorado. *See* Restatement § 188 comment e ("The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting …."). Mr. Bolog lived and worked in D.C. and was a member of the D.C. bar. Whiteford has a large office in D.C. and that was the obvious situs of the representation. Multiple employees of Whiteford's D.C. office worked on Ms. Engelhorn's matters, including Mr. Foster.

Under Maryland's "limited" version of *renvoi*, Colorado law applies only if a Colorado court would apply *Maryland* law; if Colorado would choose the law of any

14

other jurisdiction, then Maryland courts would apply Colorado law under the rule of *lex loci contractus*. *See American Motorists Ins. Co.* v. *ARTRA Group, Inc.*, 338 Md. 560, 573, 579 (1995). Because any reasonable court considering all relevant factors would apply D.C. or Colorado law to the question of the validity of the arbitration agreement raised by Plaintiffs, this Court should apply Colorado law.

### D.  Colorado law supports enforcement of the arbitration provision.

Plaintiffs have no substantial argument to avoid arbitration under Colorado law. As Whiteford's opening memorandum explained, courts applying Colorado law have actually enforced lawyer-client arbitration agreements. Plaintiffs try to distinguish the relevant cases but they cannot deny that those cases reflect a general principle that such agreements are enforceable under Colorado law. Moreover, as Whiteford pointed out, one Colorado court relied on a federal decision in New York that enforced a lawyer-client arbitration agreement regardless whether the lawyer explained the relevant concepts to the client. *See Buckwalter* v. *Napoli, Kaiser & Bern, LLP*, 2005 WL 736216 (S.D.N.Y. Mar. 29, 2005). The Colorado federal court's reliance on *Buckwalter* is reinforced by appellate decisions in numerous other states. *See supra* Part II.B. Plaintiffs cite a New York state trial court decision that reached a different result, but the point is that the Colorado court relied on the *Buckwalter* decision and reasoning. This Court should follow what Colorado courts have actually done, rather than what Plaintiffs think they should do.

Plaintiffs' reliance on *Calvert* v. *Mayberry*, 440 P.3d 424 (Colo. 2019), is misplaced. That case considered the enforceability of a contract in violation of Rule 1.8(a), which clearly prohibits lawyers from entering into specific types of business transactions with clients unless the relevant contract meets certain procedural and substantive conditions. The lawyer at issue in *Calvert* was disbarred after he lent money to a client to rehabilitate her house, then fraudulently procured and recorded a deed of trust in favor of third parties. When he sued for recovery of the funds he allegedly lent, the Court considered the effect of the lawyer's clear violation of Rule 1.8(a). The Court concluded that even though the contract was presumptively void, the lawyer still might have recovered if he could show that it did not violate the policy goals underlying the Rule.

There are two obvious and dispositive distinctions here. First, the Colorado rules do *not* prohibit arbitration agreements between lawyers and clients. On the contrary, they endorse them in comments to Rule 1.8. Second, like all states, Colorado has a strong public policy, grounded in statute, of *enforcing* arbitration agreements, *see*, *e.g.* Colo. Code § 13-22-206, and nothing in Colorado law suggests that an ethics rule overrides that policy. Plaintiffs consistently miss these points, which drive the outcome of this case.

### E.  The arbitration agreement here is enforceable under any potentially applicable state law.

Even if the Court were to apply Maryland law—and it should not for all the reasons set forth above—the outcome should be the same. Although the Maryland

Supreme Court has acknowledged that the issue is open under Maryland law, the

trend in the case law, and the better reasoned decisions hold that ethics rules (or

interpretations of those rules) cannot override a statutory public policy favoring

arbitration. This Court should follow those decisions for the reasons set forth above

in Parts II.A and II.B.

**F.  Plaintiffs have failed to rebut Whiteford's prima facie case that the arbitration agreement applies to all claims against Whiteford.**

Plaintiffs argue that the arbitration agreement should not apply to all plaintiffs

because the terms of the parties' engagement agreement must have changed at some

point. That argument is unpersuasive because an arbitration provision in an

engagement agreement stands as its own agreement and often survives the

termination of other provisions of the engagement agreement. *See Baltimore Cty. FOP*

*Lodge No. 4* v. *Baltimore Cnty.*, 429 Md. 533, 546 (2012). Plaintiffs have furnished no

evidence that the parties ever rescinded or narrowed their arbitration agreement,

which is exceptionally broad in scope and applied to their entire "relationship." *See*

Whiteford Mem. 25. And even if they had, the arbitrator would decide the effect of that

evidence, not the Court. *See id.* at 553.

Finally, Plaintiffs barely respond to Whiteford's argument that all Plaintiffs are

bound by the arbitration clause because (1) Ms. Engelhorn, the signatory of the

agreement, is the trustee of Plaintiff Whitewater Trust and the sole owner of Plaintiff

White Pearl and (2) those Plaintiffs are equitably estopped from renouncing the

agreement. In a single, confusing sentence embedded in a footnote, Plaintiffs state

that "all of Plaintiffs['] claims against Defendant WTP arise from Bolog's role as a trustee (which does not stem from the contract) and his role as their attorney post-settlement which arise in common law and MARPC 19-301.8 and none of the claims allege a breach of a specific term of the Retainer." Pl. Opp. Arb. 29 n.9. The short and complete answer to this argument is contained in the arbitration agreement itself, which expressly applies to "[a]ny claim or dispute arising out of or relating to … our relationship with You." Ex. A(14). A broader provision could scarcely be imagined. The arbitration provision manifestly was intended to extend to the entire relationship between the parties, which easily includes relationships between Mr. Bolog in his capacity as a lawyer or a trustee for entities wholly owned or controlled by Ms. Engelhorn. Any further consideration of the arguments of Whitewater or White Pearl, if pressed, must be taken up by the arbitrator.

### III. CONCLUSION

For the reasons stated herein and in Whiteford's opening memorandum, the Court should (1) stay all claims pending adjudication of the petition for an order to arbitrate; and (2) issue an order compelling Plaintiffs to arbitrate their claims against Whiteford and staying any further proceedings against Whiteford in this matter; or (3) dismiss all claims against Whiteford for failure to state a claim upon which relief can be granted.

Dated: January 3, 2025

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:  /s/ William J. Murphy
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3d day of January, 2025, a copy of the foregoing

was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*
John J. Connolly

E-FILED; Baltimore City Circuit Court
Docket: 1/7/2025 10:02 AM; Submission: 1/7/2025 10:02 AM
Envelope: 19426009

# Exhibit A

**Patrick Gardiner**

| | |
|---|---|
| **From:** | Wes Henderson |
| **Sent:** | Tuesday, December 3, 2024 9:38 AM |
| **To:** | Schrieber, Zack |
| **Cc:** | Katie Dold; Patrick Gardiner; Gansler, Douglas; Howard, J.B. |
| **Subject:** | RE: E. Bolog Discovery |

Dear Zack –

I apologize for the delay in responding to you yesterday.  Patrick and I were in Court a good part of yesterday.  I am fine with the requested extension.

Regards,
Wes



### Wes P. Henderson, Esquire

Henderson Law, LLC

2127 Espey Court, Suite 204
Crofton, MD 21114
Phone: (410) 721-1979
Fax: (410) 721-2258
Email: wph@hendersonlawllc.com
Web: www.HendersonLawLLC.com



**CONFIDENTIALITY NOTICE AND DISCLAIMER**
This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify me immediately that you have received this message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.

**TAX INFORMATION**
Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Schrieber, Zack <Zack.Schrieber@cwt.com>
**Sent:** Monday, December 2, 2024 9:10 PM
**To:** Wes Henderson <wph@hendersonlawllc.com>
**Cc:** Katie Dold <KDold@hendersonlawllc.com>; Patrick Gardiner <patrick@hendersonlawllc.com>; Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** RE: E. Bolog Discovery

Wes,

Please let us know if you consent to the below request.

Best,
Zack

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

---

**From:** Schrieber, Zack
**Sent:** Monday, December 2, 2024 1:16 PM
**To:** 'wph@hendersonlawllc.com' <wph@hendersonlawllc.com>
**Cc:** 'KDold@hendersonlawllc.com' <KDold@hendersonlawllc.com>; 'patrick@hendersonlawllc.com'
<patrick@hendersonlawllc.com>; Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** E. Bolog Discovery

Wes,

Due to the Thanksgiving holiday, we are requesting a two week extension until December 17th to respond to the document requests and interrogatories you served on Mr. Bolog in his individual capacity and as trustee, Science Park, and Darnestown Road. Please let us know if you are amenable to the extension. Given these are discovery requests we do not see a need to notify the Court.

Best,
Zack

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to

ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

E-FILED; Baltimore City Circuit Court
Docket: 1/7/2025 10:02 AM; Submission: 1/7/2025 10:02 AM
Envelope: 19426009

# Exhibit B

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

## DEFENDANT ERIK D. BOLOG'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

In accordance with Rule 2-421 of the Maryland Rules, Defendant Erik D. Bolog ("Mr. Bolog" or the "Defendant"), by and through his undersigned counsel, hereby responds and objects to Plaintiff Claudia Engelhorn's ("Plaintiff" or "Ms. Engelhorn") First Set of Interrogatories to Defendant, (collectively, the "Interrogatories" and each individual interrogatory, an "Interrogatory") including the "Interrogatories," "Definitions," and "Instructions" contained therein, as follows:

## RESERVATION OF RIGHTS

The Defendant's responses and objections (the "Responses and Objections") to the Interrogatories are made without prejudice to the Defendant's right to amend or supplement the Responses and Objections at a later date. Further, the Defendant expressly reserves his right to assert additional responses and objections and none of the Responses and Objections below should be interpreted to waive any such right.

## **<u>GENERAL OBJECTIONS</u>**

The following general objections (the "<u>General Objections</u>") are incorporated into each specific Response and Objection below (the "<u>Specific Responses and Objections</u>") as if they were fully repeated therein. Although certain General Objections are reiterated in Specific Responses and Objections for clarity or emphasis, any failure to reiterate a General Objection in response to any specific Interrogatory does not constitute a waiver of such objection as to such Interrogatory.

1.      The Defendant objects to the Interrogatories on the grounds that until the Court rules on the pending Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court. If appropriate and necessary, the Defendant will supplement this Response following the Court's decision on the Petition to Compel Arbitration and related Motion to Stay Proceedings.

2.      The Defendant has not completed his investigation into the facts pertaining to Plaintiff's Amended Complaint (the "<u>Complaint</u>"), has not completed discovery, and has not completed preparation for trial.  Answers contained herein are based only on such information and documents as are presently available and known to the Defendant.  Anticipated further investigation, discovery, legal research, and analysis may supply additional facts and establish information that may vary from that set forth herein.  The answers set forth herein are given without prejudice to the Defendant's right to introduce evidence of any subsequently discovered facts or circumstances.  The Defendant expressly reserves his right to change or modify any answer as additional facts or circumstances are ascertained, analyses are made, and legal research is conducted.

2

3.      The Defendant objects to providing responses to the Interrogatories unless and until the Court enters a protective order governing the exchange of confidential discovery material.

4.      The Defendant objects to the Interrogatories to the extent they seek the Defendant to identify "all" or "any" persons or things as overbroad, unduly burdensome, and not proportional to the needs of the case. The Defendant will construe such Interrogatories to seek information known to the Defendant and in accordance with the Maryland Rules of Civil Procedure for the Circuit Court and any applicable Rules or Order of this Court (collectively, the "Rules")

5.      The Defendant objects to the Interrogatories to the extent that they seek to impose requirements or obligations in addition to, or different from, those imposed by the Rules. In responding to each Interrogatory, the Defendant will construe and respond by providing only such information as may be required and proper under the Rules.

6.      The Defendant objects to the Interrogatories to the extent that they seek information that is protected from discovery by the attorney-client privilege, the work-product doctrine, settlement and/or mediation privilege, or any other applicable privilege or doctrine.  Nothing contained in these responses is intended to be, or in any way shall be deemed to be, a waiver of any such available privilege or doctrine. In responding to each Interrogatory, the Defendant will not provide privileged or otherwise protected information. To the extent that any privileged or protected information is produced or otherwise disclosed, the production or disclosure will have been inadvertent and should not be deemed a waiver of any privilege or protection from production.

7.      The Defendant objects to the Interrogatories to the extent that they call for the production of information that contain either trade secrets, confidential commercial, business, financial, proprietary, or competitively sensitive information, or personal identifiable information

(including, but not exclusively, personal email addresses and personal phone numbers).  The Defendant's production of such information, if necessary and appropriate, will be made only where permitted under the terms of any protective orders or confidentiality agreements and/or any other applicable law, rule, or court order.

8.      The Defendant objects to the Interrogatories to the extent they seek information that (i) is already within the possession, custody, or control of Plaintiff, (ii) is available from a public source, or (iii) can be obtained through other means that are more convenient, less burdensome, or less expensive.

9.      The Defendant objects to the Interrogatories to the extent they seek information that is confidential, proprietary in nature, or personal in nature.

10.      The Defendant objects to the Interrogatories to the extent that they are compound and exceed the maximum number of interrogatories permitted by Maryland Rule 2-421.

11.      The Defendant objects to the Interrogatories to the extent that the Interrogatories seek information beyond his knowledge.

12.      The Defendant objects to the Interrogatories to the extent they contain any factual assertion or allegations, or purport to describe or characterize any factual assertion or allegation. Any response provided to an Interrogatory and any failure to specifically object to any factual assertion, allegation, description, or characterization, is not an adoption or admission or such factual assertion, allegation, description, or characterization.

13.      The Defendant objects to the Interrogatories to the extent that the Interrogatories purport to require the Defendant to set forth conclusions of law with respect to any issue in this proceeding and/or apply the law to any fact presently known.

14.     The Defendant objects to the Interrogatories to the extent they seek information that can be derived or ascertained from documents in the Defendant's document productions—should any relevant documents be discovered and produced by the Defendant—or the document productions of another party in this case, and the burden of deriving or obtaining the answer is substantially the same for Plaintiff and the Defendant.

15.     The Defendant objects to the Interrogatories to the extent they seek information that constitutes post-judgment discovery in accordance with Rule 2-633 and is therefore, and otherwise, not reasonably calculated to lead to the discovery of admissible evidence, and is a procedurally improper, premature attempt to conduct post-judgment discovery in the absence of any judgment in this proceeding.. *See* Md. Rules 2-633. Under the Rules, "a valid judgment is a precondition to a party's right to take *any* discovery in aid of enforcement under Rule 2-633." *Johnson v. Francis*, 239 Md. App. 530, 537(2018) ("this rule authorizes discovery in aid only of an actual, existing money judgment, not a hypothetical or potential money judgment") *see also Farkas v. Rich Coast Corp.*, 2017 U.S. Dist. LEXIS 212246, *6 (M.D. Pa. Dec. 28, 2017) ("[V]iewed as a request for discovery in aid of executing upon a judgment, the request is both premature and presumptuous. Farkas does not have a judgment against these defendants, and time will tell whether she can obtain one. If she does secure a judgment, then—but only then—would post—judgment discovery into the financial ability of the defendants to pay any judgment be appropriate."); *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) ("At bottom, plaintiff's discovery requests … seek information about defendant's assets and ability to satisfy a potential judgment in the context of a breach of contract and breach of warranty action. This discovery does not seek information and materials that are relevant to any of the claims or defenses at issue in the litigation, nor is it reasonably calculated to lead to the discovery of

admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) . . .  Plaintiff's interrogatories and document requests amount to premature, post-judgment discovery of a judgment debtor, which should be sought consistent with Federal Rule of Civil Procedure 69(a)(2)."); *3600 Mich. Co. v. Infra-Metals Co.*, 2009 U.S. Dist. LEXIS 88181, **7-8 (N.D. Ind. Sep. 24, 2009) ("To the extent that 3600 Michigan requests the information in order to determine whether Infra-Metals is judgment-proof, Rule 26(b)(2) requires disclosure of a defendant's liability insurance coverage, but a defendant's financial condition generally is not a permissible ground for inquiry during the discovery phase. *See generally* 23 Am. Jur. 2d Depositions and Discovery § 38 (May 2009) (discussing that the general practice is 'not [to] permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant . . .'). The Advisory Committee Note to Rule 26(b)(2) states that the required disclosure of insurance information was not intended to extend discovery to 'a defendant's financial status or ability to satisfy a judgment.' *Oppenheimer Fund, Inc.*, 437 U.S. at 351 n.16, 98 S.Ct. at 2389 (referring to the comments made in the Advisory Committee's Notes on 1970 Amendment to Fed. R. Civ. P. 26, 28 U.S.C. App. p. 7777 and observations recorded in 4 J. Moore, Federal Practice P 26.62[1] (2d ed. 1976)). Thus, the court cannot compel Infra-Metals to disclose information for the purpose of ascertaining whether it is judgment-proof. Instead, 3600 Michigan may pursue such information through a post-judgment special proceeding under Federal Rule of Civil Procedure 69(a) if necessary.").The Defendant will not search for or produce any information in response to an Interrogatory seeking post-judgment discovery.

16.    The Defendant objects to the Interrogatories to the extent they seek documents and/or information in connection with expert discovery. Such Interrogatories are premature and will be addressed in connection with a scheduling order of this Court establishing expert discovery.

17.     The Defendant reserves the right to supplement these Responses and Objections following any meet and confers that clarify the types of information sought after by these unintelligible Interrogatories.

18.     The Defendant reserves the right to seek recovery for the cost and expenses associated with deciphering these incomprehensible Interrogatories.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person. (Standard General Interrogatory No. 1.)

### RESPONSE TO INTERROGATORY NO. 1:

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

### INTERROGATORY NO. 2:

Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and, with respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial, summarize the qualifications of the expert, state the terms of the expert's compensation, and attach to your answers any available list of publications written by the expert and any written report made by the expert concerning the expert's findings and opinions. (Standard General Interrogatory No. 2.)

### RESPONSE TO INTERROGATORY NO. 2:

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

7

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 3:**

If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them. (Standard General Interrogatory No. 3.)

**RESPONSE TO INTERROGATORY NO. 3:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 4:**

If any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action. (Standard General Interrogatory No. 5.)

**RESPONSE TO INTERROGATORY NO. 4:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 5:**

Identify yourself and state all names by which you have been known, your address, your date of birth, your marital status, and the identity of your spouse.

**RESPONSE TO INTERROGATORY NO. 5:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 6:**

Identify all persons who have given you "statements," as that term is defined in Rule 2-402(f), concerning the action or its subject matter. For each statement, state the date on which it was given and identify the custodian.

**RESPONSE TO INTERROGATORY NO. 6:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 7:**

State the substance of all discussions concerning the occurrence that you or others in your presence had with any party to this case. State when and where each discussion took place and identify all persons who were present.

**RESPONSE TO INTERROGATORY NO. 7:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 8:**

Identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the personal knowledge possessed by each such person.

**RESPONSE TO INTERROGATORY NO. 8:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 9:**

Please describe in detail any and all monetary gifts, payments, or transfers of funds you received from any of the Plaintiffs. Include the amount, date(s), and method of each transaction.

**RESPONSE TO INTERROGATORY NO. 9:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 10:**

Explain the purpose of the monetary gift, payment, or transfer of funds from any of the Plaintiffs to you. Was this gift intended for a specific use or investment?

**RESPONSE TO INTERROGATORY NO. 10:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 11:**

Did you use any of the Plaintiff's monies to invest in a business in which you had a personal interest? If so, please provide the name of the business, the nature of your interest (e.g., ownership, partnership, shareholder), and the amount of the Plaintiff's monies invested.

**RESPONSE TO INTERROGATORY NO. 11:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 12:**

Describe any disclosures made to the Plaintiff regarding your personal interest in the business prior to the investment of the Plaintiff's monies. Include the date(s) and method(s) of disclosure.

**RESPONSE TO INTERROGATORY NO. 12:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 13:**

List and describe all communications, whether written or oral, between you and any Plaintiff regarding any alleged monetary gift and the investment of these funds in the business. Include dates and participants of such communications.

**RESPONSE TO INTERROGATORY NO. 13:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 14:**

Please state the names, ages, and present addresses of your children.

**RESPONSE TO INTERROGATORY NO. 14:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 15:**

Do you contend that any person who is not a party to this action caused or contributed to the Plaintiffs' alleged injuries and damages? If so, identify each such person, state how you contend each such person caused or contributed to the alleged injuries, and state all facts upon which you based your contention.

**RESPONSE TO INTERROGATORY NO. 15:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 16:**

If you contend that the Plaintiffs have failed to mitigate their damages, please identify all facts, proof, or evidence on which you base this contention.

**RESPONSE TO INTERROGATORY NO. 16:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 17:**

Do you dispute any of the factual allegation in the Plaintiff's complaint? If so, please explain.

**RESPONSE TO INTERROGATORY NO. 17:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 18:**

Identify the person or persons answering these Interrogatories or who contributed information used in answering these Interrogatories. If more than one person provided the answers or information, please identify the specific Interrogatories answered by each person.

**RESPONSE TO INTERROGATORY NO. 18:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

## INTERROGATORY NO. 19:

If you contend that Plaintiffs and/or any of their representatives (this is 3 rogs, multiplied by the subparts) have made any admission against interest, state the substance of the admission, identify the communication concerning the admission, identify all documents that refer or relate to the admission, and identify all persons who have personal knowledge of the admission.

## RESPONSE TO INTERROGATORY NO. 19:

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

## INTERROGATORY NO. 20:

Did you have any in-person meetings with Plaintiff, Claudia Engelhorn, in October 2021? If so, please state: (1) where the in-person meeting took place; (2) the purpose of the meeting; and (3) identify all attendees at such meetings.

## RESPONSE TO INTERROGATORY NO. 20:

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 21:**

Have you ever been accused of mishandling a client's monies? If so, please identify the client.

**RESPONSE TO INTERROGATORY NO. 21:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 22:**

Please describe what, if any, relationship you have ever had with Science Park Associates, LLC.

**RESPONSE TO INTERROGATORY NO. 22:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 23:**

Please state why you never recorded a deed in favor of any of the Plaintiffs in relation to Science Park Associates, LLC.

**RESPONSE TO INTERROGATORY NO. 23:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 24:**

Please describe what, if any, relationship you have ever had with Swain Landing LaPlata JC, LLC.

**RESPONSE TO INTERROGATORY NO. 24:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 25:**

Please describe what, if any, relationship you have ever had with Tenacity Investments, LLC.

**RESPONSE TO INTERROGATORY NO. 25:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 26:**

Please state whether you have received any distributions from the JAREB Irrevocable Trust
Agreement dated October 11, 2021

**RESPONSE TO INTERROGATORY NO. 26:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

Dated:  December 17, 2024

As to objections:

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Erik D. Bolog*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:

<u>**Counsel of Record Served via Email:**</u>
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
wph@hendersonlawllc.com; patrick@hendersonlawllc.com
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com; jconnolly@zuckerman.com; kmackinnonmorrow@zuckerman.com
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

<u>**Parties Served Via First Class Mail:**</u>
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Erik D. Bolog*

19

E-FILED; Baltimore City Circuit Court
Docket: 1/7/2025 10:02 AM; Submission: 1/7/2025 10:02 AM
Envelope: 19426009

# Exhibit C

# HENDERSON | LAW

December 18, 2024

**VIA EMAIL**
Douglas F. Gansler, Esq.
J.B. Howard, Esq.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006

      **Re:**    **Engelhorn, et al. v. Whiteford, Taylor & Preston, LLP, et al.**
              **Case No.: C-24-CV-24-002631**

Dear Messrs. Gansler and Howard:

      I am writing regarding your clients' recent responses to discovery in the above-referenced matter, in which your clients responded, in pertinent part, as follows:

      *"Until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court."*

      As you are aware, the Court has not granted the Motion to Stay Proceedings. Therefore, this case remains active, and the parties are obligated to comply with the applicable rules of discovery. Your clients' responses do not relieve them of their duty to provide full and complete discovery responses in accordance with the Maryland Rules. Additionally, I note that the Answers to Interrogatories your clients provided are not signed under oath, as required by Maryland Rule 2-421(b). This deficiency renders the responses invalid and noncompliant with the rules governing discovery.

      Pursuant to Maryland Rules 2-431, 2-432, and 2-433, I am providing this letter as a good faith effort to resolve these issues without Court intervention. I request that you advise me by **Monday, December 23, 2024**, as to whether your clients will be immediately retracting their position and producing substantive discovery responses in accordance with the Maryland Rules. If we do not receive said assurance by the 23rd, then we will have no choice but to file a motion to compel discovery and seek all appropriate remedies. This letter represents a good faith effort to avoid a discovery dispute.

      Should you have any questions or wish to discuss this matter further, do not hesitate to contact me.

           Sincerely,

           /s/ WPH

           Wes P. Henderson

WPH/kd

cc: Claudia Engelhorn

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS BOLOG'S, SCIENCE PARK'S, AND DARNESTOWN ROAD'S MOTION FOR PROTECTIVE ORDER**

The Plaintiffs, by counsel, submit this Response in Opposition to Defendants Bolog, Science Park, and Darnestown Road's Motion for Protective Order, and respectfully state as follows:

## I.    INTRODUCTION

The Defendants' motion is procedurally and substantively deficient, as it fails to meet the requirements set forth under Maryland Rules 2-403 and 2-431.  Maryland Rule 2-431 mandates that a moving party must make good-faith efforts to resolve discovery disputes before seeking court intervention.  The Defendants have failed to comply with this requirement, as evidenced by the absence of a Certificate of Good Faith Efforts accompanying their motion.  In and of itself, this failure to comply with the basic procedural prerequisites designed to encourage resolution without burdening this Court justifies the denial of the motion.

The Defendants also have not attached the underlying discovery requests at issue to their motion.  This omission prevents this Court from evaluating the merits of the discovery dispute and assessing whether the requested protective order is warranted.  Without this critical information, the motion is incomplete and cannot be properly adjudicated, and the motion should be denied.

The Defendants, moreover, have failed to establish good cause for the issuance of a protective order.  Maryland law requires a moving party to demonstrate specific and compelling reasons justifying the requested relief of a protective order.  The Defendants' motion is devoid of substantive argument or evidence to meet this standard.  For these reasons, the Plaintiffs request that this Court deny the Defendants' Motion for Protective Order in its entirety.

## II.    <u>STATEMENT OF FACTS AND APPLICABLE PROCEDURAL HISTORY</u>

Plaintiffs commenced this action on September 10, 2024, by filing a Complaint and Demand for Jury Trial against various Defendants, including, but not limited to, the Movants. Plaintiff Claudia Engelhorn served Interrogatories and Requests for Production of Documents on Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust on September 23, 2024.  Plaintiff Claudia Engelhorn served Defendants Darnestown Road, Inc. and Science Park Associates with Interrogatories and Request for Production of Documents on October 10, 2024.

Zachary Schrieber, Esquire, one of the attorneys for the moving Defendants, wrote an email to undersigned counsel on December 2, 2024, wherein he stated: "***Due to the Thanksgiving holiday***, we are requesting a two week extension until December 17th to ***respond*** to the document requests and interrogatories you served on Mr. Bolog in his individual capacity and as trustee, Science Park, and Darnestown Road."  *See* Exhibit A.  (Emphasis Added).

Undersigned counsel advised Mr. Schrieber on December 3, 2024, that he was "fine with the requested extension."  *Id*.    Defendants Bolog, Science Park, and Darnestown collectively served "***Responses*** and Objections" to Plaintiff Engelhorn's discovery requests on December 17, 2024.  *See* Exhibit B (Defendant Bolog's Responses and Objections to Plaintiff's First Set of

Interrogatories).[1]  The moving Defendants' responses were effectively "that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court."  *Id*.

On December 18, 2024, undersigned counsel requested that the moving Defendants advise

him as to whether the moving Defendants would reconsider their decision and answer the

discovery.  Undersigned counsel requested that this decision be communicated in writing by

December 23, 2024, not that the actual written discovery responses be produced by the 23rd, as has

been represented by the moving Defendants (*see* Exhibit C).

Defendants Bolog, Science Park, and Darnestown Road have ***not*** filed a petition to compel

arbitration.  In fact, Defendants Bolog, Science Park, and Darnestown Road have represented to

this Court that none of the claims against them are arbitrable.[2]  Nevertheless, the moving

Defendants have filed a baseless motion for a protective order.

## III.    <u>ARGUMENT</u>

**A. Due to the Defendants' failure to comply with Md. Rule 2-431, the Defendants' Motion
for Protective Order, is not properly before the Court because counsel for Defendants
failed to attempt to resolve this discovery dispute with Plaintiffs' counsel prior to
seeking the Court's Intervention.**

Pursuant to Maryland Rule 2-431, "[a] dispute pertaining to discovery need not be

considered by the court unless the attorney seeking action by the court has filed a certificate

---

[1] Plaintiffs are attaching Mr. Bolog's Answers to Interrogatories only, since Mr. Bolog's Answers
are basically identical to those provided by the other moving defendants.  Similarly, Mr. Bolog's
Response to Plaintiff's Request for Production of Documents essentially asserts the same objection
as a basis for not providing substantive answers or producing documents.
[2] *See* Defendants Bolog's, Science Park's, and Darnestown Road's Response to Whiteford, Taylor
&; Preston LLP's Petition for an Order Compelling Arbitration and Motion to Stay Proceedings,
dated December 17, 2024.

describing the good faith attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and circumstances of each discussion or attempted discussion." *Id*. It is well settled that "[t]his rule applies to <u>all</u> motions that raise any type of discovery dispute. The court need not decide . . . <u>a motion for a protective order under Rule 2-403</u> . . . or any other motion raising a discovery dispute until the parties have attempted to resolve the dispute and have so certified in writing to the court under this rule. The attempts must be in good faith and must cover every aspect of the dispute. The attorneys should discuss each interrogatory. . . or each document request . . ." 1 *Maryland Rules Commentary* 2-431.04 (2024) (emphasis supplied).

As stated by the Supreme Court of Maryland, "[d]iscovery is to be conducted between counsel, and the trial court should become involved <u>only</u> in the event of a dispute which counsel cannot resolve <u>after good faith efforts</u>." *North River Ins. Co. v. Mayor & City Council of Baltimore*, 343 Md. 34, 49 n. 3 (1996) (citing Maryland Rule 2-341) (Emphasis added.) As stated by the Appellate Court of Maryland, "Maryland Rule 2-431 . . . requires an attorney seeking redress from the court to first certify that he or she has made 'good faith attempts to discuss with the opposing attorney the resolution of the dispute and . . . that they are unable to reach agreement of the disputed issues.'" *Heineman v. Bright*, 124 Md. App. 1, 6 (1998).[3] "[P]arties are expected to contact the opposing party and attempt to resolve discovery disputes amicably prior to seeking sanctions from the court." An attorney that made "no attempt" to "informally resolve the matter" was engaged in "conduct [which] does not reflect well on the practice of law, and most assuredly

---

[3] The exception to Maryland Rule 2-431's requirement exists where a party simply fails to respond to discovery - - in which case the party seeking discovery may seek immediate sanctions. *Heineman*, 124 Md. App. at 6-7.

4

should not be rewarded by the grant of a default judgment" arising from the filing of a motion for sanctions. *Scully v. Tauber*, 138 Md. App. 423, 436-37 (2001).[4]

Thus, this Court should deny the moving Defendants' Motion for Protective Order on this threshold ground.

## B. Defendants waived their right to seek a protective order.

After Defendants agreed and stipulated through their counsel, Zachary Schrieber, Esquire, that they would respond to Plaintiff's discovery requests by December 17, 2024, they presented the instant motion on December 23, 2024. By that time, the Defendants had already provided discovery responses, albeit completely deficient responses, to undersigned counsel. Accordingly, the Defendants waived their right to seek a protective order relating to discovery, which they previously elected to provide deficient responses to. As noted above, the moving Defendants elected to provide deficient discovery responses before obtaining a protective order from this Court.

This Court should not countenance the Defendants' gamesmanship. As referenced above, the moving Defendants agreed to serve their discovery **responses** by December 17, 2024. On December 17, 2024, the Defendants served wholly inadequate responses. The Plaintiffs, therefore, requested that the Defendants advise undersigned counsel by December 23, 2024, as to whether

---

[4] As noted by the *Heineman* Court, "[d]iscussions between counsel regarding propounded interrogatories may be fruitful, for example, when there is a dispute about whether the number of interrogatories exceeds thirty . . ." *Heineman*, 124 Md. App. at 7. This is the exact type of good faith discussion in which undersigned counsel has attempted to engage counsel for the moving Defendants. The fact that the moving Defendants' counsel has <u>ignored</u> this effort, despite the requirements of the Maryland Rules and the teachings of Maryland's appellate courts in cases like *Heineman* demonstrates that the moving Defendants have no interest in making good faith efforts to resolve any alleged discovery dispute over the Plaintiff's discovery requests. As the Appellate Court of Maryland held in *Scully*, this refusal by the moving Defendants' counsel does not reflect well on the practice of law and most assuredly should not be rewarded by this Court through a grant of the pending Motion for Protective Order. *Scully*, 138 Md. App. at 436-37.

they would revisit their position and serve full and complete discovery responses in accordance

with Maryland Rules 2-421 and 2-422.  Although the moving Defendants falsely represented to

this Court that the Plaintiffs requested that they answer the discovery requests in a proper manner

by December 23rd, undersigned counsel's letter simply requested that Defendants' counsel advise

by December 23rd whether they would change their position and provide appropriate responses to

Plaintiff's discovery requests.  *See* Exhibit C.  Instead of engaging in any discussion about this

issue, the moving Defendants sought and filed a motion for protective order after they had

previously elected to provide deficient responses to Plaintiff's discovery requests.  Accordingly,

the moving Defendants have waived their right to the requested relief.   Parties cannot serve

discovery responses, deficient or otherwise, and thereafter seek a protective order as to the same

discovery requests to which they have already responded.

### C. Defendants have failed to provide this Court with the discovery requests at issue, such that this Court would be required to speculate as to whether the discovery should be stayed pending a decision on the petition to compel arbitration.

In *Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc. ("Gallagher"),* 195 Md.

App. 583 (2010), the Appellate Court of Maryland held that "[t]he burden of substantiating non-

discoverability is upon the party to whom the discovery request is directed … and the burden

cannot be met by 'conclusory allegations or mere assertions.'" *Id.*, at 598 (quoting *Ashcraft &*

*Gerel v. Shaw*, 126 Md.  App. 325, 350 (1999)).  In *Gallagher*, the trial court determined that it

was unable to assess a claim of privilege due to the failure of the non-moving party to provide the

interrogatory/answer or the request/response.  *Id*. at 592-593.  Accordingly, the trial court granted

a motion to compel responses, even though the Defendant/non-moving party had asserted privilege

and/or work product as the basis for not providing the requested answers/responses.   In analyzing

6

the correctness of the trial court's decision, the Appellate Court of Maryland made the following

observation:

> In the instant case, the circuit court found itself unable to determine from GEJ's
> opposition to Checkers' motion for an order to compel whether the disputed
> documents were, in fact, subject to legitimate withholding from Checkers.    In
> so finding, the court implicitly determined that GEJ had not met its burden of
> substantiating non-discovery and granted the motion for an order to compel.    The
> circuit court ruled that GEJ's opposition to Checkers' motion for an order to compel
> was not sufficiently detailed to allow it to make an adequate determination of the
> issues, and, allowing due deference to the circuit court's fact-finding and
> knowledge of the case, we see nothing on this record to indicate an abuse of its
> considerable discretion in controlling the discovery process by granting Checkers'
> motion on that basis.

*Id.* at 597.

As in *Gallagher*, the moving Defendants have not provided this Court with the discovery

requests at issue.    The Defendants' characterization of the Plaintiff's discovery requests in the

Motion for Protective Order is not a fact that this Court can consider in ruling on the motion, as

the content of Plaintiff's discovery requests are not facts contained in the record, and the motion

does not comply with Maryland Rule 2-311(d) as it is neither properly supported by a competent

affidavit nor accompanied by any papers on which it is based.    *Scully*, 138 Md. App. at 431 ("[t]he

motions court had no right to consider any 'fact' set forth by appellee in his opposition due to

appellee's failure to comply with Maryland Rule 2-311(d)").    Accordingly, the Defendants' motion

should be denied.

### D. The Defendants' Motion for Protective Order should also be denied on substantive grounds.

Maryland case law makes clear the liberality with which the Maryland Rules are to be

construed in favor of parties seeking pre-trial discovery.    *See, e.g.*, *Kelch v. Mass Transit*

*Administration*, 287 Md. 223-229-30 (1980); *Tanis v. Crocker*, 110 Md. App. 559, 575 (1996). As

stated above, Maryland Rules 2-421 and 2-422 make it clear that discovery by means of

interrogatories and requests for production of documents are basic and important parts of pre-trial discovery.  Moreover, interrogatories and requests for production of documents are discovery devices which are available to all litigants.

In *Jayne H. Lee v. Flagstaff Industries, Inc.*, 173 F.R.D 651 (D. Md. 1997), the U.S. District Court discussed the fundamental role served by the use of interrogatories and requests for production of documents in discovery.  *Flagstaff*, 173 F.R.D. at 652-57.  As the *Flagstaff* Court held, furthermore, because answers to interrogatories and responses to requests for production of documents serve as the foundation for additional discovery by way of depositions, interrogatories and requests for production of documents "are most helpful when propounded and answered early in the litigation, and their usefulness seems to be directly proportional to the amount of time remaining before a discovery cutoff arrives."  *Flagstaff*, 173 F.R.D. at 653.

Plaintiff Engelhorn's Interrogatories and Request for Production of Documents that these discovery requests are designed to elicit information that is well within the scope of discovery set forth in Maryland Rule 2-402(a), which is also the information which the *Flagstaff* Court noted is most commonly, and appropriately, sought in discovery.  *Flagstaff*, 173 F.R.D. at 652.  In fact, a cursory examination of Plaintiff Engelhorn's Interrogatories demonstrates that they are designed to elicit relevant and discoverable information, particularly since the first four interrogatories are taken directly from the form set contained in the Maryland Rules.  *See* Exhibit B.

In their Motion for Protective Order, the moving Defendants have not assailed <u>any</u> of Plaintiff Engelhorn's individual Interrogatories, or Requests for Production of Documents, on substantive grounds.  (*See* moving Defendants' Motion, *passim*.)  Rather, the moving Defendants offered the conclusory and meritless assertions that responding to "[d]iscovery at this stage would be especially wasteful in the context of this case.  Plaintiff has propounded hundreds of document

8

requests on the Bolog Defendants, many of them are impossibly broad and incomprehensible; all

of the interrogatory requests far exceed the number allowed by the Maryland Rules, the vast

majority are unintelligible and incomprehensible, and it would take days of meet-and-confers to

understand and determine the scope of the requests and narrow them appropriately."  Defs' Mot.

at 5 (footnote omitted).[5]   The moving Defendants' <u>completely conclusory and non-specific</u>

arguments are <u>insufficient</u> to satisfy their burden and justify the entry of a motion for protective

order.

In *Tanis*, the party seeking a protective order alleged that the discovery requests sought

"irrelevant" information and were "designed to 'annoy, harass, oppress, and create an undue

burden on [the party moving for a protective order].'"  *Tanis*, 110 Md.  App. 559 at 573.  The

Appellate Court of Maryland held that Maryland Rule 2-403 was based in large part on Fed.  R.

Civ. P. 26(c), so that federal decisions provided persuasive precedent.  *Tanis*, 110 Md.  App. at 574.

The *Tanis* Court adopted the following principles articulated by federal courts with regard to

protective orders in several cases: (a) the party seeking a protective order has the burden of making

a particular  and  specific  demonstration  of  fact,  as  distinguished  from  general,  conclusory

statements, revealing some injustice, prejudice, or consequential harm if protection is denied; (b)

it is clear that protective orders are not to be granted liberally; and (c) the rule governing protective

orders is not a blanket authorization for the court to prohibit disclosure of information whenever

it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in

---

[5] Plaintiffs  issued  26,  27,  20,  and  20  Interrogatories  to  Bolog,  JAREB,  Science  Park,  and
Darnestown Road, respectively.  Plaintiffs issued 60, 46, 29 and 33 Requests for Production to
Bolog,  JAREB,  Science  Park,  and  Darnestown  Road  respectively.  They  may  total  over  100
requests  cumulatively,  but  the  number  directed  to  each  defendant  is  certainly  not  excessive,  and
well within the bounds of the rules.  Moreover, Plaintiffs have no control over whether multiple
defendants  share  the  same  counsel,  such  that  said  defense  counsel  may  be  responsible  for
answering discovery for multiple clients.

order to prevent injury, harassment, or abuse of the court's processes. *Tanis*, 110 Md. App. at 574-75.

Given the liberality with which discovery rules are to be construed in Maryland, the Appellate Court of Maryland was persuaded that the principles articulated by the federal courts applied to motions for protective orders in Maryland. *Tanis*, 110 Md. App. at 575. Also, existing Maryland law construing the predecessor to Maryland Rule 2-403 held that protective orders should only be utilized in limited circumstances, *i.e.*, when it is apparent to the trial court that discovery is being utilized for the purpose of harassing or is oppressive so that to allow discovery would create "almost insurmountable roadblocks" for the party from whom discovery is sought. *Tanis*, 110 Md. App. at 575.

The Appellate Court of Maryland held that the moving party's argument that the discovery "was intended to annoy, embarrass, and oppress him, as well as place an undue burden on him," was "no more than . . . a general, conclusory statement that parroted the language of MD. RULE 2-403(a) and, consequently, failed to meet his burden of production in this matter . . ." *Tanis*, 110 Md. App. at 576. As a result, the trial court erred when it granted the appellee's motion for protective order. *Id.*

The moving Defendants note that various motions are pending. The moving Defendants, however, ignore well-settled law which states: "'The filing of a motion to dismiss does not automatically stay or extend the time for providing discovery. . . In the usual case . . . discovery proceeds during the pendency of a motion to dismiss.'" *Horn v. Pacific Mortgage*, 100 Md. App. 311, 325 (1994) (ellipsis in original) (*quoting* P. Niemeyer & L. Richards, *Maryland Rules Commentary*, 57-58 (1984, 1988 Supp.). This holds true even where an initial motion to dismiss

has been granted and the party whose initial pleading was dismissed has amended and a second

motion to dismiss is pending with regard to the amended pleading. *Id.*

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiffs respectfully request that this Court deny the

Motion for Protective Order.

Respectfully submitted:

<u>/s/ *WPH* (AIS# 0212180062)</u>
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of January 2025, a copy of the foregoing was

electronically filed via MDEC, and was electronically served via MDEC to the following:

> William J. Murphy, Esq.
> John J. Connolly, Esq.
> Kirk E. MacKinnon Morrow
> Zuckerman Spaeder, LLP
> 100 East Pratt Street, Suite 2440
> Baltimore, MD 21202
> wmurphy@zuckerman.com
> jconnolly@zuckerman.com
> kmackinnonmorrow@zuckerman.com
>
> *Counsel for Defendant Whiteford, Taylor & Preston, LLP*
>
> Douglas Gansler, Esq.
> John B. Howard, Jr., Esq.
> Cadwalader, Wickersham & Taft, LLP
> 1919 Pennsylvania Avenue, N.W.
> Washington, DC 20006
> Douglas.gansler@cwt.com
> J.B.Howard@cwt.com
>
> *Counsel for Defendants Erik D. Bolog, Individually,*
> *and as Trustee of The JAREB Irrevocable Trust*
> *Agreement dated October 11, 2021,*
> *Science Park Associates, LLC; and Darnestown Road, Inc.*

AND was served via first class mail, postage prepaid on the following:

> Michael Postal
> 1801 16th Street NW, Apt 608
> Washington, DC 20009
>
> *Defendant pro se*
>
> POJO LaPlata, LLC
> 4302 Broken Arrow Court, Apt 606
> Clinton, MD 20735
>
> *Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*


_____ /s/ *WPH* (AIS# 0212180062) _____
Wes P. Henderson, Esq.

**EXHIBIT A**

<div align="center">

NOTICE OF GIFT

</div>

TO:      ERIK D. BOLOG

FROM:    CLAUDIA A. ENGELHORN

REGARDING: INTENT TO MAKE A GIFT TO ERIK D. BOLOG

DATE:     OCTOBER 11, 2021

---

Dear Erik,

The purpose of this Notice of Gift is to set forth my intentions relating to making a gift to an irrevocable trust for the benefit of you and your family.

1. The Swiss Litigation has concluded, resulting in an enormous payment to me personally, thanks to your leadership, skill and guidance of this cross-border matter. You and I battled this matter between the United States, Switzerland and Monaco, during the heart of the Covid pandemic. You risked yourself for me. You were much more than a lawyer, but, were also my social worker (for me), strategist and confidant. You believed in me when all others, including our Swiss team, turned on me.

2. I have paid all legal fees owed to Whiteford Taylor and Preston, PLLC. Moreover, I have funded a significant escrow (over $400,000) at your firm for all future work that will be done on my behalf. If that escrow is exhausted, I will replenish it.

3. I recently approached you and let you know that I, as a result of our friendship and my financial ability to do so, had determined to fund as a grantor, $10M USD to an irrevocable trust for your family. You never requested anything from me other than what was due your law firm pursuant to the retainer agreement.

4. In fact, after hearing about my intention relating to funding the irrevocable trust on behalf of your family, you strongly tried to discourage the gift. As you have learned over the past several years, I am not easily discouraged and once I have decided to do something, I do it.

5. The gift has nothing to do with the legal services that you have provided to me, nor any legal services that you or your firm will perform on my behalf prospectively. As stated above, all legal fees and expenses are paid and the firm is well funded by me for future work to be done on my behalf and as the Life Trustee of the Mannheim Trust.

6. After realizing that you were not going to change my mind relating to the making of the gift referenced above, you advised (begged) me to hire independent counsel to advise me relating to the gift, so that no one could ever suggest that you influenced me in any way nor took advantage of me and our relationship in any way relating to the gift. You also advised me that independent counsel should review the gift and any conveyance documents to avoid any appearance of impropriety or a conflict of interest. I assessed your admonishment relating to retaining independent counsel relating to the gift and independently determined that I did not wish to follow your guidance in relation to the hiring of another attorney to review the gift nor the documentation of the gift. I completely understand all of the issues relating to the gift and the documentation necessary for completing it.

7. The gift to the trust for the benefit of you and your family is being made by me because of our relationship and my desire to share my good fortune with my very dear friend and his family.

8.  I want to be perfectly clear, the gift has nothing to do with your law firm, nor legal

services that you have or will provided to me.

IN WITNESS WHEREOF, I, **CLAUDIA ENGELHORN**, have hereunto set my hand and seal

this 11th day of October, 2021.

Signed, sealed and delivered
in the presence of:

_____

_____                    _____(SEAL)
                                                                    **CLAUDIA ENGELHORN**

**STATE OF** Massachusetts ;
**CITY/COUNTY OF** _Barnstable_____, **to-wit:**

    The foregoing instrument was acknowledged before me on the 11<sup>th</sup> day of Octob—

_____, 2021 by **CLAUDIA ENGELHORN**, Grantor.

                                        _____
                                        Notary Public

SARAH K. MAYO
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

My commission expires: _08/25/2025_
Notary Registration No.: ___n/a___

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | **HEARING REQUESTED** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

### DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN'S REPLY IN SUPPORT OF MOTIONS TO STRIKE, FOR A MORE DEFINITE STATEMENT, AND TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................3

I.      THE OPPOSITION DOES NOT UNDERMINE THE NECESSITY OF
        GRANTING THE BOLOG DEFENDANTS' MOTION TO STRIKE. .................3

II.     THE COURT SHOULD GRANT THE MOTION FOR MORE
        DEFINITE STATEMENT BECAUSE THE PLAINTIFF IS NOT
        PERMITTED TO FLATLY DISREGARD A PLEADING
        REQUIREMENT MANDATED BY THE MARYLAND RULES.......................5

III.    PLAINTIFFS HAVE NOT IDENTIFIED WHERE AND HOW THEY
        HAVE PLEADED FRAUD WITH PARTICULARITY. ......................................6

IV.     PLAINTIFFS HAVE FAILED TO POINT THE COURT TO ANY
        NEGLECT OF REASONABLE DUTY IN SUPPORT OF THE LEGAL
        MALPRACTICE CLAIM. ..................................................................................10

V.      THE COURT SHOULD DISMISS COUNT VII ALLEGING BREACH
        OF FIDUCIARY DUTY......................................................................................13

VI.     THERE IS NO BASIS FOR A CONSTRUCTIVE TRUST OVER
        DARNESTOWN ROAD. ....................................................................................14

VII.    PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY HARM RELATED
        TO THE SCIENCE PARK TRANSACTION.......................................................15

CONCLUSION..................................................................................................................15

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB
Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC
("Science Park"); and Darnestown Road, Inc. ("Darnestown") (collectively, the "Bolog
Defendants"), hereby reply to Plaintiffs' Opposition to the Bolog Defendants' Motions to Strike,
For More Definite Statement, and to Dismiss the Complaint (the "Plaintiffs' Opposition").

## <u>INTRODUCTION</u>

The Plaintiffs' Opposition conclusively confirms that the 14 separate claims against the
Bolog Defendants alleged in the Amended Complaint are merely repackaged, frivolous legal
theories based on demonstrably false narratives that Ms. Engelhorn has fabricated in the throes of
her Giftor's Remorse.  But none of the spaghetti Plaintiffs have thrown against the wall with their
redundant and overlapping counts can stick.  The narratives are not just false, but facially
implausible and shot through with gaping factual and legal holes that require dismissal of all
Counts against the Bolog Defendants.

The most obvious of these glaring omissions is that Plaintiffs have not alleged that Mr.
Bolog has, in any capacity, played any role in effectuating the delivery of the $10 million gift to
JAREB.  The Amended Complaint does not attempt to articulate how Mr. Bolog, in any capacity,
did or could have directed a transfer of $10 million from Ms. Engelhorn's personal bank account
at Bank of America ("BoA") into the JAREB bank account (the "Transfer").  Indeed, that did not
happen and, moreover, it would have been impossible for it to have happened.  This conspicuous
and dispositive gap defeats all the claims relating to the Gift—*i.e.*, Counts I, VI, VII, VIII, IX, XV,
XVI, and XX.  The allegations are missing because Mr. Bolog could not and did not have anything
to do with the Gift.  Those intentional acts were intentionally performed by Ms. Engelhorn.

More specifically, the reason for this stunning omission is that the Plaintiff knows that the only way for the Transfer to have been accomplished was through Ms. Engelhorn's instructing BoA to execute the Transfer—as she did by speaking directly to BoA on a recorded line, first being identified by BoA by providing a security code that was texted or emailed to her personal cell phone or email and then answering other privately held security questions and, finally, confirming her desired directive to make the Transfer.   For starters, Plaintiff herself would have had to knowingly and intentionally participate in the call to BoA. And if, as the Plaintiff untruthfully asserts in the Amended Complaint, *see* Paragraphs 24-25, she did not know about, and authorize the Gift, she would have simply instructed BoA not to make the Transfer.   Thereafter, if the Transfer had somehow occurred without her intent and affirmative direction to BoA, she would not have waited 10 months to protest the fact that $10 million had been transferred from her account to JAREB, and then waited a full three years after the Transfer to concoct a set of frivolous legal claims based on untrue assertions in an attempt to fraudulently recover the Gift.

In truth, the Transfer conclusively demonstrates that Ms. Engelhorn, in fact, intended to make the Gift to JAREB (not to Mr. Bolog), and the Transfer definitively confirms that she intended to make the Gift, precisely as stated in the Notice of Gift, Exh. A,[1] and for the reasons stated in that Notice of Gift.  In other words, Ms. Engelhorn's voluntary act of making the Transfer fatally undermines the central premise of her case—the lie that she did not intend to make the Gift.

It is troubling, to say the least, that Plaintiffs, through counsel, have filed in this Court a lawsuit making the false, irresponsible, and libelous accusation that Mr. Bolog in essence stole $10 million from a client while withholding from the Court the knowledge that Mr. Bolog did not and could not have unilaterally taken those funds from Ms. Engelhorn's account.  This is both a

---

[1] The Notice of Gift was incorporated by reference in the Amended Complaint.

violation of the duty of candor with the tribunal and a knowing and intentional fraud on the Court.

Defendant's Memorandum explained that Ms. Engelhorn made the Transfer herself, and with

intent.  In response, Plaintiffs' Opposition disingenuously attempted to evade the issue by asking

the Court to disregard the deceptive omission, stating that the Amended Complaint "does not allege

that Engelhorn called Bank of America, and Bolog's factual assertions are unsupported, as well as

unsworn."  Plaintiffs' Opposition at 16.  Tellingly, Ms. Engelhorn doesn't deny that she, and she

alone, participated in the call with BoA and authorized the Transfer.

Worse still, Plaintiffs' Opposition doubles down on the false and defamatory charge of

theft, constructing out of whole cloth another irresponsible allegation, stating that "[e]ven

assuming arguendo that such a call occurred; moreover, it would have undoubtedly taken place

under false pretenses created by Bolog."  This outrageous statement is effectively an admission

that Plaintiffs' counsel did not undertake a reasonable investigation into how his client somehow

lost the $10 million from her account that Mr. Bolog is accused of having stolen.  It is crystal clear

that Plaintiffs did not even seek to obtain evidence from BoA suggesting that Mr. Bolog played a

role in Ms. Engelhorn making the Transfer.  Such evidence will be subpoenaed and filed in support

of a forthcoming Motion for Summary Judgment.

## **ARGUMENT**

## I.    THE OPPOSITION DOES NOT UNDERMINE THE NECESSITY OF GRANTING THE BOLOG DEFENDANTS' MOTION TO STRIKE.

As explained in the Bolog Defendants' Memorandum in Support of the Motion to Strike,

Motion for More Definite Statement, and Motion to Dismiss the Complaint ("Opening

Memorandum"), the Amended Complaint contains a number of statements that should be stricken

as "improper, immaterial, impertinent, or scandalous matter" under Maryland Rule 2-322(e).

The first of these allegations is the statement that "concerns for her safety" led Ms. Engelhorn to omit her address from the Amended Complaint.[2]  Plaintiffs argue that the allegation need not be stricken because Ms. Engelhorn is "not afraid of Mr. Bolog" and there is no indication in the Amended Complaint that Mr. Bolog is the person who is causing the concerns for safety. Both of those contentions fall flat.  Ms. Engelhorn's expression of "concerns for her safety" in a lawsuit targeted at Mr. Bolog creates the inescapable implication that he is in fact the source of the concerns, whether or not that is the reality or is expressly spelled out.  Moreover, a jury could never be shown a copy of the Amended Complaint because the baseless assertion of safety concerns will only be interpreted as resulting from Ms. Engelhorn's imagined fear of Mr. Bolog or other defendants (which reasonable inference by the jury would be prejudicial to the Bolog Defendants), but would also inject a measure of sympathy and bias in favor of Ms. Engelhorn to jurors or the court (which reasonable inference by the Jury will be prejudicial to the Bolog Defendants).

The accumulated spurious, irrelevant, untimely, and totally out-of-context allegations relating to Mr. Bolog's finances must also be stricken.  The supposed justification for these allegations, all of which have long ago been resolved and all in favor of Mr. Bolog, is that they relate to the negligent hiring and retention claim against WTP.  That contention is preposterous. Almost all of the random hodgepodge of items listed are decades-old, utterly trivial and all resolved in favor of Mr. Bolog.  Moreover, each and every one of the items is wholly irrelevant to the claim against WTP and are not even asserted to be relevant to the claims against the Bolog Defendants. Nothing about the mere existence of lawsuits and/or liens, containing unproven allegations

---

[2] Regardless of any such concerns, none of which have an iota of a basis in truth, Ms. Engelhorn is not permitted to unilaterally choose to omit that information, *see infra*, Section II.

constitutes valid or reliable information on which WTP should have been expected to have acted on.

Moreover, despite Plaintiff's efforts to exaggerate the significance of any of these allegations, they do not even attempt to support the statements, now in the public record, that Mr. Bolog has engaged in the "conversion of monies," failed "to live within his means," is "unwilling to abide by rules and regulations," and poses a risk of engaging in the "misuse [of] client funds."  Compl. ¶ 22.

Accordingly, the Motion to Strike the reference to "concerns for personal safety" in Paragraphs 1 and 2 and to the financial issues referenced in Paragraphs 21 and 22 of the Amended Complaint should be granted.

## II.    THE COURT SHOULD GRANT THE MOTION FOR MORE DEFINITE STATEMENT BECAUSE THE PLAINTIFF IS NOT PERMITTED TO FLATLY DISREGARD A PLEADING REQUIREMENT MANDATED BY THE MARYLAND RULES.

Ms. Engelhorn's purported safety concerns do not give her license to ignore the requirements in Maryland Rule 1-301(a) setting forth what a complaint must include—in this instance, the address of the Plaintiff.  The various convoluted efforts to justify this unilateral omission are woefully inadequate and entirely unsupported.  There was a legal way to approach this imagined and unsupportable-in-reality matter: as explained in the Opening Memorandum, Ms. Engelhorn could have filed a motion for a protective order to withhold this information.  Instead, she unilaterally elected to disregard Rule 1-301(a).

It is no answer to contend, as Ms. Engelhorn does, that Mr. Bolog already knows the address—he does not—or that the Amended Complaint provides enough information by alleging that she is purportedly one of the estimated 7,227,750 citizens of Tennessee.  The Rule contains no exceptions for those circumstances.  Equally meritless is the flawed argument that the address

is irrelevant because the case cannot be removed under diversity jurisdiction in any event.  There

are, in fact, scenarios where removal could occur, and here again, the Rule does not give Ms.

Engelhorn authority to determine what parts of Rule 1-301(a) apply to her.  Because the Amended

Complaint is required to include the plaintiff's address, and Defendants are entitled to this

information, a more definite statement setting forth Ms. Engelhorn's address is necessary.

## III.    PLAINTIFFS HAVE NOT IDENTIFIED WHERE AND HOW THEY HAVE PLEADED FRAUD WITH PARTICULARITY.

Plaintiffs simply have no meaningful answer to the argument in the Opening Memorandum

that the Amended Complaint fails to plead fraud with particularity, as required by Maryland law.

As explained below, this pleading deficiency requires dismissal of the fraud claims in Counts I,

III, IV, and V (related to the $10 million gift; Science Park, Darnestown Road, and Swain Landing,

respectively), and the related claims seeking remedies for fraud in Counts VIII (rescission of the

gift); Counts IX, X, and XI (constructive trust over JAREB, Darnestown, and Swain Landing,

respectively); Counts XIII and XIV (dissolution and liquidation of Swain Landing); Counts XVI

(unjust enrichment of JAREB); and Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud,

and unjust enrichment related to Science Park).

Concerning the claims related to the Gift, Counts I, VI, VII, VIII, IX, XV, XVI, and XX,

the contention appears to be that Plaintiffs have satisfied the requirement because they have

included a handful of arbitrary, granular details—even though those details are unrelated to any

actual statements or actions purportedly taken by Mr. Bolog, in any capacity.  This is insufficient.

The law is clear that the particularity requirement for satisfying the high standard for alleging the

very serious nature of fraud claims mandates pleading in detail the *statements* that are alleged to

be fraudulent, along with specific supporting allegations about the surrounding circumstances.

Thus, "a plaintiff must identify who made what false statement, when, and in what manner—*i.e.,*

orally, in writing, etc.; why the statement is false; and why a finder of fact would have reason to

conclude that the defendant acted with scienter—*i.e.,* that the defendant either knew that the

statement was false or acted with reckless disregard for its truth) and with the intention to persuade

others to rely on the false statement." *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 528

(2014)

The Plaintiffs' Opposition wholly fails to allege any particular statements or actions,

supporting any of the fraud claims, both those related to the Gift and those related to Science Park

and Darnestown Road.  With respect to the Gift, the Plaintiffs' Opposition, using bolded text,

recites details found in the Amended Complaint that are not "statements," such as the absurd

contention that Ms. Engelhorn was presented with "upside down" documents and the superfluous

tidbit that "wire instructions" were included among the documents.  *See* Plaintiffs' Opposition at

10-11.  To the extent there are arguably references to actual statements, they are not alleged to be

false statements, nor statements made by Mr. Bolog, such as the allegation that Mr. Bolog advised

Ms. Engelhorn that he needed to have documents signed and notarized.  Finally, the Plaintiffs'

Opposition continues to emphasize the Amended Complaint's allegations that Mr. Bolog "tricked"

Ms. Engelhorn into signing the documents and "lulled her into believing" that they concerned

"routine matters."  But here again, these broad and utterly baseless characterizations are not

particularized statements, as the Maryland Rules require for pleading fraud claims.

Plaintiffs also assert that statements within the documents Ms. Engelhorn signed were false

and fraudulent, "namely that Plaintiffs Engelhorn and Trust intended to make a $10 million gift

and transfer said funds to the JAREB Irrevocable Trust."  But subsequent events demonstrate

conclusively that these were not false statements at all.  As the Bolog Defendants showed in their

Opening Memorandum, the Notice of Gift on which Plaintiffs build their entire case for fraud was

7

not, is not, and never will be a legal instrument with any force and effect, and did not and could not effectuate the Transfer constituting the Gift. None of the documents signed by Ms. Engelhorn (in the presence of a Notary Public) caused the Transfer to be made. The Transfer occurred when Ms. Engelhorn verbally directly BoA on a recorded line to make the Transfer, after first being identified by BoA by providing a security code that was texted or emailed to her personal cell phone or email and then answering other security questions, and then, confirming her directive to make the Transfer. If, as the Plaintiff untruthfully asserts in the Amended Complaint, she did not know about the Gift, then she would have simply instructed BoA not to make the Transfer.[3]

The Transfer by Ms. Engelhorn, which was accepted by JAREB, completed a legally valid and enforceable gift. *See Daniels v. Daniels*, 217 Md. App. 406, 412 (2014) ("In order for the conveyance to be held legally effective, all necessary elements of a gift must occur, including the intent to transfer the property, relinquishment of control, delivery, and acceptance by the donee."); *see also Zeidman v. Zeidman*, 49 Misc. 3d 963, 965 (N.Y. Dist. Ct. 2015) ("The elements necessary to establish an inter vivos gift are: (1) donative intent to make an irrevocable transfer of ownership; (2) actual physical or constructive delivery of the property; and (3) acceptance of the gift by the donee."). But, stunningly, even though the delivery element is essential to the effectuation of a gift, the Amended Complaint is completely silent on how the Transfer could possibly have

---

[3] The Amended Complaint also fails to explain as to why 10 months after the Transfer, by email dated July 6, 2022, Ms. Engelhorn, after having a falling out with Mr. Bolog, demanded that the gift be returned stating that she signed the documents when she was drunk and that Mr. Bolog had transferred the funds from Ms. Engelhorn's personal account at BoA to himself. Of course, this email completely eviscerates her new contention in the Amended Complaint that she signed certain documents, none of which were legal instruments, while they were "upside down." Moreover, the untrue contention in the email that the Transfer was performed by Mr. Bolog, when that assertion is provably false and confirmed untrue by the BoA recording of the call with Ms. Engelhorn, further shows that the only fraud involved in this entire matter is the fraud that has been orchestrated by Ms. Engelhorn and her counsel to improperly recover an irrevocable Gift.

occurred without the intentional, purposeful, and indisputably desired action of Ms. Engelhorn.

The Amended Complaint does not allege and cannot allege that Mr. Bolog, in any capacity, had

anything to do with the Transfer and Ms. Engelhorn's unilateral direction to BoA to make

"delivery" of the gift to JAREB.  This defect is fatal to Counts I, VI, VII, VIII, IX, XV, XVI, and

XX, and those claims must be dismissed.

The same lack of particularized allegations of fraud that dooms all of the claims related to

the Gift is also fatal to the claims related to Science Park and Darnestown Road.[4] The Plaintiffs'

Opposition points to the Amended Complaint's generic, nonspecific references to supposedly

undisclosed "personal interests" of Mr. Bolog, but such allegations fall far short of the well-

established standard for particularity.   Similarly, there is no attempt to articulate how these

allegations evidence fraudulent intent or affected specific investment decisions.  *See McCormick*,

219 Md. App.at 528 (2014) (dismissing claims where plaintiff did not specifically allege how

defendants "failed to disclose material facts that were necessary to make other statements not

misleading" and instead only asserted "vague references to [defendant's] failure to accurately"

disclose certain risks.).   Accordingly, we respectfully submit that Counts III-V, XIII-XIV, and

XVII-XIX must be dismissed.

---

[4] The foregoing discussion addresses the failure to meet the pleading standards for fraud as they
relate to the allegations of Counts III and IV concerning Science Park and Darnestown Road,
respectively. Separate and apart from this discussion, Section VI below addresses Count X, which
seeks a constructive trust over Darnestown Road, and elaborates more fully on the substance of
the Darnestown Road transaction.  Similarly, Section VII below addresses the substance of
arguments in support of their three other Science Park-related claims in Counts XVII, XVIII, and
XIX.

## IV.    PLAINTIFFS HAVE FAILED TO POINT THE COURT TO ANY NEGLECT OF REASONABLE DUTY IN SUPPORT OF THE LEGAL MALPRACTICE CLAIM.

The Bolog Defendants definitively explained in the Opening Memorandum that the claim for legal malpractice is fatally defective in failing to show the required element of a "neglect of a reasonable duty." *Conwell L. LLC v. Tung*, 221 Md. App. 481, 514, 109 A.3d 1227, 1247 (2015) (claim for legal malpractice requires a showing of "(1) the attorney's employment, (2) [the attorney's] neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty.'") (internal citations and quotations omitted).

According to Plaintiffs, the legal malpractice claim in Count VI is an "alternative theory" of recovery, thus separate from the wholly frivolous and inadequately pled fraud claims, asserting "that Bolog conducted these acts not intentionally but negligently." The Plaintiffs' Opposition grasps at straws in its unsuccessful efforts to point to some "reasonable duty" that Mr. Bolog owed the Plaintiffs and then neglected. Among the supposed breaches constituting legal malpractice were "failing to advise Plaintiffs that they would owe gift taxes on the $10 Million transfer, that in lieu of paying gift taxes, the $10 million transfer would exhaust most of her lifetime gift exemption, and generally failing to competently conduct due diligence into the proposed investments and transfers at issue." Opp. at 16.

This is sheer nonsense. Setting aside the fact that the Amended Complaint does not allege and could not allege that Mr. Bolog served as Ms. Engelhorn's attorney in any capacity that would create a duty to provide tax advice or conduct unspecified "due diligence," there is a more fundamental flaw in this claim that is evident from the face of the Amended Complaint: Ms. Engelhorn forthrightly acknowledges that Mr. Bolog declined to act as her attorney on such matters and instead advised her to seek independent counsel in connection with the Gift, a fact also reflected in Ms. Engelhorn's signed and notarized Notice of Gift. Ms. Engelhorn's assertion is not

that Mr. Bolog did not urge her to discuss the gift with independent counsel, but that "there would not have been an opportunity for [her] to consult with independent counsel" because she was supposedly on vacation in Cape Cod (in fact, she was at her compound in Hyannis Port in Massachusetts), where she lives during the summer.  The notion that Ms. Engelhorn had no choice but to sign a document entitled "Notice of Gift" without knowing what the Gift was or being able to get in contact with other counsel is implausible on its face and must be disregarded.  Of course, the Notice of Gift was not an instrument and did not create the Transfer; it merely explained her rationale for the Transfer.  As explained above, the Transfer was made days later, when Ms. Engelhorn personally directed the Transfer.  It defies all credulity that if she did not know that she was making the Gift, that she would have directed BoA to make the Transfer, days after signing the Notice of Gift setting forth her intentions to make the Gift.  Instead, on a recorded line, she directed BoA to make the Transfer, which JAREB accepted, which completed the Gift.  Period.  The Amended Complaint is nothing short of a fraud upon the Court by Ms. Engelhorn and her counsel in an attempt to recover the Gift after Ms. Engelhorn had a falling out with Mr. Bolog 10 months after the Gift had been completed.[5]

By way of background, Mr. Bolog represented Ms. Engelhorn, in a cross-border litigation relating to her forced heirship rights against her father's estate since her father intentionally removed her from his will, which was being probated in Switzerland.  As a result of Mr. Bolog's efforts on her behalf, he was successful in litigating and then negotiating a $130 million settlement

---

[5] It should not be forgotten, as stated in the Opening Memorandum, that after the Gift was completed in October 2021, Ms. Engelhorn travelled with Mr. Bolog and his significant other to Spain, Ireland and Hawaii; celebrated Thanksgiving (2021); New Years (2022 at the Greenbriar Resort); Ms. Engelhorn's son's engagement; weekly meetings, both work and social, and countless meals for 11 months, until Ms. Engelhorn had a falling out with Mr. Bolog and his significant other.

in her favor, tax-free in the United States.  Mr. Bolog did not represent Ms. Engelhorn in relation

to the Transfer.  In fact, he begged her to retain independent counsel to represent her in relation to

the Transfer, which she chose not to do.  See Exh. A, paragraph 6.

The Plaintiffs' Opposition, which lacks any colorable articulation of a duty that Mr. Bolog

neglected as Ms. Engelhorn's lawyer, then falls back on the assertion that the Amended Complaint

alleges a legal malpractice claim because Mr. Bolog's role in drafting the Notice of Gift "alone

violates MARPC 19-301.8(c)."  This assertion is legally incorrect.  In fact, the express language

of that Rule that is quoted in the Plaintiffs' Opposition belies, on its face, the assertion that drafting

the Notice of Gift (which was jointly drafted by Ms. Engelhorn and Mr. Bolog) violates the rule.

Specifically, the rule provides that "[a]n attorney shall not solicit any substantial gift from a client,

including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or

a person related to the attorney any substantial gift unless the attorney or other recipient of the gift

is related to the client."  Mr. Bolog did none of these things: he did not solicit a substantial gift,

and the Notice of Gift is not in any sense an "instrument" giving Mr. Bolog or anyone else or thing

"a substantial gift."  It is not a legal document, but a memorandum that memorializes the

circumstances of the Gift—and does so accurately.  As explained above, no gift could have been

effectuated without the required element of "delivery," and that occurred solely when Ms.

Engelhorn directed the monies to be transferred from BoA to JAREB—*not* as a result of the signing

of a nonbinding document with no legal force or effect, any more than a letter accompanying a

check from one family member to another.  Nor are there any allegations to support the contention

that Mr. Bolog "solicited" the $10 million gift.  The essence of this transparent money grab is that

Ms. Engelhorn was somehow unaware that she was gifting $10 million, when she herself

effectuated the Transfer and surely could have declined to direct BoA to make the Transfer if she

did not intend or desire to make the Gift.  In relation to the purported "solicitation," it is literally impossible, though, for a person to "solicit" something from another person and not mention what is being solicited.  Accordingly, to the extent that Count VI for legal malpractice is based on the rule of professional conduct barring solicitation from clients, nothing of the sort occurred here, and accordingly Count VI must be dismissed.

## V.    THE COURT SHOULD DISMISS COUNT VII ALLEGING BREACH OF FIDUCIARY DUTY.

The Opening Memorandum explained that the Plaintiffs failed to plead the essential elements of a breach of fiduciary duty claim: "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 559 (2020).  Specifically, to the extent that the claim is that Mr. Bolog, in his capacity as an attorney, owed and breached fiduciary duties to Ms. Engelhorn, Count VII of the Amended Complaint did not identify any particular failure to disclose information, any false statements, any conduct amounting to the solicitation of a gift or the preparation of any instrument making a gift, any role in the preparation of legal documents, or any other deficiency in the performance of his duties to her as an attorney—to the contrary, in relation to the Gift, Mr. Bolog begged Ms. Engelhorn to seek independent legal advice, which she declined to do.[6]  Nor, with respect to the claims related to Science Park and Darnestown Road, did the Amended Complaint identify what, if any, duties Mr. Bolog owed to any of the Plaintiffs and how any of those purported duties were breached, and, additionally, Count VII failed to allege any harm resulting from the (unidentified) breaches, which is a required element of a claim for breach of a fiduciary duty. *Plank*, 469 Md. at 559.

---

[6] See Notice of Gift, Exh A, paragraph 6.

It is clear from the one-paragraph argument in the Plaintiffs' Opposition that Plaintiffs recognize they did not meet these pleading obligations. Instead, the Plaintiffs' Opposition simply states that "[f]or the same reasons asserted above," and in reliance on the same generic, unspecified failures to disclose information, they have "sufficiently pled" a breach of fiduciary duty claim. Neither the Bolog Defendants nor the Court should be expected to divine what theory of breach of fiduciary duty Plaintiffs' purport to allege, nor what facts support these claims. Accordingly, Count VII should be dismissed.

## VI. THERE IS NO BASIS FOR A CONSTRUCTIVE TRUST OVER DARNESTOWN ROAD.

With respect to Count X, which relates to the Darnestown Road loan and seeks a constructive trust over the funds Ms. Engelhorn invested, the Plaintiffs' Opposition has not only failed to plead fraud with particularity, as discussed in Section III above, but has also utterly failed to meet and overcome the indisputable point made in the Opening Memorandum: Plaintiffs have not alleged that they have suffered any actual loss from the investment. Despite the existence of a frivolous and unsupportable allegation that Plaintiffs were induced through fraud to make the investment, they do not and cannot allege a loss from that investment. In reality, Ms. Engelhorn, a sophisticated investor and business person, who has served for approximately 30 years as the life trustee (which is the head trustee) of the Manheim Trust, a family office (her family) with greater than $500,000,000 in assets and as the Trustee of the Whitewater Revocable Trust (solely for her own benefit) with approximately $130,000,000 in assets, requested the opportunity to make the loan on behalf of the Whitewater Revocable Trust to profit from the 8% interest rate it offered, and did so after completing and signing loan documents and waivers, since at the time the Darnestown Road loan was made by the Whitewater Trust, interest rates at banks were

approximately 1%.  The Darnestown Road loan is not due and payable yet, and therefore no cause

of action has accrued.  Accordingly, the relief requested in Count X should be dismissed.

## VII.    PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY HARM RELATED TO THE SCIENCE PARK TRANSACTION.

The Opening Memorandum demonstrated that Counts XVII, XVIII, and XIX failed to

allege that Plaintiffs suffered any loss whatsoever in connection with Science Park because

Plaintiffs, through Dentons, a large international law firm, requested and received a full payoff of

the loan.  As explained earlier, with Ms. Engelhorn's full knowledge and consent, the Whitewater

Revocable Trust loaned Science Park approximately $3,352,650, secured by a deed of trust on an

office building located in Greenbelt, Maryland.  When the property was sold, the Whitewater

Revocable Trust was repaid all principal, interest, and costs and all monies due and owing as set

forth in the payoff calculation.  Plaintiffs' Opposition has wholly failed even to address this

dispositive point and, accordingly, Counts XVII, XVIII, and XIX must be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Bolog Defendants respectfully submit that this Court should

hold a hearing on the Motion and grant the Motion in its entirety.

Dated:    January 9, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2025, a copy of the foregoing

Reply was served electronically via MDEC upon counsel of record, and remaining parties served

via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 1/10/2025 4:27 PM; Submission: 1/10/2025 4:27 PM
Envelope: 19496892

# Exhibit F

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

<u>**AFFIDAVIT OF CLAUDIA ENGELHORN**</u>

1.      I am over the age of eighteen (18) and am competent to testify as to the following matters.

2.      I am one of the Plaintiffs in the above-captioned matter.

3.      I previously retained Whiteford, Taylor & Preston, LLP to represent me.

4.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever verbally advised me that, as part of retaining the firm, that I was agreeing to arbitrate disputes with the firm.

5.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me as to the purpose, scope or implications of any arbitration provision contained in any retainer agreement entered into with Whiteford, Taylor & Preston, LLP.

6.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me as to the difference between arbitrating a dispute as opposed to resolving the dispute before other tribunals, such as a Court.

7.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever called my attention to the arbitration provision allegedly

contained in the Retainer Agreement dated February 27, 2020 prior to Whiteford, Taylor &
Preston, LLP's representation of me.

8.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever advised me that I would be waiving my right to a jury trial
and limiting my access to the Court system by agreeing to an arbitration provision.

9.      No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever advised me how arbitration works, including the rules,
costs, and potential limitations compared to litigation.

10.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever disclosed the potential costs of arbitration, including
arbitrator fees, administrative fees, and how those costs might differ from court litigation.

11.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever informed me how arbitrators are selected, the potential for
bias, or the minimal lack of judicial oversight in arbitration decisions.

12.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever asked me whether I had any questions about any arbitration
provision or offered an opportunity for me to seek clarification from them regarding any arbitration
provision.

13.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, ever informed me of other dispute resolution options, such as
mediation or litigation, and how they compare to arbitration.

14.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited
to, Erik Bolog and C. Allen Foster, took any steps to confirm that I understood any arbitration

provision entered into with Whiteford, Taylor & Preston, LLP, such as asking me to explain it in my own words.

15.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me that I was waiving my right to a jury trial with respect to any dispute against Whiteford, Taylor & Preston, LLP.

16.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me that there are any differences between discovery afforded in arbitration and litigation.

17.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me as to differences between admissibility of evidence in an arbitration and court proceeding.

18.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me as to the difference in appellate review between a matter that is arbitrated as opposed to matter that is litigated in the Court system.

19.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever advised me that I would be limiting my potential claims against it, in terms of not being able to be awarded certain damages, such as punitive damages.

20.    No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, advised me to seek the advice of independent counsel prior to executing any retainer agreement with Whiteford, Taylor & Preston, LLP, including, but not limited to, any retainer agreement with an arbitration provision.

21.    I was not represented by independent counsel with respect to any retainer agreement entered into with Whiteford, Taylor & Preston, LLP.

22.     No representative of Whiteford, Taylor & Preston, LLP, including, but not limited to, Erik Bolog and C. Allen Foster, ever disclosed to me that they wished to include the arbitration provision because they believed that it would ultimately benefit them, and not me, to proceed before an arbitrator rather than a jury.

23.     That C. Allen Foster never disclosed to me that he wished to include an arbitration term in the Retainer Letter because he was concerned that I was dissatisfied with my then-counsel in Europe.

**I SOLEMNLY AFFIRM under the penalties of perjury and upon personal knowledge that the contents of this document are true.**

12-27-2024
_____
Date

_Claudia Engelhorn_
_____
Claudia Engelhorn

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's MOTION TO DISMISS

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") submits this reply memorandum in support of its motion to dismiss the First Amended Complaint ("Complaint").[1]

## I.    INTRODUCTION

If this Court does not compel arbitration between Plaintiffs and Whiteford, the Court should grant Whiteford's alternative motion to dismiss the Complaint because Plaintiffs have not sufficiently alleged how Whiteford is vicariously liable for the actions of Defendant Erik Bolog, a former Whiteford employee, that form the basis for all of Plaintiffs' claims. Whether addressed under D.C. or Maryland law, Whiteford cannot be held vicariously liable for Mr. Bolog's conduct in obtaining a fraudulent $10 million "Gift" from Ms. Engelhorn where there is unmistakable documentation, incorporated into the Complaint and uncontroverted by Plaintiffs, that Mr. Bolog's

---

[1] Because Plaintiffs filed separate oppositions to Whiteford's combined petition for arbitration and motion to dismiss, Whiteford separately filed a reply in support of its petition for an order to compel arbitration on January 3, 2025.

purpose in this course of conduct was wholly personal in nature and independent of his employment with Whiteford.

## II.  ARGUMENT

### A.  D.C. law applies to Plaintiffs' tort claims against Whiteford.

As explained in Whiteford's opening brief, the substantive law of the District of Columbia applies to Plaintiffs' tort claims against Whiteford under Maryland's rule of *lex loci delicti* and the Restatement (First) of Conflicts of Laws § 380(2). *See* Opening Br. at 28–29. Under *lex loci delicti*, for actions sounding in tort, Maryland courts generally will apply the substantive law of the state in which the alleged tort occurred. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744–46 (2000). This means the controlling law is often that of "the place where the last act required to complete the tort occurred." *Id.* at 746. But where "the liability-creating character of the actor's conduct depends upon the application of a standard of care, '*and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct*, such application of the standard will be made by the forum.'" *Lab. Corp.* v. *Hood*, 395 Md. 608, 616 (2006) (emphasis in original) (quoting Restatement (First) of Conflicts of Laws § 380(2)). Because the District of Columbia defines a standard of care for legal malpractice, breach of fiduciary duty, negligent hiring, and negligent supervision, D.C. law unquestionably applies to Counts II, VI, VII, and XX. *See* Opening Br. at 29. Plaintiffs ignore this entirely in their effort to argue for the application of Maryland substantive law. *See generally* Pls.' Opp. at 10.

The fraud claims in Counts I, III, IV, and V, are also governed by the law of the District of Columbia because that is the jurisdiction from which Mr. Bolog perpetrated the alleged frauds, as he principally worked from Whiteford's office in the District of Columbia and conducted the majority of his representation of the Plaintiffs from there. Plaintiffs' arguments in support of Maryland law are misguided. They offer no legal authority to support their novel theory that would convert *lex loci delicti* into a simple test of residency. *See* Pls.' Opp. at 10*.* And the Maryland Supreme Court has rejected similar arguments that "erroneously render 'place of injury' equivalent to 'place of residency'" under *lex loci delicti. See Philip Morris*, 358 Md. at 749. Likewise, Plaintiffs' argument that Maryland law governs Count I because Mr. Bolog deposited the proceeds of Ms. Engelhorn's Gift into the bank account of a Maryland trust is meritless. The situs of the JAREB Irrevocable Trust is irrelevant under *lex loci delicti* because the alleged tort was complete when Ms. Engelhorn was harmed—that is, when Mr. Bolog caused the transfer of funds *out of* her account—well before the funds were subsequently deposited *into* the JAREB Trust's account. *See Cremi v. Brown*, 955 F. Supp. 499, 522–24 (D. Md. 2005) (concluding that in multistate cases of fraud or misrepresentation, Maryland courts apply the law of the place where the alleged wrongful acts occur, not the place where the effects are felt); *cf. Philip Morris*, 358 Md. at 750 n.28 (citing *Cremi*).

**B. The Notice of Gift forecloses vicarious liability against Whiteford with respect to the claims in Counts I, VI, and VII arising from the $10 million Gift.**

Plaintiffs' claims against Whiteford relating to the $10 million Gift are completely undermined by the fact that the allegations in the Complaint support no reasonable inference that Mr. Bolog was acting within the scope of his employment when he obtained the Gift. *See* Opening Br. at 35–36. Rather than address the Notice of Gift, which provides concrete, contemporaneous, and unrebuttable documentation that Mr. Bolog was *not* acting within the scope of his employment, Plaintiffs reproduce swathes of the D.C. Court of Appeals opinion in *Trump v. Carroll*, 292 A.3d 220 (D.C. 2023), with little attention paid to its express limitations or actual relevance to Whiteford's arguments.

In *Trump*, the D.C. Court of Appeals confirmed that D.C. generally follows the Restatement (Second) of Agency § 228(1)-(2), with certain differences in construction so as to "strike[] the proper balance of the equities at hand" by "expanding the allocation of costs to employers beyond those torts that were the product of specific direction . . . without holding employers liable for all torts fairly regarded as risks of their business." *Id.* at 229. Thus, as relevant here, an employee's conduct is within the scope of employment "if, but only if: (a) it is of the kind the person is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master[.]" *Id.* at 228 (quoting Restatement (Second) of Agency § 228(1)) (internal

marks omitted). By contrast, an employee's conduct is "not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (quoting Restatement (Second) of Agency § 228(2)). Whether an employee's tortious conduct is "actuated, at least in part, by a purpose to serve the master" has three elements: purpose, quantum, and timing. *Id.* at 233–34. In applying this standard, "if no reasonable mind could conclude that the employee was acting within the scope of employment, the issue becomes a question of law for the judge[,]" even though the inquiry is "*ordinarily* a fact-intensive question for the factfinder." *Id.* at 230 & n.6 (emphasis added).

Whiteford's motion focuses squarely on the Complaint's failure to allege any facts that would allow even an inference that Mr. Bolog's conduct in obtaining a $10 million gift from Ms. Engelhorn was actuated to any degree by a purpose to serve Whiteford.[2] *See* Opening Mem. at 34–35. Indeed, Whiteford explained that the Notice of Gift, prepared by Mr. Bolog, forecloses any such reasonable inference by its express language stating that the gift "has nothing to do with your law firm, nor legal services that you have or will provided [sic] to me." Exh. B(2). Not only does the Notice of Gift provide irrefutable documentation of Mr. Bolog's state of mind and purpose when he obtained the Gift, it *also* irrefutably reflects that his purpose in doing so had "nothing

---

[2] Thus, the Plaintiffs' arguments about the foreseeability of Mr. Bolog's conduct—tenuous as they are—are not relevant to the Court's decision on this motion. *See* Pls.' Opp. at 18.

to do with" Whiteford or his work at Whiteford. As *Trump* makes clear, in evaluating the element of purpose, the "focus is on the subjective state of mind of the tortfeasor-employee" as shown by "direct and circumstantial evidence of the employee's state of mind." *Trump*, 292 A.3d at 234. In this case, the Notice of Gift provides direct evidence of Mr. Bolog's state of mind and  singularity of purpose in obtaining the Gift from Ms. Engelhorn. Plaintiffs have pointed to no allegation that could support an inference that controverts the evidence contained in the Notice of Gift, nor could they.

Indeed, in their Opposition, Plaintiffs ignore the Notice of Gift and Mr. Bolog's state of mind entirely. Rather than address the clear deficiencies in their Complaint, Plaintiffs focus on the two other elements of the "actuation" prong on which Whiteford's motion does not depend: quantum and timing. *See* Pls.' Opp. at 19–21. But these arguments would not allow Plaintiffs to prevail even if they were relevant to the applicable test for *respondeat superior* liability.

First, in seeking to show that they have satisfied the quantum element—meaning that Mr. Bolog's conduct was not "too little actuated" by a purpose to serve his employer—Plaintiffs are forced to backfill allegations from Count VI of the Complaint to shore up the lack of any allegation incorporated into Count I of a relationship between the Gift and Whiteford's legal services to Ms. Engelhorn. *See* Pls.' Opp. at 15, 20 (relying on vague allegations based on time entries from Whiteford's invoices as supposedly demonstrating Mr. Bolog's purpose in obtaining the Gift).

Second, in seeking to satisfy the timing element—that is, to show that Mr. Bolog had the requisite purpose to serve Whiteford at the time of his conduct—Plaintiffs resort to making an irrelevant argument that this Court should look beyond the mere moment of the tort's commission to assess Mr. Bolog's purpose in obtaining the Gift. *See id.* at 20–21. Even if Mr. Bolog "need not [have] possess[ed] the requisite purpose to serve [Whiteford] at the precise moment of time in which the tort was committed," that would be entirely irrelevant here. The Complaint simply supports no inference that Mr. Bolog had any "potentially shifting motivations" in obtaining the Gift or that there was ever "an employer-related impetus to [his] conduct" at all. *See Trump*, 292 A.3d at 237–38.

Furthermore, Plaintiffs stretch the law by suggesting that they may rely on conduct subsequent to the commission of the tort to establish Mr. Bolog's purpose in obtaining the Gift. *Compare* Pls.' Opp. at 21 (relying on "Bolog's conduct in the time leading up to and following" the alleged fraud) *with Trump*, 292 A.3d at 237 (stating that vicarious liability "can be established where the employee possessed the requisite purpose *in the moments preceding* the commission of the tort when warranted by the factual context" but rejecting an assessment of "the entire course of conduct" (emphasis added)).[3]

---

[3] To the extent that *Trump* endorses the consideration of facts subsequent to the commission of the tort, it refers only to "facts relevant to the moments after the tort . . . for consideration of instances in which that employer-related purpose has potentially fallen out." 292 A.3d at 238. Because the Complaint does not support any inference that Mr. Bolog ever was motivated to serve Whiteford's purposes when he drafted the Notice of Gift, solicited Ms. Engelhorn's signature, and ultimately obtained the $10 million Gift, this exception does not apply here.

Although Whiteford believes that the law of the District of Columbia governing *respondeat superior* liability applies to the claims in this case, the result would be the same even if Maryland law applies. To start, Maryland applies a standard similar to the Restatement (Second) of Agency § 228:

> To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, *and actuated at least in part by a purpose to serve the master.*

*Sawyer v. Humphries*, 322 Md. 247, 255 (1991) (emphasis added) (quoting *East Coast Freight Lines, Inc. v. Mayor of Baltimore*, 190 Md. 256, 285 (1948)). But, as Plaintiffs appear to concede, Maryland law is less favorable than the law of the District of Columbia for plaintiffs asserting vicarious liability against an employer. *See* Pls.' Opp. at 16–17. As in D.C., vicarious liability does not arise from acts motivated by an employee's personal purposes unrelated to the furtherance of the employer's interests. *Sage Title Grp., LLC v. Roman*, 455 Md. 188, 213 (2017). In *Sawyer*, the Maryland Supreme Court observed that "where the conduct of the servant is unprovoked, highly unusual, and quite outrageous, courts tend to hold that this in itself is sufficient to indicate that [an employee's] motive was a purely personal one and the conduct outside the scope of employment." 322 Md. at 257 (internal marks and quotations omitted).

It cannot be gainsaid that an attorney's alleged fraud and deception in transferring $10 million from a client's bank account to a trust he created for his own

benefit is highly unusual and indeed outrageous behavior. And there could be no possible allegation that this conduct was provoked or authorized by Whiteford in any way. As noted in *Sawyer*, the unusual and outrageous conduct alleged in the Complaint should itself be sufficient to indicate that Mr. Bolog's conduct was motivated by purely personal purposes and was therefore outside the scope of his employment. But this Court need not resolve that question here, because the Notice of Gift provides irrefutable evidence, uncontroverted by any allegation in the Complaint, that Mr. Bolog's motives were purely personal, and he never had any purpose to serve Whiteford when he set about to obtain a $10 million gift from Ms. Engelhorn.

As with their analysis of D.C. law, the Plaintiffs look past the critical issue of Mr. Bolog's state of mind when he obtained the gift, and instead present irrelevant arguments and extended discussion of cases supporting an assertion that Whiteford ought to have foreseen Mr. Bolog's outrageous conduct in fraudulently soliciting a $10 million Gift from a client. Even if that were the dispositive issue on the scope of employment—and it is not—Plaintiffs' arguments hardly carry the day. Unlike the title company employee in *Sage Title* who had been warned multiple times not to deposit personal checks into an escrow account, the Complaint is devoid of any allegations from which a reasonable inference could be drawn that Whiteford should have known that Mr. Bolog would attempt to defraud Ms. Engelhorn.

**C. On the remaining claims, Whiteford is likewise not vicariously liable for the actions taken by Mr. Bolog that were outside the scope of his employment.**

With respect to each of the remaining claims against Whiteford, Plaintiffs assert that in every instance Mr. Bolog had a personal investment or ownership interest in the entities to which Plaintiffs transferred funds, and that Ms. Engelhorn would not have made these loans or investments if she had been aware of Mr. Bolog's personal interest in those entities. *See, e.g.*, Complaint ¶ 53 (Mr. Bolog concealed his ownership interest in Science Park Associates and benefited that entity and harmed Plaintiffs by failing to record a deed of trust); *id*. ¶ 65 (Mr. Bolog failed to disclose his interest in Darnestown Road, Inc. and used funds obtained from Plaintiffs to cover up the fact that he had embezzled funds from Darnestown); *id*. ¶ 74 (Mr. Bolog concealed his ownership interest in the Swain Landing entity when he transferred Plaintiff's funds to that entity as a purported investment). The Plaintiffs do not allege that Mr. Bolog obtained these investments and loans from Ms. Engelhorn or her entities in order to benefit Whiteford. Plaintiffs do not allege how Mr. Bolog was motivated in these transactions at least in part to serve the interests of his employer. Thus, for the reasons stated above, and as is the case with respect to the $10 million Gift, the Complaint does not sufficiently allege how Mr. Bolog was acting within the scope of his employment by Whiteford when he allegedly deceived Ms. Engelhorn about financial transactions that benefitted him personally, as well as the entities in which he held undisclosed personal interests.

10

### III. CONCLUSION

For the reasons stated herein and in Whiteford's opening memorandum, the Court should dismiss all claims against Whiteford for failure to state a claim upon which relief can be granted.

Dated: January 10, 2025

Respectfully submitted,

/s/ William J. Murphy
William J. Murphy (#8406010273)
John J. Connolly (#9112170144)
Kirk E. MacKinnon Morrow
(#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,
Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January, 2025, a copy of the foregoing

was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 /s/ John J. Connolly
John J. Connolly

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )   **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

**SUPPLEMENT TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT WHITEFORD, TAYLOR & PRESTON, LLP'S
PETITION FOR AN ORDER COMPELLING ARBITRATION
AND STAYING PROCEEDINGS AND MOTION TO STAY**
**(Hearing Requested)**

Plaintiffs, by and through their undersigned counsel, hereby file this Supplement to

Plaintiffs' Response in Opposition to Defendant Whiteford, Taylor & Preston, LLP's Petition for

an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, and respectfully

state as follows:

1.      As set forth in Plaintiffs' Response in Opposition to Defendant Whiteford Taylor

& Preston, LLP's ("WTP") Petition for an Order Compelling Arbitration and Staying Proceedings

and Motion to Stay, Maryland has a strong public policy against prospective mandatory arbitration

terms in attorney-client retainer agreements unless the client is independently represented in

making the agreement.  This public policy is embodied in Md. Rule 19-301.8(h) and Comments

14 and 15 thereto. "To the extent, therefore, that the pronouncements of other courts are based on

a different view of the function and authority of the Code in their respective States, they are simply

not relevant to the Maryland situation.  *MLRPC constitutes a statement of public policy* by the

only entity in this State having the Constitutional authority to make such a statement, and ***it has the force of law.***" *Post v. Bregman*, 349 Md. 142, 164 (1998).[1]

2.      WTP argues that Colorado substantive law applies when determining the enforceability of the arbitration term and Plaintiffs assert that Maryland law applies.

3.      However, even assuming *arguendo* Colorado's Rules of Professional Conduct apply, the only way that the arbitration term would be enforceable under Colorado Rule of Professional Conduct ("CRPC") 1.8(h), is if WTP fully informed Claudia Engelhorn as to the meaning of the arbitration provision (it did not).  CRPC 1.8 Comment 17 states, in pertinent part: "This paragraph does not, however, prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and ***the client is fully informed of the scope and effect of the agreement***…" CRPC 1.8 Comment 17 (emphasis supplied).

4.      In the instant case, Claudia Engelhorn,[2] was never fully informed of the scope and effect of the supposed agreement to arbitrate.  *See* Exhibit F hereto (Affidavit of Claudia Engelhorn dated December 27, 2024).  Even in his revised affidavit, C. Allen Foster does not assert that he actually discussed the scope and effect of the agreement with Engelhorn, only that "*I am confident that I personally discussed the arbitration clause with Ms. Engelhorn…*" Def.'s Revised Exhibit A ¶12 (emphasis added). However, Mr. Foster does not disclose what this discussion entailed.  *Id.* Importantly, though, the actual language relied upon by WTP in its retainer agreement is devoid of any reference to Ms. Engelhorn being fully informed as to the legal import of the provision.

---

[1] "Nothing in this Preamble and Scope is intended to detract from the holdings of the Supreme Court in *Post v. Bregman*, 349 Md. 142 (1998) and *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 349 Md. 441 (1998)." MARPC 1.0 (Md. Rule 19-300.1) Comment 20.

[2] As of the date Claudia Engelhorn purportedly signed the Retainer Letter, February 27, 2020, the other Plaintiffs, the Whitewater Revokable Trust, and White Pearl LLC, had not been created.

Moreover, the provision is devoid of any reference to Ms. Engelhorn being represented by independent counsel.

5.      As set forth in Ms. Engelhorn's Affidavit, no one at WTP, including Erik Bolog or C. Allen Foster, ever explained the scope of the arbitration term to her, what arbitration was, how arbitration differed from traditional jury trials, that the arbitration term was for WTP's benefit, the costs of arbitration or who would bear those costs, the limited opportunities for appeal or review of an arbitration decision, the differences in available discovery in arbitration and traditional litigation, the availability of certain forms of damages,[3] etc.  *See* Exhibit F ⁋⁋4-19.  Interestingly, Mr. Foster does not even attest to having specifically provided this information to Ms. Engelhorn.

6.      Moreover, Ms. Engelhorn was not advised to seek independent counsel to represent her with respect to her acquiescence to a Retainer Letter including an arbitration term, and she was ***not*** represented by independent counsel with respect to the Retainer Letter at issue.  *See* Exhibit F ⁋⁋20-21.

7.      C. Allen Foster asserted in his affidavit that he included the arbitration term because "I was concerned that Ms. Engelhorn was dissatisfied with her European counsel and intended to change the lead in the representation from them to us.  Our continuing legal education frequently reminds us to be cautious when clients are changing lawyers." Def.'s Ex. A ⁋12.  However, Mr. Foster does not assert that he communicated this ulterior motivation to Engelhorn, and indeed, Ms. Engelhorn was not informed of such.  Exhibit F ⁋⁋ 22-23.

---

[3] WTP asserts that under Maryland law an arbitrator could award punitive damages. However, WTP asserts throughout its filings that Colorado law applies to the interpretation and enforcement of the arbitration clause.  Under Colorado law arbitrators are no allowed to award punitive or exemplary damages. Colo. Rev. Stat. § 13-21-102 (5).  Certainly, the effective waiver an entire category of relief is a ***prospective*** limitation of a lawyer's liability to a client for malpractice, and violative of Colorado's CRPC 1.8(h)(1), DC's DCRPC 1.8(g), and MARPC 1.8(h).

8.      Therefore, even if Colorado's substantive law applied (it does not), the arbitration term at issue does not comply with CRPC 1.8 and is not enforceable under Colorado law, as C. Allen Foster is not certain that he actually discussed it with Ms. Engelhorn.

9.      In their reply in Support of their initial filing, WTP argues that District of Columbia ("DC") law may also govern the enforceability of the arbitration term at issue, citing numerous contacts between DC and all aspects of the attorney-client relationship at issue.   However, DC, like Colorado, requires that the attorney explain a mandatory arbitration provision in a retainer agreement to a client.   Comment 13 to DCRPC 1.8, provides, that "Rule 1.8(g) does not, however, prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, to the extent that such an agreement is **valid and enforceable *and* the client is fully informed of the scope and effect of the agreement**." (Emphasis added.).[4] Thus, even if Colorado would apply DC law, the arbitration clause is not enforceable, because Ms. Engelhorn was never fully informed of the scope and effect of the agreement.

10.      For the reasons set forth in Plaintiffs' Response in Opposition to Defendant Whiteford Taylor & Preston, LLP's Petition for an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, and for the reasons set forth herein, the Defendant's Motion and Petition must be denied.

                                        Respectfully submitted:

---

[4] The DC Bar Commission on Ethics has opined that:

> For a client to appreciate the "scope and effect" of a mandatory arbitration provision, the lawyer must provide a client with sufficient information about the differences between litigation in the courts and arbitration proceedings. As a general matter, a discussion regarding at least the following differences between the two methods of dispute resolution is prudent: (1) the fees incurred;(2) the available discovery;(3) the right to a jury; and (4) the right to an appeal. As with the application of the informed consent standard, the scope of this discussion depends on the level of sophistication of the client.

D.C. Bar Comm. on Legal Ethics, Op. 376 (2019) (available at https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-376 ). Mr. Foster does not allege that he discussed any of these issues with Ms. Engelhorn.

4

/s/ WPH

Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiff*


## **HEARING REQUESTED**

Plaintiffs respectfully request a hearing on all issues raised in Defendant's Petition seeking an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, Plaintiffs' Opposition thereto, Defendant's Reply in Support of their motion and Petition, this Supplement, and any other document filed with respect to the same.


/s/ WPH

Wes P. Henderson, Esq. (AIS# 0212180062)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January 2025, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

6

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants.* | ) |

### MOTION FOR SPECIAL ADMISSION OF
### OUT-OF-STATE ATTORNEY UNDER RULE 19-217

I, Douglas F. Gansler, attorney of record in this case, move that the court admit Zachary

P. Schrieber, of Cadwalader, Wickersham & Taft LLP, an out-of-state attorney who is a member

in good standing of the Bar of the State of New York, for the limited purpose of appearing and

participating in this case as co-counsel with me:

Zachary P. Schrieber
200 Liberty Street
New York, New York 10281
Tel: (212) 504-6166
zack.schrieber@cwt.com

The $100.00 fee required by Code, Courts and Judicial Proceedings Article, §7- 202(f) is

attached to this motion.

I do not request that my presence be waived under Rule 19-217(d).

Dated:    January 16, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & T AFT LLP

Respectfully,

*Douglas Gansler* (signature)

Signature of Moving Attorney

Douglas F. Gansler (Bar Number: 8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE AS TO SPECIAL ADMISSIONS

I, Zachary P. Schrieber, certify on this, 16th day of January, 2025, that during the preceding five years, I have been specially admitted in the State of Maryland zero times. I do not have any unique identifying number previously issued by the Attorney Information Service, Client Protection Fund, or Maryland Judicial Information System (JIS) for use with Maryland Electronic Courts.

Respectfully submitted,

CADWALADER, WICKERSHAM & T AFT LLP

Respectfully,

Signature of Out-of-State Attorney

Zachary P. Schrieber
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York City, New York 10281
Zack.Schrieber@cwt.com
Telephone: (212) 504-6166

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of January, 2025, a copy of the foregoing

Motion for Special Admission was served electronically via MDEC upon counsel of record, and

remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants.* | ) |

## [~~PROPOSED~~] ORDER

ORDERED, this ____21st____ day of ____January____ ____2025____, by the Circuit Court for

Baltimore City, Maryland, that

☒ Zachary P. Schrieber, 200 Liberty Street, New York, New York 10281, Tel: (212) 504-6166,

zack.schrieber@cwt.com, is admitted specially for the limited purpose of appearing and

participating in this case as co-counsel with Douglas F. Gansler.

The presence of the Maryland attorney ☐ is ☒ is not waived.

☐ That the Special Admission of Zachary P. Schrieber is denied for the following

reasons:_____

_____ and the Clerk shall

return any fee paid for the Special Admission, and it is further

ORDERED, that the Clerk forward a true copy of the Motion and of this Order to the State

Court Administrator.

01/21/2025 12:48:57 PM

Paul J. Cucuzzella, Associate Judge

Karen A. Comey

4

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

|  |  |
|---|---|
| **Case Number:** | **C-24-CV-24-002631** |
| **Other Reference Number(s):** |  |

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

## CIVIL NON-JURY HEARING SHEET

**DATE:** 01/27/25          **JUDGE:** Geller

**Court Reporter:** ☒ Court Smart ☐ _____    **Court Clerk:** __Fuller__

**INTERPRETER:** ☐ present ☐ needed – language type: _____
(party needs to submit Interpreter request form)

☒ **ALL PARTIES PRESENT**                    ☐ **PARTIES NOT PRESENT:**

PLT/Pet:  Patrick Gardiner                DEF/Resp:  Douglas Gansler
☐ FTA ☐ not served                        ☐ FTA ☐ not served
PLT/Pet: _____                 DEF/Resp:  John Connolly; William Murphy
☐ FTA ☐ not served                        ☐ FTA ☐ not served
PLT/Pet: _____                 DEF/Resp:  Kirk MacKinnon- Morrow
☐ FTA ☐ not served                        ☐ FTA ☐ not served

☐ **MOTION(s):**

Defense motion for petition for arbitration is heard and DENIED

Defense motion to dismiss is hereby DENIED as to defendant Whitford, Taylor and Preston, LLC

Defense motion to dismiss is hereby DENIED as to defendant Erik Bolog

_____
_____
_____
_____
_____
_____

☐ **TESTIMONY TAKEN**

☐ **HEARING NOT CONCLUDED AND TO RESUME ON** _____

☐ Agreement/ Consent placed on the record      ☐ Order(s) to be submitted by: ☐ the Court
☐ Counsel

☐ **JUDGMENT IN FAVOR OF THE PLAINTIFF AGAINST THE DEFENDANT IN THE AMOUNT OF**
$ _____

**Plus** ☐ **INTEREST** ☐ **COSTS**

☐ **JUDGMENT IN FAVOR OF THE DEFENDANT AGAINST THE PLAINTIFF IN THE AMOUNT OF**
**$**_____

☐ **FOR COSTS ONLY**

**Judgment(s) to be entered.  Clerk to close case if there are no open motions.**

☐ **Exhibits Marked & / or Entered**

**Hearing Notes:**

**Case submitted to the court for determination without the aid of a jury. Order to be signed.**

_____

_____

_____


**After the case closure, if there are any costs due clerk to send task to civil/family billing.**

E-SERVED Baltimore City Circuit Court 1/27/2025 2:09 PM System SystemEnvelope:19703106
E-FILED; Baltimore City Circuit Court
Docket: 1/23/2025 2:04 PM; Submission: 1/23/2025 2:04 PM
Envelope: 19703106

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

## ORDER

Upon consideration of Plaintiffs' Motion for Alternative Service, any response thereto, and

upon a finding of good cause, it is ~~this~~ _____ day of _____, ~~2025~~, hereby:

**ORDERED**, that the Motion is **Granted**; and

**ORDERED**, that Plaintiffs may serve Defendant, Michael Postal, by mailing the

Complaint, as amended, Writ of Summons, and all other papers in the above action to Defendant

Postal via priority mail, postage prepaid, to his last known address:  1801 16th Street Northwest

Apt 608, Washington DC 20009.

**01/21/2025 1:48:42 PM**
_____
Date

_____
Judge, Circuit Court for
Baltimore City, Maryland

E-SERVED Baltimore City Circuit Court 1/27/2025 2:09 PM System SystemEnvelope:19703106

Case 25-10044-ELG   Doc 40-1   Filed 07/03/25   Entered 09/24/25 E-FILED: Baltimore City Circuit Court
Attachment   Page 2 of 12 Docket: 1/27/2025 2:09 PM; Submission: 1/27/2025 2:09 PM
Envelope: 19703106

**CIRCUIT COURT FOR BALTIMORE CITY,**
**MARYLAND**

CIVIL DIVISION

111 N. Calvert Street

Baltimore, Maryland 21202

Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:**   MICHAEL POSTAL
1801 16TH STREET NORTHWEST APT 608
WASHINGTON, DC 20009

| | |
|---|---|
| **Case Number:** | **C-24-CV-24-002631** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

Issue Date: 1/27/2025

<h2 align="center">WRIT OF SUMMONS</h2>

You are summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

CLAUDIA ENGELHORN
2127 Espey Court
Suite 204
Crofton, MD  21114

This summons is effective for service only if served within 60 days after the date it is issued.

*[signature]*

Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Claudia Engelhorn, et al. vs. Erik Bolog, et al.

## SHERIFF'S RETURN
### (please print)

To:  MICHAEL POSTAL

_____     ID# _____  of the _____
     Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                            Name of person served

on _____  at _____
          Date of service                              Location of service

_____  by _____  with the following:
                                        Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                   ☐ Domestic Case Information Report

☐ Motions        _____     ☐ Financial Statement

☐ Petition and Show Cause Order    ☐ Interrogatories

☐ Other _____
                        Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address     ☐ No such address

☐ Address not in jurisdiction               ☐ Other _____
                                                                        Please specify

Sheriff fee: $ _____     ☐ waived by _____

_____     _____
          Date                          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:

1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-SERVED Baltimore City Circuit Court 1/31/2025 3:43 PM System SystemEnvelope:19788482

Case 25-10044-ELG   Doc 40-1   Filed 07/03/25   Entered 09/24/25 15:27:09 City Circuit Court
Attachment   Page 2 of 11329/2025 3:43 PM; Submission: 1/31/2025 3:43 PM
Envelope: 19788482

| | |
|---|---|
| **CLAUDIA ENGLEHORN, et al.** | **IN THE** |
| **v.** | **CIRCUIT COURT** |
| **WHITEFORD, TAYLOR & PRESTON, LLP, et al.** | **FOR BALTIMORE CITY** |
| | **Case No. C-24-CV-24-002631** |

## ORDER

Upon consideration of Defendants Erik Bolog, Science Park Associates, and Darnestown Road Inc.'s Motion for a Protective Order pending the Court's resolution of the Petition to Compel Arbitration and Motion to Stay Proceedings, filed on December 23rd, 2024, and the Plaintiffs' Opposition, filed on January 7th, 2025, it is this **31st** day of **January, 2025** hereby

**ORDERED** that Defendants' Motion for a Protective Order is **DENIED as MOOT**. This Motion was rendered moot by Judge Jeffrey M. Geller's Orders dated January 27th, 2025, denying Defendant Whiteford, Taylor & Preston's Petition to Compel Arbitration and Motion to Stay Proceedings, and denying Defendants Erik Bolog, Science Park Associates, and Darnestown Road, Inc.'s Motion to Strike and Motion to Dismiss.

01/31/2025 1:52:27 PM

_____

Judge Charles H. Dorsey III
Circuit Court for Baltimore City

Cc: All Counsel of Record

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, *et al.*,** | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

### [~~PROPOSED~~] ORDER

ORDERED, this ____21st____ day of ____January____ ____2025__, by the Circuit Court for

Baltimore City, Maryland, that

☒ Zachary P. Schrieber, 200 Liberty Street, New York, New York 10281, Tel: (212) 504-6166,

zack.schrieber@cwt.com, is admitted specially for the limited purpose of appearing and

participating in this case as co-counsel with Douglas F. Gansler.

The presence of the Maryland attorney ☐ is ☒ is not waived.

☐ That the Special Admission of Zachary P. Schrieber is denied for the following

reasons:_____

_____ and the Clerk shall

return any fee paid for the Special Admission, and it is further

ORDERED, that the Clerk forward a true copy of the Motion and of this Order to the State

Court Administrator.

01/21/2025 12:48:57 PM

Paul J. Cucuzzella, Associate Judge

4

IN THE CIRCUIT COURT FOR <u>Baltimore City</u>
<div align="center">(City or County)</div>

<div align="center"><b>CIVIL - NON-DOMESTIC CASE INFORMATION REPORT</b></div>

<div align="center"><b>DIRECTIONS</b></div>

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

    *Defendant*: You must file an Information Report as required by Rule 2-323(h).

<div align="center"><b><i>THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING</i></b></div>

**FORM FILED BY:** ☒PLAINTIFF  ☐DEFENDANT    CASE NUMBER: C-24-CV-24-002631
<div align="right">(Clerk to insert)</div>

**CASE NAME:** Claudia Engelhorn          vs.  Erik D. Bolog, et al.
           Plaintiff                                    Defendant

PARTY'S NAME: Claudia Engelhorn          PHONE:

PARTY'S ADDRESS: 1727 Kingsbury Drive, Nashville, Tennessee 37215

PARTY'S E-MAIL:

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Wes P. Henderson          PHONE: 410.721.1979

PARTY'S ATTORNEY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S ATTORNEY'S E-MAIL: wph@hendersonlawllc.com

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No  If yes, Case #(s), if known:

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  10  days

<div align="center"><b>PLEADING TYPE</b></div>

**New Case:** ☐Original  ☐Administrative Appeal  ☐ Appeal

**Existing Case:** ☐Post-Judgment  ☒Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

<div align="center"><b>IF NEW CASE: CASE CATEGORY/SUBCATEGORY (<i>Check one box.</i>)</b></div>

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 04/2017)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☒ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☒ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☒ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☒ Judgment-Declaratory
- ☐ Judgment-Default

- ☒ Judgment-Interest
- ☒ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☒ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above*, mark one of the following.  This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐Liability is conceded. ☒Liability is not conceded, but is not seriously in dispute. ☐Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000        ☐ $10,000 - $30,000        ☐ $30,000 - $100,000        ☒ Over $100,000

☐ Medical Bills $_____        ☐ Wage Loss $_____        ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101?  (Check all that apply)

A. Mediation        ☐Yes    ☐No                C. Settlement Conference    ☐Yes    ☐No
B. Arbitration      ☐Yes    ☐No                D. Neutral Evaluation       ☐Yes    ☐No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL***.        ***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less                ☐ 3 days of trial time

☐ 1 day of trial time                     ☐ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions***, *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of        ☐ **Standard** - Trial within 18 months of
    Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❐ **Expedited** - Trial within 7 months of Defendant's response      ❐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff _____ . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

February 5, 2025
Date

2127 Espey Court, Suite 204
Address

Crofton            MD        21114
City        State      Zip Code

/s/PDG (AIS# 1506160113)
Signature of Counsel / Party

Patrick D. Gardiner
Printed Name

E-FILED; Baltimore City Circuit Court
Docket: 2/5/2025 1:08 PM; Submission: 2/5/2025 1:08 PM
Envelope: 19843921

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN**<br>1727 Kingsbury Drive,<br>Nashville, Tennessee 37215<br><br>and<br><br>**CLAUDIA ENGELHORN, AS TRUSTEE OF**<br>**THE WHITEWATER REVOCABLE TRUST**<br>**DATED SEPTEMBER 30, 2021**<br>1727 Kingsbury Drive,<br>Nashville, Tennessee 37215<br><br>and<br><br>**WHITE PEARL, LLC**<br>1209 Orange Street<br>Wilmington, Delaware 19801<br><br>    *Plaintiffs*<br><br>v.<br><br>**ERIK D. BOLOG**<br>9312 Chesley Road<br>Potomac, Maryland 20854<br><br>and<br><br>**ERIK D. BOLOG, AS TRUSTEE OF THE**<br>**JAREB IRREVOCABLE TRUST**<br>**AGREEMENT DATED OCTOBER 11, 2021**<br>The Bolog Law Group<br>1763 Columbia Road, NW, Suite 450N<br>Washington, DC 20018<br><br>and<br><br>**WHITEFORD, TAYLOR & PRESTON, LLP**<br>Seven St. Paul Street<br>Suite 1900<br>Baltimore, Maryland 21202 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Case No.:**   **C-24-CV-24-002631** |

Serve On:                                          )
Resagent, Inc.                                     )
Seven St. Paul Street                              )
Suite 1900                                         )
Baltimore, Maryland 21202                          )
                                                   )
and                                                )
                                                   )
**MICHAEL POSTAL**                                 )
4302 Broken Arrow Court                            )
Clinton, Maryland 20735                            )
                                                   )
and                                                )
                                                   )
**POJO LAPLATA LLC**                               )
4302 Broken Arrow Court, Apt. 606                  )
Clinton, Maryland 20735                            )
    Serve On:                                      )
    Anjon Jones                                    )
    4302 Broken Arrow Court                        )
    Clinton, Maryland 20735                        )
                                                   )
and                                                )
                                                   )
**DARNESTOWN ROAD, INC.**                          )
8938 Abbey Terrace                                 )
Potomac, Maryland 20854                            )
    Serve On:                                      )
    Erik D. Bolog                                  )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )
**SCIENCE PARK ASSOCIATES, LLC**                   )
6701 Democracy Boulevard                           )
Suite 515                                          )
Bethesda, Maryland 20717                           )
    Serve On:                                      )
    Erik D. Bolog, Esq.                            )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )

**SWAIN LANDING LAPLATA JC, LLC**   )
4302 Broken Arrow Court   )
Clinton, Maryland 20735   )
      Serve On:   )
      Anjon Jones   )
      4302 Broken Arrow Court   )
      Clinton, Maryland 20735   )
         )
      and   )
         )
**TENACITY INVESTMENTS, LLC**   )
7333 New Hampshire Avenue   )
Unit 103   )
Takoma Park, Maryland 20912   )
      <u>**Serve On:**</u>   )
      Mike Postal   )
      7333 New Hampshire Avenue   )
      Unit 103   )
      Takoma Park, Maryland 20912   )
         )
      *Defendants*.   )

---

### <u>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this Second Amended Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

### <u>PARTIES</u>

1.    That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee.

3

2.      That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust").

3.      That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.      That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.      That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia.   Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021.   Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854.   Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.      That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland.   Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland.   At all relevant times, Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein.   At all relevant times, Defendant Bolog and the other attorneys identified herein were the actual and/or apparent agents of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them.

7.      That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.      That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business associate of, and client of Defendant Bolog.  Defendant Postal has also been represented by Defendant WTP.

9.      That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland.  Defendant POJO is a forfeited entity.

10.     That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland.  The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11.     That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12.     That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant

POJO (30% owner); and (3) Defendant Postal (20%).  That the proposed operating agreement for

Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite

#450N, Washington, D.C. 20036, as its principal office and place of business; however, such

proposed operating agreement apparently remains unsigned.

13.     That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments,

LLC") is, and at all times relevant hereto was, a limited liability company organized under

Maryland law.  Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14.     That jurisdiction is proper pursuant to Md.  Code Ann., Cts. & Jud. Proc. § 1-501,

§ 6-102(a), and § 6-103(b)(1)-(5).

15.     That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16.     That venue is proper in Baltimore City, Maryland, under Md.  Code Ann., Cts. &

Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8).  To the extent that any of the Defendants are

found to be nonresidents, then venue would also be proper under Md.  Code Ann., Cts. & Jud.

Proc. § 6-202(11).

17.     That this Honorable Court has jurisdiction to declare the parties' "rights, status, and

other legal relations whether or not further relief is or could be claimed."  Md.  Code Ann., Cts. &

Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18.     That, at all times relevant hereto, Defendant Bolog was an attorney licensed in

Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a

Senior Counsel and/or Partner at WTP.

6

19.     That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and converting monies for which he was not entitled, as evidenced by the following matters:

a.     The Harbor School Corporation sued Defendant Bolog in the District Court of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which resulted in a judgment for $90.00 after the inclusion of a filing fee.  *See* Case No.: 0602-0006927-2002.

b.     The State of Maryland filed a Certification of Assessment and Tax Lien under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006.  *See* Case No.: 268674-V.

c.     The Law Offices of William Johnson sued My New Hampshire, LLC, Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States Bankruptcy Court for the District of Columbia ("USDC Action").  That it was alleged in the USDC Action that Defendants Bolog and Postal had acquired shares of the Metropolitan Cooperative Association and became shareholders therein.  It was further alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement entered into by Metropolitan Cooperative Association, but that they failed to pay the sums allegedly due as guarantors.  Defendants Bolog and Postal were represented by several attorneys from Defendant WTP in the USDC Action.  The USDC Action appears to have resulted in a settlement.

7

d.     The United States of America filed a Federal tax lien against Defendant

Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of

$7,218.00.  *See* 87230F.

e.     On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in

*In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against

Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the

Eastern District of Kentucky, Pikesville Division ("EDK Action").  *See* Case No.: 13-

07009.  In that Complaint, Defendant Bolog was sued because he "wrongfully converted

and transferred property of the [bankruptcy] Estate" to himself and others.  Defendant

Bolog and The Bolog Firm settled the claims against them.  The Bolog Firm is a law firm

that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.     The Takoma Overlook Condominium Association, Inc. sued Defendants

Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland,

on March 25, 2015.  *See* 402700-V.  Julianne E. Dymowski, Esquire of Defendant WTP,

represented Messrs. Postal and Bolog in that matter.

g.     Congressional Bank sued Erik and Debra Bolog in the matter of

*Congressional Bank v. Debra Bolog, et al.*, on May 8, 2018, in the Circuit Court for

Montgomery County.  *See* Case No.: 447498.

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor & Preston, LLP.  *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2).  In that Complaint, Mr. Westenhoefer alleged that Defendant Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog.  In that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had engaged in other fraudulent activity.  Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor…"  Ultimately, the Court entered an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford, Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

h.      American Express National Bank filed a lawsuit against Defendant Bolog

for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior

Court of the District of Columbia, Case No.: 2019 CA 006319 C.   American Express

National Bank identified Defendant Bolog's address as being Defendant WTP's D.C.

office, 1800 M Street, NW, #450N, Washington, DC 20036.

i.      American Express National Bank filed a separate lawsuit against Defendant

Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of

Columbia, Case No.: 2019 CA 006316 C.   American Express National Bank identified

Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW,

#450N, Washington, DC 20036.

21.     That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP

settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and

fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite

having express knowledge as to his financial issues and conversion of monies that did not belong

to him and other fraudulent behavior.

22.     That, based on its representation of Defendant Bolog and publicly available

information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of

monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to

misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions

and address his financial distress.   Defendant Bolog's failure to live within his means, satisfy his

debts, and meet financial obligations were examples of his poor self-control, lack of judgment,

and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant

WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability

9

to competently oversee the monies of clients and third parties.  Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.     That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

**Fraudulent $10 Million "Gift"**

24.     That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.     That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.     That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.     That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her.  There is no balance due and owing to Defendant WTP.

28.     That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.     That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

Maryland

> An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

> Md. Rule 19-301.8(c).

District of Columbia

> A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

> D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

> A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

> Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.     That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a "revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

31.    That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.    That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA.  On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.    That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees.  Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.    That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.    That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland.  That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services.  The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to distribute the net income and principal of this Trust to himself.  According to the terms of this Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his

12

children.  The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered $10 million to the JAREB Irrevocable Trust.  That said funds were transferred from a bank account owned by Plaintiff Engelhorn.

36.    That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something signed.  Defendant Bolog also stated that he needed the documents notarized, so he had Sarah Mayo arrive and notarize the documents.  Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents that were upside down.  Unbeknownst to Plaintiff, Defendant Bolog tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB Irrevocable Trust Agreement dated October 11, 2021.  Defendant Bolog did not explain the documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature.  Plaintiff Engelhorn trusted and relied on Defendant Bolog and, as a result, signed the documents.  At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

37.    That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal advice with respect to the $10 million gift.  The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while

13

on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.      That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client.  For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship."  That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.      That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift.  Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.      That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel.  She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift.  After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies.  Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

41.      That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to

14

make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.    That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes.  Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.    That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.    That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

**Fraud and Embezzlement by Science Park Associates, LLC**

46.    All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

47.    That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5

15

million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt Property, a commercial building and real estate in Prince George's County, Maryland. Thereafter, the Deed of Trust was properly recorded in Prince George's County, Maryland. In addition to the Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC, guaranteed the Loan Agreement.

48. That on or about November 26, 2014, Defendant Bolog, on behalf of himself and as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan Agreement between Defendant Science Park and the bank.

49. That, upon information and belief, Defendant Bolog's company, Defendant Science Park, derived rental income from the Greenbelt Property.

50. That, in or around March 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment"). Under the terms of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property. As a result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan Agreement, was extinguished.

51. That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank account to wire approximately $3,352,650 to the bank, consistent with the March 2022 Assignment.

52.    That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.    That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.    That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.    That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.    That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.    That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

17

58.     That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff Trust to remove Defendant Bolog as a Trustee.

59.     That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP, wrote an email stating that the payoff for the Trust was $3,689,662.77.

60.     That, in or around this time, the Plaintiff Trust learned about the sale of the Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation under the 2022 Promissory Note.  As a result of this demand, the Plaintiff Trust was paid $3,689,662.77 from the sales proceeds.

61.     That the Plaintiffs had not received any mortgage payments or assignment of rent payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

**Embezzlement of $350,000: Darnestown Road, Inc. Scheme**

62.     That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63.     That, on or about December 21, 2021, as a result of Defendant Bolog's wire instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to Darnestown Road, Inc.'s bank account.

64.     That, upon information and belief, Defendant Bolog was an officer of and maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

65.     That Defendant Bolog neither obtained anything of value in return for the Plaintiff Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up, concealed, and failed to disclose his interest in this company before authorizing the transaction

18

and further failed to conceal that these monies were used to replace funds that he had embezzled from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.     That the Plaintiff Trust has never been repaid these monies.

67.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained $350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in damages.

**Embezzlement of $585,000: Swain Landing Scheme**

68.     That Defendant Postal is a long-time business associate of Defendant Bolog's and a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset House Condominium Unit Owners Association, et al.*, which was filed on or about August 31, 2020, in the Superior Court of the District of Columbia.

69.     That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747 High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58 deposited into a Bank of America account ending in 3122.  An entity owned by Plaintiff Engelhorn, White Pearl, LLC, was the account owner of the account ending in 3122.   Defendant Bolog knew that Plaintiff Engelhorn realized these monies from the sale of her home.

70.     That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog, stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.     That Defendant Postal, as the managing member and an owner of Defendant Swain Landing, was a long-time business partner with Defendant Bolog and his former client.

72.     That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl, LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing], relating to a real estate investment."

73.     That, on or about January 6, 2022, $585,000.00 was transferred from the account ending in 3122 to an account maintained by Defendant Swain Landing.

74.     That Defendant Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties.  Defendant Bolog willfully and, with reckless disregard**,** failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.     That Plaintiffs have never been repaid these monies.

76.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused $585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing Plaintiff White Pearl to suffer $585,000 in damages.

## CAUSES OF ACTION

### COUNT I – FRAUD

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021 and Defendant WTP)

77.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

78.    That, beginning in or about early October 2021, Defendant Bolog intentionally
defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to
Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.    That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into
believing that she was signing routine legal documents, whereas she was signing a Notice of Gift,
the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which
documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated
October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.    That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely
represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and
directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11,
2021.  At the time Defendant Bolog made, presented to Plaintiff, and used these documents to
transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement
Dated October 11, 2021, he was her attorney, not related to her, and knew these documents
contained these false statements and misrepresentations or he made them with reckless
indifference to truth.

81.    That Defendant Bolog made these misrepresentations for the purpose of defrauding
Plaintiff Engelhorn.

82.     That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth.  Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.     That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

**WHEREFORE,** Plaintiff Engelhorn demands judgment against Defendants Bolog and WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## <u>COUNT II – NEGLIGENT HIRING AND RETENTION</u>
(Plaintiffs v. Defendant WTP)

84.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.     That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney.  That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients.  Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies.  A reasonable and prudent employer would not have ignored such

indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.     That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.     That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.     That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.     That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care,

the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed

Defendant Bolog to have access to their monies, such that he would not have been placed in the

position of executing a fraudulent, Notice of Gift and other documents.

90.    That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory

damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest,

costs of this action, and such further relief as this Court deems appropriate.

## COUNT III – FRAUD
### (Plaintiff Trust v. Defendant Bolog and Defendant WTP)

91.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

92.    That, in or around March 2022, Defendant Bolog, individually and on behalf of

Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's

$4,655,765 debt.

93.    That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant

Bolog apparently sold the Greenbelt Property for $5,545,820.

94.    That, as a result of having this confidential and fiduciary relationship with Plaintiff

Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to

Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and

had a financial interest in the transaction or, alternatively, that he had an interest in the entities

encumbered by the original debt, such as Tenacity Investments, LLC.  Defendant Bolog also had

a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property,

the security interest of the Trust.

24

95.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Science Park and had a financial interest in the transactions involving Defendant Science Park.

96.    That had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have acquired and assumed Defendant Science Park's significant debt.

97.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage payments, and suffered other damages, as described herein.

**WHEREFORE,** Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

98.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

99.    That, beginning in or about December 2021, Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust.  To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.    That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

101.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the

Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before

the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial

interest in the transaction.

102.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he

was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from

Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown

Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown

Road, Inc.

104.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent

concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog and Defendant

WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five

Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest,

costs of this action, and such further relief as this Court deems appropriate.

### COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog and Defendant WTP)

105.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

106.    That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited

her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.    That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by

embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

26

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, it was an entity owned and operated by his close, business colleague, Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, Defendant Swain Landing was an entity owned and operated by his close, business colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

114.     That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other lawyers at Defendant WTP.  That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

   a.     On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," *i.e.*, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

   b.     On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."

   c.     On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."

   d.     On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."

   e.     On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."

   f.     On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."

115.     That, as a result of the attorney-client relationship between Plaintiff Engelhorn and

Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to

exercise care and skill to comply with the accepted and reasonable standards of care for performing

such services.  Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff

Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust:

(a) the duty of competent representation; (b) the duty of conflict-free representation, including the

prohibition against soliciting any substantial gif from a client; (c) the duty to refrain from entering

into a business transaction with a client; (d) the duty to meaningfully communicate by explaining

matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed

decisions regarding the representation; and (e) to otherwise act in accordance with the standard of

care.

116.     That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply

with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff

Trust.

117.     That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise

a reasonable degree of care and skill in the performance of their duties.

118.     That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently

breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

    a.     Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the

        alleged $10M gift;

    b.     Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes,

        she would have to use most of her lifetime exemption up if the $10M

transfer was a gift, which would mean anything in her estate over the lifetime exemption amount is subject to a 40% tax;

c.    Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and/or the document(s) that lead to the formation of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and the transfer of the $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d.    Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e.    Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

f.    Engaging in transactions on behalf of Plaintiffs in matters for which Defendant Bolog maintained a financial interest or stood to benefit and in which Defendant Bolog knew or reasonably should have known that his personal financial and business interests were adverse to the object of representation, yet failing to disclose his personal interests or obtaining Plaintiffs' consent; and

g.    Undertaking and maintaining representation of Plaintiffs and failing to competently conduct any due diligence related to the investment of Plaintiffs' money.

119.    That Plaintiffs have collectively suffered damages of at least $10M as a direct and proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman.

120.     That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog and Defendant WTP)

121.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.     That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.     That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

31

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VIII – RESCISSION OF GIFT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

32

129.    That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.    That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.    That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

## COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.    That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.    Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

135.    That, under the principles of equity and good conscience, Defendant JAREB
Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of
Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust
Agreement Dated October 11, 2021.

136.    That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been
unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff
Engelhorn.

137.    That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the
JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the
imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to
Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021.   In the alternative,
Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon
Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for
the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October
11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens,
mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may
claim to be necessary and proper.

## COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

139.    That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's
money to be transferred to Defendant Darnestown Road.

140.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.    Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

141.    That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142.    That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143.    That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road.    In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145.    That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.    Defendant Bolog breached his fiduciary duties by causing, permitting,

facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147.    That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148.    That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149.    That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing.  In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (Plaintiff White Pearl, LLC v. Defendant Postal)

150.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151.    That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

36

153.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154.    That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155.    That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests.  Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing.  Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A.    Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B.     Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.    Granting such other and further equitable relief as deemed just and proper.

**COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY
UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)**
(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v.
Defendants Bolog, Postal, POJO, and Swain Landing)

157.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

158.    That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-related matters, the nefarious condition under which the Plaintiff Trust became a member, and coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

a.      Requiring the judicial dissolution of Defendant Swain Lnading, the winding up of its affairs, and the distribution of its assets (including the sale of Defendant Swain Landing and/or its assets so that Plaintiff White Pearl, LLC's payment of $585,000.00 can be reimbursed in full);

b.      Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost and all professional fees incurred in carrying out the remedies so ordered; and

c.      Awarding damages from Defendants Bolog, Postal, and Swain Landing, jointly and severally, for $585,000.00, plus prejudgment interest, so that White Pearl, LLC can be and is repaid in full.

## COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE REMEDIES) AT COMMON LAW

(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00,

plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a.  Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b.  Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings; (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c.  As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus

prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly

and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.    Ordering such other and further relief as this Honorable Court deems

appropriate, including fashioning such alternative equitable remedies as

may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the

circumstances.

**COUNT XV – DECLARATORY JUDGMENT**
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to

practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the

alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of

the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law

and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the

alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was

invalid as a matter of law and that monies should be returned to her by Defendant Bolog,

Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021,

for her costs, and for such other and further relief as may be appropriate under the circumstances.

## COUNT XVI – UNJUST ENRICHMENT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

174.    That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176.    That client "gifts" to attorneys are presumptively fraudulent.  Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

177.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178.    That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179.    That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation of the Maryland Uniform Fraudulent Conveyance Act.  The assets so conveyed exceeded the amounts due to Plaintiff Trust.

43

180.    That Defendant Science Park conveyed and transferred substantially all of its assets to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform Fraudulent Conveyance Act.

181.    That these transfer of assets by Defendant Science Park were fraudulent as to Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.    That each of the Defendants had knowledge of the fraud at the time of each transfer and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment as follows:

a.      Declaring that each of the aforesaid conveyances and transfer as fraudulent as to Plaintiff Trust;

b.      Setting aside all such conveyances and transfers of assets by Defendant Science Park to Defendant Bolog with such transfers returned to Defendant Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.      Awarding Plaintiff interest from the date of each transfer and conveyance.

d.      Entering a judgment against Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

e.      For such other and further relief as may be appropriate under the circumstances.

### COUNT XVIII – FRAUD

44

(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was an owner of Defendant Science Park and had a financial interest in the transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of

45

$20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT XIX – UNJUST ENRICHMENT

(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

190.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.     That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.     That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.     That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.     That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.     That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

196.     That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiffs v. Defendant WTP)

197.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

198.    That Defendant WTP aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

199.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

200.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

201.    That Defendant WTP colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

202.    That Defendant WTP participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing its own interests.  Defendant WTP obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog.

203.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive

damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

Respectfully submitted:

/s/*Patrick D. Gardiner*
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable before a jury.

/s/ *Patrick D. Gardiner*
Patrick D. Gardiner, Esq. (AIS# 1506160113)

48

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 5th day of February 2025 that, a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

49

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ *Patrick D. Gardiner*
Patrick D. Gardiner, Esq. (AIS# 1506160113)

E-FILED; Baltimore City Circuit Court
Docket: 2/5/2025 1:08 PM; Submission: 2/5/2025 1:08 PM
Envelope: 19843921

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN** | ) |
| ~~————————————~~1727 Kingsbury Drive, Nashville, Tennessee 37215 | ) |
| | ) |
| and | ) |
| | ) |
| **CLAUDIA ENGELHORN, AS TRUSTEE OF THE WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021** | ) |
| | ) |
| ~~————————————~~1727 Kingsbury Drive, Nashville, Tennessee 37215 | ) |
| | ) |
| and | ) |
| | ) |
| **WHITE PEARL, LLC** 1209 Orange Street Wilmington, Delaware 19801 | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )   Case No.:   **C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG** 9312 Chesley Road Potomac, Maryland 20854 | ) |
| | ) |
| and | ) |
| | ) |
| **ERIK D. BOLOG, AS TRUSTEE OF THE JAREB IRREVOCABLE TRUST AGREEMENT DATED OCTOBER 11, 2021** The Bolog Law Group 1763 Columbia Road, NW, Suite 450N Washington, DC 20018 | ) |
| | ) |
| and | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON, LLP** Seven St. Paul Street Suite 1900 Baltimore, Maryland 21202 | ) |

2

Serve On:                                          )
Resagent, Inc.                                     )
Seven St. Paul Street                              )
Suite 1900                                         )
Baltimore, Maryland 21202                          )
                                                   )
and                                                )
                                                   )
**MICHAEL POSTAL**                                 )
4302 Broken Arrow Court                            )
Clinton, Maryland 20735                            )
                                                   )
and                                                )
                                                   )
**POJO LAPLATA LLC**                               )
4302 Broken Arrow Court, Apt. 606                  )
Clinton, Maryland 20735                            )
    Serve On:                                      )
    Anjon Jones                                    )
    4302 Broken Arrow Court                        )
    Clinton, Maryland 20735                        )
                                                   )
and                                                )
                                                   )
**DARNESTOWN ROAD, INC.**                          )
8938 Abbey Terrace                                 )
Potomac, Maryland 20854                            )
    Serve On:                                      )
    Erik D. Bolog                                  )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )
**SCIENCE PARK ASSOCIATES, LLC**                   )
6701 Democracy Boulevard                           )
Suite 515                                          )
Bethesda, Maryland 20717                           )
    Serve On:                                      )
    Erik D. Bolog, Esq.                            )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )

3

**SWAIN LANDING LAPLATA JC, LLC**       )
4302 Broken Arrow Court                  )
Clinton, Maryland 20735                )
     Serve On:                       )
     Anjon Jones                   )
     4302 Broken Arrow Court       )
     Clinton, Maryland 20735       )
                                  )
     and                           )
                                  )
**TENACITY INVESTMENTS, LLC**        )
7333 New Hampshire Avenue       )
Unit 103                         )
Takoma Park, Maryland 20912     )
     <u>**Serve On:**</u>                )
     Mike Postal                   )
     7333 New Hampshire Avenue   )
     Unit 103                     )
     Takoma Park, Maryland 20912   )
                                  )
     ***Defendants***.                 )

---

## <u>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this Second Amended Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

## <u>PARTIES</u>

1.     That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee.

4

2.      That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust").

3.      That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.      That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.      That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia.  Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021.  Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854.  Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.      That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland.  Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland.  At all relevant times, Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein.  At all relevant times, Defendant Bolog and the other attorneys identified herein were the actual and/or apparent agents of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them.

7.      That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.      That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business associate of, and client of Defendant Bolog.  Defendant Postal has also been represented by Defendant WTP.

9.      That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland.  Defendant POJO is a forfeited entity.

10.     That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland.  The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11.     That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12.     That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant

6

POJO (30% owner); and (3) Defendant Postal (20%). That the proposed operating agreement for Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite #450N, Washington, D.C. 20036, as its principal office and place of business; however, such proposed operating agreement apparently remains unsigned.

13.     That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments, LLC") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14.     That jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(5).

15.     That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16.     That venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8). To the extent that any of the Defendants are found to be nonresidents, then venue would also be proper under Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

17.     That this Honorable Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18.     That, at all times relevant hereto, Defendant Bolog was an attorney licensed in Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a Senior Counsel and/or Partner at WTP.

19.     That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and converting monies for which he was not entitled, as evidenced by the following matters:

    a.      The Harbor School Corporation sued Defendant Bolog in the District Court of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which resulted in a judgment for $90.00 after the inclusion of a filing fee.  *See* Case No.: 0602-0006927-2002.

    b.      The State of Maryland filed a Certification of Assessment and Tax Lien under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006. *See* Case No.: 268674-V.

    c.      The Law Offices of William Johnson sued My New Hampshire, LLC, Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States Bankruptcy Court for the District of Columbia ("USDC Action").  That it was alleged in the USDC Action that Defendants Bolog and Postal had acquired shares of the Metropolitan Cooperative Association and became shareholders therein.  It was further alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement entered into by Metropolitan Cooperative Association, but that they failed to pay the sums allegedly due as guarantors.  Defendants Bolog and Postal were represented by several attorneys from Defendant WTP in the USDC Action.  The USDC Action appears to have resulted in a settlement.

d.     The United States of America filed a Federal tax lien against Defendant Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of $7,218.00.  *See* 87230F.

e.     On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in *In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division ("EDK Action").  *See* Case No.: 13-07009.  In that Complaint, Defendant Bolog was sued because he "wrongfully converted and transferred property of the [bankruptcy] Estate" to himself and others.  Defendant Bolog and The Bolog Firm settled the claims against them.  The Bolog Firm is a law firm that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.     The Takoma Overlook Condominium Association, Inc. sued Defendants Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland, on March 25, 2015.  *See* 402700-V.  Julianne E. Dymowski, Esquire of Defendant WTP, represented Messrs. Postal and Bolog in that matter.

g.     Congressional Bank sued Erik and Debra Bolog in the matter of *Congressional Bank v. Debra Bolog, et al*., on May 8, 2018, in the Circuit Court for Montgomery County.  *See* Case No.: 447498.

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor & Preston, LLP.  *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division (EDK Action #2).  In that Complaint, Mr. Westenhoefer alleged that Defendant Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog.  In that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had engaged in other fraudulent activity.  Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor…"  Ultimately, the Court entered an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford, Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

h.      American Express National Bank filed a lawsuit against Defendant Bolog for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior Court of the District of Columbia, Case No.: 2019 CA 006319 C.  American Express National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

i.      American Express National Bank filed a separate lawsuit against Defendant Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of Columbia, Case No.: 2019 CA 006316 C.  American Express National Bank identified Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW, #450N, Washington, DC 20036.

21.    That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite having express knowledge as to his financial issues and conversion of monies that did not belong to him and other fraudulent behavior.

22.    That, based on its representation of Defendant Bolog and publicly available information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions and address his financial distress.  Defendant Bolog's failure to live within his means, satisfy his debts, and meet financial obligations were examples of his poor self-control, lack of judgment, and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability

10

to competently oversee the monies of clients and third parties.  Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.    That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

**Fraudulent $10 Million "Gift"**

24.    That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.    That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.    That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.    That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her.  There is no balance due and owing to Defendant WTP.

28.    That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.    That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

Maryland

An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

Md. Rule 19-301.8(c).

District of Columbia

A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.     That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a "revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

31.     That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.     That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA.  On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.     That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees.  Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.     That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.     That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland.  That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services.  The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to distribute the net income and principal of this Trust to himself.  According to the terms of this Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his

children.  The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered $10 million to the JAREB Irrevocable Trust.  That said funds were transferred from a bank account owned by Plaintiff Engelhorn.

36.    That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something signed.  Defendant Bolog also stated that he needed the documents notarized, so he had Sarah Mayo arrive and notarize the documents.  Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents that were upside down.  Unbeknownst to Plaintiff, Defendant Bolog tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB Irrevocable Trust Agreement dated October 11, 2021.  Defendant Bolog did not explain the documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature.  Plaintiff Engelhorn trusted and relied on Defendant Bolog and, as a result, signed the documents.  At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

37.    That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal advice with respect to the $10 million gift.  The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while

on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.     That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client.  For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship."  That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.     That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift.  Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.     That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel.  She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift.  After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies.  Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

41.     That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to

make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.    That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes.  Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.    That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.    That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

**Fraud and Embezzlement by Science Park Associates, LLC**

46.    All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

47.    That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5

16

million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt

Property, a commercial building and real estate in Prince George's County, Maryland.  Thereafter,

the Deed of Trust was properly recorded in Prince George's County, Maryland.  In addition to the

Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC,

guaranteed the Loan Agreement.

48.     That on or about November 26, 2014, Defendant Bolog, on behalf of himself and

as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan

Agreement between Defendant Science Park and the bank.

49.     That, upon information and belief, Defendant Bolog's company, Defendant Science

Park, derived rental income from the Greenbelt Property.

50.     That, in or around March 2022, upon information and belief, Defendant Bolog

drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security

Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment").  Under the terms

of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt

on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security

interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property.   As a

result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the

bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan

Agreement, was extinguished.

51.     That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank

account to wire approximately $3,352,650 to the bank, consistent with the March 2022

Assignment.

52.      That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.      That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.      That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.      That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.      That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.      That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

58.     That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff

Trust to remove Defendant Bolog as a Trustee.

59.     That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP,

wrote an email stating that the payoff for the Trust was $3,689,662.77.

60.     That, in or around this time, the Plaintiff Trust learned about the sale of the

Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation

under the 2022 Promissory Note.  As a result of this demand, the Plaintiff Trust was paid

$3,689,662.77 from the sales proceeds.

61.     That the Plaintiffs had not received any mortgage payments or assignment of rent

payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

**Embezzlement of $350,000: Darnestown Road, Inc. Scheme**

62.     That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff

Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email

account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63.     That, on or about December 21, 2021, as a result of Defendant Bolog's wire

instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to

Darnestown Road, Inc.'s bank account.

64.     That, upon information and belief, Defendant Bolog was an officer of and

maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

65.     That Defendant Bolog neither obtained anything of value in return for the Plaintiff

Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to

repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up,

concealed, and failed to disclose his interest in this company before authorizing the transaction

and further failed to conceal that these monies were used to replace funds that he had embezzled

from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and

contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.     That the Plaintiff Trust has never been repaid these monies.

67.     That, as a direct and proximate result of Defendant Bolog's material

misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained

$350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in

damages.

### Embezzlement of $585,000: Swain Landing Scheme

68.     That Defendant Postal is a long-time business associate of Defendant Bolog's and

a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the

USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset

House Condominium Unit Owners Association, et al.*, which was filed on or about August 31,

2020, in the Superior Court of the District of Columbia.

69.     That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747

High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58

deposited into a Bank of America account ending in 3122.  An entity owned by Plaintiff Engelhorn,

White Pearl, LLC, was the account owner of the account ending in 3122.   Defendant Bolog knew

that Plaintiff Engelhorn realized these monies from the sale of her home.

70.     That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog,

stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.     That Defendant Postal, as the managing member and an owner of Defendant Swain

Landing, was a long-time business partner with Defendant Bolog and his former client.

72.    That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl, LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing], relating to a real estate investment."

73.    That, on or about January 6, 2022, $585,000.00 was transferred from the account ending in 3122 to an account maintained by Defendant Swain Landing.

74.    That Defendant Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties.  Defendant Bolog willfully and, with reckless disregard, failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.    That Plaintiffs have never been repaid these monies.

76.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused $585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing Plaintiff White Pearl to suffer $585,000 in damages.

## **CAUSES OF ACTION**

### **COUNT I – FRAUD**

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021 and Defendant WTP)

77.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

78.     That, beginning in or about early October 2021, Defendant Bolog intentionally defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.     That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into believing that she was signing routine legal documents, whereas she was signing a Notice of Gift, the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.     That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11, 2021.  At the time Defendant Bolog made, presented to Plaintiff, and used these documents to transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, he was her attorney, not related to her, and knew these documents contained these false statements and misrepresentations or he made them with reckless indifference to truth.

81.     That Defendant Bolog made these misrepresentations for the purpose of defrauding Plaintiff Engelhorn.

82.     That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth.  Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.     That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

**WHEREFORE,** Plaintiff Engelhorn demands judgment against Defendants Bolog and WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT II – NEGLIGENT HIRING AND RETENTION
(Plaintiffs v. Defendant WTP)

84.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.     That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney.  That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients.  Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies.  A reasonable and prudent employer would not have ignored such

23

indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.    That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.    That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.    That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.    That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care,

the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed

Defendant Bolog to have access to their monies, such that he would not have been placed in the

position of executing a fraudulent, Notice of Gift and other documents.

90.     That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory

damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest,

costs of this action, and such further relief as this Court deems appropriate.

### COUNT III – FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

91.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

92.     That, in or around March 2022, Defendant Bolog, individually and on behalf of

Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's

$4,655,765 debt.

93.     That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant

Bolog apparently sold the Greenbelt Property for $5,545,820.

94.     That, as a result of having this confidential and fiduciary relationship with Plaintiff

Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to

Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and

had a financial interest in the transaction or, alternatively, that he had an interest in the entities

encumbered by the original debt, such as Tenacity Investments, LLC.  Defendant Bolog also had

a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property,

the security interest of the Trust.

95.     That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Science Park and had a financial interest in the transactions involving Defendant Science Park.

96.     That had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have acquired and assumed Defendant Science Park's significant debt.

97.     That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage payments, and suffered other damages, as described herein.

**WHEREFORE,** Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

98.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

99.     That, beginning in or about December 2021, Defendant Bolog defrauded the Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the Trust.  To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.    That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

101.     That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the

Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before

the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial

interest in the transaction.

102.     That Defendant Bolog intentionally failed to disclose his actual knowledge that he

was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.     That, had Defendant Bolog truthfully disclosed and not deliberately concealed from

Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown

Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown

Road, Inc.

104.     That, as a direct and proximate consequence of Defendant Bolog's fraudulent

concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog and Defendant

WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five

Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest,

costs of this action, and such further relief as this Court deems appropriate.

### COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog and Defendant WTP)

105.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

106.     That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited

her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.     That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by

embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

27

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, it was an entity owned and operated by his close, business colleague, Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, Defendant Swain Landing was an entity owned and operated by his close, business colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

114.    That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other lawyers at Defendant WTP.  That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

<ol type="a">
<li>On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," <em>i.e.</em>, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;</li>

<li>On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."</li>

<li>On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."</li>

<li>On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."</li>

<li>On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."</li>

<li>On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."</li>
</ol>

115.    That, as a result of the attorney-client relationship between Plaintiff Engelhorn and Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to exercise care and skill to comply with the accepted and reasonable standards of care for performing such services.  Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust: (a) the duty of competent representation; (b) the duty of conflict-free representation, including the prohibition against soliciting any substantial gif from a client; (c) the duty to refrain from entering into a business transaction with a client; (d) the duty to meaningfully communicate by explaining matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed decisions regarding the representation; and (e) to otherwise act in accordance with the standard of care.

116.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff Trust.

117.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise a reasonable degree of care and skill in the performance of their duties.

118.    That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

      a.    Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the alleged $10M gift;

      b.    Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes, she would have to use most of her lifetime exemption up if the $10M

transfer was a gift, which would mean anything in her estate over the lifetime exemption amount is subject to a 40% tax;

c.     Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and/or the document(s) that lead to the formation of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and the transfer of the $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d.     Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e.     Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

f.     Engaging in transactions on behalf of Plaintiffs in matters for which Defendant Bolog maintained a financial interest or stood to benefit and in which Defendant Bolog knew or reasonably should have known that his personal financial and business interests were adverse to the object of representation, yet failing to disclose his personal interests or obtaining Plaintiffs' consent; and

g.     Undertaking and maintaining representation of Plaintiffs and failing to competently conduct any due diligence related to the investment of Plaintiffs' money.

119.    That Plaintiffs have collectively suffered damages of at least $10M as a direct and proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman.

120.    That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog and Defendant WTP)

121.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.    That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.    That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT VIII – RESCISSION OF GIFT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

129.     That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.     That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.     That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

## COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.     That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.     That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.   Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

135.     That, under the principles of equity and good conscience, Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust Agreement Dated October 11, 2021.

136.     That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff Engelhorn.

137.     That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021.  In the alternative, Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens, mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

### COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

139.     That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

140.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.  Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

141.    That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142.    That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143.    That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road.  In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145.    That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.  Defendant Bolog breached his fiduciary duties by causing, permitting,

facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147.    That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148.    That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149.    That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing.  In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (Plaintiff White Pearl, LLC v. Defendant Postal)

150.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151.    That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

153.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154.    That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155.    That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests.  Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing.  Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A.    Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B.     Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.    Granting such other and further equitable relief as deemed just and proper.

**COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY
UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)**
(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v.
Defendants Bolog, Postal, POJO, and Swain Landing)

157.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

158.    That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-

related matters, the nefarious condition under which the Plaintiff Trust became a member, and

coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to

order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and

claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

a.    Requiring the judicial dissolution of Defendant Swain Lnading, the winding

up of its affairs, and the distribution of its assets (including the sale of

Defendant Swain Landing and/or its assets so that Plaintiff White Pearl,

LLC's payment of $585,000.00 can be reimbursed in full);

b.    Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and

severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost

and all professional fees incurred in carrying out the remedies so ordered;

and

c.    Awarding damages from Defendants Bolog, Postal, and Swain Landing,

jointly and severally, for $585,000.00, plus prejudgment interest, so that

White Pearl, LLC can be and is repaid in full.

**COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF
DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL
FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE
REMEDIES) AT COMMON LAW**
(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00,

plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a. Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b. Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings; (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c. As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus

prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly

and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.    Ordering such other and further relief as this Honorable Court deems

appropriate, including fashioning such alternative equitable remedies as

may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the

circumstances.

## COUNT XV – DECLARATORY JUDGMENT
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to

practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the

alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of

the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law

and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the

alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was

invalid as a matter of law and that monies should be returned to her by Defendant Bolog,

Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021,

for her costs, and for such other and further relief as may be appropriate under the circumstances.

## COUNT XVI – UNJUST ENRICHMENT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

174. That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175. That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176. That client "gifts" to attorneys are presumptively fraudulent.  Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

177. That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178. That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179. That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation of the Maryland Uniform Fraudulent Conveyance Act.  The assets so conveyed exceeded the amounts due to Plaintiff Trust.

180.   That Defendant Science Park conveyed and transferred substantially all of its assets to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform Fraudulent Conveyance Act.

181.   That these transfer of assets by Defendant Science Park were fraudulent as to Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.   That each of the Defendants had knowledge of the fraud at the time of each transfer and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment as follows:

a.   Declaring that each of the aforesaid conveyances and transfer as fraudulent as to Plaintiff Trust;

b.   Setting aside all such conveyances and transfers of assets by Defendant Science Park to Defendant Bolog with such transfers returned to Defendant Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.   Awarding Plaintiff interest from the date of each transfer and conveyance.

d.   Entering a judgment against Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

e.   For such other and further relief as may be appropriate under the circumstances.

## COUNT XVIII – FRAUD

(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was an owner of Defendant Science Park and had a financial interest in the transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of

$20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XIX – UNJUST ENRICHMENT
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

190.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.    That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.    That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.    That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.    That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

196.    That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

47

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiffs v. Defendant WTP)

197.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

198.    That Defendant WTP aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

199.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

200.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

201.    That Defendant WTP colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

202.    That Defendant WTP participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing its own interests.  Defendant WTP obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog.

203.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive

damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

Respectfully submitted:

/s/ ~~Wes P. Henderson~~ Patrick D. Gardiner

Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable before a jury.

/s/ ~~Wes P. Henderson~~ Patrick D. Gardiner

~~Wes P. Henderson~~ Patrick D. Gardiner, Esq. (AIS #~~0212180062~~# 1506160113)

## **CERTIFICATE OF SERVICE**

——————I HEREBY CERTIFY that on this ~~31st~~5th day of ~~October, 2024, I served~~February 2025 that, a copy of the ——————foregoing was sent via —————————————————

~~function on~~MDEC to the following:

——————William J. Murphy, Esq.
John J. Connolly, Esq.
    Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
    wmurphy@zuckerman.com
    jconnolly@zuckerman.com
    kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP

1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust*

*Agreement dated October 11, 2021.*

——————*Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
~~4302 Broken Arrow Court~~
——————~~Clinton, MD 20735~~

50

~~1801 16th Street NW, Apt 608~~
~~Washington, DC 20009~~

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

~~Darnestown Road, Inc.~~

~~Potomac, MD 20854~~


~~Science Park Associates, LLC~~

~~Bethesda, MD  20717~~


Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

~~/s/ *Wes P. Henderson*~~
~~Wes P. Henderson~~

/s/ *Patrick D. Gardiner*
Patrick  D.  Gardiner, Esq. (AIS ~~#~~
1506160113)

E-FILED; Baltimore City Circuit Court
Docket: 2/11/2025 1:34 PM; Submission: 2/11/2025 1:34 PM
Envelope: 19922158

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

|                                        |                          |
| -------------------------------------- | ------------------------ |
| CLAUDIA ENGELHORN, *et al.*,           |                          |
| Plaintiffs,                            |                          |
| v.                                     | No. C-24-CV-24-002631    |
| ERIK D. BOLOG, *et al.*,               |                          |
| Defendants.                            |                          |

## ANSWER OF DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") submits this Answer to the Amended Complaint ("Complaint") and states:

All counts in the Complaint against Whiteford are for tort and the claims for relief are for money only. Pursuant to Maryland Rule 2-323, Whiteford generally denies liability and requests dismissal with prejudice of all claims against Whiteford.

### AFFIRMATIVE DEFENSES[1]

1.      The Complaint, and each and every count thereof, fails to state a claim against Whiteford.

2.      Plaintiffs' claims are not cognizable in this Court because of a binding agreement requiring arbitration.

3.      Venue is not appropriate in this Court for, among other reasons, Plaintiffs' agreement to arbitrate their claims against Whiteford.

---

[1] By enumerating these affirmative defenses Whiteford does not suggest or admit that Whiteford bears the burden of proof on each of them.

4.      Plaintiffs' claims are barred by an express release and by the doctrine of release.

5.      Plaintiffs' claims are barred by payment.

6.      Plaintiffs' claims are barred in whole or in part by an accord and satisfaction.

7.      Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

8.      Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

9.      Plaintiffs' claims are barred in whole or in part by the statute of limitations.

10.     Plaintiffs' claims are barred in whole or in part by the Plaintiffs' contributory negligence.

11.     Plaintiffs' claims are barred in whole or in part by Plaintiffs' assumption of the risk.

12.     Plaintiffs' claims are barred by their unclean hands.

13.     Whiteford is not legally responsible for the acts of Defendant Erik Bolog under respondeat superior or any other doctrine of agency.

14.     The acts of Defendant Bolog at issue in the Complaint were not undertaken within the scope of his employment by Whiteford and Whiteford did not authorize or benefit from Defendant Bolog's acts.

15.    Whiteford did not represent Plaintiff White Pearl and therefore cannot be liable in malpractice or for breach of fiduciary duty with respect to that Plaintiff.

16.    The acts of Whiteford did not proximately cause any of Plaintiffs' alleged damages.

17.    Plaintiffs failed to mitigate their alleged damages.

18.    Any damages awarded against Whiteford must be reduced or eliminated by the misconduct of other defendants.

19.    Plaintiffs' claims for punitive damages are barred by the due process clauses of the state and federal constitutions.

20.    Whiteford did not knowingly participate in or encourage any act of Defendant Bolog that violated a fiduciary duty owed to any of the Plaintiffs.

WHEREFORE, Defendant Whiteford, Taylor & Preston LLP requests that judgment be entered in its favor on all claims in the Complaint, and that those claims be dismissed with prejudice against Whiteford, and that Whiteford recover its costs and fees and such other and further relief as the Court deems just.

### JURY TRIAL DEMAND

Pursuant to Maryland Rule 2-331(b), Defendant Whiteford Taylor & Preston LLP respectfully demands trial by jury as to all claims and issues herein so triable.

Dated: February 11, 2025

Respectfully submitted,

By: __/s/ William J. Murphy_____
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2025, a copy of the

foregoing Answer was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 /s/ John J. Connolly
John J. Connolly

IN THE CIRCUIT COURT FOR   Baltimore City, Maryland

(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

   *Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☐ PLAINTIFF  ☒ DEFENDANT      CASE NUMBER  C-24-CV-24-002631

(Clerk to insert)

**CASE NAME:** Claudia Engelhorn, et al.          vs.   Erik D. Bolog, et al.

**PARTY'S NAME:** Whiteford, Taylor & Preston, LLP              PHONE: _____

Plaintiff                                              Defendant

**PARTY'S ADDRESS:** Seven St. Paul St., Suite 1900; Baltimore, MD 21202

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:**   William J. Murphy              PHONE: 410 949 1146

**PARTY'S ATTORNEY'S ADDRESS:**   ZUCKERMAN SPAEDER LLP; 100 E. Pratt St., Ste. 2440 Baltimore MD 21202

**PARTY'S ATTORNEY'S E-MAIL:**  wmurphy@zuckerman.com

**JURY DEMAND?** ☒ Yes  ☐ No

**RELATED CASE PENDING?**  ☐ Yes  ☒ No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  10  days

### PLEADING TYPE

**New Case:** ☒ Original   ☐ Administrative Appeal   ☐ Appeal
**Existing Case:** ☐ Post-Judgment   ☐ Amendment
*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☒ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

CC-DCM-002 (Rev. 12/2022)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.     ☐ Liability is not conceded, but is not seriously in dispute.     ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000     ☐ $10,000 - $30,000     ☐ $30,000 - $100,000     ☐ Over $100,000

☐ Medical Bills $ _____     ☐ Wage Loss $ _____     ☐ Property Damages $ _____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation      ☐ Yes  ☐ No          C. Settlement Conference     ☒ Yes  ☐ No
B. Arbitration    ☐ Yes  ☐ No          D. Neutral Evaluation        ☐ Yes  ☐ No

## SPECIAL REQUIREMENTS

☐  If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐  If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time

☐ 1 day of trial time               ☐ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited -** Trial within 7 months of          ☒ **Standard -** Trial within 18 months of

Defendant's response                              Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❏ **Expedited - Trial within 7 months of** Defendant's response          ❏ **Standard - Trial within 18 months of** Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❏ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❏ Civil-Short | Trial 210 days from first answer. |
| ❏ Civil-Standard | Trial 360 days from first answer. |
| ☒ Custom | Scheduling order entered by individual judge. |
| ❏ Asbestos | Special scheduling order. |
| ❏ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ❏ Tax Sale Foreclosures | Special scheduling order. |
| ❏ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❏ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❏ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❏ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❏ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

February 11, 2025
_____
Date

100 E. Pratt St., Ste. 2440
_____
Address

Baltimore          MD          21202
_____
City          State          Zip Code

/s/ William J. Murphy          8406010273
_____
Signature of Attorney / Party          Attorney Number

William J. Murphy
_____
Printed Name

E-FILED; Baltimore City Circuit Court
Docket: 2/11/2025 1:37 PM; Submission: 2/11/2025 1:37 PM
Envelope: 19922338

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 11th day of February, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1. Defendant Whitedford, Taylor & Preston LLP's First Request for Production of Documents to Plaintiffs.

2. Defendant Whiteford, Taylor & Preston LLP's First Set of Interrogatories to Plaintiff Claudia Engelhorn.

3. Defendant Whiteford, Taylor & Preston LLP's First Set of Interrogatories to Plaintiff White Pearl, LLC.

Dated: February 11, 2025

Respectfully submitted,

By:  /s/ John J. Connolly
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2025, a copy of the

foregoing document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*
John J. Connolly

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION
Cummings Courthouse
111 N. Calvert Street
Baltimore, MD 21202

Main: 410-333-3723
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:** ZACHARY P. SCHRIEBER, ESQUIRE
200 LIBERTY STREET
NEW YORK NY 10281

| | |
|---|---|
| **Case Number:** | C-24-CV-24-002631 |
| **Other Reference Number(s):** | |

## CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.

## PRE-TRIAL SCHEDULING ORDER

Based on the Case Information Report(s) filed in this action and pursuant to Md. Rule 2-504(a), this action is assigned to **TRACK 3B (CIVIL STANDARD TRACK with mediation).**
The following dates apply to this action:

| | |
|---|---|
| 07/11/2025 | Filing of any amended pleadings. |
| 07/11/2025 | Joinder of any additional parties. |
| 05/12/2025 | Plaintiff(s) shall identify expert witnesses, including all information specified in Md. Rule 2-402(g)(1)(A). |
| 08/11/2025 | Defendant(s) shall identify expert witnesses, including all information specified in Md. Rule 2-402(g)(1)(A). |
| 09/09/2025 | Plaintiff(s) shall identify any rebuttal expert witnesses, including all information specified in Md. Rule 2-402(g)(1)(A). |
| 10/09/2025 | Completion of all discovery, including full resolution of all discovery disputes. |
| 11/10/2025 | Completion of any alternative dispute resolution proceeding. |
| 11/10/2025 | Filing of any dispositive motion(s) and any motion(s) to exclude expert testimony, including any request(s) for a *Daubert-Rochkind* hearing. |
| 01/12/2026 | Pre-trial and settlement conference (see requirements below). |
| 01/23/2026 | Any additional motions *in limine* shall be filed no later than 20 days before trial. |
| **02/12/2026** | First day of trial. |

A scheduling conference pursuant to Md. Rules 2-504.1 or 2-703(c) will be held only on written request.

Any party who intends to use computer-generated evidence at trial for any purpose must comply with Md. Rule 2-504.3(b).

Each party shall file a pre-trial conference statement no later than five days before the pre-trial and settlement conference. The statement shall include all matters listed in Md. Rule 2-504.2(b). The attorneys who will actually try the action, their clients, insurance representatives, and persons with full settlement authority must attend the pre-trial and settlement conference. Failure to attend without prior approval from the Court may result in sanctions. All pre-trial conferences are conducted by remote electronic means unless ordered otherwise.

This Order is subject to modification, including the scheduling of the pre-trial and settlement conference and trial, upon a written motion for modification filed within 15 days after the date of this Order. Thereafter, this Order may be modified only upon a written motion for modification showing good cause why the schedule cannot reasonably be met despite the diligence of the parties seeking modification.

If exigent circumstances prevent filing a motion for modification in writing, an oral motion shall be made at a remote electronic hearing conducted daily at 1:45 p.m. Access to that hearing may be arranged by contacting the Civil Assignment Office in advance at 410-333-3755. Counsel for all parties and any unrepresented parties must attend these hearings. An "exigent circumstance" means an unforeseen development occurring within 30 days of the date or event to be postponed.

Failure to comply with the provisions of this Order may lead to the imposition of sanctions on the parties and/or their counsel. Sanctions may include dismissal, entry of default, or monetary sanctions, as may be appropriate.

Any request for accommodation under the Americans with Disabilities Act should be directed to the Administrative Office of the Circuit Court for Baltimore City at 410-396-5188 or TTY for the hearing impaired: 410-396-4930.

**SO ORDERED: 02/13/2025**

**Hon. Audrey J.S. Carrión**
**Administrative Judge**

CIRCUIT COURT FOR BALTIMORE CITY
MARYLAND
CIVIL DIVISION

Main: 410-333-3703
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:**  ZACHARY P. SCHRIEBER ESQUIRE
200 LIBERTY STREET
NEW YORK NY  10281

**Case Number:**       C-24-CV-24-002631
**Related Case Number:**

CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.

## NOTICE OF CIVIL PRE-TRIAL CONFERENCE
### (Conducted by Remote Electronic Means)

You are hereby **notified to appear** in court for the following proceeding:

### CIVIL PRE-TRIAL CONFERENCE

Date:     **01/12/2026**
Time:     **9:30 AM**

This conference will be conducted by remote electronic means pursuant to Md. Rule 21-201 using Zoom for Government.  You will receive an electronic invitation with the link and optional dial-in information closer to the date of the conference.  Note that the conference judge or the Civil ADR Office subsequently may provide a different starting time for the conference.

Counsel must notify all necessary parties and insurance representatives to appear at the time and place identified above.

Objections to this proceeding being conducted by remote electronic means may be filed in writing or made at the hearing pursuant to Md. Rule 21-201(b).

Requests for postponement are heard daily by remote electronic means at 1:45 p.m.  Contact the Civil Assignment Office in the morning to indicate that a request will be made and to get information to attend the postponement session.

Any request for accommodation under the Americans with Disabilities Act should be directed to the Administrative Office of the Circuit Court for Baltimore City at 410-396-5188 or TTY for the hearing impaired: 410-396-4930.  Information on accommodations is also available at
https://www.baltimorecitycourt.org/ada-accommodation/.

**Date issued: February 13, 2025**

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION

Main #: 410-333-3703
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:** ZACHARY P. SCHRIEBER ESQUIRE
200 LIBERTY STREET
NEW YORK NY 10281

|  |  |
|---|---|
| **Case Number:** | C-24-CV-24-002631 |
| **Related Case Number:** |  |

CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.

## NOTICE OF IN-PERSON CIVIL TRIAL/HEARING

You are hereby **notified to appear** in court for the following proceeding:

### CIVIL HEARING

| | |
|---|---|
| Date: | **02/12/2026** |
| Time: | **9:30 AM** |
| Place: | **Room 403 – Civil Assignment Office** |
| | **Cummings Courthouse** |
| | **111 North Calvert Street** |
| | **Baltimore, MD 21202** |

You may contact the Civil Assignment Office (410-333-3755) once the matter has been assigned to get the specific courtroom location. The assigned judge may change this to a remote electronic hearing. You will receive another notice if that occurs.

Counsel must notify all necessary parties and witnesses to appear at the time and place identified above.

Requests for postponement are heard daily by remote electronic means at 1:45 p.m. Contact the Civil Assignment Office in the morning to indicate that a request will be made and to get information to attend the postponement session.

Any request for accommodation under the Americans with Disabilities Act should be directed to the Administrative Office of the Circuit Court for Baltimore City at 410-396-5188 or TTY for the hearing impaired: 410-396-4930. Information on accommodations is also available at
https://www.baltimorecitycourt.org/ada-accommodation/.

**Date issued: February 13, 2025**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's MOTION
### FOR COMMISSION TO ISSUE SUBPOENA TO OUT-OF-STATE WITNESS

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") hereby moves for an order granting it a commission to serve a subpoena for documents and testimony on an individual domiciled in the Commonwealth of Massachusetts, and in support thereof states:

1.      Plaintiff Claudia Engelhorn alleges in this action that defendant Erik Bolog tricked or defrauded her into signing at least three key documents at issue in this case, including a "Notice of Gift" that recites that Ms. Engelhorn intended to make a $10 million gift for the benefit of Mr. Bolog. Ms. Engelhorn alleges that Whiteford is vicariously liable for Mr. Bolog's alleged misconduct with respect to the gift. Mr. Bolog asserts that Ms. Engelhorn made the gift knowingly and intentionally.

2.      According to her Second Amended Complaint, Ms. Engelhorn contends that "Defendant Bolog directed Plaintiff to sign numerous documents [including the Notice of Gift] that were upside down," and that he "did not offer her the opportunity to first

read them, and lulled her into believing the documents concerned routine matters requiring her signature." 2d Am. Compl. ["Compl."] ¶ 36.

3.      Ms. Engelhorn signed two of the documents at issue, the Notice of Gift and the JAREB Irrevocable Trust Agreement dated October 11, 2021, under oath before a notary public of the Commonwealth of Massachusetts named Sarah K. Mayo. *See* Murphy Affidavit (Env. No. 18816799; filed Nov. 15, 2024) Exs. B(2), B(3). Ms. Mayo also appears to have witnessed a third document signed by Ms. Engelhorn and dated October 12, 2021; namely, a memorandum directing Bank of America to transfer $10 million from her account to an account owned by Defendant JAREB Trust, whose trustee and principal beneficiary is Mr. Bolog. *See id.* Ex. B(4).

4.      Undersigned counsel's office has attempted to interview Ms. Mayo but, after a brief initial conversation, she has not returned calls or spoken substantively about her participation in the execution of the three key documents. Accordingly, Whiteford has no choice but to seek compulsory process to obtain relevant and material information from Ms. Mayo.

5.      Massachusetts has not adopted the Uniform Interstate Depositions and Discovery Act, and accordingly a commission is required from this Court to have a subpoena issued from a Massachusetts court for Ms. Mayo's documents and testimony. *See* Mass. G.L. c. 223A, § 11; Mass. G.L. § 233, § 45.

6.      On information and belief, Ms. Mayo resides in Barnstable County, Massachusetts at 55 Carl Landi Circle, E. Falmouth, MA 02536-7752.

7.     Douglas Gansler and J.B. Howard, counsel for Defendants Erik Bolog, Erik Bolog as Trustee for the JAREB Irrevocable Trust, Science Park Associates, LLC, and Darnestown Road, Inc., have authorized undersigned counsel to represent that they consent to the relief requested in this motion.

8.     Undersigned counsel has on two occasions requested consent from counsel for Plaintiffs to the relief requested in this motion, but as of this writing have not received a definitive response.

9.     Other defendants have failed to participate in this action thus far and, accordingly, their views on this motion should not be considered.

WHEREFORE, Defendant Whiteford, Taylor & Preston LLP respectfully requests that the Court grant the motion and require the Clerk to issue a commission in the form attached hereto.

Dated: February 18, 2025

Respectfully submitted,

By: _/s/ John J. Connolly_
        William J. Murphy (#8406010273)
        John J. Connolly (#9112170144)
        Kirk E. MacKinnon Morrow
          (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,
Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, a copy of the

foregoing was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

      Plaintiffs,

      v.                     No. C-24-CV-24-002631

ERIK D. BOLOG, *et al.*,

      Defendants.

## ORDER

UPON CONSIDERATION of the motion of Defendant Whiteford, Taylor & Preston

LLP (Whiteford) for a commission to take an out-of-state deposition, and the record

in this case, it is, this **31st** day of _____ **March** _____, 2025

ORDERED that the motion be, and hereby is, GRANTED; and it is further

ORDERED that the Clerk issue and sign a commission requesting that the Superior

Court of Barnstable County, Massachusetts, issue a subpoena for documents and

testimony from Sarah K. Mayo, in the form attached hereto.

03/31/2025 10:16:07 AM

Judge, Circuit Court for Baltimore City

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### COMMISSION TO TAKE DEPOSITION

TO THE SUPERIOR COURT OF BARNSTABLE COUNTY, MASSACHUSETTS:

It is hereby requested, in accordance with the terms of the attached Order entered on the 1st day of April , 2025, by the Circuit Court for Baltimore City, Maryland, that this Honorable Court issue a subpoena commanding

> Sarah K. Mayo, Notary Public
> 55 Carl Landi Circle
> E. Falmouth, MA 02536-7752

to provide oral testimony at a deposition for discovery or use in the captioned action, to be recorded by videotape and/or stenographic means in accordance with Massachusetts law, and to produce for inspection and copying her entire file of documents, including electronic documents and drafts, referring or relating to her notary and document-witnessing services provided to Erik Bolog and/or Claudia Engelhorn, on or about October 11-12, 2021. The subpoena shall require testimony and production of documents at a location in Barnstable County, Massachusetts, or such other place as the parties and witness mutually agree.

Clerk, Circuit Court for Baltimore City

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

## NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 18th day of February, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1. Notice of Deposition (Shaw).

2. Notice of Deposition (Bank of America, NA).

Dated: February 18, 2025

Respectfully submitted,

By: _/s/ John J. Connolly_____
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of February, 2025, a copy of the

foregoing document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog; Erik D. Bolog, Trustee, JAREB Irrevocable Trust Agreement; Science Park Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 /s/ John J. Connolly
John J. Connolly

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

Case Number:   C-24-CV-24-002631
Other Reference Numbers:

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

## ORDER

Upon consideration of Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, and Darnestown Road, Inc.'s Motion to Strike, for a More Definite Statement and to Dismiss for Failure to State a Claim Upon Which Relief can be Granted, as well as the briefs, replies and supplements of the parties, and the oral argument of counsel, and for the reasons set forth on the record in open court, it is this 27th day of January 27, 2025

**ORDERED** that the Motions shall be, and hereby are, **DENIED**; it is further

**ORDERED** that Plaintiff Claudia Engelhorn shall comply with Md. Rule 1-301 within 15 days of this Order by supplying her address.  The amendment may be by interlineation, as adding an address is not a substantive change to the Amended Complaint.

01/27/2025 2:24:13 PM _____   Jeffrey M. Geller _____
Date                              Judge

Entered: Clerk, Circuit Court for
Baltimore City, MD
February 18, 2025

E-SERVED Baltimore City Circuit Court 2/18/2025 11:43 AM System SystemEnvelope:19998539
FILED: Baltimore City Circuit Court
2/18/2025 11:43 AM System Submission
Envelope: 19998539

CIRCUIT COURT FOR BALTIMORE CITY,
MARYLAND

CIVIL DIVISION

111 N. Calvert Street
Baltimore, Maryland 21202

Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

|  |  |
|---|---|
| **Case Number:** | **C-24-CV-24-002631** |
| **Other Reference Numbers:** |  |

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

# ORDER

Upon consideration of Defendant Whiteford, Taylor & Preston's Petition for an Order Compelling Arbitration and Staying Proceedings and Motion to Dismiss Or Stay, as well as the briefs, replies, and supplements of the parties and the oral argument of counsel, and for the reasons set forth on the record in open court it is this 27th day of January, 2025

**ORDERED** that the Motion shall be, and hereby is, **DENIED**.

01/27/2025 2:23:51 PM _____ _Jeffrey M. Geller_____

Date                    Judge

Entered: Clerk, Circuit Court for
Baltimore City, MD
February 18, 2025

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

ZACHARY P. SCHRIEBER, ESQUIRE
200 LIBERTY STREET
NEW YORK, NY 10281

**Case Number:**                    C-24-CV-24-002631
**Other Reference Numbers:**

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

**CIRCUIT COURT FOR BALTIMORE CITY,
MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

Case Number:                     C-24-CV-24-002631
Other Reference Number(s):

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

## ORDER FOR MEDIATION

Pursuant to Maryland Rule 17-202, the parties in this action are ordered to submit to two hours of mediation that shall be completed by 11/10/2025.

The individual listed below has been designated by the Court to mediate this dispute. Each party is required to contact the mediator **within thirty (30) days of the date of this Order** to establish a mediation conference date in compliance with the attached instructions. The mediation conference must be scheduled so that mediation will be completed by the deadline provided above.

Court-Appointed Mediator:     Michael S Warshaw
ROYSTON MUELLER McLEAN & REID LLP
102 WEST PENNSYLVANIA AVENUE
SUITE 600
TOWSON, MD  21204
Home: 410-244-1155, Work: 410-823-1800
mwarshaw@rmmr.com

If the parties propose a different mediator, the parties shall file with the Clerk a "Request to Substitute Mediator" in substantially the form provided in Maryland Rule 17-202(g) and shall fax a copy of the Request to the Court's ADR Office at 410-396-7378.

If a party believes mediation is not appropriate in this action, the party shall file a written motion within thirty (30) days of the date of this Order. **Failure to file a motion requesting exemption from mediation within the 30-day period may result in denial of the motion as untimely.**

The parties shall compensate the mediator designated by the Court based on the $200 hourly rate approved by the Court. All costs are to be divided equally by the plaintiff(s) and defendant(s) unless otherwise approved by the Court. (If there are multiple parties on any side, each side of the dispute shall be responsible to pay half the mediation costs, with that amount divided among the parties on that side of the action. For example, if there are two plaintiffs and one defendant and total mediation costs of $400, each plaintiff would pay $100 and the defendant would pay $200.)

The parties may extend the mediation beyond two hours by agreement. During any extension of the mediation, the mediator may not increase the mediator's hourly rate for providing services in the action. Md. Rule 17-202(e).

The parties shall follow the attached instructions, which are incorporated as part of this Order. Failure to participate in the mediation sessions may subject a party or counsel to sanctions, including contempt or removal of the action from the trial docket. In addition, as described more fully in the instructions, failure to attend a scheduled mediation session will result in the parties reimbursing the mediator for the two hours of time the mediator has reserved to conduct the session.

Date issued: February 19, 2025
BCCC-V-036 (05/2024)                     Page 1 of 5                     2/19/2025 3:02 PM

Case Number: C-24-CV-24-002631
Other Reference Number(s):

_____
Judge

## CIVIL MEDIATION INSTRUCTIONS

1. **Scheduling a Mediation Conference and Completing Mediation:** Within thirty (30) days from the issuance of the Order for Mediation, each party, through counsel, is **required to contact the mediator** to establish a mediation conference date.

    a. Scheduling the Mediation Conference without the Input of Counsel: In the event a party or attorney fails to contact the mediator as directed under the order, the mediator may schedule the conference without input of the parties or counsel. The mediator, however, must ensure actual notice of the conference is received by the parties and/or counsel. This may include, but is not limited to, fax, e-mail, registered mail, and special delivery receipts.

    b. Rescheduling or cancelation of the mediation session: Parties are required to provide the mediator with at least two (2) business days' notice to postpone or cancel mediation. If a party fails to provide the mediator with the required notice, the responsible party is required to pay the mediator his/her fee for the time reserved for mediation.

2. **Selection of and Requests to Change Mediators:** The mediator designated by the court appears on the Order for Mediation. By agreement of all parties to the case, the parties may ask the court to appoint a mediator of their choosing. Parties must file a written "Request to Substitute Mediator," substantially in the form set forth in Md. Rule 17-202(g), with the Clerk's Office, with a courtesy stamped copy sent to the Civil ADR Program at the address below, or by email or fax (see contact information below). Mediators selected by the parties are not bound by the court's fee schedule described below. *See* Md. Rule 17-208(b). All requests must be filed within thirty (30) days from the issuance of the Order for Mediation.

    If there is a conflict of interest with the mediator assigned by the court, the parties shall notify the court's Civil ADR Office within thirty (30) days from the issuance of the Order for Mediation or within a reasonable period after the conflict is known.

3. **Mediation Fees:** Court-appointed mediators charge a fee of $200.00 per hour for all services on an assigned case. Parties are required to share equally in paying the mediator his/her fee. Parties may, by agreement, engage a mediator other than the court designated mediator (as discussed herein) and pay a rate negotiated by the parties.

4. **Attendance at Mediation:** It is mandatory for all trial attorneys, parties, and parties' representatives having actual settlement authority to attend and participate in the mediation conference. Failure to attend and participate in the mediation may subject the parties and/or counsel to sanction, including contempt or removal of the case from the trial docket.

5. **Late and Failure to Appear Policy:** If a party is going to be more than fifteen (15) minutes late to a mediation session, the party must inform the mediator; the mediator and the other participants are required to wait for late parties for thirty (30) minutes before the mediation is subject to cancelation. After the thirty (30) minutes, parties who have not arrived are considered to have failed to appear and are responsible for payment of the time reserved for mediation.

6. **Confidential Mediation Conference Statement:** Parties must complete and send to the mediator the Confidential Mediation Conference Statement (CMCS), which is enclosed with the Order for Mediation, at least **five (5) days** prior to the scheduled mediation session. Only the mediator shall have access to the CMCS. Parties should not exchange CMCSs or file them with the court. The mediator shall not share the CMCS with the court.

7. **Confidentiality:** The mediator shall maintain the confidentiality of all mediation communications and may not disclose or be compelled to disclose mediation communications to any judicial, administrative, or other proceeding, except as provided by law. The parties may enter into a written agreement to maintain the confidentiality of all mediation communications consistent with applicable rule. *See* Md. Rule 17-105.

8. **Exemption from Court-Ordered Mediation:** Any party may file a motion for exemption from court-ordered mediation. The motion must be filed **within 30 days** of the issuance of the Order for Mediation or provide good cause for later filing. Parties who fail to appear at a scheduled mediation without a court order granting exemption from mediation may be subject to sanctions and/or payment of the full mediation fee. Any questions about a filed motion for exemption should be directed to the Civil ADR Office at 410-396-7374. Date-stamped copies of late-filed motions should be directed to Judge Erik Atas, ADR Supervisory Judge, in care of Brian Finnell. Judge Atas will not accept or consider copies of motions that do not bear a filing date stamp of the Clerk of the Court.

9. **Settlement of a Case Prior to Mediation Session:** If the case is dismissed or a settlement is reached with all parties as to all issues prior to the scheduled mediation, parties must notify the mediator, immediately, in writing.

10. **Surveys and Data-Collection Forms:** It is essential that all data and participant surveys are completed and returned to the mediator immediately following completion of each mediation. Mediators must complete a Mediator Report for each case *whether or not mediation occurs*. All counsel and parties must complete survey forms provided by the mediator. All forms must be mailed to the Civil ADR Office within seven (7) days of the last mediation session. Failure to abide this requirement will be addressed by correspondence from ADR Supervisory Judge Erik Atas.

### Contact information for the Circuit Court for Baltimore City Civil ADR Office:

Brian Finnell, Director
Luke Little, Deputy Director
Cummings Courthouse, Room 248
111 N. Calvert Street
Baltimore, Maryland 21202
Tel. (410) 396-7374  Fax (410) 396-7378
ccbc.civiladr@mdcourts.gov

## CIRCUIT COURT FOR BALTIMORE CITY

## CONFIDENTIAL MEDIATION CONFERENCE STATEMENT
(CMCS)

Parties or counsel must send a Confidential Mediation Conference Statement (CMCS) to the designated mediator *at least five (5) days* prior to the scheduled mediation conference. PARTIES AND COUNSEL SHALL NOT EXCHANGE RESPECTIVE MEDIATION CONFERENCE STATEMENTS. THE MEDIATOR SHALL KEEP THE STATEMENTS CONFIDENTIAL, AND THE STATEMENTS WILL NOT BECOME PART OF THE COURT FILE.

The Mediation Conference Statement shall contain the following information and shall be no more than six (6) pages in length:

1. Identification of the case by caption and case number.

2. Attorney's name, address, and telephone number.

3. A brief summary of the case.

4. A brief statement of the facts counsel will rely on in support of a claim.

5. The major strength(s) of your case.

6. An evaluation of the possible maximum and minimum damage awards.

7. Any history of settlement negotiations.

8. A reasonable estimated value of the case.

IN THE CIRCUIT COURT FOR Baltimore City
_____
(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☐ PLAINTIFF ☒ DEFENDANT       CASE NUMBER C-24-CV-24-002631
(Clerk to insert)

**CASE NAME:** Claudia Engelhorn, et al.              vs.      Whiteford, Taylor & Preston, LLP, et al.
_____Plaintiff_____                    _____Defendant_____

**PARTY'S NAME:** The Bolog Defendants              PHONE: _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

If represented by an attorney:

**PARTY'S ATTORNEY'S NAME:** Douglas F. Gansler       PHONE: 202-862-2300

**PARTY'S ATTORNEY'S ADDRESS:** 1919 Pennsylvania Avenue N.W., Washington DC, 20006

**PARTY'S ATTORNEY'S E-MAIL:** douglas.gansler@cwt.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours   10   days

### PLEADING TYPE

**New Case:** ☒ Original      ☐ Administrative Appeal     ☐ Appeal
**Existing Case:** ☐ Post-Judgment     ☐ Amendment
*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☒ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) |
|---|

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☒ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☐ Over $100,000

☐ Medical Bills $ _____    ☐ Wage Loss $ _____    ☐ Property Damages $ _____

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation          ☐ Yes ☐ No          C. Settlement Conference    ☒ Yes ☐ No
B. Arbitration        ☐ Yes ☐ No          D. Neutral Evaluation        ☐ Yes ☐ No

| SPECIAL REQUIREMENTS |
|---|

☐  If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐  If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

| ESTIMATED LENGTH OF TRIAL |
|---|

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☐ More than 3 days of trial time
☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited -** Trial within 7 months of          ☒ **Standard -** Trial within 18 months of
Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

**COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)**

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited - Trial within 7 months of** Defendant's response

☐ **Standard - Trial within 18 months of** Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

**CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)**

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☒ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

**CIRCUIT COURT FOR BALTIMORE COUNTY**

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

February 20, 2025
_____
Date

/s/ Douglas F. Gansler          8912180208
_____
Signature of Attorney / Party          Attorney Number

1919 Pennsylvania Avenue N.W.
_____
Address

Douglas F. Gansler
_____
Printed Name

Washington          DC          20006
_____
City          State          Zip Code

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

### THE BOLOG DEFENDANTS'
### ANSWER TO THE SECOND AMENDED COMPLAINT

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC; and Darnestown Road, Inc., (collectively, the "Bolog Defendants") hereby answer the Second Amended Complaint filed by Plaintiffs Claudia Engelhorn, Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust Dated September 30, 2021, and White Pearl LLC, served on the Bolog Defendants on February 5, 2025.

### GENERAL DENIAL

The Bolog Defendants generally deny all allegations and counts in the Second Amended Complaint.  *See* Maryland Rule 2-323(d).

### PRELIMINARY DEFENSES

1.     This Court lacks jurisdiction over the subject matter of this action.

2.      The Second Amended Complaint fails to state a claim upon which relief can be granted.

3.      The Second Amended Complaint fails to join parties whose joinder is required by Maryland Rule 2-211.

## NEGATIVE DEFENSES

1.      Under controlling Maryland law and other persuasive authority concerning actions involving trusts, Plaintiffs lack the capacity to sue and the Bolog Defendants may not be sued.

2.      Under controlling Maryland law and other persuasive authority concerning actions involving trusts, Plaintiffs lack the authority to sue in a representative capacity and the Bolog Defendants may not be sued in a representative capacity.

3.      The claims are barred by written instruments, including but not limited to instruments that effectuate the gift properly delivered to and accepted by JAREB.

## AFFIRMATIVE DEFENSES

1.      The claims are barred by the doctrine of accord and satisfaction.

2.      The claims are barred by the doctrine of assumption of risk.

3.      The issues raised are precluded by the doctrine of collateral estoppel.

4.      The claims are barred by contributory negligence.

5.      The claims are barred because they arise from impermissible duress.

6.      The claims are barred by the doctrine of estoppel.

7.      The claims are barred by fraud.

8.      The claims are barred due to their illegality

9.      The claims are barred by the doctrine of laches.

10.     The claims are barred by payment.

11.     The claims are barred by release.

12.     The claims are barred by the doctrine of res judicata.

13.     The claims are barred by the applicable statutes of limitations.

14.     The claims are barred by waiver.

15.     Documentary evidence disproves the claims.

16.     The claims fail to plead fraud with particularity.

17.     The Bolog Defendants did not factually, legally, or proximately cause any purported injury to the Plaintiffs.

18.     Any purported damages alleged in the Second Amended Complaint, to the extent any purported damages exist or could be proven, are the result of the Plaintiffs' own conduct or the conduct of persons other than Bolog Defendants, conduct for which the Bolog Defendants are not responsible.

19.     Plaintiffs failed to mitigate the alleged damages.

20.     The claims are barred by the doctrine of unclean hands.

21.     The claims for punitive damages are barred by the Constitutions of the United States and Maryland.

## JURY TRIAL DEMAND

The Bolog Defendants demand trial by jury of all claims and issues so triable.  *See* Maryland Rule 2-331(b).

Dated:     February 20, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated October 11,*
*2021; Darnestown Road, Inc.; and Science Park*
*Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2025, a copy of the foregoing

was served electronically via MDEC upon counsel of record, and remaining parties served via

first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

-5-

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

        Plaintiffs,

     v.

      No. C-24-CV-24-002631

ERIK D. BOLOG, *et al.*,

        Defendants.

## NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 21st day of February, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1. Defendant Whiteford, Taylor & Preston LLP's Supplemental Response to Plaintiff Claudia Engelhorn's Request for Production of Documents and Things.

2. Defendant Whiteford, Taylor & Preston LLP's Supplemental Response to Plaintiff Claudia Engelhorn's First Set of Interrogatories.

Dated: February 21, 2025

Respectfully submitted,

By:  /s/ John J. Connolly
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February, 2025, a copy of the foregoing document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 /s/ John J. Connolly
John J. Connolly

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

**NOTICE OF SERVICE OF DISCOVERY MATERIALS**

Plaintiffs, by and through their undersigned attorneys, hereby certify that on this 21st day of February 2025, that they served via MDEC's electronic filing and service system, Plaintiff White Pearl, LLC's Request for Production of Documents to Whiteford, Taylor & Preston, LLP., on the following:


William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of February, 2025 that a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

3

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

_____/s/ PDG_____
Patrick D. Gardiner, Esq. (AIS# 1506160113)

4

# Exhibit A

**Katie Dold**

| | |
|---|---|
| **From:** | Wes Henderson |
| **Sent:** | Tuesday, December 3, 2024 9:38 AM |
| **To:** | Schrieber, Zack |
| **Cc:** | Katie Dold; Patrick Gardiner; Gansler, Douglas; Howard, J.B. |
| **Subject:** | RE: E. Bolog Discovery |

Dear Zack –

I apologize for the delay in responding to you yesterday.  Patrick and I were in Court a good part of yesterday.  I am fine with the requested extension.

Regards,
Wes



### Wes P. Henderson, Esquire

Henderson Law, LLC

2127 Espey Court, Suite 204
Crofton, MD 21114
Phone: (410) 721-1979
Fax: (410) 721-2258
Email: wph@hendersonlawllc.com
Web: www.HendersonLawLLC.com



**CONFIDENTIALITY NOTICE AND DISCLAIMER**
This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify me immediately that you have received this message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.

**TAX INFORMATION**
Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Schrieber, Zack <Zack.Schrieber@cwt.com>
**Sent:** Monday, December 2, 2024 9:10 PM
**To:** Wes Henderson <wph@hendersonlawllc.com>
**Cc:** Katie Dold <KDold@hendersonlawllc.com>; Patrick Gardiner <patrick@hendersonlawllc.com>; Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** RE: E. Bolog Discovery

Wes,

Please let us know if you consent to the below request.

Best,
Zack

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

---

**From:** Schrieber, Zack
**Sent:** Monday, December 2, 2024 1:16 PM
**To:** 'wph@hendersonlawllc.com' <wph@hendersonlawllc.com>
**Cc:** 'KDold@hendersonlawllc.com' <KDold@hendersonlawllc.com>; 'patrick@hendersonlawllc.com'
<patrick@hendersonlawllc.com>; Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** E. Bolog Discovery

Wes,

Due to the Thanksgiving holiday, we are requesting a two week extension until December 17th to respond to the document requests and interrogatories you served on Mr. Bolog in his individual capacity and as trustee, Science Park, and Darnestown Road. Please let us know if you are amenable to the extension. Given these are discovery requests we do not see a need to notify the Court.

Best,
Zack

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to

ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

E-FILED; Baltimore City Circuit Court
Docket: 3/17/2025 3:10 PM; Submission: 3/17/2025 3:10 PM
Envelope: 20391668

# Exhibit B

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

## DEFENDANT ERIK D. BOLOG'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

In accordance with Rule 2-421 of the Maryland Rules, Defendant Erik D. Bolog ("Mr. Bolog" or the "Defendant"), by and through his undersigned counsel, hereby responds and objects to Plaintiff Claudia Engelhorn's ("Plaintiff" or "Ms. Engelhorn") First Set of Interrogatories to Defendant, (collectively, the "Interrogatories" and each individual interrogatory, an "Interrogatory") including the "Interrogatories," "Definitions," and "Instructions" contained therein, as follows:

## RESERVATION OF RIGHTS

The Defendant's responses and objections (the "Responses and Objections") to the Interrogatories are made without prejudice to the Defendant's right to amend or supplement the Responses and Objections at a later date. Further, the Defendant expressly reserves his right to assert additional responses and objections and none of the Responses and Objections below should be interpreted to waive any such right.

## **GENERAL OBJECTIONS**

The following general objections (the "General Objections") are incorporated into each specific Response and Objection below (the "Specific Responses and Objections") as if they were fully repeated therein. Although certain General Objections are reiterated in Specific Responses and Objections for clarity or emphasis, any failure to reiterate a General Objection in response to any specific Interrogatory does not constitute a waiver of such objection as to such Interrogatory.

1.     The Defendant objects to the Interrogatories on the grounds that until the Court rules on the pending Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court. If appropriate and necessary, the Defendant will supplement this Response following the Court's decision on the Petition to Compel Arbitration and related Motion to Stay Proceedings.

2.     The Defendant has not completed his investigation into the facts pertaining to Plaintiff's Amended Complaint (the "Complaint"), has not completed discovery, and has not completed preparation for trial.  Answers contained herein are based only on such information and documents as are presently available and known to the Defendant.  Anticipated further investigation, discovery, legal research, and analysis may supply additional facts and establish information that may vary from that set forth herein.  The answers set forth herein are given without prejudice to the Defendant's right to introduce evidence of any subsequently discovered facts or circumstances.  The Defendant expressly reserves his right to change or modify any answer as additional facts or circumstances are ascertained, analyses are made, and legal research is conducted.

3.      The Defendant objects to providing responses to the Interrogatories unless and until the Court enters a protective order governing the exchange of confidential discovery material.

4.      The Defendant objects to the Interrogatories to the extent they seek the Defendant to identify "all" or "any" persons or things as overbroad, unduly burdensome, and not proportional to the needs of the case. The Defendant will construe such Interrogatories to seek information known to the Defendant and in accordance with the Maryland Rules of Civil Procedure for the Circuit Court and any applicable Rules or Order of this Court (collectively, the "Rules")

5.      The Defendant objects to the Interrogatories to the extent that they seek to impose requirements or obligations in addition to, or different from, those imposed by the Rules. In responding to each Interrogatory, the Defendant will construe and respond by providing only such information as may be required and proper under the Rules.

6.      The Defendant objects to the Interrogatories to the extent that they seek information that is protected from discovery by the attorney-client privilege, the work-product doctrine, settlement and/or mediation privilege, or any other applicable privilege or doctrine.  Nothing contained in these responses is intended to be, or in any way shall be deemed to be, a waiver of any such available privilege or doctrine. In responding to each Interrogatory, the Defendant will not provide privileged or otherwise protected information. To the extent that any privileged or protected information is produced or otherwise disclosed, the production or disclosure will have been inadvertent and should not be deemed a waiver of any privilege or protection from production.

7.      The Defendant objects to the Interrogatories to the extent that they call for the production of information that contain either trade secrets, confidential commercial, business, financial, proprietary, or competitively sensitive information, or personal identifiable information

(including, but not exclusively, personal email addresses and personal phone numbers). The Defendant's production of such information, if necessary and appropriate, will be made only where permitted under the terms of any protective orders or confidentiality agreements and/or any other applicable law, rule, or court order.

8.      The Defendant objects to the Interrogatories to the extent they seek information that (i) is already within the possession, custody, or control of Plaintiff, (ii) is available from a public source, or (iii) can be obtained through other means that are more convenient, less burdensome, or less expensive.

9.      The Defendant objects to the Interrogatories to the extent they seek information that is confidential, proprietary in nature, or personal in nature.

10.     The Defendant objects to the Interrogatories to the extent that they are compound and exceed the maximum number of interrogatories permitted by Maryland Rule 2-421.

11.     The Defendant objects to the Interrogatories to the extent that the Interrogatories seek information beyond his knowledge.

12.     The Defendant objects to the Interrogatories to the extent they contain any factual assertion or allegations, or purport to describe or characterize any factual assertion or allegation. Any response provided to an Interrogatory and any failure to specifically object to any factual assertion, allegation, description, or characterization, is not an adoption or admission or such factual assertion, allegation, description, or characterization.

13.     The Defendant objects to the Interrogatories to the extent that the Interrogatories purport to require the Defendant to set forth conclusions of law with respect to any issue in this proceeding and/or apply the law to any fact presently known.

14.    The Defendant objects to the Interrogatories to the extent they seek information that can be derived or ascertained from documents in the Defendant's document productions— should any relevant documents be discovered and produced by the Defendant—or the document productions of another party in this case, and the burden of deriving or obtaining the answer is substantially the same for Plaintiff and the Defendant.

15.    The Defendant objects to the Interrogatories to the extent they seek information that constitutes post-judgment discovery in accordance with Rule 2-633 and is therefore, and otherwise, not reasonably calculated to lead to the discovery of admissible evidence, and is a procedurally improper, premature attempt to conduct post-judgment discovery in the absence of any judgment in this proceeding.. *See* Md. Rules 2-633. Under the Rules, "a valid judgment is a precondition to a party's right to take *any* discovery in aid of enforcement under Rule 2-633." *Johnson v. Francis*, 239 Md. App. 530, 537(2018) ("this rule authorizes discovery in aid only of an actual, existing money judgment, not a hypothetical or potential money judgment") *see also Farkas v. Rich Coast Corp.*, 2017 U.S. Dist. LEXIS 212246, *6 (M.D. Pa. Dec. 28, 2017) ("[V]iewed as a request for discovery in aid of executing upon a judgment, the request is both premature and presumptuous. Farkas does not have a judgment against these defendants, and time will tell whether she can obtain one. If she does secure a judgment, then—but only then—would post—judgment discovery into the financial ability of the defendants to pay any judgment be appropriate."); *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) ("At bottom, plaintiff's discovery requests … seek information about defendant's assets and ability to satisfy a potential judgment in the context of a breach of contract and breach of warranty action. This discovery does not seek information and materials that are relevant to any of the claims or defenses at issue in the litigation, nor is it reasonably calculated to lead to the discovery of

admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) . . .  Plaintiff's interrogatories and document requests amount to premature, post-judgment discovery of a judgment debtor, which should be sought consistent with Federal Rule of Civil Procedure 69(a)(2)."); *3600 Mich. Co. v. Infra-Metals Co.*, 2009 U.S. Dist. LEXIS 88181, **7-8 (N.D. Ind. Sep. 24, 2009) ("To the extent that 3600 Michigan requests the information in order to determine whether Infra-Metals is judgment-proof, Rule 26(b)(2) requires disclosure of a defendant's liability insurance coverage, but a defendant's financial condition generally is not a permissible ground for inquiry during the discovery phase. *See generally* 23 Am. Jur. 2d Depositions and Discovery § 38 (May 2009) (discussing that the general practice is 'not [to] permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant . . .'). The Advisory Committee Note to Rule 26(b)(2) states that the required disclosure of insurance information was not intended to extend discovery to 'a defendant's financial status or ability to satisfy a judgment.' *Oppenheimer Fund, Inc.*, 437 U.S. at 351 n.16, 98 S.Ct. at 2389 (referring to the comments made in the Advisory Committee's Notes on 1970 Amendment to Fed. R. Civ. P. 26, 28 U.S.C. App. p. 7777 and observations recorded in 4 J. Moore, Federal Practice P 26.62[1] (2d ed. 1976)). Thus, the court cannot compel Infra-Metals to disclose information for the purpose of ascertaining whether it is judgment-proof. Instead, 3600 Michigan may pursue such information through a post-judgment special proceeding under Federal Rule of Civil Procedure 69(a) if necessary.").The Defendant will not search for or produce any information in response to an Interrogatory seeking post-judgment discovery.

16.    The Defendant objects to the Interrogatories to the extent they seek documents and/or information in connection with expert discovery. Such Interrogatories are premature and will be addressed in connection with a scheduling order of this Court establishing expert discovery.

17.    The Defendant reserves the right to supplement these Responses and Objections following any meet and confers that clarify the types of information sought after by these unintelligible Interrogatories.

18.    The Defendant reserves the right to seek recovery for the cost and expenses associated with deciphering these incomprehensible Interrogatories.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person. (Standard General Interrogatory No. 1.)

### RESPONSE TO INTERROGATORY NO. 1:

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

### INTERROGATORY NO. 2:

Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and, with respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial, summarize the qualifications of the expert, state the terms of the expert's compensation, and attach to your answers any available list of publications written by the expert and any written report made by the expert concerning the expert's findings and opinions. (Standard General Interrogatory No. 2.)

### RESPONSE TO INTERROGATORY NO. 2:

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 3:**

If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them. (Standard General Interrogatory No. 3.)

**RESPONSE TO INTERROGATORY NO. 3:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 4:**

If any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action. (Standard General Interrogatory No. 5.)

**RESPONSE TO INTERROGATORY NO. 4:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 5:**

Identify yourself and state all names by which you have been known, your address, your date of birth, your marital status, and the identity of your spouse.

**RESPONSE TO INTERROGATORY NO. 5:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 6:**

Identify all persons who have given you "statements," as that term is defined in Rule 2-402(f), concerning the action or its subject matter. For each statement, state the date on which it was given and identify the custodian.

**RESPONSE TO INTERROGATORY NO. 6:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 7:**

State the substance of all discussions concerning the occurrence that you or others in your presence had with any party to this case. State when and where each discussion took place and identify all persons who were present.

**RESPONSE TO INTERROGATORY NO. 7:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 8:**

Identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the personal knowledge possessed by each such person.

**RESPONSE TO INTERROGATORY NO. 8:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 9:**

Please describe in detail any and all monetary gifts, payments, or transfers of funds you received from any of the Plaintiffs. Include the amount, date(s), and method of each transaction.

**RESPONSE TO INTERROGATORY NO. 9:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 10:**

Explain the purpose of the monetary gift, payment, or transfer of funds from any of the Plaintiffs to you. Was this gift intended for a specific use or investment?

**RESPONSE TO INTERROGATORY NO. 10:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 11:**

Did you use any of the Plaintiff's monies to invest in a business in which you had a personal interest? If so, please provide the name of the business, the nature of your interest (e.g., ownership, partnership, shareholder), and the amount of the Plaintiff's monies invested.

**RESPONSE TO INTERROGATORY NO. 11:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 12:**

Describe any disclosures made to the Plaintiff regarding your personal interest in the business prior to the investment of the Plaintiff's monies. Include the date(s) and method(s) of disclosure.

**RESPONSE TO INTERROGATORY NO. 12:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 13:**

List and describe all communications, whether written or oral, between you and any Plaintiff regarding any alleged monetary gift and the investment of these funds in the business. Include dates and participants of such communications.

**RESPONSE TO INTERROGATORY NO. 13:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 14:**

Please state the names, ages, and present addresses of your children.

**RESPONSE TO INTERROGATORY NO. 14:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 15:**

Do you contend that any person who is not a party to this action caused or contributed to the Plaintiffs' alleged injuries and damages? If so, identify each such person, state how you contend each such person caused or contributed to the alleged injuries, and state all facts upon which you based your contention.

**RESPONSE TO INTERROGATORY NO. 15:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 16:**

If you contend that the Plaintiffs have failed to mitigate their damages, please identify all facts, proof, or evidence on which you base this contention.

**RESPONSE TO INTERROGATORY NO. 16:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 17:**

Do you dispute any of the factual allegation in the Plaintiff's complaint? If so, please explain.

**RESPONSE TO INTERROGATORY NO. 17:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 18:**

Identify the person or persons answering these Interrogatories or who contributed information used in answering these Interrogatories. If more than one person provided the answers or information, please identify the specific Interrogatories answered by each person.

**RESPONSE TO INTERROGATORY NO. 18:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 19:**

If you contend that Plaintiffs and/or any of their representatives (this is 3 rogs, multiplied by the
subparts) have made any admission against interest, state the substance of the admission, identify
the communication concerning the admission, identify all documents that refer or relate to the
admission, and identify all persons who have personal knowledge of the admission.

**RESPONSE TO INTERROGATORY NO. 19:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 20:**

Did you have any in-person meetings with Plaintiff, Claudia Engelhorn, in October 2021? If so,
please state: (1) where the in-person meeting took place; (2) the purpose of the meeting; and (3)
identify all attendees at such meetings.

**RESPONSE TO INTERROGATORY NO. 20:**

The Defendant objects to this Interrogatory on the grounds set forth in the General

Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will

proceed against the Defendant in this Court.

**INTERROGATORY NO. 21:**

Have you ever been accused of mishandling a client's monies? If so, please identify the client.

**RESPONSE TO INTERROGATORY NO. 21:**

      The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 22:**

Please describe what, if any, relationship you have ever had with Science Park Associates, LLC.

**RESPONSE TO INTERROGATORY NO. 22:**

      The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 23:**

Please state why you never recorded a deed in favor of any of the Plaintiffs in relation to Science Park Associates, LLC.

**RESPONSE TO INTERROGATORY NO. 23:**

      The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether

this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 24:**

Please describe what, if any, relationship you have ever had with Swain Landing LaPlata JC, LLC.

**RESPONSE TO INTERROGATORY NO. 24:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 25:**

Please describe what, if any, relationship you have ever had with Tenacity Investments, LLC.

**RESPONSE TO INTERROGATORY NO. 25:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

**INTERROGATORY NO. 26:**

Please state whether you have received any distributions from the JAREB Irrevocable Trust Agreement dated October 11, 2021

**RESPONSE TO INTERROGATORY NO. 26:**

The Defendant objects to this Interrogatory on the grounds set forth in the General Objections above, and refer specifically to General Objection No. 1, in that until the Court rules

on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court.

Dated:  December 17, 2024

As to objections:

          Respectfully submitted,

          CADWALADER, WICKERSHAM & TAFT LLP

          Respectfully,

          Douglas F. Gansler (Bar Number: 8912180208)
          J.B. Howard (Bar Number: 9106200125)
          Cadwalader, Wickersham & Taft LLP
          1919 Pennsylvania Ave N.W.
          Washington D.C. 20006
          Douglas.Gansler@cwt.com
          Telephone: (202) 862-2300
          j.b.howard@cwt.com

          *Counsel for Defendant Erik D. Bolog*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:

**Counsel of Record Served via Email:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
wph@hendersonlawllc.com; patrick@hendersonlawllc.com
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com; jconnolly@zuckerman.com; kmackinnonmorrow@zuckerman.com
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Erik D. Bolog*

19

E-FILED; Baltimore City Circuit Court
Docket: 3/17/2025 3:10 PM; Submission: 3/17/2025 3:10 PM
Envelope: 20391668

# Exhibit C

# HENDERSON | LAW

December 18, 2024

**VIA EMAIL**
Douglas F. Gansler, Esq.
J.B. Howard, Esq.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006

> Re:   **Engelhorn, et al. v. Whiteford, Taylor & Preston, LLP, et al.**
> **Case No.: C-24-CV-24-002631**

Dear Messrs. Gansler and Howard:

I am writing regarding your clients' recent responses to discovery in the above-referenced matter, in which your clients responded, in pertinent part, as follows:

> *"Until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court."*

As you are aware, the Court has not granted the Motion to Stay Proceedings. Therefore, this case remains active, and the parties are obligated to comply with the applicable rules of discovery. Your clients' responses do not relieve them of their duty to provide full and complete discovery responses in accordance with the Maryland Rules. Additionally, I note that the Answers to Interrogatories your clients provided are not signed under oath, as required by Maryland Rule 2-421(b). This deficiency renders the responses invalid and noncompliant with the rules governing discovery.

Pursuant to Maryland Rules 2-431, 2-432, and 2-433, I am providing this letter as a good faith effort to resolve these issues without Court intervention. I request that you advise me by **Monday, December 23, 2024**, as to whether your clients will be immediately retracting their position and producing substantive discovery responses in accordance with the Maryland Rules. If we do not receive said assurance by the 23rd, then we will have no choice but to file a motion to compel discovery and seek all appropriate remedies. This letter represents a good faith effort to avoid a discovery dispute.

Should you have any questions or wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

/s/ WPH

Wes P. Henderson

WPH/kd

cc: Claudia Engelhorn

E-FILED; Baltimore City Circuit Court
Docket: 3/17/2025 3:10 PM; Submission: 3/17/2025 3:10 PM
Envelope: 20391668

# Exhibit D

# HENDERSON | LAW

February 24, 2025

**VIA EMAIL**
Douglas F. Gansler, Esq.
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006

   **Re:** **Engelhorn, et al. v. Whiteford, Taylor & Preston, LLP, et al.**
     **Case No.:  C-24-CV-24-002631**

Dear Doug:

   As you know, your clients were previously served with written discovery requests in this matter. To date, your clients have only served objections to the discovery requests, as acknowledged in your letter dated December 23, 2024. In your letter of December 23, 2024, you represent that "[t]he Bolog Defendants will, of course, sign and comply with the Maryland Rules for any answered interrogatories if and when appropriate." Moreover, you represented that you "filed a motion for protective order to ensure an orderly resolution of this dispute." After the Court denied said motion for protective order, I requested on February 3, 2025 that your clients produce their supplemental, written discovery responses by February 13, 2025. You did not respond to my email of February 3rd, nor did your clients provide their supplemental responses by February 13, 2025. In light of the absence of a response to my email and your clients' supplemental responses, I am writing to request that your clients produce their supplemental responses. I request that your clients' produce their supplemental responses by **February 27, 2025**.

   It is my preference to avoid discovery disputes. I would like to resolve this apparent dispute without judicial intervention, hence my additional, good faith effort to resolve this matter. This letter represents a good faith effort to avoid a discovery dispute.

       Very cordially yours,

       /s/ WPH

       Wes P. Henderson

WPH/kd

cc: Claudia Engelhorn (via email)

E-FILED; Baltimore City Circuit Court
Docket: 3/17/2025 3:10 PM; Submission: 3/17/2025 3:10 PM
Envelope: 20391668

# Exhibit E

## Katie Dold

| | |
|---|---|
| **From:** | Schrieber, Zack <Zack.Schrieber@cwt.com> |
| **Sent:** | Thursday, February 27, 2025 11:33 PM |
| **To:** | Wes Henderson; Patrick Gardiner |
| **Cc:** | Katie Dold; Gansler, Douglas; Howard, J.B. |
| **Subject:** | C-24-CV-24-002631: Claudia Engelhorn, et al.  v.  Erik Bolog, et al |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Counsel,

I write in response to your February 24, 2025 letter requesting that we provide our response to your discovery requests by today, February 27, 2025. Given the volume and breadth of those requests, we will need some additional time to provide our responses.  We therefore intend to serve them by the end of next week, Friday, March 7, 2025.

Best,

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

E-FILED; Baltimore City Circuit Court
Docket: 3/17/2025 3:10 PM; Submission: 3/17/2025 3:10 PM
Envelope: 20391668

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

### PLAINTIFF CLAUDIA ENGELHORN'S
### MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff, Claudia Engelhorn, by and through her undersigned counsel, respectfully moves

this Honorable Court for an Order compelling Defendants, Erik Bolog, in his individual capacity

and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Science Park

Associates, LLC, and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog

Defendants"), to respond to Plaintiffs' written discovery requests. Despite this Honorable Court's

denial of Defendants' motion for a protective order on January 31, 2025, Defendants have failed

to provide responses to Plaintiff Engelhorn's discovery requests in violation of their discovery

obligations.

### BACKGROUND

Plaintiffs commenced this action on September 10, 2024, by filing a Complaint and

Demand for Jury Trial against various Defendants, including, but not limited to, the Bolog

Defendants. Plaintiff Claudia Engelhorn served Interrogatories and Requests for Production of

Documents on Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust on

September 23, 2024. Plaintiff Claudia Engelhorn served Defendants Darnestown Road, Inc. and

Science Park Associates with Interrogatories and Requests for Production of Documents on October 10, 2024.  Zachary Schrieber, Esquire, one of the attorneys for the Bolog Defendants, wrote an email to undersigned counsel on December 2, 2024, wherein he stated: "***Due to the Thanksgiving holiday***, we are requesting a two week extension until December 17th to ***respond*** to the document requests and interrogatories you served on Mr. Bolog in his individual capacity and as trustee, Science Park, and Darnestown Road."   *See*  Exhibit A. (Emphasis Added).  Undersigned counsel advised Mr. Schrieber on December 3, 2024, that he was "fine with the requested extension." *Id*.  Defendants Bolog, Science Park, and Darnestown collectively served "***Responses*** and Objections" to Plaintiff Engelhorn's discovery requests on December 17, 2024.  *See* Exhibit B (Defendant Bolog's Responses and Objections to Plaintiff's First Set of Interrogatories).[1]  The Bolog Defendants' responses were effectively "that until the Court rules on the Petition to Compel Arbitration and related Motion to Stay Proceedings, it is unclear whether this action will be stayed indefinitely, and it would be speculative to assume that this action will proceed against the Defendant in this Court."  *Id*.

On December 18, 2024, undersigned counsel requested that the Bolog Defendants advise him as to whether the Bolog Defendants would reconsider their decision and answer the discovery.  Undersigned counsel requested that this decision be communicated in writing by December 23, 2024, not that the actual written discovery responses be produced by the 23rd, as has been represented by the Bolog Defendants (*see* Exhibit C).  On December 23, 2024, the Bolog Defendant filed a motion for a protective order, seeking to avoid responding to Plaintiff Engelhorn's discovery requests.  On January 31, 2025, this Honorable Court entered an Order

---

[1] All of the Bolog Defendants asserted the same response to Interrogatories.

denying the Bolog Defendants' Motion for Protective Order. Despite this Honorable Court's ruling, the Bolog Defendants have failed to provide any responses to Plaintiffs' discovery requests as of the date of this motion. On February 3, 2025, undersigned counsel wrote to counsel for the Bolog Defendants and requested the overdue discovery responses by February 13, 2025. Undersigned counsel did not receive a response to that request. On February 24, 2025, undersigned counsel sent a letter to counsel for the Bolog Defendants requesting his clients' overdue discovery responses by February 27, 2025. *See* Exhibit D. On February 27, 2025, the Bolog Defendants' counsel wrote that he intended to serve his clients' written discovery responses by March 7, 2025. *See* Exhibit E. As of the date of this motion, the Bolog Defendants have not served their written discovery responses. Undersigned counsel has made good faith efforts to resolve this matter without judicial intervention, including sending correspondence to the Bolog Defendant's counsel requesting compliance with this Honorable Court's Order and the applicable discovery rules. However, the Bolog Defendants have not provided the requested discovery.

## **ARGUMENT**

Under Maryland Rules 2-432 and 2-433 of the Maryland Rules, a party may move to compel discovery when another party fails to respond to interrogatories or requests for production. The Bolog Defendants have failed to respond to Plaintiff Engelhorn's interrogatories and request for production of documents, despite this Honorable Court's denial of their motion for a protective order and good faith efforts by undersigned counsel, thereby committing a clear violation of their discovery obligations. This Honorable Court has already determined that the Bolog Defendants are required to respond to Plaintiff Engelhorn's discovery requests by denying their Motion for Protective Order, yet the Bolog Defendants continue to fail to do so. The Bolog Defendants'

continued refusal to respond prejudices Plaintiff Engelhorn by depriving her of information

necessary to prepare her case.

WHEREFORE, Plaintiff Claudia Engelhorn respectfully requests that this Honorable

Court grant this motion, compel the Bolog Defendants to provide full and complete responses to

Plaintiff Claudia Engelhorn's written discovery requests within 10 days of this Honorable Court's

Order, and that it further grant such other and further relief as this Honorable Court deems just and

proper.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ WPH_____
Wes P. Henderson, Esq.  (AIS# 0212180062)
Patrick D. Gardiner, Esq.(AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## CERTIFICATION OF GOOD FAITH EFFORT

Undersigned counsel certifies that he has made the good faith efforts identified herein to

obtain the requested discovery without judicial intervention, but those efforts have been

unsuccessful.

_____/s/ WPH_____
Wes P. Henderson, Esq. (AIS# 0212180062)

4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17<sup>th</sup> day of March, 2025 that a copy of the foregoing

was sent via MDEC to the following:

> William J. Murphy, Esq.
> John J. Connolly, Esq.
> Kirk E. MacKinnon Morrow
> Zuckerman Spaeder, LLP
> 100 East Pratt Street, Suite 2440
> Baltimore, MD 21202
> wmurphy@zuckerman.com
> jconnolly@zuckerman.com
> kmackinnonmorrow@zuckerman.com
>
> *Counsel for Defendant Whiteford, Taylor & Preston, LLP*
>
> Douglas F. Gansler, Esq.
> John B. Howard, Jr., Esq.
> Cadwalader, Wickersham & Taft, LLP
> 1919 Pennsylvania Avenue, N.W.
> Washington, DC 20006
> Douglas.gansler@cwt.com
> J.B.Howard@cwt.com
>
> *Counsel for Defendants Erik D. Bolog, Individually,
> and as Trustee of The JAREB Irrevocable Trust
> Agreement dated October 11, 2021,
> Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

> Michael Postal
> 1801 16<sup>th</sup> Street NW, Apt 608
> Washington, DC 20009
>
> *Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

_____
         /s/ WPH
Wes P. Henderson, Esq. (AIS# 0212180062)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

**PLAINTIFFS' LINE REGARDING DEFENDANT WHITEFORD, TAYLOR &
PRESTON LLP'S MOTION FOR COMMISSION TO ISSUE SUBPOENA TO OUT-OF-
STATE WITNESS**

Plaintiffs, by and through their undersigned attorneys, hereby file this Line Regarding

Defendant Whiteford, Taylor & Preston LLP's Motion for Commission to Issue Subpoena to Out-

of-State Witness, and respectfully state as follows:

On or about February 18, 2025, Defendant Whiteford, Taylor & Preston LLP filed a Motion

for Commission to Issue Subpoena to Out-of-State Witness, Sara K. Mayo.

Plaintiffs do not oppose the relief requested in the aforementioned Motion.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)_
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th  day of March, 2025 that a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

      /s/ PDG (AIS# 1506160113)
Patrick D. Gardiner, Esq. (AIS# 1506160113)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| CLAUDIA ENGELHORN, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | Case No.: C-24-CV-24-002631 |
| | ) | |
| | ) | |
| WHITEFORD, TAYLOR & PRESTON, LLP et al., | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| ERIK D. BOLOG | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DARNESTOWN ROAD, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SCIENCE PARK ASSOCIATES, LLC | ) | |
| | ) | |
| *Counterclaim Plaintiffs* | ) | |
| v. | ) | |
| | ) | |
| CLAUDIA ENGELHORN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CLAUDIA ENGELHORN, AS TRUSTEE OF THE WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021 | ) | |
| | ) | |
| *Counterclaim Defendants* | ) | |

## BOLOG DEFENDANTS' COUNTERCLAIMS

Counterclaim Plaintiffs Erik D. Bolog ("Mr. Bolog"), Science Park Associates, LLC, and Darnestown Road, Inc. (collectively, the "Counterclaim Plaintiffs"), bring these counterclaims against Counterclaim Defendants Claudia Engelhorn and Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("Trustee" and collectively with Ms. Engelhorn, the "Counterclaim Defendants") and allege the following:

## NATURE OF THE ACTION

1.      These are counterclaims that Mr. Bolog never imagined he would be forced to bring against one-time friend, business colleague and former client, Ms. Claudia Engelhorn, individually and as the Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("WWT").

2.      Mr. Bolog first became acquainted with Ms. Engelhorn when he successfully represented her in a massive cross-border litigation, during the height of the global COVID pandemic, traveling back and forth from the United States to Europe, with threats on his life because of his involvement in a very public legal battle. It would not be an understatement to say that Mr. Bolog risked his health, well-being, and physical safety in relation to his representation of Ms. Engelhorn.  *See* **Exhibit C** at 1.

3.      Ms. Engelhorn is the daughter of Curt Engelhorn, who, according to Ms. Engelhorn, was at one time the self-proclaimed wealthiest man in Germany, with an estimated $10 billion value of his estate and affiliated entities at the time of his death.  Approximately 25 years before his death, Mr. Engelhorn funded the Manheim Trust, created for the benefit of Ms. Engelhorn and her children in the amount of $500 million, to be managed as a family office. Ms. Engelhorn has served as the life trustee of the Manheim Trust, which paid her a salary of

approximately $1,000,000 per year  and loaned her approximately $30,000,000 to fund her lifestyle and various litigations.

4.      Mr. Engelhorn, who became a resident of Gstaad, Switzerland, towards the end of his life, and later died in Gstaad, left his entire estate to his (fourth) wife. Unsatisfied with the $500 million her father gifted to the Manheim Trust (for the benefit of her and her three children), Ms. Engelhorn chose to pursue a forced heirship claim to her statutory entitlement from her father's estate under the laws of Switzerland (the "Switzerland Litigation").

5.      As a result of his dogged and tireless efforts representing Ms. Engelhorn in the Switzerland Litigation, Mr. Bolog obtained a $130 million, tax-free settlement, on behalf of Ms. Engelhorn.

6.      After paying 100% of her legal fees and expenses to Mr. Bolog's then-law firm, Whiteford Taylor & Preston, LLP ("WTP"), Ms. Engelhorn decided, on her own, to fund an irrevocable trust known as the JAREB Irrevocable Trust Dated October 11, 2021 ("JAREB Irrevocable Trust") for the benefit  of Mr. Bolog and his children, in the amount of $10,000,000 (the "Gift"). *See* **Exhibit C** at 1-2.

7.      From the date of the Gift to the JAREB Irrevocable Trust through the early summer of 2022, Ms. Engelhorn continued her professional relationship and personal friendship with Mr. Bolog.  For the 11 months after she made the Gift, Ms. Engelhorn, Mr. Bolog, and others, travelled domestically and internationally for business and pleasure to Spain, Ireland, Hawaii, the Bahamas, Nashville, New York, Charleston, South Carolina, Virginia, West Virginia, and San Francisco, and spent countless days together—in business meetings, on family outings, and at celebrations, including spending New Year's Eve 2021, together with Mr. Bolog's significant other.

8.      Additionally, after settlement of the Switzerland Litigation, Ms. Engelhorn insisted that Mr. Bolog act as her co-trustee for a trust known as the Whitewater Revocable Trust, dated September 30, 2021—*i.e.*, the WWT—which was funded with an initial $100 million from the settlement proceeds Mr. Bolog obtained for her in the Switzerland Litigation.

9.      Mr. Bolog, with the full knowledge and approval of his then-law firm Whiteford Taylor & Preston, agreed to serve as a co-trustee of the WWT.

10.     Then, on or around July 6, 2022, after Ms. Engelhorn and Mr. Bolog had had a falling out because Mr. Bolog had admonished her after she made a racially hateful statement to an African-American family at a restaurant—telling the family that it was nice that they were allowed to eat in restaurants—and after Mr. Bolog's significant other, who was also had become good friends with Ms. Engelhorn, counseled Ms. Engelhorn against terminating her relationship with her daughter because her daughter was involved in a same-sex relationship, a relationship that Ms. Engelhorn believed would result in her daughter going to "hell," and approximately nine months after Ms. Engelhorn made the irrevocable Gift, including voluntarily, knowingly, and intentionally transferring to the JAREB Irrevocable Trust the $10 million from her Bank of America Bank personal bank account, constituting the Gift, which in October 2021 was received and accepted by the JAREB Irrevocable Trust, Ms. Engelhorn sent an email, attempting to revoke the irrevocable Gift.  A copy of the email is attached hereto as **Exhibit D**.[1]  This email stated that she made the Gift when she was intoxicated and that Mr. Bolog had transferred the money from Ms. Engelhorn's personal bank account to the JAREB Irrevocable Trust.   Neither of these assertions were true.  Ms. Engelhorn was not intoxicated at the time that she, and she alone, executed the Notice of Gift, which was notarized, nor was she intoxicated days later when she, and

---

[1] The undersigned have implemented certain limited redactions to **Exhibit D** to protect personally identifiable information, including banking information and personal email addresses.

she alone, initiated and authorized the $10 million Gift to the JAREB Irrevocable Trust in a verified

phone call with Bank of America (satisfying all of Bank of America's security protocols). Mr.

Bolog had no involvement with the transfer by Ms. Engelhorn of the Gift.

11.    The JAREB Irrevocable Trust, through counsel, responded to the email,

advising Ms. Engelhorn that it would not allow her to revoke her irrevocable Gift.

12.    Then, approximately a year later, during the summer of 2023, at the

invitation of Ms. Engelhorn's new attorney Anthony Williams, a partner at the international law

firm, Dentons, Mr. Bolog and his attorney travelled to New York City to discuss the Gift. At that

meeting Mr. Williams stated a new version of why Ms. Engelhorn wished to revoke the irrevocable

Gift, stating that she was "on the spectrum" and not very smart. Then, shortly after he was advised

of the actual facts concerning the transfer—more specifically that Ms. Engelhorn transferred the

funds from her personal bank account at Bank of America, with no involvement by Mr. Bolog and

that the Notice of Gift was notarized—Mr. Williams offered to resolve the matter by splitting the

$10 million Gift, requesting that Mr. Bolog return $5 million. Mr. Williams further offered that,

if that compromise was acceptable, he would have Ms. Engelhorn file a gift tax return in the

amount of $5 million and had further advised that Ms. Engelhorn had not yet filed a gift tax return

for the $10 million Gift as a result of his advice. Of course, if Ms. Engelhorn did not know that

she had made the Gift, she would have never been considering the need to file a gift tax return.

This suggested resolution by Mr. Williams was rejected.

13.    Frustrated by the JAREB Irrevocable Trust's unwillingness to allow Ms.

Engelhorn to revoke the irrevocable Gift, Ms. Engelhorn then embarked on a scorched-earth

mission to destroy Mr. Bolog's career and his financial well-being. She began this by defaming

and slandering Mr. Bolog to clients and friends of Mr. Bolog.

14.     Then, on or around July 11, 2024, new attorneys for Ms. Engelhorn sent a letter to WTP, a third-party, defaming Mr. Bolog and impugning his capacity as an attorney, his honesty, and his commitment to his ethical obligations.  In this letter, Ms. Engelhorn, through her agent Wes Henderson, defamed Mr. Bolog by stating the following:

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added).

15.     Then, 35 months after making the Gift, and almost two years after Ms. Engelhorn and Mr. Bolog had a falling out, Ms. Engelhorn, in the above-captioned action, accused Mr. Bolog of inappropriate and unethical conduct in obtaining the very Gift she insisted on making for the benefit of Mr. Bolog and his family.

16.     Mr. Bolog has now been forced to bring these counterclaims to seek redress for wrongs and reputational damage he has suffered and continues to suffer at the hands of Ms. Engelhorn.

## JURISDICTION AND VENUE

17.     Jurisdiction over this Counterclaim is proper with this Court under Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(6); as well as Md. Code Ann., Est. & Trusts § 14.5-202.

18.     This Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

19.     Jurisdiction is also proper with this Court for the adjudication of counterclaims.

6

20.     Venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8).

21.     Venue is proper with this Court for the adjudication of counterclaims.

## PARTIES

22.     Counterclaim Plaintiff Erik D. Bolog whose principal place of business is Washington, DC is an individual. Mr. Bolog has served, and continues to serve, as trustee of the JAREB Irrevocable Trust since October 11, 2021.

23.     Counterclaim Plaintiff Science Park Associates, LLC is a limited liability company with its principal place of business in the State of Maryland.

24.     Counterclaim Plaintiff Darnestown Road, Inc. is a corporation with its principal place of business in the State of Maryland.

25.     Counterclaim Defendant Claudia Engelhorn is an individual and resides in the State of Tennessee.

26.     Counterclaim Defendant Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended.

## FACTUAL ALLEGATIONS

### A.     Defamation

27.     On or around July 1, 2024, Wes Henderson, of the law firm Henderson Law LLC, and acting as an agent of Ms. Engelhorn, sent a letter to WTP, defaming Mr. Bolog (the "Defamatory Letter," attached hereto as **Exhibit A**).

28.     The Defamatory Letter impugned Mr. Bolog's capacity as an attorney, his honesty, and his commitment to his ethical obligations.

29.     For example, the Defamatory Letter contained the following libelous and defamatory statements:

7

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added);

30.     These statements constitute defamation *per se*.

**B.     Whitewater Trust Agreement**

31.     Mr. Bolog, at the insistence of Ms. Engelhorn, served as a co-trustee of the Whitewater Revocable Trust (attached hereto as **Exhibit B**) from its inception until November 3, 2022.  During this time Mr. Bolog, as Trustee had all of the authority bestowed upon him by the Whitewater Revocable Trust.

32.     Under all relevant times herein, Mr. Bolog was the co-trustee of the Whitewater Revocable Trust.

33.     The Whitewater Revocable Trust failed to pay Mr. Bolog a reasonable trustee fee for his services as its trustee, overseeing $100 Million of assets.

34.     Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust.  Pursuant to Virginia law, which governs the Whitewater Revocable Trust, Mr. Bolog is entitled to be paid a reasonable trustee fee for his services for the 13 months he served as the co-trustee.

35.     Under Section 9 of the Whitewater Revocable Trust, Mr. Bolog, as a co-trustee, is indemnified by the Whitewater Revocable Trust for the cost of defending all forms of litigation relating to any actions against him as Trustee of the Whitewater Revocable Trust.  Additionally, pursuant to Section 9 of the Whitewater Revocable Trust, all legal fees and costs incurred by Mr. Bolog for any claims relating to his actions as Trustee of the Whitewater Revocable Trust are to be immediately paid by the Whitewater Revocable Trust.

36.     To date, the Whitewater Revocable Trust has not paid Mr. Bolog's legal fees and costs relating to his services on behalf of the Whitewater Revocable Trust.

37.     On or around March 2022, with Ms. Engelhorn's full knowledge and consent, the Whitewater Revocable Trust purchased a loan and security interest from a regional bank relating to an entity, Science Park Associates, LLC, for approximately $3,352,650 (the "Science Park Investment").  This loan was secured by a deed of trust on an office building located at 9001 Edmonston Lane, Greenbelt, Maryland (the "Greenbelt Property").

38.     Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC overhearing Mr. Bolog discussing the opportunity to purchase the loan documents with another investor, and thereafter, insisting on the Whitewater Revocable Trust making the investment.

39.     The Greenbelt Property was shortly thereafter sold by Science Park Associates, LLC and the Whitewater Revocable Trust was repaid all principal, interest and costs. This was an opportunistic investment and proved very profitable for Ms. Engelhorn and the Whitewater Revocable Trust (Ms. Engelhorn is the sole beneficiary of the Whitewater Revocable Trust).

40.     Mr. Bolog, in his capacity as the co-Trustee of the Whitewater Revocable Trust was completely authorized (without Ms. Engelhorn's consent) to make the Science Park Investment on behalf of the Whitewater Revocable Trust.  However, Mr. Bolog fully informed his co-Trustee, Ms. Engelhorn, about the investment and Ms. Engelhorn, after being fully apprised of any and all conflicts of interest relating to the investment, insisted and approved of the Whitewater Revocable Trust investment and the purchase of the loan and security instruments.

41.     At the time of the sale of the Greenbelt Property, the Whitewater Revocable Trust was represented by Dentons, a large international law firm, that provided the payoff

calculation to the Whitewater Revocable Trust and accepted, without any objection or complaint, the total amount due pursuant to the loan documents it purchased relating to the Greenbelt Property, thereby profiting by approximately $330,000.00.

42.    Similarly, the Whitewater Revocable Trust, with the full knowledge and consent of both Whitewater Revocable Trust Trustees, Ms. Engelhorn and Mr. Bolog, made a $350,000 loan to Darnestown Road, Inc., relating to a 100,000 square foot operating shopping center located in Richmond, Virginia (the "Darnestown Road Loan").  Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC, overhearing Mr. Bolog discussing the loan for the property with another lender, and thereafter, insisting on the Whitewater Revocable Trust making the loan.  Ms. Engelhorn was fully aware of and consented to a waiver of the conflicts of interest that existed as a result of Mr. Bolog's and WTP's decades long representation of the ownership entity of the Richmond Shopping Center and Darnestown Road, Inc.  The Darnestown Road Loan is not yet mature.

43.    Ms. Engelhorn, who is a sophisticated business person, in charge of more than $630 million of assets (over $500 million of her family office assets and $130 million of the Whitewater Revocable Trust assets), requested, after full disclosure of all potential conflicts, that she be able to make the Darnestown Road Loan to profit from the interest.

44.    Complete loan documents and conflict waivers were fully discussed and signed.

45.    The Darnestown Road loan is not due until December 31, 2025.

46.    At the time the Science Park Investment and the Darnestown Road Loan was made, interest rates on bank accounts were paying approximately 1%.  Ms. Engelhorn, as Trustee, wanted a higher yield on the Whitewater Revocable Trust assets and was fully motivated

to take advantage of business opportunities which she, on behalf of the Whitewater Revocable Trust, learned about from Mr. Bolog.

47.    The Darnestown Road Loan was at an interest rate of 8%.

48.    The Science Park Investment was at an interest rate of 9%.

49.    Upon information and belief, and based upon a letter sent by Ms. Engelhorn's attorneys at Dentons to defendant Michael Postal, a certain investment made in Swain Landing LaPlata JC LLC ("Swain Landing") is owned by the Whitewater Revocable Trust.

50.    As alleged in the Second Amended Complaint, Ms. Engelhorn sold a home she owned in Tennessee and the proceeds were transferred to Swain Landing for a real estate investment.

51.    Mr. Bolog had no involvement with the Swain Landing investment other than at Ms. Engelhorn's directive, communicated with developer of the investment to ascertain the investment amount.

52.    However, the Second Amended Complaint alleges that Mr. Bolog, who was the Trustee of WWT, should have taken certain action(s) relating to the investment.  As a result of the fact that WWT purportedly owns the Swain Landing Investment, and Mr. Bolog was the co-trustee of the WWT at the time of the investment, the WWT must indemnify Mr. Bolog for any purported liability and immediately pay all of his legal fees and costs associated with his defense of the Second Amended Complaint.

**C.**    **Ms. Engelhorn Abuses the Court Process by Filing this Action**

53.    Plaintiffs initiated this action on September 10, 2024.

54.    On February 5, 2025, Ms. Engelhorn along with Plaintiffs filed the Second Amended Complaint.

55.    The Second Amended Complaint contains numerous allegations that are either intentionally deceptive to the Court or demonstrably false on their face, and reveal the true ulterior motive behind Ms. Engelhorn's filing, namely to assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm and of attempting to destroy his professional reputation and ability to practice law; her sole motive for attempting to revoke the irrevocable Gift was to harm Mr. Bolog, not to use the judicial process for a proper purpose or to recover the funds.

56.    Upon information and belief, Ms. Engelhorn brought the Second Amended Complaint expecting that Mr. Bolog would submit to the pressure of defending against a multi-million dollar action and return the Gift (which he could not, anyway, because it belongs to the JAREB Irrevocable Trust) to preserve his reputation in the face of baseless and unsubstantiated claims.

57.    For example, paragraphs 35-37 of the Second Amended Complaint address the transfer of the $10M Gift from Ms. Engelhorn to the JAREB Irrevocable Trust. But the Second Amended Complaint deceptively and intentionally avoids that it was Ms. Engelhorn who actually initiated and completed the transfer of the Gift and instead implies that Mr. Bolog transferred the Gift.

58.    The only way for Ms. Engelhorn to have effectuated the Gift was for her, herself, to initiate the transfer through a direct phone call with Bank of America (after following all of its security protocols) and through the use of a personal security confirmation code sent to her and read back to the bank. Her instructions to make the Gift to the Bank of America satisfied all of the security protocols and Mr. Engelhorn, and only Ms. Engelhorn, was able to and did start and complete the Gift by authorizing Bank of America to transfer $10 Million from her personal

account to the JAREB Irrevocable Trust account, all of which was done without any involvement from Mr. Bolog.

59.    In another example, paragraph 36 of the Second Amended Complaint describes Mr. Bolog directing Ms. Engelhorn to sign documents upside down. But, of course, Ms. Engelhorn's conclusory allegations ignore that Ms. Engelhorn's signature on the documents appear right-side up.  But in reality, Ms. Engelhorn knows that none of the documents that she signed, which were notarized, caused the Gift to occur, she, and only she had the authority to direct the Gift to be made and if she didn't know exactly what she was doing, as she eloquently articulated in the Notice of Gift, she would have simply not have directed Bank of America to make the irrevocable Gift during the call that was required to transfer the $10 Million.

60.    Indeed, the Second Amended Complaint baselessly and conclusory accuses Mr. Bolog of tricking Ms. Engelhorn, not explaining documents to her, deceiving her into thinking she was signing routine documents, and not providing her an opportunity to review documents before pressuring her into signing them.

61.    Ms. Engelhorn is a centi-millionaire who doesn't seriously need, nor care about the Gift, but instead, her filing of this action is solely to seek vengeance against Mr. Bolog and seeks to punish him following the end of their friendship and thereafter suffering from Giftor's remorse.

## COUNT I
## (DEFAMATION)
(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn)

62.    Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count I.

63.    Ms. Engelhorn has made false and defamatory statements to and through third parties, including, but not limited, to lawyers at WTP.

64.     These libelous defamatory statements by Ms. Engelhorn through her attorneys at Henderson Law LLC were made on or around July 1, 2024, within the past year of the date of these counterclaims.

65.     None of the defamatory statements are true and Ms. Engelhorn and her agents knew that the statements were untrue at the time the statements were made and sent to WTP.

66.     The Defamatory Letter was sent to a third party, WTP.

67.     Ms. Engelhorn's defamatory statements about Mr. Bolog were in furtherance of her objective to cast heinous aspersions on Mr. Bolog in an effort to inflict the maximum amount of economic and reputational damage against Mr. Bolog.

68.     Because Ms. Engelhorn's statements accuse Mr. Bolog of violating the law, and accuse him of a lack of integrity in his practice of law, his honesty, and his commitment to ethical obligations, and her statement that he has done this to other clients, Ms. Engelhorn's false statements constitute defamation *per se*.

69.     In making these defamatory statements, Ms. Engelhorn, injured Mr. Bolog's professional reputation, and caused Mr. Bolog personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

70.     Additionally, as a result of her defamatory statements, Mr. Bolog has suffered assumed and actual damages including, but not limited to, loss and injury to his business, harm to his name and reputation, out-of-pocket losses incurred in defending against the Second Amended Complaint, personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

71.     Ms. Engelhorn's knowingly or recklessly false statements were a substantial factor in causing the above stated injuries to Mr. Bolog.

72.     As a direct result of Ms. Englehorn's defamatory statements, Mr. Bolog suffered injury to his professional reputation and damages in excess of $20 Million.

## COUNT II
## (INDEMNIFICATION)

(Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science Park Associates LLC against Counterclaim Defendant Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust dated September 30, 2021)

73.     Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC  incorporate each of the allegations and preceding paragraphs as set forth above into this Count II.

74.     The Whitewater Revocable Trust indemnifies in two separate respects.

75.     *First*, it provides for immediate payment of litigation fees and costs.

76.     *Second*, the Whitewater Revocable Trust indemnifies Mr. Bolog against loss.

77.     Section 9 of the Whitewater Revocable Trust provides that "[t]he defense of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust."

78.     The "litigation" to which this sentence in Section 9 refers encompasses any civil litigation.

79.     The obligation of the Whitewater Revocable Trust to pay litigation fees and costs is unconditional and immediate—there is no language limiting the circumstances under which the Whitewater Revocable Trust must pay or an opportunity to defer such payments to some future time.

80.     Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant to the following claims asserted by Plaintiffs in the Second Amended Complaint that relate to

investments using funds from the Whitewater Revocable Trust in Science Park Associates, LLP, Darnestown Road, Inc., and Swain Landing (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown Road, Inc. and Swain Landing LaPlata JC, LLC, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing Swain Landing LaPlata JC, LLC); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park Associates, LLC).

81.    The Whitewater Investment Claims all concern investments that Mr. Bolog, as Trustee of the Whitewater Revocable Trust, made—with full authority under the Whitewater Revocable Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using funds of the Whitewater Revocable Trust.

82.    In addition to the immediate obligation to pay all defense costs (legal fees and costs), the Whitewater Trust is obligated to indemnify Mr. Bolog as trustee against damages arising from "any act or omission" under Section 5 of the Whitewater Revocable Trust.

83.    Science Park Associates, LLP, Darnestown Road, LLC., and Swain Landing are third-party beneficiaries under the Whitewater Revocable Trust and are also indemnified under Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

84.    Accordingly, Mr. Bolog is indemnified for defending all of the Whitewater Investment Claims as provided in Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

## COUNT III
## (ABUSE OF PROCESS)
(Counterclaim Plaintiffs Mr. Erik Bolog as an individual and trustee against Counterclaim
Defendant Claudia Engelhorn)

85.    Counterclaim Plaintiff Erik Bolog as an individual and as trustee incorporate each of the allegations and preceding paragraphs as set forth above into this Count III.

86.    Ms. Engelhorn has willfully and maliciously used the court process for an illegal purpose: to punish and oppress Mr. Bolog and seek vengeance on him following the end of their friendship.

87.    After Mr. Bolog refused to return the irrevocable Gift (which he could not, regardless), Ms. Engelhorn initiated this action.

88.    Ms. Engelhorn either knew, or acted with intentional and/or reckless disregard for the truth, that the allegations in the Second Amended Complaint were false or deceptive.

89.    Ms. Engelhorn has used the court process to inflict reputational harm on Mr. Bolog and coerce him into returning the Gift.

90.    Because of Ms. Engelhorn's actions, Mr. Bolog has suffered reputational damage, loss and injury to his business, harm to his name and reputation, out-of-pocket losses incurred in defending against the Second Amended Complaint, personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

91.    Mr. Bolog is also entitled to punitive damages as a result of Ms. Engelhorn's willful and malicious abuse of process.

## COUNT IV
## (BREACH OF CONTRACT)
(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn, as
Trustee of the Whitewater Revocable Trust dated September 30, 2021)

92.     Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count IV.

93.     Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust.

94.     In his role as trustee of the Whitewater Revocable Trust, Mr. Bolog performed valuable services for the Whitewater Revocable Trust from its inception through November 2022, serving as the trustee of a trust with over $130 Million in assets.

95.     Mr. Bolog has not received compensation for serving as the trustee for the Whitewate Trust for 13 months, and pursuant to Virginia law, which governs Whitewater Revocable Trust, Mr. Bolog is owed reasonable compensation for performing these services, and hereby demands payment in an amount of at least $500,000.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Mr. Bolog, individually and as trustee, Science Park Associates, LLC, and Darnestown Road, Inc., ask the Court to enter judgment in their respective favor against all Counterclaim Defendants as follows:

   a) Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the defamatory statements identified above in Count I;

   b) Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the abuse of process identified above in Count III;

   c) Award Erik Bolog compensatory damages, together with pre- and post-judgment interest in an amount to be determined at trial on Counts I and III;

   d) Award Erik Bolog punitive damages in an amount to be determined at trial on Counts I and III;

   e) Enter judgment on Count II that Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC are indemnified under the Whitewater Revocable Trust for the costs and disbursements of defending the Whitewater Investment Claims;

f)  Award Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC the costs and disbursements of defending this action, including reasonable attorneys' fees and court costs, in an amount to be determined at trial under Count II;

g)  Award Erik Bolog a minimum of $500,000 on Count IV for his services as trustee of the Whitewater Revocable Trust, during which time neither Ms. Engelhorn nor the Whitewater Revocable Trust provided any compensation to Mr. Erik Bolog; and

h)  Grant Counterclaim Plaintiffs any such other, further, and different relief that the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

96.    Counterclaim Plaintiffs demand a jury trial for all claims and issues in this

Counterclaim that are triable before a jury.

Dated:      March 24, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this March 24th, 2025, a copy of the foregoing was served

electronically via MDEC upon counsel of record, and remaining parties served via first class

mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

# EXHIBIT A

# HENDERSON | LAW

**WITHOUT PREJUDICE – FOR SETTLEMENT PURPOSES ONLY**

July 1, 2024

<u>**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**</u>
William J. Murphy, Esquire
Zuckerman Spaeder
100 East Pratt Street
Suite 2440
Baltimore, Maryland 21202-1031

> **Re:   Claudia Engelhorn, Individually, and as Trustee of the Whitewater
> Revocable Trust Dated September 30, 2021**

Dear Mr. Murphy:

My firm has been retained to represent Claudia Engelhorn, Individually ("Ms. Engelhorn") and as Trustee of the Whitewater Revocable Trust Dated September 30, 2021, as amended ("Trust").

As you know, Erik Bolog, Esquire and the law firm of Whiteford, Taylor & Preston, LLP represented Ms. Engelhorn with respect to an estate matter. At or near the conclusion of that matter, Mr. Bolog defrauded Ms. Engelhorn into signing a "Notice of Gift" wherein Ms. Engelhorn conveyed $10M of her monies to the JAREB Irrevocable Trust Agreed Dated October 11, 2021, a trust created for the benefit of Mr. Bolog and his children. The purported "Notice of Gift" fails to comply with RPC 1.8 and Maryland Rule 19-301.8.

Beyond Mr. Bolog improperly causing the transfer of $10M to a trust created for his benefit and the benefit of his children, Mr. Bolog also had Ms. Engelhorn, individually or in a representative capacity, transfer funds to at least three different entities, some of which Mr. Bolog appears to have had an ownership interest in at the time the funds were transferred. Whiteford, Taylor & Preston, LLP knew or should have known of Mr. Bolog's propensity to misuse client funds as Mr. Bolog and Whiteford, Taylor & Preston, LLP were both sued for conversion of funds belonging to a debtor and/or bankruptcy estate in *In Re Brenda K. Brown* <u>before</u> Mr. Bolog joined Whiteford, Taylor & Preston, LLP. *See* Case Nos.: 13-07009 and 14-07006-acs in the United States Bankruptcy Court for the Eastern District of Kentucky, Pikesville Division. I suspect that Ms. Engelhorn may not have been Mr. Bolog's first and only victim, such that the lack of oversight by Whiteford, Taylor & Preston, LLP will become even more transparent, if and when we get into litigation.

2127 ESPEY COURT, SUITE 204
CROFTON, MD 21114

PHONE 410.721.1979          FAX 410.721.2258          WWW.HENDERSONLAWLLC.COM

Before I file a lawsuit against Mr. Bolog, Whiteford, Taylor & Preston, LLP, and potential others, I am inquiring as to whether your client(s) is/are prepared to take immediate steps to rectify the situation, including but not limited to, compensating my clients for all misappropriated monies and other losses. Please be advised that my clients expect a prompt response to this notice and are willing to engage in good-faith discussions to resolve this matter amicably. However, if a satisfactory resolution cannot be reached forthwith, then my clients reserve the right to pursue all available legal remedies to protect their rights and interests. I request that you acknowledge receipt of this notice within 10 days and provide a written response outlining Whiteford, Taylor & Preston, LLP's and/or Mr. Bolog's position on the allegations raised herein.

In the meantime, I request that you take immediate measures to ensure that your client(s) preserve any and all information relevant to the claims and defenses raised and/or to be raised herein. Specifically, I request that your client(s) preserve: (1) the entire file for any matter handled on behalf of Ms. Engelhorn, individually or otherwise; (2) any billing issued for legal services provided in relation to Ms. Engelhorn and/or an entity/trust for which she had an interest; (3) any communications exchanged between any agent or employee relating to Ms. Engelhorn and/or any related entity or trust; (4) any documents drafted for Ms. Engelhorn and any entity or trust related to her; (5) any documents which evidence, refer or relate to Ms. Engelhorn's and the Trust's claims; and (6) any documents relating to any matter wherein it is has been alleged that Mr. Bolog converted client monies.

Thank you for your prompt attention to this matter. Should you have any questions or require further information, please do not hesitate to contact me.

Sincerely,

/s/ WPH

Wes P. Henderson

WPH/kd

**EXHIBIT B**

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

## TABLE OF CONTENTS

SECTION 1.    CREATION OF TRUST........................................................................1
SECTION 2.    TRUST DURING GRANTOR'S LIFETIME.................................1
SECTION 3.    UPON GRANTOR'S DEATH...........................................................2
  A.  DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.............2
  B.  CASH DISTRIBUTION...............................................................................2
  C.  PAYMENT OF INDEBTEDNESS..............................................................2
  D.  DISTRIBUTION OF BALANCE OF TRUST...........................................2
SECTION 4.    TRUSTEES..........................................................................................2
  A.  SUCCESSOR TRUSTEES...........................................................................3
  B.  COMPENSATION.........................................................................................3
  C.  RESIGNATION.............................................................................................3
  D.  REMOVAL.....................................................................................................3
  E.  EMERGENCY ACTION..............................................................................4
  F.  EMPLOYMENT OF INVESTMENT ADVISOR.......................................4
SECTION 5.    POWERS OF TRUSTEE...................................................................4
  A.  RETAIN RESIDENCE IN TRUST............................................................5
  B.  DEAL WITH PROPERTY............................................................................5
  C.  MARGIN AND BANK ACCOUNTS.........................................................6
  D.  REGISTER IN NOMINEE FORM..............................................................6
  E.  DISPOSE OF CLAIMS................................................................................6
  F.  EXECUTE DOCUMENTS...........................................................................6
  G.  DIVIDE PROPERTY...................................................................................6
  H.  BORROW FUNDS OR MAKE LOANS.....................................................6
  I.  EMPLOY AGENTS......................................................................................6
  J.  MAKE TAX ELECTIONS............................................................................6
  K.  CARRY ON BUSINESS..............................................................................7
  L. S CORPORATION STOCK..........................................................................7
  M.  TREAT AS COMMON FUND....................................................................7
  N.  RECEIVE ADDITIONAL PROPERTY.....................................................8
  O.  MERGE TRUSTS.........................................................................................8
  P.  DIVIDE TRUSTS..........................................................................................9
  Q.  DEAL WITH GENERATION-SKIPPING TRANSFERS.........................9
  R.  DEAL WITH DIGITAL ASSETS...............................................................9
  S.  KEEP INFORMATION CONFIDENTIAL.................................................9
  T.  DO ALL THINGS WITH FINAL AUTHORITY.....................................10
SECTION 6.    DUTIES OF TRUSTEE....................................................................10

A. PAY DEATH TAXES AND SATISFY CASH NEEDS.................................................. 10
B. PAY DELIVERY EXPENSES............................................................................ 10
C. PAY DIRECTLY TO BENEFICIARIES.................................................................. 10
D. DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E. MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS................................................................................................. 11
F. MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE.................................................................................................... 11
G. PAY INCOME AT TERMINATION OF TRUSTS ..................................... 11
H. ADMINISTER WITHOUT COURT SUPERVISION .................................. 11
I. RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ..................... 11
SECTION 7.    INCAPACITY................................................................................ 12
A. DETERMINATION OF INCAPACITY ............................................................. 12
B. DURATION OF INCAPACITY....................................................................... 12
C. EFFECT OF INCAPACITY........................................................................... 13
D. REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.    REVOCATION OR AMENDMENT.................................................... 13
SECTION 9.    RESOLUTION OF CONTROVERSIES ............................................... 13
SECTION 10.    GOVERNING LAW....................................................................... 14
SECTION 11.    RULE AGAINST PERPETUITIES .................................................... 15
SECTION 12.    BINDING AGREEMENT ............................................................... 15
SCHEDULE A............................................................................................. 15
SCHEDULE B............................................................................................. 17
SCHEDULE C............................................................................................. 18
SCHEDULE D............................................................................................. 19
                                                                                      20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone. Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

### SECTION 1. CREATION OF TRUST.

The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property. The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement. This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

### SECTION 2. TRUST DURING GRANTOR'S LIFETIME.

During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs. However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

SECTION 3.    UPON GRANTOR'S DEATH.  Upon the grantor's death, this trust shall be administered and disposed of as follows.

A.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.  The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

B.    CASH DISTRIBUTION.  The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them.  If none are then living, this gift shall lapse.

C.    PAYMENT OF INDEBTEDNESS.  The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

D.    DISTRIBUTION OF BALANCE OF TRUST.  The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia.  If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    2

## SECTION 4.   TRUSTEES.

**A.   SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees. The grantor appoints as a successor trustee any person or corporation so designated.

**B.   COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00). Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows:  1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

**C.   RESIGNATION.** A trustee may resign at any time by an instrument in writing. No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

D.    REMOVAL.  The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

E.    EMERGENCY ACTION.  If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

F.    EMPLOYMENT OF INVESTMENT ADVISOR.  The successor trustee then serving shall continue to engage the services of the investment advisor employed by

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                4

the grantor at the time of her death or incapacity to manage the investment of the trust property. If no investment advisor was employed by the grantor at the time of her death or incapacity, the successor trustee shall engage a professional investment advisory firm to manage the investment of the trust property.

SECTION 5.      POWERS OF TRUSTEE. In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, the powers listed below, which they may exercise without prior or subsequent approval by any court. In addition, the grantor specifically incorporates the provisions of §64.2-105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers listed below. The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct. For convenience the grantor is referring to these fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the singular and plural, include each other wherever appropriate in any reference to any person or corporation in this agreement.

A.      RETAIN RESIDENCE IN TRUST. To retain in any trust any residence transferred to the trust by the grantor. The trustee shall permit the grantor to occupy the residence, rent free, for whatever period of time the trustee may reasonably determine. The trustee is not required to make any charge against income or principal for depreciation. The trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    5

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.**    **DEAL WITH PROPERTY.**  To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.**    **MARGIN AND BANK ACCOUNTS.**  To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.**    **REGISTER IN NOMINEE FORM.**  To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.**    **DISPOSE OF CLAIMS.**  To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.**    **EXECUTE DOCUMENTS.**  To execute, acknowledge, and deliver documents.

**G.**    **DIVIDE PROPERTY.**  To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.**    **BORROW FUNDS OR MAKE LOANS.**  To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.**    **EMPLOY AGENTS.**  To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                     6

J. **MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

K. **CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

L. **S CORPORATION STOCK.** During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

(1) **Electing Small Business Trust.** If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

(2) **Qualified Subchapter S Trust.** If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

7

(a)  If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b)  Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c)  The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d)  The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

(3)  **Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

(a)  The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

(b)  No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.    TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.    RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    8

**O.    MERGE TRUSTS.**  To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P.    DIVIDE TRUSTS.**  To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS.**  To deal with any potential generation-skipping transfer (GST) as follows:

**(1)    Fund With Appreciating Assets.**  To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)    Disregard GST Tax Consequences.**  To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax. The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)    Make Distributions From Divided Trusts.**  With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

(a)    To make distributions of income and principal to skip persons from the exempt trust;

(b)    To make distributions of income and principal to non-skip persons from the non-exempt trust; and

(c)    To pay estate, inheritance and other death taxes from the non-exempt trust.

**R.    DEAL WITH DIGITAL ASSETS.**  To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.    KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.    DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

**SECTION 6.    DUTIES OF TRUSTEE.** The grantor authorizes the trustee and any successor trustees, without prior or subsequent approval by any court:

**A.    PAY DEATH TAXES AND SATISFY CASH NEEDS.** Subject to the provisions of Section 6.I of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise. Taxes include interest and also penalties not caused by negligence or bad faith. Subject to the provisions of Section 6.I of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate. Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust:  (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes. In no event shall there be any right of reimbursement from any person.

**B.    PAY DELIVERY EXPENSES.** To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.    PAY DIRECTLY TO BENEFICIARIES.** To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    10

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.    DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**    Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.    MAKE BINDING DECISIONS WITH RESPECT TO DISCRE-TIONARY PAYMENTS.**    In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person. No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust. All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.    MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**    No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee. No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.    PAY INCOME AT TERMINATION OF TRUSTS.**    To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary. If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.    ADMINISTER WITHOUT COURT SUPERVISION.**    To administer all trusts without court supervision. If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.    RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.**    Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

11

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

## SECTION 7.   INCAPACITY.

**A.   DETERMINATION OF INCAPACITY.** Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

(1)   Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

(2)   A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

(3)   Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

**B.   DURATION OF INCAPACITY.** Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

WHITEWATER Revocable Trust Agreement

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

### C. EFFECT OF INCAPACITY.

(1)    If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues.  If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)    If the grantor is determined to be incapacitated, then notwithstanding any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement.  If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

### D. REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.  Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney.  The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court.  The decision of any attorney in fact, parent or guardian is binding on all persons.

**SECTION 8.    REVOCATION OR AMENDMENT.**  The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person.  In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime. This trust shall become irrevocable upon the grantor's death.

**SECTION 9.    RESOLUTION OF CONTROVERSIES.**  Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

**SECTION 10.   GOVERNING LAW.** This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    14

**SECTION 11.   RULE AGAINST PERPETUITIES.**   The common law rule against perpetuities shall not apply to this agreement and the trusts created by this agreement.

**SECTION 12.   BINDING AGREEMENT.**   This agreement is binding upon and inures to the benefit of the parties and their respective personal representatives, successors in interest, and successors in trust.

**EXECUTED** on September 30, 2021.

WITNESS:

_____   _____ (SEAL)
                            **CLAUDIA ENGELHORN**, Grantor

_____   _____ (SEAL)
                            **CLAUDIA ENGELHORN**, Trustee

_____   _____ (SEAL)
                            **ERIK D. BOLOG**, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable trust agreement, and acknowledged it to be his act and deed.

_____
Notary Public

_____

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN**, grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021,** have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    16

# SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials Grantor | Trustee | Date Transferred |
|-------|-----------------|------------------|---------|------------------|
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    17

## SCHEDULE B

## DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me.  I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** to the person named, if, in each case, that person is living 30 days after my death.

*Description of Personal Property*

*Desired Recipient And Relationship*

_____

CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    18

# SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| *Recipient* | *Amount* | *Grantor's Initials* | *Date* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

19

## SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me.  To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    20

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
### DATED
### SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN,** hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN,** of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG,** as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021.**

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN,** shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    3

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____ NC

_____ NC

_____
VA

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

_____ (SEAL)
CLAUDIA ENGELHORN, Trustee

_____ (SEAL)
ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be his act and deed.

_____
Notary Public

Fairfax, VA

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*

4

## ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
## DATED SEPTEMBER 30, 2021

I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

**EXECUTED** as of September 30, 2021.

WITNESS:

_____          _____ (SEAL)
                                            **CLAUDIA ENGELHORN**

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

_____
Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

# EXHIBIT C

## NOTICE OF GIFT

TO:        ERIK D. BOLOG

FROM:      CLAUDIA A. ENGELHORN

REGARDING: INTENT TO MAKE A GIFT TO ERIK D. BOLOG

DATE:      OCTOBER 11, 2021

Dear Erik,

The purpose of this Notice of Gift is to set forth my intentions relating to making a gift to an irrevocable trust for the benefit of you and your family.

1. The Swiss Litigation has concluded, resulting in an enormous payment to me personally, thanks to your leadership, skill and guidance of this cross-border matter. You and I battled this matter between the United States, Switzerland and Monaco, during the heart of the Covid pandemic. You risked yourself for me. You were much more than a lawyer, but, were also my social worker (for me), strategist and confidant. You believed in me when all others, including our Swiss team, turned on me.

2. I have paid all legal fees owed to Whiteford Taylor and Preston, PLLC. Moreover, I have funded a significant escrow (over $400,000) at your firm for all future work that will be done on my behalf. If that escrow is exhausted, I will replenish it.

3. I recently approached you and let you know that I, as a result of our friendship and my financial ability to do so, had determined to fund as a grantor, $10M USD to an irrevocable trust for your family. You never requested anything from me other than what was due your law firm pursuant to the retainer agreement.

4.  In fact, after hearing about my intention relating to funding the irrevocable trust on behalf of your family, you strongly tried to discourage the gift. As you have learned over the past several years, I am not easily discouraged and once I have decided to do something, I do it.

5.  The gift has nothing to do with the legal services that you have provided to me, nor any legal services that you or your firm will perform on my behalf prospectively. As stated above, all legal fees and expenses are paid and the firm is well funded by me for future work to be done on my behalf and as the Life Trustee of the Mannheim Trust.

6.  After realizing that you were not going to change my mind relating to the making of the gift referenced above, you advised (begged) me to hire independent counsel to advise me relating to the gift, so that no one could ever suggest that you influenced me in any way nor took advantage of me and our relationship in any way relating to the gift. You also advised me that independent counsel should review the gift and any conveyance documents to avoid any appearance of impropriety or a conflict of interest. I assessed your admonishment relating to retaining independent counsel relating to the gift and independently determined that I did not wish to follow your guidance in relation to the hiring of another attorney to review the gift nor the documentation of the gift. I completely understand all of the issues relating to the gift and the documentation necessary for completing it.

7.  The gift to the trust for the benefit of you and your family is being made by me because of our relationship and my desire to share my good fortune with my very dear friend and his family.

8. I want to be perfectly clear, the gift has nothing to do with your law firm, nor legal

services that you have or will provided to me.

IN WITNESS WHEREOF, I, **CLAUDIA ENGELHORN**, have hereunto set my hand and seal

this 11th day of October, 2021.

Signed, sealed and delivered
in the presence of:

_____

_____                       _____(SEAL)
                                                      **CLAUDIA ENGELHORN**

**STATE OF** Massachusetts ;
**CITY/COUNTY OF** Barnstable _____, to-wit:

The foregoing instrument was acknowledged before me on the 11ᵗʰ day of Octol

_____, 2021 by **CLAUDIA ENGELHORN**, Grantor.

                                         _____
                                         Notary Public

SARAH K. MAYO
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

My commission expires: 08/29/2025
Notary Registration No.: n/a

# EXHIBIT D

**From:** Claudia Engelhorn ██████████████████████
**Date:** July 6, 2022 at 10:36:00 AM EDT
**To:** "Bolog, Erik" ██████████████████
**Subject: [EXTERNAL] Gift?**

Hi Erik

You need to return the money you surreptitiously took from me. I DID not gift you.
You took an alcohol induced statement for your benefit.
You have no leg to stand on.
My son whom you want to be friends with, not only knows about it but wants you to return it as well.

If you want a professional relationship you need to rectify what you did.

Regardless of what you believe, a dealing you wanted to push under the table is out in the open. Not by my doing.
You had no right to grab it.
You remind me of the woman we fought.
You also removed it yourself from my account which is not acceptable at all.
So return it now.

My account is:
Bank of America
Account number: ████████████
Routing: ██████████

Claudia

Sent from my iPad

E-FILED; Baltimore City Circuit Court
Docket: 3/26/2025 4:40 PM; Submission: 3/26/2025 4:40 PM
Envelope: 20534332

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 26th day of March, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1. Defendant Whiteford's Response to Plaintiff White Pearl's Request for Production of Documents.

Dated: March 26, 2025

Respectfully submitted,

By: /s/ John J. Connolly
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
    (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2025, a copy of the foregoing

document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 /s/ John J. Connolly
John J. Connolly

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

---

## THE BOLOG DEFENDANTS' NOTICE OF SERVICE OF RESPONSES AND OBJECTIONS TO PLAINTIFF'S DISCOVERY REQUESTS

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants") hereby submits notice that they have served the discovery documents listed below to counsel as identified in the attached certificate of service:

- Defendant Erik D. Bolog's Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Erik Bolog as Trustee's Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Darnestown Road Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Science Park Associates, LLC's, Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Erik D. Bolog's Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Erik Bolog as Trustee's Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Darnestown Road Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Science Park Associates, LLC's Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

Dated:      April 1, 2025

                                         Respectfully submitted,

                                         CADWALADER, WICKERSHAM & TAFT LLP

                                         Respectfully,

                                         Douglas F. Gansler (Bar Number: 8912180208)
                                         J.B. Howard (Bar Number: 9106200125)
                                         Cadwalader, Wickersham & Taft LLP
                                         1919 Pennsylvania Ave N.W.
                                         Washington D.C. 20006
                                         Douglas.Gansler@cwt.com
                                         Telephone: (202) 862-2300
                                         j.b.howard@cwt.com

                                         *Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2025, a copy of the foregoing was

served in the manner indicated on the following:

**Counsel of Record Served via Electronic Mail (Discovery documents) and MDEC (Notice of service):**

Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 4/2/2025 6:22 PM; Submission: 4/1/2025 6:22 PM
Envelope: 20617287

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.**, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**BOLOG DEFENDANTS' OPPOSITION TO PLAINTIFF CLAUDIA ENGELHORN'S
MOTION TO COMPEL DISCOVERY RESPONSES**

Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the

JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("Mr. Bolog as Trustee"), Science

Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown Road")

(collectively, the "Bolog Defendants") hereby file this opposition (the "Opposition") to Plaintiff

Claudia Engelhorn's ("Ms. Engelhorn") Motion to Compel Discovery Responses (the "Motion to

Compel") and state as follow:

<u>**INTRODUCTION AND BACKGROUND**</u>

On September 10, 2024, Plaintiffs filed their original complaint, with Ms. Engelhorn

simultaneously propounding on the Bolog Defendants hundreds of document requests and

interrogatories, many of which relate to the Whitewater Investment Claims and are subject to

mandatory arbitration under the Whitewater Revocable Trust Agreement dated September 30,

2021 (the "Whitewater Trust," Ex. A to the Gansler Affidavit). On October 31, 2024, Plaintiffs

filed an amended complaint. In response to the Amended Complaint, Defendant Whiteford, Taylor

& Preston LLP ("WTP") filed a petition to compel arbitration and stay the proceedings (the

"Arbitration Petition"), as well as a motion to dismiss the amended complaint. On November 18,

2024, the Bolog Defendants filed a combined motion to strike, for a more definite statement, and

to dismiss the amended complaint for failure to state a claim upon which relief can be granted.

On December 17, 2024, the Bolog Defendants filed a response to WTP's petition to compel

arbitration, stating that this case should nonetheless be stayed in its entirety (including discovery)

until the Court rules on the Arbitration Petition (the "Response"). On that same day, the Bolog

Defendants served responses and objections to Ms. Engelhorn's document requests and

interrogatories. Consistent with the position taken in the Response to the Arbitration Petition, the

Bolog Defendants' responses asserted that discovery was inappropriate during the pendency of the

Arbitration Petition. On December 18, 2024, counsel for Ms. Engelhorn sent a letter to counsel for

the Bolog Defendants threatening to file a motion to compel discovery if the Bolog Defendants

did not retract their position and answer the discovery within three business days of the letter. In

response, the Bolog Defendants filed a motion for protective order to stay all discovery against

them until resolution of the Arbitration Petition. Plaintiffs opposed such motion. The motion was

later denied by the Court in connection with the Court's denial of WTP's Arbitration Petition,

which also denied the Bolog Defendants' motion to dismiss and WTP's motion to dismiss. On

February 5, 2025, Plaintiffs filed the operative Second Amended Complaint ("SAC") correcting

certain procedural deficiencies in prior iterations of the complaint.

As alleged in the Second Amended Complaint, Mr. Bolog served as trustee of the

Whitewater Trust from its inception until on or around November 3, 2022. (SAC ¶¶ 33, 58). With

the full approval of his co-trustee Ms. Engelhorn, the Whitewater Trust made certain investments

in Science Park and Darnestown Road.

On March 24, 2025, the Bolog Defendants brought counterclaims against both Ms.

Engelhorn as an individual and in her capacity as co-trustee ("Ms. Englehorn as Trustee") that,

*inter alia*, allege that Ms. Engelhorn as Trustee failed to abide by certain provisions of the

Whitewater Trust including breach of contract for failing to compensate Mr. Bolog for his services

as a trustee of the Whitewater Trust and for indemnification of the Bolog Defendants for defending

the following claims brought in this action (the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown Road, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

2

On March 27, 2025, attorneys for the Bolog Defendants served a letter on attorneys for Plaintiffs formally requesting that all of the Whitewater Investment Claims be voluntarily dismissed from this action and be submitted to arbitration (the "Arbitration Letter," Ex. B to the Gansler Affidavit), as required by Section 9 of the Whitewater Trust. That provision mandates that "any controversy . . . involving the construction or application of any of the terms, provisions, or conditions of this trust" between the trustee and a party "on the written request of either or any disagreeing party to the trust" on "written request" of the trustee, *i.e.* Mr. Bolog, "*shall . . .* be submitted to arbitration." Because, upon the service of a written request for arbitration, the Whitewater Investment Claims *must* be submitted to arbitration, the Arbitration Letter requested that Plaintiff Engelhorn voluntarily dismiss these claims by April 4, 2025. Should Plaintiff Engelhorn fail to do so, the Bolog Defendants will take the necessary steps to proceed to arbitration of the Whitewater Investment Claims (the "Arbitration Dispute").

On April 1, 2025, the Bolog Defendants served fulsome responses and objections to Ms. Engelhorn's document requests and interrogatories. As of the filing of this Opposition, Plaintiff Engelhorn has not responded to the Arbitration Letter or voluntarily dismissed the Whitewater Investment Claims.

## **ARGUMENT**

## I.    **THE DISCOVERY DISPUTE IS NOW MOOT.**

Concurrent with the filing of this Opposition, Mr. Bolog in his individual capacity and as trustee for JAREB, served on Plaintiff Engelhorn responses and objections to document requests and interrogatories. Accordingly, the Motion to Compel as to Mr. Bolog in his individual capacity and in his capacity as Trustee is now moot. Should Plaintiffs remain unsatisfied with any response or objection, then the proper course of action would be to meet and confer and avoid burdening the Court with adjudicating discovery matters.

For their part, Science Park and Darnestown Road have sufficiently responded to the discovery requests by properly invoking the provisions of the Whitewater Trust that mandate arbitration of the Whitewater Investment Claims.  Accordingly, the Motion to Compel is likewise moot as to Science Park and Darnestown Road, and should be denied.[1]

Because the Bolog Defendants have now responded to all of Plaintiff Engelhorn's discovery requests except for those related to the Whitewater Investment Claims, which are subject to mandatory arbitration, Plaintiff Engelhorn's Motion to Compel should be denied as moot.

## CONCLUSION

For the foregoing reasons, the Bolog Defendants respectfully submit that that the Court deny Plaintiff Englehorn's Motion to Compel as moot.

---

[1] The Bolog Defendants anticipate resolving the arbitration issue with Plaintiffs amicably and without court intervention. Should such resolution fail to materialize, they intend to file a petition for arbitration promptly thereafter, which would *automatically* stay *all* proceedings concerning the Whitewater Investment Claims, not just proceedings on discovery matters. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) "A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) *A petition for order to arbitrate has been filed*; or (2) An order for arbitration has been made." (emphasis added); *see also Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*, 388 Md. 675, 685 (2005).

Dated:      April 1, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2025, a copy of the foregoing was served electronically via MDEC upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

6

E-SERVED Baltimore City Circuit Court 4/1/2025 1:31 PM System System Envelope:20609716

Case 25-10044-ELG    Doc 40-1    Filed 07/03/25    Entered 09/24/25 ... Baltimore City Circuit Court
Attachment    Page ... 4:31 PM Submission 2/8/2025 4:31 PM

Envelope: 20609736

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's MOTION
### FOR COMMISSION TO ISSUE SUBPOENA TO OUT-OF-STATE WITNESS

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") hereby moves for an order granting it a commission to serve a subpoena for documents and testimony on an individual domiciled in the Commonwealth of Massachusetts, and in support thereof states:

1.    Plaintiff Claudia Engelhorn alleges in this action that defendant Erik Bolog tricked or defrauded her into signing at least three key documents at issue in this case, including a "Notice of Gift" that recites that Ms. Engelhorn intended to make a $10 million gift for the benefit of Mr. Bolog. Ms. Engelhorn alleges that Whiteford is vicariously liable for Mr. Bolog's alleged misconduct with respect to the gift. Mr. Bolog asserts that Ms. Engelhorn made the gift knowingly and intentionally.

2.    According to her Second Amended Complaint, Ms. Engelhorn contends that "Defendant Bolog directed Plaintiff to sign numerous documents [including the Notice of Gift] that were upside down," and that he "did not offer her the opportunity to first

read them, and lulled her into believing the documents concerned routine matters requiring her signature." 2d Am. Compl. ["Compl."] ¶ 36.

3.      Ms. Engelhorn signed two of the documents at issue, the Notice of Gift and the JAREB Irrevocable Trust Agreement dated October 11, 2021, under oath before a notary public of the Commonwealth of Massachusetts named Sarah K. Mayo. *See* Murphy Affidavit (Env. No. 18816799; filed Nov. 15, 2024) Exs. B(2), B(3). Ms. Mayo also appears to have witnessed a third document signed by Ms. Engelhorn and dated October 12, 2021; namely, a memorandum directing Bank of America to transfer $10 million from her account to an account owned by Defendant JAREB Trust, whose trustee and principal beneficiary is Mr. Bolog. *See id.* Ex. B(4).

4.      Undersigned counsel's office has attempted to interview Ms. Mayo but, after a brief initial conversation, she has not returned calls or spoken substantively about her participation in the execution of the three key documents. Accordingly, Whiteford has no choice but to seek compulsory process to obtain relevant and material information from Ms. Mayo.

5.      Massachusetts has not adopted the Uniform Interstate Depositions and Discovery Act, and accordingly a commission is required from this Court to have a subpoena issued from a Massachusetts court for Ms. Mayo's documents and testimony. *See* Mass. G.L. c. 223A, § 11; Mass. G.L. § 233, § 45.

6.      On information and belief, Ms. Mayo resides in Barnstable County, Massachusetts at 55 Carl Landi Circle, E. Falmouth, MA 02536-7752.

7.      Douglas Gansler and J.B. Howard, counsel for Defendants Erik Bolog, Erik

Bolog as Trustee for the JAREB Irrevocable Trust, Science Park Associates, LLC, and

Darnestown Road, Inc., have authorized undersigned counsel to represent that they

consent to the relief requested in this motion.

8.      Undersigned counsel has on two occasions requested consent from counsel

for Plaintiffs to the relief requested in this motion, but as of this writing have not

received a definitive response.

9.      Other defendants have failed to participate in this action thus far and,

accordingly, their views on this motion should not be considered.

WHEREFORE, Defendant Whiteford, Taylor & Preston LLP respectfully requests

that the Court grant the motion and require the Clerk to issue a commission in the

form attached hereto.

Dated: February 18, 2025

Respectfully submitted,

By: _/s/ John J. Connolly_____
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, a copy of the

foregoing was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

      Plaintiffs,

    v.

ERIK D. BOLOG, *et al.*,

      Defendants.

No. C-24-CV-24-002631

### ORDER

UPON CONSIDERATION of the motion of Defendant Whiteford, Taylor & Preston LLP (Whiteford) for a commission to take an out-of-state deposition, and the record in this case, it is, this **31st** day of _____ **March** _____, 2025

ORDERED that the motion be, and hereby is, GRANTED; and it is further

ORDERED that the Clerk issue and sign a commission requesting that the Superior Court of Barnstable County, Massachusetts, issue a subpoena for documents and testimony from Sarah K. Mayo, in the form attached hereto.

03/31/2025 10:16:07 AM

_____
Judge, Circuit Court for Baltimore City

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

   Plaintiffs,

    v.       No. C-24-CV-24-002631

ERIK D. BOLOG, *et al.*,

   Defendants.

## COMMISSION TO TAKE DEPOSITION

TO THE SUPERIOR COURT OF BARNSTABLE COUNTY, MASSACHUSETTS:

It is hereby requested, in accordance with the terms of the attached Order entered on the ___1st___ day of ___April___, 2025, by the Circuit Court for Baltimore City, Maryland, that this Honorable Court issue a subpoena commanding

    Sarah K. Mayo, Notary Public
    55 Carl Landi Circle
    E. Falmouth, MA 02536-7752

to provide oral testimony at a deposition for discovery or use in the captioned action, to be recorded by videotape and/or stenographic means in accordance with Massachusetts law, and to produce for inspection and copying her entire file of documents, including electronic documents and drafts, referring or relating to her notary and document-witnessing services provided to Erik Bolog and/or Claudia Engelhorn, on or about October 11-12, 2021. The subpoena shall require testimony and production of documents at a location in Barnstable County, Massachusetts, or such other place as the parties and witness mutually agree.

Clerk, Circuit Court for Baltimore City

## EXHIBIT A

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

## TABLE OF CONTENTS

SECTION 1.    CREATION OF TRUST.................................................................. 1
SECTION 2.    TRUST DURING GRANTOR'S LIFETIME.............................. 1
SECTION 3.    UPON GRANTOR'S DEATH............................................................ 2
   A.   DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY ....... 2
   B.   CASH DISTRIBUTION......................................................................... 2
   C.   PAYMENT OF INDEBTEDNESS......................................................... 2
   D.   DISTRIBUTION OF BALANCE OF TRUST .................................. 2
SECTION 4.    TRUSTEES ................................................................................... 2
   A.   SUCCESSOR TRUSTEES................................................................... 3
   B.   COMPENSATION................................................................................ 3
   C.   RESIGNATION.................................................................................... 3
   D.   REMOVAL............................................................................................ 3
   E.   EMERGENCY ACTION ..................................................................... 4
   F.   EMPLOYMENT OF INVESTMENT ADVISOR............................... 4
SECTION 5.    POWERS OF TRUSTEE............................................................. 4
   A.   RETAIN RESIDENCE IN TRUST................................................... 5
   B.   DEAL WITH PROPERTY ................................................................. 5
   C.   MARGIN AND BANK ACCOUNTS.................................................. 6
   D.   REGISTER IN NOMINEE FORM..................................................... 6
   E.   DISPOSE OF CLAIMS....................................................................... 6
   F.   EXECUTE DOCUMENTS ................................................................. 6
   G.   DIVIDE PROPERTY ......................................................................... 6
   H.   BORROW FUNDS OR MAKE LOANS............................................. 6
   I.   EMPLOY AGENTS.............................................................................. 6
   J.   MAKE TAX ELECTIONS................................................................... 6
   K.   CARRY ON BUSINESS...................................................................... 7
   L. S CORPORATION STOCK................................................................. 7
   M.   TREAT AS COMMON FUND .......................................................... 7
   N.   RECEIVE ADDITIONAL PROPERTY ........................................... 8
   O.   MERGE TRUSTS ............................................................................... 8
   P.   DIVIDE TRUSTS................................................................................ 9
   Q.   DEAL WITH GENERATION-SKIPPING TRANSFERS................ 9
   R.   DEAL WITH DIGITAL ASSETS...................................................... 9
   S.   KEEP INFORMATION CONFIDENTIAL......................................... 9
   T.   DO ALL THINGS WITH FINAL AUTHORITY ........................... 10
SECTION 6.    DUTIES OF TRUSTEE............................................................ 10
                                              10

A. PAY DEATH TAXES AND SATISFY CASH NEEDS......................................... 10
B. PAY DELIVERY EXPENSES........................................................................ 10
C. PAY DIRECTLY TO BENEFICIARIES........................................................ 10
D. DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E. MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS.................................................................................................... 11
F. MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE........................................................................................................ 11
G. PAY INCOME AT TERMINATION OF TRUSTS ...................................... 11
H. ADMINISTER WITHOUT COURT SUPERVISION ................................... 11
I. RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ................... 11
SECTION 7.      INCAPACITY.................................................................................. 12
A. DETERMINATION OF INCAPACITY ...................................................... 12
B. DURATION OF INCAPACITY.................................................................. 12
C. EFFECT OF INCAPACITY........................................................................ 13
D. REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.      REVOCATION OR AMENDMENT................................................ 13
SECTION 9.      RESOLUTION OF CONTROVERSIES ........................................... 13
SECTION 10.     GOVERNING LAW......................................................................... 14
SECTION 11.     RULE AGAINST PERPETUITIES ................................................... 15
SECTION 12.     BINDING AGREEMENT ................................................................. 15
SCHEDULE A................................................................................................. 15
SCHEDULE B................................................................................................. 17
SCHEDULE C................................................................................................. 18
SCHEDULE D................................................................................................. 19
                                                                                            20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone. Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

**SECTION 1. CREATION OF TRUST.**   The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property. The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement. This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

**SECTION 2.   TRUST DURING GRANTOR'S LIFETIME.**   During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs. However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

SECTION 3.    UPON GRANTOR'S DEATH.    Upon the grantor's death, this trust shall be administered and disposed of as follows.

A.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.    The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

B.    CASH DISTRIBUTION.    The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them.  If none are then living, this gift shall lapse.

C.    PAYMENT OF INDEBTEDNESS.    The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

D.    DISTRIBUTION OF BALANCE OF TRUST.    The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia.  If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*    2

## SECTION 4.        TRUSTEES.

**A.        SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees. The grantor appoints as a successor trustee any person or corporation so designated.

**B.        COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00). Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

**C.        RESIGNATION.** A trustee may resign at any time by an instrument in writing. No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

D.    **REMOVAL.** The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

E.    **EMERGENCY ACTION.** If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

F.    **EMPLOYMENT OF INVESTMENT ADVISOR.** The successor trustee then serving shall continue to engage the services of the investment advisor employed by

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    4

the grantor at the time of her death or incapacity to manage the investment of the trust property. If no investment advisor was employed by the grantor at the time of her death or incapacity, the successor trustee shall engage a professional investment advisory firm to manage the investment of the trust property.

SECTION 5.     POWERS OF TRUSTEE. In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, the powers listed below, which they may exercise without prior or subsequent approval by any court. In addition, the grantor specifically incorporates the provisions of §64.2-105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers listed below. The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct. For convenience the grantor is referring to these fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the singular and plural, include each other wherever appropriate in any reference to any person or corporation in this agreement.

A.     RETAIN RESIDENCE IN TRUST. To retain in any trust any residence transferred to the trust by the grantor. The trustee shall permit the grantor to occupy the residence, rent free, for whatever period of time the trustee may reasonably determine. The trustee is not required to make any charge against income or principal for depreciation. The trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    5

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.    DEAL WITH PROPERTY.**  To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.    MARGIN AND BANK ACCOUNTS.**  To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.    REGISTER IN NOMINEE FORM.**  To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.    DISPOSE OF CLAIMS.**  To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.    EXECUTE DOCUMENTS.**  To execute, acknowledge, and deliver documents.

**G.    DIVIDE PROPERTY.**  To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.    BORROW FUNDS OR MAKE LOANS.**  To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.    EMPLOY AGENTS.**  To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                6

**J.     MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

**K.     CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**L.     S CORPORATION STOCK.** During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

**(1) Electing Small Business Trust.** If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

**(2)     Qualified Subchapter S Trust.** If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    7

(a)  If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b)  Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c)  The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d)  The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

(3)  **Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

(a)  The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

(b)  No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.    TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.    RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

8

**O.    MERGE TRUSTS.**  To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P.    DIVIDE TRUSTS.**  To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS.**  To deal with any potential generation-skipping transfer (GST) as follows:

**(1)    Fund With Appreciating Assets.**  To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)    Disregard GST Tax Consequences.**  To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax. The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)    Make Distributions From Divided Trusts.**  With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

(a)    To make distributions of income and principal to skip persons from the exempt trust;

(b)    To make distributions of income and principal to non-skip persons from the non-exempt trust; and

(c)    To pay estate, inheritance and other death taxes from the non-exempt trust.

**R.    DEAL WITH DIGITAL ASSETS.**  To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.   KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.   DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

## SECTION 6.   DUTIES OF TRUSTEE. The grantor authorizes the trustee and any successor trustees, without prior or subsequent approval by any court:

**A.   PAY DEATH TAXES AND SATISFY CASH NEEDS.** Subject to the provisions of Section 6.1 of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise. Taxes include interest and also penalties not caused by negligence or bad faith. Subject to the provisions of Section 6.1 of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate. Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust: (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes. In no event shall there be any right of reimbursement from any person.

**B.   PAY DELIVERY EXPENSES.** To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.   PAY DIRECTLY TO BENEFICIARIES.** To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

10

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.    DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**    Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.    MAKE BINDING DECISIONS WITH RESPECT TO DISCRE-TIONARY PAYMENTS.**  In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person.  No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust.  All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.    MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**  No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee.  No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.    PAY INCOME AT TERMINATION OF TRUSTS.**  To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary.  If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.    ADMINISTER WITHOUT COURT SUPERVISION.**  To administer all trusts without court supervision.  If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.    RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.** Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

11

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

## SECTION 7.   INCAPACITY.

**A.   DETERMINATION OF INCAPACITY.**   Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

(1)   Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

(2)   A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

(3)   Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

**B.   DURATION OF INCAPACITY.**   Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

---

**WHITEWATER** Revocable Trust Agreement

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

C.    EFFECT OF INCAPACITY.

(1)    If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues.  If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)    If the grantor is determined to be incapacitated, then notwithstanding any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement.  If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

D.    REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.  Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney.  The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court.  The decision of any attorney in fact, parent or guardian is binding on all persons.

SECTION 8.    REVOCATION OR AMENDMENT.  The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person.  In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime. This trust shall become irrevocable upon the grantor's death.

SECTION 9.    RESOLUTION OF CONTROVERSIES.  Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

**SECTION 10.     GOVERNING LAW.** This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    14

**SECTION 11.**   **RULE AGAINST PERPETUITIES.**   The common law rule against perpetuities shall not apply to this agreement and the trusts created by this agreement.

**SECTION 12.**   **BINDING AGREEMENT.**   This agreement is binding upon and inures to the benefit of the parties and their respective personal representatives, successors in interest, and successors in trust.

**EXECUTED** on September 30, 2021.

WITNESS:

_____   _____ (SEAL)
                                   **CLAUDIA ENGELHORN**, Grantor

_____   _____ (SEAL)
                                   **CLAUDIA ENGELHORN**, Trustee

_____   _____ (SEAL)
                                   **ERIK D. BOLOG**, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable trust agreement, and acknowledged it to be his act and deed.

_____
Notary Public

_____

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN**, grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021**, have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    16

# SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials Grantor | Trustee | Date Transferred |
|-------|-----------------|------------------|---------|------------------|
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

17

## SCHEDULE B

## DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me. I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** to the person named, if, in each case, that person is living 30 days after my death.

*Description of Personal Property*
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Desired Recipient And Relationship*
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    18

## SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| *Recipient* | *Amount* | *Grantor's Initials* | *Date* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*

19

## SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me. To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
|---|---|---|---|
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

_Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260_                    20

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
## DATED
## SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN,** hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN,** of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG,** as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021.**

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN,** shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                               2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP ▪ Attorneys At Law ▪ (703) 280-9260*                    3

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____     _____ (SEAL)
                                     CLAUDIA ENGELHORN, Grantor

_____     _____ (SEAL)
                                     CLAUDIA ENGELHORN, Trustee

_____     _____ (SEAL)
                                     ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be his act and deed.

_____
Notary Public

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*

4

# ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
## DATED SEPTEMBER 30, 2021

I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

**EXECUTED** as of September 30, 2021.

WITNESS:

_____       _____ (SEAL)
                                     CLAUDIA ENGELHORN

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

_____
Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

E-FILED; Baltimore City Circuit Court
Docket: 4/1/2025 6:22 PM; Submission: 4/1/2025 6:22 PM
Envelope: 20617287

**EXHIBIT B**

# CADWALADER

Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue N.W., Washington, D.C. 20006
Tel +1 202 862 2200  Fax +1 202 862 2400
www.cadwalader.com

March 27, 2025

**VIA ELECTRONIC MAIL**

Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite
204 Crofton, MD 21114

Re:     _Request For Arbitration Under Section 9 Of The Whitewater Revocable Trust, Dated
        September 30, 2021; For Payment of Legal Fees and Costs Under Section 9; And For
        Compensation As Trustee Under Section 5_

Dear Mr. Henderson:

As set forth more fully below, this letter represents the written request of my client, Mr. Erik
D. Bolog, in both his individual capacity and, during all relevant times, his capacity as Trustee
of the Whitewater Revocable Trust Agreement of September 30, 2021 (the "Whitewater
Trust" or the "Trust"),[1] to: (a) arbitrate the Whitewater Investment Claims (as defined below);
(b) receive immediate payment from the Trust for Mr. Bolog's attorney's fees and costs
incurred defending against the Whitewater Investment Claims; and (c) receive compensation
from the Trust for services as Trustee of the Trust.

## I.     Mandatory Arbitration Of Claims Brought By The Whitewater Trust

Section 9 of the Whitewater Trust requires the arbitration of "any controversy . . . involving
the construction or application of any of the terms, provisions, or conditions of this trust"
between the trustee and a party "on the written request of either or any disagreeing party to the
trust . . . ." Arbitration "on written request" of the trustee is _mandatory_: stating that any such
controversy "_shall_ . . . be submitted to arbitration." (Emphasis added).

Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant to the claims you
have asserted in the Second Amended Complaint in _Claudia Engelhorn, et al. v. Erik Bolog,
et al._, C-24-CV-002631, Cir. Ct. for Balt. City, Md. (the "Engelhorn Litigation"), that relate to
investments and/or loans using funds from the Whitewater Trust in Science Park Associates,

---

[1] As stated in Section 10 of the Trust, "[a]ll questions pertaining to the . . . construction of the [Trust]
agreement shall be determined, and the trust shall be administered, under Virginia Law."

**C A D W A L A D E R**

LLC ("Science Park"), Darnestown Road, Inc. ("Darnestown"), and Swain Landing LaPlata JC, LLC ("Swain Landing") (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

The Whitewater Investment Claims relating to Science Park and Darnestown concern investments that Mr. Bolog, as Trustee of the Whitewater Trust, made—with full authority under the Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using Trust funds. The Whitewater Investment Claims therefore involve "controvers[ies]" within the scope of the mandatory arbitration provisions of Section 9 of the Trust. And, although Mr. Bolog had no involvement, in any capacity whatsoever, relating to the Whitewater Trust's investment in Swain Landing, to the extent there are allegations that such an investment was made with Whitewater Trust funds during the time he was Trustee, those claims would likewise fall within Section 9's mandatory arbitration provisions.

Accordingly, Mr. Bolog hereby serves on Ms. Engelhorn this written request to submit the Whitewater Investment Claims to arbitration, to be conducted in compliance with the commercial Arbitration Rules of the American Arbitration Association, as provided in Section 9 of the Trust, and with the other applicable terms of Section 9. In addition, because arbitration of the Whitewater Investment Claims is mandatory in light of this written request, I hereby request that you file a voluntary motion to dismiss those claims with prejudice by no later than April 4, 2025. If the Whitewater Trust does not dismiss the Whitewater Investment Claims by this deadline, we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

## II.    Trust's Obligation To Immediately Pay Mr. Bolog For Fees And Costs Incurred

Section 9 of the Trust separately provides that "[t]he defense of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust." The "litigation" to which this sentence refers encompasses not only arbitration, which has separate cost-recovery language, but any civil litigation. This is abundantly evident from context: the first sentence of the paragraph in which the language creating the payment obligation appears states that "the grantor [Ms. Engelhorn] desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets." The Trust's obligation to pay litigation fees and costs is unconditional and immediate—there is no language limiting the circumstances under which the Trust must pay or deferring payment to some future time.

-2-

**C A D W A L A D E R**

Accordingly, I hereby request that Ms. Engelhorn, as Trustee, immediately disburse from the Trust $150,000 and pay Mr. Bolog that amount, following the attached payment instructions. Because the Engelhorn Litigation remains active and ongoing, Mr. Bolog continues to accrue costs and expenses in defending against the Whitewater Investment Claims. We will keep you apprised, on a monthly basis, of additional legal fees and expenses incurred by Mr. Bolog that are required to be paid for by the Whitewater Trust in defense of the Whitewater Investment Claims.

We will expect prompt and timely payment of all incurred legal fees and expenses.

### III. Trust's Obligation To Pay Mr. Bolog's Compensation For Trustee Services

Lastly, Section 5.K. of the Whitewater Trust entitles Mr. Bolog to compensation for his services as Trustee. Mr. Bolog served as Trustee of the Whitewater Trust for 13 months, from its creation on September 30, 2021, until November 2022, when Ms. Engelhorn, through counsel, notified Mr. Bolog that he was being removed as Trustee. During his time as Trustee, Mr. Bolog performed all of the duties required of him as Trustee, providing numerous valuable services benefitting the Trust and Ms. Engelhorn. To-date, Mr. Bolog has received no compensation whatsoever for those services, in direct contravention of the provisions of Section 5.K. of the Trust and the governing law of the Commonwealth of Virginia. *See* Whitewater Trust, Section 10 (providing that Virginia law governs); Va. Code Ann. § 64.2-761 (providing that "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances.")[2]

Given that the Trust held in excess of $100 million of assets at the time Mr. Bolog was the Trustee, Mr. Bolog hereby demands payment for his services as Trustee of the Whitewater Trust in the amount of at least $500,000 based on the customary and reasonable fee of at least 0.5% of the trust assets.

\*     \*     \*

Accordingly, we ask that you (a) voluntarily dismiss the claims in *Engelhorn, et al. v. Bolog, et al.,* by no later than April 4, 2025 and (b) pay Mr. Bolog as demanded above within twenty-one days of the date of this letter or we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

We look forward to your prompt attention to these requests.

---

[2] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

**C A D W A L A D E R**

Sincerely,

Douglas Gansler

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, *et al.*,** ) | |
| ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| **v.** ) | **Case No.: C-24-CV-24-002631** |
| ) | |
| **WHITEFORD, TAYLOR & PRESTON,** ) | |
| **LLP et al.,** ) | |
| ) | |
| ) | |
| *Defendants*. ) | |

---

<u>**AFFIDAVIT OF DOUGLAS F. GANSLER**</u>

1.      I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2.      I am a partner at Cadwalader, Wickersham & Taft LLP and I represent Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") in the above-captioned action.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Whitewater Revocable Trust Agreement dated September 30, 2021.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the March 27, 2025, letter sent to Mr. Wes P. Henderson of the law firm Henderson Law, LLC and counsel for Plaintiff Claudia Engelhorn.

I solemnly affirm on this 1st day of April, 2025, under penalty of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

Douglas F. Gansler

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP's MOTION
### FOR COMMISSION TO ISSUE SUBPOENA TO OUT-OF-STATE WITNESS

Defendant Whiteford, Taylor & Preston LLP ("Whiteford") hereby moves for an order granting it a commission to serve a subpoena for documents and testimony on an individual domiciled in the Commonwealth of Massachusetts, and in support thereof states:

1.    Plaintiff Claudia Engelhorn alleges in this action that defendant Erik Bolog tricked or defrauded her into signing at least three key documents at issue in this case, including a "Notice of Gift" that recites that Ms. Engelhorn intended to make a $10 million gift for the benefit of Mr. Bolog. Ms. Engelhorn alleges that Whiteford is vicariously liable for Mr. Bolog's alleged misconduct with respect to the gift. Mr. Bolog asserts that Ms. Engelhorn made the gift knowingly and intentionally.

2.    According to her Second Amended Complaint, Ms. Engelhorn contends that "Defendant Bolog directed Plaintiff to sign numerous documents [including the Notice of Gift] that were upside down," and that he "did not offer her the opportunity to first

read them, and lulled her into believing the documents concerned routine matters requiring her signature." 2d Am. Compl. ["Compl."] ¶ 36.

3.      Ms. Engelhorn signed two of the documents at issue, the Notice of Gift and the JAREB Irrevocable Trust Agreement dated October 11, 2021, under oath before a notary public of the Commonwealth of Massachusetts named Sarah K. Mayo. *See* Murphy Affidavit (Env. No. 18816799; filed Nov. 15, 2024) Exs. B(2), B(3). Ms. Mayo also appears to have witnessed a third document signed by Ms. Engelhorn and dated October 12, 2021; namely, a memorandum directing Bank of America to transfer $10 million from her account to an account owned by Defendant JAREB Trust, whose trustee and principal beneficiary is Mr. Bolog. *See id.* Ex. B(4).

4.      Undersigned counsel's office has attempted to interview Ms. Mayo but, after a brief initial conversation, she has not returned calls or spoken substantively about her participation in the execution of the three key documents. Accordingly, Whiteford has no choice but to seek compulsory process to obtain relevant and material information from Ms. Mayo.

5.      Massachusetts has not adopted the Uniform Interstate Depositions and Discovery Act, and accordingly a commission is required from this Court to have a subpoena issued from a Massachusetts court for Ms. Mayo's documents and testimony. *See* Mass. G.L. c. 223A, § 11; Mass. G.L. § 233, § 45.

6.      On information and belief, Ms. Mayo resides in Barnstable County, Massachusetts at 55 Carl Landi Circle, E. Falmouth, MA 02536-7752.

7. Douglas Gansler and J.B. Howard, counsel for Defendants Erik Bolog, Erik Bolog as Trustee for the JAREB Irrevocable Trust, Science Park Associates, LLC, and Darnestown Road, Inc., have authorized undersigned counsel to represent that they consent to the relief requested in this motion.

8. Undersigned counsel has on two occasions requested consent from counsel for Plaintiffs to the relief requested in this motion, but as of this writing have not received a definitive response.

9. Other defendants have failed to participate in this action thus far and, accordingly, their views on this motion should not be considered.

WHEREFORE, Defendant Whiteford, Taylor & Preston LLP respectfully requests that the Court grant the motion and require the Clerk to issue a commission in the form attached hereto.

Dated: February 18, 2025

Respectfully submitted,

By: _/s/ John J. Connolly_
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
    (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,
Taylor & Preston, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, a copy of the foregoing was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>J.B. Howard<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>J.B.Howard@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |

 */s/ John J. Connolly*
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

        Plaintiffs,

    v.

        No. C-24-CV-24-002631

ERIK D. BOLOG, *et al.*,

        Defendants.

### ORDER

UPON CONSIDERATION of the motion of Defendant Whiteford, Taylor & Preston LLP (Whiteford) for a commission to take an out-of-state deposition, and the record in this case, it is, this **31st** day of _____ **March** _____, 2025

ORDERED that the motion be, and hereby is, GRANTED; and it is further

ORDERED that the Clerk issue and sign a commission requesting that the Superior Court of Barnstable County, Massachusetts, issue a subpoena for documents and testimony from Sarah K. Mayo, in the form attached hereto.

03/31/2025 10:16:07 AM

Judge, Circuit Court for Baltimore City

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

### COMMISSION TO TAKE DEPOSITION

TO THE SUPERIOR COURT OF BARNSTABLE COUNTY, MASSACHUSETTS:

It is hereby requested, in accordance with the terms of the attached Order entered on the ___1st___ day of ___April___, 2025, by the Circuit Court for Baltimore City, Maryland, that this Honorable Court issue a subpoena commanding

> Sarah K. Mayo, Notary Public
> 55 Carl Landi Circle
> E. Falmouth, MA 02536-7752

to provide oral testimony at a deposition for discovery or use in the captioned action, to be recorded by videotape and/or stenographic means in accordance with Massachusetts law, and to produce for inspection and copying her entire file of documents, including electronic documents and drafts, referring or relating to her notary and document-witnessing services provided to Erik Bolog and/or Claudia Engelhorn, on or about October 11-12, 2021. The subpoena shall require testimony and production of documents at a location in Barnstable County, Massachusetts, or such other place as the parties and witness mutually agree.

Clerk, Circuit Court for Baltimore City

FILED: Baltimore City Circuit Court
Docket: 4/4/2025 5:38 PM; Submission: 4/4/2025 5:38 PM
Envelope: 20670985

## THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

## AMENDMENT BY INTERLINEATION OF PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Claudia Engelhorn, by and through her undersigned counsel, files this Amendment by Interlineation to her Reply in Support of her Motion to Compel, and states that her Reply in Support of Plaintiff's Motion to Compel should be amended to as follows:

The WHEREFORE clause should read:

WHEREFORE, Plaintiff, Claudia Engelhorn respectfully requests that this Honorable Court:

1. Grant Plaintiff's Motion to Compel;

2. Order Defendants Darnestown Road, Inc., and Science Park Associates, Inc., to serve executed Answers to Interrogatories in compliance with Maryland Rule 2-421(b);

3. Order Defendants Erik D. Bolog, Individually, Erik D. Bolog as Trustee of the JAREB Irrevocable Trust, Darnestown Road Inc., and Science Park Associates, Inc., to produce all documents responsive to Plaintiff's Requests for Production of Documents; and

2.        Grant such other and further relief as this Court deems just and proper.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of April 2025, a copy of the foregoing was sent

via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

3

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

_____
          /s/ PDG
Patrick D. Gardiner, Esq. (AIS# 1506160113)

# Exhibit A

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**DEFENDANT SCIENCE PARK ASSOCIATES, LLC'S, SUPPLEMENTAL RESPONSES
AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

In accordance with Rule 2-421 of the Maryland Rules, Defendant Science Park Associates,

LLC. ("Science Park" or the "Defendant"), by and through his undersigned counsel, hereby

responds and objects to Plaintiff Claudia Engelhorn's First Set of Interrogatories to Defendant

Science Park Associates, LLC., (collectively, the "Interrogatories" and each individual

interrogatory, an "Interrogatory") including the "Interrogatories," "Definitions," and

"Instructions" contained therein, as follows:[1]

**GENERAL OBJECTIONS**

The following general objections (the "General Objections") are incorporated into each

specific Response and Objection below (the "Specific Responses and Objections") as if they were

---

[1] Following the Court's decision on the Petition to Compel Arbitration and related Motion to Stay
Proceedings, these Responses and Objections supplement Defendant's Responses and Objections
served on or around December 17, 2024. (*See* General Objection No. 1 to R&Os served on or
around December 17, 2024.)

**INTERROGATORY NO. 19:**

If you contend that Plaintiffs and/or any of their representatives have made any admission against interest, state the substance of the admission, identify the communication concerning the admission, identify all documents that refer or relate to the admission, and identify all persons who have personal knowledge of the admission.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement.

**INTERROGATORY NO. 20:**

Please identify all of your current and former members.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement.

Dated: April 1, 2025

As to objections:

         Respectfully submitted,

         CADWALADER, WICKERSHAM & TAFT LLP

         Respectfully,

         Douglas F. Gansler (Bar Number: 8912180208)
         J.B. Howard (Bar Number: 9106200125)
         Cadwalader, Wickersham & Taft LLP
         1919 Pennsylvania Ave N.W.
         Washington D.C. 20006
         Douglas.Gansler@cwt.com
         Telephone: (202) 862-2300
         j.b.howard@cwt.com

         *Counsel for Defendant Science Park Associates,*
         *LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2025, a copy of the foregoing was served electronically via Electronic Mail upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via Electronic Mail:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Science Park
Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 4/4/2025 2:04 PM; Submission: 4/4/2025 2:04 PM
Envelope: 20665766

## THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, ET AL.     )
                                  )
     *Plaintiffs*          )
                                  )
v.                            )     **Case No.: C-24-CV-24-002631**
                                  )
ERIK D. BOLOG, ET AL.        )
                                  )
     *Defendants*.         )

_____

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Claudia Engelhorn, by and through their undersigned counsel, files this Reply in Support of her Motion to Compel, and in support thereof, respectfully states as follows:

1.     Plaintiff's Motion to Compel is not moot because two Defendants, Darnestown Road Inc., and Science Park Associates, Inc., have not produced executed answers to interrogatories, and none of the Defendants addressed in the Motion to Compel have produced any responsive documents.

2.     On October 10, 2024, Plaintiff, Claudia Engelhorn, served Defendants Erik D. Bolog Individually, Erik D. Bolog as Trustee of the JAREB Irrevocable Trust, Darnestown Road Inc., ("Darnestown Road") and Science Park Associates, Inc., ("Science Park") (collectively "the Bolog Defendants") with discovery requests, including Interrogatories and Requests for Production of Documents, pursuant to the Maryland Rules of Civil Procedure.

3.     Maryland Rule 2-432(a) permits a party to move for an order compelling discovery when the opposing party fails to provide responses to discovery requests.

4.     The Bolog Defendants failed to timely respond to Plaintiff's discovery requests, necessitating the filing of a Motion to Compel on March 17, 2025.

5.      Maryland Rule 2-421(b) requires that the responding party answer the interrogatories under oath and that they "shall be signed" by the responding party.

6.      On April 1, 2025, the Bolog Defendants served unexecuted answers to interrogatories for each of the Bolog Defendants. Counsel for the Bolog Defendants represented that Mr. Bolog, Individually and in his capacity as the Trustee of the JAREB Trust, would produce executed answers to interrogatories within two business days.

7.      During the evening of April 3, 2025, Defendant Bolog Individually, and as Trustee for the JAREB Irrevocable Trust, each provided executed Answers to Interrogatories.

8.      Darnestown Road, Inc., and Science Park, produced Answers to Interrogatories that were not executed and which did not even contain a blank Oath for the responding party to execute. A true and accurate copy of the relevant portions of Science Park's Answers to Plaintiff's Interrogatories are attached hereto as Exhibit A.[1] On April 4, 2025, at 8:46 AM, the Undersigned counsel inquired via email whether Science Park and Darnsetown Road would be providing belatedly executed answers to interrogatories as well, but as of the time of this filing, counsel has not received a response to this inquiry.

9.      The Bolog Defendants have provided written responses to Plaintiff's Document Requests, but they have failed to produce or make available for inspection any documents responsive to said requests.

10.     In as much as the original Motion to Compel was premised on the Bolog Defendants' complete failure to respond to Plaintiff Engelhorn's written discovery requests, it is moot with respect to the following issues only:

---

[1] Darnestown Road's Answers to Interrogatories are substantially the same as Exhibit A and likewise lack any oath or affirmation.

2

a.   The complete failure to provide written responses to Plaintiff's Request for Production of Documents;

b.   The Complete failure of Defendant Bolog, Individually, and as Trustee for the JAREB Irrevocable Trust, to provide Answers to Plaintiff's Interrogatories.

11.    The Bolog Defendants filed an Opposition on April 1, 2025, misrepresenting that the Motion to Compel was moot because "the Bolog Defendants served fulsome responses and objections to Ms. Engelhorn's document requests and interrogatories."

12.    Despite this representation, the Bolog Defendants have failed to:

a.   Serve *executed* Answers to Interrogatories for Darnestown Road and Science Park *under oath* in accordance with Maryland Rule 2-421[2]; and

b.   Produce any documents whatsoever in response to Plaintiff's Requests for Production of Documents.

13.    The Bolog Defendants have not complied with their discovery obligations under the Maryland Rules, despite the filing of a Motion to Compel.

14.    Defendant's failure to comply with its discovery obligations prejudices Plaintiff by delaying the progress of this case and hindering all Plaintiffs' ability to prepare for trial and designate expert witnesses in accordance with the Scheduling Order.

WHEREFORE, Plaintiff, Claudia Engelhorn respectfully requests that this Honorable Court:

1.    Grant Plaintiff's Motion to Compel and order Defendants Darnestown Road and Science Park to (a) Serve executed Answers to Interrogatories in compliance with Maryland Rule

---

[2] As of the date the Bolog Defendants filed their Opposition (April 1, 2025) and made these representations, none of the Bolog Defendants had served executed answers to Interrogatories.

2-421(d) and (b) Produce all documents responsive to Plaintiff's Requests for Production of

Documents; and

2.      Grant such other and further relief as this Court deems just and proper.


Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*


## CERTIFICATION OF GOOD FAITH EFFORT

Undersigned counsel certifies that he has made the good faith efforts identified herein to

obtain the requested discovery without judicial intervention, but those efforts have been

unsuccessful.

_____/s/ PDG (AIS# 1506160113)_____
Patrick D. Gardiner, Esq. (AIS# 1506160113)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of April 2025 that, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

5

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

      /s/ PDG
Patrick D. Gardiner, Esq. (AIS# 1506160113)

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | **IN THE** |
| **v.** | **CIRCUIT COURT** |
| **ERIK D. BOLOG, ET AL.** | **FOR BALTIMORE CITY** |
| | **Case No. C-24-CV-24-002631** |

## ORDER

Upon consideration of Plaintiff's Motion to Compel Discovery Responses docketed on March 17, 2025, Bolog Defendants' Opposition to Plaintiff's Motion to Compel docketed on April 1, 2025, and Plaintiff's Reply in Support of Plaintiff's Motion to Compel docketed on April 4, 2025, it is this **8th** day of **April, 2025** hereby

**ORDERED** that Plaintiff's Motion to Compel Answers to Plaintiff's Interrogatories from Defendant Erik D. Bolog, Individually and as Trustee for the JAREB Irrevocable Trust, is **DENIED as moot,** and it is further

**ORDERED** that Defendants Darnestown Road, Inc. and Science Park Associates, Inc. produce full and complete responses to Plaintiff's Interrogatories in compliance with Maryland Rule 2-421(b) within fifteen (15) days of the docketing of this order, and it is further

**ORDERED** that Defendants Erik D. Bolog, Individually and as Trustee for the JAREB Irrevocable Trust, Darnestown Road Inc., and Science Park Associates Inc. produce full and complete responses to Plaintiff's Requests for Production of Documents within fifteen (15) days of the docketing of this order.

04/08/2025 3:30:45 PM

_____

Judge Charles H. Dorsey III
Circuit Court for Baltimore City

Cc: All Counsel of Record

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

<u>**BOLOG DEFENDANTS' PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS**</u>

Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("Mr. Bolog as Trustee"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby petition for an order compelling arbitration of all the claims that arise under the Whitewater Revocable Trust Dated September 30, 2021 ("Whitewater Trust" or "Trust"), Exh. A, *i.e.*, those claims related to transactions involving Science Park, Darnestown Road, and Swain Landing ("Whitewater Claims"), as more precisely defined below.  The Bolog Defendants also hereby request a concurrent stay of the Whitewater Claims until the resolution of such arbitration.

## **INTRODUCTION**

Not only are the Whitewater Claims without merit, they should have never been brought before this Court in the first place, if for no other reason than that they are unambiguously subject to mandatory arbitration under the Whitewater Trust. The Bolog Defendants sent the "written request" to Plaintiffs triggering their obligation to submit the Whitewater Claims to arbitration and absolve this Court and the parties to litigate formal motion practice concerning arbitration. Plaintiffs flatly refused. Plaintiffs' failure to arbitrate the Whitewater Claims in the first instance, and now their abject and unjustified failure to do so after the Bolog Defendants' issued a binding written request to do so, only serves to reinforces that Plaintiffs' goal here in this litigation is to tarnish Mr. Bolog and his hard-earned, decades-long reputation as an outstanding attorney and savvy businessman.

For the reasons set forth below, the Court should (1) stay the Whitewater Claims pending adjudication of this Petition and (2) issue an order compelling Plaintiffs to arbitrate the Whitewater Claims.

## **FACTUAL BACKGROUND**

As alleged in the Second Amended Complaint, Mr. Bolog served as the co-trustee of the

Whitewater Trust from its inception until on or around November 3, 2022. (SAC ¶¶ 33, 58). With

the full approval of his co-trustee Ms. Engelhorn, the Whitewater Trust engaged in certain

transactions related to Science Park, Darnestown Road, and Swain Landing, and the Whitewater

Claims constitute controversies arising under the Whitewater Trust, that must be arbitrated now

that Plaintiff Engelhorn has been served with a request for arbitration in writing.

Specifically, Section 9 of the Whitewater Trust Agreement requires the arbitration of "any

controversy . . . involving the construction or application of any of the terms, provisions, or

conditions of this trust" between the trustee and a party "on the written request of either or any

disagreeing party to the trust . . . ."  Arbitration "on written request" of the trustee is *mandatory*:

Section 9 provides that any such controversy "*shall* . . . be submitted to arbitration."  (Emphasis

added).  Exh. A.

The Whitewater Claims comprise the following claims in the Second Amended Complaint

("SAC"):

- Counts X and XI (constructive trust over Darnestown Road, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

All of these counts relate to transactions that the Whitewater Trust--with Mr. Bolog's full

disclosure of all waivable conflicts, and at the insistence of Ms. Engelhorn--became involved in

with two different entities affiliated with Mr. Bolog. With respect to Science Park, the Whitewater

Trust purchased a loan from a regional bank relating to Science Park for approximately

$3,352,650. SAC ¶¶ 50-51. This loan was secured by a deed of trust on an office building located

in Greenbelt, Maryland. The property was sold soon thereafter, and the Whitewater Trust was repaid all principal, interest, and costs, totaling approximately $3.7 million—a profit of approximately $350,000. Indeed, Plaintiffs admit in the SAC itself that the the payoff for the Trust was $3,689,662.77, and that the Trust was paid *exactly that amount*. Thus, not only do the Science Park claims fail to allege damages, the opportunity proved very lucrative for Ms. Engelhorn and the Whitewater Trust.

With respect to Darnestown Road, the Whitewater Trust loaned that entity funds in connection with the operation of a 100,000 square foot shopping center located in Richmond, Virginia. The Second Amended Complaint conveniently, and fatally, fails to allege the material and necessary facts that such loan is not yet due, and that any claim for damages is not ripe. At the time of these loans were issued, Mr. Bolog served as co-trustee of the Whitewater Trust.

Consistent with the above and in accordance with the express terms of Section 9 of the Whitewater Trust, by letter dated March 27, 2025 counsel for the Bolog Defendants served Ms. Engelhorn's counsel with a "written request" for arbitration of the claims in the SAC that arise under the Whitewater Trust, *i.e.*, the Whitewater Claims ("Arbitration Letter"). Exh. B. The Arbitration Letter also requested that Ms. Engelhorn's counsel voluntarily dismiss the Whitewater Claims from this action by no later than April 4, 2025. On that date, counsel for Plaintiffs responded that they "will not be taking any of the requested actions," necessitating the filing of this Petition. Exh. C.

## ARGUMENT

### I.    THE COURT SHOULD APPLY MARYLAND LAW TO PROCEDURAL ISSUES AND VIRGINIA LAW TO SUBSTANTIVE ISSUES.

As an initial matter, because plaintiffs initiated this action in this Court, the procedural law of Maryland applies. *See Am. Hous. Pres., LLC v. Hudson SLP, LLC*, No. 1241 Sept.term 2015,

2016 WL 7496181, at *9 (Md. Ct. Spec. App. Dec. 20, 2016) ("where a contract's governing law differs from that of the forum state, the court shall apply the laws of the forum to procedural matters").

As for substantive matters, the Whitewater Trust Agreement unequivocally states that the Whitewater Trust Agreement "and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law." Exh. A, Section 10. Accordingly, substantive questions concerning the interpretation and validity of the Whitewater Trust are governed by the laws of the Commonwealth of Virginia.

## II.    THE COURT SHOULD ISSUE AN IMMEDIATE STAY OF ALL PROCEEDINGS RELATED TO THE WHITEWATER CLAIMS.

The plain language of Maryland's Uniform Arbitration Act ("MUAA") requires that this action be stayed by the filing of this petition: "A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made." Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) (emphasis added); *see Questar Homes of Avalon, LLC* v. *Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). As set forth above, the Whitewater Claims are subject to a mandatory contractual arbitration clause, triggering arbitration by "written request." Exh. A. Accordingly, the Bolog Defendants respectfully request that the Court issue a stay of proceedings, including discovery.

## III.    THE COURT SHOULD ISSUE AN ORDER COMPELLING ARBITRATION OF THE WHITEWATER CLAIMS.

Under the MUAA, when one party refuses to arbitrate, the other "may file a petition with a court to order arbitration." Md. Code Ann., Cts. & Jud. Proc. § 3-207(a). "If the court determines that the agreement exists, *it shall order arbitration*." *Id.* § 3-207(c) (emphasis added). Because of Maryland's strong "public policy favoring the use of arbitration to resolve disputes, courts should

resolve doubts about the scope of arbitrable issues in favor of arbitrability." *Gannett Fleming, Inc.*

*v. Corman Constr., Inc.*, 243 Md. App. 376, 400-01 (2019); *see also Holmes v. Coverall N. Am.,*

*Inc.*, 336 Md. 534, 551, 649 A.2d 365, 373 (1994) ("the public policy favoring arbitration would

be frustrated if arbitration agreements were not enforced"). Further, "the use of a broad, all

encompassing arbitration clause ordinarily leads to the presumption that the parties intended the

arbitration of all disputes." *Cont. Const., Inc. v. Power Tech. Ctr. Ltd. P'ship*, 100 Md. App. 173,

178 (1994).

Where, as here "the arbitration clause calls for the arbitration of any and all disputes arising

out of the contract, all issues are arbitrable unless expressly excluded." *Cont. Const., Inc. v. Power*

*Tech. Ctr. Ltd. P'ship*, 100 Md. App. 173, 178 (1994). The Whitewater Trust Agreement is

extraordinarily broad, covering "[a]ny controversy between the trustees . . . involving the

construction of application of any of the terms, provisions, or conditions of this trust agreement"

between the trustee and a party "on the written request of either or any disagreeing party to the

trust" on "written request" of the trustee, *i.e.* Mr. Bolog, "*shall . . .* be submitted to arbitration."

Exh. B. Moreover, counsel for Plaintiff's summary refusal to arbitrate does not even attempt to

explain why arbitration is not required under this language, rendering the necessity of arbitration

effectively undisputed.

There is no question here that the Whitewater Claims concern a "controversy between the

trustees" and must be submitted to mandatory arbitration. The Whitewater Claims relating to

Science Park and Darnestown concern transactions that Mr. Bolog, as Trustee of the Whitewater

Trust, made—with full authority under the Trust and with the full knowledge, awareness, and

participation of Ms. Engelhorn—using Trust funds.  The Whitewater Claims therefore involve

"controvers[ies]" within the scope of the mandatory arbitration provisions of Section 9 of the Trust.

And, although Mr. Bolog had no involvement, in any capacity whatsoever with the Swain Landing transaction, according to counsel for Whitewater, the Swain Landing transaction is a Whitewater Trust transaction which occurred while Mr. Bolog was the co-Trustee of the Whitewater Trust and thus, the Plaintiffs' claims relating to Swain Landing also fall within the mandatory arbitration provisions of Section 9 of the Whitewater Trust.  *See* letter from Tony Williams, (counsel for Whitewater Trust to Mike Postal), attached hereto as Exh. D.  Accordingly, those claims likewise fall within Section 9 of the Whitewater Trust Agreement's mandatory arbitration provision

## **CONCLUSION**

For the foregoing reasons, the Bolog Defendants respectfully request that the Court (1) stay all proceedings in this action pending adjudication of this Petition and (2) issue an order compelling the arbitration of the Whitewater Claims.

Dated:    April 18, 2025

                      Respectfully submitted,

                      CADWALADER, WICKERSHAM & TAFT LLP

                      Respectfully,

                      Douglas F. Gansler (Bar Number: 8912180208)
                      J.B. Howard (Bar Number: 9106200125)
                      Cadwalader, Wickersham & Taft LLP
                      1919 Pennsylvania Ave N.W.
                      Washington D.C. 20006
                      Douglas.Gansler@cwt.com
                      Telephone: (202) 862-2300
                      j.b.howard@cwt.com

                      *Counsel for Defendants Erik D. Bolog,*
                      *Individually and as Trustee of the JAREB*
                      *Irrevocable Trust Agreement dated October 11,*
                      *2021; Darnestown Road, Inc.; and Science Park*
                      *Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a copy of the foregoing was served electronically via MDEC upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

# EXHIBIT A

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

## TABLE OF CONTENTS

SECTION 1.    CREATION OF TRUST ................................................................ 1
SECTION 2.    TRUST DURING GRANTOR'S LIFETIME ................................ 1
SECTION 3.    UPON GRANTOR'S DEATH .................................................... 2
  A.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY ......... 2
  B.    CASH DISTRIBUTION .......................................................... 2
  C.    PAYMENT OF INDEBTEDNESS .......................................... 2
  D.    DISTRIBUTION OF BALANCE OF TRUST ........................... 2
SECTION 4.    TRUSTEES ........................................................................ 3
  A.    SUCCESSOR TRUSTEES .................................................... 3
  B.    COMPENSATION .............................................................. 3
  C.    RESIGNATION .................................................................. 3
  D.    REMOVAL ........................................................................ 4
  E.    EMERGENCY ACTION ...................................................... 4
  F.    EMPLOYMENT OF INVESTMENT ADVISOR ....................... 4
SECTION 5.    POWERS OF TRUSTEE ...................................................... 5
  A.    RETAIN RESIDENCE IN TRUST ......................................... 5
  B.    DEAL WITH PROPERTY .................................................... 6
  C.    MARGIN AND BANK ACCOUNTS ...................................... 6
  D.    REGISTER IN NOMINEE FORM .......................................... 6
  E.    DISPOSE OF CLAIMS ........................................................ 6
  F.    EXECUTE DOCUMENTS .................................................... 6
  G.    DIVIDE PROPERTY .......................................................... 6
  H.    BORROW FUNDS OR MAKE LOANS .................................. 6
  I.    EMPLOY AGENTS ............................................................ 6
  J.    MAKE TAX ELECTIONS .................................................... 7
  K.    CARRY ON BUSINESS ...................................................... 7
  L.    S CORPORATION STOCK .................................................. 7
  M.    TREAT AS COMMON FUND ............................................... 8
  N.    RECEIVE ADDITIONAL PROPERTY ................................... 8
  O.    MERGE TRUSTS .............................................................. 9
  P.    DIVIDE TRUSTS ............................................................... 9
  Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS ............ 9
  R.    DEAL WITH DIGITAL ASSETS ........................................... 9
  S.    KEEP INFORMATION CONFIDENTIAL ............................. 10
  T.    DO ALL THINGS WITH FINAL AUTHORITY ...................... 10
SECTION 6.    DUTIES OF TRUSTEE ...................................................... 10

A.  PAY DEATH TAXES AND SATISFY CASH NEEDS.................................................. 10
B.  PAY DELIVERY EXPENSES................................................................................... 10
C.  PAY DIRECTLY TO BENEFICIARIES .................................................................. 10
D.  DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E.  MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS ...................................................................................................................... 11
F.  MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE ......................................................................................................................... 11
G.  PAY INCOME AT TERMINATION OF TRUSTS ................................................. 11
H.  ADMINISTER WITHOUT COURT SUPERVISION ............................................. 11
I.  RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ......................... 11
SECTION 7.  INCAPACITY........................................................................................... 12
A.  DETERMINATION OF INCAPACITY .................................................................. 12
B.  DURATION OF INCAPACITY ............................................................................... 12
C.  EFFECT OF INCAPACITY ..................................................................................... 13
D.  REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.  REVOCATION OR AMENDMENT........................................................ 13
SECTION 9.  RESOLUTION OF CONTROVERSIES ................................................... 13
SECTION 10.  GOVERNING LAW................................................................................ 14
SECTION 11.  RULE AGAINST PERPETUITIES ........................................................ 15
SECTION 12.  BINDING AGREEMENT ....................................................................... 15
SCHEDULE A ................................................................................................... 17
SCHEDULE B ................................................................................................... 18
SCHEDULE C ................................................................................................... 19
SCHEDULE D ................................................................................................... 20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone. Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

**SECTION 1. CREATION OF TRUST.** The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property. The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement. This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021.**

**SECTION 2. TRUST DURING GRANTOR'S LIFETIME.** During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs. However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

SECTION 3.    **UPON GRANTOR'S DEATH.**   Upon the grantor's death, this trust shall be administered and disposed of as follows.

A.    **DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.**   The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

B.    **CASH DISTRIBUTION.**   The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them. If none are then living, this gift shall lapse.

C.    **PAYMENT OF INDEBTEDNESS.**   The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

D.    **DISTRIBUTION OF BALANCE OF TRUST.**   The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia. If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

---

**WHITEWATER** Revocable Trust Agreement

## SECTION 4.    TRUSTEES.

A.    **SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee.  If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee.  If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee.  If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee.  If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.  The grantor appoints as a successor trustee any person or corporation so designated.

B.    **COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00).  Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows:  1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

C.    **RESIGNATION.** A trustee may resign at any time by an instrument in writing.  No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                                3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

D.    **REMOVAL.** The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

E.    **EMERGENCY ACTION.** If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

F.    **EMPLOYMENT OF INVESTMENT ADVISOR.** The successor trustee then serving shall continue to engage the services of the investment advisor employed by

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    4

the grantor at the time of her death or incapacity to manage the investment of the trust property. If no investment advisor was employed by the grantor at the time of her death or incapacity, the successor trustee shall engage a professional investment advisory firm to manage the investment of the trust property.

SECTION 5.　　POWERS OF TRUSTEE. In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, the powers listed below, which they may exercise without prior or subsequent approval by any court. In addition, the grantor specifically incorporates the provisions of §64.2-105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers listed below. The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct. For convenience the grantor is referring to these fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the singular and plural, include each other wherever appropriate in any reference to any person or corporation in this agreement.

A.　　RETAIN RESIDENCE IN TRUST. To retain in any trust any residence transferred to the trust by the grantor. The trustee shall permit the grantor to occupy the residence, rent free, for whatever period of time the trustee may reasonably determine. The trustee is not required to make any charge against income or principal for depreciation. The trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*　　　　　　5

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.    DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.    MARGIN AND BANK ACCOUNTS.** To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.    REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.    DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.    EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**G.    DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.    BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.    EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    6

**J.    MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

**K.    CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**L.    S CORPORATION STOCK.**    During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

(1) **Electing Small Business Trust.** If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

(2) **Qualified Subchapter S Trust.** If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    7

(a) If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b)    Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c)    The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d)    The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

**(3)    Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

**(a)**    The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

**(b)**    No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.    TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.    RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**WHITEWATER** Revocable Trust Agreement

**O.    MERGE TRUSTS.**  To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P.    DIVIDE TRUSTS.**  To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS.**  To deal with any potential generation-skipping transfer (GST) as follows:

**(1)**    Fund With Appreciating Assets.  To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)**    Disregard GST Tax Consequences.  To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax.  The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)**    Make Distributions From Divided Trusts.  With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

**(a)**    To make distributions of income and principal to skip persons from the exempt trust;

**(b)**    To make distributions of income and principal to non-skip persons from the non-exempt trust; and

**(c)**    To pay estate, inheritance and other death taxes from the non-exempt trust.

**R.    DEAL WITH DIGITAL ASSETS.**  To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.**     **KEEP INFORMATION CONFIDENTIAL.**  In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual.  Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.**     **DO ALL THINGS WITH FINAL AUTHORITY.**  To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property.  All decisions taken in good faith are binding on all persons.

**SECTION 6.**     **DUTIES OF TRUSTEE.**  The grantor authorizes the trustee and any successor trustees, without prior or subsequent approval by any court:

**A.**     **PAY DEATH TAXES AND SATISFY CASH NEEDS.**  Subject to the provisions of Section 6.I of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise.  Taxes include interest and also penalties not caused by negligence or bad faith.  Subject to the provisions of Section 6.I of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate.  Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust:  (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes.  In no event shall there be any right of reimbursement from any person.

**B.**     **PAY DELIVERY EXPENSES.**  To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.**     **PAY DIRECTLY TO BENEFICIARIES.**  To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person.  A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary.  No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.   DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**   Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.   MAKE BINDING DECISIONS WITH RESPECT TO DISCRE-TIONARY PAYMENTS.**  In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person.  No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust.  All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.   MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**  No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee.  No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.   PAY INCOME AT TERMINATION OF TRUSTS.**  To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary.  If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.   ADMINISTER WITHOUT COURT SUPERVISION.**  To administer all trusts without court supervision.  If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.   RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.**  Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    11

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

## SECTION 7.    INCAPACITY.

    **A.    DETERMINATION OF INCAPACITY.**   Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

    **(1)**    Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

    **(2)**    A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

    **(3)**    Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

    **B.    DURATION OF INCAPACITY.**   Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

WHITEWATER Revocable Trust Agreement

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

C.      **EFFECT OF INCAPACITY.**

(1)    If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues. If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)    If the grantor is determined to be incapacitated, then notwith-standing any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement. If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

D.      **REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.**  Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney. The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court. The decision of any attorney in fact, parent or guardian is binding on all persons.

**SECTION 8.      REVOCATION OR AMENDMENT.**  The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person.  In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime. This trust shall become irrevocable upon the grantor's death.

**SECTION 9.      RESOLUTION OF CONTROVERSIES.**  Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

SECTION 10.   GOVERNING LAW.  This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    14

**SECTION 11.** **RULE AGAINST PERPETUITIES.** The common law rule against perpetuities shall not apply to this agreement and the trusts created by this agreement.

**SECTION 12.** **BINDING AGREEMENT.** This agreement is binding upon and inures to the benefit of the parties and their respective personal representatives, successors in interest, and successors in trust.

**EXECUTED** on September 30, 2021.

WITNESS:

_____ _Wilmington NC_          _Claudia Engelhorn_ (SEAL)
                                                  CLAUDIA ENGELHORN, Grantor

_____ _Wilmington NC_          _Claudia Engelhorn_ (SEAL)
                                                  CLAUDIA ENGELHORN, Trustee

_____ _Fairfax VA_             _____ (SEAL)
                                                  ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable trust agreement, and acknowledged it to be his act and deed.

_____                          _Fairfax VA_
Notary Public

_____

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN**, grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021,** have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

## SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials | | Date Transferred |
|-------|-----------------|----------|----------|------------------|
| | | Grantor | Trustee | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    17

## SCHEDULE B

## DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me. I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** to the person named, if, in each case, that person is living 30 days after my death.

*Description of Personal Property*                    *Desired Recipient And Relationship*

_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____

                                          _____
                                          CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    18

# SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

_Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260_                    19

# SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me. To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
|---|---|---|---|
| | | | |

CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
## DATED
## SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN**, hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021.**

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    3

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____ awrniwiwT NC          _____ (SEAL)
                                              CLAUDIA ENGELHORN, Grantor

_____ awuriuo NC            _____ (SEAL)
                                              CLAUDIA ENGELHORN, Trustee

_____ favfar                _____ (SEAL)
                    VA                        ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN,** the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and acknowledged the foregoing abstract of trust to be her act and deed.

_____ Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG,** one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and acknowledged the foregoing abstract of trust to be his act and deed.

_____ Notary Public
                    Fairfax, VA

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                4

## ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
## DATED SEPTEMBER 30, 2021

I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

**EXECUTED** as of September 30, 2021.

WITNESS:

_____     _____ (SEAL)
                                      CLAUDIA ENGELHORN

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

_____
Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION
EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

E-FILED; Baltimore City Circuit Court
Docket: 4/18/2025 5:19 PM; Submission: 4/18/2025 5:19 PM
Envelope: 20856792

# EXHIBIT B

CADWALADER

Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue N.W., Washington, D.C. 20006
Tel +1 202 862 2200   Fax +1 202 862 2400
www.cadwalader.com

March 27, 2025

**VIA ELECTRONIC MAIL**

Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite
204 Crofton, MD 21114

Re: *Request For Arbitration Under Section 9 Of The Whitewater Revocable Trust, Dated
September 30, 2021; For Payment of Legal Fees and Costs Under Section 9; And For
Compensation As Trustee Under Section 5*

Dear Mr. Henderson:

As set forth more fully below, this letter represents the written request of my client, Mr. Erik
D. Bolog, in both his individual capacity and, during all relevant times, his capacity as Trustee
of the Whitewater Revocable Trust Agreement of September 30, 2021 (the "Whitewater
Trust" or the "Trust"),[1] to: (a) arbitrate the Whitewater Investment Claims (as defined below);
(b) receive immediate payment from the Trust for Mr. Bolog's attorney's fees and costs
incurred defending against the Whitewater Investment Claims; and (c) receive compensation
from the Trust for services as Trustee of the Trust.

**I.      Mandatory Arbitration Of Claims Brought By The Whitewater Trust**

Section 9 of the Whitewater Trust requires the arbitration of "any controversy . . . involving
the construction or application of any of the terms, provisions, or conditions of this trust"
between the trustee and a party "on the written request of either or any disagreeing party to the
trust . . . ."  Arbitration "on written request" of the trustee is *mandatory*: stating that any such
controversy "*shall* . . . be submitted to arbitration."  (Emphasis added).

Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant to the claims you
have asserted in the Second Amended Complaint in *Claudia Engelhorn, et al. v. Erik Bolog,
et al.*, C-24-CV-002631, Cir. Ct. for Balt. City, Md. (the "Engelhorn Litigation"), that relate to
investments and/or loans using funds from the Whitewater Trust in Science Park Associates,

---

[1] As stated in Section 10 of the Trust, "[a]ll questions pertaining to the . . . construction of the [Trust]
agreement shall be determined, and the trust shall be administered, under Virginia Law."

**C A D W A L A D E R**

LLC ("Science Park"), Darnestown Road, Inc. ("Darnestown"), and Swain Landing LaPlata JC, LLC ("Swain Landing") (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

The Whitewater Investment Claims relating to Science Park and Darnestown concern investments that Mr. Bolog, as Trustee of the Whitewater Trust, made—with full authority under the Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using Trust funds. The Whitewater Investment Claims therefore involve "controvers[ies]" within the scope of the mandatory arbitration provisions of Section 9 of the Trust. And, although Mr. Bolog had no involvement, in any capacity whatsoever, relating to the Whitewater Trust's investment in Swain Landing, to the extent there are allegations that such an investment was made with Whitewater Trust funds during the time he was Trustee, those claims would likewise fall within Section 9's mandatory arbitration provisions.

Accordingly, Mr. Bolog hereby serves on Ms. Engelhorn this written request to submit the Whitewater Investment Claims to arbitration, to be conducted in compliance with the commercial Arbitration Rules of the American Arbitration Association, as provided in Section 9 of the Trust, and with the other applicable terms of Section 9. In addition, because arbitration of the Whitewater Investment Claims is mandatory in light of this written request, I hereby request that you file a voluntary motion to dismiss those claims with prejudice by no later than April 4, 2025. If the Whitewater Trust does not dismiss the Whitewater Investment Claims by this deadline, we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

## II.      Trust's Obligation To Immediately Pay Mr. Bolog For Fees And Costs Incurred

Section 9 of the Trust separately provides that "[t]he defense of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust." The "litigation" to which this sentence refers encompasses not only arbitration, which has separate cost-recovery language, but any civil litigation. This is abundantly evident from context: the first sentence of the paragraph in which the language creating the payment obligation appears states that "the grantor [Ms. Engelhorn] desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets." The Trust's obligation to pay litigation fees and costs is unconditional and immediate—there is no language limiting the circumstances under which the Trust must pay or deferring payment to some future time.

C A D W A L A D E R

Accordingly, I hereby request that Ms. Engelhorn, as Trustee, immediately disburse from the Trust $150,000 and pay Mr. Bolog that amount, following the attached payment instructions. Because the Engelhorn Litigation remains active and ongoing, Mr. Bolog continues to accrue costs and expenses in defending against the Whitewater Investment Claims. We will keep you apprised, on a monthly basis, of additional legal fees and expenses incurred by Mr. Bolog that are required to be paid for by the Whitewater Trust in defense of the Whitewater Investment Claims.

We will expect prompt and timely payment of all incurred legal fees and expenses.

### III.    Trust's Obligation To Pay Mr. Bolog's Compensation For Trustee Services

Lastly, Section 5.K. of the Whitewater Trust entitles Mr. Bolog to compensation for his services as Trustee.  Mr. Bolog served as Trustee of the Whitewater Trust for 13 months, from its creation on September 30, 2021, until November 2022, when Ms. Engelhorn, through counsel, notified Mr. Bolog that he was being removed as Trustee.  During his time as Trustee, Mr. Bolog performed all of the duties required of him as Trustee, providing numerous valuable services benefitting the Trust and Ms. Engelhorn. To-date, Mr. Bolog has received no compensation whatsoever for those services, in direct contravention of the provisions of Section 5.K. of the Trust and the governing law of the Commonwealth of Virginia. *See* Whitewater Trust, Section 10 (providing that Virginia law governs); Va. Code Ann. § 64.2-761 (providing that "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances.")[2]

Given that the Trust held in excess of $100 million of assets at the time Mr. Bolog was the Trustee, Mr. Bolog hereby demands payment for his services as Trustee of the Whitewater Trust in the amount of at least $500,000 based on the customary and reasonable fee of at least 0.5% of the trust assets.

*        *        *

Accordingly, we ask that you (a) voluntarily dismiss the claims in *Engelhorn, et al. v. Bolog, et al.,* by no later than April 4, 2025 and (b) pay Mr. Bolog as demanded above within twenty-one days of the date of this letter or we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

We look forward to your prompt attention to these requests.

---

[2] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

**CADWALADER**

Sincerely,

Douglas Gansler

E-FILED; Baltimore City Circuit Court
Docket: 4/18/2025 5:19 PM; Submission: 4/18/2025 5:19 PM
Envelope: 20856792

# EXHIBIT C

**Howard, J.B.**

| | |
|---|---|
| **From:** | Wes Henderson <wph@hendersonlawllc.com> |
| **Sent:** | Friday, April 4, 2025 4:53 PM |
| **To:** | Schrieber, Zack; Patrick Gardiner; Katie Dold |
| **Cc:** | Gansler, Douglas; Howard, J.B. |
| **Subject:** | RE: C-24-CV-24-002631: Claudia Engelhorn, et al.  v.  Erik Bolog, et al |

[ WARNING: External Email ]

Dear Doug:

I am wri ng to acknowledge receipt of your correspondence dated March 27, 2025.

The requests contained in your le er lack merit and fail as a matter of law.  Accordingly, our clients will not be taking any of the requested actions.

Should you have any questions or concerns, do not hesitate to contact me.

Regards,
Wes



**Wes P. Henderson, Esquire**

Henderson Law, LLC

2127 Espey Court, Suite 204
Crofton, MD 21114
Phone: (410) 721-1979
Fax: (410) 721-2258
Email: wph@hendersonlawllc.com
Web: www.HendersonLawLLC.com



**CONFIDENTIALITY NOTICE AND DISCLAIMER**
This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify us immediately that you have received this message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.

**TAX INFORMATION**
Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Schrieber, Zack <Zack.Schrieber@cwt.com>
**Sent:** Thursday, March 27, 2025 7:01 PM
**To:** Wes Henderson <wph@hendersonlawllc.com>; Patrick Gardiner <patrick@hendersonlawllc.com>; Katie Dold
<KDold@hendersonlawllc.com>
**Cc:** Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** C-24-CV-24-002631: Claudia Engelhorn, et al. v. Erik Bolog, et al

Counsel,

Please see the attached correspondence.

Best,

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended
recipient, you must not read, use or disseminate the information; please advise the sender immediately by
reply email and delete this message and any attachments without retaining a copy. Although this email and
any attachments are believed to be free of any virus or other defect that may affect any computer system into
which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no
responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way
from its use.

# EXHIBIT D



Anthony Williams

anthony.williams@dentons.com
D    +1 212-905-8308

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

dentons.com

April 17, 2024

**Via Email to: MikePostal@TenacityGroup.com**

Michael Postal

Re:      Swain's Landing LaPlata JC LLC re: Member Withdraw and Return of Capital Contribution

Dear Mr. Postal:

This letter follows our telephone discussion on November 21, 2023 and last email correspondence on February 12, 2024.

As you know, we represent Claudia Engelhorn as Trustee of the Whitewater Revocable Trust dated September 30, 2021 (the "Trust"). As Anthony Williams has expressed to you several times, Ms. Engelhorn does not have the appetite to continue the Swain's Landing project any longer and wishes to have her capital contribution of $585,000.00 returned to her.

Per our previous discussions:

- You indicated you are working with a new investor for Swain Landing LaPlata JC LLC ("Swain") who may be able to purchase Claudia's interest.
- You thought you would be able to get Claudia's principal, and potentially some interest, back to her by the end of the first quarter of this year.
- You stated the Project has been delayed due to the Town of LaPlata's ("Town") water availability problem and, therefore, have not made a formal presentation to the investor yet.
- You stated you planned on making the presentation to the new investor regardless of the status of Town's the water availability problem.

We are now past the end of the first quarter. We appreciate your prompt response on when you believe our client will be receiving her capital contribution back.

Very truly yours,

Patricia L. Lincoln
on behalf of Anthony Williams

AW:pl

Puyat Jacinto & Santos ▸ Link Legal ▸ Zaanouni Law Firm & Associates ▸ LuatViet ▸ For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

US_ACTIVE\126672132\V-1

## THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, ET AL.     )
     )
    *Plaintiffs*     )
     )
v.     )    **Case No.: C-24-CV-24-002631**
     )
ERIK D. BOLOG, ET AL.     )
     )
    *Defendants*.     )

_____

## COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM WITH PREJUDICE

Counter-Defendants, Claudia Engelhorn, Individually, and as Trustee for the Whitewater Revocable Trust Dated September 30, 2021, by and through their undersigned counsel, pursuant to Md. Rule 2-322(b), hereby move to dismiss the Counterclaim[1], with prejudice, and respectfully state as follows:

### I.    INTRODUCTION

The counterclaim filed by the Bolog Defendants is a transparent attempt at retaliation, lacking any substantive legal basis. The defamation claim, predicated on a pre-litigation settlement letter, is fundamentally flawed as such communications are protected under the judicial proceedings privilege. The abuse of process claim is equally untenable, as it misapplies the requisite legal elements, failing to demonstrate any misuse of the legal process, let alone any arrest or seizure of property. Beyond that, the Bolog Defendants have attempted to assert indemnification and breach of contract claims arising from a period when Defendant Bolog served as a trustee prior to being fired by Defendant Whiteford, Taylor and Preston, LLP "in part because of irregularities in his expense-accounting on the Engelhorn matter."[2] This motion to

---

[1] The Counter-Plaintiffs have styled their Counterclaim as "Bolog Defendants' Counterclaims".
[2] *See* Memorandum in Support of Defendant Whiteford, Taylor & Preston, LLP's Petition for an Order Compelling Arbitration and Staying Proceedings and Motion to Dismiss or Stay.

dismiss seeks to highlight the frivolous nature of these claims and to prevent the misuse of judicial resources.

By way of background, Erik D. Bolog, Darnestown Road, Inc., and Science Park Associates, LLC (hereinafter "the Counter-Plaintiffs") filed a Counterclaim on March 24, 2025 against Plaintiffs, Claudia Engelhorn, Individually and as the Trustee of The Whitewater Revocable Trust Dated September 30, 2021 (hereinafter "the Counter-Defendants"), asserting causes of action for Defamation (Count I), Indemnification (Count II), Abuse of Process (Count III) and Breach of Contract (Count IV). This Honorable Court should dismiss all four counts of the Counterclaim, with prejudice, because they fail to state claims upon which relief can be granted.[3] The Counterclaim fails to state a cause of action for Defamation (Count I), because the alleged defamatory statement consisted of a confidential settlement communication which is subject to an absolute privilege. The Counterclaim fails to state a cause of action for Indemnification (Count II) because none of the Counter-Plaintiffs are entitled to indemnification under the plain language of the Trust Agreement. The Counterclaim fails to state a claim for Abuse of Process (Count III) for multiple reasons, but primarily because it does not allege that Mr. Bolog and the JAREB Trust were incarcerated or had their property seized. Finally, the Counterclaim fails to state a cause of action for Breach of Contract (Count IV) because Section 5.K does not entitle Counter-Plaintiff Bolog to compensation under the facts alleged.

## II.    RELEVANT FACTUAL ALLEGATIONS

### A.    Count I - Defamation

---

[3] Counter-Defendants do not concede the merits of any of the factual allegations or claims asserted in the Counterclaim, but for the purposes of this motion only, they understand that this Honorable Court must assume the truth of all well-pleaded facts.

2

On July 1, 2024, Counter-Defendants' Counsel in this litigation, Wes P. Henderson, Esquire, sent a letter to William J. Murphy, Esquire, counsel for Defendant Whiteford, Taylor & Preston, LLP, in relation to and/or in contemplation of this action.  *See* Exhibit A to the Counterclaim (hereinafter "the Letter").  At the top of the first page of the Letter, the following appeared "WITHOUT PREJUDICE – FOR SETTLEMENT PURPOSES ONLY."  *Id*.  In the Letter, Mr. Henderson set forth a succinct statement of the allegations concerning the alleged $10 Million "Gift," which later appeared in the Complaint filed in this action (and the Amendments thereto).  *Id*.  The Letter continued "[b]efore I file a lawsuit against Mr. Bolog, Whiteford, Taylor & Preston, LLP and potential others, I am inquiring as to whether your client(s) is/are prepared to take immediate steps to rectify the situation, including but not limited to, compensating my clients for all misappropriated monies…" and the Counter-Defendants "are willing to engage in good-faith discussions to resolve this matter amicably."  *Id* at 2.  Finally, the Letter instructed Whiteford, Taylor & Preston, LLP to preserve relevant documents and other materials that would be relevant to the anticipated lawsuit.  *Id*. at 2.

The Counter-Plaintiffs assert that the Letter defamed Mr. Bolog by impugning his capacity as an attorney, his commitment to his ethical obligations, and his honesty.  *See* Countercl. ⁋⁋14, 28, and 29. Specifically, Counter-Plaintiffs assert that the following quotes in the Letter were libelous and defamatory: "Mr. Bolog defrauded Ms. Engelhorn"; "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit"; and "Ms. Engelhorn may not have been Mr. Bolog's first and only victim…"  Countercl. ⁋⁋ 14 and 29.  On or about September 10, 2024, the Counter-Defendants commenced this action, in their capacity as Plaintiffs, against the Counter-Plaintiffs and other Defendants, including, but not limited to, Defendant WTP, alleging the same issues that were summarized in the Letter.  The Complaint was subsequently amended, but the

3

general allegations with respect to Mr. Bolog's conduct have remained unchanged. *See* Second Amended Complaint, generally.

The recipient of the Letter was WTP's counsel. *See* Exhibit A. WTP is alleged to be liable to the Plaintiffs, at least in part, due to its role as Mr. Bolog's employer during the time of Mr. Bolog's alleged tortious conduct. Countercl. ¶6. Mr. Bolog was fired or otherwise terminated from his position at WTP prior to the drafting of the July 1, 2024 Letter. Despite Mr. Bolog having been "fired" from WTP prior to July 1, 2024, Mr. Bolog alleges he suffered $20 million in damages as a direct result of the statements contained in the July 1, 2024 Letter. Countercl. ¶72.

### B. Count III - Abuse of Process

Counter-Plaintiffs allege that Counter-Defendant Engelhorn filed the instant action on September 10, 2024, and that she filed a Second Amended Complaint on February 5, 2025. Countercl. ¶¶53-4. The Counterclaim asserts that Ms. Engelhorn had an ulterior motive in filing this action "namely to assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm and of attempting to destroy his professional reputation and ability to practice law…" Countercl. ¶55. It also alleges that Ms. Engelhorn's "**sole motive** for attempting to **revoke** the irrevocable Gift was to harm Mr. Bolog, **not to use the judicial process for a proper purpose or to recover the funds**." *Id* (Emphasis added). The Counterclaim then asserts that various factual allegations in the Second Amended Complaint are not accurate. Countercl. ¶¶57-60. The Counterclaim then asserts: "Ms. Engelhorn is a centi-millionaire *who doesn't seriously need*, nor care about the Gift, but instead, *her filing of this action* is solely to seek vengeance against Mr. Bolog and seeks to punish him following the end of their friendship and thereafter suffering from Giftor's remorse." Countercl. ¶61 (Emphasis added).

4

### C.  Counts II and IV

Counts II and IV both stem from the alleged language of the Whitewater Trust Agreement, yet the plain language of the Trust Agreement does not create an obligation to indemnify the Counter-Plaintiffs, nor does it contain an obligation to compensate Mr. Bolog for services he allegedly performed while acting as the Trustee of the Whitewater Trust.  The Counterclaim alleges that the express language of the Whitewater Trust Agreement (Exhibit B) in section 5.K entitles Mr. Bolog to compensation for his services as Trustee of the Whitewater Trust.  Countercl. ¶34.  However, the language of 5.K only provides for compensation if a Trustee carried on a business for the Trust and the Trustee serves in a special capacity connected to the operation of said business.  *See* Exhibit B, §5.K.  The Counterclaim also alleges that Section 9 of the Trust Agreement requires the Trust to indemnify the Trustee for the costs of defending the claims Plaintiffs have asserted herein.  Countercl. ¶35.  However, Mr. Bolog purportedly provided services as Trustee while employed by WTP.  Countercl. ¶6. Mr. Bolog is not a Trustee currently, and has not been a Trustee since November 3, 2022.  Countercl. ¶31. The Plaintiffs' filed this action long after Mr. Bolog had been removed from the Whitewater Trust.  Moreover, the claims asserted herein would not fall within the indemnification term set forth in Section 9 of the Agreement.  Finally, the Counterclaim asserts that Science Park, Darnestown Road, and Swain Landing are third party beneficiaries of the Trust Agreement, but the plain language of the agreement does not create any obligation to indemnify these parties whatsoever.  Exhibit B §§5 and 9.

### III.  <u>LEGAL STANDARD</u>

Under Maryland Rule 2-322(b), dismissal is proper where "the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010) (citations omitted); and *Parks v. Alpharma, Inc.*, 421 Md. 59, 72 (2011). "The well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *RRC Northeast, LLC*, 413 Md. at 644, citing *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 248, 246 (2000); and *Bobo v. State*, 346 Md. 706, 708-09 (1997). See, also *Parks*, 421 Md. at 72.

Stated otherwise, courts are not to consider "conclusory charges" in evaluating the legal sufficiency of a complaint. *Berman v. Karvounis*, 308 Md. 159, 165 (1987); *Morris v. Osmose Wood Preserving*, 340 Md. 519, 531 (1995); *Valentine v. On Target*, 353 Md. 544, 549 (1999). "[S]imply set[ting] forth . . . legal conclusion[s]" or "[a]llegations . . . or characterizations of acts, conduct or transactions . . . as constituting a breach of duty without alleging facts that make them such, are conclusions of law insufficient to state a cause of action." *Greenbelt v. Prince George's County*, 248 Md. 350, 360 (1968); *Alleco v. Weinberg Foundation*, 340 Md. 176, 194 (1995); *Bobo*, 346 Md. at 708-09. Furthermore, ". . . any ambiguity or uncertainty bearing on whether the complaint states a cause of action must be construed against the pleader." *Alleco*, 340 Md. at 193; *Manikhi v. Mass Transit Administration*, 360 Md. 333, 345 (2000).

## IV.    ARGUMENT

### A. Count I (Defamation) must be dismissed because the alleged statements are subject to the judicial proceeding privilege.

"To establish a prima facie  case of the common law tort of defamation in Maryland, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making

6

the statement, and (4) that the plaintiff suffered harm." *Hosmane v. Seley-Radtke*, 227 Md. App. 11, 20-21, *aff'd, Seley-Radtke v. Hosmane*, 450 Md. 468 (2016), *citing Offen v. Brenner*, 402 Md. 191, 198 (2008). See, also, *Smith v. Danielczyk*, 400 Md. 98, 115 (2007).

Statements made in a settlement communication are subject to the absolute judicial proceedings privilege. *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.*, 138 Md. App. 686, 702 (2001). While originally covering statements made in court and the filings therein, the Court of Appeals recognized in *Norman*, "[m]any statements" that are "[m]ade [d]uring the [c]ourse of a [p]ending or [o]ngoing [p]roceeding" are "not designed to be filed in a court action, but rather are simple communications by or between individuals connected to some pending or ongoing proceeding[.]" *Norman v. Borison*, 418 Md. 630, 656 (2011). "To say a letter or email was sent, or a conversation was had 'during the course of a proceeding' is to say the letter, email, or conversation had some general 'relevance,' relationship, or connection to that proceeding." *Norman*, 418 Md. at 658 n. 17. When statements are made by an attorney who represents a client in connection with the subject matter of either a prospective and contemplated judicial proceeding or a judicial proceeding that is already filed and thus is ongoing and pending, the absolute judicial proceedings privilege applies to all statements made by the attorney that are "rationally related to," or "'having reference'" to, or "'made with reference'" to, or "'having relation to the cause or subject matter'" of "a contemplated or ongoing proceeding." *Norman*, 418 Md. at 657-660, 660 n. 19, 661-666. Attorneys' communications with clients and other persons involved as parties, witnesses, or with persons who have an interest in contemplated or ongoing judicial proceedings are subject to the absolute judicial proceedings privilege. *Norman*, 418 Md. at 657-666. Even attorneys' public communications through posting on websites on the internet or statements to the press are subject to the absolute judicial proceedings privilege, when the communications are

"rationally related to," or "made with reference to," or "hav[e] relation to the cause or subject matter" of the judicial proceeding.  *Id.*  Stated otherwise, Maryland follows the majority American Rule for attorneys' statements that "require[s] that the defamatory statement have some rational relation to the matter at bar before unfurling the umbrella of absolute privilege."  *Norman*, 418 Md. at 650.  See, also *Mixter v. Farmer*, 215 Md. App. 536, 543 (2013) ("Maryland courts recognize an absolute privilege for attorneys to make potentially defamatory statements if the statements have some rational relationship to the judicial proceedings," citing *Norman*.)

In this context, "[a]bsolute simply relates to the speaker's motive."  *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 447 Md. 394, 411 (2016).  "When a privilege is absolute, 'the court will not permit an inquiry into motive or purpose, since this could result in subjecting the honest person to harassing litigation and claims.'"  *O'Brien & Gere Engineers, Inc.*, 447 Md. at 411.  "Therefore, the privilege protects defamatory statements 'even if his [or her] purpose or motive was malicious, he [or she] knew the statement was false, or his [or her] conduct was otherwise unreasonable.'"  *Mixter*, 215 Md. App. at 543, quoting *Norman*, 418 Md. at 651.  "The absolute privilege applies to . . . quasi-judicial proceedings before" administrative agencies and "extends to statements made by attorneys prior to the commencement of judicial proceedings," as well as to attorney's statements that have "some rational relationship" to ongoing judicial proceedings.  *Mixter*, 215 Md. App. at 543 (citations omitted).  "The absolute privilege is broad and comprehensive in order to serve its purpose to foster the 'free and unfettered administration of justice.'"  *Id.*, quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 404 (1985).

The application of the absolute judicial proceedings privilege is a question of law for the Court.  *Norman*, 418 Md. 630, 662.  The sole basis for Count I (Defamation) was the July 1, 2024 Letter wherein Counter-Defendants' counsel engaged in settlement communications, and

instructed Mr. Bolog's Co-Defendant, WTP, to preserve documents and other materials which would be relevant to this action.  In order for Defendant WTP to appreciate the necessity of preserving documents, Defendant WTP obviously needed to be apprised of the nature of the claims Counter-Defendants were planning to assert.  In short, the statements were made in the context of contemplated litigation against the Bolog Defendants and WTP.  These issues, and Mr. Henderson's communications fall squarely within the judicial proceedings privilege. Therefore, Count I of the Counterclaim fails to state a claim as a matter of law and must be dismissed with prejudice.

### B.  Count II (Indemnification) fails to state a claim as a matter of law.

Counter-Plaintiffs have attached the September 30, 2021 Whitewater Revocable Trust Agreement to the Counterclaim as Exhibit B. Counter-Defendants assert that Mr. Bolog, Darnestown Road, Inc., and Science Park Associates, LLC, and Swain Landing LaPlata JC, LLC are entitled to indemnification from Whitewater under Sections 5 and 9 of the Whitewater Revocable Trust Agreement dated September 30, 2021 because they are third-party beneficiaries of the Trust Agreement.  Countercl. ¶83.

Preliminarily, the Revocable Trust Agreement has been restated and amended multiple times since its creation, and so Counter-Defendants do not concede that the terms of Exhibit B are controlling in this matter. [4]   However, since this is a Motion to Dismiss, Counter-Defendants assume for the purposes of this Motion only that Exhibit B is the applicable Trust Agreement, and that it was not revoked and restated (twice).

---

[4] Ms. Engelhorn, as the settlor/grantor of the revocable trust, has the absolute right to revoke or amend the trust at any time. Va. Code Ann. § 64.2-751 (A) and (C). While a trust is revocable (i.e., before Ms. Engelhorn's death), the trustee owes duties directly to the settlor, and the settlor's wishes override the terms of the trust. Va. Code Ann. § 64.2-752 (A) and (B).

Irrespective, Counter-Plaintiffs omit that Section 5 of the Agreement provides the following relevant term: "The trust shall indemnify and hold each *individual trustee* harmless for any act or omission *of such trustee*, *except* for an act of *gross negligence or willful misconduct*." C-Ps' Exhibit B at 5 (Emphasis supplied).    In this case, the Plaintiff Trust has asserted claims against Defendant Bolog for fraud (Counts III, IV, and XVIII), legal malpractice (Count VI), breach of fiduciary duty (Count VII), petitions for dissolution and liquidation (Counts XIII and XIV), fraudulent conveyance (XVII), and unjust enrichment (Count XIX).  There is no question, nor could there be, that all of the counts at issue arise out and/or relate to Defendant Bolog's willful misconduct, such that he is not entitled to indemnification for such conduct.  Moreover, Defendant Bolog's efforts to obtain indemnification, particularly for the alternative allegations of negligent legal malpractice, would violate public policy, such that the indemnification provision is an unenforceable prospective limitation on a lawyer's liability for legal malpractice.[5]  Moreover, the general standard, under principles of contract interpretation, for determining whether a party is indemnified "is a stringent and exacting one, under which the clause must not simply be unambiguous but also understandable." *Adloo v. H.T Brown Real Estate, Inc.*, 344 Md. 254, 264 (1996).  Thus, "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." *Crockett v. Crothers*, 264 Md. 222, 227 (1972).  Quite simply, an attorney that accepts the obligation to represent his or her clients with reasonable care cannot prospectively waive his or her duty to use reasonable care by shifting his or her obligation to pay damages to his or her client.

---

[5] Mr. Bolog's interpretation of the indemnification provision would be a prohibited prospective limitation on his liability for legal malpractice, and is therefore void as a matter of Maryland public policy.  *See* MARPC 19-301.8 (h) and *Post v. Bregman*, 349 Md. 142, 164 (1998) ("[The MARPC] constitutes a statement of public policy by the only entity in this State having the Constitutional authority to make such a statement, and it has the force of law.")

That is exactly what Defendant Bolog is attempting to do and his efforts should not be condoned by this Honorable Court.

Section 9, upon which they also rely, provides in pertinent part:

> Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a **_beneficiary_**, or a **_representative of a beneficiary_**, or **_one claiming a beneficial interest_** in the trust, should **_legally challenge this trust_**, **_its provisions_** or **_asset distributions_**, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. **The defense of _such litigation_, including costs incurred by <u>representatives of the grantor's estate</u>, the <u>trustees of this trust</u> and <u>their agents</u>, <u>attorneys</u>, <u>accountants and representatives</u>, shall be paid for by the trust.**

*See* Exhibit B at 14 (emphasis added).

In other words, Section 9 controls if a beneficiary (or their agents) initiate litigation challenging the trust, its provisions or asset distributions.  If that occurs, the challenging beneficiary loses their entitlement to their share of the asset distribution, and that share is divided between the other beneficiaries as if the challenging-beneficiary pre-deceased Ms. Engelhorn.[6] Ms. Engelhorn is the Grantor and she filed this action in her capacity as the Trustee of the Whitewater Trust; not as a beneficiary.  For this reason, the duty to indemnify, per the plain language of the Trust does not apply to any of the Counter-Plaintiffs.

Moreover, this litigation is not a "challenge" to the Trust; the Trust is bringing the litigation (by and/or through its Trustee Claudia Engelhorn) and there is no allegation in the Plaintiffs' Complaint, as amended, that the trust is invalid.  Likewise, Plaintiffs' suit is not a "challenge" to the provisions of the trust agreement.  Finally, the Plaintiffs' claims are not a challenge to "asset

---

[6] Per Section 3, the asset distribution occurs "Upon the grantor's death…" C-Ps' Ex. B at 2.

distributions." Asset distributions are a term of art in the Agreement. The "distributions" are payments made from the assets of the estate under Section 2 (to the grantor while living), under Section 3 (to beneficiaries and creditors upon the grantor's death); or under Section 6.D (to or for incapacitated or minor beneficiaries). *See Id.* The Trust's claims do not challenge "asset distributions" rather the Trust challenges Mr. Bolog's willful misconduct, loans, and investments, Mr. Bolog made with Trust assets to entities in which Mr. Bolog had undisclosed interests. *See* Countercl. ¶37 (describing the Science Park transaction as a "loan"); ¶43 (describing the Darnestown transaction as a "loan"); and ¶49-51 (describing the Swain Landing transaction as an "investment.").[7] Moreover, the Counter-Defendant's relevant claims in this action seek the return of the Trust's own funds that were improperly invested and loaned, and the proceeds therefrom, not that assets were improperly distributed. *See* SAC, generally. As such, the Counter-Defendants' claims in the Second Amended Complaint are not within the scope of litigation described in the plain language of Section 9, and as such Section 9 imposes no duty to indemnify the Counter-Plaintiffs for their willful misconduct.

Finally, the Counter-Plaintiffs are not "representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives." Mr. Bolog ceased to be a Whitewater Trustee on November 3, 2022. Countercl. ¶31. While he was at one time a Trustee, Mr. Bolog is not defending this action on behalf of the Whitewater Trust, and he is not a trustee of the Whitewater Trust. The reference to "representatives of the grantor's estate" but not the "grantor" clearly shows that the entire provision in Section 9 is intended to apply after Ms. Engelhorn's death (which would be when "asset distributions" would occur). Irrespective, Science

---

[7] However, the Counter-Plaintiffs' disavow any connection to Swain Landing, except Mr. Bolog's limited act of ascertaining the "investment amount" at Ms. Engelhorn's alleged direction. Countercl. ¶51.

Park, Darnestown, and Swain Landing[8], are not Ms. Engelhorn or Mr. Bolog's "agents, attorneys, accountants and representatives."

For these reasons, Count II fails to state a claim for indemnification as a matter of law, and as such Count II should be dismissed with prejudice.

### C. Count III fails to state a claim because the Counter-Plaintiffs fail to allege the requisite special damages and because the Counterclaim does not allege a misuse of process.

The tort of abuse of process "'is concerned with the improper use of civil or criminal process in a manner not contemplated by law ***after it has been issued*** . . .'" *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 39 (1997) (emphasis supplied) (quoting *Walker v. American Sec. Co.*, 237 Md. 80, 87 (1964)). The elements of abuse of process are: "first, that the defendant willfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendants use of perverted process." *Id*. at 38 (citations omitted).

The mere issuance of the process itself, however, is not actionable, even if it is done with an "ulterior motive" or "bad intention." *Herring v. Citizens Bank and Trust Co*., 21 Md. App. 517, 534 (1974). Rather, "'some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required . . .'" *One Thousand Fleet*, 346 Md. at 38 (quoting W. Keeton, *Prosser & Keeton on the Law of Torts* § 121, at 898 (5th ed. 1984)). "If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some collateral objective, outside the scope of the operation of the

---

[8] Count II (Indemnification) fails to state a claim inasmuch as it seeks to assert a claim on behalf of Swain Landing LaPlata JC, LLC, because Swain Landing is not a Party to the Counterclaim, Counter-Plaintiffs do not represent Swain Landing, and Swain Landing has thus far failed to appear in this matter.

process employed, a tort has been consummated." *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 512-13 (1984) (quoting 1 Fowler v. Harper & Fleming James, Jr., *Law of Torts* 331 (2d. ed. 1956)).   In this case, the process at issue – the summonses directed to the Defendants/Counter-Plaintiffs - were used in the manner for which they were contemplated to be when issued, i.e., to give the Defendants/Counter-Plaintiffs notice that they were being sued, of their obligation to respond, and the risks of failing to respond.

"[T]o maintain a claim for abuse of process the plaintiff must allege that he was unlawfully arrested or his property unlawfully seized." *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 531 (2004). See also; *Herring*, 21 Md. App. at 536 ("The injuries contemplated by this particular tort (and an indispensable element of it) are limited to an improper arrest of the person or an improper seizure of property."); see also  *One Thousand Fleet,* 346 Md. at 45, 47-48 (While arrest and/or seizure are not necessary for an allegation of an abuse of *criminal* process; "[a] cause of action for *civil* abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process.").

It is the requisite element that plaintiff must be arrested or that his property was seized, which makes the cause of action particularly difficult to assert when it arises from an alleged abuse of *civil* process.  *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 531 (2004) (dismissal required where plaintiff alleged that defendant had improper motive in obtaining a peace order, but did not allege that the plaintiff was arrested or that his property was seized); *One Thousand Fleet Ltd. Pshp. v. Guerriero*, 346 Md. 29, 45 (1997) (dismissal was required where plaintiff allegedly suffered legal fees, project delays, increased financing costs, and other economic losses, but failed to allege a seizure of property or arrest of the plaintiff as a result of the abuse of process).

In this matter, Counter-Plaintiffs have not alleged any seizure of property or arrest of Mr. Bolog as a result of the alleged civil abuse of process in this action.  Reputational damage, loss and injury to his business, harm to his name and reputation, legal fees and emotional suffering are not sufficient damages to state a claim for abuse of process.  Count III must be dismissed with prejudice.

The judicial proceedings privilege, set forth in the preceding section, provides an alternative basis for dismissal.  Count III (Abuse of Process) as it is articulated in the Counterclaim is really a claim for defamation stemming from the Counter-Defendants' allegedly false statements in the Complaint and the amendments thereto.  Had Counter-Plaintiffs styled the conduct alleged in Count III as one for defamation, said claim would have been subject to dismissal under the absolute judicial proceedings privilege.  However, the privilege applies even if a creative plaintiff attempts to relabel a defamation claim as another tort.  The Appellate Court in *Mixter* expanded the judicial proceeding privilege "beyond defamation torts when those other torts arise from the same conduct…" *Mixter*, 215 Md. App. 536, at 547.  The Supreme Court in *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 447 Md. 394, 413 (2016) held that for the privilege to have any meaning, plaintiffs cannot be allowed to circumvent the privilege simply by changing the label on their cause of action.  In *O'Brien*, the Court recognized that the privilege could be a defense even to a breach of contract action, such as an alleged violation of a non-disparagement clause. *Id*. at 424.  Thus, the judicial proceedings privilege is an alternative basis to dismiss, with prejudice, Count III (Abuse of Process) for failure to state a claim.


**D.  Count IV fails to state a claim for Breach of Contract because Counter-Plaintiff Bolog does not identify what contractual obligation the Whitewater Trust has breached and the Trust Agreement does not provide for compensation to Mr. Bolog**.

15

In Count IV, Mr. Bolog asserts a claim for breach of contract under Section 5.K of the Trust Agreement against Ms. Engelhorn as Trustee of the Whitewater Trust, and asserts that the Trust has failed to pay him compensation for his services as Trustee for thirteen months pursuant to Section 5.K of the Trust Agreement.  Preliminarily, at the relevant times, Mr. Bolog was an employee of WTP, and he served as Trustee with the "full knowledge and approval" of WTP. Countercl. ¶9.  Mr. Bolog has not alleged how trustee services he performed while acting as WTP's employee, for which he submitted time and expense entries to WTP, and for which WTP invoiced Counter-Defendants, entitles him to compensation from Ms. Engelhorn or Whitewater.  He has not alleged, for example that he is a third-party beneficiary with respect to any fee arrangement between WTP and the Counter-Defendants.

A complaint alleging a breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (1977) (emphasis in original).  In addition, courts have observed that "'the necessary allegations of fact sufficient to state a cause of action . . . in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" *Id*. (quoting *Read Drug v. Colwill Constr*., 250 Md. 406, 413 (1968)).  Finally, considering the sufficiency of a complaint alleging breach of contract, "any ambiguity or uncertainty in the allegations is to be construed against the pleader." *Id*.; *Carder v. Steiner*, 225 Md. 271, 276 (1961).

Counter-Plaintiff Bolog asserts that he performed services as the trustee of the Whitewater Revocable Trust from its creation on September 30, 2021 though his termination as trustee on November 3, 2022.  Countercl. ¶31.  Counter-Plaintiff Bolog asserts that the terms of the

16

Whitewater Trust Agreement, specifically Section 5.K, creates a contractual obligation for the Trust to compensate him for his time and services as Trustee. However, Section 5.K creates no such obligation to compensate Mr. Bolog for his trustee duties; instead, it grants Mr. Bolog the power to pay himself compensation from the Trust if Mr. Bolog carried on a business enterprise for the Trust (which he does not allege he did). Section 5.K provides as follows:

> Section 5.    POWERS OF TRUSTEE, In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, **the powers listed below**, which **they may exercise without prior or subsequent approval by any court**…

> K. CARRY ON BUSINESS. Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; **to serve in any capacity with the business; to receive reasonable compensation <u>for such services</u>, in addition to compensation for services as a fiduciary**; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

*See* Exhibit B at 5 and 7 (emphasis supplied).

Section 5.K permits the Trustee to serve in any special capacity with respect to a business concern operated by the Trust. Mr. Bolog does not assert that he did such with respect to the Whitewater Trust. If a trustee had served the Trust's business operation in some expanded capacity, they would arguably be entitled to compensation for "such services." The Trustee could compensate themselves from the trust for these business-related services without first obtaining court approval to do so. *Id*. This business-related compensation would be in addition to any compensation paid for services as a fiduciary. *Id*. However, the Trust Agreement the Counter-Plaintiff relies upon only provides compensation for successor-trustees, not for Mr. Bolog or Ms. Engelhorn. Section 4.B governs compensation and states as follows:

> B.    COMPENSATION. For services as trustee, each ***successor trustee* shall be entitled to a trustee's fee**, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000,00), Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and

shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

*See* Exhibit B at 3 (emphasis supplied).

As such, there is no express contractual obligation in the Trust Agreement generally, nor in Section 5.K for the Trust to compensate its initial trustees, *i.e.*, Mr. Bolog or Ms. Engelhorn. Even if one were to infer a right to compensation in the Trust Agreement, the Trust Agreement is silent as to the amount of the compensation, how the compensation is to be calculated, who is responsible for paying said compensation, and when such compensation is to be paid, such it cannot be asserted that Counter-Defendant has failed to comply with any of the express obligations set forth in the Trust Agreement. Thus, as pled, the Counterclaim fails to state a claim for breach of an express contract to pay Mr. Bolog for his services as a trustee.

Counter-Plaintiff Bolog also makes a vague allegation that the laws of Virginia would permit him to collect reasonable compensation for performing services as a trustee for thirteen months. Countercl. ¶34. To the extent that this was true despite Mr. Bolog's willful misconduct while serving as the Trustee, this supposed basis for compensation is not contained within the terms of the Trust Agreement at issue. Moreover, under Virginia law, "a trust is neither a contract nor an agreement that can be enforced against a beneficiary…" *Boyle v. Anderson*, 301 Va. 52, 60 (2022). Therefore, since Count IV is pled as a cause of action for breach of Section 5.K, it fails to state a claim upon which relief can be granted.

## V.    CONCLUSION

For the foregoing reasons, the Counter-Defendants respectfully request that this Honorable Court enter an Order dismissing the "Bolog Defendants' Counterclaims" with prejudice.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ WPH (AIS# 0212180062)_____
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of April 2025 that, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

          /s/ WPH (AIS# 0212180062)
Wes P. Henderson, Esq. (AIS# 0212180062)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, *et al.*,** ) | |
| ) | |
| ) | |
|    *Plaintiffs* ) | |
| ) | |
| v. ) | **Case No.: C-24-CV-24-002631** |
| ) | |
| ) | |
| ) | |
| **WHITEFORD, TAYLOR & PRESTON,** ) | |
| **LLP et al.,** ) | |
| ) | |
| ) | |
|    *Defendants*. ) | |

<u>**THE BOLOG DEFENDANTS' NOTICE OF SERVICE OF RESPONSES AND**</u>
<u>**OBJECTIONS TO PLAINTIFF'S DISCOVERY REQUESTS**</u>

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants") hereby submits notice that they have served the discovery documents listed below to counsel as identified in the attached certificate of service:

- Defendant Erik D. Bolog's Second Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Erik Bolog as Trustee's Second Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Darnestown Road Inc.'s Second Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Science Park Associates, LLC's, Second Supplemental Responses and Objections to Plaintiff's First Set of Document Requests;

- Defendant Darnestown Road Inc.'s Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

- Defendant Science Park Associates, LLC's Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories;

Dated:      April 24, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2025, a copy of the foregoing was

served in the manner indicated on the following:

**Counsel of Record Served via Electronic Mail (Discovery documents) and MDEC (Notice of service):**

Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 5/5/2025 5:55 PM; Submission: 5/5/2025 5:55 PM
Envelope: 21076089

# Exhibit 1

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN**, *et al.*,    ) | |
| ) | |
| ) | |
|    *Plaintiffs*    ) | |
| ) | |
| v.    ) | **Case No.: C-24-CV-24-002631** |
| ) | |
| ) | |
| ) | |
| **WHITEFORD, TAYLOR & PRESTON,**    ) | |
| **LLP et al.,**    ) | |
| ) | |
| ) | |
|    *Defendants*.    ) | |

---

## DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN ROAD'S RESPONSE TO WHITEFORD, TAYLOR & PRESTON LLP'S PETITION FOR AN ORDER COMPELLING ARBITRATION AND MOTION TO STAY PROCEEDINGS

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby respond to Whiteford, Taylor & Preston LLP's ("WTP") Petition for an Order Compelling Arbitration (the "Arbitration Petition") and Motion to Stay Proceedings.

None of the claims against the Bolog Defendants is subject to arbitration, and WTP's Petition For An Order Compelling Arbitration does not contend otherwise. The claims against the Bolog Defendants are nonarbitrable because the arbitration provision at issue is found in the engagement letter executed by and between WTP and Ms. Engelhorn—none of the Bolog Defendants is a party to that arbitration agreement. See *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 134 (2002) (A "party cannot be required to submit any dispute to arbitration that it has not agreed to submit."). Accordingly, the Bolog Defendants take no position

on the arbitrability of disputes arising under the engagement letter's arbitration agreement, which is binding on WTP and Plaintiff Engelhorn, but not on any of the Bolog Defendants. *See The Redemptorists*, 145 Md. App. at 151-158 (finding only claims and issues subject to arbitration clause are arbitrable; the remainder are stayed in court).

Nonetheless, the Bolog Defendants join in WTP's related Motion to Stay Proceedings and respectfully submit that if the Court orders the arbitration of any of the claims the Plaintiffs have brought against WTP, all proceedings in this action (including discovery) should be stayed pending a final determination in the arbitration. See *The Redemptorists*, 145 Md. App. at 125 ("The issues as to the non-contracting parties should be stayed pending the outcome of the arbitration."). WTP has already taken the position that it will not respond to discovery requests until resolution of the Arbitration Petition (and subsequent arbitration); allowing claims to proceed against the Bolog Defendants without the benefit of discovery against WTP would prejudice the Bolog Defendants' ability to adequately prepare its defenses in this case. Furthermore, allowing arbitration to conclude before resuming litigation in this action (including discovery) will narrow the outstanding issues and promote judicial economy. Completing arbitration will also materially impact the claims against the Bolog Defendants and determine, what, if any, claims can continue in this Court.

Therefore, a final determination by any arbitration adjudicating the claims brought by Plaintiffs against WTP must precede the litigation of the claims against the Bolog Defendants.


[*Remainder of Page Intentionally Omitted*]

2

Dated:        December 17, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 5/5/2025 5:55 PM; Submission: 5/5/2025 5:55 PM
Envelope: 21076089

# Exhibit 2

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, et al,

                         Plaintiff,
        vs.                              Case Number:
                                         C-24-CV-24-002631

ERIK BOLOG, et al.,

                         Defendant.
_____/

             REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
                       (Motion's Hearing)

                         Baltimore, Maryland

                         Monday, January 27, 2025

        BEFORE:

             THE HONORABLE JEFFREY GELLER, Associate Judge


        APPEARANCES:

             For the Plaintiff:

                  PATRICK GARDNER, ESQUIRE

             For the Defendants, Whiteford, Taylor, and
             Preston:

                  JOHN J. CONNOLLY, ESQUIRE
                  WILLIAM J. MURPHY, ESQUIRE

             For the Defendant Erik Bolog individually and
             as Trustee for the Jareb Irrevocable Trust
             Agreement; Science Park Associates, LLC; and
             Darnestown Road, Inc. et al.:

                  DOUGLAS GANSLER, ESQUIRE
                  J.B. HOWARD, ESQUIRE
                  ZACK SCHRIEBER, ESQUIRE

* Remote Electronic Proceedings Digitally Recorded *

Transcribed by:
Patricia Trikeriotis
Chief Court Reporter
111 N. Calvert Street
Suite 619, Cummings Courthouse
Baltimore, Maryland 21202

                         1

1    Plaintiff.

2            But that's not what we're technically doing

3    here.  We're asserting that there's, again, this -- this

4    agreement is not, apparently, not a written one.  So to

5    the extent that there's -- attorney-client agreements can

6    be created in common law as well, and implied in fact as

7    well, and an express written contract.

8            And then I would just note, yes, in closing,

9    the Maryland and position of the Maryland Ethics opinion

10   -- Bar Ethics Committee remains that, since 1990, that

11   attorney -- attorney-client arbitration agreements are

12   improper unless the client is informed of the -- has --

13   is independently represented with respect to making that

14   agreement.

15           And then -- just checking the last of my notes

16   here.

17           Yeah, unless the Court has any other questions.

18           THE COURT:  No.  I don't have any questions.

19           Do counsel for Mr. Bolog want to chime in on

20   the arbitration piece?

21           MR. GANSLER:  Yes, Your Honor, thank you.  And

22   good morning.

23           I just want, for the record, this is Douglas

24   Gansler, counsel for Mr. Bolog and the entities, joined

25   by my colleagues, J.B. Howard and Zack Schreiber on the

30

1    Zoom call.

2           Your Honor, the question -- I suppose the

3    answer to that is, Mr. Bolog, nor any of his entities,

4    ever signed any arbitration agreement of any type.  So

5    were this Court to send the case to arbitration, we would

6    not be involved.

7           With that said, moving on to the discussion we

8    just heard, we would agree with Mr. Connolly that this is

9    an easy decision for Your Honor.  This case should not go

10   to arbitration.  And the reason why that is, is because

11   the sole arbitration clause that occurred in this case is

12   in fact the retainer letter regarding -- and it says,

13   "regarding all claims regarding the estate of Curt

14   Engelhorn."  I'm looking at the February 20th, 2020

15   version.  They're basically all the same in regard to

16   arbitration and the scope of the sole, what they call

17   retainer letter -- we call it engagement letter, same

18   thing -- is that, "You have chosen to engage Whiteford,

19   Taylor, and Preston to provide legal services in

20   connection with your potential claims against the estate

21   of Curt Engelhorn and potential other persons who may

22   come to our attention through the investigation into this

23   matter relating to your forced heir rights or other

24   rights you may have concerning the trust established by

25   him."

31

1          By the time the gift was made or any of the

2    transactions in this case occurred, that case was long

3    over, right for Taylor got its $4 million, Ms. Englehorn

4    got her $130 million as a result of the settlement of

5    that case, of the Swiss litigation case.  So -- and there

6    exists no other retainer letters regarding any other of

7    these matters, so that's it.  I mean, it's that simple.

8          It's clearly -- look, had there been a

9    disagreement or an issue that had come up during the

10   course of the Swiss litigation, then of course this

11   exegesis regarding Colorado versus Maryland law and the

12   Rules of Professional Conduct and all those things would

13   come into play.  But here, there is no arbitration clause

14   relevant to any of the issues that are brought in the

15   complaint by the Plaintiff.  So we have no we have no dog

16   in the fight, but it seems clear to me that there is no

17   fight.

18          THE COURT:  All right.  Thank you.

19          Back to Mr. Connelly.

20          MR. CONNOLLY:  Your Honor, I was on mute.  I

21   apologize.

22          With respect to what Mr. Gansler just said, I'm

23   not sure I fully understand it, but it's contrary to what

24   he wrote.  If he's saying that the arbitration clause

25   does not apply to the current dispute, he's totally

32

1            I do think this is an easy case.  There's an

2       arbitration agreement with a broad arbitration provision

3       that covers all counts of the complaint, and the Court

4       should order arbitration, and other issues can be

5       resolved by arbitrators, as they are every day in cases

6       all across the country by arbitrators, in accordance with

7       the public policy of all 50 states in the U.S.

8       government.  So I would ask that the Court grant the

9       petition to compel.

10            THE COURT:  All right.  Thank you.

11            So taking this a piece at a --

12            MR. GANSLER:  I'm sorry.  This is Doug Gansler.

13       Can I just respond in 30 seconds?

14            THE COURT:  Go ahead.

15            MR. GANSLER:  Thank you.

16            I just responded to Mr. Connolly's discussion

17       that about the language of the arbitration agreement,

18       which does say, "Any claim or dispute arising out of or

19       relating to this agreement, our services under it, or our

20       relationship with you will be resolved by final and

21       binding arbitration," blah, blah, blah.

22            If the suggestion is correct that that somehow

23       anything outside of the Swiss litigation is subject to

24       arbitration, despite not having any arbitration

25       agreements anywhere else on any of the matters, then that

37

1    would -- which seems pretty obvious that it does not.

2    That would render the language before, the "or anything

3    to do with our relationship with you," that -- they

4    wouldn't put that in there.  It would say -- where it

5    says, "any claim or dispute arising out of or relating to

6    this agreement," it would -- there would be no need for

7    that or "our services under it," would be -- would be

8    superfluous, and it would -- it wouldn't make sense as an

9    English construct.

10            And I guess what it -- what they seem to be

11   saying -- what Mr. Connelly's argument seems to be saying

12   is that by signing this one retainer agreement that

13   exists between Whiteford Taylor, Mr. Bolog, and Ms.

14   Engelhorn, that's the sole one that exists.  That by

15   saying that any our relationship with you will be

16   resolved, any subsequent, any case, any relationship, any

17   -- any interaction between Ms. Engelhorn and the law firm

18   is going to be resolved by arbitration has to be their

19   argument, and obviously that makes no sense.  So I would

20   just add those to our original thoughts.

21            THE COURT:  Mr. Connolly, since it's your

22   motion, I'll go back to you for the last word.

23            MR. CONNOLLY:  Well, I mean, again, I'd

24   encourage you to read what Mr. Gansler actually wrote in

25   his paper, which is completely contrary to this.  But

1          There was a statement that this existence of an

2    oral agreement between Bolog and the Plaintiff was

3    something that I had raised for the first time here.

4    It's something that they put in their answers or

5    responses to requests for admission, which we provided,

6    and it's Exhibit B to our opposition.  That Whiteford,

7    Taylor, and Preston put in their responses to our request

8    for admissions.

9          THE COURT:  Okay.  Mr. Connolly, anything else

10   since it's is your motion?  You get the last word.

11         MR. CONNOLLY:  No, Your Honor.  It is true that

12   we -- that we included references to that agreement, but

13   it's not true that that undoes the arbitration agreement

14   in any particular.

15         THE COURT:  Okay.  All right.  So having

16   considered the filings of the parties, as well as the

17   argument presented thus far this morning, I'm going to

18   give you a decision on the arbitration motion.

19         So obviously, the parties have disagreed as to

20   what state's law applies to the analysis.  This Court

21   finds that Maryland law applies.  First, it's not

22   entirely clear to me that Ms. Engelhorn signed the

23   contract in Colorado.  Even if she did, as the Supreme

24   Court of Maryland held in *Laboratory Corporation of*

25   *America versus Hood*, 395 Md. 606, 621, quote, "The lex

40

1    loci contractus principle is not inflexible, and that it

2    does not apply to a contract provision which is against

3    public policy," unquote.

4           In *Bethlehem Steel versus G.C. Zarnas and*

5    *Company*, 304 Md. 183 at 188, the court noted that, quote,

6    "Merely because Maryland law is dissimilar to the law of

7    another jurisdiction does not render the latter contrary

8    to Maryland public policy, and that for another state's

9    law to be unenforceable, there must be a strong public

10   policy against enforcement in Maryland."

11          The Court does find that there's a strong

12   public policy in favor of applying Maryland law in this

13   case.  That policy would exist within the Rules of

14   Professional Conduct that apply to attorneys practicing

15   in this State.  I think Plaintiff's counsel had cited the

16   *Post vs. Bregman* case, 349 Md. 142, that that the Rules

17   of Professional Conduct are, in fact, a statement of

18   public policy that have the force of law.

19          So with the Maryland Rules of Professional

20   Conduct standing as a backdrop of what public policy is

21   in the State as it pertains to attorney conduct, as it's

22   been noted, the Rules 19-301.8(h)(1) clearly prohibits

23   agreements limiting an attorney's prospective liability

24   to a client without the client being represented

25   independently or being advised in writing of the

41

1    desirability to seek an independent counsel, which was

2    not done in this matter, the Court so finds.

3           Furthermore, even if I was to apply Colorado

4    law, as Whiteford, Taylor, and Preston argues, I would

5    still find the provision to be unenforceable.  And if I

6    found that the law of the District of Columbia applied,

7    I'd reach the same result.

8           This is because the Court finds that Plaintiff

9    Engelhorn was not fully informed about the scope and

10   effect of the agreement.  So for these reasons, the

11   Court's going to deny Whiteford, Taylor, Preston's Motion

12   to Compel Arbitration.

13          So let's turn to the Motions to Dismiss on

14   substantive grounds.  And what I'd like to do is I'll

15   hear from both defense counsel, let Mr. Connolly respond

16   to all of it, and then turn back to defense counsel, go

17   in that direction.

18          So any references to who goes first?

19          MR. MURPHY:  Your Honor, I'm William Murphy,

20   also representing Whiteford.  I was going to argue the

21   Motion to Dismiss that Whiteford has filed.

22          THE COURT:  Okay, well, I'll hear from you

23   first, and then I'll turn it over to the Bolog

24   Defendants.

25          MR. MURPHY: Okay.  Thank you, Your Honor.

42

E-FILED; Baltimore City Circuit Court
Docket: 5/5/2025 5:55 PM; Submission: 5/5/2025 5:55 PM
Envelope: 21076089

# Exhibit 3

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**THE BOLOG DEFENDANTS'
ANSWER TO THE SECOND AMENDED COMPLAINT**

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"); Science Park Associates, LLC; and Darnestown Road, Inc., (collectively, the "Bolog Defendants") hereby answer the Second Amended Complaint filed by Plaintiffs Claudia Engelhorn, Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust Dated September 30, 2021, and White Pearl LLC, served on the Bolog Defendants on February 5, 2025.

**GENERAL DENIAL**

The Bolog Defendants generally deny all allegations and counts in the Second Amended Complaint.  *See* Maryland Rule 2-323(d).

**PRELIMINARY DEFENSES**

1.      This Court lacks jurisdiction over the subject matter of this action.

2.      The Second Amended Complaint fails to state a claim upon which relief can be granted.

3.      The Second Amended Complaint fails to join parties whose joinder is required by Maryland Rule 2-211.

## NEGATIVE DEFENSES

1.      Under controlling Maryland law and other persuasive authority concerning actions involving trusts, Plaintiffs lack the capacity to sue and the Bolog Defendants may not be sued.

2.      Under controlling Maryland law and other persuasive authority concerning actions involving trusts, Plaintiffs lack the authority to sue in a representative capacity and the Bolog Defendants may not be sued in a representative capacity.

3.      The claims are barred by written instruments, including but not limited to instruments that effectuate the gift properly delivered to and accepted by JAREB.

## AFFIRMATIVE DEFENSES

1.      The claims are barred by the doctrine of accord and satisfaction.

2.      The claims are barred by the doctrine of assumption of risk.

3.      The issues raised are precluded by the doctrine of collateral estoppel.

4.      The claims are barred by contributory negligence.

5.      The claims are barred because they arise from impermissible duress.

6.      The claims are barred by the doctrine of estoppel.

7.      The claims are barred by fraud.

8.      The claims are barred due to their illegality

9.      The claims are barred by the doctrine of laches.

10.      The claims are barred by payment.

11.      The claims are barred by release.

12.     The claims are barred by the doctrine of res judicata.

13.     The claims are barred by the applicable statutes of limitations.

14.     The claims are barred by waiver.

15.     Documentary evidence disproves the claims.

16.     The claims fail to plead fraud with particularity.

17.     The Bolog Defendants did not factually, legally, or proximately cause any purported injury to the Plaintiffs.

18.     Any purported damages alleged in the Second Amended Complaint, to the extent any purported damages exist or could be proven, are the result of the Plaintiffs' own conduct or the conduct of persons other than Bolog Defendants, conduct for which the Bolog Defendants are not responsible.

19.     Plaintiffs failed to mitigate the alleged damages.

20.     The claims are barred by the doctrine of unclean hands.

21.     The claims for punitive damages are barred by the Constitutions of the United States and Maryland.

## <u>JURY TRIAL DEMAND</u>

The Bolog Defendants demand trial by jury of all claims and issues so triable.  *See* Maryland Rule 2-331(b).

Dated:      February 20, 2025

Respectfully submitted,

Cadwalader, Wickersham & Taft LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2025, a copy of the foregoing

was served electronically via MDEC upon counsel of record, and remaining parties served via

first class mail.

**<u>Counsel of Record Served via MDEC:</u>**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**<u>Parties Served Via First Class Mail:</u>**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 5/5/2025 5:55 PM; Submission: 5/5/2025 5:55 PM
Envelope: 21076089

# Exhibit 4

Sign in

Ethics Hotline & Opinions

# Ethics Docket No. 1990-12

MARYLAND STATE BAR ASSOCIATION, INC.

COMMITTEE ON ETHICS

ETHICS DOCKET NO. 1990-12

Arbitration Clause in Fee Agreement

Your inquiry raises the issue as to whether an attorney may enter into a written retainer agreement with a client, which agreement would provide that all disputes arising out of the attorney-client relationship would be submitted to mandatory arbitration. This would include fee disputes as well as claims by the client against the lawyer for malpractice, professional negligence, and the like.

The Committee believes that the answer to your inquiry is governed by Rule 1.8(h) of the Maryland Rules of Professional Conduct, which provides:

"A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith."

The key issue in your inquiry is whether an agreement to submit all disputes arising out of the attorney-client relationship to arbitration constitutes an effort prospectively to limit the lawyer's liability to a client for malpractice. Assuming *arguendo*, either as a matter of law or as specified in the agreement, that arbitrators can award any and all types of damages (including punitive damages) which might be awarded by a court or jury, there is still the question as to whether a written agreement which takes away the right to a court or jury trial an be viewed as prospectively limiting the lawyer's liability to a client for malpractice. In a very technical sense, one could argue that there is no prospective limitation of the lawyer's liability provided that the arbitrators can award all damages that a court or jury could award. However, in this day and age, there are many lawyers and non-lawyers who would be quick to argue that juries are more likely to award larger judgments against professionals than would be the case with arbitration panels. In addition, there are significant differences between arbitration proceedings and court proceedings in terms of the admissibility or evidence, appellate review, and other factors which bear on this issue. Although one might easily and persuasively argue that these factors go to procedural differences rather than remedial ones, nevertheless, the Committee believes that the over-all effect of the decision whether to opt for arbitration versus a court or jury trial is sufficiently related to the issue of prospectively limiting a lawyer's liability, so that Rule 1.8(h) must be followed.

The dichotomy in Rule 1.8(h) between the situation where a lawyer is prospectively attempting to limit his liability to a client versus the situation where a lawyer is settling a claim for such liability with an unrepresented client or former client is significant. Interestingly, in the latter situation, a lawyer can settle a claim asserted by the unrepresented or former client provided the lawyer first advises that person in writing to seek independent representation in connection with the settlement of the claim. If the claimant fails to follow the lawyer's advice, provisions of the Rules, is free to settle the matter with the unrepresented or former client.

On the other hand, when the lawyer prospectively attempts to seek independent representation is not enough. In this situation Rule 1.8(h) mandates that the client be independently represented before making such an agreement. Thus, if the client fails or refuses to obtain independent representation, the lawyer cannot enter into any agreement prospectively limiting his liability.

Accordingly, the Committee is of the opinion that before a lawyer can enter into a written agreement with a client providing for the submission to arbitration of all disputes arising out of the attorney-client relationship, the client must be represented by independent counsel in connection with that written agreement. If the client refuses to seek independent counsel, then the lawyer is prohibited from entering into such a written agreement. In this case, obviously, the lawyer will simply have to decide whether he wants to represent the client absent such a written agreement.



**DISCLAIMER:** Opinions of the Maryland State Bar Association (MSBA) Ethics Committee are an uncompensated service of the MSBA. This Committee's opinions are not binding on the Maryland Court of Appeals, Maryland Attorney Grievance Commission, MSBA or this Committee. The reader is advised that subsequent judicial opinions, revisions to the rules of professional conduct, and future opinions of this Committee may render the Opinions stated herein outdated. As such, the Committee's opinions are advisory only and neither the Committee nor the MSBA assumes any liability whatsoever with respect thereto. Accordingly, reliance upon the opinions of this Committee is solely at the risk of the user.



QUICK LINKS

▸ MSBA Engage

▸ Attorney Security Pass

▸ Dispute an Attorney Fee

▸ Contact Us

MSBA SITE

▸ For Members

▸ Learning & Events

▸ Resources & Tools

▸ Advocacy

▸ About Us

PARTNER SITES

▸ Fastcase

▸ Maryland Bar Foundation

▸ MD Access to Justice Commission

▸ My Law

▸ Pro Bono Resource Center

**Maryland State Bar Association, Inc.**

520 W. Fayette St

Baltimore, Maryland, 21201

410-685-7878

**LAWYER ASSISTANCE:**

888-388-5459

     

Copyright    Privacy Policy    Terms & Conditions

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

### PLAINTIFFS' RESPONSE IN OPPOSITION TO THE BOLOG DEFENDANTS' PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS
### (Hearing Requested)

Plaintiffs, by and through their undersigned counsel, hereby file this Response in Opposition to the Bolog Defendants' Petition for an Order Compelling Arbitration and Staying Proceedings, and respectfully state as follows:

### INTRODUCTION

This Honorable Court has already denied a prior petition to compel arbitration in this action, and it should likewise deny the pending Petition for an Order Compelling Arbitration. Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants"), have petitioned this Honorable Court to compel arbitration with respect to *some* of the causes of action herein.  This Honorable Court should deny the Petition because the Whitewater Revocable Trust Dated September 30, 2021 (hereinafter "Whitewater" or "the Trust") is alleged by the Bolog Defendants to be subject to Virginia law, which holds that arbitration terms in trusts are unenforceable as a matter of law.  Moreover, the Bolog Defendants have waived their right to

arbitrate the claims at issue because they have actively participated in this litigation and have filed a Counterclaim which, if the arbitration provision was enforceable, would have fallen within the scope of the agreement to arbitrate.  Moreover, Ms. Engelhorn as the settlor/grantor for the Trust, retains unfettered discretion to modify or amend the terms of the Trust, which she has exercised.  Additionally, the Petition must be denied for the same reasons that this Honorable Court already denied Defendant Whiteford, Taylor & Preston, LLP's ("WTP") Petition to compel arbitration: because it would be violative of Maryland's strong public policy as set forth in the MARPC.

## **FACTUAL HISTORY**

On or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP and its attorneys, including Mr. Bolog, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees.  SAC ¶¶ 31 and 33.  As part of the creation of Whitewater, Mr. Bolog and other lawyers at WTP drafted the "Revocable Trust Agreement of Claudia Engelhorn." *See* Exhibit A. Ms. Engelhorn was the grantor/settlor. The co-trustees were Mr. Bolog and Ms. Engelhorn. Ms. Engelhorn was also the sole beneficiary of Whitewater during her lifetime.  *See* Exhibit A Section 2.  Ms. Engelhorn reserved the right to revoke or amend the Agreement in whole or in part "without the consent of any other person." *See* Exhibit A Section 8.  Regarding arbitration, the Trust provided:

> Any controversy between **the trustees**, or **between any other parties to this trust, including beneficiaries**, involving the **construction** or **application** of any of the terms, provisions, or conditions of this trust agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

Exhibit A Section 9 (emphasis supplied).  Finally, Virginia Law governs the "validity and construction of the agreement…" Exhibit A Section 10.

It is alleged that after WTP and Bolog drafted the Trust, Mr. Bolog engaged in misconduct of multiple varieties concerning legal services rendered to the Plaintiffs, and as is relevant to the pending Petition, he used Whitewater's, Ms. Engelhorn's, and White Pearl, LLC's funds to invest in business ventures in which Mr. Bolog had a personal interest, without obtaining Ms. Engelhorn's informed consent and making the necessary disclosures required by law and his ethical obligations. *See* SAC, generally. Mr. Bolog's misconduct led to Ms. Engelhorn amending and restating the Whitewater Trust Agreement on November 3, 2022. SAC ¶5 and 58. The November 3, 2022, amendment and restatement removed Mr. Bolog as the Trustee for Whitewater. *Id*. Thereafter, Ms. Engelhorn amended and restated the Whitewater Trust Agreement a second time on May 15, 2023.

## PROCEDURAL HISTORY

The Plaintiffs, including, but not limited to, Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, filed the present action. Plaintiffs filed the instant lawsuit on September 10, 2024. Plaintiffs subsequently filed an Amended Complaint on October 30, 2024. On November 15, 2024, WTP filed a Petition for an Order Compelling Arbitration and Staying Proceedings and a Motion to Dismiss or Stay. In response to said Petition, the Bolog Defendants filed a Response on December 17, 2024, which asserted that "[n]one of the claims against the Bolog Defendants is subject to arbitration…" Exhibit 1. During the January 27, 2025 hearing on WTP's Petition, the Bolog Defendants vigorously argued that the Plaintiffs' claims were not subject to arbitration, making such representations as the following:

> This case should not go to arbitration. And the reason why that is, is because the sole arbitration clause that occurred in this case is in fact the retainer letter regarding -- and it says, "regarding all claims regarding the estate of Curt Engelhorn."

Exhibit 2, 31:9-14 (Transcript January 27, 2025).

3

But here, there is no arbitration clause relevant to any of the issues that are brought in the complaint by the Plaintiff.  So we have no we have no dog in the fight, but it seems clear to me that there is no fight.

Exhibit 2, 32:13-17.

On November 11, 2024, Bolog Defendants also filed a Motion to Strike certain allegations in the Amended Complaint, a Motion for a More Definite Statement, and a Motion to Dismiss for failure to state a claim.  During the January 27, 2025 hearing, the Court ordered that the Plaintiffs amend their Complaint to disclose Ms. Engelhorn's address, and so the Plaintiffs filed a Second Amended Complaint on February 5, 2025, which, with the exception of updating Ms. Engelhorn's address, was identical to the October 30, 2024, Amended Complaint.   The Court otherwise denied WTP's and the Bolog Defendants' various motions, including WTP's Petition to Arbitrate, during the January 27, 2025 hearing.  The Bolog Defendants filed an Answer on February 20, 2025.  The Answer demanded a jury trial and did not assert that any of the Plaintiffs' claims were subject to arbitration.

On March 24, 2025, the Bolog Defendants (excluding the JAREB Trust) filed a Counterclaim against the Whitewater Trust and Ms. Engelhorn, individually, alleging Defamation (Count I), Indemnification under the terms of the Trust (Count II), Abuse of Process in the filing of the instant action (Count III), and breach of the terms of the Whitewater Trust (Count IV).  The Counterclaim asserts that Ms. Englehorn and the Whitewater Trust have violated the terms and conditions of the Trust by failing to indemnify the Counter-Plaintiffs and for failing to pay Mr. Bolog trustee commissions under the terms of the trust.  *See* Countercl., generally.  The Bolog Defendants demanded a jury trial for their counterclaims as well.  *Id*.

On March 27, 2025, the Bolog Defendants submitted a letter demanding arbitration and the payment of $500,000.00, which the Plaintiffs refused.  *See* Exhibits B and C.  Thereafter, on

April 18, 2025, the Bolog Defendants filed the instant Petition seeking to compel arbitration with

respect to the following Counts:

- Count X – Constructive Trust (Engelhorn *individually* v. Darnestown)
- Count XI - Constructive Trust (White Pearl, LLC v. Swain Landing LaPlata JC, LLC)
- Count XIII – Petition for Dissolution of Swain Landing (Whitewater and White Pearl v. Bolog, Postal, and Swain Landing)
- Count XIV – Liquidation and appointment of Receiver for Swain Landing (Whitewater and White Pearl v. Bolog, Postal, and Swain Landing)
- Count XVII- Fraudulent Conveyance (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)
- Count XVIII – Count XVII Fraud (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)
- Count XIX- Unjust Enrichment (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)

Plaintiffs refer to these claims as the "Challenged Claims."  The Bolog Defendants do not

seek to arbitrate any of the other causes of action asserted in the Second Amended Complaint.


## **ARGUMENT**

### A. **Under Virginia Law, the arbitration provision in the Trust Agreement is not enforceable because the Trust is not a "contract" or "agreement."**

While the Bolog Defendants assert that Virginia law substantive law governs the

"interpretation and validity" of the Whitewater Trust, they do not cite any authority from Virginia

whatsoever concerning the interpretation and validity of arbitration provisions in Virginia trusts.

This is because Virginia, and a majority of states hold arbitration provisions in trust agreements

are not enforceable.

The Virginia Supreme Court recently addressed the enforceability of arbitration provisions

in trust agreements in *Boyle v. Anderson*, 301 Va. 52, 871 S.E.2d 226 (2022).  Specifically, the

Court addressed the specific issue of whether the Virginia Uniform Arbitration Act, Code §§ 8.01-

581.01 to -.016) ("VUAA") or the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") compels

5

enforcement of an arbitration clause in a trust. *Id*. *Boyle* concerned the administration of a trust that had a clear and unambiguous arbitration provision requiring the submission of "any dispute" that could not be amicably resolved to arbitration. *Id*. at 55. The trustee, Boyle, was also one of the beneficiaries, and the other beneficiaries filed suit to remove Boyle as the trustee and obtain an order forcing her to comply with the terms of the trust. *Id*. In response, Boyle filed a motion to compel arbitration under the VUAA and/or the FAA. *Id*.

The VUAA applies to both a "written agreement to submit any existing controversy to arbitration" and to "a provision in a written contract to submit" a controversy to arbitration." *Id*. at 56. (Quoting VA Code § 8.01-581.01). However, the Court conducted a detailed analysis discussing the fundamental difference between "contracts" and "agreements" on the one hand, and trusts on the other, and held that a trust is fundamentally different from a contract or an agreement.

> We conclude that a trust does not qualify as a contract or agreement. Trusts are generally conceived as donative instruments. The Second Restatement of Trusts, carrying forward the language of the first Restatement of 1935, states that "[t]he creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." Restatement (Second) of Trusts § 197 cmt. B (1959). The Second Restatement defines a trust as "a fiduciary relationship with respect to property." *Id*. § 2.
>
> Beyond this longstanding conception of trusts, contracts and trusts differ in how they are formed. "The existence of the contract depends on actual acceptance of an offer. It is founded on mutual assent. A trust is in the nature of a conveyance of an equitable interest, and its formation is not dependent on the beneficiary's knowledge or acquiescence." Amy Morris Hess, et al., Bogert's Law of Trusts and Trustees § 17 (2021). Additionally, trusts differ from contracts in that "[n]o consideration is required for the creation of a trust. . . . In fact, most trusts are created by gratuitous transfer." Restatement (Third) of Trusts, Introductory Note 1 (2003). Beneficiaries of a trust generally do not provide any consideration to the settlor of the trust.
>
> Additionally, the duties owed by contracting parties also differ from the fiduciary duties a trustee owes to the beneficiaries of the trust. *See Rowland v. Kable*, 174 Va. 343, 367, 6 S.E.2d 633 (1940) (noting the fiduciary nature of a trustee's duties); see also Restatement (Third) of Trusts § 2 (2003) ("A trust . . . is a fiduciary relationship with respect to property.")

6

…

Third, ownership of property in a trust differs from ownership of property in a contract. "One of the major distinguishing characteristics of a trust is divided ownership of property, the trustee usually having legal title and the beneficiary having equitable title." *Id*. This stands in contrast to the law of contracts, where "this element of division of property interest is entirely lacking." *Id*. Additionally, "[t]he rights and duties of parties to a contract generally may be freely transferred. A trustee, on the other hand, cannot assign the trusteeship or delegate the performance of fiduciary duties except as permitted by statute." *Id*.

When the language of a statute is unambiguous, we are bound by its plain meaning. *Conyers*, 273 Va. at 104. The VUAA does not apply to all arbitration clauses. It applies to "a provision in a written contract." Code § 8.01-581.01. We conclude for all these reasons that a trust is not a "contract."

*Boyle*, 301 Va. 52, 56-59 (footnotes omitted). Finally, the Court likewise concluded that a trust was not a "contract" under the FAA, specifically, 9 U.S.C. § 2. *Id*. at 59. As such, under the VUAA, a party to a trust may not be compelled to arbitrate because a trust is not an "agreement" or "contract."

In the case at bar, the Trust document, while called an agreement, is not actually an agreement or contract under the law of Virginia. There was no consideration for the Trust's property to be held in a fiduciary capacity, and the trustee lacks the ability to assign trusteeship or delegate the performance of their fiduciary duties except as proscribed by Virginia law. Thus, this Honorable Court, applying the substantive law of Virginia, must find that the arbitration term in the trust is not enforceable. As a result, the Bolog Defendants' Motion must be denied.

### B. The Bolog Defendants have waived their right to insist on arbitration.

Even assuming *arguendo* a valid agreement to arbitration once existed (it did not), courts must evaluate, under CJP § 3-208, the continued existence of the right to arbitrate. *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 392 (2019). A party may, by subsequent acts or omissions, waive its right to arbitration. *Id*. One way that a party may waive its right to

7

arbitration is to fail to make a timely demand for arbitration.  *Stauffer Constr. Co. v. Bd. of Educ.*, 54 Md.  App. 658, 666 (1983) ("[B]y failing to make a timely demand, the party had waived his contractual right to resolve the dispute through arbitration.") (discussing *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307 (1975)); see also *Allstate Insurance Co. v. Stinebaugh*, 374 Md. 631, 646 (2003) ("[A]n inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding." (quoting *Town of Chesapeake Beach v. Pessoa Construction Co.*, 330 Md. 744 (1993)).  It is the courts, not arbitrators that evaluate the timeliness of a demand for arbitration.  *The Redemptorists v. Coulthard Services, Inc.*, 145 Md.  App. 116, 141 (2002) (quoting *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc.*, 69 Md. App. 405, 413 (1986)).

A right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead "engage[s] itself substantially in the judicial forum." *The Redemptorists*, 145 Md.  App. at 141.  Because "a resort to litigation is inconsistent with an intent to arbitrate, . . . one who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue." *Stauffer Construction*, 54 Md.  App. at 667.  *See, e.g., Cain v. Midland Funding*, 452 Md. 141 (2017) (By filing a collection action in a court, a debt-collection agency waived its right to require arbitration of debtor's subsequent action seeking damages and related relief based on violations of Maryland consumer-protection laws); *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 113-14 (1983)("A party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement.").

The Defendants, through their actions in this litigation, have waived any potential entitlement to arbitrate the Challenged Claims.  WTP filed a Petition to Compel Arbitration.  Not

only did the Bolog Defendants not file their own Petition to Compel Arbitration at that time, they responded to WTP's Petition by asserting that that "[n]one of the claims against the Bolog Defendants is subject to arbitration…"  Exhibit 1.  During the hearing, the Bolog Defendants openly opposed WTP's attempts to submit this matter to arbitration.  *See* Exhibit 2 at  31:9-14 ("This case should not go to arbitration.") and 32:13-17 ("But here, there is no arbitration clause relevant to any of the issues that are brought in the complaint by the Plaintiff.")  The Bolog Defendants then answered the Plaintiffs' Complaint and demanded a jury trial.  Exhibit 3. Nowhere in their Answer do they assert that Plaintiffs' claims are subject to arbitration.  *Id*.  A jury trial is not available in arbitration proceedings, and the unavailability of a jury trial is a key feature of arbitration.  The Bolog Defendants' request for a jury trial is entirely inconsistent with the existence of an agreement to arbitrate.

Finally, the Bolog Defendants filed a Counterclaim (again seeking a jury trial).  The Counterclaim asserted Defamation (Count I) stemming from pre-suit settlement demands in this case; Indemnification (Count II) asserting that the terms and conditions of the Trust required Whitewater to indemnify the Bolog Defendants for expenses incurred in this case; Abuse of Process (Count III) for filing this case; and Breach of Contract (Count IV) for allegedly failing to pay Mr. Bolog compensation under the terms of the Trust for his services as a Trustee while he was engaging in the tortious conduct set forth in the Second Amended Complaint.  Moreover, if such an entitlement to arbitrate existed, it would encompass the Bolog Defendants' Counterclaim because they fall squarely within the scope of the Trust's arbitration provision.  Despite this, the Bolog Defendants filed a Counterclaim.  Only after filing the Counterclaim did the Bolog Defendants issue a demand to arbitrate the Challenged Claims.  *See Cain*, *supra*, 452 Md. 141 (2017) (By filing a collection action in a court, a debt-collection agency waived its right to require

arbitration of debtor's subsequent action in as much as they were "related claims").  Here, as in *Cain*, all of the Challenged Claims are "related" to the Counterclaim filed before the Bolog Defendants invoked arbitration.

Therefore, to the extent that such an entitlement to arbitrate this matter existed under the Trust, the Bolog Defendants have waived that entitlement by their conduct in this action.

### C. Alternatively, Ms. Engelhorn, as the grantor, has terminated the obligation that she arbitrates any of the Challenged Claims under the Trust document.

The Whitewater Trust is a revocable trust.  The relevant section of the Trust states: "The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person."  Exhibit A §8.  Moreover, Virginia law gives the settlor of a revocable trust absolute authority to amend, revoke, or modify a revocable trust.  *See* Va. Code Ann.  § 64.2-751 (A).  "While a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." Va. Code Ann.  § 64.2-752 (A). Ms. Engelhorn is currently the Trustee and settlor/grantor for Whitewater.  "While a trust is revocable, the trustee may follow a direction of the settlor that is contrary to the terms of the trust."  Va. Code Ann. § 64.2-752 (B).

Thus, in the event that the Court does not deny the motion for the reasons set forth in Section A, Plaintiff as the settlor/grantor, under the terms of the Trust, and the power she holds under the Virginia Uniform Trust Code, Ms. Engelhorn by filing this action, modified the trust to exclude the claims asserted in this litigation from any obligation to arbitrate.

**D. To the extent that the arbitration provision acts as a prospective limitation of Mr. Bolog's liability for malpractice, it is unenforceable under the strong public policy of the State of Maryland.**

In response to WTP's Petition to Arbitrate, the Plaintiffs filed an Opposition on December 17, 2024, arguing that Maryland's strong public policy, as embodied in MARPC 19-301.8(h)(1), renders unenforceable any agreement whereby a client agrees to arbitrate a *future* claim for malpractice. This Honorable Court, during the January 27, 2024 hearing in this matter, agreed, and on that basis (and a number of alternative bases), concluded that WTP's arbitration term was unenforceable against the Plaintiffs herein because Maryland's strong public policy prohibits the enforcement agreements to limit prospective malpractice claims by submitting them to arbitration. Exhibit 2 at 40:20-42:12. Much of the same argument applies to the Bolog Defendants' Petition to Arbitrate, and Plaintiff adopts and incorporates its Response in Opposition to Defendant Whiteford, Taylor & Preston, LLP's Petition for an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, and Plaintiffs' January 10, 2025, Supplement thereto.

Mr. Bolog and other attorneys at WTP drafted the Whitewater Trust at issue. SAC ⁋ 30 and 33; *see also* Defs Ex. A ("Whiteford, Taylor & Preston, LLP" appears on the bottom of each page). During the time when the Trust was created, Mr. Bolog and WTP were Ms. Engelhorn's attorneys, and they billed for the creation of the Whitewater Trust. *Id.* Thereafter, Mr. Bolog occupied the dual role of attorney and trustee for Whitewater until November 3, 2022, when Ms. Engelhorn amended and restated the trust and removed Mr. Bolog. SAC ⁋ 5.

Since 1831, Maryland Courts have held "that the *lex loci contractus* controls the nature, construction, and validity of the contract. The exceptions are, where it would be dangerous, **against public policy**, or of immoral tendency, to enforce that construction here." *Trasher v. Everhart*, 3 G. & J. 234, 234 (1831) (emphasis added). *See, also Laboratory Corp. of America v. Hood*, 395 Md. 608, 621 (2006) ("We have just as consistently held, however, that the *lex loci*

11

*contractus* principle is not inflexible and that it 'does not apply to a contract provision which is

**against Maryland public policy**.'" (citing *Bethlehem Steel Corp. v. G.C. Zarnas & Co., Inc.*, 304

Md. 183, 188 (1985)).

The Maryland Attorneys' Rules of Professional Conduct ("MARPC") govern the conduct

of lawyers licensed to practice law in the State of Maryland and prohibit prospective mandatory

arbitration agreements.   MARPC 19-301.8(h) prohibits prospective mandatory arbitration

agreements between attorneys and their clients, and states in pertinent part:

> (h) An attorney **shall not**:
>
>> (1) make an agreement **prospectively limiting the attorney's liability to a
>> client for malpractice unless the client is independently represented
>> in making the agreement**; or
>>
>> (2) settle a claim or potential claim for such liability with an unrepresented
>> client or former client unless that person **is advised in writing** of the
>> desirability of seeking and is given a reasonable opportunity to seek
>> independent legal advice in connection therewith.

Md. Rule 19-301.8(h) (emphasis added).   The comments to the Rule explain that there is a

distinction between limiting prospective or future legal malpractice liability and settling existing

legal malpractice claims:

> [14] Agreements prospectively limiting an attorney's liability for malpractice ***are
> prohibited*** unless the client is ***independently represented in making the agreement***
> because they are likely to undermine competent and diligent representation.  Also,
> many clients are unable to evaluate the desirability of making such an agreement
> before a dispute has arisen, particularly if they are then represented by the attorney
> seeking the agreement.  This section does not, however, prohibit an attorney from
> entering into an agreement with the client to arbitrate ***existing*** legal malpractice
> claims, **provided the client is fully informed of the scope and effect of the
> agreement**…
>
> [15] Agreements settling a claim or a potential claim for malpractice are not
> prohibited by this Rule.  Nevertheless, in view of the danger that an attorney will
> take unfair advantage of an unrepresented client or former client, the attorney must
> first ***advise such a person in writing*** of the appropriateness of independent
> representation in connection with such a settlement.  In addition, the attorney must

12

give the client or former client a reasonable opportunity to find and consult
independent attorney.

Md. Rule 19-301.8 Comments (14)-(15).  (Emphasis added.)  Thus, the Rule provides varying

levels of protection to clients depending on whether the limitation on liability concerns existing or

future malpractice.  The highest protection is afforded when an attorney seeks to prospectively

limit their liability to the client, and a Maryland attorney may only do so if the client *is

independently represented in making the agreement*.  *Id*.  This is because, as the comments explain,

"clients are unable to evaluate the desirability of making such an agreement before a dispute has

arisen, particularly if they are then represented by the attorney seeking the agreement."  *Id*.

While the Maryland Supreme Court has not directly addressed whether a mandatory

arbitration clause between attorney and client violates the MARPC, however, the Maryland

Supreme Court has held that the MARPC is a statement of public policy with the force and effect

of law and that a contract that violates a rule can be unenforceable (depending on other

circumstances).  *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998), concerned a dispute between

two lawyers over the division of a contingency fee.  The overall split did not affect the client's net

recovery.  When the attorneys were not able to agree, Post filed a declaratory judgment action

against Bregman, alleging that honoring the fee arrangement would violate then-MLRPC 1.5(e)

(current MARPC 19-301.5(e)).  *Id*. at 146.  Post countersued for declaratory judgment and breach

of contract, and the Circuit Court concluded that a violation of 1.5(e) did not render the agreement

unenforceable.  The Supreme Court was called upon to determine whether the MARPC constituted

a cognizable and enforceable statement of public policy equivalent in effect to a statute.  *Post,* 349

Md. at 162, 707 A.2d at 815.  The Court held:

> MLRPC represents the exercise of that authority, the discharge of that
> responsibility.  **To the extent, therefore, that the pronouncements of other
> courts are based on a different view of the function and authority of the Code
> in their respective States, they are simply not relevant to the Maryland**

13

> **situation.  MLRPC constitutes _a statement of public policy_ by the only entity in
> this State having the Constitutional authority to make such a statement, and
> it _has the force of law_.**  The mere fact that lawyers may be disciplined -- even
> disbarred -- for violating those rules attests to the legal significance of the rules.
> We thus share the view of the Illinois Supreme Court, expressed in _In re Vrdolyak_,
> 137 Ill. 2d 407, 560 N.E.2d 840, 845, 148 Ill.  Dec. 243 (Ill. 1990), that "as an
> exercise of this court's inherent power over the bar and as rules of court, the Code
> operates with the force of law." See also _Succession of Cloud_, 530 So. 2d 1146,
> 1150 (La. 1988) ("The standards in the Code of Professional Responsibility which
> govern the conduct of attorneys have the force and effect of substantive law");
> _Citizens Coalition for Tort  Reform, Inc. v. McAlpine_, 810 P.2d 162 (Alaska 1991).

_Post_, 349 Md. at 162-64, 707 A.2d at 816-17 (emphasis added).  The Court then went on to note

that "it would indeed be at least anomalous to allow a lawyer to invoke the court's aid in **_enforcing_**

**_an unethical agreement_** when that very enforcement, or perhaps even the existence of the

agreement sought to be enforced, **_would render the lawyer subject to discipline_**."  _Post_, 349 Md.

at 168, 707 A.2d at 818 (emphasis added).  The Court concluded, "MLRPC Rule 1.5(e) does

constitute a supervening statement of public policy to which fee-sharing agreements by lawyers

are subject, and that the enforcement of Rule 1.5(e) is not limited to disciplinary proceedings.  It

may extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e)

unenforceable…"  _Post_, 349 Md. at 168, 707 A.2d at 818.  The Court did not, however, go so far

as to hold that any agreement in violation of 1.5(e) was automatically unenforceable or void _per_

_se_ because Rule1.5(e) governs attorney's contracts with _other lawyers_, and the Court articulated a

series of other factors to consider before holding a fee-sharing agreement in violation of 1.5(e)

unenforceable; which do not have any relevance to the violation of 1.8(h) at issue here.

Also of relevance is MARPC 19-301.8, generally.  Maryland Courts have held that " 'the

law makes a presumption against the attorney and in favor of the client.  In such cases, the onus is

on the attorney to prove the entire bona fides and fairness of the transaction.' " _Attorney Grievance_

_Commission v. Korotki_, 318 Md. 646, 666, 569 A.2d 1224, 1234 (1990) (quoting _Merryman v._

_Euler_, 59 Md. 588–90 (1883) ).

> [T]he attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

*Attorney Grievance Commission v. McLaughlin*, 372 Md. 467, 506, 813 A.2d 1145, 1168 (2002)

(quoting *Attorney Grievance Commission v. Snyder*, 368 Md. 242, 265–66, 793 A.2d 515, 529

(2002)).  "In situations where the client has not been 'advised in writing of the desirability of

seeking and [was not] given a reasonable opportunity to seek the advice of independent legal

counsel on the transaction,' MLRPC 1.8(a)(2), we presume that the agreement between the

attorney and client is not a fair and reasonable one." *Attorney Grievance Comm'n v. Shapiro*, 441

Md. 367, 388, 108 A.3d 394 (2015).  An attorney violates Rule 1.8 by failing to advise the client

in writing of the desirability of seeking independent legal advice before entering into a settlement

agreement with the attorney.  *Shapiro*, 441 Md. at 388 ); see also *Attorney Grievance Comm'n v.*

*Steinberg*, 395 Md. 337, 365 (2006) (determining that the attorney violated Rule 1.8 by seeking to

have his client sign a release of any malpractice claims against him without advising the client of

the desirability of obtaining independent counsel before signing); *AGC v. Young*, 248 A.3d 996,

473 Md. 94 (attorney violated 1.8(a) and (h) by failing to advise client in writing of the desirability

of having independent legal counsel before settling an existing legal malpractice claim.).

      With respect to the arbitration provision at issue herein, nowhere in the Trust does it state

that Ms. Engelhorn was represented by independent counsel with respect to making the Trust.  To

the contrary, WTP's name is stamped on every page of the document.  *See* Defs.' Ex. A.  Likewise,

as with WTP's arbitration provision, there is no indication that Ms. Engelhorn was instructed *in*

*writing* of the desirability of having independent counsel review the arbitration term, and so they

do not meet the relaxed standard required to settle *existing* malpractice claims, let alone the far

higher standard for *future* malpractice claims.  Moreover, the arbitration provision at issue lacks

any explanation of what arbitration is, the difference between arbitration and litigation, that no jury is available in arbitration proceedings, that she may be waiving a right to punitive damages, that her rights to discovery in arbitration were limited, restrictions on her rights to appeal an arbitrator's award in contrast to her rights in litigation, and any many other important distinctions between arbitration and litigation.

Because the MARPC, including MARPC 19-301.8(h), is a statement of strong public policy, *supra,* the arbitration provision is not enforceable because Engelhorn was not represented by independent counsel in the making of the Trust.  The arbitration provision is also unenforceable because the Bolog Defendants have provided no evidence that Engelhorn was "fully informed of the scope and effect of the agreement," which is a requirement under the law of Maryland, *supra.*  A prospective agreement to arbitrate malpractice claims is a prospective limitation of a lawyer's liability for malpractice under Maryland law, and such an agreement violates MARPC 19-301.8(h)(1) unless the client is represented by independent counsel "in making the agreement."  Ethics Doc. 1990-12 (Exhibit 4).  "[I]t would indeed be at least anomalous to allow a lawyer to invoke the court's aid in enforcing an unethical agreement when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, would render the lawyer subject to discipline."  *Post*, 349 Md. at 168, 707 A.2d at 818.  Therefore, the correct choice of law analysis is for this Court to apply the strong public policy set forth in the MARPC and decline to enforce the arbitration provision of the Trust against Engelhorn.

Alternatively, under Va.  Sup.  Ct. R. pt. 6, sec.  II, ("VRPC") 1.8 (h), the arbitration provision is not enforceable even if Virginia substantive law applies.  Virginia's version of 1.8 provides in relevant part:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability
> to a client for malpractice, except that a lawyer may make such an agreement with

a client of which the lawyer is an employee as long as the client is independently represented in making the agreement.

VRPC 1.8(h). Unlike its Maryland counterpart, VRPC 1.8(h) does not permit prospective agreements to limit an attorney's liability for malpractice, irrespective of whether the client is independently represented in the making of the agreement.  Moreover, the Comments to the Rule do not address exceptions or discuss under what circumstances arbitration between attorneys and clients is permitted.  Thus, the violation of VRPC 1.8(h) provides an alternative basis for not enforcing the arbitration provision at issue.

**E.  The plain language of the arbitration provision does not apply to the claims asserted in this action.**

Regarding arbitration, the Trust provides:

Any controversy between **the trustees**, or **between any other parties to this trust**, **including beneficiaries**, involving the **construction** or **application** of any of the terms, provisions, or conditions of this trust agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

Exhibit A Section 9 (emphasis supplied).  On their face, none of the Counts that the Bolog Defendants seek to arbitrate concern the "construction or application" of the terms, provisions, or conditions of the Trust.

Count X- Constructive Trust alleges that Mr. Bolog utilized $350,000 of Ms. Engelhorn's personal funds (not Whitewater's funds) to invest in Darnestown.  Ms. Engelhorn, not Whitewater, sued Darnestown, seeking a constructive trust over the funds improperly funneled by Mr. Bolog to Darnestown Road.  Neither Whitewater nor Bolog are parties to Count X, nor does it concern the construction or application of terms of the Trust.  Darnestown is not a party to the Trust.

Count XI Constructive Trust alleges that Mr. Bolog utilized $585,000.00 of White Pearl, LLC's funds (not Whitewater's funds) to invest in Swain Landing.  In Count XI, White Pearl, LLC

(who is not a party to the Trust) sued Swain Landing, seeking a constructive trust over the funds improperly invested by Mr. Bolog into Swain Landing. Neither Whitewater nor Bolog are parties to Count XI, nor does it concern the construction or application of terms of the Trust. Swain Landing is not a party to the Trust.

Counts XIII and XIV seek the dissolution and liquidation of Swain Landing. They assert that the Whitewater Trust was named as a member of Swain Landing. In these Counts, the Whitewater Trust and White Pearl, LLC sued Mr. Bolog, Michael Postal, and Swain Landing. Through these two Counts, the Whitewater Trust, in its role as a member of Swain Landing, seeks the dissolution, liquidation, and appointment of a receiver for Swain Landing. White Pearl, LLC seeks the return of its improperly invested $585,000.00. SAC ¶¶158 and 162. These Counts do not involve the construction or application of terms of the Trust. Neither White Pearl, LLC, Mr. Postal, nor Swain Landing are parties to the Trust. Finally, while Mr. Bolog was once the Trustee of the Whitewater Trust, his role was terminated on November 5, 2021, when Ms. Engelhorn amended and restated the Trust. SAC ¶5. Mr. Bolog has disavowed any involvement with Swain Landing whatsoever. *See* Petition at 6 ("Mr. Bolog had no involvement, in any capacity whatsoever, with the Swain Landing transaction…")

Whitewater asserted Counts XVII (Fraudulent Conveyance), XVIII (Fraud), and XIX (Unjust Enrichment) against Mr. Bolog, Science Park, and Tenacity Investments, LLC. These Counts asserted that Mr. Bolog, as a member of Science Park and a guarantor indebted to a lender on Science Park's behalf, used Whitewater's funds to pay off his and Science Park's indebtedness. Tenacity Investments, LLC is alleged to have been one of Mr. Bolog's companies, and it was also a co-guarantor on the indebtedness at issue. It is alleged that Mr. Bolog failed to disclose his personal interest in the Science Park transaction and failed to remit certain payments from the

transaction to the Trust.  Thereafter, when Science Park sold its sole asset, it paid off Whitewater's

loan but failed to remit certain additional payments owed.  Neither Tenacity nor Science Park were

parties to the Trust.  Count XVII (Fraudulent Conveyance) asserts that Science Park failed to remit

payments and failed to pay interest on the Whitewater Trust's loan after liquidating its assets, and

it is alleged that Science Park fraudulently conveyed its assets to Tenacity and/or Mr. Bolog

without fair consideration thereby rending itself insolvent.  SAC¶¶178-181.  Count XVIII (Fraud)

alleges that Mr. Bolog *concealed* his and Tenacity's interests in the Science Park transaction.

SAC¶¶187-88. Finally, Count XIX (Unjust Enrichment) alleges that Mr. Bolog, Tenacity, and

Science Park were unjustly enriched because they failed to remit interest and other payments that

they were required to pay Whitewater under the terms of the loan from Whitewater.  SAC¶¶194-

96.  None of Counts XVII, XVIII, or XIX involve "the construction or application of any of the

terms, provisions, or conditions" of the Trust.  Science Park and Tenacity are not parties to the

Trust, and Mr. Bolog is not the Trustee of Whitewater.

Finally, while the JAREB Irrevocable Trust, Dated October 11, 2021, is not a party to the

Counterclaim, it is also not a party to any of the Challenged Claims, nor was it a party to the

Whitewater Trust at issue.

Accordingly, none of the Challenged Claims involve the "construction or application" of

the terms of the Trust, and thus, under the plain language of the Trust, there never was an agreement

to arbitrate these claims.  The Bolog Defendants' Petition must be denied.

## CONCLUSION

For the reasons set forth herein, the Bolog Defendants' Petition must be denied.  The Trust

is governed by Virginia substantive law, and under Virginia law, arbitration terms in trusts are

unenforceable because they are not "contracts" or "agreements."  This Court, applying Virginia

law, should hold the same and deny the Petition. Alternatively, the Counter-Defendants, by actively litigating this matter, repeatedly disclaiming the existence of an arbitration agreement, and filing a Counterclaim within the scope of the arbitration provision, have waived arbitration. Next, Ms. Englehorn is the settlor/grantor with the right to modify and amend the Trust at any time, so by filing this action in the Circuit Court, she has modified the Trust to carve out the claims herein from the arbitration provision. To the extent that the arbitration provision can be construed as a prospective limitation on Mr. Bolog's liability for malpractice, it is unenforceable under the strong public policy of Maryland as articulated in the MARPC. Finally, under the plain language of the arbitration term, none of the Challenged Claims involve the "construction or application" of the terms of the Trust and thus are outside the scope of the arbitration provision.


Respectfully submitted:

/s/*Patrick D. Gardiner*
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

20

## REQUEST FOR HEARING

Plaintiffs request a hearing on all matters raised in the Petition to Compel Arbitration, their

Response in Opposition thereto, and with respect to any paper filed regarding the same.

/s/ *Patrick D. Gardiner*
Patrick D. Gardiner, Esq. (AIS# 1506160113)

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of May 2025, a copy of the foregoing was sent

via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

22

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ *Patrick D. Gardiner*
Patrick D. Gardiner, Esq. (AIS# 1506160113)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| **v.** | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

<u>**CONSENT MOTION TO EXTEND RESPONSE DEADLINE TO**</u>
<u>**MOTION TO DISMISS COUNTERCLAIM**</u>

Counterclaim-Plaintiffs, Erik D. Bolog, Darnestown Road, Inc., and Science Park Associates, LLC, by and through their undersigned counsel, with the consent of Counterclaim-Defendants Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, hereby move to extend Counterclaim-Plaintiffs' deadline for responding to Counterclaim-Defendants' Motion to Dismiss Counterclaim, and respectfully state as follows:

1.      That this is a complex civil case involving multiple plaintiffs and defendants, petitions for arbitration, counterclaims, and ongoing active discovery matters.

2.      That Counterclaim-Plaintiffs, Erik D. Bolog, Darnestown Road, Inc., and Science Park Associates, LLC filed counterclaims on March 24, 2025.

3.      The Counterclaim-Defendants filed their Motion to Dismiss Counterclaim on April 22, 2025.

4.      That, given the volume of filings and ongoing discovery matters, the Counterclaim-Defendants have consented to extend the Counterclaim-Plaintiffs' deadline to respond to the Motion to Dismiss the Counterclaim by 30 days, to **June 6, 2025**, so as to fully address all the relevant factual and legal issues.

5.      That the requested extension would afford the Court ample time to: (1) review and consider the Counterclaim-Defendants' Motion to Dismiss and Counterclaim-Plaintiffs' response thereto and (b) schedule a hearing on the Counterclaim-Defendants' Motion in a timely manner.

6.      That an extension of the Counterclaim-Plaintiffs' time to respond to Counterclaim-Defendants' Motion to Dismiss the Counterclaims will not unduly delay any scheduled proceedings in this action.

7.      That this extension of time is requested in good faith and is not interposed for the purpose of delay.

8.      That good cause exists to extend Counterclaim-Plaintiffs' time to respond to the Counterclaim-Defendants' Motion.

9.      That no party will be prejudiced by the requested extension.

10.     That a proposed Order is submitted with this Consent Motion.

WHEREFORE, Counterclaim-Plaintiffs Erik D. Bolog, Darnestown Road, Inc., and Science Park Associates, LLC respectfully request that this Honorable Court grant this Consent Motion, and extend Counterclaim-Plaintiffs' deadline to respond to the Motion to Dismiss Counterclaims to **June 6, 2025**.

-2-

Dated:    May 6, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

HENDERSON LAW, LLC.

*By: /s/ Patrick D. Gardiner, Esq.*
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of May, 2025, a copy of the foregoing was

served in the manner indicated on the following:

**<u>Counsel of Record Served via MDEC:</u>**

Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**<u>Parties Served Via First Class Mail:</u>**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

|  |  |
|---|---|
| CLAUDIA ENGELHORN, *et al.*, | |
| Plaintiffs, | |
| v. | No. C-24-CV-24-002631 |
| ERIK D. BOLOG, *et al.*, | |
| Defendants. | |

## NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 6th day of May, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1.  Amended Notice of Deposition ad Testificandum (Jennifer M. Shaw).

Dated: May 6, 2025

Respectfully submitted,

By: /s/ John J. Connolly
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
    (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May, 2025, a copy of the foregoing

document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>Matthew Karlan<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>Matthew.karlan@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |
| Deleyla A. Lawrence<br>Tammy L. Adkins<br>McGuireWoods LLP<br>1800 Century Park East, 8th Floor<br>Los Angeles, CA 90067<br>dlawurence@mcguirewoods.com<br>tadkins@mcguirewoods.com | |

 _/s/ John J. Connolly_____
John J. Connolly

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**CLAUDIA ENGELHORN, *et al.*,**            )
                                            )
                                            )
    *Plaintiffs*                            )
                                            )
**v.**                                      )     **Case No.: C-24-CV-24-002631**
                                            )
**WHITEFORD, TAYLOR & PRESTON,**            )
**LLP et al.,**                             )
                                            )
                                            )
    *Defendants*.                           )

---

### [PROPOSED] ORDER ON
### CONSENT MOTION TO EXTEND RESPONSE DEADLINE TO
### MOTION TO DISMISS COUNTERCLAIM

Upon consideration of the Consent Motion to Extend Response Deadline, and for good

cause, it is this ___ day of _____, 2025, by the Circuit Court for Baltimore City, Maryland,

hereby:

**ORDERED**, that the Consent Motion to Extend Response Deadline is, **GRANTED**; and

it is further

**ORDERED**, that date by which Counterclaim-Plaintiffs Erik D. Bolog, Darnestown Road,

Inc., and Science Park Associates LLC must respond to the Motion to Dismiss Counterclaim filed

by Defendants Claudia Engelhorn as an individual and as trustee of the Whitewater Revocable

Trust, dated September 30, 2021, will be **June 6, 2025**.


_____
Judge, Circuit Court for Baltimore City, Maryland

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

### CONSENT MOTION TO MODIFY THE SCHEDULING ORDER

Plaintiffs, Defendants Whiteford, Taylor & Preston, LLP ("WTP") and Erik D. Bolog as

Trustee of the JAREB Irrevocable Trust Dated October 11, 2021, and Defendants/Counter-

Plaintiffs Erik D. Bolog, Individually, Darnestown Road, Inc., and Science Park Associates, LLC,[1]

("the Bolog Defendants"), by and through their undersigned attorneys, hereby move to Modify the

Scheduling Order, and in support thereof respectfully state as follows:

1.      That the Plaintiff commenced this action on September 10, 2024.

2.      That this matter involves allegations of legal malpractice and other claims against

the Defendants.

3.      That the above-named Defendants filed preliminary motions to dismiss and/or other

motions at the commencement of this case.

4.      That Defendant WTP filed a Petition to Compel Arbitration.

5.      That, with the exception of requiring Plaintiff Engelhorn to disclose her address,

this Honorable Court denied the Defendants' motions and WTP's petition to compel arbitration.

_____

[1] All Parties who have appeared in this action consent to the relief requested herein. The non-appearing Defendants
are Michael Postal, Pojo LaPlata LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC.

6.     That, following the disposition of the Defendants' preliminary motions, this Honorable Court issued a Scheduling Order on or about February 13, 2025, which contained the following deadlines:

| Event | Deadline |
|---|---|
| Plaintiff(s) expert witness disclosures | 5/12/2025 |
| Filing of any amended Pleadings | 7/11/2025 |
| Joinder of any additional parties | 7/11/2025 |
| Defendant(s) expert witness disclosures | 8/11/2025 |
| Plaintiff(s) rebuttal expert disclosures | 9/09/2025 |
| Completion of all discovery | 10/09/2025 |
| Completion of any ADR proceeding | 11/10/2025 |
| Filing of any dispositive motion(s) and any motion(s) to exclude expert testimony, including request(s) for *Daubert-Rochkind* hearing | 11/10/2025 |
| Pre-trial and settlement conference | 1/12/2026 |
| Any additional motions *in limine* | 1/23/2026 (20 days before trial) |
| First day of trial | February 12, 2026 |

7.     That, following the entry of the Scheduling Order, the Parties engaged in discovery in earnest.

8.     That Defendant WTP requested a Stipulated Protective Order in this matter.  The draft, Protective Order has been through various revisions, and the Parties have a general agreement regarding the terms of the Order, but it has not been finalized due to disputes regarding certain collateral components of the draft, Protective Order.  The Parties expect to submit a finalized Stipulated Protective Order in the near future.

9.     That Defendant WTP has produced extensive document production consisting of over 22,000 pages of documents and other materials in response to Plaintiffs' discovery requests.

10.    That Defendant WTP served discovery requests on the Plaintiffs.  However, Plaintiffs' responses to WTP's written discovery requests have been delayed by Plaintiff Claudia Engelhorn's recent medical procedure and her delayed recovery therefrom.

11.    That, on or about March 24, 2025, the Bolog Defendants filed a Counterclaim against the Plaintiffs/Counter-Defendants.  Plaintiffs/Counter-Defendants filed a Motion to Dismiss the Counterclaim on or about April 22, 2025.  Plaintiffs/Counter-Defendants have agreed to consent to extend the Counter-Plaintiff's deadline to oppose the Motion to Dismiss to June 6, 2025.

12.    That Plaintiffs and the Bolog Defendants are currently in the midst of a discovery dispute regarding the Bolog Defendants' written discovery responses and document production. These disputes have been memorialized in the Plaintiffs' and the Bolog Defendants' recent discovery motions and oppositions.

13.    That, on or about April 18, 2025, the Bolog Defendants filed a Petition for an Order Compelling Arbitration and Staying Proceedings, and the Bolog Defendants argue that their Petition acts as a stay of all discovery in this matter.

14.    That, given the voluminous document production in this matter, Ms. Engelhorn's delayed medical recovery, the ongoing discovery disputes, and the complexities of this matter, the Parties request a continuance of all dates in the Scheduling Order by ninety (90) days.

15.    That the Parties seek an order allowing them an adequate opportunity to conduct discovery and prepare for trial.  The Parties proposed the following Modification of the Scheduling Order:

| Event | Current Deadline/Date | New Deadline/Date |
|---|---|---|
| Plaintiff(s) expert witness disclosures | 5/12/2025 | 8/11/2025 |

| Filing of any amended Pleadings | 7/11/2025 | 10/09/2025 |
|---|---|---|
| Joinder of any additional parties | 7/11/2025 | 10/09/2025 |
| Defendant(s) expert witness disclosures | 8/11/2025 | 11/10/2025 |
| Plaintiff(s) rebuttal expert disclosures | 9/09/2025 | 12/08/2025 |
| Completion of all discovery | 10/09/2025 | 1/07/2026 |
| Completion of any ADR proceeding | 11/10/2025 | 2/08/2026 |
| Filing of any dispositive motion(s) and any motion(s) to exclude expert testimony, including request(s) for *Daubert-Rochkind* hearing | 11/10/2025 | 2/08/2026 |
| Pre-trial and settlement conference | 1/12/2026 | TBD |
| Any additional motions *in limine* | 1/23/2026 (20 days before trial) | TBD |
| First day of trial | February 12, 2026 | TBD |

16.     That this Motion is not brought for the purpose of delay, no Party will be prejudiced, the business of the Court will not be substantially disrupted, and the best interest of justice will be served.

WHEREFORE, for the reasons set forth herein, the Parties, by and through undersigned counsel, respectfully request that the Court grant this Consent Motion to Modify Scheduling Order, modify the dates thereof as requested herein, and grant such other and further relief as may be just and appropriate.

Respectfully submitted:

/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs and Counter-Defendants*


/s/ William J. Murphy (PDG w/permission)
William J. Murphy, Esq. (AIS #8406010273)
John J. Connolly, Esq. (AIS # 9112170144)
Kirk E. MacKinnon Morrow (AIS #2410241018)
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*


/s/ Douglas F. Gansler (PDG w/permission)
Douglas F. Gansler, Esq. (AIS #8912180208)
John B. Howard, Jr., Esq. (AIS# 9106200125)
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually, and as Trustee of The JAREB Irrevocable Trust Agreement dated October 11, 2021, Science Park Associates, LLC; and Darnestown Road, Inc.*

5

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of May 2025, a copy of the foregoing was sent

via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Zachary Schrieber, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

6

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ PDG (AIS# 1506160113)
Patrick D. Gardiner

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** )<br>    )<br>    *Plaintiffs*    )<br>    )<br>v.    )    **Case No.: C-24-CV-24-002631**<br>    )<br>**ERIK D. BOLOG, ET AL.**    )<br>    )<br>    *Defendants*.    )    | |

---

## ~~PROPOSED~~ ORDER

Upon consideration of the Parties Consent Motion to Modify Scheduling Order, and upon

a finding of good cause, it is this **8th** day of _____**May**_____, 2025 hereby:

ORDERED, that the Consent Motion to Modify Scheduling Order is GRANTED; and the

Scheduling Order is modified as follows:

| Event | Current Deadline/Date | New Deadline/Date |
|---|---|---|
| Plaintiff(s) expert witness disclosures | 5/12/2025 | 8/11/2025 |
| Filing of any amended Pleadings | 7/11/2025 | 10/09/2025 |
| Joinder of any additional parties | 7/11/2025 | 10/09/2025 |
| Defendant(s) expert witness disclosures | 8/11/2025 | 11/10/2025 |
| Plaintiff(s) rebuttal expert disclosures | 9/09/2025 | 12/08/2025 |
| Completion of all discovery | 10/09/2025 | 1/07/2026 |
| Completion of any ADR proceeding | 11/10/2025 | 2/08/2026 |
| Filing of any dispositive motion(s) and any motion(s) to exclude expert testimony, including request(s) for *Daubert-Rochkind* hearing | 11/10/2025 | 2/08/2026 |
| Pre-trial and settlement conference | 1/12/2026 | ~~TBD~~ |

**Counsel shall clear a new pretrial conference and trial date with civil assignment and submit a proposed order to the Court.**

| Any additional motions *in limine* | 1/23/2026 (20 days before trial) | TBD |
| First day of trial | February 12, 2026 | ~~TBD~~ |

05/08/2025 11:13:11 AM

_____
Judge, Circuit Court for Baltimore City,
Maryland

Copies to:
All counsel of record (via MDEC)

*Pro se* Parties via first class mail:

    Michael Postal
    1801 16th Street NW, Apt 608
    Washington, DC 20009

    POJO LaPlata, LLC
    4302 Broken Arrow Court, Apt 606
    Clinton, MD 20735

    Swain Landing LaPlata JC, LLC
    4302 Broken Arrow Court
    Clinton, MD 20735

    Tenacity Investment, LLC
    7333 New Hampshire Ave., Unit 103
    Takoma Park, MD 20912

## THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** )  | |
| )  | |
| *Plaintiffs* )  | |
| )  | |
| v. )  | **Case No.: C-24-CV-24-002631** |
| )  | |
| **ERIK D. BOLOG, ET AL.** )  | |
| )  | |
| *Defendants*. )  | |

_____

### LINE ENCLOSING AMENDED SCHEDULING ORDER

Dear Clerk,

On May 9, 2025, this Honorable Court issued an Order granting the Parties Consent Motion
to Modify the Scheduling Order, ordered the Parties to clear new Pretrial Conference and Trial
dates with the Civil Assignment Office, and ordered that the Parties submit a proposed order with
said dates.  The Parties have done so.  Attached hereto, please find a copy of the Amended
Proposed Scheduling Order.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 14th day of May 2025, a copy of the foregoing was sent

via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

2

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

_____
       /s/ PDG
Patrick D. Gardiner, Esq. (AIS# 1506160113)

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,

        Plaintiffs,

    v.

ERIK D. BOLOG, *et al.*,

        Defendants.

No. C-24-CV-24-002631

## NOTICE OF SERVICE OF DISCOVERY MATERIAL

I HEREBY CERTIFY, that on this 14th day of May, 2025, I caused copies of the discovery documents listed below to be served in the manner indicated on the persons set forth in the attached Certificate of Service.

1. Amended Notice of Deposition Ad Testificandum (Mayo).

Dated: May 14, 2025

Respectfully submitted,

By: /s/ John J. Connolly
    William J. Murphy (#8406010273)
    John J. Connolly (#9112170144)
    Kirk E. MacKinnon Morrow
     (#2410241018)

ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21201
410 332 0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Attorneys for Defendant Whiteford,*
*Taylor & Preston, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2025, a copy of the foregoing

document was served in the manner indicated on the following persons:

| | |
|---|---|
| Douglas Gansler<br>Matthew Karlan<br>Cadwalader, Wickersham & Taft LLP<br>1919 Pennsylvania Avenue NW<br>Washington, DC 20006<br><br>*Counsel for Defendants Erik D. Bolog;*<br>*Erik D. Bolog, Trustee, JAREB Irrevocable*<br>*Trust Agreement; Science Park*<br>*Associates, LLC; Darnestown Road, Inc.*<br><br>By email to:<br>Douglas.Gansler@cwt.com<br>Matthew.Karlan@cwt.com | Wes P. Henderson<br>Patrick D. Gardiner<br>Henderson Law, LLC<br>2127 Espey Court, Suite 204<br>Crofton, MD 21114<br><br>*Counsel for Plaintiffs*<br><br>By email to:<br>wph@hendersonlawllc.com<br>patrick@hendersonlawllc.com |
| Michael Postal<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | POJO LaPlata LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court, Apt. 606<br>Clinton, MD 20735<br>By first class mail |
| Swain Landing LaPlata JC, LLC<br>Attn: Anjon Jones<br>4302 Broken Arrow Court<br>Clinton, MD 20735<br>By first class mail | Tenacity Investments, LLC<br>Attn: Michael Postal<br>7333 New Hampshire Avenue, Unit 103<br>Takoma Park, MD 20912<br>By first class mail |
| Sarah K. Mayo<br>55 Carl Landi Circle<br>East Falmouth, MA 02536<br>By first class mail | |

 _/s/ John J. Connolly_____
John J. Connolly

E-SERVED Baltimore City Circuit Court 5/14/2025 2:45 PM System SystemEnvelope:21202046

Case 25-10044-ELG   Doc 40-1   Filed 07/03/25   Entered 09/24/25 13:53:27   Desc
Attachment   Page 1 of 1

FILED: Baltimore City Circuit Court
Docket: 5/15/2025 8:45 AM; Submission: 5/14/2025 2:45 PM
Envelope: 21202046

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

## AMENDED ORDER

Upon consideration of the Parties Consent Motion to Modify Scheduling Order, and upon a finding of good cause, it is this ___14th___ day of ___May___, 2025 hereby:

ORDERED, that the Consent Motion to Modify Scheduling Order is GRANTED; and the Scheduling Order is modified as follows:

| Event | Current Deadline/Date | New Deadline/Date |
|---|---|---|
| Plaintiff(s) expert witness disclosures | 5/12/2025 | 8/11/2025 |
| Filing of any amended Pleadings | 7/11/2025 | 10/09/2025 |
| Joinder of any additional parties | 7/11/2025 | 10/09/2025 |
| Defendant(s) expert witness disclosures | 8/11/2025 | 11/10/2025 |
| Plaintiff(s) rebuttal expert disclosures | 9/09/2025 | 12/08/2025 |
| Completion of all discovery | 10/09/2025 | 1/07/2026 |
| Completion of any ADR proceeding | 11/10/2025 | 2/08/2026 |
| Filing of any dispositive motion(s) and any motion(s) to exclude expert testimony, including request(s) for *Daubert-Rochkind* hearing | 11/10/2025 | 2/08/2026 |
| Pre-trial and settlement conference | 1/12/2026 | 04/13/2026 (9:30 AM) |

| Any additional motions *in limine* | 1/23/2026 (20 days before trial) | 05/26/2026 |
| First day of trial | February 12, 2026 | 06/15/2026 |

05/14/2025 2:23:30 PM

_____
Judge, Circuit Court for Baltimore City, Maryland

Copies to:
All counsel of record (via MDEC)

*Pro se* Parties via first class mail:

    Michael Postal
    1801 16th Street NW, Apt 608
    Washington, DC 20009

    POJO LaPlata, LLC
    4302 Broken Arrow Court, Apt 606
    Clinton, MD 20735

    Swain Landing LaPlata JC, LLC
    4302 Broken Arrow Court
    Clinton, MD 20735

    Tenacity Investment, LLC
    7333 New Hampshire Ave., Unit 103
    Takoma Park, MD 20912

Entered: Clerk, Circuit Court for
Baltimore City, MD
May 14, 2025

2

E-FILED; Baltimore City Circuit Court
Docket: 5/15/2025 5:11 PM; Submission: 5/15/2025 5:11 PM
Envelope: 21226248

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| Claudia Engelhorn, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. C-24-CV-24-002631 |
| ) | |
| Erik D. Bolog, *et al.* ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

### SUGGESTION OF BANKRUPTCY

Please take note that on May 15, 2025, Swain Landing LaPlata JC, LLC ("Swain Landing")

filed a petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the

United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby

commencing the matter of *In re Swain Landing LaPlata JC, LLC*, Case No. 25-184-ELG (Bankr.

D.D.C. 2025) (the "Bankruptcy Case").

It is respectfully suggested, pursuant to the allowances of Section 362 of Title 11 of the

United States Code, that commencement of the Bankruptcy Case operates as a stay of, *inter alia*,

"the . . . continuation, including the issuance or employment of process, of a judicial . . . action or

proceeding against [Swain Landing] that was or could have been commenced before the

commencement of [the Bankruptcy Case], or to recover a claim against [Swain Landing] that arose

before the commencement of [the Bankruptcy Case]." 11 U.S.C. § 362(a)(1) (interlineating the

terms defined *supra* where contextually appropriate).

In light of the foregoing, it is further respectfully suggested that the above-captioned action

is stayed by virtue of the Bankruptcy Case's commencement.

*[Signature on Following Page]*

1

Respectfully submitted,

Dated: May 15, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-444-4600
E-mail: mac@mbvesq.com
Client Protection Fund ID: 0912170262
*Proposed Chapter 11 Counsel for Swain
Landing LaPlata JC, LLC, Debtor-in-
Possession*[1]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May, 2025, a copy of the foregoing was

served electronically upon filing via the MDEC system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

---

[1] The filing of this suggestion of bankruptcy does *not* constitute the entry of an appearance in this case—on behalf of Swain Landing or otherwise—and, to the contrary, is undertaken solely in furtherance of representation of Swain Landing in the Bankruptcy Case.

<u>IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND</u>

Claudia Engelhorn, *et al.*     )
                  )
     Plaintiffs,     )
                  )
     v.     )     Case No. C-24-CV-24-002631
                  )
Erik D. Bolog, *et al.*     )
                  )
     Defendants     )
_____)

## **SUGGESTION OF BANKRUPTCY**

Please take note that on May 15, 2025, Swain Landing LaPlata JC, LLC ("Swain Landing") filed a petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby commencing the matter of *In re Swain Landing LaPlata JC, LLC*, Case No. 25-184-ELG (Bankr. D.D.C. 2025) (the "Bankruptcy Case").

It is respectfully suggested, pursuant to the allowances of Section 362 of Title 11 of the United States Code, that commencement of the Bankruptcy Case operates as a stay of, *inter alia*, "the . . . continuation, including the issuance or employment of process, of a judicial . . . action or proceeding against [Swain Landing] that was or could have been commenced before the commencement of [the Bankruptcy Case], or to recover a claim against [Swain Landing] that arose before the commencement of [the Bankruptcy Case]." 11 U.S.C. § 362(a)(1) (interlineating the terms defined *supra* where contextually appropriate).

In light of the foregoing, it is further respectfully suggested that the above-captioned action is stayed by virtue of the Bankruptcy Case's commencement.

*[Signature on Following Page]*

1

Respectfully submitted,

Dated: May 15, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-444-4600
E-mail: mac@mbvesq.com
Client Protection Fund ID: 0912170262
*Proposed Chapter 11 Counsel for Swain
Landing LaPlata JC, LLC, Debtor-in-
Possession*[1]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May, 2025, a copy of the foregoing was

served electronically upon filing via the MDEC system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

---

[1] The filing of this suggestion of bankruptcy does *not* constitute the entry of an appearance in this case—on behalf of Swain Landing or otherwise—and, to the contrary, is undertaken solely in furtherance of representation of Swain Landing in the Bankruptcy Case.

E-SERVED Baltimore City Circuit Court 5/15/2025 3:10 PM System SystemEnvelope:21222859

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| *Defendants*. | ) | |

### ORDER ON
### CONSENT MOTION TO EXTEND RESPONSE DEADLINE TO
### MOTION TO DISMISS COUNTERCLAIM

Upon consideration of the Consent Motion to Extend Response Deadline, and for good cause, it is this 14th day of  May  , 2025, by the Circuit Court for Baltimore City, Maryland, hereby:

**ORDERED**, that the Consent Motion to Extend Response Deadline is, **GRANTED**; and it is further

**ORDERED**, that date by which Counterclaim-Plaintiffs Erik D. Bolog, Darnestown Road, Inc., and Science Park Associates LLC must respond to the Motion to Dismiss Counterclaim filed by Defendants Claudia Engelhorn as an individual and as trustee of the Whitewater Revocable Trust, dated September 30, 2021, will be **June 6, 2025**.

05/14/2025 9:53:38 AM

*Jeffrey M. Geller*

_____

Judge, Circuit Court for Baltimore City, Maryland

**CIRCUIT COURT FOR BALTIMORE CITY**

**MARYLAND**

CIVIL DIVISION

111 N. Calvert Street

Baltimore, Maryland 21202

Civil: 410-333-3722

Criminal: 410-333-3750

Family: 410-333-3709/3738

Juvenile: 443-263-6300

| | |
|---|---|
| Case Number: | C-24-CV-24-002631 |
| Other Reference Numbers: | |

## CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.

### ORDER

On consideration of the Suggestion of Bankruptcy filed by Defendant Swain Landing LaPlata JC, LLC ("Swain Landing"), it is this 16th day of May, 2025, by the Circuit Court for Baltimore City, Part 35, hereby **ORDERED** that this action is **STAYED** as to Defendant Swain Landing and the proceedings are deferred to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code.

It is further **ORDERED** that the stay is subject to Maryland Rule 2-507.

It is further **ORDERED** that the Clerk of this Court shall mail copies of this Order to the parties.

05/16/2025 2:01:28 PM

_____     _____

Date                                          Judge

## CERTIFICATE AS TO SPECIAL ADMISSIONS

I, Patricia L. Lincoln, certify on this ___13th___ day of May, 2025, that during the

preceding five years, I have been specially admitted in the State of Maryland ___Zero___

times by the following courts:

| Date | Court | Case Number and Parties' Names |
|------|-------|-------------------------------|
| NA | NA | NA |
|  |  |  |
|  |  |  |

I have previously been issued the following unique identifying numbers by the Maryland

Judiciary:

Attorney Information System ___NA___

Client Protection Fund ___NA___

Maryland Electronic Courts (MDEC) ___NA___

_Patricia Lincoln_

Signature of Out-of-State Attorney
Patricia L. Lincoln
Ellis Law Group, P.L.
4755 Technology Way, Suite 205
Boca Raton, FL 33431
Direct: (561) 910 - 7513
Email: patricia@ellis-law.com

## THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

### <u>MOTION FOR SPECIAL ADMISSION OF OUT-OF-STATE ATTORNEY</u>
### (Rule 19-217)

I, Patrick D. Gardiner, attorney of record in this case, move that the court admit Patricia L. Lincoln, Esquire, an out-of-state attorney who is a member in good standing of the Bar of Florida, for the limited purpose of appearing and participating in this case as co-counsel with me for the Plaintiffs and Counter-Defendants.

Out-of-State Attorney Information:

Patricia L. Lincoln, Esq.,
Ellis Law Group, P.L.
4755 Technology Way, Suite 205,
Boca Raton, Florida 33431
(t) (561) 910-7513
patricia@ellis-law.com

Unless the court has granted a motion for reduction or waiver, the $100.00 fee required by Code, Courts and Judicial Proceedings Article, § 7-202 (f) is included with this motion.

I do not request that my presence be waived under Rule 19-217 (d).

A copy of Ms. Lincoln's Certificate as to Special Admission is attached hereto.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)_
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs and Counter-Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May 2025 that, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

2

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

_____/s/ PDG (AIS# 1506160113)
Patrick D. Gardiner, Esq. (AIS# 1506160113)

E-FILED; Baltimore City Circuit Court
Docket: 5/23/2025 4:57 PM; Submission: 5/23/2025 4:57 PM
Envelope: 21345579

### THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

### <u>PLAINTIFF'S MOTION FOR SANCTIONS</u>

Plaintiff, Claudia Engelhorn, by and through their undersigned counsel, files this Motion for Sanctions and in support hereof, respectfully states as follows:

1.      That this Honorable Court should enter sanctions against Defendants Erik D. Bolog, Individually, Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust, Darnestown Road Inc., and Science Park Associates, Inc., because these Defendants have flouted this Honorable Court's April 8, 2025, Order Compelling Discovery.

2.      That, on or about October 10, 2024, Plaintiff, Claudia Engelhorn, served Defendants Erik D. Bolog Individually ("Mr. Bolog") Erik D. Bolog as Trustee of the JAREB Irrevocable Trust ("JAREB"), Darnestown Road Inc., ("Darnestown Road") and Science Park Associates, Inc., ("Science Park") (collectively "the Bolog Defendants") with discovery requests, including Interrogatories and Requests for Production of Documents, pursuant to the Maryland Rules of Civil Procedure.

3.      That the Bolog Defendants failed to timely respond to Plaintiff's discovery requests, or produce any document, necessitating the filing of a Motion to Compel on March 17, 2025.[1]

4.      That, on or about April 8, 2025, this Honorable Court granted Plaintiff Engelhorn's Motion to Compel and specifically ordered:

    a.   "Defendants Darnestown Road, Inc. and Science Park Associates, Inc. produce full and complete responses to Plaintiffs Interrogatories in compliance with Maryland Rule 2-421(b) within fifteen (15) days of the docketing of this order," and

    b.   "that Defendants Erik D. Bolog, Individually and as Trustee for the JAREB Irrevocable Trust, Darnestown Road Inc., and Science Park Associates Inc. produce full and complete responses to Plaintiff's Requests for Production of Documents within fifteen (15) days of the docketing of this order."

5.      That this Honorable Court's Order was docketed on April 9, 2025, and 15 days thereafter was Thursday, April 24, 2025.

6.      That, on the late evening of April 24, 2025, the following items were produced via email:

    a.   Science Park Associates, LLC's *unexecuted and unsworn* Second Supplemental Responses and Objections to Plaintiff's Interrogatories;

    b.   Darnestown Road, Inc.'s *unexecuted and unsworn* Second Supplemental Responses and Objections to Plaintiff's Interrogatories;

    c.   Written responses to Plaintiff's First Set of Document Requests from Darnestown, Science Park, Mr. Bolog, and JAREB.

---

[1] The entirety of the long history leading to the April 8, 2025 Order Granting Plaintiff's Motion to Compel is set forth in the Plaintiff's Motions to Compel and Replies in support of the same.

     d.   None of the Bolog Defendants produced any responsive documents whatsoever.

7.     That the Bolog Defendants' failure to comply with their discovery obligations and this Honorable Court's Order Compelling the same prejudices Plaintiffs by delaying the progress of this case and hindering all of the Plaintiffs' ability to prepare for trial and designate expert witnesses in accordance with the Scheduling Order.

8.     That, "[i]f a person fails to obey an order compelling discovery, the court, upon motion of a party and reasonable notice to other parties and all persons affected, may enter such orders in regard to the failure as are just, including one or more of the orders set forth in [Md. Rule 2-433 (a)]..." Md. Rule 2-433(e).

9.     That Maryland Rule 2-433(a) provides, in relevant part, that a court may enter: "[a]n order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order" and/or "[a]n order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence…" Md. 2-433(a)(1)-(2).

10.     That Maryland Rule 2-433(a)(3) permits the Court to strike out pleadings or parts thereof.

11.     That, because of Science Park and Darnestown's complete failure to provide *sworn* answers to interrogatories as required by Md. Rule 2-421(b), their complete failure to produce any documents responsive to Plaintiff's document requests, and their complete disregard for this Honorable Court's April 8, 2025, Order Compelling Discovery ordering the same, this Honorable Court should:

    a.  Enter an order that the allegations set forth in the Second Amended Complaint regarding Science Park and Darnestown be deemed established in accordance with the Plaintiffs' claims therein; and

    b.  Enter an order striking Science Park and Darnestown's claims from the Counterclaim filed on March 24, 2025.

12.    That because Mr. Bolog and JAREB have failed to produce or make available for inspection any documents responsive to Plaintiff's Request for Production, and their disregard for the Court's April 8, 2025 Order requiring the production of said documents this Honorable Court should:

    a.  Enter an order prohibiting Mr. Bolog and JAREB from supporting any defense to the Plaintiffs' claims as set forth in the Second Amended Complaint;

    b.  Enter an order prohibiting Mr. Bolog from supporting any claims set forth in his Counterclaim; and

    c.  Enter an order prohibiting Mr. Bolog and JAREB from relying on and/or entering into evidence any documents responsive to Plaintiff Engelhorn's Requests for Production of Documents.

13.    That Plaintiff asserts that the Orders requested above relating to the the aforementioned failures are justified under the circumstances of this case.

WHEREFORE, Plaintiff Claudia Engelhorn respectfully requests that this Honorable Court:

1.    Grant Plaintiff's Motion for Sanctions; and

2.      Enter an Order that the allegations set forth in the Second Amended Complaint regarding Science Park and Darnestown be deemed established in accordance with the Plaintiffs' claims therein;

3.      Enter an order striking Science Park and Darnestown's claims from the Counterclaim filed on March 24, 2025;

4.      Enter an order prohibiting Mr. Bolog and JAREB from supporting any defense to the Plaintiffs' claims as set forth in the Second Amended Complaint;

5.      Enter an order prohibiting Mr. Bolog from supporting any claims set forth in his Counterclaim;

6.      Enter an order prohibiting Mr. Bolog from relying on and/or entering into evidence any documents responsive to Plaintiff Claudia Engelhorn's Requests for Production of Documents and Things to Erik D. Bolog;

7.      Enter an order prohibiting JAREB from relying on and/or entering into evidence any documents responsive to Plaintiff Claudia Engelhorn's Requests for Production of Documents and Things to Erik D. Bolog, as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021; and

8.      Grant such other and further relief as this Court deems just and proper.

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May 2025 that, a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

6

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

_____/s/ PDG (AIS# 1506160113)
Patrick D. Gardiner, Esq. (AIS# 1506160113)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **ERIK D. BOLOG, ET AL.** | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

**<u>NOTICE OF SERVICE OF DISCOVERY MATERIALS</u>**

Plaintiffs, by and through their undersigned attorneys, hereby certify that on the 26th day

of May 2025, that they served Plaintiff's Document Production CE000001-CE001151 and 121

email files, via email containing a Dropbox link, on the following attorneys of record;

> William J. Murphy, Esq.
> John J. Connolly, Esq.
> Kirk E. MacKinnon Morrow
> Zuckerman Spaeder, LLP
> 100 East Pratt Street, Suite 2440
> Baltimore, MD 21202
> wmurphy@zuckerman.com
> jconnolly@zuckerman.com
> kmackinnonmorrow@zuckerman.com
>
> *Counsel for Defendant Whiteford, Taylor & Preston, LLP*
>
> Douglas F. Gansler, Esq.
> Matthew Karlan, Esq.
> Cadwalader, Wickersham & Taft, LLP
> 1919 Pennsylvania Avenue, N.W.
> Washington, DC 20006
> Douglas.gansler@cwt.com
> Matthew.karlan@cwt.com
>
> *Counsel for Defendants Erik D. Bolog, Individually,*
> *and as Trustee of The JAREB Irrevocable Trust*
> *Agreement dated October 11, 2021,*
> *Science Park Associates, LLC; and Darnestown Road, Inc.*

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 27th day of May, 2025 that a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
Matthew.Karlan@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16<sup>th</sup> Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

3

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*

        /s/ PDG
Patrick D. Gardiner, Esq. (AIS# 1506160113)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| CLAUDIA ENGELHORN, ET AL. | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )    **Case No.: C-24-CV-24-002631** |
| | ) |
| ERIK D. BOLOG, ET AL. | ) |
| | ) |
| *Defendants*. | ) |

_____

**<u>NOTICE OF SERVICE OF DISCOVERY MATERIALS</u>**

Plaintiffs, by and through their undersigned attorneys, hereby certify that on the 27th day

of May 2025, that they served via MDEC, Plaintiffs' Responses and Objections to Defendant's

First Request for Production of Documents on the following;

> William J. Murphy, Esq.
> John J. Connolly, Esq.
> Kirk E. MacKinnon Morrow
> Zuckerman Spaeder, LLP
> 100 East Pratt Street, Suite 2440
> Baltimore, MD 21202
> wmurphy@zuckerman.com
> jconnolly@zuckerman.com
> kmackinnonmorrow@zuckerman.com
>
> *Counsel for Defendant Whiteford, Taylor & Preston, LLP*
>
> Douglas F. Gansler, Esq.
> Matthew Karlan, Esq.
> Cadwalader, Wickersham & Taft, LLP
> 1919 Pennsylvania Avenue, N.W.
> Washington, DC 20006
> Douglas.gansler@cwt.com
> Matthew.karlan@cwt.com
>
> *Counsel for Defendants Erik D. Bolog, Individually,*
> *and as Trustee of The JAREB Irrevocable Trust*
> *Agreement dated October 11, 2021,*
> *Science Park Associates, LLC; and Darnestown Road, Inc.*

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 27th day of May, 2025 that a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
Matthew.Karlan@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC; and Darnestown Road, Inc.*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

3

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*


_____/s/ PDG (AIS# 1506160113)_____
Patrick D. Gardiner, Esq.

E-FILED; Baltimore City Circuit Court
Docket: 5/28/2025 4:20 PM; Submission: 5/28/2025 4:20 PM
Envelope: 21392489

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN, ET AL.** | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )     **Case No.: C-24-CV-24-002631** |
| | ) |
| **ERIK D. BOLOG, ET AL.** | ) |
| | ) |
| *Defendants*. | ) |

_____

## <u>NOTICE OF SERVICE OF DISCOVERY MATERIALS</u>

Plaintiffs, by and through their undersigned attorneys, hereby certify that on the 28th day of May 2025, that they served via MDEC, (1) Plaintiff Claudia Engelhorn's Answers and Objections to Defendant Whiteford, Taylor & Preston, LLP's First Set of Interrogatories; and (2) Plaintiff White Pearl, LLC's Answers and Objections to Defendant Whiteford, Taylor & Preston, LLP's First Set of Interrogatories, on the following;

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
Matthew.karlan@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

Respectfully submitted:

HENDERSON LAW, LLC.

_____/s/ PDG (AIS# 1506160113)
Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of May, 2025 that a copy of the foregoing was

sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

3

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unti 103
Takoma Park, MD 20912

*Defendant pro se*


      /s/ PDG (AIS# 1506160113)
Patrick D. Gardiner, Esq.

E-SERVED Baltimore City Circuit Court 6/4/2025 2:33 PM System SystemEnvelope:21497082

Case 25-10044-ELG    Doc 40-1    Filed 07/03/25    Entered 09/24/25:51:37 Baltimore City Circuit Court
Attachment    Page 12 of 16/2025 2:33 PM; Submission: 6/4/2025 2:33 PM
Envelope: 21497082

| CLAUDIA ENGLEHORN, et al., | * | IN THE |
| Plaintiffs, | * | CIRCUIT COURT |
| v. | * | FOR |
| WHITEFORD, TAYLOR & PRESTON, LLP, et al., | * | BALTIMORE CITY |
|  | * |  |
| Defendants. | * | Case No.: C-24-CV-24-002631 |
|  | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER DENYING PETITION TO COMPEL ARBITRATION

Before the court is Bolog Defendants' Petition for an Order Compelling Arbitration and Staying Proceedings (the "Petition to Compel Arbitration"), filed on April 18, 2025, to which Plaintiffs filed a Response in Opposition (the "Opposition") on May 5, 2025. Having reviewed the Petition to Compel Arbitration, the Opposition, and other relevant case filings, and finding that: (1) the Revocable Trust Agreement of Claudia Englehorn (the "Revocable Trust") is governed by Virginia law under which disputes arising from a trust instrument are not subject to compulsory arbitration, as argued in Section A of the Opposition; (2) the Bolog Defendants have waived through their actions and ommissions their right to compel arbitration (to the extent any such right may have at one time existed), as argued in Section B of the Opposition; and (3) the claims for which the Bolog Defendants seek to compel arbitration are not subject to the arbitration provision contained in the Revocable Trust, as argued in Section E of the Opposition, it is this 4th day of June, 2025:

**ORDERED** that the Petition to Compel Arbitration is **DENIED**; and it is further

**ORDERED** that the motions hearing scheduled in this case for June 11, 2025, will only address Counter-Defendants' Motion to Dismiss Counterclaim, filed on April 22, 2025.

06/04/2025 1:28:11 PM

_____

Paul J. Cucuzzella, Associate Judge
Circuit Court for Baltimore City, Part 7

Entered: Clerk, Circuit Court for
Baltimore City, MD
June 4, 2025

2

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, *et al.*,    )
    )
    )
    *Plaintiffs*    )
    )
v.    )    **Case No.: C-24-CV-24-002631**
    )
    )
    )
WHITEFORD, TAYLOR & PRESTON,    )
LLP et al.,    )
    )
    )
    *Defendants*.    )

---

## COUNTERCLAIM PLAINTIFFS' OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS (HEARING REQUESTED)

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

OVERVIEW OF COUNTERCLAIMS ............................................................................7

      A.     COUNTS II AND IV: INDEMNIFICATION AND BREACH OF
             CONTRACT UNDER THE WHITEWATER TRUST AGREEMENT ................7

      B.     COUNTS I AND III: DEFAMATION AND ABUSE OF PROCESS..................11

LEGAL STANDARD......................................................................................................13

ARGUMENT .................................................................................................................14

I.       COUNTERCLAIM PLAINTIFFS ADEQUATELY ALLEGE A CLAIM FOR
        INDEMNIFICATION UNDER THE WHITEWATER TRUST AGREEMENT............14

      A.     Mr. Bolog Is Entitled To Indemnification Under Section 5 Of The
             Whitewater Trust Agreement....................................................................14

      B.     Mr. Bolog Is Entitled To Indemnification Under Section 9 Of The
             Whitewater Trust Agreement....................................................................15

      C.     The Whitewater Trust Agreement Is An Enforceable Contract Between
             Settlor and Trustee. ..................................................................................17

II.      COUNTERCLAIM PLAINTIFFS ADEQUATELY ALLEGE THAT THE
        WHITEWATER TRUST IS IN BREACH OF CONTRACT. .........................................19

III.     THERE IS NO JUDICIAL PRIVILEGE APPLICABLE TO THE
        DEFAMATION COUNTERCLAIM. ...............................................................................21

IV.    COUNTERCLAIM DEFENDANTS STATED A CLAIM FOR ABUSE OF
        PROCESS. .......................................................................................................................25

V.      SHOULD THE COURT GRANT DISMISSAL, IT SHOULD PERMIT
        COUNTERCLAIM PLAINTIFFS TO REPLEAD. ........................................................27

CONCLUSION...............................................................................................................28

Counterclaim Plaintiffs Erik D. Bolog ("Mr. Bolog"), Mr. Bolog as Trustee of the JAREB

Irrevocable Trust, dated October 11, 2021, Science Park Associates, LLC, and Darnestown Road,

Inc. (collectively, the "Counterclaim Plaintiffs") respectfully submit this opposition to the motion

to dismiss ("Mtd") filed by Counterclaim Defendants Claudia Engelhorn and Claudia Engelhorn,

as Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("Trustee" and

collectively with Ms. Engelhorn, the "Counterclaim Defendants").[1]

## **INTRODUCTION**

Mr. Bolog never imagined he would be forced to bring counterclaims against his one-time

friend, business colleague and former client: Ms. Claudia Engelhorn. But, after years of Ms.

Engelhorn's scorched-earth campaign to impugn Mr. Bolog's character and cause him reputational

and emotional harm, here we are. The Court should deny Counterclaim Defendants' Motion to

Dismiss for the following reasons.

*First*, the Whitewater Trust Agreement specifically indemnifies Mr. Bolog as Trustee of

the Whitewater Trust against the cost of defending against Counterclaim Defendants' claims in

this action. The indemnification provision is clear, unassailable, and covers any matter that a

trustee defends against related to his services as a trustee. And any argument that the

indemnification provision is inapplicable here because Counterclaim Defendants' claims in this

action are for fraud (which Mr. Bolog wholly disputes) is irrelevant at this stage of proceedings.

Counterclaim Defendants' claims constitute *allegations* that have not been proven before the

finder of fact (and will never be proven). Darnestown Road and Science Park are similarly

indemnified under the Whitewater Trust Agreement as they constitute third party beneficiaries.

*Second*, in addition to failure to indemnify, Mr. Bolog has properly alleged a claim for

breach of contract against the Whitewater Trust for failure to compensate Mr. Bolog for his

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Counterclaims.

services as trustee. Mr. Bolog was a trustee of the Whitewater Trust, which consisted of approximately $130 million in assets to manage, for 13 months, yet received no compensation, which breached the compensation provisions of the Whitewater Trust Agreement. And, while no exact compensation amount is stated in the Whitewater Trust Agreement, because Virginia law governs the Whitewater Trust Agreement, Mr. Bolog is entitled to compensation in the range of 1%-5% of the trust's total assets for his 13-months of service.

*Third*, Mr. Bolog properly asserts a claim for defamation based on a letter sent by Ms. Engelhorn, through her attorneys, to Whiteford, Taylor & Preston, LLP ("WTP"). The defamatory statements set forth in the letter were not made in the course of this litigation, but were made months before the litigation was commenced. Accordingly, they are not awarded any privilege based on judicial proceedings. And, even if they were, they must be related to the claims or defenses in this action (which they were not).

*Fourth*, and lastly, Counterclaim Plaintiffs have adequately alleged their claim for abuse of process. As alleged in the Counterclaims, it is clear from Counterclaim Defendants' baseless, conclusory, and now debunked allegations in their complaint, and their defamatory statements sent to WTP, that this entire action is nothing more than an attempt to publicly impugn the character of Mr. Bolog and threaten his ability to practice law in retaliation for the end of their friendship. Indeed, Sarah K. Mayo, the notary public who witnessed Ms. Engelhorn sign documents effectuating the $10 million gift, has confirmed in sworn testimony the inaccuracies and falsehoods in the SAC. (Ex. A.)[2] This is an abuse of the civil process and should not be countenanced by the Court. The claim is sufficiently pled, and at this stage of the proceedings, there is no legal basis to dismiss the claim.

---

[2] Should the Court dismiss the Counterclaims and grant leave to amend, the testimony of Ms. Mayo would serve as a basis for certain amendments.

Accordingly, all of the Counterclaims asserted are well pled, and factually supported, and no basis exists to dismiss any of these claims.

## FACTUAL BACKGROUND

Mr. Bolog first became acquainted with Ms. Engelhorn when he successfully represented her in a massive, highly publicized cross-border litigation, during the height of the global COVID pandemic. (Counterclaims ¶ 2.) In the course of his representation of Ms. Engelhorn, Mr. Bolog traveled back and forth from the United States to Europe and suffered threats on his life. (*Id.*) It would not be an understatement to say that Mr. Bolog risked his health, well-being, and physical safety in the course of representing Ms. Engelhorn. (*Id.*)

Ms. Engelhorn is the daughter of Curt Engelhorn, who at one time was the self-proclaimed wealthiest man in Germany, totaling $10 billion in net worth between his estate and affiliated entities at the time of his death. (*Id.* ¶ 3.) Approximately 25 years before his death, Mr. Engelhorn funded the Manheim Trust, to be managed as a family office, for the benefit of Ms. Engelhorn and her children in the amount of $500 million. (*Id.*) Ms. Engelhorn has served as the life trustee of the Manheim Trust, for which she receives an annual salary of approximately $1 million. (*Id.*) She also received loans of approximately $30 million to fund her lifestyle and various litigations. (*Id.*)

Mr. Engelhorn became a resident of Gstaad, Switzerland, towards the end of his life, where he passed away, and left his entire estate to his (fourth) wife. (*Id.* ¶ 4.) Unsatisfied with the $500 million her father gifted to the Manheim Trust, Ms. Engelhorn chose to pursue a forced heirship claim to her statutory entitlement from her father's estate under the laws of Switzerland (the "Switzerland Litigation"). (*Id.*) As a result of his dogged and tireless efforts representing Ms. Engelhorn in the Switzerland Litigation, Mr. Bolog obtained a $130 million, tax-free settlement on behalf of Ms. Engelhorn. (*Id.* ¶ 5.)

After paying 100% of her legal fees and expenses to Mr. Bolog's then law firm, Whiteford Taylor & Preston, LLP ("WTP"), Ms. Engelhorn then decided, on her own, to fund an irrevocable trust known as the JAREB Irrevocable Trust Dated October 11, 2021 ("JAREB Irrevocable Trust") for the benefit of Mr. Bolog and his children, in the amount of $10 million (the "Gift"). (*Id*. ¶ 6.)

Additionally, after settlement of the Switzerland Litigation, Ms. Engelhorn insisted that Mr. Bolog act as her co-trustee for a trust known as the Whitewater Revocable Trust, dated September 30, 2021 (the "Whitewater Trust"), which was funded with an initial $100 million from the settlement proceeds Mr. Bolog obtained for her in the Switzerland Litigation. (*Id*. ¶ 8.) Mr. Bolog, with the full knowledge and approval of his then-law firm WTP, agreed to serve as a co-trustee of the Whitewater Trust. (*Id*.)

In the ensuing months, through early summer of 2022, Ms. Engelhorn continued her professional relationship and personal friendship with Mr. Bolog. (*Id*. ¶ 7.) During this nine month period after she made the Gift, Ms. Engelhorn, Mr. Bolog, and others spent countless days together—traveling internationally and domestically, in business meetings, on family outings, and at celebrations, including spending New Year's Eve 2021 together with Mr. Bolog and his significant other. (*Id*.)

In late spring of 2022, Ms. Engelhorn decided to end their friendship due to two incidents in which Mr. Bolog tried to help Ms. Engelhorn acclimate herself to American values. *First*, Mr. Bolog corrected Ms. Engelhorn after she made a racially hateful statement to an African-American family at a restaurant—telling the family it was nice that they were "allowed" to eat in restaurants. (*Id*. ¶ 10.) *Second*, Mr. Bolog's significant other, who had also become good friends with Ms. Engelhorn, counseled Ms. Engelhorn against terminating her relationship with her daughter because her daughter was involved in a same-sex relationship; Ms. Engelhorn believed this would

result in her daughter's banishment to "hell." (*Id.*) Ms. Engelhorn never forgave Mr. Bolog for these two incidents. (*Id.*)

On or around July 6, 2022, approximately nine months after Ms. Engelhorn made the irrevocable Gift—which necessarily included voluntarily, knowingly, and intentionally transferring to the JAREB Irrevocable Trust $10 million from her personal Bank of America bank account which was received and accepted by the JAREB Irrevocable Trust—Ms. Engelhorn first expressed her giftor's remorse when she sent an email to Mr. Bolog, attempting to revoke the irrevocable Gift. (*Id.*) This email stated that she made the Gift when she was intoxicated and that it was Mr. Bolog who had transferred the money from Ms. Engelhorn's personal bank account to the JAREB Irrevocable Trust. (*Id.*) But neither of these assertions was true: Ms. Engelhorn was not intoxicated at the time that she, and she alone, executed the Notice of Gift, which was notarized; nor was she intoxicated days later when she, and she alone, initiated and authorized the $10 million Gift to the JAREB Irrevocable Trust in a verified phone call with Bank of America and in accordance with requisite Bank of America security protocols. (*Id.*)[3] The JAREB Irrevocable Trust, through counsel, responded to Ms. Engelhorn that it would not countenance her giftor's remorse and allow her to revoke her irrevocable Gift. (*Id.*)

Then, approximately a year later, during the summer of 2023, at the invitation of Ms. Engelhorn's then attorney Anthony Williams, a partner at the international law firm, Dentons, Mr. Bolog and his attorney travelled to New York City to discuss the Gift. (*Id.* ¶ 12.) At that meeting, Mr. Williams provided a new version as to why Ms. Engelhorn wished to revoke the irrevocable

---

[3] As discussed below, the deposition of Sarah K. Mayo, the notary public who witnessed Ms. Englehorn sign the documents, confirms these allegations by Counterclaim Plaintiffs in the Counterclaims and the falsity of Ms. Engelhorn's counterfactual narrative. Excerpts of the transcript of her deposition are attached hereto as Ex. A.

Gift: she was "on the spectrum" and not very smart. (*Id.*) Then, shortly after he was advised of the actual facts concerning the transfer—that Ms. Engelhorn transferred the funds from her personal bank account at Bank of America, with no involvement by Mr. Bolog, and that the Notice of Gift was notarized—Mr. Williams offered to resolve the matter. (*Id.*) His proposal was to split the $10 million Gift, and call it even, requesting that the JAREB Irrevocable Trust  return $5 million to Ms. Engelhorn. (*Id.*) Mr. Williams further offered that, if that compromise was acceptable, he would have Ms. Engelhorn file a gift tax return in the amount of $5 million. (*Id.*) He further noted that Ms. Engelhorn had not yet filed a gift tax return for the $10 million Gift on his advice. (*Id.*) Of course, this too was illustrative of Ms. Engelhorn's ever changing and inconsistent story: if Ms. Engelhorn did not know that she had made the Gift, she would have never considered the need to file a gift tax return at all. (*Id.*) Mr. Williams' proposal was rejected by the JAREB Irrevocable Trust. (*Id.*)

In short, Ms. Engelhorn is a centi-millionaire who doesn't seriously need, nor care about the Gift, but instead, her filing of this action is solely to seek vengeance against Mr. Bolog and to punish him following the end of their friendship and her subsequent Giftor's remorse. (*Id.* ¶ 61.) Frustrated by the JAREB Irrevocable Trust's unwillingness to allow Ms. Engelhorn to revoke the irrevocable Gift, Ms. Engelhorn then embarked on a scorched-earth mission to destroy Mr. Bolog's career and his financial well-being. (*Id.* ¶ 13.) To protect his name and defend his family, Mr. Bolog has now been forced to bring these counterclaims to seek redress for the wrongs and reputational damage he has suffered, and continues to suffer, at the hands of Ms. Engelhorn. (*Id.*)

## OVERVIEW OF COUNTERCLAIMS

A.    **COUNTS II AND IV: INDEMNIFICATION AND BREACH OF CONTRACT UNDER THE WHITEWATER TRUST AGREEMENT**

1.    **Background of the Whitewater Trust.**

Ms. Engelhorn is a sophisticated business-person, in charge of more than $630 million of assets: $500 million in assets through her family office and $130 million in assets held by the Whitewater Trust. (*Id*. ¶ 43.) Mr. Bolog, at the insistence of Ms. Engelhorn, served as a co-trustee of the Whitewater Trust from its inception on September 11, 2021, until Ms. Engelhorn unilaterally terminated his trusteeship on November 3, 2022. (*Id*. ¶ 31.) During his time as trustee, Mr. Bolog had all of the authority bestowed upon him by the Whitewater Trust Agreement[4] (*id*. ¶ 31), under which Ms. Engelhorn is the sole beneficiary. (*Id*. ¶ 39.) Despite serving as trustee for 13 months, the Whitewater Trust failed to pay Mr. Bolog a reasonable trustee fee, or provide any compensation at all. (*Id*. ¶ 34.)

In the course of his service as trustee of the Whitewater Trust, Mr. Bolog executed his authority faithfully and in conformance with all his fiduciary obligations (*id*. ¶ 40), including by disclosing to Ms. Engelhorn any alleged conflicts of interest. (*Id*. ¶ 42.)  At issue in this action are certain investments Mr. Bolog allegedly made while serving as trustee of the Whitewater Trust, which he was fully authorized to undertake with or without the approval of Ms. Engelhorn. (*Id*. ¶ 40.)

2.    **The Whitewater Trust Investments.**

The Counterclaims involve three Whitewater Trust investments that Ms. Engelhorn has wrongfully alleged in this action:

---

[4] A copy of the Whitewater Trust Agreement was attached as Exhibit B to the Counterclaims.

*First*, in or around March 2022, with Ms. Engelhorn's full knowledge and consent, the Whitewater Trust purchased a loan and security interest from a regional bank that had been granted to an entity, Science Park Associates, LLC, for approximately $3,352,650 (the "Science Park Investment"). (*Id*. ¶ 37.) This loan was secured by a deed of trust on an office building located at 9001 Edmonston Lane, Greenbelt, Maryland (the "Greenbelt Property"). (*Id*.) The Whitewater Trust, through Ms. Engelhorn, learned of this investment opportunity while sitting in Mr. Bolog's office in Washington, DC, where she overheard Mr. Bolog discussing the opportunity to purchase the loan documents with another investor. (*Id*. ¶ 38.) At the time, bank accounts were paying approximately 1% in interest rates, while the Science Park Investment would produce an interest rate of 9%. (*Id*. ¶¶ 46, 48.) Because of the significantly higher returns, Ms. Engelhorn insisted that the Whitewater Trust purchase the loan and enter into the investment. (*Id*. ¶ 40.)

The Science Park Investment was opportunistic and proved very profitable for the Whitewater Trust and Ms. Engelhorn, as the trust's sole beneficiary. (*Id*.) Following execution of the Science Park Investment, the Greenbelt Property was sold by Science Park Associates, LLC and the Whitewater Trust was repaid all principal, interest, and costs. (*Id*. ¶ 39.) At the time of the sale of the Greenbelt Property, the Whitewater Trust was represented by attorneys at Dentons, a large and sophisticated international law firm, which provided the payoff calculation to the Whitewater Trust, and accepted, without any objection or complaint, the total amount due pursuant to the loan documents. (*Id*. ¶ 41.) All told, the Whitewater Trust profited approximately $330,000.00. (*Id*.)

*Second*, the Whitewater Trust made a $350,000 loan to Darnestown Road, Inc., relating to a 100,000 square foot operating shopping center located in Richmond, Virginia (the "Darnestown Road Loan"). (*Id*. ¶ 42.) Like the Science Park Investment, the Whitewater Trust, through Ms.

Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office, where she overheard Mr. Bolog discussing the loan for the property with another lender. (*Id*.) And, like the Science Park Investment, Ms. Engelhorn insisted that the Whitewater Trust issue the loan so it could receive an 8% interest rate of return. (*Id*. ¶¶ 46-47.) Ms. Engelhorn was made fully aware of any possible conflicts—she signed a conflict waiver—in connection with signing the loan documents for the Darnestown Road Loan. At this time, the Darnestown Road Loan is not yet mature and is not due until December 31, 2025. (*Id*. ¶ 45.)

*Third*, upon information and belief, and based upon a letter sent by Ms. Engelhorn's attorneys at Dentons to defendant Michael Postal, a certain investment made in Swain Landing LaPlata JC LLC ("Swain Landing") is owned by the Whitewater Trust (the "Swain Landing Investment"). (*Id*. ¶ 49.) As alleged in the Second Amended Complaint, Ms. Engelhorn sold a home she owned in Tennessee and the proceeds were transferred to Swain Landing for a real estate investment. (*Id*. ¶ 50.) Mr. Bolog had no involvement with the Swain Landing investment other than, at Ms. Engelhorn's directive, communication with the developer of the investment to ascertain the investment amount and to coordinate the call between Ms. Engelhorn and Bank of America so that Ms. Engelhorn could fund her investment . (*Id*. ¶¶ 51-52.) Still, Ms. Engelhorn has falsely alleged that Mr. Bolog had a fiduciary obligation to disclose his relationship with Mr. Postal, which is bizarre since Mr. Postal, a then close friend of Ms. Engelhorn's son, is the person who introduced Ms. Engelhorn to Mr. Bolog.

### 3.    Contractual Provisions At Issue In The Counterclaims.

Under Virginia law, which governs the Whitewater Trust, "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under

the circumstances."[5] Va. Code Ann. § 64.2-761. Here, while the Whitewater Trust does not explicitly state the amount of the trustee's compensation, the obligation to provide such reasonable compensation is unambiguous. Specifically, Section 5.K of the Whitewater Trust Agreement provides that Mr. Bolog, in addition to compensation for carrying on a business on behalf of the Whitewater Trust, is provided, additionally, **__compensation for services as a fiduciary__**." (Counterclaims at ¶ 34; Ex. B to Counterclaims, at 7 (emphasis added).) And under Section 10, any "questions pertaining to the validity and construction of the Whitewater Trust Agreement" is to be determined under Virginia law. (Ex. B to Counterclaims, at 14.)

Further, Mr. Bolog is also indemnified for any action he took in his role as a trustee under two separate provisions of the Whitewater Trust Agreement for the cost of defending all forms of litigation relating to any actions against him he undertook while serving as trustee. The first, Section 5, provides that:

> The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the granter, the grantor stipulates that **__any exercise of any power or discretion in good faith by the trustee is binding on all persons, The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee__**, except for an act of gross negligence or willful misconduct.

(Ex. B to Counterclaims, at 14.)

The second indemnification, Section 9, which also provides for costs, states:

> Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants

---

[5] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, **should legally challenge this trust, its provisions or asset distributions**, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. **The defense of such litigation, including costs incurred by** representatives of the grantor's estate, **the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust**.

(Ex. B to Counterclaims, at 14.)

Under these indemnification provisions, all legal fees and costs incurred by Mr. Bolog for any claims relating to his actions as Trustee of the Whitewater Trust are to be immediately paid by the Whitewater Trust. (Counterclaims ¶ 35.)

## B.    COUNTS I AND III: DEFAMATION AND ABUSE OF PROCESS

### 1.    Defamation.

On or around July 11, 2024, Wes Henderson, of the law firm Henderson Law LLC, and acting as an agent of Ms. Engelhorn, sent a letter to WTP, defaming Mr. Bolog by impugning Mr. Bolog's capacity as an attorney, his honesty, and his commitment to his ethical obligations (the "Defamatory Letter"). (*Id*. ¶¶ 14, 28.) The Defamatory Letter contained the following libelous and defamatory statements about Mr. Bolog:

- "Mr. Bolog *defrauded* Ms. Engelhorn";

- "Mr. Bolog *improperly caus[ed]* the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*."

(*Id*. ¶¶ 29-30 (emphasis added).) None of these statements about Mr. Bolog were, or are, even remotely accurate. They were made solely in furtherance of Ms. Engelhorn's objective to cast heinous aspersions on Mr. Bolog, inflict economic pain, and damage his reputation. (*Id*. ¶ 67.) And

because these actions accuse Mr. Bolog of violating the law, a lack of integrity in his legal practice, a failure to abide by his ethical obligations, and state he has victimized other clients, the Defamatory Letter constitutes defamation *per se*. (*Id*. ¶ 68.)

### 2.    Abuse of Process.

The Second Amended Complaint contains numerous allegations that are either intentionally deceptive to the Court or demonstrably false on their face. (*Id*. ¶ 56.) Most absurd is the assertion that Mr. Bolog directed Ms. Engelhorn to sign documents creating the JAREB Irrevocable Trust while they were upside down. (*Id*. ¶ 59.) But, of course, Ms. Engelhorn's conclusory allegations ignore that Ms. Engelhorn's signature on the documents appear right-side up. (*Id*.) Indeed, as Ms. Mayo recently testified, the documents were presented to Ms. Engelhorn "[r]ight-side up." (Ex. A 32:24-33:2.) Another is Counterclaim Defendants' description of the transfer of the $10 million Gift from Ms. Engelhorn to the JAREB Irrevocable Trust. (*Id*. ¶ 57.) The Second Amended Complaint deceptively and intentionally avoids that it was Ms. Engelhorn who actually initiated and completed the transfer of the Gift and instead implies that it was Mr. Bolog who had done so. (*Id*.) This is impossible. To effectuate the Gift, Ms. Engelhorn, herself, needed to initiate the transfer from her personal bank account through direct contact with Bank of America and in accordance with Bank of America's security protocols. (*Id*. ¶ 58.) This includes the use of a personal security confirmation code sent to her and read back to the bank. (*Id*. ¶ 58.)

Ms. Engelhorn, and only Ms. Engelhorn, was able to begin and complete the Gift by authorizing Bank of America to transfer $10 million from her personal account to the JAREB Irrevocable Trust account. (*Id*.) But, instead, the Second Amended Complaint baselessly accuses Mr. Bolog of tricking Ms. Engelhorn, not explaining to her the Notice of Gift, deceiving her into thinking she was signing routine documents, and not providing her an opportunity to review documents before pressuring her into signing them. (*Id*. ¶ 60.) In reality, Mr. Bolog "g[a]ve her

[each] document and explain[ed] what it was." (Ex. A at 31:20-21; 32:7-9.) And Ms. Mayo

confirmed if Ms. Engelhorn "understood the documents and was signing them of her own free

will." (*Id.* at 31:22-24; 34:5-22; 38:3-7, 12-15, 43:8-44:2, 45:16-46:16.)

The baldness and absurdity of Plaintiffs' allegations in the Second Amended Complaint

reveal the true ulterior motive behind Ms. Engelhorn's initiation of this action: to assert

professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal

pain, suffering, and harm, and attempt to destroy his professional reputation and ability to practice

law. (*Id.* ¶ 55.) Her sole motive for attempting to revoke the irrevocable Gift was to harm Mr.

Bolog, not to use the judicial process for a proper purpose or to recover allegedly lost funds. (*Id.*)

Ms. Engelhorn brought the Second Amended Complaint expecting that Mr. Bolog would submit

to the pressure of defending against claims for $20 million and return of the Gift to preserve his

reputation in the face of baseless and unsubstantiated claims. (*Id.* ¶ 56.)

## LEGAL STANDARD

Courts in Maryland have consistently held that, when ruling on a motion to dismiss, the

court "shall assume to be true not only all the well pleaded facts in the [pleading] but also the

inferences which may reasonably be drawn from those well pleaded facts." *Simms v. Constantine*,

113 Md. App. 291, 295 (1997) (internal citation omitted); *see also Patriot Construction, LLC v.

VK Electrical Services, LLC*, 257 Md. App. 245, 271 (2023); *Sharrow v. State Farm Mut. Auto.

Ins. Co.*, 306 Md. 754, 768 (1986) ("we must assume the truth of all relevant and material facts

that are well pleaded and all inferences which can be reasonably drawn from those pleadings").

The dismissal of pleadings is "proper only if the facts and allegations, so viewed, would

nevertheless fail to afford [the counterclaim] plaintiff relief if proven." *Nelson v. Debbas*, 160

Md. App. 194, 201 (2004) (quoting *Simms*, 113 Md. App. at 296).

"A motion to dismiss should not be granted unless it appears that *no* plausible evidence could be offered to support the claim." *Simms*, 113 Md. App. at 295 (emphasis added). When deciding if claims should be dismissed, the Court must view the allegations in the light most favorable to the non-moving party. *Simms*, 113 Md. App. at 296 ("since we are dealing with a motion to dismiss, we consider appellants' well-pleaded allegations in the light most favorable to them" (internal citation omitted)).

## ARGUMENT

**I.    COUNTERCLAIM PLAINTIFFS ADEQUATELY ALLEGE A CLAIM FOR INDEMNIFICATION UNDER THE WHITEWATER TRUST AGREEMENT.**

Under Count II of the Counterclaims, Counterclaim Plaintiffs adequately alleged that they are entitled to indemnification under Sections 5 and 9 of the Whitewater Trust for the costs of defending against Counterclaim Defendants' baseless claims in this action.

### A.    Mr. Bolog Is Entitled To Indemnification Under Section 5 Of The Whitewater Trust Agreement.

Under Section 5 of the Whitewater Trust Agreement, the Whitewater Trust "*shall indemnify* and hold each individual trustee harmless for any act or omissions of such trustee." (Ex. B to Counterclaims, at 5 (emphasis added).) Plaintiffs argue that because they have *alleged* claims of fraud against Mr. Bolog, the indemnification counterclaim must be dismissed because the Whitewater Trust Agreement disclaims indemnification for "for an act of gross negligence or willful misconduct." (Mtd. at 10.) But the "Court cannot simply assume that the allegations made in [Counterclaim] Defendants' pleadings . . . are true." *Gramercy Advisors, LLC v. Ripley*, 2014 WL 4188099, at *11 (S.D.N.Y. Aug. 25, 2014). Counterclaim Defendants' claims related to the Whitewater Trust hinge on what conflicts Mr. Bolog disclosed to Ms. Engelhorn while serving as trustee of the Whitewater Trust (he disclosed all possible conflicts). At this point of litigation,

-14-

Counterclaim Defendants' have not *proven* that Mr. Bolog took any fraudulent actions (he did not), they have only *alleged* such action.

To deny Mr. Bolog indemnification on the grounds argued by Counterclaim Defendants would put the cart before the horse. At this stage, Counterclaim Defendants have not proven their allegations as true, therefore Counterclaim Plaintiffs' pleading of indemnification cannot be rejected on those grounds. *See Gramercy Advisors, LLC*, 2014 WL 4188099 at *11 (rejecting, at the motion to dismiss stage, allegations of fraud as sufficient to dismiss indemnification obligations). Indemnification clauses are still enforceable even where a party *settles* claims for misconduct without a formal judgment finding such misconduct occurred. *See Gibbs-Alfano v. Burton*, 281 F.3d 12, 21 (2d Cir. 2002). The only issue for the Court to adjudicate now, at the motion to dismiss stage of the Counterclaims, is whether Mr. Bolog has adequately alleged a claim for indemnification under the Whitewater Trust Agreement for indemnification. He has.

## B. Mr. Bolog Is Entitled To Indemnification Under Section 9 Of The Whitewater Trust Agreement.

Mr. Bolog is also entitled to indemnification and advance costs under Section 9 of the Whitewater Trust Agreement—which provides indemnification to a trustee, "including costs incurred by" the Trustee, for the "defense of [] litigation" that "legally challenge[s] th[e] trust, its provisions or asset distributions"— because he is defending against exactly such a litigation.

Counterclaim Defendants argue that the SAC is not a "challenge" to the "provisions of the trust agreement." (Mtd. at 11.) In fact, Counterclaim Defendants are directly challenging multiple provisions of the Whitewater Trust Agreement, as they argue that the Whitewater Trust Agreement is "neither a contract nor an agreement" (Mtd. at 18 (quoting *Boyle v. Anderson*, 301 Va 52 (2022)) and its provisions cannot be enforced by Mr. Bolog for his services as a trustee and provide him

no protection. These provisions include Section 5.K (compensation), Sections 5 and 9 (indemnification), Section 9 (cost advancement), and Section 9 (arbitration).

Similarly, Counterclaim Defendants' provide no support for their position that "asset distributions" are a "term of art" under the Whitewater Trust Agreement. Nowhere does the term "asset distribution" appear as a defined term in the Whitewater Trust Agreement, nor is it part of the headings of Section 2, Section 3, and Section 6.D, which Counterclaim Defendants cite to as exemplar provisions showing the meaning of "asset distribution." Accordingly, the exact meaning of "asset distribution" must be determined by extrinsic evidence through the discovery process. At this stage, a reasonable interpretation would dictate that it includes distribution of assets for investment purposes undertaken by a trustee of the Whitewater Trust. Counterclaim Defendants' claims in this action implicate Mr. Bolog's distribution of investible assets in his service as trustee:

- Counts X and XI (constructive trust over Darnestown Road, Inc. and Swain Landing LaPlata JC, LLC, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing Swain Landing LaPlata JC, LLC); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park Associates, LLC).

These claims necessarily constitute decisions made by Mr. Bolog in his role as a trustee of the Whitewater Trust concerning distribution of the trust's assets. Accordingly, they are subject to the indemnification provision of Section 9 of the Whitewater Trust Agreement.

Under Section 9, the Whitewater Trust is also obligated to pay for "costs incurred" by a trustee in defending against litigation. Regardless of the final outcome of Counterclaim Defendants' allegations of misconduct against Mr. Bolog, at this stage, "ultimate liability do[es] not necessarily affect the[] obligation to advance costs." *Gramercy Advisors, LLC*, 2014 WL 4188099 at *11.

C.    **The Whitewater Trust Agreement Is An Enforceable Contract Between Settlor and Trustee.**

Plaintiffs contend that because the Whitewater Trust Agreement is not a contract, Mr. Bolog has no rights under its provisions. Wrong.[6] *See, e.g.*, *In re Laher*, 496 F.3d 279, 289 (3d Cir. 2007) ("All trusts can be described as contractual relationships insofar as the obligations of all the parties are set forth in an agreement[.]"); *Walter v. Drayson*, 2007 WL 2694399, at *4 (D. Haw. Sept. 12, 2007) ("The Court recognizes that the Trust Agreements are contracts between . . . *the Settlor*, and . . . *the Trustees*, for the benefit of Plaintiff, a third-party beneficiary.") (emphasis added). All of the requisite elements to establish a contract between Mr. Bolog and Ms. Engelhorn are present. *See Sfreddo v. Sfreddo*, 59 Va. App. 471, 488 (2012) ("The basic elements of a contract are an offer, acceptance, and consideration."); *Braude v. Robb*, 255 Md. App. 383, 397 (2022) (In Maryland, a "valid contract is formed by . . . an offer and acceptance and consideration."). Ms. Engelhorn offered the role of trustee to Mr. Bolog, which he accepted. And, as consideration, in return for Mr. Bolog's services as trustee, he was entitled to receive "reasonable compensation" and indemnification against any claim that might be brought against him in his role as trustee (Ex. B to Counterclaims, at 5 and 14.) The Whitewater Trust Agreement thus constitutes a contract between the settlor and trustee.

Counterclaim Defendants' argument that Mr. Bolog's cessation as a trustee of the Whitewater Trust no longer entitles him to indemnification has no basis and is absurd on its face.

---

[6] Counterclaim Defendants' reliance on *Boyle v. Anderson* is irrelevant because Mr. Bolog seeks not to enforce the Whitewater Trust "against a beneficiary" but against Ms. Engelhorn as trustee of the Whitewater Trust. 301 Va. 52, 60 (2022). The Supreme Court of Virginia did not address whether an arbitration provision in a trust agreement is enforceable between trustees or between a trustee and grantor. Indeed, Mr. Bolog is not a "beneficiary" of the trust, he was a co-trustee with Ms. Engelhorn. Counterclaim Plaintiffs recognize that the Court recently issued an Order stating that "disputes arising from a trust instrument are not subject to compulsory arbitration." With respect to the Court, the Counterclaim Plaintiffs respectfully note that *Boyle* is distinguishable and that the Counterclaim Plaintiffs intend to move for reconsideration of the Order denying the Petition for Arbitration.

(Mtd. at 12.) The indemnification clause in the Whitewater Trust Agreement contains no temporal limitation, nor does it contain a provision requiring that the trustee still be in service at the time he defends against litigation. Nor should it. To deny Mr. Bolog the right of indemnification after termination would render such provisions effectively meaningless. A grantor could entice a trustee into service with a pledge of indemnification, then blindside the trustee with termination and a series of baseless claims to boot. Such an interpretation cannot be countenanced by the Court. The Whitewater Trust Agreement clearly states that it "shall indemnify" a trustee and is obligated to "hold each individual trustee harmless," and contains no provision limiting its applicability to if they are currently still serving as a trustee. (Ex. B to Counterclaims, at 5.)

Counterclaim Defendants' position that indemnification would be an unenforceable prospective limitation on a lawyer's liability is also unavailing for one simple reason: Plaintiffs have not satisfied their burden that *Mr. Bolog* drafted the Whitewater Trust Agreement, let alone its indemnification provisions. Nowhere in the Counterclaims did Counterclaim Plaintiffs allege that Mr. Bolog drafted the Whitewater Trust Agreement nor did Counterclaim Defendants allege such facts—much less prove them—in their SAC.[7] Regardless, not all claims against Mr. Bolog are grounded in malpractice and the Court could find the indemnification provision of the Whitewater Trust Agreement applicable to Counterclaim Defendants' causes of action as appropriate.

---

[7] Indeed, Paragraph 30 of the Second Amended Complaint alleges that an attorney with WTP named MaryEllen Willman "recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a 'revocable trust.' It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust[.]" (SAC ¶ 30.) Paragraph 33 alleges that "Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees. Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021." (SAC ¶ 33.) None of these allegations allege *Mr. Bolog* drafted the Whitewater Trust Agreement.

Darnestown Road, Science Park, and Swain Landing are also third-party beneficiaries under the Whitewater Trust Agreement. In Maryland "a person for whose benefit a contract is made can maintain an action upon it." *Shillman v. Hobstetter*, 249 Md. 678, 687 (1968). Here, the indemnification provision of the Whitewater Trust Agreement clearly provides protection not just for the trustee, but also his "agents, attorneys, accountants and representatives" are to "be paid for by the trust." (Ex. B to Counterclaims, at 14.) Here, as the SAC alleges, for example, Mr. Bolog was an owner of Darnestown Road and served as its resident agent (SAC ¶ 10) and was a member of Science Park (SAC ¶ 11). Accordingly, because Darnestown Road, Science Park, and Swain Landing are third party beneficiaries under the Whitewater Trust Agreement they are entitled to indemnification.

Accordingly, the Bolog Defendants have sufficiently shown that they are indemnified against the costs of defending this action under the Whitewater Trust Agreement at this stage of the proceeding.

## II.    COUNTERCLAIM PLAINTIFFS ADEQUATELY ALLEGE THAT THE WHITEWATER TRUST IS IN BREACH OF CONTRACT.

Count IV of the Counterclaims asserts a valid claim for breach of contract under the Whitewater Trust Agreement against Ms. Engelhorn as Trustee of the Whitewater Trust. Mr. Bolog provided trustee services to the Whitewater Trust from its inception on September 30, 2021, through his removal as trustee by Ms. Engelhorn on November 30, 2022. Mr. Bolog was provided no compensation for his services as a trustee during that time. (Counterclaims ¶ 95.)[8]

---

[8] Counterclaim Plaintiffs go far outside the pleadings by asserting that Mr. Bolog submitted time and expense entries to WTP for his work as trustee of the Whitewater, which WTP in turn invoiced Counterclaim Defendants. (Mtd. 16.) No such allegation appears in either the SAC or the Counterclaims.

At the motion to dismiss stage, a "breach of contract claim requires a plaintiff to allege the existence of a contractual obligation owed" and a "material breach of that obligation by the defendant." *Homespire Mortg. Corp. v. Naghmi*, 2023 WL 4725756, at *4 (Md. Ct. Spec. App. July 25, 2023) (internal citations omitted). Here, the plain terms of the Whitewater Trust Agreement dictate that Mr. Bolog was entitled to compensation for his services as a trustee. Section 5.K of the Whitewater Trust Agreement could not be clearer, stating that a trustee is entitled to receive "compensation for services as a fiduciary." (Ex. B to Counterclaims at 7.)

Counterclaim Defendants argue that this provision is inapplicable for two reasons: (1) the Whitewater Trust Agreement's allocation of compensation to a successor trustee implies the non-existence of compensation to an initial trustee like Mr. Bolog and (2) the absence of any express compensation provision means that no claim for breach of contract could be asserted. (Mtd. 16-18.) Not so. The Whitewater Trust is to be governed under the laws of the Commonwealth of Virginia. (*See* Ex. B to Counterclaims, Section 10.) Under Virginia law, "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances."[9] Va. Code Ann. § 64.2-761. Indeed, this concept is as old as the United States itself. "An executor is certainly entitled to some compensation for his trouble, and that, by custom, is generally fixed at five per cent." *Granberry's Ex'r v. Granberry*, 1 Va. 246, 250 (1793); *see also Cooper v. Brodie*, 253 Va. 38, 43 (1997) (finding as "reasonable compensation" a $120,000.00 annual payment on $12 million in assets). As alleged in the Counterclaims, Mr. Bolog performed valuable services in his role as trustee for the Whitewater Trust for 13 months and

---

[9] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

received no compensation. (Counterclaims ¶ 95.) Under the law governing the Whitewater Trust

Agreement, he is entitled to compensation of at least 1% of trust assets, and, customarily, 5%.[10]

Mr. Bolog served as Trustee of the Whitewater Trust for 13 months, from its creation on

September 30, 2021, until November 2022, when Ms. Engelhorn, through counsel, notified Mr.

Bolog that he was being removed as Trustee.  During his time as Trustee, Mr. Bolog performed

all of the duties required of him as Trustee, providing numerous valuable services benefitting the

Trust and Ms. Engelhorn. To date, Mr. Bolog has received no compensation whatsoever for those

services, in direct contravention of the provisions of Section 5.K. of the Trust. At this stage, Mr.

Bolog need only adequately allege a contractual obligation for compensation from the Whitewater

Trust (he has) and that he was not compensated (he was not). The amount of such obligation is a

determination to be made by the fact finder.

## III.    THERE IS NO JUDICIAL PRIVILEGE APPLICABLE TO THE DEFAMATION COUNTERCLAIM.

Under Maryland law, to present a prima facie case of defamation, a plaintiff must establish

four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the

statement was false, (3) that the defendant was legally at fault in making the statement, and (4)

that the plaintiff thereby suffered harm. *Offen v. Brenner*, 402 Md. 191, 198 (2007). A defamatory

statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule,

---

[10] Counterclaim Defendants' cases do not support the proposition that there is some sort of heightened pleading standard for claims grounded in breach of contract. *Cont'l Masonry Co. v. Verdel Const. Co.* addressed whether defendant had an "*implied* obligation" to plaintiff. 279 Md. 476, 478 (1977) (emphasis added). *Read Drug & Chem. Co. of Baltimore City v. Colwill Const. Co.*, analyzed a "cause of action for *negligence*." 250 Md. 406, 413 (1968) (emphasis added). And *Carder v. Steiner*, has absolutely nothing to do with breach of contract at all; in *Carder*, plaintiff brought a tort claim against a prison guard for damages "he suffered while a prisoner, when the guard closed his cell door upon him in such a manner as to strike and injure him." 225 Md. 271, 273 (1961).[10] The only relation *Carder* has to the facts here is that Counterclaim Defendants have been holding Mr. Bolog prisoner through threats, intimidation, and their baseless action.

thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id*. A statement made outside of a judicial proceeding is not entitled to privilege. *See Woodruff v. Trepel*, 125 Md. App. 381, 401 (1999). And even a statement made within a judicial proceeding is only entitled to privilege when it is "related to" the litigation. *Id* at 392.

Counterclaim Defendants do not dispute that their statements were clearly defamatory. Instead, they argue that the concededly defamatory statements in the Defamatory Letter were made in the course of a judicial proceeding and, accordingly, are awarded absolute privilege and cannot support a claim for defamation. That is inaccurate. The statements made in the Defamatory Letter were made *two months before* the commencement of litigation and not in the context of litigation against *Mr. Bolog*. Indeed, the Defamatory Letter was sent by Mr. Henderson, acting as an agent of Ms. Engelhorn, to WTP to settle claims Ms. Engelhorn was contemplating bringing against WTP. Statements made by one party about another *will not* be granted absolute privilege at this stage when they are made outside of the judicial proceeding. *See Arundel Corp. v. Green*, 75 Md. App. 77, 85 (1988) (the issue of whether a defamatory statement was made in the context of a judicial proceeding is for the "trier of the facts"); *see also Woodruff*, 125 Md. App. at 401 (1999) (declining to apply absolute privilege to statements made outside of an ongoing judicial proceeding).

Even if the defamatory statements were made in the context of litigation (which they were not), this "does not mean," as Counterclaim Defendants' cases acknowledge, "that there are 'no exceptions' to the privilege." *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 447 Md. 394, 411 (2016). Counterclaim Defendants argue two reasons why the defamatory statements are related to this action. *First*, they argue that they were made as part of a settlement letter to reach a pre-suit agreement with WTP. (Mtd. at 7-8.) If so, then the allegations contained in the Defamatory Letter

should be restrained to those *against WTP* without the need to draw in allegations against Mr. Bolog. *Second*, they claim that the Defamatory Letter was a document preservation notice served on WTP. (Mtd. at 8-9.) If so, a simple letter informing WTP of contemplated action against Mr. Bolog would have sufficed.

Here, the defamatory statements in the Defamatory Letter, as set forth above, are not relevant to document preservation or settlement with WTP and were included for the sole reason of defaming Mr. Bolog and impugning his character. Indeed, nothing about the SAC has anything to do with whether "Ms. Engelhorn" was "Mr. Bolog's *first and only victim*." (Counterclaims ¶¶ 29-30 (emphasis added).) And nothing about a settlement with *WTP* justified the inclusion of defamatory statements against Mr. Bolog that he "defrauded" Ms. Engelhorn and "*improperly caus[ed]* the transfer of $10M to a trust created for his benefit." (*Id.* (emphasis added).) Such accusations that Mr. Bolog victimized others (he has not victimized anyone) or committed fraud (he has not) are the very definition of defamation.

If one was to follow the misplaced logic of the Counterclaim Defendants' argument, a person could send a letter to another person's professional colleagues, state in that letter that the person they were writing about is a pedophile, a rapist or a murderer (none of which are true), but then simply add a sentence that the those colleagues must preserve documents for a purported claim that has not been brought and may never be, and then hide behind a wall of privilege. It cannot be the law of this state that a defaming party can escape not only liability, but win on motion to dismiss, when the defamed victim (here, Mr. Bolog) pleads sufficient allegations that the real motive behind the defamatory statement was to coerce a settlement by saying sensational and untrue things, and threatening to make such baseless allegations publicly.

The defamatory statements baselessly accused Mr. Bolog of fraud, improperly causing the transfer of the Gift, and that he had more "victims" than Ms. Engelhorn (as if she was a "victim" at all). There is nothing in Counterclaim Defendants' Second Amended Complaint that alleges Mr. Bolog victimized anyone other than Ms. Engelhorn (nor was Ms. Engelhorn a victim in the first place). Therefore, such statement in the defamatory letter *cannot* be relevant to this litigation. The burden is on the defaming party to prove "that the matter published has some relation to the anticipated proceeding." *Arundel Corp*, 75 Md. App. at 85. In *Arundel*, the court vacated a grant of summary judgment in favor of attorney asserting judicial proceedings privilege because the "issue of whether the defamatory matter published" had "some relation to the suit . . . was for the trier of the facts." *Id*. Similar to the circumstances here, the defendant in *Arundel* sent letters to individuals affiliated with plaintiff seeking information on "personal injuries allegedly sustained . . . during the course of their occupations." *Id*. at 79-80. Here, as well, Counterclaim Defendants sent a letter seeking information on Mr. Bolog's actions taken in the course of his professional responsibilities. The issue of the circumstances and intent of why Counterclaim Defendant Engelhorn sent the Defamatory Letter is not a matter for this Court to address on a motion to dismiss, but for the finder of fact to determine following substantive discovery and presentation of evidence.

Counterclaim Defendants supportive cases are otherwise inapposite to the facts here. The court in *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.* addressed defamatory statements made in settlement letters sent *after* litigation had already commenced. 138 Md. App. 686, 702 (2001). Similarly, in *Norman v. Borison*, attorneys for plaintiffs made statements to the press after (or imminently before) the complaint had already been filed. 418 Md. 630 (2011). And the defamatory statements in *Mixter v. Farmer* were made in letters sent to gather evidence in

connection with a bar investigation, not to purportedly put another party on notice about document retention policies or for settlement negotiations. 215 Md. App. 536 (2013). Here, by contrast, the Defamatory Letter was sent months in advance of the commencement of litigation under the pretense of a document retention notice, littered with untrue and defamatory statements about Mr. Bolog, without relation to the Counterclaim Defendants' contemplated action against WTP. Its real purpose should be determined by the jury.

Accordingly, because the defamatory statements were neither made in the course of a judicial proceeding, nor were rationally related to any contemplated litigation by Ms. Engelhorn, the Court should reject Counterclaim Plaintiffs' motion to dismiss Count I of the Counterclaims.

## IV.   <u>COUNTERCLAIM DEFENDANTS STATED A CLAIM FOR ABUSE OF PROCESS.</u>

Count III of the Counterclaims alleges that the Counterclaim Defendants committed abuse of process by initiating this action. The tort of abuse of process is properly asserted when defendant "aimed at an objective not legitimate in the use of the process." *Berman v. Karvounis*, 308 Md. 259, 265 (1987) (internal quotations omitted). As Counterclaim-Defendants' case law acknowledges, "the moment [Counterclaim Defendants] attempt[ed] some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated." *Palmer Ford, Inc. v. Wood¸* 298 Md. 484, 512-513 (1984) (internal quotations omitted). Here, as the Counterclaims adequately allege, Counterclaim Defendants initiated this action to "assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm" (Counterclaims ¶ 55), to "coerce him into returning the Gift" (Counterclaims ¶ 89), , and to and threaten his ability to practice law. (*Id*. ¶ 55.) The tort of abuse of process has thus been properly pleaded. *Berman*, 308 Md. at 265 (abuse of process can be shown

through allegations that Counterclaim Defendants tried "to coerce/extort money and/or property from" Counterclaim Plaintiffs).

It is clear that the Counterclaim Defendants willfully abused the court process through the initiation and continued prosecution of this action. The Second Amended Complaint contains numerous allegations that are either intentionally deceptive to the Court or demonstrably false on their face, and reveal the true ulterior motive behind Ms. Engelhorn's filing: to assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm and of attempting to destroy his professional reputation and ability to practice law. Indeed, as Ms. Mayo testified, Mr. Bolog "g[a]ve her [each] document and explain[ed] what it was." (Ex. A at 31:20-21; 32:7-9). And Ms. Mayo confirmed that Ms. Engelhorn "understood the documents and was signing them of her own free will." (*Id.* at 31:22-24; 34:5-22; 38:3-7, 12-15, 43:8-44:2, 45:16-46:16.)

Counterclaim Defendants argue that Count III of the Counterclaims cannot be maintained because the Counterclaims did not allege that the Counterclaim Defendants were unlawfully detained or that their property was seized. (Mtd. at 13-14.) But, as alleged in the Counterclaims, Mr. Bolog is due hundreds of thousands of dollars in compensation from the Whitewater Trust which, to-date, has not been paid. (Counterclaims ¶ 95.) And, furthermore, the Counterclaim Defendants sought to "assert professional and ethical breaches against Mr. Bolog" (Counterclaims ¶ 55), which could—and were clearly intended to—lead to investigations into Mr. Bolog's professional conduct by state bar associations. These are collateral objectives not permitted through the normal use of process.

Counterclaim Defendants' argument that the judicial proceedings privilege applies to Count III misconstrues Counterclaim Plaintiffs' counterclaim for abuse of process. Not so. The

"litigation privilege does not broadly apply to any and all torts." *Anderson v. Hammerman*, 263 Md. App. 673, 697 (2024), *cert. denied sub nom. Innovative Surgery Ctr., P.C. v. Anderson*, 490 Md. 94 (2025). Here, Counterclaim Defendants' (incorrect) allegations that Mr. Bolog violated the law, displayed a lack of integrity in his practice of law, besmirched his honesty, and questioned his commitment to ethical obligations (*id*. ¶ 69) are not the substantive basis for the tort of abuse of process pleaded by Counterclaim Plaintiffs here, they demonstrate the *evidence* of Counterclaim Defendants' intent to use the judicial process for an ulterior motive. Accordingly, the judicial proceedings privilege has no relevance here and the Court should deny the motion to dismiss as to Count III.

## V.    SHOULD THE COURT GRANT DISMISSAL, IT SHOULD PERMIT COUNTERCLAIM PLAINTIFFS TO REPLEAD.

In the event the Court is inclined to dismiss any of Counterclaim Plaintiffs' counterclaims, they should be dismissed without prejudice with leave to amend.

Since Counterclaim Defendants submitted the Counterclaims, the parties have engaged in limited discovery, including the deposition of Sarah K. Mayo (Ex. A), who provided testimony that directly rebuts the allegations in the Second Amended Complaint. Her testimony demonstrates that the SAC is filled with allegations that are demonstrably and knowingly false, and were asserted in bad faith. Inclusion of such additional information in an amended pleading would provide further support for the Counterclaim Plaintiffs' counterclaims.

Furthermore, should the court find the Counterclaim Plaintiffs have failed to plead a claim for breach of contract, or that the Whitewater Trust Agreement is not a contract, Counterclaim Plaintiffs would plead alternative legal theories, including:

- *Quantum Meruit*. In the absence of a clear compensation structure under the Whitewater Trust Agreement awarded to Mr. Bolog for his services as a trustee of the Whitewater Trust. *See Mangione v. Braverman*, 234 Md. 357, 361 (1964) (allowing a party to recover "the fair value of his services rendered and the recovery of money expended in reliance on

the contract") This applies even if the contract is unenforceable on other grounds. *Id*. Here, Mr. Bolog provided valuable services to the Whitewater Trust for which he was never provided compensation.

- *Unjust Enrichment*. Retention of Mr. Bolog's services as trustee without payment would provide the Whitewater Trust with unjust enrichment. *See Everhart v. Miles*, 47 Md. App. 131, 136 (1980) (Unjust enrichment occurs when (1) a "benefit [is] conferred upon the defendant by the plaintiff"; (2) there is an "appreciation or knowledge by the defendant of the benefit"; and (3) there is "acceptance for retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."). It would be unjust for the Whitewater Trust to retain Mr. Bolog's services without reasonable compensation.

- *Promissory Estoppel or Detrimental Reliance*.  Even "where a contract lacks formal consideration, an enforceable contract may nevertheless exist by virtue of the doctrine of detrimental reliance." *Braude v. Robb*, 255 Md. App. 383, 398 (2022) ("The terms promissory estoppel and detrimental reliance are often used interchangeably.") Here, Mr. Bolog relied on the terms of the Whitewater Trust Agreement to receive compensation for his services as a trustee.

These claims, which are not grounded in the existence of a written contract, would be pleaded in the alternative to any surviving breach of contract claim.

Lastly, because the Whitewater Trust Agreement is governed under Virginia law, the Trustee would add additional factual support demonstrating that the Trustee is entitled to compensation under Virginia's statute for compensation to a trustee. Under Virginia law, "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances."[11] Va. Code Ann. § 64.2-761.

## **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety.

---

[11] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

Dated: June 6, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of June, 2025, a copy of the foregoing was served electronically via MDEC upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 6/6/2025 8:01 PM; Submission: 6/6/2025 8:01 PM
Envelope: 21539665

## EXHIBIT A

# In The Matter Of:

*Claudia Engelhorn, et al. v.*
*Erik D. Bolog, et al.*

---

*Sarah K. Mayo*
*June 2, 2025*
*Video Deposition*

---

*Beacon Court Reporting Services*

*100 Independence Drive, Suite 7*

*Hyannis, Massachusetts 02601*

*(774) 678-4255*

*www.beaconcourtreporting.com*



Original File 2025-0602_Mayo.txt

**Min-U-Script®**

Sarah K. Mayo - June 2, 2025
Video Deposition

```
                                        Volume:
                                        Pages:  1-99
                                        Exhibits:  1-5


                IN THE CIRCUIT COURT FOR

                BALTIMORE CITY, MARYLAND

****************************x
CLAUDIA ENGELHORN, ET AL.,

        Plaintiffs,

v.                                 No. C-24-CV-24-002631

ERIK D. BOLOG, ET AL.,

        Defendants.
****************************x


        VIDEOTAPED DEPOSITION OF SARAH K. MAYO

        taken at Beacon Court Reporting Services

            100 Independence Drive, Suite 7

                Hyannis, Massachusetts

                June 3, 2025, 10:01 a.m.




Stenographic Reporter:
Janet L. Wynne, CSR No. 131793
Registered Professional Reporter
Massachusetts Notary Public


                Beacon Court Reporting Services
                100 Independence Drive, Suite 7
                 Hyannis, Massachusetts 02601
                 www.beaconcourtreporting.com
```

BEACON COURT REPORTING SERVICES
(774) 678-4255

```
APPEARANCES:

FOR THE PLAINTIFF:
     Wes P. Henderson, Esq. (via remote)
     Henderson Law, LLC
     2127 Espey Court, Suite 204
     Crofton, Maryland 21114
     wph@hendersolawllc.com

FOR THE DEFENDANTS ERIK D. BOLOG; ERIK D. BOLOG,
TRUSTEE; JAREB IRREVOCABLE TRUST AGREEMENT;
SCIENCE PARK ASSOCIATES, LLC; DARNESTOWN ROAD,
INC.
     Douglas Gansler, Esq.
     Cadwalader, Wickersham & Taft LLP
     1919 Pennsylvania Avenue NW
     Washington, DC 20006
     douglas.gansler@ccwt.com

FOR THE DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP:
     John J. Connolly, Esq.
     Kirk MacKinnon Morrow, Esq. (via remote)
     William J. Murphy, Esq. (via remote)
     Zuckerman Spaeder LLP
     100 East Pratt Street, Suite 2400
     Baltimore, MD 21202-1031
     jconnolly@zuckerman.com
     KMackinnonMorrow@zuckerman.com
     Jmurphy@zuckerman.com


Also Present:

     Bob Giannini, Videographer
     Budd Legal Video
```

Sarah K. Mayo - June 2, 2025                                    3
Video Deposition

I N D E X

Witness:                                                    Page

SARAH K. MAYO

   Examination by Mr. Connolly...............   5

   Examination by Mr. Gansler................   54
   .........................................   95

   Examination by Mr. Henderson..............   77


EXHIBITS

Number        Description                          Page

Exhibit 1     Subpoena.........................     4

Exhibit 2     JAREB Irrevocable Trust
              Agreement dated October 11, 2021.     4

Exhibit 3     Notice of Gift...................     4

Exhibit 4     Notary Public Application........     4

Exhibit 5     Transfer Instructions...........      4


(Original Exhibits retained by Attorney Connolly.)

BEACON COURT REPORTING SERVICES
(774) 678-4255

```
 1                    P R O C E E D I N G S

 2              (Exhibits 1 through 5 pre-marked for

 3               identification.)

 4              THE VIDEOGRAPHER:   Good morning.  We

 5   are on the record.  This is the videographer

 6   speaking, Bob Giannini.  I'm with the court

 7   reporter, Janet Wynne, with Beacon Court

 8   Reporting.  Today's date is June 2, 2025, and the

 9   time is 10:02 a.m.

10              We are here at Beacon Court Reporting,

11   located in Hyannis, Massachusetts, to take the

12   video deposition of Sara Mayo in the matter of

13   "Claudia Engelhorn, et al., versus Erik Bolog,

14   et al."

15              Will counsel please introduce

16   themselves for the record.

17              MR. CONNOLLY:   John Connolly for

18   Defendant Whiteford, Taylor & Preston LLP.

19              MR. GANSLER:   Douglas Gansler for

20   Defendant Erik Bolog and other associate entities.

21              MR. HENDERSON:   Wes Henderson, counsel

22   for the plaintiffs.

23              THE VIDEOGRAPHER:   Okay.  Thank you.

24              Will the court reporter please swear in
```

1    the witness.

2                          SARAH K. MAYO,

3    a witness called for examination by counsel for

4    the Defendant Whiteford, Taylor & Preston, LLP,

5    having been satisfactorily identified and duly

6    sworn by the Notary Public, deposes and says as

7    follows:

8                          EXAMINATION

9    BY MR. CONNOLLY:

10        Q.   Good morning, Ms. Mayo.  My name is

11   John Connolly.  As I mentioned, I represent a

12   defendant in this case, Whiteford, Taylor &

13   Presto.  Thank you for coming here today.

14        My first question is:  You are here

15   today because we sent you a subpoena; is that

16   correct?

17        A.   Mm-hmm.

18        Q.   All right.  So I want to show you a

19   document to make sure that we're on the same page

20   as to the subpoena you received.

21        This has been pre-marked as Mayo

22   Exhibit -- Deposition Number 1.  I ask you to take

23   a quick look at that and see if that's the papers

24   that you received from our office through a

Sarah K. Mayo - June 2, 2025                    31
Video Deposition

```
 1          A.   Mm-hmm.

 2               MR. HENDERSON:   Objection --

 3          A.   Yes.

 4               MR. HENDERSON:   -- to form and

 5     substance.

 6          Q.   You have to answer --

 7          A.   Yes.

 8          Q.   Okay.  Did she seem intoxicated?

 9               MR. HENDERSON:   Objection.

10          A.   No.

11          Q.   Did she seem like she was in pain or on

12     pain medications?

13          A.   No.

14               MR. HENDERSON:   Objection.

15          Q.   Did she seem confused?

16          A.   No.

17               MR. HENDERSON:   Objection.

18          Q.   Did Mr. Bolog speak to her when you

19     were in the room?

20          A.   He would give her the document and

21     explain what it was.  And then, before I would

22     sign it or stamp it, I just asked her if she

23     understood the documents and was signing them of

24     her own free will, because that's what I ask all
```

Sarah K. Mayo - June 2, 2025                    32
Video Deposition

```
 1    the people that sign something, like, make sure

 2    they're not doing it against their will.

 3          Q.  Okay.  And that's a requirement of your

 4    function as a notary; is that fair?

 5          A.  Yeah.

 6              MR. HENDERSON:  Objection.

 7          Q.  So you say that Mr. Bolog first

 8    explained the document to her?

 9          A.  Yes.

10          Q.  All right.  Do you recall what he said?

11          A.  I wasn't paying attention.  I don't.

12          Q.  Do you recall that Mr. Bolog passed her

13    a document and said something like, "This document

14    is a..." -- "X"?

15          A.  Yes.

16          Q.  All right.

17              MR. HENDERSON:  Objection.

18          Q.  And did she ask any questions of

19    Mr. Bolog?

20          A.  No.  It seemed like she trusted him.

21          Q.  All right.  Do you recall seeing her

22    follow along reading the document?

23          A.  I don't recall.

24          Q.  Okay.  Were the documents presented to
```

Sarah K. Mayo - June 2, 2025                    33
Video Deposition

1    her right-side up or upside-down?

2         A.   Right-side up.

3         Q.   Okay.  Did she express any confusion

4    about signing the document?

5         A.   No.

6         Q.   "Acknowledgment" has a specific meaning

7    for a notary public; is that correct?

8         A.   Yes.

9         Q.   What is that meaning?

10        A.   Just acknowledging that they're signing

11   the document for its purposes and they understand

12   what it means and that I am witnessing it.

13        Q.   Did you ask Ms. Engelhorn for ID?

14        A.   I know her.  She's personally known to

15   me; so I did not, no.

16        Q.   So you don't have to ask someone for ID

17   when they're known --

18        A.   Not when they're personally known to

19   me.

20        Q.   And at that point she was personally

21   known to you.

22             And you said that you run through a

23   script for both Ms. Engelhorn and other people who

24   were signing documents that you are notarizing,

1   and that script says -- you ask that the witness

2   is signing of their own freewill?

3        A.   Mm-hmm.

4             MR. HENDERSON:   Objection.

5        Q.   What else do you ask?

6        A.   That they are signing of their own

7   freewill and no one is forcing them to do so and

8   they want to sign the document.

9        Q.   And you asked those questions of

10  Ms. Engelhorn with respect to Exhibit 2?

11       A.   Yes.

12       Q.   Why don't you take a look at Exhibit 3

13  as well.

14       A.   Well, I just did a blanket one that I'm

15  here to notarize documents for you and you're

16  signing them of your own freewill.

17       Q.   Okay.  So you didn't run it over again?

18       A.   No.  Not three times, no.

19       Q.   But you were satisfied that she

20  answered that she was signing the documents of her

21  own freewill?

22       A.   Yes.

23       Q.   And you were satisfied yourself that

24  she was not confused about the documents?

1  date?

2         A.  Yes.

3         Q.  And with respect to this document, you

4  said previously you asked your normal script to

5  ensure that the signatory was signing of their own

6  freewill?

7         A.  Yes.

8         Q.  That applied to both Exhibit 2 and

9  Exhibit 3; is that correct?

10        A.  Yes.

11             MR. HENDERSON:  Objection.

12        Q.  And you're -- you are -- at the time,

13  you were, in fact, satisfied that she was signing

14  of her own freewill --

15        A.  Yes.

16             MR. HENDERSON:  Objection.

17        Q.  -- in Exhibit 3?

18        A.  Mm-hmm.

19        Q.  Yes?

20        A.  Yes.

21        Q.  Thank you.

22             Okay.  Did you read Exhibit 3?

23        A.  They didn't -- I was not given the

24  documents open.  I was given signature pages,

1   was not signing of his freewill?

2        A.   No.

3        Q.   Did he appear intoxicated or under the

4   influence of drugs?

5        A.   No.

6        Q.   Did he appear coerced?

7        A.   No.

8        Q.   Okay.  Let's look at the next page of

9   that document, which is page 26.  And do you see

10  that says, "Schedule A to the Foregoing

11  Irrevocable Trust"?  Do you see that?  It has one

12  word on it, substantively; right?

13       A.   Mm-hmm.

14       Q.   What's that word?

15       A.   $10 million.

16       Q.   All right.  And then there's a

17  signature block for that but no acknowledgment

18  form; correct?

19       A.   Mm-hmm.

20       Q.   And is that again, as witness,

21  Mr. Reichert on the top line?

22       A.   Yes.

23       Q.   And that's you on the second line?

24       A.   Yes.

Sarah K. Mayo - June 2, 2025                 44
Video Deposition

1          Q.  And that's Ms. Engelhorn's signature?

2          A.  Correct.

3          Q.  So this means that Ms. Engelhorn signed

4   this page of Exhibit 2 in your presence?

5          A.  Yes.

6          Q.  Now, did anybody mention the

7   $10 million, to your recollection?

8          A.  No.  I never heard anything about it

9   until I got this and I read through it.

10          Q.  All right.  But this one, it's not a

11   hard document to read; right? -- a hard page to

12   read?

13               MR. HENDERSON:  Objection.

14          A.  I had no clue what it meant or what it

15   was in regards to.

16          Q.  Do you remember anything about a

17   $10 million transfer of funds --

18          A.  No.

19          Q.  -- from Ms. Engelhorn to Mr. Bolog?

20          A.  No.

21          Q.  Before or after?

22          A.  No.

23          Q.  So, throughout the transaction, you

24   didn't realize that, in substance, Ms. Engelhorn

```
 1   was giving $10 million for the benefit of

 2   Mr. Bolog?

 3              MR. GANSLER:  Objection.

 4              MR. HENDERSON:  Objection.

 5        A.  No.

 6        Q.  Okay.

 7              All right.  Let's put that one aside.

 8   Let's put 3 aside, and let's look at Exhibit 4.

 9              So do you have Exhibit 4 in front of

10   you, Ms. Mayo?

11        A.  Yes.

12        Q.  So this is titled "Transfer

13   Instructions," misspelled.

14              Do you see that?

15        A.  Yes.

16        Q.  And it's regarding "transfer of funds,"

17   also misspelled.

18              Do you see that?

19        A.  Yes.

20        Q.  Do you know who drafted this document?

21        A.  No.

22        Q.  So it also has a signature block but no

23   acknowledgment form; correct?

24        A.  Yes.
```

1          Q.  And it says, "Signed, sealed, and

2     delivered in the presence of...," and there's two

3     signatures there.

4               Do you see that?

5          A.  Yes.

6          Q.  And is the first one Mr. Reichert?

7          A.  Yes.

8          Q.  And is the second one you?

9          A.  Yes.

10         Q.  And then that's signed by Ms. Engelhorn

11    and sealed?

12              Do you see that?

13         A.  Yes.

14         Q.  So does this mean that you, in fact,

15    witnessed Ms. Engelhorn's signature?

16         A.  Yes.

17         Q.  And now this one is dated October 12th

18    of 2021.

19              Do you see that?

20         A.  Yes.

21         Q.  But was it signed, in fact, at the same

22    time as Exhibits 3 and -- Exhibits 2 and 3?

23         A.  Yes.

24         Q.  All right.  And it's not you dating it;

```
 1   it's someone else --

 2          A.   No.

 3          Q.   -- dating it; correct?  Okay.

 4               And this is also a short document.  Do

 5   you remember if you read it?

 6          A.   No.

 7          Q.   Were you satisfied -- although this

 8   doesn't have an acknowledgment form, Ms. Engelhorn

 9   signed all these documents in one sitting?  Do you

10   remember that?

11          A.   Yes.

12          Q.   And did Mr. Bolog explain this document

13   to Ms. Engelhorn as well?

14          A.   I'm not sure.

15          Q.   Okay.  But he generally explained

16   documents to her?

17          A.   Mm-hmm.  Yes.

18               MR. HENDERSON:  Objection.

19          Q.   I mean, you don't decide which

20   documents get acknowledged as a notary and which

21   ones just witnessed, but do you recall any

22   explanation for that?

23          A.   No.

24          Q.   Were there any other documents that
```

```
 1   hand the documents to Ms. Engelhorn for her

 2   signature on each document?

 3        A.  Yes.

 4        Q.  And is there any reason why you -- that

 5   you were aware of that he would have handed those

 6   documents to her upside-down?

 7             MR. HENDERSON:  Objection.

 8        A.  Not that I was aware.

 9        Q.  And did you see whether the documents

10   were upside-down?

11        A.  No, I did not see that.

12        Q.  And had she signed those documents

13   while they were upside-down, that would have been

14   something you would have noted?

15        A.  Yes.

16             MR. HENDERSON:  Objection.  Form and

17   substance.

18        Q.  And describe that further.

19        A.  It probably would have been --

20             MR. HENDERSON:  Objection.

21        A.  -- impossible.  Her signature --

22        Q.  Sorry, go ahead, start again.

23        A.  It probably would have been impossible.

24   Her signature would have be a lot more crooked.
```

Sarah K. Mayo - June 2, 2025                    72
Video Deposition

1          Q.  Okay.  I am almost finished with my

2     questioning, but let me -- I'm going to ask you --

3     well, do you have any reason to believe, from your

4     personal observations, that Ms. Engelhorn was in

5     an alcohol-induced condition when she signed these

6     documents?

7               MR. HENDERSON:  Objection.

8          A.  No.

9          Q.  I'm going to ask you this.  I'm going

10    to ask you a bunch of statements and ask you if

11    they're true or not, to your personal knowledge,

12    having been there at the time these documents were

13    signed.

14               That, on or about October 11, 2021,

15    Ms. Engelhorn was vacationing in Cape Cod,

16    Massachusetts -- that she was vacationing in

17    Cape Cod, Massachusetts.

18          A.  Yes.

19          Q.  Is it your understanding that this was

20    a vacation home or it was her permanent residence?

21               MR. HENDERSON:  Objection.

22          A.  Vacation home, like, a family vacation

23    home.

24          Q.  Did you in any way -- is this statement

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

I, Janet L. Wynne, CSR No. 131793,

Registered Professional Reporter, a Notary Public

in and for the Commonwealth of Massachusetts, do

hereby certify:

That SARAH K. MAYO, the witness whose

deposition is hereinbefore set forth, was duly

sworn by me and that such deposition is a true

record of the testimony given by said witness.

I further certify that I am not related to

any of the parties to this action by blood or

marriage and that I am in no way interested in the

outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my

hand this 3rd day of June, 2025.


                         /s/ Janet L. Wynne
                         _____
                         Janet L. Wynne, Notary Public
                         My Commission expires:
                         January 31, 2031

***THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
DOES NOT APPLY TO ANY REPRODUCTION AND/OR
DISTRIBUTION OF THE SAME BY ANY MEANS UNLESS UNDER
THE DIRECT CONTROL AND/OR SUPERVISION OF THE
CERTIFYING COURT REPORTER***

E-FILED; Baltimore City Circuit Court
Docket: 6/9/2025 12:24 PM; Submission: 6/9/2025 12:24 PM
Envelope: 21551344

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN, *et al.*,** | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| **v.** | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

### <u>AFFIDAVIT OF DOUGLAS F. GANSLER</u>

1.      I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2.      I am a partner at Cadwalader, Wickersham & Taft LLP and I represent Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") in the above-captioned action.

3.      I am licensed to practice law in the state of Maryland.

4.      To the best of my knowledge based on reasonable inquiry, at the time the above-captioned action was initiated by Plaintiffs, I was not in possession of the Whitewater Trust Agreement.

5.      On or about February 20, 2025, I received a copy of the Whitewater Trust Agreement from the law firm Zuckerman Spaeder LLP.

I solemnly affirm on this 9th day of June, 2025, under penalty of perjury that the contents of this

document are true to the best of my knowledge, information, and belief.

Douglas F. Gansler

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| **v.** | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

## <u>AFFIDAVIT OF ERIK D. BOLOG</u>

1.      I am over the age of 18 and competent to testify from personal knowledge as to the matters set forth herein.

2.      I was an attorney with the law firm Whiteford, Taylor & Preston, LLP.

3.      I am a signatory, as trustee, to the Whitewater Trust Agreement, dated September 30, 2021 (the "Whitewater Trust Agreement").

4.      I served as trustee of the Whitewater Trust from approximately September 30, 2021, through November 3, 2022.

5.      Following the end of my relationship with Whiteford, Taylor & Preston, LLP on approximately May 1, 2023, I was not in possession of a copy of the Whitewater Trust Agreement.

6.      To the best of my knowledge based on reasonable inquiry, at the time the above-captioned action was initiated by Plaintiffs, I was not in possession of the Whitewater Trust Agreement.

7.      I understand that my attorneys received a copy of the Whitewater Trust Agreement on approximately February 20, 2025.

I solemnly affirm on this 8th day of June, 2025, under penalty of perjury that the contents

of this document are true to the best of my knowledge, information, and belief.


Erik D. Bolog

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

|  |  |  |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## BOLOG DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS (HEARING REQUESTED)

Erik D. Bolog ("Mr. Bolog"), Erik D. Bolog as trustee of the JAREB Irrevocable Trust dated October 11, 2021 ("Trustee"), Science Park Associates, LLC, and Darnestown Road, Inc. (collectively, the "Bolog Defendants") hereby oppose Plaintiff Claudia Engelhorn's Motion for Sanctions (The "Motion for Sanctions")[1] and argue as follows:

1.      Plaintiff—who has herself produced only a relative handful of documents in this case to date, and a fraction of the thousands produced by Defendants—seeks potentially case-terminating sanctions against the Bolog Defendants despite their good faith compliance with the Court's orders and the applicable rules. The Motion for Sanctions should be denied.

2.      Here is the state of play: At the time Plaintiff filed the Motion for Sanctions, *Plaintiff* had not yet produced *any* documents in this case. For their part, the Bolog Defendants expect to have very few, if any, relevant documents in their possession because, as Plaintiff well

---

[1] The Motion for Sanctions was filed at 4:57 pm on the Friday before Memorial Day weekend without attempting to meet and confer on the Bolog Defendants' discovery responses served on April 24, 2025, or compliance with the Court's Order prior to filing.

knows, Mr. Bolog used his email address at Whiteford, Taylor and Preston, LLP ("WTP") during the relevant time period, but he no longer has access to that account following his separation from the firm. As a result, and as is common for former employees, his documents and communication must be produced by WTP, which maintains those files. To date, WTP has produced over 6,400 documents of which *at least 3,400 contain Mr. Bolog's WTP email address*. Meanwhile, Plaintiff has produced only about 116 documents—less than 2% of the volume produced by Defendants collectively—all of which were belatedly produced *after* Plaintiff filed her Motion for Sanctions.

3.    Indeed, Plaintiff's Motion for Sanctions is particularly improper given that Plaintiff previously approached Defendants to ask for—and receive—more time for discovery (90 additional days), largely due to what Plaintiff's counsel described as the "the *extreme volume* of WTP's discovery materials," much of which consist of Mr. Bolog's documents and communications from the relevant time period. Ex. A (emphasis added).

4.    And Plaintiff has not shown, or even tried to show, any prejudice purportedly suffered from the Bolog Defendants' discovery responses.

5.    The Bolog Defendants have acted in good faith in seeking to comply with this Honorable Court's April 8, 2025, Order Compelling Discovery (the "Order").[2]

6.    In its Order, the Court ordered that:

> Defendants Darnestown Road, Inc. and Science Park Associates, Inc. produce full and complete responses to Plaintiff's Interrogatories in compliance with Maryland Rule 2-421(b) within fifteen (15) days of the docketing of this order, [and]

> Defendants Erik D. Bolog, Individually and as Trustee for the JAREB Irrevocable Trust, Darnestown Road Inc., and Science Park Associates Inc. produce full and complete responses to Plaintiff's Requests for Production of

---

[2] The Order was docketed on April 9, 2025.

Documents within fifteen (15) days of the docketing of this
order.

(Order at 1.)

7.      Following the Court's Order, the Bolog Defendants filed their Petition for

an Order Compelling Arbitration and Staying Proceedings (the "Petition for Arbitration") on April

18, 2025,[3] which sought to compel arbitration of the following claims—including *all* claims

against Darnestown Road and Science Park—concerning transactions made by the Whitewater

Revocable Trust, dated September 30, 2021 (the "Whitewater Trust"):

- Counts X and XI (constructive trust over Darnestown Road, and Swain
  Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust
  enrichment related to Science Park).[4]

8.      Following submission of the Petition for Arbitration, this action was

automatically stayed as to the Whitewater Investment Claims. *See* Md. Code Ann., Cts. & Jud.

Proc. § 3-209(a) ("A court shall stay any action or proceeding involving an issue subject to

arbitration if: (1) *A petition for order to arbitrate has been filed*; or (2) An order for arbitration has

been made.") (emphasis added); *see also Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*,

388 Md. 675, 685 (2005) (The courts must then "stay any action or proceeding involving an issue

subject to arbitration," *where a petition to arbitrate has been filed* or an order to arbitrate has been

made.") (emphasis added).

9.      On April 24, 2025, in accordance with the Court's Order, the Bolog

Defendants submitted full and complete responses and objections to all document requests and

---

[3] The Bolog Defendants did not file a Petition for Arbitration earlier because they only received a copy of
the Whitewater Trust Agreement on or around February 20, 2025.

[4] Collectively, these are the "Whitewater Investment Claims."

interrogatories served by Plaintiff (the "Responses and Objections"), except for those document

requests and interrogatories concerning the stayed Whitewater Investment Claims.

10.  To any of Plaintiff's interrogatories concerning the Whitewater Investment

Claims, the Bolog Defendants responded with the following objection:

> In addition to the General Objections set forth above, the
> Defendant specifically objects to this Interrogatory on the
> grounds set forth in General Objection No. 1 that this
> Interrogatory seeks information related to claims subject to
> mandatory arbitration under the Whitewater Trust
> Agreement, which have now been stayed pending resolution
> of the Petition and any subsequent arbitration. (*See e.g.*, Ex.
> B at 7.)

11.  To any of Plaintiff's document requests concerning the Whitewater

Investment Claims, the Bolog Defendants responded with the following objection:

> In addition to the General Objections set forth above, the
> Defendant specifically objects to this Request on the grounds
> set forth in General Objection No. 1 that this Request seeks
> documents related to claims subject to mandatory arbitration
> under the Whitewater Trust Agreement, which have now
> been stayed pending resolution of the Petition and any
> subsequent arbitration. (*See, e.g.*, Ex. C at 8.)

12.  The Bolog Defendants also informed Plaintiff that they would supplement

their Responses and Objections "following the resolution of Defendant's Petition and any

subsequent arbitration of the claims asserted by Plaintiff." (*See, e.g.*, Ex. B and C, General

Objection No. 1.)

13.  On April 30, 2025, following submission of the Petition for Arbitration,

counsel for Plaintiff emailed counsel for the Bolog Defendants inquiring about an extension of the

operative schedule in this action, due, in part, to "the ongoing dispute between your camp and our

camp regarding the arbitrability of Whitewater's claims," "and the extreme volume of WTP's

discovery materials." Ex. A. The Bolog Defendants agreed to an extension of the discovery and

4

trial schedule by approximately 90 days. Thus, the revised trial and discovery schedule extended the earliest discovery deadline, for Plaintiffs to disclose expert witnesses, by approximately three months to August 11, 2025.

14.     On May 14, 2025, the Court issued an order amending the discovery and trial schedule.

15.     Under the revised schedule, discovery is not scheduled to close until January 7, 2026 and trial is not scheduled to begin until June 15, 2026.

16.     On June 4, 2025, this Honorable Court issued an order denying the Petition for Arbitration.

17.     On June 9, 2025, the Bolog Defendants filed a motion seeking the Court's reconsideration of its denial of the Petition for Arbitration (the "Motion for Reconsideration"). By virtue of the court's reconsideration of the Petition for Arbitration, the Bolog Defendants submit that the stay as to the Whitewater Investment Claims should remain in effect.

18.     Nonetheless, the Bolog Defendants recognize that the Petition for Arbitration served as one of the bases for the Bolog Defendants' objections to Plaintiff's document requests and interrogatories concerning the Whitewater Investment Claims. Accordingly, the Bolog Defendants sought to amicably resolve the Motion for Sanctions with Plaintiff by agreeing to produce amended responses and objections to Plaintiff by Friday June 13, 2025, notwithstanding the still-pending Motion for Reconsideration. Unfortunately, Plaintiff declined this proposal.

19.     In any event, Plaintiff's requested relief is inappropriate here. Plaintiff has articulated no argument in support of its Motion for Sanctions nor has it provided any case law demonstrating that its requested relief is appropriate to the circumstances, which are as follows: The Bolog Defendants have complied with the Court's Order by submitting full and complete responses and objections to all of Plaintiff's document requests and interrogatories, except for

those concerning the stayed Whitewater Investment Claims. And, as soon as the Court denied the

petition for arbitration, the Bolog Defendants indicated to Plaintiff that they would serve amended

responses in approximately one week. Meanwhile, Plaintiff has produced a tiny fraction of the

relevant discovery in this case, and Plaintiff's motion does not so much as address the admittedly

substantial volume of Mr. Bolog's documents and communications that she has received from

WTP, his prior firm.

20.     Instead, Plaintiff summarily requests that the Court enter an extreme order

striking Science Park and Darnestown Road's Counterclaims, deeming Plaintiff's allegations

regarding Science Park and Darnestown Road in the Second Amended Complaint as established,

prohibiting Mr. Bolog and the Trustee from supporting any defense to Plaintiff's claims,

prohibiting Mr. Bolog from supporting any of his Counterclaims, and prohibiting Mr. Bolog and

Trustee from relying on documents or submitting documents into evidence documents that would

be responsive to Plaintiff's document requests. (Motion for Sanctions at 4-5.)

21.     This requested relief is "among the gravest of sanctions, and as such, is

warranted only in cases of egregious misconduct." *Butler v. S & S P'ship*, 435 Md. 635, 653

(2013). Nothing of the sort has occurred here.

22.     Plaintiff's argument that Science Park and Darnestown Road have not

submitted executed and sworn responses to interrogatories is misplaced. The Maryland Rules only

require that a "*response . . .* be signed by the party making it." Md. Rules 2-421(b) (emphasis

added). Because Science Park and Darnestown Road *objected* to the document requests and

interrogatories served on them on grounds they were stayed pending resolution of the Petition for

Arbitration, they have not served any "responses." (*See e.g.*, Ex. B.) When Science Park and

Darnestown Road submit responses to Plaintiff's interrogatories, they will, of course, produce

executed and sworn copies in accordance with Md. Rules 2-421.[5]

23.    Regardless, before a court will issue sanctions for not submitting executed

and sworn interrogatories (or produce documents), it will issue a further warning to the party before

it will order that the party is "precluded from introducing evidence regarding matters which were

specifically requested in [the] discovery request and not provided." *See Tucker v. Lee*, 2020 WL

556214, at *1 (Md. Ct. Spec. App. Feb. 4, 2020).

24.    Plaintiff also contends that the Bolog Defendants have not yet produced

documents in this action. But Mr. Bolog and the Trustee served objections to Plaintiff's document

requests, including on the grounds that they were not clear and readily understandable. And in the

29 days from service of the Responses and Objections on April 24, 2025, to filing of the Motion

for Sanctions on May 23, 2025, Plaintiff did not seek to meet and confer on any of the objections

submitted by the Bolog Defendants to Plaintiff's document requests, did not seek to clarify any of

the documents requests, and did not propose any search terms to the Bolog Defendants.

25.    Plaintiff's requested relief would not only unfairly hamstring the Bolog

Defendants from defending this action or prosecute their Counterclaims, it would potentially seal

the case in favor of Plaintiff. The "draconian sanctions, of dismissing a claim or precluding the

evidence necessary to support a claim, are normally reserved for persistent and deliberate

violations that actually cause some prejudice, either to a party or to the court." *Watson v.

Timberlake*, 253 A.3d 1094, 1104 (Md. Ct. Spec. App. 2021) (internal quotations omitted). Where,

as here, "there is no 'egregious violation' or 'opprobrious behavior'" and "no real prejudice to the

---

[5] Mr. Bolog and the Trustee have already produced executed and sworn responses to Plaintiff's interrogatories.

[Plaintiff] or the court," a court will not issue "the 'draconian sanction' of 'precluding the evidence necessary to support [Petitioner's] claim.'" *Butler*, 435 Md. at 653 (internal citations omitted).

26.     Such enormous relief cannot be appropriate in these circumstances, where the Bolog Defendants have already complied with the Court's Order by submitting responses and objections to Plaintiff's document requests and interrogatories except for those concerning the stayed Whitewater Investment Claims. That is particularly so given that Plaintiff has already received *thousands* of Mr. Bolog's documents from WTP, the custodian of most, if not all, of Mr. Bolog's relevant records related to this matter. Plaintiff has suffered no prejudice, nor will she. Indeed, the elongated discovery schedule that Plaintiff herself requested ensures there will be adequate time to work out any discovery issues once the Bolog Defendants submit updated responses and objections to outstanding discovery requests concerning the Whitewater Investment Claims and the parties complete the required meet-and-confer process.

27.     Accordingly, the Court should deny the Motion for Sanctions in full and instead grant the Bolog Defendants until Friday, June 13, 2025, to submit responses and objections to any outstanding discovery requests concerning the Whitewater Investment Claims. The Court should thereafter direct the parties to engage in meet-and-confers to address any remaining discovery disputes.

Dated:    June 9, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this June 9th, 2025, a copy of the foregoing was served

electronically via MDEC upon counsel of record, and remaining parties served via first class

mail.

### <u>Counsel of Record Served via MDEC:</u>
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

### <u>Parties Served Via First Class Mail:</u>
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 6/9/2025 3:21 PM; Submission: 6/9/2025 3:21 PM
Envelope: 21556563

# EXHIBIT A

## Schrieber, Zack

| | |
|---|---|
| **From:** | Patrick Gardiner <patrick@hendersonlawllc.com> |
| **Sent:** | Wednesday, April 30, 2025 8:19 AM |
| **To:** | Schrieber, Zack; Gansler, Douglas; Howard, J.B. |
| **Cc:** | Karlan, Matthew; Wes Henderson |
| **Subject:** | Engelhorn, et al., v. Bolog, et al. - Scheduling Order |

[ WARNING: External Email ]

Doug, Zach, and J.B.,

I previously contacted WTP's counsel and discussed whether they would be willing to consent to a modification of the scheduling order by 90 days. They agreed.

Would the Bolog Defendants consent to a 90 modification of the scheduling order? The basis for the continuance would be, the extreme volume of WTP's discovery materials, the ongoing dispute between your camp and our camp regarding the arbitrability of Whitewater's claims, the discovery disputes between us, and the fact that we will not be deposing the Notary until June.

Please let me know if you consent to the 90-day extension. If so, I will draft a motion for all defendants' review and comment.

Best regards,
-Patrick



### Patrick D. Gardiner, Esquire

Henderson Law, LLC

2127 Espey Court, Suite 204
Crofton, MD 21114
Phone: (410) 721-1979
Fax: (410) 721-2258
Email: patrick@hendersonlawllc.com
Web: www.HendersonLawLLC.com



**CONFIDENTIALITY NOTICE AND DISCLAIMER**
This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify me immediately that you have received this message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.

**TAX INFORMATION**

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

E-FILED; Baltimore City Circuit Court
Docket: 6/9/2025 3:21 PM; Submission: 6/9/2025 3:21 PM
Envelope: 21556563

# EXHIBIT B

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.**, | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

Case No.: C-24-CV-24-002631

<u>**DEFENDANT DARNESTOWN ROAD, INC.'S SECOND SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES**</u>

In accordance with Rule 2-421 of the Maryland Rules, Defendant Darnestown Road, Inc

("<u>Darnestown Road</u>" or "<u>Defendant</u>"), by and through his undersigned counsel, hereby responds

and objects to Plaintiff Claudia Engelhorn's ("<u>Plaintiff</u>" or "<u>Ms. Engelhorn</u>") First Set of

Interrogatories to Defendant Darnestown Road, Inc., (collectively, the "<u>Interrogatories</u>" and each

individual interrogatory, an "<u>Interrogatory</u>") including the "Interrogatories," "Definitions," and

"Instructions" contained therein, as follows:[1]

**GENERAL OBJECTIONS**

The following general objections (the "<u>General Objections</u>") are incorporated into each

---

[1] Following the Court's decision on the Petition to Compel Arbitration and related Motion to Stay
Proceedings, and the filing of Defendant's Petition, these Responses and Objections supplement
Defendant's Responses and Objections served on or around December 17, 2024, and April 1, 2025,
respectively. (*See* General Objection No. 1 to R&Os.)

specific Response and Objection below (the "Specific Responses and Objections") as if they were fully repeated therein. Although certain General Objections are reiterated in Specific Responses and Objections for clarity or emphasis, any failure to reiterate a General Objection in response to any specific Interrogatory does not constitute a waiver of such objection as to such Interrogatory.

1.      The Defendant objects to the Interrogatories on the grounds that all claims brought against it are subject to mandatory arbitration as required under Section 9 of the Whitewater Revocable Trust Agreement dated September 11, 2021 (the "Whitewater Trust Agreement"). Defendant's counsel submitted a letter to counsel for Plaintiff on or around March 27, 2025, requesting that all claims against Defendant be voluntarily dismissed and moved to arbitration consistent with Section 9 of the Whitewater Trust. Plaintiff refused to take such requested action. Subsequently, on April 18, 2025, Defendant filed a Petition for an Order Compelling Arbitration and Staying Proceedings (the "Petition"), which under the plain language of Maryland's Uniform Arbitration Act, requires that this action be stayed by the filing of the Petition. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) ("A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made."); *see also Questar Homes of Avalon, LLC* v. *Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). At this time it would be speculative to assume that this action will proceed against the Defendant in this Court. If appropriate and necessary, the Defendant will supplement this Response following the resolution of Defendant's Petition and any subsequent arbitration of the claims asserted by Plaintiff.

2.      The Defendant has not completed its investigation into the facts pertaining to Plaintiff's Complaint (the "Complaint"), has not completed discovery, and has not completed preparation for trial.  Answers contained herein are based only on such information and documents

as are presently available and known to the Defendant. Anticipated further investigation, discovery, legal research, and analysis may supply additional facts and establish information that may vary from that set forth herein. The answers set forth herein are given without prejudice to the Defendant's right to introduce evidence of any subsequently discovered facts or circumstances. The Defendant expressly reserves his right to change or modify any answer as additional facts or circumstances are ascertained, analyses are made, and legal research is conducted.

3.      The Defendant objects to providing responses to the Interrogatories unless and until the Court enters a protective order governing the exchange of confidential discovery material.

4.      The Defendant objects to the Interrogatories to the extent they seek the Defendant to identify "all" or "any" persons or things as overbroad, unduly burdensome, and not proportional to the needs of the case. The Defendant will construe such Interrogatories to seek information known to the Defendant and in accordance with the Maryland Rules of Civil Procedure for the Circuit Court and any applicable Rules or Order of this Court (collectively, the "Rules")

5.      The Defendant objects to the Interrogatories to the extent that they seek to impose requirements or obligations in addition to, or different from, those imposed by the Maryland Rules of Civil Procedure for the Circuit Court and any applicable Rules or Orders of this Court (collectively, the "Rules"). In responding to each Interrogatory, the Defendant will construe and respond by providing only such information as may be required and proper under the Rules.

6.      The Defendant objects to the Interrogatories to the extent that they seek information that is protected from discovery by the attorney-client privilege, the work-product doctrine, settlement and/or mediation privilege, or any other applicable privilege or doctrine. Nothing contained in these responses is intended to be, or in any way shall be deemed to be, a waiver of any such available privilege or doctrine. In responding to each Interrogatory, the Defendant will

not provide privileged or otherwise protected information. To the extent that any privileged or protected information is produced or otherwise disclosed, the production or disclosure will have been inadvertent and should not be deemed a waiver of any privilege or protection from production.

7.      The Defendant objects to the Interrogatories to the extent they seek information that (i) is already within the possession, custody, or control of Plaintiff, (ii) is available from a public source, or (iii) can be obtained through other means that are more convenient, less burdensome, or less expensive.

8.      The Defendant objects to the Interrogatories to the extent they seek information that is confidential, proprietary in nature, or personal in nature.

9.      The Defendant objects to the Interrogatories to the extent that they are compound and exceed the maximum number of interrogatories permitted by Maryland Rule 2-421.

10.      The Defendant objects to the Interrogatories to the extent that the Interrogatories seek information beyond his knowledge.

11.      The Defendant objects to the Interrogatories to the extent they contain any factual assertion or allegations, or purport to describe or characterize any factual assertion or allegation. Any response provided to an Interrogatory and any failure to specifically object to any factual assertion, allegation, description, or characterization, is not an adoption or admission or such factual assertion, allegation, description, or characterization.

12.      The Defendant objects to the Interrogatories to the extent that the Interrogatories purport to require the Defendant to set forth conclusions of law with respect to any issue in this proceeding and/or apply the law to any fact presently known.

13.     The Defendant objects to the Interrogatories to the extent they seek information that can be derived or ascertained from documents in the Defendant's document productions—should any relevant documents be discovered and produced by the Defendant—or the document productions of another party in this case, and the burden of deriving or obtaining the answer is substantially the same for Plaintiff and the Defendant.

14.     The Defendant objects to the Interrogatories to the extent they seek documents and/or information that constitutes post-judgment discovery in accordance with Rule 2-633 and is therefore, and otherwise, not reasonably calculated to lead to the discovery of admissible evidence, and is a procedurally improper, premature attempt to conduct post-judgment discovery in the absence of any judgment in this proceeding.. *See* Md. Rules 2-633. Under the Rules, "a valid judgment is a precondition to a party's right to take *any* discovery in aid of enforcement under Rule 2-633." *Johnson v. Francis*, 239 Md. App. 530, 537(2018) ("this rule authorizes discovery in aid only of an actual, existing money judgment, not a hypothetical or potential money judgment") *see also Farkas v. Rich Coast Corp.*, 2017 U.S. Dist. LEXIS 212246, *6 (M.D. Pa. Dec. 28, 2017) ("[V]iewed as a request for discovery in aid of executing upon a judgment, the request is both premature and presumptuous. Farkas does not have a judgment against these defendants, and time will tell whether she can obtain one. If she does secure a judgment, then—but only then—would post—judgment discovery into the financial ability of the defendants to pay any judgment be appropriate."); *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) ("At bottom, plaintiff's discovery requests … seek information about defendant's assets and ability to satisfy a potential judgment in the context of a breach of contract and breach of warranty action. This discovery does not seek information and materials that are relevant to any of the claims or defenses at issue in the litigation, nor is it reasonably calculated to lead to the discovery of

admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) . . .  Plaintiff's interrogatories and document requests amount to premature, post-judgment discovery of a judgment debtor, which should be sought consistent with Federal Rule of Civil Procedure 69(a)(2)."); *3600 Mich. Co. v. Infra-Metals Co.*, 2009 U.S. Dist. LEXIS 88181, **7-8 (N.D. Ind. Sep. 24, 2009) ("To the extent that 3600 Michigan requests the information in order to determine whether Infra-Metals is judgment-proof, Rule 26(b)(2) requires disclosure of a defendant's liability insurance coverage, but a defendant's financial condition generally is not a permissible ground for inquiry during the discovery phase. *See generally* 23 Am. Jur. 2d Depositions and Discovery § 38 (May 2009) (discussing that the general practice is 'not [to] permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant . . .'). The Advisory Committee Note to Rule 26(b)(2) states that the required disclosure of insurance information was not intended to extend discovery to 'a defendant's financial status or ability to satisfy a judgment.' *Oppenheimer Fund, Inc.*, 437 U.S. at 351 n.16, 98 S.Ct. at 2389 (referring to the comments made in the Advisory Committee's Notes on 1970 Amendment to Fed. R. Civ. P. 26, 28 U.S.C. App. p. 7777 and observations recorded in 4 J. Moore, Federal Practice P 26.62[1] (2d ed. 1976)). Thus, the court cannot compel Infra-Metals to disclose information for the purpose of ascertaining whether it is judgment-proof. Instead, 3600 Michigan may pursue such information through a post-judgment special proceeding under Federal Rule of Civil Procedure 69(a) if necessary.").The Defendant will not answer any Interrogatory seeking post-judgment discovery.

15.    The Defendant objects to the Interrogatories to the extent they seek documents and/or information in connection with expert discovery. Such Interrogatories are premature and will be addressed in connection with a scheduling order of this Court establishing expert discovery.

16.     The Defendant reserves the right to supplement these Responses and Objections following any meet and confers that clarify the types of documents sought after by these incomprehensible Interrogatories.

17.     The Defendant reserves the right to seek recovery for the cost and expenses associated with deciphering these incomprehensible Interrogatories.

### SPECIFIC RESPONSES AND OBJECTIONS TO THE
### INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person. (Standard General Interrogatory No. 1.)

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 2:**

Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and, with respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial, summarize the qualifications of the expert, state the terms of the expert's compensation, and attach to your answers any available list of publications written by the expert and any written report made by the expert concerning the expert's findings and opinions. (Standard General Interrogatory No. 2.)

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 3:**

If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them. (Standard General Interrogatory No. 3.)

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 4:**

If any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action. (Standard General Interrogatory No. 5.)

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust

8

Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 5:**

Identify the individual answering these Interrogatories on your behalf.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 6:**

Identify all persons who have given you "statements," as that term is defined in Rule 2-402 (f), concerning the action or its subject matter. For each statement, state the date on which it was given and identify the custodian.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 7:**

State the substance of all discussions concerning the occurrence that you or others in your presence had with any party to this case. State when and where each discussion took place and identify all persons who were present.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 8:**

Identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the personal knowledge possessed by each such person.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 9:**

If you contend that you are improperly identified, state your correct identification.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 10:**

Please describe in detail any and all monetary gifts, payments, or transfers of funds you received from any of the Plaintiffs. Include the amount, date(s), and method of each transaction.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 11:**

Explain the purpose of the monetary gift, payment, or transfer of funds from any of the Plaintiffs to you. Was this gift intended for a specific use or investment?

**RESPONSE TO INTERROGATORY NO. 11:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 12:**

What, if anything, did any of the Plaintiffs receive in value for having $350,000 transferred to you?

**RESPONSE TO INTERROGATORY NO. 12:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent

arbitration.

**INTERROGATORY NO. 13:**

Please explain in detail why you required $350,000 from the Plaintiff.

**RESPONSE TO INTERROGATORY NO. 13:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 14:**

Provide a list of all documents, including financial records and bank statements, that evidence the receipt of the monetary gift from any of the Plaintiffs and the subsequent investment of these funds in the business.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 15:**

Please describe your relationship with any other Defendant to this action.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust

Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 16:**

Do you contend that any person who is not a party to this action caused or contributed to the Plaintiffs' alleged injuries and damages? If so, identify each such person, state how you contend each such person caused or contributed to the alleged injuries, and state all facts upon which you based your contention.

**RESPONSE TO INTERROGATORY NO. 16:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 17:**

If you contend that the Plaintiffs have failed to mitigate their damages, please identify all facts, proof, or evidence on which you base this contention.

**RESPONSE TO INTERROGATORY NO. 17:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 18:**

Do you dispute any of the factual allegation in the Plaintiff's complaint? If so explain.

**RESPONSE TO INTERROGATORY NO. 18:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 19:**

Identify the person or persons answering these Interrogatories or who contributed information used in answering these Interrogatories. If more than one person provided the answers or information, please identify the specific Interrogatories answered by each person.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**INTERROGATORY NO. 20:**

If you contend that Plaintiffs and/or any of their representatives have made any admission against interest, state the substance of the admission, identify the communication concerning the admission, identify all documents that refer or relate to the admission, and identify all persons who have personal knowledge of the admission.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Interrogatory on the grounds set forth in General Objection No. 1 that this Interrogatory seeks information related to claims subject to mandatory arbitration under the Whitewater Trust

14

Agreement, which have now been stayed pending resolution of the Petition and any subsequent

arbitration.

Dated:  April 24, 2025

As to objections:

Respectfully submitted,

CADWALADER, WICKERSHAM & T AFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Darnestown Road, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2025, a copy of the foregoing was served electronically via Electronic Mail upon counsel of record, and remaining parties served via first class mail.

**<u>Counsel of Record Served via Electronic Mail:</u>**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**<u>Parties Served Via First Class Mail:</u>**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

*[signature]*

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Darnestown Road, Inc.*

E-FILED; Baltimore City Circuit Court
Docket: 6/9/2025 3:21 PM; Submission: 6/9/2025 3:21 PM
Envelope: 21556563

# EXHIBIT C

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON,** | ) | |
| **LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**DEFENDANT DARNESTOWN ROAD, INC.'S SECOND SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF DOCUMENT
REQUESTS**

In accordance with Rule 2-422 of the Maryland Rules, Defendant Darnestown Road, Inc.

(the "Defendant" or "Darnestown Road"), by and through his undersigned counsel, hereby

responds and objects to Plaintiff Claudia Engelhorn's ("Plaintiff" or "Ms. Engelhorn") First Set of

Document Requests to Defendant Darnestown Road, Inc., (collectively, the "Requests" and each

individual request, an "Request") including the "Requests," "Definitions," and "Instructions"

contained therein, as follows:[1]

**RESERVATION OF RIGHTS**

The Defendant's responses and objections (the "Responses and Objections") to the

---

[1] Following the Court's decision on the Petition to Compel Arbitration and related Motion to Stay
Proceedings, and the filing of Defendant's Petition, these Responses and Objections supplement
Defendant's Responses and Objections served on or around December 17, 2024, and April 1, 2025,
respectively. (*See* General Objection No. 1 to R&Os.)

Requests are made without prejudice to the Defendant's right to amend or supplement the Responses and Objections at a later date. Further, the Defendant expressly reserves his right to assert additional responses and objections and none of the Responses and Objections below should be interpreted to waive any such right.

## **GENERAL OBJECTIONS**

The following general objections (the "Underline General Objections") are incorporated into each specific Response and Objection below (the "Specific Responses and Objections") as if they were fully repeated therein. Although certain General Objections are reiterated in Specific Responses and Objections for clarity or emphasis, any failure to reiterate a General Objection in response to any specific Request does not constitute a waiver of such objection as to such Request.

1.     The Defendant objects to the Requests on the grounds that all claims brought against it are subject to mandatory arbitration as required under Section 9 of the Whitewater Revocable Trust Agreement dated September 11, 2021 (the "Whitewater Trust Agreement"). Defendant's counsel submitted a letter to counsel for Plaintiff on or around March 27, 2025, requesting that all claims against Defendant be voluntarily dismissed and moved to arbitration consistent with Section 9 of the Whitewater Trust. Plaintiff refused to take such requested action. Subsequently, on April 18, 2025, Defendant filed a Petition for an Order Compelling Arbitration and Staying Proceedings (the "Petition"), which under the plain language of Maryland's Uniform Arbitration Act, requires that this action be stayed by the filing of the Petition. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) ("A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made."); *see also Questar Homes of Avalon, LLC* v. *Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). At this time it would be speculative to assume that this action will proceed

2

against the Defendant in this Court. If appropriate and necessary, the Defendant will supplement this Response following the resolution of Defendant's Petition and any subsequent arbitration of the claims asserted by Plaintiff.

2.      The Defendant objects to the Requests on the grounds that no discovery and ESI protocol and protective order governing the use and retention of produced documents or data has been negotiated between Plaintiff and the Defendant and ordered by the Court.  The Defendant will not produce any documents or data to any party until such appropriate and agreed-to discovery and ESI protocol and protective order are ordered by the Court.

3.      The Defendant objects to the Requests as overbroad, unduly burdensome, and not proportional to the needs of the case.

4.      The Defendant objects to the Requests to the extent that they purport to impose obligations on the Defendant greater than those required, outside the scope of, or inconsistent with the Maryland Rules and the rules of this Court (the "Rules").  The Defendant will construe and respond to the Requests, and, if appropriate, search for and produce responsive documents, in accordance with the requirements of the Rules.

5.      The Defendant objects to the Requests to the extent that they call for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, the joint defense privilege, or which are otherwise privileged or confidential and protected from discovery pursuant to any other applicable privilege, immunity or protection (collectively, "Privileged Information").  Any inadvertent production of any Privileged Information shall not be deemed or construed to constitute a waiver of the attorney-client privilege, work product doctrine, the common interest privilege, the joint defense privilege, and/or any other applicable privilege, immunity or protection. The Defendant expressly reserves the right to demand the return of any inadvertently produced privileged information or document.

3

6.      The Defendant objects to the Interrogatories to the extent they seek information that is confidential, proprietary in nature, or personal in nature.

7.      The Defendant objects to the Requests to the extent they seek the production of documents that (i) are already within the possession, custody or control of Plaintiff, (ii) are available from a public source, or (iii) can be obtained through other means that are more convenient, less burdensome, or less expensive.

8.      The Defendant will conduct a reasonable search for documents responsive to the Requests but will not search for "all," "any," or "each" document(s), as that would be unduly burdensome, inconsistent with the Rules, and not proportional to the needs of this case.

9.      The Defendant objects to the Requests to the extent that they call for the production of documents that are not material and/or necessary to any issue or claim relating to the above-captioned proceeding.  Any production by the Defendant of any document shall not be deemed an admission by the Defendant that any such document is material and/or necessary to any issue or claim relating to the above-captioned proceeding.

10.     The Defendant objects to the Requests to the extent they contain any factual assertion or allegation, or purport to describe or characterize any factual assertion or allegations. Any agreement to produce documents, and any failure to specifically object to any such factual assertion, allegation, description or characterization, is not an adoption or admission of such factual assertion, allegation, description, or characterization.

11.     The Defendant objects to the Requests to the extent that they call for the production of irrelevant or non-responsive material merely because some portion of a particular document or documents may be relevant and responsive and subject to production.  The Defendant reserves the right to redact irrelevant and non-responsive material.

12.    The Defendant objects to the Requests to the extent that they call for the production of documents within the possession, custody or control of other sources or parties, or that they call for the production of documents that are equally within other parties' possession, custody, or control.

13.    The Defendant objects to the Requests to the extent that they call for the production of multiple copies of the same document.

14.    The Defendant objects to paragraph 4 of the Instructions requiring the production of a privilege or redaction log on the grounds that it is unduly burdensome.

15.    The Defendant objects to paragraph 5 of the Instructions concerning redactions on the grounds that such requirements are unduly burdensome.

16.    The Defendant objects to the Requests to the extent that they are predicated upon erroneous assumptions, state incorrect facts, or state legal conclusions.  By responding to the Requests, the Defendant does not agree to any assumptions, factual predicates, or legal conclusions contained in the Requests.

17.    The Defendant objects to the Requests on the grounds that they contain no relevant time period.

18.    The Defendant objects to the Requests to the extent that they are ambiguous, unintelligible, or indefinite.

19.    The Defendant objects to the Requests to the extent they seek documents and/or information that constitutes post-judgment discovery in accordance with Rule 2-633 and is therefore, and otherwise, not reasonably calculated to lead to the discovery of admissible evidence, and is a procedurally improper, premature attempt to conduct post-judgment discovery in the absence of any judgment in this proceeding.. *See* Md. Rules 2-633. Under the Rules, "a valid judgment is a precondition to a party's right to take *any* discovery in aid of enforcement under Rule

2-633." *Johnson v. Francis*, 239 Md. App. 530, 537(2018) ("this rule authorizes discovery in aid

only of an actual, existing money judgment, not a hypothetical or potential money judgment") *see*

*also Farkas v. Rich Coast Corp.*, 2017 U.S. Dist. LEXIS 212246, *6 (M.D. Pa. Dec. 28, 2017)

("[V]iewed as a request for discovery in aid of executing upon a judgment, the request is both

premature and presumptuous. Farkas does not have a judgment against these defendants, and time

will tell whether she can obtain one. If she does secure a judgment, then—but only then—would

post—judgment discovery into the financial ability of the defendants to pay any judgment be

appropriate."); *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) ("At

bottom, plaintiff's discovery requests … seek information about defendant's assets and ability to

satisfy a potential judgment in the context of a breach of contract and breach of warranty action.

This discovery does not seek information and materials that are relevant to any of the claims or

defenses at issue in the litigation, nor is it reasonably calculated to lead to the discovery of

admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) . . .  Plaintiff's interrogatories and document

requests amount to premature, post-judgment discovery of a judgment debtor, which should be

sought consistent with Federal Rule of Civil Procedure 69(a)(2)."); *3600 Mich. Co. v. Infra-Metals

Co.*, 2009 U.S. Dist. LEXIS 88181, **7-8 (N.D. Ind. Sep. 24, 2009) ("To the extent that 3600

Michigan requests the information in order to determine whether Infra-Metals is judgment-

proof, Rule 26(b)(2) requires disclosure of a defendant's liability insurance coverage, but a

defendant's financial condition generally is not a permissible ground for inquiry during the

discovery phase. *See generally* 23 Am. Jur. 2d Depositions and Discovery § 38 (May 2009)

(discussing that the general practice is 'not [to] permit the discovery of facts concerning a

defendant's financial status or ability to satisfy a judgment, since such matters are not relevant . .

.'). The Advisory Committee Note to Rule 26(b)(2) states that the required disclosure of insurance

information was not intended to extend discovery to 'a defendant's financial status or ability to

satisfy a judgment.' *Oppenheimer Fund, Inc.*, 437 U.S. at 351 n.16, 98 S.Ct. at 2389 (referring to

the comments made in the Advisory Committee's Notes on 1970 Amendment to Fed. R. Civ. P.

26, 28 U.S.C. App. p. 7777 and observations recorded in 4 J. Moore, Federal Practice P 26.62[1]

(2d ed. 1976)). Thus, the court cannot compel Infra-Metals to disclose information for the purpose

of ascertaining whether it is judgment-proof. Instead, 3600 Michigan may pursue such information

through a post-judgment special proceeding under Federal Rule of Civil Procedure 69(a) if

necessary.").The Defendant will not search for or produce any documents in response to a Request

seeking post-judgment discovery.

20.     The Defendant objects to the Requests to the extent they seek documents and/or

information in connection with expert discovery. Such Requests are premature and will be

addressed in connection with a scheduling order of this Court establishing expert discovery.

21.     The Defendant objects to the definition of the term "occurrence/transaction" on the

grounds that it is vague, ambiguous, and overly broad.

22.     The Defendant objects to the definition of the term "You" on the grounds that it is

vague, ambiguous, and overly broad. The Defendant will construe the term "You" to mean the

Defendant.

23.     The Defendant reserves the right to supplement these Responses and Objections

following any meet and confers that clarify the types of documents sought after by these

incomprehensible Requests.

24.     The Defendant reserves the right to seek recovery for the cost and expenses

associated with deciphering these incomprehensible Requests.

25.     Any response indicating that the Defendant will search for or produce documents

means that after entry of a protective order, and subject to the Responses and Objections herein,

the Defendant will search for or produce responsive, nonprivileged documents within its

possession, custody or control to the extent such documents exist and are identified pursuant to a

good faith search conducted in accordance with reasonable search parameters. A response

indicating that the Defendant will produce or search for documents shall not be interpreted as an

affirmation that such documents exist; are within the Defendant's possession, custody or control;

are admissible; or are relevant to the case.

## SPECIFIC RESPONSES AND OBJECTIONS TO THE
## INDIVIDUAL REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents referred to in your Answers to Interrogatories.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 1**:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 2**:

All statements which were previously made by this party and any of her present or former directors,
officers, or employees, concerning the action or its subject matter.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 2**:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 3**:

All documents (including, but not limited to, correspondence, notes, memoranda, and journal
entries) which relate to, describe, summarize, or memorialize any communication between you

and Claudia Engelhorn, or anyone known or believed by you to have been acting under the authority of Claudia Engelhorn, concerning the occurrence

**RESPONSES AND OBJECTIONS TO REQUEST NO. 3:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 4:**

All documents (including, but not limited to, fee agreements, reports, and correspondence) provided to, received from, or prepared by each witness identified by you in connection with the disclosures required by Maryland Rule 2-504(b)(1)(B) or in connection with any witness identified in your Answers to Interrogatories.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 4:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 5:**

All contracts or agreements entered into between you and any of the Plaintiffs regarding an investment in your entity, including, but not limited to, an investment in the amount of $350,000.00.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 5:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 6:**

All documents concerning any release, settlement, or other agreement, formal or informal, pursuant to which the liability of any person or any entity for damage arising out of the occurrence which is the subject matter of this lawsuit has been limited, reduced, or released in any manner. This request includes all agreements by one party or person to indemnify another party or person for claims asserted in this litigation.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 6**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 7:**

All insurance policies under which a person carrying on an insurance business might be liable to pay to you or on your behalf all or part of the damages sought in this action.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 7**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 8:**

All documents received from or provided to any other party to this action or received from any third-party since the filing of the Complaint, whether provided informally or in response to a formal request.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 8**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 9:

All documents referred to in the Complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

## RESPONSES AND OBJECTIONS TO REQUEST NO. 9:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 10:

For each interrogatory set forth in Plaintiff Claudia Engelhorn's Interrogatories to you, produce all documents which you relied upon, consulted or used in any way in answering such interrogatories.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 10:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 11:

All documents that contain or otherwise relate to the facts or information that you contend refute, in any way, the allegations contained in the Complaint in this action.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 11:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

### REQUEST NO. 12:

Please produce the current resume of every expert witness you may call to testify at trial through live or deposition testimony.

### RESPONSES AND OBJECTIONS TO REQUEST NO. 12:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

### REQUEST NO. 13:

Please produce the current resume of every expert used for consultation who is not expected to testify at trial (through either live or deposition testimony) if the expert's work product forms a basis, either in whole or in part, of any opinions of an expert who you may have testify at trial through live or deposition testimony.

### RESPONSES AND OBJECTIONS TO REQUEST NO. 13:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

### REQUEST NO. 14:

Please produce all documents and tangible things, including all tangible reports, physical models, maps, compilations of data and other material sent to, reviewed by or prepared by every expert you may call to testify at trial or by live or deposition testimony that concerns any aspect of this lawsuit.

### RESPONSES AND OBJECTIONS TO REQUEST NO. 14:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 15:

Please produce material provided to, reviewed by, generated by, or prepared by every expert used
for consultation even if it was generated or prepared in anticipation of litigation or for trial if it
forms a basis either in whole or in part of the opinion of an expert who you may call to testify at
trial through live or deposition testimony. This request includes all invoices or bills generated by
said expert(s).

## RESPONSES AND OBJECTIONS TO REQUEST NO. 15:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 16:

Please produce all correspondence or communication between you and any party to this lawsuit
that were generated or created prior to the date this lawsuit was filed.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 16:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 17:

If you have entered into a settlement agreement with any party to this lawsuit, please produce that
settlement agreement.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 17:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 18:**

Please produce any and all insurance policies that you may call upon to respond to any potential
judgment against you in this lawsuit.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 18**:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 19:**

Please produce any and all contractual indemnity agreements you may call upon to respond to any
potential judgment against you in this lawsuit.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 19:**

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 20:**

Please produce any emails with Erik Bolog.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 20**:

In addition to the General Objections set forth above, the Defendant specifically objects to

this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents

related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which

have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 21:**

Please produce any emails with any attorney ever affiliated with Whiteford, Taylor & Preston, LLP.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 21:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 22:**

Please produce any bank statements showing your receipt of $350,000 from any of the Plaintiffs and its current whereabouts.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 22**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 23:**

Please produce all bank statements for every bank account maintained by you from October 1, 2021 to present date.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 23:**

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 24:

Please produce all bank statements evidencing the present whereabouts of the $350,00.00 transmitted to you by Plaintiff(s).

## RESPONSES AND OBJECTIONS TO REQUEST NO. 24:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 25:

All documents, including, but not limited to, emails, letters, memoranda, statements, and communications, related to the handling, disbursement, or transfer of any monies that came into your possession from any of the Plaintiffs.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 25:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 26:

All documents evidencing any of the Plaintiffs receiving something of value in exchange for the $350,000.00 transfer to Darnestown Road, Inc.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 26:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 27:**

Any joint defense agreement entered into between the Defendants in this action.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 27**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 28:**

Any documents evidencing Erik Bolog's receipt of monies from Darnestown Road, Inc.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 28**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 29:**

All documents evidencing any monetary gift, payment, or transfer of funds received by you from any of the Plaintiffs, including but not limited to bank statements, receipts, and written acknowledgments.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 29**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 30:

Bank statements, wire transfer records, and other financial documents showing the transfer of funds from any of the Plaintiffs to you, and subsequently from you to any individual, business or trust.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 30:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 31:

All written and electronic communications, including emails, letters, and text messages, between you and any third parties (including but not limited to business partners and financial institutions) regarding the use of any of the Plaintiffs' monies for investment in your business.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 31:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

## REQUEST NO. 32:

Any documents which evidence, refer or relate to the incorporation of your entity being handled by Whiteford, Taylor & Preston, LLP.

## RESPONSES AND OBJECTIONS TO REQUEST NO. 32:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

**REQUEST NO. 33:**

Any documents which evidence, refer or relate to you being represented by Whiteford, Taylor & Preston, LLP.

**RESPONSES AND OBJECTIONS TO REQUEST NO. 33**:

In addition to the General Objections set forth above, the Defendant specifically objects to this Request on the grounds set forth in General Objection No. 1 that this Request seeks documents related to claims subject to mandatory arbitration under the Whitewater Trust Agreement, which have now been stayed pending resolution of the Petition and any subsequent arbitration.

Dated:  April 24, 2025

As to objections:

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

 Respectfully,


Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Darnestown Road, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2025, a copy of the foregoing was served electronically via Electronic Mail upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via Electronic Mail:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendant Darnestown Road, Inc.*

# EXHIBIT A

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

## TABLE OF CONTENTS

SECTION 1.    CREATION OF TRUST ................................................................ 1
SECTION 2.    TRUST DURING GRANTOR'S LIFETIME .................................... 1
SECTION 3.    UPON GRANTOR'S DEATH .......................................................... 2
  A.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY ............... 2
  B.    CASH DISTRIBUTION ................................................................... 2
  C.    PAYMENT OF INDEBTEDNESS ..................................................... 2
  D.    DISTRIBUTION OF BALANCE OF TRUST ..................................... 2
SECTION 4.    TRUSTEES ............................................................................... 3
  A.    SUCCESSOR TRUSTEES ............................................................... 3
  B.    COMPENSATION ......................................................................... 3
  C.    RESIGNATION ............................................................................. 3
  D.    REMOVAL ................................................................................... 4
  E.    EMERGENCY ACTION .................................................................. 4
  F.    EMPLOYMENT OF INVESTMENT ADVISOR ................................. 4
SECTION 5.    POWERS OF TRUSTEE ............................................................. 5
  A.    RETAIN RESIDENCE IN TRUST .................................................... 5
  B.    DEAL WITH PROPERTY .............................................................. 6
  C.    MARGIN AND BANK ACCOUNTS ................................................. 6
  D.    REGISTER IN NOMINEE FORM .................................................... 6
  E.    DISPOSE OF CLAIMS ................................................................... 6
  F.    EXECUTE DOCUMENTS ............................................................... 6
  G.    DIVIDE PROPERTY ..................................................................... 6
  H.    BORROW FUNDS OR MAKE LOANS ............................................ 6
  I.    EMPLOY AGENTS ........................................................................ 6
  J.    MAKE TAX ELECTIONS ............................................................... 7
  K.    CARRY ON BUSINESS .................................................................. 7
  L.    S CORPORATION STOCK .............................................................. 7
  M.    TREAT AS COMMON FUND ........................................................ 8
  N.    RECEIVE ADDITIONAL PROPERTY .............................................. 8
  O.    MERGE TRUSTS .......................................................................... 9
  P.    DIVIDE TRUSTS .......................................................................... 9
  Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS ...................... 9
  R.    DEAL WITH DIGITAL ASSETS ..................................................... 9
  S.    KEEP INFORMATION CONFIDENTIAL ........................................ 10
  T.    DO ALL THINGS WITH FINAL AUTHORITY ................................ 10
SECTION 6.    DUTIES OF TRUSTEE ............................................................. 10

A.  PAY DEATH TAXES AND SATISFY CASH NEEDS................................................ 10
B.  PAY DELIVERY EXPENSES.......................................................................... 10
C.  PAY DIRECTLY TO BENEFICIARIES ............................................................. 10
D.  DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E.  MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS................................................................................................... 11
F.  MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE........................................................................................................ 11
G.  PAY INCOME AT TERMINATION OF TRUSTS ........................................... 11
H.  ADMINISTER WITHOUT COURT SUPERVISION ....................................... 11
I.  RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ..................... 11
SECTION 7.    INCAPACITY.................................................................................. 12
A.  DETERMINATION OF INCAPACITY ........................................................... 12
B.  DURATION OF INCAPACITY...................................................................... 12
C.  EFFECT OF INCAPACITY........................................................................... 13
D.  REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.    REVOCATION OR AMENDMENT.................................................... 13
SECTION 9.    RESOLUTION OF CONTROVERSIES .............................................. 13
SECTION 10.    GOVERNING LAW........................................................................ 14
SECTION 11.    RULE AGAINST PERPETUITIES ................................................... 15
SECTION 12.    BINDING AGREEMENT ............................................................... 15
    SCHEDULE A....................................................................................... 17
    SCHEDULE B....................................................................................... 18
    SCHEDULE C....................................................................................... 19
    SCHEDULE D....................................................................................... 20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone.  Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

**SECTION 1. CREATION OF TRUST.**    The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property.  The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement.  This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021.**

**SECTION 2.    TRUST DURING GRANTOR'S LIFETIME.**   During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs.  However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

SECTION 3.     **UPON GRANTOR'S DEATH.**   Upon the grantor's death, this trust shall be administered and disposed of as follows.

A.     **DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.**   The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

B.     **CASH DISTRIBUTION.**   The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them.  If none are then living, this gift shall lapse.

C.     **PAYMENT OF INDEBTEDNESS.**   The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

D.     **DISTRIBUTION OF BALANCE OF TRUST.**   The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia.  If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

---

**WHITEWATER** Revocable Trust Agreement

## SECTION 4.    TRUSTEES.

**A.    SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN,** shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN,** shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees. The grantor appoints as a successor trustee any person or corporation so designated.

**B.    COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00). Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

**C.    RESIGNATION.** A trustee may resign at any time by an instrument in writing. No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

**D.   REMOVAL.** The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

**E.   EMERGENCY ACTION.** If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

**F.   EMPLOYMENT OF INVESTMENT ADVISOR.** The successor trustee then serving shall continue to engage the services of the investment advisor employed by

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    4

the grantor at the time of her death or incapacity to manage the investment of the trust property. If no investment advisor was employed by the grantor at the time of her death or incapacity, the successor trustee shall engage a professional investment advisory firm to manage the investment of the trust property.

SECTION 5.    POWERS OF TRUSTEE. In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, the powers listed below, which they may exercise without prior or subsequent approval by any court. In addition, the grantor specifically incorporates the provisions of §64.2-105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers listed below. The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct. For convenience the grantor is referring to these fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the singular and plural, include each other wherever appropriate in any reference to any person or corporation in this agreement.

A.    RETAIN RESIDENCE IN TRUST. To retain in any trust any residence transferred to the trust by the grantor. The trustee shall permit the grantor to occupy the residence, rent free, for whatever period of time the trustee may reasonably determine. The trustee is not required to make any charge against income or principal for depreciation. The trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

---

**WHITEWATER** Revocable Trust Agreement

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.    DEAL WITH PROPERTY.**  To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.    MARGIN AND BANK ACCOUNTS.**  To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.    REGISTER IN NOMINEE FORM.**  To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.    DISPOSE OF CLAIMS.**  To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.    EXECUTE DOCUMENTS.**  To execute, acknowledge, and deliver documents.

**G.    DIVIDE PROPERTY.**  To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.    BORROW FUNDS OR MAKE LOANS.**  To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.    EMPLOY AGENTS.**  To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                               6

**J.   MAKE TAX ELECTIONS.**  To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

**K.   CARRY ON BUSINESS.**  Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**L.   S CORPORATION STOCK.**      During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

(1) **Electing Small Business Trust.**  If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

(2) **Qualified Subchapter S Trust.**  If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    7

(a) If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b) Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c) The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d) The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

(3) **Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

(a) The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

(b) No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.   TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.   RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    8

**O. MERGE TRUSTS.** To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P. DIVIDE TRUSTS.** To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q. DEAL WITH GENERATION-SKIPPING TRANSFERS.** To deal with any potential generation-skipping transfer (GST) as follows:

**(1)** Fund With Appreciating Assets. To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)** Disregard GST Tax Consequences. To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax. The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)** Make Distributions From Divided Trusts. With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

**(a)** To make distributions of income and principal to skip persons from the exempt trust;

**(b)** To make distributions of income and principal to non-skip persons from the non-exempt trust; and

**(c)** To pay estate, inheritance and other death taxes from the non-exempt trust.

**R. DEAL WITH DIGITAL ASSETS.** To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.     KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.     DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

**SECTION 6.     DUTIES OF TRUSTEE.** The grantor authorizes the trustee and any successor trustees, without prior or subsequent approval by any court:

**A.     PAY DEATH TAXES AND SATISFY CASH NEEDS.** Subject to the provisions of Section 6.I of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise. Taxes include interest and also penalties not caused by negligence or bad faith. Subject to the provisions of Section 6.I of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate. Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust: (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes. In no event shall there be any right of reimbursement from any person.

**B.     PAY DELIVERY EXPENSES.** To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.     PAY DIRECTLY TO BENEFICIARIES.** To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.     DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**     Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.     MAKE BINDING DECISIONS WITH RESPECT TO DISCRE-TIONARY PAYMENTS.**  In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person.  No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust.  All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.     MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**  No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee.  No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.     PAY INCOME AT TERMINATION OF TRUSTS.**  To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary.  If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.     ADMINISTER WITHOUT COURT SUPERVISION.**  To administer all trusts without court supervision.  If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.     RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.** Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    11

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

## SECTION 7.    INCAPACITY.

    **A.    DETERMINATION OF INCAPACITY.** Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

    **(1)** Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

    **(2)** A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

    **(3)** Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

    **B.    DURATION OF INCAPACITY.** Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

### C.    EFFECT OF INCAPACITY.

(1)    If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues. If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)    If the grantor is determined to be incapacitated, then notwithstanding any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement. If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

### D.    REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.  Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney. The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court. The decision of any attorney in fact, parent or guardian is binding on all persons.

SECTION 8.    REVOCATION OR AMENDMENT.  The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person.  In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime. This trust shall become irrevocable upon the grantor's death.

SECTION 9.    RESOLUTION OF CONTROVERSIES.  Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

SECTION 10.   GOVERNING LAW. This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                                              14

**SECTION 11.    RULE AGAINST PERPETUITIES.**   The common law rule against perpetuities shall not apply to this agreement and the trusts created by this agreement.

**SECTION 12.    BINDING AGREEMENT.**  This agreement is binding upon and inures to the benefit of the parties and their respective personal representatives, successors in interest, and successors in trust.

**EXECUTED** on September 30, 2021.

WITNESS:

_____          _____ (SEAL)
                     WILMINGTON NK                  **CLAUDIA ENGELHORN**, Grantor

_____          _____ (SEAL)
                     WILLIAMSBURG NC                **CLAUDIA ENGELHORN**, Trustee

_____          _____ (SEAL)
                     Fairfax VA                     **ERIK D. BOLOG**, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable trust agreement, and acknowledged it to be his act and deed.

_____
Notary Public

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN**, grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021,** have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_____ (SEAL)
CLAUDIA ENGELHORN, Grantor

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    16

## SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials | | Date Transferred |
|---|---|---|---|---|
| | | Grantor | Trustee | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**WHITEWATER** Revocable Trust Agreement

## SCHEDULE B

### DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me.  I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** to the person named, if, in each case, that person is living 30 days after my death.

*Description of Personal Property*                    *Desired Recipient And Relationship*

_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____
_____        _____

                                        _____
                                        CLAUDIA ENGELHORN

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    18

# SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| _Recipient_ | _Amount_ | Grantor's _Initials_ | _Date_ |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

WHITEWATER Revocable Trust Agreement

## SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me. To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| *Recipient* | *Amount* | Grantor's *Initials* | *Date* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    20

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
## DATED
## SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN**, hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____ avenue to NC          _____ (SEAL)
                                              **CLAUDIA ENGELHORN**, Grantor

_____ avenue to NC          _____ (SEAL)
                                              **CLAUDIA ENGELHORN**, Trustee

_____ Fairfax               _____ (SEAL)
                    VA                        **ERIK D. BOLOG**, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be his act and deed.

_____
Notary Public                    Fairfax, VA

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    4

# ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
## DATED SEPTEMBER 30, 2021

     I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

     I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

     I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

     **EXECUTED** as of September 30, 2021.

WITNESS:

_____     _____ (SEAL)
                                      CLAUDIA ENGELHORN

DISTRICT OF COLUMBIA, ss:

     I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

                                          _____
                                        Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

# EXHIBIT B

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.**, | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| **ERIK D. BOLOG** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DARNESTOWN ROAD, INC.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SCIENCE PARK ASSOCIATES, LLC** | ) | |
| | ) | |
| *Counterclaim Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CLAUDIA ENGELHORN** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CLAUDIA ENGELHORN, AS TRUSTEE OF THE WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021** | ) | |
| | ) | |
| *Counterclaim Defendants* | ) | |

## BOLOG DEFENDANTS' COUNTERCLAIMS

Counterclaim Plaintiffs Erik D. Bolog ("Mr. Bolog"), Science Park Associates, LLC, and Darnestown Road, Inc. (collectively, the "Counterclaim Plaintiffs"), bring these counterclaims against Counterclaim Defendants Claudia Engelhorn and Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("Trustee" and collectively with Ms. Engelhorn, the "Counterclaim Defendants") and allege the following:

## NATURE OF THE ACTION

1. These are counterclaims that Mr. Bolog never imagined he would be forced to bring against one-time friend, business colleague and former client, Ms. Claudia Engelhorn, individually and as the Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("WWT").

2. Mr. Bolog first became acquainted with Ms. Engelhorn when he successfully represented her in a massive cross-border litigation, during the height of the global COVID pandemic, traveling back and forth from the United States to Europe, with threats on his life because of his involvement in a very public legal battle. It would not be an understatement to say that Mr. Bolog risked his health, well-being, and physical safety in relation to his representation of Ms. Engelhorn.  *See* **Exhibit C** at 1.

3. Ms. Engelhorn is the daughter of Curt Engelhorn, who, according to Ms. Engelhorn, was at one time the self-proclaimed wealthiest man in Germany, with an estimated $10 billion value of his estate and affiliated entities at the time of his death.  Approximately 25 years before his death, Mr. Engelhorn funded the Manheim Trust, created for the benefit of Ms. Engelhorn and her children in the amount of $500 million, to be managed as a family office. Ms. Engelhorn has served as the life trustee of the Manheim Trust, which paid her a salary of

approximately $1,000,000 per year  and loaned her approximately $30,000,000 to fund her lifestyle and various litigations.

4.       Mr. Engelhorn, who became a resident of Gstaad, Switzerland, towards the end of his life, and later died in Gstaad, left his entire estate to his (fourth) wife. Unsatisfied with the $500 million her father gifted to the Manheim Trust (for the benefit of her and her three children), Ms. Engelhorn chose to pursue a forced heirship claim to her statutory entitlement from her father's estate under the laws of Switzerland (the "Switzerland Litigation").

5.       As a result of his dogged and tireless efforts representing Ms. Engelhorn in the Switzerland Litigation, Mr. Bolog obtained a $130 million, tax-free settlement, on behalf of Ms. Engelhorn.

6.       After paying 100% of her legal fees and expenses to Mr. Bolog's then-law firm, Whiteford Taylor & Preston, LLP ("WTP"), Ms. Engelhorn decided, on her own, to fund an irrevocable trust known as the JAREB Irrevocable Trust Dated October 11, 2021 ("JAREB Irrevocable Trust") for the benefit  of Mr. Bolog and his children, in the amount of $10,000,000 (the "Gift").  *See* **Exhibit C** at 1-2.

7.       From the date of the Gift to the JAREB Irrevocable Trust through the early summer of 2022, Ms. Engelhorn continued her professional relationship and personal friendship with Mr. Bolog.  For the 11 months after she made the Gift, Ms. Engelhorn, Mr. Bolog, and others, travelled domestically and internationally for business and pleasure to Spain, Ireland, Hawaii, the Bahamas, Nashville, New York, Charleston, South Carolina, Virginia, West Virginia, and San Francisco, and spent countless days together—in business meetings, on family outings, and at celebrations, including spending New Year's Eve 2021, together with Mr. Bolog's significant other.

8.      Additionally, after settlement of the Switzerland Litigation, Ms. Engelhorn insisted that Mr. Bolog act as her co-trustee for a trust known as the Whitewater Revocable Trust, dated September 30, 2021—*i.e.*, the WWT—which was funded with an initial $100 million from the settlement proceeds Mr. Bolog obtained for her in the Switzerland Litigation.

9.      Mr. Bolog, with the full knowledge and approval of his then-law firm Whiteford Taylor & Preston, agreed to serve as a co-trustee of the WWT.

10.     Then, on or around July 6, 2022, after Ms. Engelhorn and Mr. Bolog had had a falling out because Mr. Bolog had admonished her after she made a racially hateful statement to an African-American family at a restaurant—telling the family that it was nice that they were allowed to eat in restaurants—and after Mr. Bolog's significant other, who was also had become good friends with Ms. Engelhorn, counseled Ms. Engelhorn against terminating her relationship with her daughter because her daughter was involved in a same-sex relationship, a relationship that Ms. Engelhorn believed would result in her daughter going to "hell," and approximately nine months after Ms. Engelhorn made the irrevocable Gift, including voluntarily, knowingly, and intentionally transferring to the JAREB Irrevocable Trust the $10 million from her Bank of America Bank personal bank account, constituting the Gift, which in October 2021 was received and accepted by the JAREB Irrevocable Trust, Ms. Engelhorn sent an email, attempting to revoke the irrevocable Gift.  A copy of the email is attached hereto as **Exhibit D**.[1]  This email stated that she made the Gift when she was intoxicated and that Mr. Bolog had transferred the money from Ms. Engelhorn's personal bank account to the JAREB Irrevocable Trust.   Neither of these assertions were true.   Ms. Engelhorn was not intoxicated at the time that she, and she alone, executed the Notice of Gift, which was notarized, nor was she intoxicated days later when she, and

---

[1] The undersigned have implemented certain limited redactions to **Exhibit D** to protect personally identifiable information, including banking information and personal email addresses.

she alone, initiated and authorized the $10 million Gift to the JAREB Irrevocable Trust in a verified

phone call with Bank of America (satisfying all of Bank of America's security protocols).  Mr.

Bolog had no involvement with the transfer by Ms. Engelhorn of the Gift.

11.    The JAREB Irrevocable Trust, through counsel, responded to the email,

advising Ms. Engelhorn that it would not allow her to revoke her irrevocable Gift.

12.    Then, approximately a year later, during the summer of 2023, at the

invitation of Ms. Engelhorn's new attorney Anthony Williams, a partner at the international law

firm, Dentons, Mr. Bolog and his attorney travelled to New York City to discuss the Gift.  At that

meeting Mr. Williams stated a new version of why Ms. Engelhorn wished to revoke the irrevocable

Gift, stating that she was "on the spectrum" and not very smart.  Then, shortly after he was advised

of the actual facts concerning the transfer—more specifically that Ms. Engelhorn transferred the

funds from her personal bank account at Bank of America, with no involvement by Mr. Bolog and

that the Notice of Gift was notarized—Mr. Williams offered to resolve the matter by splitting the

$10 million Gift, requesting that Mr. Bolog return $5 million.  Mr. Williams further offered that,

if that compromise was acceptable, he would have Ms. Engelhorn file a gift tax return in the

amount of $5 million and had further advised that Ms. Engelhorn had not yet filed a gift tax return

for the $10 million Gift as a result of his advice.  Of course, if Ms. Engelhorn did not know that

she had made the Gift, she would have never been considering the need to file a gift tax return.

This suggested resolution by Mr. Williams was rejected.

13.    Frustrated by the JAREB Irrevocable Trust's unwillingness to allow Ms.

Engelhorn to revoke the irrevocable Gift, Ms. Engelhorn then embarked on a scorched-earth

mission to destroy Mr. Bolog's career and his financial well-being.  She began this by defaming

and slandering Mr. Bolog to clients and friends of Mr. Bolog.

14.     Then, on or around July 11, 2024, new attorneys for Ms. Engelhorn sent a letter to WTP, a third-party, defaming Mr. Bolog and impugning his capacity as an attorney, his honesty, and his commitment to his ethical obligations.  In this letter, Ms. Engelhorn, through her agent Wes Henderson, defamed Mr. Bolog by stating the following:

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added).

15.     Then, 35 months after making the Gift, and almost two years after Ms. Engelhorn and Mr. Bolog had a falling out, Ms. Engelhorn, in the above-captioned action, accused Mr. Bolog of inappropriate and unethical conduct in obtaining the very Gift she insisted on making for the benefit of Mr. Bolog and his family.

16.     Mr. Bolog has now been forced to bring these counterclaims to seek redress for wrongs and reputational damage he has suffered and continues to suffer at the hands of Ms. Engelhorn.

## JURISDICTION AND VENUE

17.     Jurisdiction over this Counterclaim is proper with this Court under Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(6); as well as Md. Code Ann., Est. & Trusts § 14.5-202.

18.     This Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

19.     Jurisdiction is also proper with this Court for the adjudication of counterclaims.

20.     Venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8).

21.     Venue is proper with this Court for the adjudication of counterclaims.

## PARTIES

22.     Counterclaim Plaintiff Erik D. Bolog whose principal place of business is Washington, DC is an individual. Mr. Bolog has served, and continues to serve, as trustee of the JAREB Irrevocable Trust since October 11, 2021.

23.     Counterclaim Plaintiff Science Park Associates, LLC is a limited liability company with its principal place of business in the State of Maryland.

24.     Counterclaim Plaintiff Darnestown Road, Inc. is a corporation with its principal place of business in the State of Maryland.

25.     Counterclaim Defendant Claudia Engelhorn is an individual and resides in the State of Tennessee.

26.     Counterclaim Defendant Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended.

## FACTUAL ALLEGATIONS

A.     **Defamation**

27.     On or around July 1, 2024, Wes Henderson, of the law firm Henderson Law LLC, and acting as an agent of Ms. Engelhorn, sent a letter to WTP, defaming Mr. Bolog (the "Defamatory Letter," attached hereto as **Exhibit A**).

28.     The Defamatory Letter impugned Mr. Bolog's capacity as an attorney, his honesty, and his commitment to his ethical obligations.

29.     For example, the Defamatory Letter contained the following libelous and defamatory statements:

7

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added);

30.     These statements constitute defamation *per se*.

**B.      Whitewater Trust Agreement**

31.     Mr. Bolog, at the insistence of Ms. Engelhorn, served as a co-trustee of the Whitewater Revocable Trust (attached hereto as **Exhibit B**) from its inception until November 3, 2022. During this time Mr. Bolog, as Trustee had all of the authority bestowed upon him by the Whitewater Revocable Trust.

32.     Under all relevant times herein, Mr. Bolog was the co-trustee of the Whitewater Revocable Trust.

33.     The Whitewater Revocable Trust failed to pay Mr. Bolog a reasonable trustee fee for his services as its trustee, overseeing $100 Million of assets.

34.     Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust. Pursuant to Virginia law, which governs the Whitewater Revocable Trust, Mr. Bolog is entitled to be paid a reasonable trustee fee for his services for the 13 months he served as the co-trustee.

35.     Under Section 9 of the Whitewater Revocable Trust, Mr. Bolog, as a co-trustee, is indemnified by the Whitewater Revocable Trust for the cost of defending all forms of litigation relating to any actions against him as Trustee of the Whitewater Revocable Trust. Additionally, pursuant to Section 9 of the Whitewater Revocable Trust, all legal fees and costs incurred by Mr. Bolog for any claims relating to his actions as Trustee of the Whitewater Revocable Trust are to be immediately paid by the Whitewater Revocable Trust.

36.     To date, the Whitewater Revocable Trust has not paid Mr. Bolog's legal fees and costs relating to his services on behalf of the Whitewater Revocable Trust.

37.     On or around March 2022, with Ms. Engelhorn's full knowledge and consent, the Whitewater Revocable Trust purchased a loan and security interest from a regional bank relating to an entity, Science Park Associates, LLC, for approximately $3,352,650 (the "Science Park Investment").  This loan was secured by a deed of trust on an office building located at 9001 Edmonston Lane, Greenbelt, Maryland (the "Greenbelt Property").

38.     Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC overhearing Mr. Bolog discussing the opportunity to purchase the loan documents with another investor, and thereafter, insisting on the Whitewater Revocable Trust making the investment.

39.     The Greenbelt Property was shortly thereafter sold by Science Park Associates, LLC and the Whitewater Revocable Trust was repaid all principal, interest and costs. This was an opportunistic investment and proved very profitable for Ms. Engelhorn and the Whitewater Revocable Trust (Ms. Engelhorn is the sole beneficiary of the Whitewater Revocable Trust).

40.     Mr. Bolog, in his capacity as the co-Trustee of the Whitewater Revocable Trust was completely authorized (without Ms. Engelhorn's consent) to make the Science Park Investment on behalf of the Whitewater Revocable Trust.  However, Mr. Bolog fully informed his co-Trustee, Ms. Engelhorn, about the investment and Ms. Engelhorn, after being fully apprised of any and all conflicts of interest relating to the investment, insisted and approved of the Whitewater Revocable Trust investment and the purchase of the loan and security instruments.

41.     At the time of the sale of the Greenbelt Property, the Whitewater Revocable Trust was represented by Dentons, a large international law firm, that provided the payoff

calculation to the Whitewater Revocable Trust and accepted, without any objection or complaint, the total amount due pursuant to the loan documents it purchased relating to the Greenbelt Property, thereby profiting by approximately $330,000.00.

42.     Similarly, the Whitewater Revocable Trust, with the full knowledge and consent of both Whitewater Revocable Trust Trustees, Ms. Engelhorn and Mr. Bolog, made a $350,000 loan to Darnestown Road, Inc., relating to a 100,000 square foot operating shopping center located in Richmond, Virginia (the "Darnestown Road Loan").   Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC, overhearing Mr. Bolog discussing the loan for the property with another lender, and thereafter, insisting on the Whitewater Revocable Trust making the loan.  Ms. Engelhorn was fully aware of and consented to a waiver of the conflicts of interest that existed as a result of Mr. Bolog's and WTP's decades long representation of the ownership entity of the Richmond Shopping Center and Darnestown Road, Inc.  The Darnestown Road Loan is not yet mature.

43.     Ms. Engelhorn, who is a sophisticated business person, in charge of more than $630 million of assets (over $500 million of her family office assets and $130 million of the Whitewater Revocable Trust assets), requested, after full disclosure of all potential conflicts, that she be able to make the Darnestown Road Loan to profit from the interest.

44.     Complete loan documents and conflict waivers were fully discussed and signed.

45.     The Darnestown Road loan is not due until December 31, 2025.

46.     At the time the Science Park Investment and the Darnestown Road Loan was made, interest rates on bank accounts were paying approximately 1%.  Ms. Engelhorn, as Trustee, wanted a higher yield on the Whitewater Revocable Trust assets and was fully motivated

to take advantage of business opportunities which she, on behalf of the Whitewater Revocable Trust, learned about from Mr. Bolog.

47.     The Darnestown Road Loan was at an interest rate of 8%.

48.     The Science Park Investment was at an interest rate of 9%.

49.     Upon information and belief, and based upon a letter sent by Ms. Engelhorn's attorneys at Dentons to defendant Michael Postal, a certain investment made in Swain Landing LaPlata JC LLC ("Swain Landing") is owned by the Whitewater Revocable Trust.

50.     As alleged in the Second Amended Complaint, Ms. Engelhorn sold a home she owned in Tennessee and the proceeds were transferred to Swain Landing for a real estate investment.

51.     Mr. Bolog had no involvement with the Swain Landing investment other than at Ms. Engelhorn's directive, communicated with developer of the investment to ascertain the investment amount.

52.     However, the Second Amended Complaint alleges that Mr. Bolog, who was the Trustee of WWT, should have taken certain action(s) relating to the investment.  As a result of the fact that WWT purportedly owns the Swain Landing Investment, and Mr. Bolog was the co-trustee of the WWT at the time of the investment, the WWT must indemnify Mr. Bolog for any purported liability and immediately pay all of his legal fees and costs associated with his defense of the Second Amended Complaint.

**C.**     **Ms. Engelhorn Abuses the Court Process by Filing this Action**

53.     Plaintiffs initiated this action on September 10, 2024.

54.     On February 5, 2025, Ms. Engelhorn along with Plaintiffs filed the Second Amended Complaint.

55.     The Second Amended Complaint contains numerous allegations that are either intentionally deceptive to the Court or demonstrably false on their face, and reveal the true ulterior motive behind Ms. Engelhorn's filing, namely to assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm and of attempting to destroy his professional reputation and ability to practice law; her sole motive for attempting to revoke the irrevocable Gift was to harm Mr. Bolog, not to use the judicial process for a proper purpose or to recover the funds.

56.     Upon information and belief, Ms. Engelhorn brought the Second Amended Complaint expecting that Mr. Bolog would submit to the pressure of defending against a multi-million dollar action and return the Gift (which he could not, anyway, because it belongs to the JAREB Irrevocable Trust) to preserve his reputation in the face of baseless and unsubstantiated claims.

57.     For example, paragraphs 35-37 of the Second Amended Complaint address the transfer of the $10M Gift from Ms. Engelhorn to the JAREB Irrevocable Trust. But the Second Amended Complaint deceptively and intentionally avoids that it was Ms. Engelhorn who actually initiated and completed the transfer of the Gift and instead implies that Mr. Bolog transferred the Gift.

58.     The only way for Ms. Engelhorn to have effectuated the Gift was for her, herself, to initiate the transfer through a direct phone call with Bank of America (after following all of its security protocols) and through the use of a personal security confirmation code sent to her and read back to the bank. Her instructions to make the Gift to the Bank of America satisfied all of the security protocols and Mr. Engelhorn, and only Ms. Engelhorn, was able to and did start and complete the Gift by authorizing Bank of America to transfer $10 Million from her personal

account to the JAREB Irrevocable Trust account, all of which was done without any involvement from Mr. Bolog.

59.    In another example, paragraph 36 of the Second Amended Complaint describes Mr. Bolog directing Ms. Engelhorn to sign documents upside down. But, of course, Ms. Engelhorn's conclusory allegations ignore that Ms. Engelhorn's signature on the documents appear right-side up.  But in reality, Ms. Engelhorn knows that none of the documents that she signed, which were notarized, caused the Gift to occur, she, and only she had the authority to direct the Gift to be made and if she didn't know exactly what she was doing, as she eloquently articulated in the Notice of Gift, she would have simply not have directed Bank of America to make the irrevocable Gift during the call that was required to transfer the $10 Million.

60.    Indeed, the Second Amended Complaint baselessly and conclusory accuses Mr. Bolog of tricking Ms. Engelhorn, not explaining documents to her, deceiving her into thinking she was signing routine documents, and not providing her an opportunity to review documents before pressuring her into signing them.

61.    Ms. Engelhorn is a centi-millionaire who doesn't seriously need, nor care about the Gift, but instead, her filing of this action is solely to seek vengeance against Mr. Bolog and seeks to punish him following the end of their friendship and thereafter suffering from Giftor's remorse.

### COUNT I
### (DEFAMATION)
(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn)

62.    Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count I.

63.    Ms. Engelhorn has made false and defamatory statements to and through third parties, including, but not limited, to lawyers at WTP.

64.     These libelous defamatory statements by Ms. Engelhorn through her attorneys at Henderson Law LLC were made on or around July 1, 2024, within the past year of the date of these counterclaims.

65.     None of the defamatory statements are true and Ms. Engelhorn and her agents knew that the statements were untrue at the time the statements were made and sent to WTP.

66.     The Defamatory Letter was sent to a third party, WTP.

67.     Ms. Engelhorn's defamatory statements about Mr. Bolog were in furtherance of her objective to cast heinous aspersions on Mr. Bolog in an effort to inflict the maximum amount of economic and reputational damage against Mr. Bolog.

68.     Because Ms. Engelhorn's statements accuse Mr. Bolog of violating the law, and accuse him of a lack of integrity in his practice of law, his honesty, and his commitment to ethical obligations, and her statement that he has done this to other clients, Ms. Engelhorn's false statements constitute defamation *per se*.

69.     In making these defamatory statements, Ms. Engelhorn, injured Mr. Bolog's professional reputation, and caused Mr. Bolog personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

70.     Additionally, as a result of her defamatory statements, Mr. Bolog has suffered assumed and actual damages including, but not limited to, loss and injury to his business, harm to his name and reputation, out-of-pocket losses incurred in defending against the Second Amended Complaint, personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

71.     Ms. Engelhorn's knowingly or recklessly false statements were a substantial factor in causing the above stated injuries to Mr. Bolog.

72.    As a direct result of Ms. Englehorn's defamatory statements, Mr. Bolog

suffered injury to his professional reputation and damages in excess of $20 Million.

**COUNT II**
**(INDEMNIFICATION)**

(Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science Park Associates LLC
against Counterclaim Defendant Claudia Engelhorn, as Trustee of the Whitewater Revocable
Trust dated September 30, 2021)

73.    Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science

Park Associates, LLC  incorporate each of the allegations and preceding paragraphs as set forth

above into this Count II.

74.    The Whitewater Revocable Trust indemnifies in two separate respects.

75.    *First*, it provides for immediate payment of litigation fees and costs.

76.    *Second*, the Whitewater Revocable Trust indemnifies Mr. Bolog against

loss.

77.    Section 9 of the Whitewater Revocable Trust provides that "[t]he defense

of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents,

attorneys, accountants and representatives, shall be paid for by the trust."

78.    The "litigation" to which this sentence in Section 9 refers encompasses any

civil litigation.

79.    The obligation of the Whitewater Revocable Trust to pay litigation fees and

costs is unconditional and immediate—there is no language limiting the circumstances under

which the Whitewater Revocable Trust must pay or an opportunity to defer such payments to some

future time.

80.    Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant

to the following claims asserted by Plaintiffs in the Second Amended Complaint that relate to

investments using funds from the Whitewater Revocable Trust in Science Park Associates, LLP, Darnestown Road, Inc., and Swain Landing (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown Road, Inc. and Swain Landing LaPlata JC, LLC, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing Swain Landing LaPlata JC, LLC); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park Associates, LLC).

81.    The Whitewater Investment Claims all concern investments that Mr. Bolog, as Trustee of the Whitewater Revocable Trust, made—with full authority under the Whitewater Revocable Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using funds of the Whitewater Revocable Trust.

82.    In addition to the immediate obligation to pay all defense costs (legal fees and costs), the Whitewater Trust is obligated to indemnify Mr. Bolog as trustee against damages arising from "any act or omission" under Section 5 of the Whitewater Revocable Trust.

83.    Science Park Associates, LLP, Darnestown Road, LLC., and Swain Landing are third-party beneficiaries under the Whitewater Revocable Trust and are also indemnified under Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

84.    Accordingly, Mr. Bolog is indemnified for defending all of the Whitewater Investment Claims as provided in Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

## COUNT III
## (ABUSE OF PROCESS)

(Counterclaim Plaintiffs Mr. Erik Bolog as an individual and trustee against Counterclaim
Defendant Claudia Engelhorn)

85.    Counterclaim Plaintiff Erik Bolog as an individual and as trustee incorporate each of the allegations and preceding paragraphs as set forth above into this Count III.

86.    Ms. Engelhorn has willfully and maliciously used the court process for an illegal purpose: to punish and oppress Mr. Bolog and seek vengeance on him following the end of their friendship.

87.    After Mr. Bolog refused to return the irrevocable Gift (which he could not, regardless), Ms. Engelhorn initiated this action.

88.    Ms. Engelhorn either knew, or acted with intentional and/or reckless disregard for the truth, that the allegations in the Second Amended Complaint were false or deceptive.

89.    Ms. Engelhorn has used the court process to inflict reputational harm on Mr. Bolog and coerce him into returning the Gift.

90.    Because of Ms. Engelhorn's actions, Mr. Bolog has suffered reputational damage, loss and injury to his business, harm to his name and reputation, out-of-pocket losses incurred in defending against the Second Amended Complaint, personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

91.    Mr. Bolog is also entitled to punitive damages as a result of Ms. Engelhorn's willful and malicious abuse of process.

## COUNT IV
## (BREACH OF CONTRACT)

(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn, as
Trustee of the Whitewater Revocable Trust dated September 30, 2021)

92.    Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count IV.

93.    Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust.

94.    In his role as trustee of the Whitewater Revocable Trust, Mr. Bolog performed valuable services for the Whitewater Revocable Trust from its inception through November 2022, serving as the trustee of a trust with over $130 Million in assets.

95.    Mr. Bolog has not received compensation for serving as the trustee for the Whitewate Trust for 13 months, and pursuant to Virginia law, which governs Whitewater Revocable Trust, Mr. Bolog is owed reasonable compensation for performing these services, and hereby demands payment in an amount of at least $500,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Bolog, individually and as trustee, Science Park Associates, LLC, and Darnestown Road, Inc., ask the Court to enter judgment in their respective favor against all Counterclaim Defendants as follows:

a) Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the defamatory statements identified above in Count I;

b) Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the abuse of process identified above in Count III;

c) Award Erik Bolog compensatory damages, together with pre- and post-judgment interest in an amount to be determined at trial on Counts I and III;

d) Award Erik Bolog punitive damages in an amount to be determined at trial on Counts I and III;

e) Enter judgment on Count II that Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC are indemnified under the Whitewater Revocable Trust for the costs and disbursements of defending the Whitewater Investment Claims;

f) Award Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC the costs and disbursements of defending this action, including reasonable attorneys' fees and court costs, in an amount to be determined at trial under Count II;

g) Award Erik Bolog a minimum of $500,000 on Count IV for his services as trustee of the Whitewater Revocable Trust, during which time neither Ms. Engelhorn nor the Whitewater Revocable Trust provided any compensation to Mr. Erik Bolog; and

h) Grant Counterclaim Plaintiffs any such other, further, and different relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

96.     Counterclaim Plaintiffs demand a jury trial for all claims and issues in this

Counterclaim that are triable before a jury.

Dated:      March 24, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this March 24th, 2025, a copy of the foregoing was served

electronically via MDEC upon counsel of record, and remaining parties served via first class

mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

# EXHIBIT C

E-FILED; Baltimore City Circuit Court
Docket: 12/17/2024 7:24 PM; Submission: 12/17/2024 7:24 PM
Envelope: 19226119

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN**, *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | )   **Case No.: C-24-CV-24-002631** |
| | ) |
| | ) |
| | ) |
| **WHITEFORD, TAYLOR & PRESTON,** | ) |
| **LLP et al.,** | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

---

**DEFENDANTS BOLOG, SCIENCE PARK, AND DARNESTOWN ROAD'S RESPONSE
TO WHITEFORD, TAYLOR & PRESTON LLP'S PETITION FOR AN ORDER
COMPELLING ARBITRATION AND MOTION TO STAY PROCEEDINGS**

Defendants Erik Bolog, in his individual capacity and as Trustee for the JAREB
Irrevocable Trust Agreement Dated October 11, 2021; Science Park Associates, LLC ("Science
Park"); and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants")
hereby respond to Whiteford, Taylor & Preston LLP's ("WTP") Petition for an Order Compelling
Arbitration (the "Arbitration Petition") and Motion to Stay Proceedings.

None of the claims against the Bolog Defendants is subject to arbitration, and WTP's
Petition For An Order Compelling Arbitration does not contend otherwise. The claims against the
Bolog Defendants are nonarbitrable because the arbitration provision at issue is found in the
engagement letter executed by and between WTP and Ms. Engelhorn—none of the Bolog
Defendants is a party to that arbitration agreement. See *The Redemptorists v. Coulthard Servs.,
Inc.*, 145 Md. App. 116, 134 (2002) (A "party cannot be required to submit any dispute to
arbitration that it has not agreed to submit."). Accordingly, the Bolog Defendants take no position

on the arbitrability of disputes arising under the engagement letter's arbitration agreement, which is binding on WTP and Plaintiff Engelhorn, but not on any of the Bolog Defendants. *See The Redemptorists*, 145 Md. App. at 151-158 (finding only claims and issues subject to arbitration clause are arbitrable; the remainder are stayed in court).

Nonetheless, the Bolog Defendants join in WTP's related Motion to Stay Proceedings and respectfully submit that if the Court orders the arbitration of any of the claims the Plaintiffs have brought against WTP, all proceedings in this action (including discovery) should be stayed pending a final determination in the arbitration.   See *The Redemptorists*, 145 Md. App. at 125 ("The issues as to the non-contracting parties should be stayed pending the outcome of the arbitration."). WTP has already taken the position that it will not respond to discovery requests until resolution of the Arbitration Petition (and subsequent arbitration); allowing claims to proceed against the Bolog Defendants without the benefit of discovery against WTP would prejudice the Bolog Defendants' ability to adequately prepare its defenses in this case. Furthermore, allowing arbitration to conclude before resuming litigation in this action (including discovery) will narrow the outstanding issues and promote judicial economy. Completing arbitration will also materially impact the claims against the Bolog Defendants and determine, what, if any, claims can continue in this Court.

Therefore, a final determination by any arbitration adjudicating the claims brought by Plaintiffs against WTP must precede the litigation of the claims against the Bolog Defendants.


[*Remainder of Page Intentionally Omitted*]

2

Dated:      December 17, 2024

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2024, a copy of the foregoing

was served in the manner indicated on the following:.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*

4

E-FILED; Baltimore City Circuit Court
Docket: 6/9/2025 12:24 PM; Submission: 6/9/2025 12:24 PM
Envelope: 21551344

# EXHIBIT D

COMMERCIAL



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



American Arbitration Association®

Available online at **adr.org/commercial**
Rules Amended and Effective September 1, 2022

If you would like to speak to a member of the AAA Commercial Team, please visit **https://go.adr.org/commercial-contact.html**.

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

  R-1. Agreement of Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

  R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council . .  11

  R-3. National Roster of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

  R-4. Filing Requirements and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

  R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

  R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

  R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

  R-8. Consolidation and Joinder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

  R-9. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

  R-10. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

  R-11. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

  R-12. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

  R-13. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

  R-14. Direct Appointment by Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

  R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or

  the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

  R-16. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

  R-17. Number of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

  R-18. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

  R-19. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

  R-20. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

  R-21. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

  R-22. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

  R-23. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . . .  22

R-24. Enforcement Powers of Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-25. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-26. Attendance at Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-27. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-28. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-29. Official Record of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-31. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-32. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . . 25

R-33. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-35. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or Other

Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-37. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-38. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-39. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-41. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-42. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-43. Extensions of Time. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-44. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-45. Confidentiality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-46. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-47. Time of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-48. Form of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-49. Scope of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-50. Award Upon Settlement – Consent Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-51. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-52. Modification of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-53. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-54. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-55. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-56. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-57. Neutral Arbitrator's Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-58. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

R-59. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

R-60. Sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35


## Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

P-1. General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36


## Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

E-1. Limitation on Extensions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

E-3. Serving of Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

E-5. Discovery, Motions, and Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through

Document Submission. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

E-7. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

E-10. Arbitrator's Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41


## Procedures for Large, Complex Commercial Disputes. . . . . . . . . . . . . . . . . . . . . . . . . .  42

L-1. Administrative Conference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43


## Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . . . . . . .  43


## Commercial Mediation Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

M-3. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

M-5. Mediator's Impartiality and Duty to Disclose  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

M-9. Privacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

M-11. No Stenographic Record ................................................. 48

M-12. Termination of Mediation ................................................. 48

M-13. Exclusion of Liability ....................................................... 48

M-14. Interpretation and Application of Procedures ............................... 48

M-15. Deposits ................................................................. 48

M-16. Expenses ................................................................. 49

M-17. Cost of the Mediation ..................................................... 49



# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at www.adr.org.

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $100,000, the Rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in reaching a

settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $1,000,000 exclusive of claimed interest, arbitration fees and costs. The key features of these Procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference or other electronic means;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These Rules and any amendment to them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these Rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties agree or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $100,000, exclusive of interest, attorneys' fees, and arbitration fees and costs. Parties may also agree to use these Procedures in larger cases. Unless the parties agree otherwise, these Procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Procedures E-1 through E-10, in addition to any other portion of these Rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $1,000,000, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $1,000,000 or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Procedures L-1 through L-3 in addition to any other portion of these Rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures; the Procedures for Large, Complex Commercial Disputes; or the Procedures for the Resolution of Disputes Through Document Submission (Procedure E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Rules R-1 through R-60 of these Rules.

*\* The AAA will apply the Employment/Workplace Rules to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. Should a contract call for the Consumer Rules, and the dispute is not between a consumer and a business, the AAA has the discretion to apply the Commercial Rules and Commercial Fee schedule. (Revised 5/1/25)*

*\* Beginning June 1, 2021, the AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user or subscriber (using or subscribed to the service as an individual and not incorporated) and the dispute does not involve work or work-related claims.*

## R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council

**(a)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration.

**(b)** The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The AAA requires that parties and their representatives conduct themselves in accordance with the AAA's *Standards of Conduct for Parties and Representatives* when utilizing the AAA's services. Failure to do so may result in the AAA's declining to further administer a particular case or caseload.

**(d)** For cases proceeding under the Procedures for Large, Complex Commercial Disputes, and for other cases where the AAA, in its sole discretion, deems it appropriate, the AAA may act through its Administrative Review Council to take the following administrative actions:

    **i)** determine challenges to the appointment or continuing service of an arbitrator;

    **ii)** make an initial determination as to the locale of the arbitration, subject to the power of the arbitrator to make a final determination; or

    **iii)** decide whether a party has met the administrative requirements to file an arbitration under these Rules.

## R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these Rules. The term "arbitrator" in these Rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

## R-4. Filing Requirements and Procedures

**(a)** Filing Requirements

    **i)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration. The filing fee must be paid before a matter is considered properly filed.

**ii)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   **a)** The filing party shall include a copy of the court order.

   **b)** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   **c)** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to Rule R-33.

**iii)** Parties to any existing dispute who have not previously agreed to use these Rules may commence an arbitration under these Rules by filing a written Submission Agreement and the administrative filing fee. To the extent that the parties' Submission Agreement contains any variances from these Rules, such variances should be clearly stated in the Submission Agreement.

**iv)** Information to be included with any arbitration filing includes:

   **a)** the name of each party;

   **b)** the address of each party and, if known, the telephone number and email address;

   **c)** if applicable, the name, address, telephone number, and email address of any known representative for each party;

   **d)** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

   **e)** the locale requested if the arbitration agreement does not specify one.

**(b)** Filing Procedures

**i)** The initiating party may file or submit a dispute to the AAA in the following manner:

   **a)** through AAA WebFile®, located at www.adr.org;

   **b)** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing; or

   **c)** by emailing the complete Demand or Submission to casefiling@adr.org, with payment to follow as directed by the AAA.

**ii)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

**iii)** Any papers, notices, or process necessary or proper for the initiation of an arbitration under this Rule may be served on a party:

    **a)** by mail addressed to the party or its authorized representative at their last known address;

    **b)** by electronic service/email, with the prior agreement of the party being served;

    **c)** by personal service; or

    **d)** by any other service methods provided for under the applicable procedures of the courts of the state where the party to be served is located.

**iv)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**v)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised with the arbitrator for determination.

**vi)** The AAA has the authority to make an administrative determination whether the filing requirements set forth in this Rule have been met.

**vii)** If the filing does not satisfy the filing requirements set forth in Section (a) above, the AAA shall acknowledge to all named parties receipt of the incomplete filing, and the filing may be returned to the initiating party.

**(c)** *Authority of arbitrator.* Any decision made by the AAA regarding filing requirements and procedures shall not interfere with the arbitrator's authority to determine jurisdiction pursuant to Rule R-7.

## R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the

amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of filing.  The claimant may file an answering statement or reply in response to the counterclaim with the AAA within 14 calendar days after notice of the filing of the counterclaim is sent by the AAA.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by any earlier date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in the administrative fee, the balance of the fee is due before the change of claim or counterclaim amount may be accepted by the arbitrator.  After the arbitrator is appointed, however, a party may increase the amount of its claim or counterclaim, or alter its request for non-monetary relief, only with the arbitrator's consent.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent.

**(c)** A party that filed a claim or counterclaim of an undisclosed or undetermined amount must specify the amount of the claim or counterclaim to the AAA, all parties, and the arbitrator at least seven calendar days prior to the commencement of the hearing or by any other date established by the arbitrator. If the disclosed amount of the claim or counterclaim results in an increased filing fee, that fee must be paid at the time the claim or counterclaim amount is disclosed. For good cause shown and with the consent of the arbitrator, a party may proceed to the hearing with an undisclosed or undetermined claim or counterclaim, provided that the final amount of the claim or counterclaim is set forth in a post-hearing brief or submission and any appropriate filing fee is paid.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## R-8. Consolidation and Joinder

**(a)** Consolidation

**i)** Two or more arbitrations may be consolidated if all parties to all of the arbitrations to be consolidated so agree.

**ii)** Unless all parties agree to consolidation, the party requesting consolidation of two or more arbitrations must file with the AAA and serve on all other parties a written request for consolidation with the supporting reasons for such request within 90 days of the date the AAA determines that all administrative filing requirements were satisfied for the last-filed case that is part of the consolidation request. Such time limit may be extended by the arbitrator appointed in the first-filed case upon a showing of good cause for the late request. The other parties to the arbitrations shall provide their written responses to the consolidation request within 10 calendar days after the AAA sends notice of receipt of the request.

**iii)** At its discretion, the AAA either may direct that the consolidation request be decided by the arbitrator appointed in the first-filed case or may appoint a consolidation arbitrator for the sole purpose of deciding the consolidation request.

**iv)** The arbitrator deciding consolidation may order consolidation of two or more cases for all purposes or for such limited purposes and under such conditions as the arbitrator may direct.

**v)** Absent agreement of all parties, an arbitrator appointed for the sole purpose of deciding the consolidation request shall have no further power to act, and shall be removed from the case, after the consolidation request is decided.

**vi)** In deciding whether to consolidate, the arbitrator or consolidation arbitrator shall take into account all relevant circumstances, including:

**a)** the terms and compatibility of the agreements to arbitrate,

**b)** applicable law,

**c)** the timeliness of the request to consolidate and the progress already made in the arbitrations,

**d)** whether the arbitrations raise common issues of law and/or fact, and

    **e)**  whether consolidation of the arbitrations would serve the interests of justice and efficiency.

**(b)** Joinder

    **i)**  Additional parties may be joined to an arbitration if all parties to the arbitration and the parties proposed to be joined so agree.

    **ii)**  Absent such consent, all requests for joinder must be submitted to the AAA prior to the appointment of an arbitrator pursuant to these Rules or within 90 days of the date the AAA determines that all administrative filing requirements have been satisfied. The arbitrator may extend this deadline on a showing of good cause for the late request.

    **iii)**  If the existing parties and the parties proposed to be joined are unable to agree to the joinder of those additional parties to an ongoing arbitration, the arbitrator shall decide whether parties should be joined. If an arbitrator has not yet been appointed in the case, the AAA may appoint an arbitrator for the sole purpose of deciding the joinder request. Absent agreement of all parties, the arbitrator appointed for the sole purpose of deciding the joinder request shall have no further power to act, and shall be removed from the case, after the joinder request is decided.

    **iv)**  The party requesting the joinder of one or more parties to a pending arbitration must file with the AAA a written request that provides the names and contact information for such parties; the names and contact information for the parties' representatives, if known; and the supporting reasons for such request, including applicable law. The requesting party must provide a copy of the joinder request to all parties in the arbitration and all parties it seeks to join at the same time it files the request with the AAA. The other parties to the arbitration and the parties sought to be joined shall provide their written responses to the joinder request within 14 days after the AAA sends notice of receipt of the request for joinder.

    **v)**  The requesting party shall comply with the provisions of Rule R-4(a) as to all parties sought to be joined.

**(c)** If an arbitrator determines that separate arbitrations shall be consolidated or that the joinder of additional parties is permissible, that arbitrator may also determine:

    **i)**  whether any arbitrator previously appointed to an existing case that was consolidated shall remain on the newly constituted case;

    **ii)**  whether any arbitrator previously appointed to a case where additional parties have been joined shall remain;

    **iii)**  if appropriate, a process for selecting the arbitrator(s) to fill any vacancies; and

    **iv)**  unless agreed otherwise by the parties, the allocation among the parties of arbitrator compensation and expenses, subject to reapportionment by the arbitrator appointed to the ongoing or newly constituted case in the final award.

    

**(d)**  The AAA may take reasonable administrative actions to accomplish any
consolidation or joinder ordered by the arbitrator or as agreed to by the parties.
Pending the determination on a consolidation or joinder request, the AAA shall
have the authority to stay the arbitration or arbitrations impacted by the
consolidation or joinder request, at its sole discretion.

## R-9. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules insofar as they relate to the
arbitrator's powers and duties. When there is more than one arbitrator and a
difference arises among them concerning the meaning or application of these
Rules, it shall be decided by a majority vote. If that is not possible, either an
arbitrator or a party may refer the question to the AAA for final decision. All other
rules shall be interpreted and applied by the AAA.

## R-10. Mediation

In all cases where a claim or counterclaim exceeds $100,000, upon the AAA's
administration of the arbitration or at any time while the arbitration is pending,
the parties shall mediate their dispute pursuant to the applicable provisions of
the AAA's Commercial Mediation Procedures, or as otherwise agreed by the
parties. Absent an agreement of the parties to the contrary, the mediation shall
take place concurrently with the arbitration and shall not serve to delay the
arbitration proceedings. However, any party to an arbitration may unilaterally
}opt out of this Rule upon notification to the AAA and the other parties to the
arbitration. The parties shall confirm the completion of any mediation or any
decision to opt out of this Rule to the AAA. Unless agreed to by all parties and
the mediator, the mediator shall not be appointed as an arbitrator to the case.

## R-11. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct
an administrative conference, in person, by videoconference or by telephone,
with the parties and/or their representatives. The conference may address such
issues as arbitrator selection, mediation of the dispute, potential exchange of
information, a timetable for hearings, and any other administrative matters.

## R-12. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held.
When the parties' arbitration agreement requires a specific locale, absent the
parties' agreement to change it, or a determination by the arbitrator that

applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days after the AAA sends notice of the filing of the Demand or by the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

(a) When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA shall initially determine the locale of arbitration, subject to the power of the arbitrator after appointment to make a final determination on the locale.

(b) If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

(c) If the parties' arbitration agreement specifies more than one possible locale, the filing party may select any of the specified locales at the time of filing, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

### R-13. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. At its discretion, the AAA may limit the number of strikes permitted. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if

for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

## R-14. Direct Appointment by Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. If a party selects an arbitrator for appointment, it shall file the name, address, telephone number, and email address of the arbitrator with the AAA. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Rule R-19 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Rule R-19(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or the AAA

**(a)** Where there is a panel of three or more arbitrators, one arbitrator will be designated as the panel chairperson. Such designation will be according to the terms of the parties' arbitration agreement. However, if the parties' arbitration agreement does not specify how the chairperson is to be selected, the chairperson can be designated, at the AAA's discretion, by the party-appointed arbitrators, the parties, the panel, or the AAA.

**(b)** If the arbitration agreement specifies a period of time for appointment of the chairperson and no appointment is made within that period or any agreed extension, the AAA may appoint the chairperson. If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

(c) Absent the agreement of the parties, the chairperson shall be appointed from the National Roster, and the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Rule R-13, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Rule.

## R-16. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these Rules.

## R-17. Number of Arbitrators

(a) The parties may agree on the number of arbitrators to hear and determine the case. If the arbitration agreement does not specify the number of arbitrators or is ambiguous, and the parties do not otherwise agree, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators are appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

(b) Use of terms such as "the arbitrator", "an arbitrator", or "the arbitrators" in the arbitration agreement, without further specifying the number of arbitrators, shall not be deemed by the AAA to reflect an agreement as to the number of arbitrators.

(c) Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the Rule R-6-required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

## R-18. Disclosure

(a) Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this Rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-42.

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Rule R-18 is not an indication that the arbitrator considers the disclosed circumstance likely to affect impartiality or independence.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   **i)** partiality or lack of independence,

   **ii)** inability or refusal to perform his or her duties with diligence and in good faith, and

   **iii)** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Rule R-14 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified on the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-20. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Rule R-14 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Rule R-20(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Rule R-19(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Rule R-19(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Rule R-20(a) should nonetheless apply prospectively.

**(c)** As set forth in Rule R-44, unless otherwise instructed by the AAA, in the Rules, or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-21. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these Rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-22. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person, by video conference or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Procedures P-1 and P-2 of these Rules address the issues to be considered at the preliminary hearing.

## R-23. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

   **i)** require the parties to exchange documents in their possession or custody on which they intend to rely;

   **ii)** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

   **iii)** require the parties, in response to reasonable document requests, to make available to the other party documents in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, and reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

iv) require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-24. Enforcement Powers of Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of Rules R-22 and R-23 and any other rule or procedure and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

(a) conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

(b) imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

(c) allocating costs of producing documentation, including electronically stored documentation;

(d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

(e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

## R-25. Date, Time, Place, and Method of Hearing

The arbitrator shall set the date, time, place, and method (including video, audio or other electronic means when appropriate) for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties.

### R-26. Attendance at Hearing

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

### R-27. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

### R-28. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### R-29. Official Record of Proceedings

**(a)** Any party desiring a transcribed record of a hearing shall make arrangements directly with a transcriber or transcription service and shall notify the arbitrator and the other parties of these arrangements at least seven calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

**(b)** No other means of recording any proceeding will be permitted absent the agreement of the parties or per the direction of the arbitrator.

**(c)** If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties at the direction of the arbitrator.

**(d)** The arbitrator may resolve any disputes with regard to apportionment of the costs of the transcription or other recording.

### R-30. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

### R-31. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

### R-32. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

### R-33. Conduct of Proceedings

**(a)** The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

**(c)** The arbitrator may also allow for some or all of the presentation of evidence by alternative means including video, audio or other electronic means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

**(d)** The parties may agree to waive oral hearings in any case and may also agree to utilize the *Procedures for Resolution of Disputes Through Document Submission*, found in Procedure E-6.

## R-34. Dispositive Motions

**(a)** The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines the moving party has shown that the motion is likely to succeed and to dispose of or narrow the issues in the case.

**(b)** Consistent with the goal of achieving an efficient and economical resolution of the dispute, the arbitrator shall consider the time and cost associated with the briefing of a dispositive motion in deciding whether to allow any such motion.

**(c)** Fees, expenses, and compensation associated with a motion or an application to make a motion may be assessed as provided for in Rule R-49(c).

## R-35. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

## R-37. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## R-38. Interim Measures

**(a)** The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

**(c)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## R-39. Emergency Measures of Protection

**(a)** Unless the parties agree otherwise, the provisions of this Rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013. This Rule shall not apply to cases administered pursuant to the Expedited Procedures.

**(b)** A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or email or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

(c) Within one business day of receipt of notice from the AAA initiating the request referenced in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall expeditiously disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

(d) The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule R-7, including the authority to rule on her or his own jurisdiction, and shall resolve any disputes over the applicability of this Rule R-39.

(e) If, after consideration, the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief under applicable law, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

(f) Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the non-emergency ("merits") arbitrator is appointed; thereafter such a request shall be addressed to the merits arbitrator. The emergency arbitrator shall have no further power to act after the merits arbitrator is appointed unless the emergency arbitrator is named as the merits arbitrator or as a member of the panel.

(g) Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

(h) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this Rule, and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

(i) The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the merits arbitrator to determine finally the apportionment of such costs. The emergency arbitrator may take into consideration whether the request for emergency relief was made in good faith.

## R-40. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-36, or if briefs are to be filed, the hearing shall be declared closed as of the date the arbitrator is satisfied that the record is complete, and such date shall occur no later than seven calendar days from the date of receipt of the last such submissions or hearing transcript.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

## R-41. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties, the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (or 14 calendar days if the case is governed by the Expedited Procedures).

## R-42. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

## R-43. Extensions of Time

The parties may modify by mutual agreement any period of time established by these Rules or the parties' arbitration agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## R-44. Serving of Notice and Communications

(a) The service methods set forth in Rule R-4(b)(iii) may also be used for the delivery of any filing, notice or communication throughout the course of the arbitration proceeding.

(b) The AAA, the arbitrator, and the parties may also use alternative methods of communication or other platforms as directed by the AAA or as agreed by the parties or directed by the arbitrator to exchange any communication or other notice required by these Rules during the course of the arbitration.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any party submitting any document or written communication to another party, the AAA or the arbitrator, shall simultaneously provide that material to all other participants, including the AAA.

(d) Failure to provide the other party with copies of communications provided to the AAA or the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

(e) The AAA may direct that any oral or written communications sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to comply with any such direction may result in the AAA's refusal to consider the issue raised in the communication

(f) The AAA may initiate administrative communications with the parties or their representatives either jointly or individually.

(g) Any method of service on or notice to a party must be made in such a manner to provide that party with reasonable opportunity to be heard with regard to the dispute.

## R-45. Confidentiality

(a) Unless otherwise required by applicable law, court order, or the parties' agreement, the AAA and the arbitrator shall keep confidential all matters relating to the arbitration or the award.

(b) Upon the agreement of the parties or the request of any party, the arbitrator may make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting trade secrets and confidential information.

## R-46. Majority Decision

(a) When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this Rule, a majority of the arbitrators must make all decisions.

(b) Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to

resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

**(c)** Absent an objection of a party or another member of the panel, the chairperson may sign any order on behalf of the panel.

## R-47. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

## R-48. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. Signatures may be executed in electronic or digital form. The award shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

## R-49. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award or any order disposing of all of the case, the arbitrator shall assess the fees, expenses, and compensation provided in Rules R-55, R-56, and R-57. The arbitrator may also assess such fees, expenses, and compensation in any order or award disposing of part of the case. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator may include:

   i)   interest at such rate and from such date as the arbitrator may deem appropriate; and

   ii)  an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement.

### R-50. Award Upon Settlement – Consent Award

**(a)** If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses as set forth in Rule R-49(c).

**(b)** The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

### R-51. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

### R-52. Modification of Award

**(a)** Within 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, interpret the award or correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to re-determine the merits of any claim already decided. The other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

**(b)** If the arbitrator has established a different schedule for such requests, responses, and disposition, the arbitrator's schedule will supersede the deadlines set forth in this Rule.

### R-53. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

### R-54. Applications to Court and Exclusion of Liability

**(a)** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in any judicial proceedings relating to the arbitration or any other services provided by the AAA.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that the AAA shall not be liable to any party in any action for damages, or injunctive or other relief, for any act or omission in connection with any arbitration administered in whole or in part by the AAA or conducted under these Rules. Parties shall also be deemed to have consented that the arbitrator shall not be liable to any party in any action for damages, or injunctive or other relief, for an act or omission in connection with any arbitration administered in whole or in part by the AAA.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## R-55. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the Demand is filed will apply throughout the pendency of the case. The administrative fees shall be paid initially by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

## R-56. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

## R-57. Neutral Arbitrator's Compensation

**(a)** Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation at the time their AAA resume is presented to the parties for consideration pursuant to Rule R-13, unless otherwise determined by the AAA. Such compensation will be consistent with the provisions of the arbitrator's executed *Notice of Compensation Arrangements*.

**(b)** If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

**(c)** Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

## R-58. Deposits

**(a)** The AAA will require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's compensation and expenses, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case. A party's failure to make the requested deposits by the date established by the AAA may result in the AAA's or the arbitrator's taking any appropriate steps as set forth in Rule R-59.

**(b)** Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

**(c)** The AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

**(d)** The AAA will allocate the deposits requested among the parties and will establish due dates for the collection of those deposits.

## R-59. Remedies for Nonpayment

If arbitrator compensation or expenses or the AAA's administrative fees have not been paid in full, the AAA may so inform the parties so that one of them may advance the required payment.

**(a)** Upon receipt of information from the AAA that payment for administrative fees or deposits for arbitrator compensation or expense have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment. Such measures may include, but are not limited to:

**i)** limiting a party's ability to assert or pursue its claim, and

**ii)** prohibiting a non-paying party from filing any motion.

**(b)** In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full payments requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

## R-60. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

## Preliminary Hearing Procedures

### P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

### P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

   **i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to Rule R-10;

   **ii)** whether all necessary or appropriate parties are included in the arbitration;

   **iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

   **iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

   **v)** which

   **a)** arbitration rules;

   **b)** procedural law; and

   **c)** substantive law govern the arbitration;

   **vi)** issues related to cybersecurity, privacy and data protection to provide for an appropriate level of security and compliance in connection with the proceeding;

   **vii)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

   **a)** any preconditions that must be satisfied before proceeding with the arbitration;

   **b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

    **c)** consolidation of the claims or counterclaims with another arbitration; or

    **d)** bifurcation of the proceeding.

**viii)** whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

**ix)** whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

**x)** how costs of any searches for requested information or documents that would result in substantial costs should be borne;

**xi)** whether any measures are required to protect confidential information;

**xii)** Whether the parties shall disclose:

    **a)** whether any non-party (such as a third-party funder or an insurer) has undertaken to pay or to contribute to the cost of a party's participation in the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the undertaking; and

    **b)** whether any non-party (such as a funder, insurer, parent company, or ultimate beneficial owner) has an economic interest in the outcome of the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the interest;

**xiii)** whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

**xiv)** whether, according to a schedule set by the arbitrator, the parties will:

    **a)** identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

    **b)** exchange and pre-mark documents that each party intends to submit; and

    **c)** exchange pre-hearing submissions, including exhibits;

**xv)** the date, time and place of the arbitration hearing;

    **a)** whether, at the arbitration hearing,

    **b)** testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

**xvi)** there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

**xvii)** whether any procedure needs to be established for the issuance of subpoenas;

**xviii)** the identification of any ongoing, related litigation or arbitration;

**xix)** whether post-hearing submissions will be filed;

**xx)**  the form of the arbitration award; and

**xxi)**  any other matter the arbitrator considers appropriate or a party wishes to raise.

**(b)**  The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

## Expedited Procedures

### E-1. Limitation on Extensions

**(a)** Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Rule R-5.

**(b)** Any other extension requests may be granted only after consideration of Procedure E-7.

### E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, any time prior to the appointment of the arbitrator. However, after the arbitrator is appointed, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $100,000, the case will be administered under the regular Commercial Arbitration Rules unless all parties and the arbitrator agree that the case may continue to be administered under the Expedited Procedures.

### E-3. Serving of Notice

In addition to notice provided by Rule R-44, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

### E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Rule R-19.

The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

## E-5. Discovery, Motions, and Conduct of Proceedings

**(a)** At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

**(b)** No other discovery shall be permitted except as allowed by the arbitrator for good cause shown. If the arbitrator allows additional discovery, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** There shall be no motions except as allowed by the arbitrator for good cause shown.

## E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this Procedure, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this Procedure, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in Rule R-48, when the parties have agreed to resolve their dispute by this Procedure, the

arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in Rule R-48, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the regular Commercial Arbitration Rules which pertain to awards.

### E-7. Date, Time, Place, and Method of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, place, and method of the hearing, to be scheduled to take place no more than 60 days after the preliminary hearing or as otherwise mutually agreed to between the parties and the arbitrator. The AAA will notify the parties in advance of the hearing date.

### E-8. The Hearing

**(a)** Absent good cause shown, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing.

**(b)** For good cause shown, the arbitrator may schedule one additional day of hearings to be completed within seven business days after the initial day of hearing or as soon as practicable as determined by the arbitrator. In cases where the hearing is scheduled to exceed one day, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** Generally, there will be no stenographic record. Any party desiring a transcribed record of the hearing may arrange for one pursuant to the provisions of Rule R-29.

### E-9. Time of Award

Unless otherwise agreed by the parties and arbitrator, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

### E-10. Arbitrator's Compensation

**(a)** Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

**(b)** For cases that are removed from the Expedited Procedures after the preliminary hearing is held, the arbitrator shall be compensated pursuant to Rule R-57.

## Procedures for Large, Complex Commercial Disputes

### L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA may, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call or video conference. The conference will take place as soon as practicable after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

### L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties do not agree upon the number of arbitrators and a claim or counterclaim involves at least $3,000,000 then three arbitrators shall hear and determine the case; otherwise one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, regardless of the amount of the claim and counterclaim.

**(c)** The AAA shall appoint the arbitrator as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator shall not have served as the mediator in the mediation phase of the instant proceeding.

## L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with Procedures P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator determines otherwise.

**(d)** The parties and the arbitrator shall address issues pertaining to the pre-hearing exchange and production of information in accordance with Rule R-23 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within a scheduling order.

**(e)** The arbitrator, or any single member of the panel, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within their discretion, including, without limitation, the issuance of orders set forth in Rules R-23 and R-24 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

## Administrative Fee Schedules (Standard and Flexible Fees)

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT
www.adr.org/feeschedule.

## Commercial Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via AAA WebFile at www.adr.org.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

(i) A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

(ii) The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

(iii) A brief statement of the nature of the dispute and the relief requested.

(iv) Any specific qualifications the mediator should possess.

### M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

(i) Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

(ii) If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

(iii) If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

### M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

### M-7. Duties and Responsibilities of the Mediator

(i) The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

(ii) The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

(iii) The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

(iv) The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

(v) In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

(vi) The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

- **(i)** Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;
- **(ii)** Admissions made by a party or other participant in the course of the mediation proceedings;
- **(iii)** Proposals made or views expressed by the mediator; or
- **(iv)** The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

### M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

### M-12. Termination of Mediation

The mediation shall be terminated:

- **(i)** By the execution of a settlement agreement by the parties; or
- **(ii)** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or
- **(iii)** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or
- **(iv)** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

### M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

### M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

### M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-17. Cost of the Mediation

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT www.adr.org/feeschedule.

*© 2025 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*

American Arbitration Association®

# EXHIBIT E



Anthony Williams

anthony.williams@dentons.com
D    +1 212-905-8308

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

dentons.com

April 17, 2024

**Via Email to: MikePostal@TenacityGroup.com**

Michael Postal

Re:     Swain's Landing LaPlata JC LLC re: Member Withdraw and Return of Capital Contribution

Dear Mr. Postal:

This letter follows our telephone discussion on November 21, 2023 and last email correspondence on February 12, 2024.

As you know, we represent Claudia Engelhorn as Trustee of the Whitewater Revocable Trust dated September 30, 2021 (the "Trust"). As Anthony Williams has expressed to you several times, Ms. Engelhorn does not have the appetite to continue the Swain's Landing project any longer and wishes to have her capital contribution of $585,000.00 returned to her.

Per our previous discussions:

- You indicated you are working with a new investor for Swain Landing LaPlata JC LLC ("Swain") who may be able to purchase Claudia's interest.
- You thought you would be able to get Claudia's principal, and potentially some interest, back to her by the end of the first quarter of this year.
- You stated the Project has been delayed due to the Town of LaPlata's ("Town") water availability problem and, therefore, have not made a formal presentation to the investor yet.
- You stated you planned on making the presentation to the new investor regardless of the status of Town's the water availability problem.

We are now past the end of the first quarter. We appreciate your prompt response on when you believe our client will be receiving her capital contribution back.

Very truly yours,

Patricia L. Lincoln
on behalf of Anthony Williams

AW:pl

Puyat Jacinto & Santos ▸ Link Legal ▸ Zaanouni Law Firm & Associates ▸ LuatViet ▸ For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

US_ACTIVE\126672132\V-1

# EXHIBIT F

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CLAUDIA ENGELHORN, et al,

                         Plaintiff,

vs.                             Case Number:
                                 C-24-CV-24-002631

ERIK BOLOG, et al.,

                         Defendant.
_____/

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Motion's Hearing)

Baltimore, Maryland

Monday, January 27, 2025

BEFORE:

THE HONORABLE JEFFREY GELLER, Associate Judge

APPEARANCES:

For the Plaintiff:

PATRICK GARDNER, ESQUIRE

For the Defendants, Whiteford, Taylor, and
Preston:

JOHN J. CONNOLLY, ESQUIRE
WILLIAM J. MURPHY, ESQUIRE

For the Defendant Erik Bolog individually and
as Trustee for the Jareb Irrevocable Trust
Agreement; Science Park Associates, LLC; and
Darnestown Road, Inc. et al.:

DOUGLAS GANSLER, ESQUIRE
J.B. HOWARD, ESQUIRE
ZACK SCHRIEBER, ESQUIRE

* Remote Electronic Proceedings Digitally Recorded *

Transcribed by:
Patricia Trikeriotis
Chief Court Reporter
111 N. Calvert Street
Suite 619, Cummings Courthouse
Baltimore, Maryland 21202

1

1        By the time the gift was made or any of the

2    transactions in this case occurred, that case was long

3    over, right for Taylor got its $4 million, Ms. Englehorn

4    got her $130 million as a result of the settlement of

5    that case, of the Swiss litigation case.  So -- and there

6    exists no other retainer letters regarding any other of

7    these matters, so that's it.  I mean, it's that simple.

8        It's clearly -- look, had there been a

9    disagreement or an issue that had come up during the

10   course of the Swiss litigation, then of course this

11   exegesis regarding Colorado versus Maryland law and the

12   Rules of Professional Conduct and all those things would

13   come into play.  But here, there is no arbitration clause

14   relevant to any of the issues that are brought in the

15   complaint by the Plaintiff.  So we have no we have no dog

16   in the fight, but it seems clear to me that there is no

17   fight.

18        THE COURT:  All right.  Thank you.

19        Back to Mr. Connelly.

20        MR. CONNOLLY:  Your Honor, I was on mute.  I

21   apologize.

22        With respect to what Mr. Gansler just said, I'm

23   not sure I fully understand it, but it's contrary to what

24   he wrote.  If he's saying that the arbitration clause

25   does not apply to the current dispute, he's totally

32

REPORTER'S CERTIFICATE

I, Patricia Trikeriotis, Chief Court Reporter
of the Circuit Court for Baltimore City, do hereby
certify that the proceedings in the matter of Claudia
Engelhorn, et al., vs. Erik Bolog, et al., Case Number C-
24-CV-24-00263, before the Honorable Jeffrey Geller,
Associate Judge, on January 27, 2025 were duly recorded
by means of digital recording.

I further certify that the page numbers 1
through 92 constitute the official transcript of these
proceedings as transcribed by me or under my direction
from the digital recording to the within typewritten
matter in a complete and accurate manner.

In Witness Whereof, I have affixed my signature
this 6th day of April, 2025.

_____

Patricia Trikeriotis
Chief Court Reporter

93

EXHIBIT G

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | |
|---|---|
| **CLAUDIA ENGELHORN**<br>1727 Kingsbury Drive,<br>Nashville, Tennessee 37215<br><br>and<br><br>**CLAUDIA ENGELHORN, AS TRUSTEE OF**<br>**THE WHITEWATER REVOCABLE TRUST**<br>**DATED SEPTEMBER 30, 2021**<br>1727 Kingsbury Drive,<br>Nashville, Tennessee 37215<br><br>and<br><br>**WHITE PEARL, LLC**<br>1209 Orange Street<br>Wilmington, Delaware 19801<br><br>    *Plaintiffs*<br><br>v.<br><br>**ERIK D. BOLOG**<br>9312 Chesley Road<br>Potomac, Maryland 20854<br><br>and<br><br>**ERIK D. BOLOG, AS TRUSTEE OF THE**<br>**JAREB IRREVOCABLE TRUST**<br>**AGREEMENT DATED OCTOBER 11, 2021**<br>The Bolog Law Group<br>1763 Columbia Road, NW, Suite 450N<br>Washington, DC 20018<br><br>and<br><br>**WHITEFORD, TAYLOR & PRESTON, LLP**<br>Seven St. Paul Street<br>Suite 1900<br>Baltimore, Maryland 21202 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No.:**    **C-24-CV-24-002631** |

Serve On:                                          )
Resagent, Inc.                                     )
Seven St. Paul Street                              )
Suite 1900                                         )
Baltimore, Maryland 21202                          )
                                                   )
and                                                )
                                                   )
**MICHAEL POSTAL**                                 )
4302 Broken Arrow Court                            )
Clinton, Maryland 20735                            )
                                                   )
and                                                )
                                                   )
**POJO LAPLATA LLC**                               )
4302 Broken Arrow Court, Apt. 606                  )
Clinton, Maryland 20735                            )
    Serve On:                                      )
    Anjon Jones                                    )
    4302 Broken Arrow Court                        )
    Clinton, Maryland 20735                        )
                                                   )
and                                                )
                                                   )
**DARNESTOWN ROAD, INC.**                          )
8938 Abbey Terrace                                 )
Potomac, Maryland 20854                            )
    Serve On:                                      )
    Erik D. Bolog                                  )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )
**SCIENCE PARK ASSOCIATES, LLC**                   )
6701 Democracy Boulevard                           )
Suite 515                                          )
Bethesda, Maryland 20717                           )
    Serve On:                                      )
    Erik D. Bolog, Esq.                            )
    8938 Abbey Terrace                             )
    Potomac, Maryland 20854                        )
                                                   )
and                                                )
                                                   )

2

**SWAIN LANDING LAPLATA JC, LLC**     )
4302 Broken Arrow Court     )
Clinton, Maryland 20735     )
     Serve On:     )
     Anjon Jones     )
     4302 Broken Arrow Court     )
     Clinton, Maryland 20735     )
     )
     and     )
     )
**TENACITY INVESTMENTS, LLC**     )
7333 New Hampshire Avenue     )
Unit 103     )
Takoma Park, Maryland 20912     )
     **Serve On:**     )
     Mike Postal     )
     7333 New Hampshire Avenue     )
     Unit 103     )
     Takoma Park, Maryland 20912     )
     )
     *Defendants*.     )

---

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Claudia Engelhorn, individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC, file this Second Amended Complaint and Demand for Jury Trial against Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, Whiteford, Taylor & Preston, LLP, Michael Postal, POJO LaPlata LLC, Darnestown Road, Inc., Science Park Associates, LLC, Swain Landing LaPlata JC, LLC, and Tenacity Investments, LLC, and respectfully states as follows:

## PARTIES

1.     That Plaintiff, Claudia Engelhorn ("Plaintiff Engelhorn"), is a citizen of the State of Tennessee.

3

2.      That Plaintiff, Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended ("Plaintiff Trust").

3.      That White Pearl, LLC is a single-member, limited liability company organized under the laws of Delaware, with Plaintiff Engelhorn being the sole member.

4.      That Plaintiff Engelhorn and Plaintiff Trust are the former clients of attorney Erik D. Bolog, Esquire, and the law firm of Whiteford, Taylor & Preston, LLP.

5.      That Defendant, Erik D. Bolog ("Defendant Bolog"), is, and at all times relevant hereto, was an attorney licensed to practice law in Maryland, Virginia, and the District of Columbia.  Defendant Bolog served as a Trustee of the Whitewater Revocable Trust dated September 30, 2021, until Plaintiff Engelhorn amended and restated the Trust on November 3, 2022, thereby removing Defendant Bolog as a Trustee of the Whitewater Revocable Trust dated September 30, 2021.  Upon information and belief, Defendant Bolog resides at 9312 Chesley Road, Potomac, Maryland 20854.  Defendant Bolog is, and at all times relevant hereto was, the Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021.

6.      That Defendant, Whiteford, Taylor & Preston, LLP (hereinafter "Defendant WTP"), is, and at all times relevant hereto, was a limited liability partnership formed under the laws of the State of Maryland.  Defendant, Whiteford, Taylor & Preston, LLP operates as a law firm, with its principal place of business in Baltimore City, Maryland.  At all relevant times, Defendant WTP was the employer and/or the actual and/or apparent principal of Defendant Bolog and the other attorneys identified herein.  At all relevant times, Defendant Bolog and the other attorneys identified herein were the actual and/or apparent agents of WTP, and WTP made representations to this effect to the public, including Plaintiffs, who reasonably relied upon them.

4

7.     That, at all times relevant hereto, Defendant Bolog was a Senior Counsel and/or Partner with Defendant WTP.

8.     That Defendant, Michael Postal ("Defendant Postal"), is, and at all times relevant hereto, was a resident of Clinton, Maryland.  Defendant Postal is a long-time friend of, business associate of, and client of Defendant Bolog.  Defendant Postal has also been represented by Defendant WTP.

9.     That Defendant, POJO LaPlata, LLC ("Defendant POJO"), is, and at all times relevant hereto, was a limited liability company organized under the laws of Maryland.  Defendant POJO is a forfeited entity.

10.     That Defendant, Darnestown Road, Inc. ("Defendant DRI"), is, and at all times relevant hereto was, an incorporated entity formed under the laws of the State of Maryland.  The Maryland Department of Assessments and Taxation identifies the principal office of Darnestown Road, Inc. as being 8938 Abbey Terrace, Potomac, Maryland 20854, which is the former residential address for Defendant Bolog.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was an owner of Defendant DRI and also serves as its resident agent.

11.     That Defendant, Science Park Associates, LLC ("Defendant Science Park"), is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, Defendant Bolog, at all times relevant hereto, is and was a member of Science Park Associates, LLC.

12.     That Defendant, Swain Landing LaPlata JC, LLC ("Defendant Swain Landing") is, and at all times relevant hereto was, a limited liability company organized under Maryland law.  Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner); (2) Defendant

POJO (30% owner); and (3) Defendant Postal (20%). That the proposed operating agreement for Defendant Swain Landing identifies Defendant WTP's D.C. office located at 1800 M Street, Suite #450N, Washington, D.C. 20036, as its principal office and place of business; however, such proposed operating agreement apparently remains unsigned.

13.     That Defendant, Tenacity Investments, LLC ("Defendant Tenacity Investments, LLC") is, and at all times relevant hereto was, a limited liability company organized under Maryland law. Defendant Tenacity Investments, LLC is a forfeited entity.

## JURISDICTION AND VENUE

14.     That jurisdiction is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(5).

15.     That jurisdiction is also proper under Md. Code Ann., Est. & Trusts § 14.5-202.

16.     That venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8). To the extent that any of the Defendants are found to be nonresidents, then venue would also be proper under Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

17.     That this Honorable Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

## FACTUAL BACKGROUND

18.     That, at all times relevant hereto, Defendant Bolog was an attorney licensed in Maryland, the District of Columbia, and Virginia, practicing law with Defendant WTP, and was a Senior Counsel and/or Partner at WTP.

19.     That Defendant WTP has a long-standing relationship with Defendant Bolog that comes in various forms, as Defendant Bolog has been one of the Senior Counsel and/or Partners at Defendant WTP, one of its clients, and one of its co-counsel.

20.     That Defendant WTP knew or should have known that Defendant Bolog has a financial history significant for failing to timely pay his debts, failing to timely pay his taxes, and converting monies for which he was not entitled, as evidenced by the following matters:

    a.     The Harbor School Corporation sued Defendant Bolog in the District Court of Maryland for Montgomery County, arising from his failure to pay an $80.00 debt, which resulted in a judgment for $90.00 after the inclusion of a filing fee.  *See* Case No.: 0602-0006927-2002.

    b.     The State of Maryland filed a Certification of Assessment and Tax Lien under the Maryland Unemployment Law in the amount of $397.88 on January 26, 2006. *See* Case No.: 268674-V.

    c.     The Law Offices of William Johnson sued My New Hampshire, LLC, Defendant Bolog, and Defendant Postal on November 23, 2009, in the United States Bankruptcy Court for the District of Columbia ("USDC Action").  That it was alleged in the USDC Action that Defendants Bolog and Postal had acquired shares of the Metropolitan Cooperative Association and became shareholders therein.  It was further alleged that Defendants Bolog and Postal had become guarantors on a retainer agreement entered into by Metropolitan Cooperative Association, but that they failed to pay the sums allegedly due as guarantors.  Defendants Bolog and Postal were represented by several attorneys from Defendant WTP in the USDC Action.  The USDC Action appears to have resulted in a settlement.

d.      The United States of America filed a Federal tax lien against Defendant

Bolog in the Circuit Court for Montgomery County on March 15, 2010, in the amount of

$7,218.00.  *See* 87230F.

e.      On or about March 21, 2013, James Westenhoefer, the Chapter 7 Trustee in

*In Re Brenda Kay Brown* filed a Complaint sounding in fraud and other allegations against

Defendant Bolog and The Bolog Firm in the United States Bankruptcy Court for the

Eastern District of Kentucky, Pikesville Division ("EDK Action").  *See* Case No.: 13-

07009.  In that Complaint, Defendant Bolog was sued because he "wrongfully converted

and transferred property of the [bankruptcy] Estate" to himself and others.  Defendant

Bolog and The Bolog Firm settled the claims against them.  The Bolog Firm is a law firm

that Defendant Bolog owned and operated before joining Defendant WTP.[1]

f.      The Takoma Overlook Condominium Association, Inc. sued Defendants

Bolog and Postal, among others, in the Circuit Court for Montgomery County, Maryland,

on March 25, 2015.  *See* 402700-V.  Julianne E. Dymowski, Esquire of Defendant WTP,

represented Messrs. Postal and Bolog in that matter.

g.      Congressional Bank sued Erik and Debra Bolog in the matter of

*Congressional Bank v. Debra Bolog, et al*., on May 8, 2018, in the Circuit Court for

Montgomery County.  *See* Case No.: 447498.

---

[1] That, on or about January 13, 2014, Mr. Westenhoefer filed a separate Complaint, this time against Whiteford, Taylor
& Preston, LLP.  *See* Case No.: 14-07006-acs in the United States Bankruptcy Court for the Eastern District of
Kentucky, Pikesville Division (EDK Action #2).  In that Complaint, Mr. Westenhoefer alleged that Defendant
Whiteford, Taylor & Preston, LLP had failed to disclose a known, ongoing relationship with Defendant Bolog.  In
that case, it was alleged that the Whiteford, Taylor & Preston, LLP had converted the Debtor's property and had
engaged in other fraudulent activity.  Mr. Westenhoefer sought for the Court to order Defendant WTP "to turn over
immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor…"  Ultimately, the Court entered
an Order and Judgment Approving Settlement Agreement pursuant to Bankruptcy Rule 9019 wherein Whiteford,
Taylor & Preston, LLP had a judgment entered against it for $50,000.00.

h.      American Express National Bank filed a lawsuit against Defendant Bolog

for an unpaid debt in the amount of $16,081.54 on September 23, 2019, in the Superior

Court of the District of Columbia, Case No.: 2019 CA 006319 C.   American Express

National Bank identified Defendant Bolog's address as being Defendant WTP's D.C.

office, 1800 M Street, NW, #450N, Washington, DC 20036.

i.      American Express National Bank filed a separate lawsuit against Defendant

Bolog seeking $74,491.64 on September 25, 2019, in the Superior Court of the District of

Columbia, Case No.: 2019 CA 006316 C.   American Express National Bank identified

Defendant Bolog's address as being Defendant WTP's D.C. office, 1800 M Street, NW,

#450N, Washington, DC 20036.

21.     That, after both Defendants Erik D. Bolog and Whiteford, Taylor & Preston, LLP

settled the claims asserted against them in the EDK Action and EDK Action #2 for conversion and

fraudulent activity, Defendant WTP brought Defendant Bolog on as an attorney at its firm, despite

having express knowledge as to his financial issues and conversion of monies that did not belong

to him and other fraudulent behavior.

22.     That, based on its representation of Defendant Bolog and publicly available

information regarding Defendant Bolog's repeat failure to timely pay his debts and conversion of

monies, Defendant WTP knew or should have known that Defendant Bolog would be at risk to

misuse client funds and take other nefarious actions to raise monies to cover his fraudulent actions

and address his financial distress.   Defendant Bolog's failure to live within his means, satisfy his

debts, and meet financial obligations were examples of his poor self-control, lack of judgment,

and/or unwillingness to abide by rules and regulations, all of which should have alerted Defendant

WTP as to the patent issues concerning Defendant Bolog's reliability, trustworthiness, and ability

to competently oversee the monies of clients and third parties.  Defendant Bolog, as an individual who was financially overextended, was at greater risk of engaging in illegal or fraudulent acts to generate money.

23.    That Defendant WTP not only knew or should have known of the risks associated with having Defendant Bolog oversee client monies, but it actually placed him in a position to misuse such monies and facilitated his doing so by drafting documents that made him a trustee for the two separate trusts identified herein.

## Fraudulent $10 Million "Gift"

24.    That Plaintiff Engelhorn retained Defendant WTP on an hourly fee basis to represent her with respect to a legal dispute.

25.    That Defendant WTP assigned Defendant Bolog to work on Plaintiff Engelhorn's legal dispute and/or Defendant Bolog offered to do so, and Defendant WTP permitted him to do so.

26.    That the legal dispute resulted in Plaintiff Engelhorn receiving a monetary settlement.

27.    That Plaintiff paid Defendant WTP all of the undisputed fees and expenses due and owing with respect to its representation of her.  There is no balance due and owing to Defendant WTP.

28.    That the proceeds of the settlement arising from the legal dispute were wired to Defendant WTP's escrow account and/or Interest on Lawyers' Trust Account ("IOLTA").

29.    That all three jurisdictions in which Defendant Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below:

Maryland

> An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client. For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the attorney or the client maintains a close, familial relationship.

> Md. Rule 19-301.8(c).

District of Columbia

> A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close familial relationship.

> D.C. Bar Appx. A, Rule 1.8(b).

Commonwealth of Virginia

> A lawyer shall not solicit, for himself or a person related to the lawyer, any substantial gift from a client including a testamentary gift. A lawyer shall not accept any such gift if solicited at his request by a third party. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, a person related to a lawyer includes a spouse, child, grandchild, parent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

> Va. Sup. Ct. R. pt. 6, sec. II, 1.8(c).

30.     That, on September 9, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a "revocable trust." It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust dated September 30, 2021.

11

31.     That, at or near this same time, Defendant Bolog and/or other attorneys at Defendant WTP coordinated the establishment of a bank account ending in 4855 in the name of Whitewater Revocable Trust Dated September 30, 2021, and used Defendant WTP's office located at 1800 M Street, NW, Suite 450N, Washington, DC 20036-5869 to receive account statements.

32.     That Defendant Bolog, Individually and as an agent or employee of Defendant WTP, coordinated the delivery of the settlement proceeds via wire to Defendant WTP's escrow and/or IOLTA.  On or about September 27, 2021, the settlement proceeds were wired to Defendant WTP's escrow and/or IOLTA.

33.     That, on or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees.  Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021.

34.     That, on or about October 7, 2021, Defendant WTP wired approximately $11 million of the settlement proceeds to Plaintiff Engelhorn's personal Bank of America account and the remainder to the Plaintiff's Trust's savings account.

35.     That, on or about October 11, 2021, Defendant Bolog, with the assistance of other lawyers at Defendant WTP, established the JAREB Irrevocable Trust, with Plaintiff Engelhorn as the Grantor and Defendant Bolog as the Trustee, and to be governed by the laws of the State of Maryland.  That WTP charged Plaintiffs for their time drafting documents to establish the JAREB Irrevocable Trust or, at a minimum, recorded time entries for such services.  The JAREB Irrevocable Trust authorized Defendant Bolog, in his sole and absolute discretion as trustee, to distribute the net income and principal of this Trust to himself.  According to the terms of this Trust, at Defendant Bolog's death, the remaining trust property would be equally distributed to his

12

children.  The JAREB Irrevocable Trust claimed that Plaintiff, as grantor, transferred and delivered $10 million to the JAREB Irrevocable Trust.  That said funds were transferred from a bank account owned by Plaintiff Engelhorn.

36.    That, on or about October 11, 2021, Plaintiff Engelhorn was vacationing in Cape Code, Massachusetts, when Defendant Bolog arrived and advised her that he needed something signed.  Defendant Bolog also stated that he needed the documents notarized, so he had Sarah Mayo arrive and notarize the documents.  Defendant Bolog directed Plaintiff Engelhorn to sign numerous documents that were upside down.  Unbeknownst to Plaintiff, Defendant Bolog tricked Plaintiff into signing the JAREB Irrevocable Trust Agreement dated October 11, 2021, a Notice of Gift for an irrevocable trust for Defendant Bolog's benefit and wire instructions to transfer money from Plaintiff's personal account to Defendant Bolog's irrevocable trust, *i.e.*, the JAREB Irrevocable Trust Agreement dated October 11, 2021.  Defendant Bolog did not explain the documents to Plaintiff, did not offer her the opportunity to first read them, and lulled her into believing the documents concerned routine matters requiring her signature.  Plaintiff Engelhorn trusted and relied on Defendant Bolog and, as a result, signed the documents.  At the time Plaintiff signed these documents, she neither intended to give a gift to Defendant Bolog nor transfer any money to him or the JAREB Irrevocable Trust; she did not read the documents and was unaware that she was gifting or transferring $10 million to Defendant Bolog or the JAREB Irrevocable Trust at the time she signed the aforementioned documents.

37.    That Notice of Gift prepared by Defendant Bolog falsely represents that Defendant Bolog "begged" Plaintiff to retain independent counsel to provide her with independent legal advice with respect to the $10 million gift.  The Notice of Gift is dated and signed on the same date, such that there would not have been an opportunity for Plaintiff, Claudia Engelhorn, while

on vacation, to consult with independent counsel had she even realized what she was signing on October 11, 2021.

38.     That Maryland Rule 19-301.8(c) provides that: "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the attorney or other recipient of the gift is related to the client.  For purposes of this section, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the attorney or the client maintains a close, familial relationship."  That Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct. Defendant Bolog is not related to Plaintiff Engelhorn.

39.     That Plaintiff Engelhorn did not intend to give Defendant Bolog, his family, or the JAREB Irrevocable Trust a $10 million gift.  Further, Defendant Bolog did not advise Plaintiffs Engelhorn and Trust to obtain independent counsel, and Plaintiffs Engelhorn and Trust did not retain independent counsel before signing the Notice of Gift, nor could they have.

40.     That, had Defendant Bolog explained to Plaintiff Engelhorn what she was actually signing, that it was a gift, and that she needed independent counsel, Plaintiff Engelhorn would have obtained such counsel.  She would not have signed the documents, would have retained independent counsel, and would not have made a $10 million gift.  After Plaintiff Engelhorn realized that Defendant Bolog had defrauded her into making a gift of $10M, Plaintiff Engelhorn sent an email on July 6, 2022, demanding a return of the monies.  Defendant Bolog has refused to return the $10M to Plaintiffs Engelhorn and Trust.

41.     That Defendant Bolog knew the Notice of Gift, JAREB Irrevocable Trust, and wire instructions contained false statements, namely that Plaintiffs Engelhorn and Trust intended to

make a $10 million gift and transfer said funds to the JAREB Irrevocable Trust, or, at a minimum, he was recklessly indifferent to the truth, and Defendant Bolog made and used these false statements and documents for the purpose of defrauding Plaintiffs Engelhorn and Trust.

42.    That, as a result of the $10M transfer to the JAREB Irrevocable Trust, which Defendant Bolog falsely characterized as a gift, Plaintiff could be subjected to significant federal estate and gift taxes.  Defendant Bolog failed to advise Plaintiff concerning these tax implications.

43.    That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog and/or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, fraudulently obtained $10 million from Plaintiffs Engelhorn and Trust, thus causing Plaintiffs Engelhorn and Trust to suffer $10 million in damages, not to mention the loss of use of these funds.

44.    That, despite Plaintiff Engelhorn's written demand for a return of the $10 million, Defendant Bolog has refused to return the $10M to her or Plaintiff Trust.

45.    That, in addition to false or recklessly causing Plaintiff to make a $10 million transfer to him, Defendant Bolog caused the transfer of millions of dollars belonging to Plaintiffs to entities that he owned and/or were owned by his close friends, business associates, and/or clients.

**Fraud and Embezzlement by Science Park Associates, LLC**

46.    All three jurisdictions in which Defendant Bolog is licensed have restrictions on attorneys entering into business transactions with clients.

47.    That, on or about June 5, 2009, Defendant Bolog executed a Loan and Security Agreement ("Loan Agreement") on behalf of Defendant Science Park as its managing member. As part of this Loan Agreement, the bank loaned Defendant Science Park approximately $5.5

15

million and, in exchange, the bank obtained a security interest, via a Deed of Trust, in a Greenbelt Property, a commercial building and real estate in Prince George's County, Maryland. Thereafter, the Deed of Trust was properly recorded in Prince George's County, Maryland. In addition to the Deed of Trust, on or about June 5, 2009, Defendant Bolog's company, Tenacity Investments, LLC, guaranteed the Loan Agreement.

48.    That on or about November 26, 2014, Defendant Bolog, on behalf of himself and as manager of Tenacity Investments, LLC, executed another guarantee related to the Loan Agreement between Defendant Science Park and the bank.

49.    That, upon information and belief, Defendant Bolog's company, Defendant Science Park, derived rental income from the Greenbelt Property.

50.    That, in or around March 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Assignment of Amended and Restated Deed of Trust, Security Agreement, and Assignment of Leases and Rents" ("March 2022 Assignment"). Under the terms of the March 2022 Assignment, the Plaintiff Trust was assigned and acquired the remaining debt on the Loan Agreement, namely, $4,655,765, and, in exchange, allegedly obtained a security interest via a Deed of Trust (the "March 2002 Deed of Trust"), in the Greenbelt Property. As a result of this transaction, Defendant Science Park's obligation to repay the commercial loan to the bank and the guaranty entered into by Tenacity Investments, LLC, as required by the Loan Agreement, was extinguished.

51.    That, on or about March 24, 2022, Defendant Bolog caused Plaintiff Trust's bank account to wire approximately $3,352,650 to the bank, consistent with the March 2022 Assignment.

16

52.    That, on or about March 24, 2022, upon information and belief, Defendant Bolog drafted or caused to be drafted an "Amendment to Amended and Restated Term Loan Promissory Note" (the "2022 Promissory Note") between Defendant Science Park and the Plaintiff Trust. Under the terms of the 2022 Promissory Note, among other terms, Defendant Science Park agreed to pay the Plaintiff Trust a monthly interest-only payment of $12,572.00, which it never did.

53.    That Defendant Bolog, who was Plaintiff Engelhorn's attorney and trustee of the Plaintiff Trust at the time of this transaction, covered up and concealed his ownership interest in Defendant Science Park from Plaintiff Engelhorn, contrary to his ethical and fiduciary duties as Plaintiff Engelhorn's attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust. Further, based on information and belief, Defendant Bolog failed to record the March 2002 Deed of Trust to the legal and financial detriment of the Plaintiff Trust.

54.    That, after the 2022 Promissory Note was executed between Defendant Science Park and the Plaintiff Trust, Defendant Science Park failed to make any monthly payments to the Plaintiff Trust.

55.    That, on or about April 19, 2023, Defendant Science Park sold the Greenbelt Property to Prince George's County for $5,545,820.

56.    That Defendant Bolog failed to disclose Defendant Science Park's sale of the Greenbelt Property to Plaintiff Engelhorn and Plaintiff Trust, contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Trust.

57.    That, on or about March 23, 2022, Heidi Aviles of Shore United Bank sent a letter to Defendant Science Park, care of Defendant Bolog at Whiteford, Taylor & Preston, LLP's Washington, D.C. office, identifying the payoff on the Greenbelt property as being $3,352,650.32.

17

58.     That, on or about November 3, 2022, Plaintiff Engelhorn amended the Plaintiff Trust to remove Defendant Bolog as a Trustee.

59.     That, on or about April 27, 2023, Alexandra L. Neifert, Esquire of Defendant WTP, wrote an email stating that the payoff for the Trust was $3,689,662.77.

60.     That, in or around this time, the Plaintiff Trust learned about the sale of the Greenbelt Property and demanded Defendant Bolog to repay Defendant Science Park's obligation under the 2022 Promissory Note.  As a result of this demand, the Plaintiff Trust was paid $3,689,662.77 from the sales proceeds.

61.     That the Plaintiffs had not received any mortgage payments or assignment of rent payments as of the time of the sale in April 2023, such that they lost out on the use of these monies.

### Embezzlement of $350,000: Darnestown Road, Inc. Scheme

62.     That, on or about December 21, 2021, Defendant Bolog, as trustee of the Plaintiff Trust and Senior Counsel at Defendant WTP, directed the Plaintiff Trust's bank—via his email account at Defendant WTP—to wire $350,000 to Darnestown Road, Inc.

63.     That, on or about December 21, 2021, as a result of Defendant Bolog's wire instructions, approximately $350,000 was wired from the Plaintiff Trust's bank account to Darnestown Road, Inc.'s bank account.

64.     That, upon information and belief, Defendant Bolog was an officer of and maintained an ownership interest in Darnestown Road, Inc. at the time of the wire transfer.

65.     That Defendant Bolog neither obtained anything of value in return for the Plaintiff Trust, such as stock or debt security, nor any instrument securing the Plaintiff Trust's right to repayment in exchange for this $350,000 payment to Darnestown Road, Inc., and he covered up, concealed, and failed to disclose his interest in this company before authorizing the transaction

and further failed to conceal that these monies were used to replace funds that he had embezzled from Darnestown Road, Inc., contrary to his ethical and fiduciary duties as Plaintiffs' attorney and contrary to his fiduciary duties as trustee of the Plaintiff Trust.

66.     That the Plaintiff Trust has never been repaid these monies.

67.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently obtained $350,000 from the Plaintiff Trust, thus causing the Plaintiff Trust to suffer $350,000.00 in damages.

**Embezzlement of $585,000: Swain Landing Scheme**

68.     That Defendant Postal is a long-time business associate of Defendant Bolog's and a former client of Defendants WTP and Bolog, as Defendant WTP represented Mr. Postal in the USDC action and Defendant Bolog represented Mr. Postal in the matter of *Postal v. Somerset House Condominium Unit Owners Association, et al.*, which was filed on or about August 31, 2020, in the Superior Court of the District of Columbia.

69.     That, in or around January 5, 2022, Plaintiff Engelhorn sold a home located at 747 High Point Ridge Road, Franklin, Tennessee, which resulted in her having $1,334,737.58 deposited into a Bank of America account ending in 3122.  An entity owned by Plaintiff Engelhorn, White Pearl, LLC, was the account owner of the account ending in 3122.   Defendant Bolog knew that Plaintiff Engelhorn realized these monies from the sale of her home.

70.     That, on or about January 5, 2022, Defendant Postal emailed Defendant Bolog, stating "$585,000" and including Defendant Swain Landing's account and routing numbers.

71.     That Defendant Postal, as the managing member and an owner of Defendant Swain Landing, was a long-time business partner with Defendant Bolog and his former client.

72.     That on or about January 5, 2022, Defendant Bolog emailed Plaintiff White Pearl, LLC's bank, stating White Pearl, LLC "is making a $585,000 transfer from White Pearl, LLC to the account set forth below [Swain Landing], relating to a real estate investment."

73.     That, on or about January 6, 2022, $585,000.00 was transferred from the account ending in 3122 to an account maintained by Defendant Swain Landing.

74.     That Defendant Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties. Defendant Bolog willfully and, with reckless disregard, failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes.

75.     That Plaintiffs have never been repaid these monies.

76.     That, as a direct and proximate result of Defendant Bolog's material misrepresentations and omissions, as described above, Defendant Bolog fraudulently caused $585,000 to be transferred to Defendant Swain Landing from White Pearl, LLC, thus causing Plaintiff White Pearl to suffer $585,000 in damages.

**CAUSES OF ACTION**

**COUNT I – FRAUD**

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021 and Defendant WTP)

77.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

78.    That, beginning in or about early October 2021, Defendant Bolog intentionally defrauded Plaintiff Engelhorn by embezzling and misappropriating $10 million belonging to Plaintiff Engelhorn by making and using false statements, documents, and misrepresentations.

79.    That Defendant Bolog tricked and deceived Plaintiff Engelhorn by lulling her into believing that she was signing routine legal documents, whereas she was signing a Notice of Gift, the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and wire instructions, which documents affected a transfer of $10 million to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, by misrepresenting they were routine matters requiring her signature.

80.    That, unbeknownst to Plaintiff Engelhorn, at the time, these documents falsely represented that Plaintiff Engelhorn desired to make a $10 million gift to Defendant Bolog and directed the transfer of said funds to the JAREB Irrevocable Trust Agreement Dated October 11, 2021.  At the time Defendant Bolog made, presented to Plaintiff, and used these documents to transfer the $10 million from Plaintiff's bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, he was her attorney, not related to her, and knew these documents contained these false statements and misrepresentations or he made them with reckless indifference to truth.

81.    That Defendant Bolog made these misrepresentations for the purpose of defrauding Plaintiff Engelhorn.

82.     That Plaintiff Engelhorn justifiably and reasonably relied on Defendant Bolog's misrepresentations and had the right to rely upon them with full belief of their truth.  Plaintiff Engelhorn would not have transferred $10 million to Defendant Bolog or the JAREB Irrevocable Trust Agreement Dated October 11, 2021, if Defendant Bolog had not made these misrepresentations.

83.     That, as a direct and proximate consequence of Defendant Bolog's misrepresentations, as set forth above, $10 million was wired from Plaintiff Engelhorn's personal bank account to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, causing Plaintiff Engelhorn to suffer at least $10 million in damages.

**WHEREFORE,** Plaintiff Engelhorn demands judgment against Defendants Bolog and WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT II – NEGLIGENT HIRING AND RETENTION
(Plaintiffs v. Defendant WTP)

84.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

85.     That Defendant WTP had a duty to use reasonable care to select attorneys to work with it who were competent and fit to perform the duties of an attorney.  That Defendant WTP had a duty to ensure that it retained counsel that were fit for their duties and that there were measures in place to give reasonable assurance that attorneys, such as Defendant Bolog, were conforming to the applicable Rules of Professional Conduct and not otherwise scheming to defraud their clients.  Defendant WTP had actual knowledge as to Defendant Bolog's financial issues and conversion of monies.  A reasonable and prudent employer would not have ignored such

22

indications of Defendant Bolog's unfitness for such duties as acting as a Trustee on a client's trust and representing a client wherein the attorney would have oversight of client funds. Defendant WTP knew or should have known that Defendant Bolog would be likely to interact with and represent clients of the firm. Plaintiffs were members of the public who would foreseeably come into contact with Defendant Bolog based on his employment or agency with Defendant WTP. Therefore, Defendant WTP owed such duties to Plaintiffs, and such duties were breached.

86.     That Defendant WTP knew or should have known that Defendant Bolog was routinely in financial distress and had a propensity to misuse and/or convert the funds of clients' funds for his own benefit, particularly since Defendant Bolog and Defendant WTP had previously engaged in such nefarious behavior together. Because of Defendant Bolog's financial woes and conversion of monies belonging to another, the likelihood of the risk of his stealing from a client, such as Plaintiffs, was foreseeable. Defendant WTP knew, or should have known, that Defendant Bolog was not competent or fit for the duties of an attorney, trustee, or other representative of its firm interacting with clients. Defendant WTP breached its duty to use reasonable care to select an employee that was competent and fit for the position.

87.     That, as a direct and proximate result of Defendant WTP's negligence in hiring and retaining Defendant Bolog, Plaintiffs were injured and damaged as alleged.

88.     That Defendant WTP made no attempt to oversee Defendant Bolog's handling of Plaintiffs' monies, to alert Plaintiffs as to Defendant Bolog's history of converting client funds, or to otherwise mitigate the damage that Defendant Bolog's conversion of Plaintiffs' funds could have on Plaintiffs.

89.     That Defendant WTP's negligence was the proximate cause of the Plaintiffs' injuries and damages. But for Defendant WTP's negligence and breach of the standard of care,

23

the Plaintiffs would not have worked with or continued to work with Defendant Bolog, or allowed

Defendant Bolog to have access to their monies, such that he would not have been placed in the

position of executing a fraudulent, Notice of Gift and other documents.

90.     That Plaintiffs did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP, for compensatory

damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest,

costs of this action, and such further relief as this Court deems appropriate.

## COUNT III – FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

91.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

92.     That, in or around March 2022, Defendant Bolog, individually and on behalf of

Tenacity Investments, LLC, caused the Plaintiff Trust to acquire Defendant Science Park's

$4,655,765 debt.

93.     That, after the Plaintiff Trust acquired Defendant Science Park's debt, Defendant

Bolog apparently sold the Greenbelt Property for $5,545,820.

94.     That, as a result of having this confidential and fiduciary relationship with Plaintiff

Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to

Plaintiff Trust before the transaction; namely, he was a principal of Defendant Science Park and

had a financial interest in the transaction or, alternatively, that he had an interest in the entities

encumbered by the original debt, such as Tenacity Investments, LLC.  Defendant Bolog also had

a duty to disclose to Plaintiff Trust that Defendant Science Park had sold the Greenbelt Property,

the security interest of the Trust.

24

95.     That Defendant Bolog intentionally failed to disclose his actual knowledge that he

was a principal of Defendant Science Park and had a financial interest in the transactions involving

Defendant Science Park.

96.     That had Defendant Bolog truthfully disclosed and not deliberately concealed from

Plaintiff his relationship and financial interest in Defendant Science Park, Plaintiff would not have

acquired and assumed Defendant Science Park's significant debt.

97.     That, as a direct and proximate consequence of Defendant Bolog's fraudulent acts

and omissions, as set forth above, Plaintiff Trust lost the use of its funds, failed to receive mortgage

payments, and suffered other damages, as described herein.

**WHEREFORE,** Plaintiff Trust demands judgment against Defendant Bolog and

Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of

Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00,

plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT IV - FRAUD
(Plaintiff Trust v. Defendant Bolog and Defendant WTP)

98.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

99.     That, beginning in or about December 2021, Defendant Bolog defrauded the

Plaintiff Trust by embezzling and misappropriating approximately $350,000 belonging to the

Trust.  To cover up and conceal his scheme to defraud, Defendant Bolog intentionally concealed

material facts from Plaintiff Trust that he had an affirmative duty to disclose as the lawyer for

Plaintiff Engelhorn and the Trustee of the Plaintiff Trust.

100.    That Defendant Bolog, as trustee of the Plaintiff Trust, caused the Plaintiff Trust to

wire $350,000 from its account to Defendant Darnestown Road, Inc.'s account.

101.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, Defendant Bolog had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

102.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a principal of Defendant Darnestown Road, Inc. and had a financial interest in the transaction.

103.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs Engelhorn and the Trust his relationship and financial interest in Defendant Darnestown Road, Inc., Plaintiffs would not authorized the transfer of $350,000 to Defendant Darnestown Road, Inc.

104.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiffs suffered damages of at least $350,000.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT V - FRAUD
(White Pearl, LLC v. Defendant Bolog and Defendant WTP)

105.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

106.    That Plaintiff Engelhorn sold a home located in Franklin, Tennessee, and deposited her proceeds into the bank account for an entity that she solely owned, Plaintiff White Pearl, LLC.

107.    That, on or about December 29, 2021, Defendant Bolog defrauded Plaintiffs by embezzling and misappropriating approximately $585,000 belonging to White Pearl, LLC.

26

108.    That Defendant Bolog caused White Pearl, LLC to wire $585,000 from its account to Defendant Swain Landing's account.

109.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, it was an entity owned and operated by his close, business colleague, Defendant Postal.

110.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was a member of Defendant Swain Landing and had a financial interest in the transaction or, at a minimum, Defendant Swain Landing was an entity owned and operated by his close, business colleague, Defendant Postal.

111.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Swain Landing, Plaintiffs would not authorized a transfer of $585,000 to Defendant Swain Landing.

112.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff White Pearl, LLC suffered damages of at least $585,000.

WHEREFORE, Plaintiff, White Pearl, LLC, demands judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VI – LEGAL MALPRACTICE/NEGLIGENCE
(Plaintiffs v. Defendants Bolog and WTP)

113.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

114.    That, at all times relevant to this Complaint, Plaintiff Engelhorn and Plaintiff Trust maintained an attorney-client relationship with Defendants Bolog, Defendant WTP, and other lawyers at Defendant WTP.  That attorneys at Defendant WTP entered time entries for working on the following matters ostensibly on behalf of Plaintiffs, but which were really for the purpose of creating and establishing Defendant Bolog's JAREB Irrevocable Trust:

a.    On October 5, 2021, Shane D. Smith, Esquire of Defendant WTP, recorded a time entry for "draft[ing] of irrevocable trust agreement," *i.e.*, the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

b.    On October 5, 2021, MaryEllen Willman, Esquire of Defendant WTP, recorded a time entry for: "Drafted springing power of attorney and transmitted to E. Bolog; Responded to emailed questions regarding estate planning documents."

c.    On October 6, 2021, David J. Baker, Esquire of Defendant WTP, entered a time entry for: "Prepare Form SS-4 and 3rd Party Authorization Forms to obtain EIN for Irrevocable Trust."

d.    On October 6, 2021, Mr. Smith entered time for: "Finalize Draft of Irrevocable Trust; Forward Same to Ms. Willman."

e.    On October 6, 2021, Ms. Willman entered time for: "Reviewed Irrevocable Trust Prepared by Shane Smith; Emailed Trust to E. Bolog; Drafting Springing General Durable Power of Attorney."

f.    On October 7, 2021, Mr. Bolog entered time for: "Send Trust Agreement to Bank of America to Confirm Form is Acceptable to BOA."

28

115.    That, as a result of the attorney-client relationship between Plaintiff Engelhorn and Plaintiff Trust, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman, owed duties to them to exercise care and skill to comply with the accepted and reasonable standards of care for performing such services.  Further, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman owed Plaintiff Engelhorn and Trust the following duties, among others, to Plaintiff Engelhorn and Plaintiff Trust: (a) the duty of competent representation; (b) the duty of conflict-free representation, including the prohibition against soliciting any substantial gif from a client; (c) the duty to refrain from entering into a business transaction with a client; (d) the duty to meaningfully communicate by explaining matters to Plaintiffs insofar as reasonably necessary to permit Plaintiffs to make informed decisions regarding the representation; and (e) to otherwise act in accordance with the standard of care.

116.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to comply with the standards of care and failed to competently represent Plaintiff Engelhorn and Plaintiff Trust.

117.    That Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman failed to exercise a reasonable degree of care and skill in the performance of their duties.

118.    That Defendant Bolog, Mr. Smith, Mr. Baker, and/or Ms. Willman negligently breached their legal duties to Plaintiff Engelhorn and Trust by, among other ways:

     a.    Failing to advise Plaintiff Engelhorn that she could owe gift taxes on the alleged $10M gift;

     b.    Failing to advise Plaintiff Engelhorn that, in lieu of paying the gift taxes, she would have to use most of her lifetime exemption up if the $10M

transfer was a gift, which would mean anything in her estate over the lifetime exemption amount is subject to a 40% tax;

c.    Drafting the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and/or the document(s) that lead to the formation of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, and the transfer of the $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

d.    Failing to ensure that Plaintiffs Engelhorn intended to transfer $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

e.    Causing the transfer of $10M to the JAREB Irrevocable Trust Agreement Dated October 11, 2021;

f.    Engaging in transactions on behalf of Plaintiffs in matters for which Defendant Bolog maintained a financial interest or stood to benefit and in which Defendant Bolog knew or reasonably should have known that his personal financial and business interests were adverse to the object of representation, yet failing to disclose his personal interests or obtaining Plaintiffs' consent; and

g.    Undertaking and maintaining representation of Plaintiffs and failing to competently conduct any due diligence related to the investment of Plaintiffs' money.

119.    That Plaintiffs have collectively suffered damages of at least $10M as a direct and proximate result of the breach of the legal duties by Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman.

120.    That, at all times relevant hereto, Defendant Bolog, Mr. Smith, Mr. Baker, and Ms. Willman were acting on behalf of Defendant WTP and/or in furtherance of Defendant WTP's business interests.

WHEREFORE, Plaintiffs demand judgment against Defendants Bolog and WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Plaintiffs v. Defendant Bolog and Defendant WTP)

121.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

122.    That, as Plaintiff Engelhorn's lawyer and as trustee to the Trust, Defendant Bolog stood in a fiduciary relationship to Plaintiff Engelhorn by way of the attorney-client relationship and the Trust.

123.    That Defendant Bolog breached his fiduciary duties by, among other ways: (a) Soliciting and preparing a Notice of Gift for $10,000,000.00; (b) Engaging in self-dealing and wrongfully causing the Trust to acquire Defendant Science Park's $4,655,765 debt, a transaction in which Defendant Bolog had a financial interest; (c) Failing to record the Trust's security interest in the Greenbelt Property; (d) Transferring $350,000 from the Trust for the benefit of a company, namely, Darnestown Road, Inc., in which he had a financial interest, and failing to disclose it; (e) failing to secure anything of value for the $350,000; and (f) Causing White Pearl, LLC to transfer $585,000 to Swain Landing without conducting any due diligence related to this purported investment; and failing to disclose the principal of Swain Landing – Michael Postal - was his long-time friend, business partner, and client.

31

124.    That Plaintiffs have suffered damages in excess of $10M due to Defendant Bolog's breach of his fiduciary duties.

WHEREFORE, Plaintiffs demand judgment against Defendant Bolog and Defendant WTP, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

### COUNT VIII – RESCISSION OF GIFT
(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021)

125.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

126.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

127.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

128.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff was misled concerning the nature of the said documents and their legal effect.

129.    That Plaintiff has demanded that Defendant Bolog return the $10 million, which demand Defendant Bolog has refused to do.

130.    That it would be unconscionable for Defendant Bolog to be permitted to retain the funds at issue, *i.e.*, $10 million.

131.    That, as a direct and proximate result of Defendant Bolog's fraud and misrepresentations, Plaintiff is entitled to rescind the $10 million "gift" that Defendant Bolog engineered for his benefit and the benefit of his children and to recover all monies paid to Defendant Bolog.

WHEREFORE, Plaintiff Engelhorn demands that the Notice of Gift be rescinded and to award to her the return of all monies paid by Plaintiff Engelhorn to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, with interest and costs.

## COUNT IX – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. JAREB Irrevocable Trust Agreement dated October 11, 2021)

132.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

133.    That Defendant Bolog fraudulently caused $10 million of Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement dated October 11, 2021.

134.    That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.   Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for Defendant Bolog and his children's own personal benefit.

135.    That, under the principles of equity and good conscience, Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, should not be permitted to retain any of Plaintiff Engelhorn's funds transferred by Defendant Bolog to JAREB Irrevocable Trust Agreement Dated October 11, 2021.

136.    That the JAREB Irrevocable Trust Agreement Dated October 11, 2021, has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff Engelhorn.

137.    That Plaintiff Engelhorn seeks an accounting for all funds in the possession of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, since October 1, 2021, and the imposition of a constructive trust on all money transferred from Plaintiff Engelhorn's account to Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021.  In the alternative, Plaintiff requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021, a constructive trust for the benefit of Plaintiff; (b) Order Defendant JAREB Irrevocable Trust Agreement Dated October 11, 2021 to convey all of its right, title, and interest in said monies to Plaintiff, free of all liens, mortgages, or other encumbrances; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT X – CONSTRUCTIVE TRUST
(Plaintiff Engelhorn v. Defendant Darnestown Road)

138.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

139.    That Defendant Bolog fraudulently caused $350,000.00 of Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

140.     That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.   Defendant Bolog breached his fiduciary duties by causing, permitting, facilitating, or otherwise allowing Plaintiff Engelhorn's money to be transferred to Defendant Darnestown Road.

141.     That, under the principles of equity and good conscience, Defendant Darnestown Road should not be permitted to retain any of Plaintiff Claudia Engelhorn's funds transferred by Defendant Bolog to Defendant Darnestown Road.

142.     That Defendant Darnestown Road has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

143.     That Plaintiff Engelhorn seeks the imposition of a constructive trust on all money transferred from her account to Defendant Darnestown Road.   In the alternative, Plaintiff Engelhorn requests that all such sums should be disgorged.

WHEREFORE, Plaintiff Engelhorn demands that this Honorable Court: (a) Charge upon Defendant Darnestown Road, Inc. a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

## COUNT XI – CONSTRUCTIVE TRUST
(Plaintiff White Pearl, LLC v. Defendant Swain Landing LaPlata JC, LLC)

144.     That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

145.     That Defendant Bolog fraudulently caused $585,000.00 of Plaintiff White Pearl, LLC's money to be transferred to Defendant Swain Landing.

146.     That Defendant Bolog represented Plaintiff Engelhorn and owed her a fiduciary duty as counsel.   Defendant Bolog breached his fiduciary duties by causing, permitting,

facilitating, or otherwise allowing the proceeds from Plaintiff Engelhorn sale of her Franklin, Tennessee home, which were deposited into White Pearl, LLC's account, to be transferred to Defendant Swain Landing.

147.    That, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to Defendant Swain Landing.

148.    That Defendant Swain Landing has been unjustly enriched by obtaining said monies, which property rightfully belongs to Plaintiff.

149.    That Plaintiff White Pearl, LLC seeks the imposition of a constructive trust on all money transferred from its account to Defendant Swain Landing.  In the alternative, Plaintiff White Pearl, LLC requests that all such sums should be disgorged.

WHEREFORE, Plaintiff, White Pearl, LLC, demands that this Honorable Court: (a) Charge upon Defendant Swain Landing LaPlata JC, LLC a constructive trust for the benefit of Plaintiff; (b) Enter a monetary judgment against Defendant Darnestown Road for an amount in excess of $75,000; and (c) Grant such other and further relief as the Court may claim to be necessary and proper.

### COUNT XII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiff White Pearl, LLC v. Defendant Postal)

150.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

151.    That Defendant Postal aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

152.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

36

153. That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

154. That Defendant Postal colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

155. That Defendant Postal participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing his own interests. Defendant Postal obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog, as the monies taken from Plaintiff White Pearl, LLC were used to pay down the purchase price of the real property owned by Defendant Swain Landing. Defendant Postal will specifically benefit, among other things, from the acquisition of real property for an entity he owns without any meaningful financial contribution by him or said company.

156. Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff White Pearl, LLC demands injunctive relief and compensatory damages, in its favor and against Defendant Postal as follows:

A. Entering a judgment for $585,000.00 in compensatory damages, plus prejudgment interest;

B. Imposition of a constructive trust in favor of Plaintiff upon any benefits improperly received by Defendant Postal as a result of his wrongful conduct;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D. Granting such other and further equitable relief as deemed just and proper.

**COUNT XIII – PETITION FOR DISSOLUTION & LIQUIDATION - STATUTORY
UNDER CORPS. & ASSOC. 4A-903, ET SEQ.)**
(Whitewater Revocable Trust dated September 30, 2021, as amended and White Pearl, LLC v.
Defendants Bolog, Postal, POJO, and Swain Landing)

157.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully
set forth herein.

158.    That, based on Plaintiff Trust's rights as a member in liquidation and dissolution-
related matters, the nefarious condition under which the Plaintiff Trust became a member, and
coupled with the fraudulent matters described herein, Plaintiff Trust hereby petitions the Court to
order the liquidation of Defendant Swain Landing and otherwise seeks to pursue its rights and
claims as permitted under Maryland law.

WHEREFORE, Plaintiff Trusts requests that this Court enter an Order:

a.      Requiring the judicial dissolution of Defendant Swain Lnading, the winding
up of its affairs, and the distribution of its assets (including the sale of
Defendant Swain Landing and/or its assets so that Plaintiff White Pearl,
LLC's payment of $585,000.00 can be reimbursed in full);

b.      Holding Defendants Bolog, Postal, and Swain Landing liable, jointly and
severally, for reimbursement of Plaintiff Trusts's attorney's fees and cost
and all professional fees incurred in carrying out the remedies so ordered;
and

c.      Awarding damages from Defendants Bolog, Postal, and Swain Landing,
jointly and severally, for $585,000.00, plus prejudgment interest, so that
White Pearl, LLC can be and is repaid in full.

**COUNT XIV – PETITION SEEKING LIQUIDATION AND DISSOLUTION OF
DEFENDANT SWAIN LANDING AND APPOINTMENT OF RECEIVER OR SPECIAL
FISCAL AGENT (OR FOR THE COURT TO FASHION ALTERNATIVE EQUITABLE
REMEDIES) AT COMMON LAW**
(Plaintiffs Trust and White Pearl, LLC v. Defendants Bolog, Postal, POJO, and Swain Landing)

159.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

160.    That Defendant Bolog, as set forth herein, had acted oppressively and/or illegally and/or fraudulently toward Plaintiff Trust during a period when he owed fiduciary duties to Plaintiff Trust, thereby threatening the interests of Plaintiff.    That, but for Defendant Bolog misleading Plaintiff Engelhorn and/or otherwise defrauding her, Plaintiff Trust would never have become a member of Defendant Swain Landing.

161.    That, under such circumstances, Plaintiff may obtain a judicially mandated liquidation and dissolution of Defendant Swain Landing.

162.    That, pending such dissolution or alternatively, for the reasons set forth above, Plaintiff Trust may request that this Court appoint a receiver to take control of Defendant Swain Landing and oversee the operation of the business and its finances for such a period of time to allow for an accounting for the benefit of Plaintiff Trust and Plaintiff White Pearl, LLC and to carry out a sale of the business to ensure full payoff of Plaintiff White Pearl, LLC's contribution in the amount of $585,000.00.

WHEREFORE, Plaintiffs Trust and White Pearl, LLC hereby petition this Honorable Court seeking liquidation and dissolution of Defendant Swain Landing (and/or sale thereof) and seeking the appointment of a receiver or special fiscal agent to oversee the current day-to-day operations of Defendant Swain Landing; or alternatively, for this Honorable Court to fashion alternative equitable remedies including for this Honorable Court to require Defendants Bolog, Postal, and Swain Landing, jointly and severally, to repay Plaintiff White Pearl, LLC $585,000.00,

plus prejudgment interest; specifically, Plaintiffs Trust and White Pearl, LLC pray that this Honorable Court enter an Order:

a.  Effectively undoing any misappropriations or requiring reimbursement thereof, and voiding the transfer of control of Defendant Swain Landing to any third-party and/or in any event authorizing the judicial dissolution of Defendant Swain Landing, the winding up of its affairs, and the distribution of its assets (including, if this Honorable Court so considers, the sale Defendant Swain Landing as a going concern so that Plaintiff White Pearl, LLC can be and is paid off in full); and/or

b.  Pending such dissolution or alternatively, appointing a receiver or special fiscal agent to oversee the business affairs of Defendant Swain Landing during the pendency of these proceedings; (a) authorizing and empowering the said receiver or special fiscal agent to take any and all actions deemed necessary and proper to manage and protect the value of Defendant Swain Landing during the dissolution; (b) authorizing and empowering the said receiver or special fiscal agent to hire such accountants, appraisers, business brokers and such other related agents or contractors as he/she may deem necessary to protect and preserve the value of Defendant Swain Landing for the benefit of creditors including, but not limited to, Plaintiff White Pearl, LLC, all at the cost of Defendants Bolog, Postal, and Swain Landing, jointly and severally; and/or

c.  As an alternative to the above remedies, requiring that either Defendant Swain Landing reimburse White Pearl, LLC for $585,000, plus

prejudgment interest or, alternatively, Defendants Bolog and Postal, jointly

and severally, pay Plaintiff White Pearl, LLC $585,000, plus interest; and/or

d.      Ordering such other and further relief as this Honorable Court deems

appropriate, including fashioning such alternative equitable remedies as

may be just to Plaintiff Trust and Plaintiff White Pearl, LLC under the

circumstances.

**COUNT XV – DECLARATORY JUDGMENT**
(Plaintiff Engelhorn v. Defendants Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

163.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully

set forth herein.

164.    That, at all times relevant hereto, Defendant Bolog was an attorney licensed to

practice law in Maryland, the District of Columbia, and Virginia.

165.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

166.    That Plaintiff Engelhorn seeks a declaration by this Honorable Court that the

alleged gift in the amount of $10M from her to Defendant Bolog, Individually and as Trustee of

the JAREB Irrevocable Trust Agreement Dated October 11, 2021, was invalid as a matter of law

and that Plaintiff Engelhorn is entitled to a return of the monies.

WHEREFORE, Plaintiff Engelhorn prays for entry of the declaratory judgment that the

alleged gift of $10M to the JAREB Irrevocable Trust Agreement dated October 11, 2021, was

invalid as a matter of law and that monies should be returned to her by Defendant Bolog,

Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021,

for her costs, and for such other and further relief as may be appropriate under the circumstances.

## COUNT XVI – UNJUST ENRICHMENT

(Plaintiff Engelhorn v. Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable
Trust Agreement Dated October 11, 2021)

167.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

168.    That Defendant Bolog, as Plaintiff Engelhorn's attorney, owed a duty to Plaintiff Engelhorn to provide accurate and truthful information to Plaintiff Engelhorn and to explain the legal effect of Plaintiff Engelhorn signing the documents that caused the $10 million transfer from Plaintiff Engelhorn's account to the JAREB Irrevocable Trust—namely, the Notice of Gift, wire instructions, and JAREB Irrevocable Trust Agreement.

169.    That Defendant Bolog caused Plaintiff Engelhorn to transfer $10 million to the JAREB Irrevocable Trust through fraud and intentional misrepresentations.

170.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, at the time Plaintiff Engelhorn signed the documents that caused the transfer of $10 million to the JAREB Irrevocable Trust, Plaintiff Engelhorn believed she was signing routine legal documents.  As a result of Defendant Bolog's words and deeds, Plaintiff Engelhorn was misled concerning the nature of the said documents and their legal effect.

171.    That Plaintiff Engelhorn has conferred a benefit on Defendants Bolog and JAREB in the amount of $10 million.

172.    That Defendant Bolog, individually, and the Trustee for JAREB, was aware of and had knowledge of, the $10 million benefit conferred by Plaintiff Engelhorn, as well as the dishonest means by which the funds were obtained from Engelhorn.

173.    That Plaintiff Engelhorn has demanded the return of the $10 million, and Defendant Bolog, individually and on behalf of JAREB, has refused to do so.

174.    That Defendant Bolog's, individually and as Trustee for JAREB, acceptance and retention of the $10 million under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog and JAREB to retain the $10 million.

175.    That, at all times relevant hereto, Defendant Bolog represented Plaintiff Engelhorn.

176.    That client "gifts" to attorneys are presumptively fraudulent.  Md. Rule 19-301.8 cmt. 6.

WHEREFORE, Plaintiff Engelhorn demands judgment against Defendant Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement Dated October 11, 2021, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XVII – FRAUDULENT CONVEYANCE
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

177.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

178.    That, upon information and belief, Defendant Science Park would have received monthly payments from tenants at the real property owned by Defendant Science Park.

179.    That, upon information and belief, Defendant Science Park conveyed and transferred these rental payments, either directly or indirectly, to Defendant Bolog, without remitting the monthly interest payments to the Plaintiff Trust, without fair consideration, thereby rendering Defendant Science Park insolvent and unable to pay the monies to Plaintiff in violation of the Maryland Uniform Fraudulent Conveyance Act.  The assets so conveyed exceeded the amounts due to Plaintiff Trust.

180.     That Defendant Science Park conveyed and transferred substantially all of its assets to Defendant Bolog, including the monthly rental payments, either directly or indirectly, with the actual intent to hinder, delay, and defraud present and future creditors, including the Plaintiff Trust and removed said assets from Plaintiff Trust's reach, all in violation of the Maryland Uniform Fraudulent Conveyance Act.

181.     That these transfer of assets by Defendant Science Park were fraudulent as to Plaintiff Trust, who is and was a creditor of Defendant Science Park with a matured claim in amount that was substantially less than the amount and value of the aforesaid assets transferred.

182.     That each of the Defendants had knowledge of the fraud at the time of each transfer and conveyance and none acted in good faith in connection with each transfer and conveyance.

WHEREFORE, Plaintiff Trust requests that this Honorable Court enter a judgment as follows:

a.     Declaring that each of the aforesaid conveyances and transfer as fraudulent as to Plaintiff Trust;

b.     Setting aside all such conveyances and transfers of assets by Defendant Science Park to Defendant Bolog with such transfers returned to Defendant Science Park to satisfy Plaintiff's claims against Defendant Science Park.

c.     Awarding Plaintiff interest from the date of each transfer and conveyance.

d.     Entering a judgment against Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

e.     For such other and further relief as may be appropriate under the circumstances.

## COUNT XVIII – FRAUD

44

(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity
Investments, LLC)

183.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

184.    That Defendant Bolog defrauded Plaintiff Trust by embezzling and misappropriating approximately $3,352,650 belonging to it.

185.    That Defendant Bolog caused Plaintiff Trust to pay $3,352,650 to resolve the encumbrance owed by Defendant Science Park and to satisfy guarantees owed by Defendants Bolog and/or Tenacity Investments, LLC.

186.    That, as a result of his fiduciary relationship with Plaintiff Engelhorn and the Plaintiff Trust, he had a duty to disclose certain material facts to Plaintiffs before the transaction, namely, that he was an owner of Defendant Science Park and had a financial interest in the transaction.

187.    That Defendant Bolog intentionally failed to disclose his actual knowledge that he was an owner of Defendant Science Park and had a financial interest in the transaction.

188.    That, had Defendant Bolog truthfully disclosed and not deliberately concealed from Plaintiffs his relationship and financial interest in Defendant Science Park, Plaintiffs would not authorized a transfer of $3,352,650 to the lender for Defendant Science Park.

189.    That, as a direct and proximate consequence of Defendant Bolog's fraudulent concealment, as set forth above, Plaintiff Trust has suffered significant economic losses.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive damages in the amount of

$20,000,000.00, plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XIX – UNJUST ENRICHMENT
(Plaintiff Trust v. Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC)

190.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

191.    That Defendant Bolog, as an attorney and trustee for the Plaintiff Trust, owed a duty to act in a conflict-free fashion and to make prudent investments on behalf of Plaintiff Trust.

192.    That Defendant Bolog caused Plaintiff Trust to satisfy an obligation that he and the two corporate Defendants owed without paying any consideration to Plaintiff Trust.

193.    That, as a direct and proximate result of Defendant Bolog's fraud and intentional misrepresentations, Plaintiff Trust paid off a debt due and owing by the Defendants with respect to the real property owned by Defendant Science Park.

194.    That Plaintiff Trust has conferred a benefit on Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, both for the face value of the loan and in terms of the monthly payments that Defendant Science Park failed to pay.

195.    That Defendant Bolog, individually, and as the principal and/or agent of the two entities, was aware of and had knowledge of the benefit conferred by Plaintiff Trust on Bolog and the two entities, as well as the dishonest means by which the funds were obtained from Plaintiff Trust.

196.    That the Defendants' acceptance and retention of said monies under the circumstances described herein make it inequitable and unconscionable for Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC to retain them.

WHEREFORE, Plaintiff Trust demands judgment against Defendant Bolog, Defendant Science Park, and Defendant Tenacity Investments, LLC, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of this action, and such further relief as this Court deems appropriate.

## COUNT XX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
(Plaintiffs v. Defendant WTP)

197.    That Plaintiffs adopt and incorporate by reference all paragraphs above as if fully set forth herein.

198.    That Defendant WTP aided and abetted Defendant Bolog in breaching his fiduciary duties owed to the Plaintiffs.

199.    That Defendant Bolog owed to Plaintiffs certain fiduciary duties as set forth above.

200.    That, by committing the acts alleged herein, Defendants Bolog breached his fiduciary duties to Plaintiffs.

201.    That Defendant WTP colluded in or aided and abetted Defendant Bolog's breach of his fiduciary duties and was an active and knowing participant in Defendant Bolog's breach of fiduciary duties owed to Plaintiffs.

202.    That Defendant WTP participated in the breach of the fiduciary duties by Defendant Bolog for the purpose of advancing its own interests.  Defendant WTP obtained and will obtain both direct and indirect benefits from colluding or aiding and abetting the breaches by Defendant Bolog.

203.    Plaintiffs have been irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiffs demand judgment against Defendant WTP for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), punitive

damages in the amount of $20,000,000.00, plus interest, costs of this action, and such further relief

as this Court deems appropriate.

Respectfully submitted:

/s/*Patrick D. Gardiner*

Wes P. Henderson, Esq. (AIS# 0212180062)
Patrick D. Gardiner, Esq. (AIS# 1506160113)
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
T: 410.721.1979
F: 410.721.2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action with respect to all issues and claims triable

before a jury.

/s/ *Patrick D. Gardiner*

Patrick D. Gardiner, Esq. (AIS# 1506160113)

48

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of February 2025 that, a copy of the foregoing

was sent via MDEC to the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
kmackinnonmorrow@zuckerman.com

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
John B. Howard, Jr., Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Douglas.gansler@cwt.com
J.B.Howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC; and Darnestown Road, Inc.*

AND via first class mail, postage prepaid on the following:

Michael Postal
1801 16th Street NW, Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

49

Swain Landing LaPlata JC, LLC
4302 Broken Arrow Court
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/ *Patrick D. Gardiner*
Patrick D. Gardiner, Esq. (AIS# 1506160113)

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**MOTION TO RECONSIDER ORDER DENYING BOLOG DEFENDANTS' PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS (HEARING REQUESTED)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 2

ARGUMENT ..................................................................................................................... 5

    I.      This Court Is Permitted To Reconsider Its Prior Order. ........................................... 5

    II.    The Trust Agreement's arbitration clause is an Enforceable Agreement to
        Arbitrate. .............................................................................................................. 5

    III.   The Bolog Defendants Timely Asserted—And Did Not Waive—Their
        Right To Compel Arbitration. ................................................................................ 9

    IV.   As The Arbitrator Will Determine, The Whitewater Investment Claims
        Fall Within The Arbitration Clause's Scope. ......................................................... 13

        A.    Questions Of Arbitrability Should Be Decided By The Arbitrator. .......... 13

        B.    The Whitewater Investment Claims Are Arbitrable. ................................ 14

        C.    The Arbitration Provision Is Enforceable by Darnestown Road,
            Science Park, and Swain Landing. ............................................................ 16

    V.    Ms. Engelhorn Cannot Unilaterally And Retroactively Terminate Her
        Agreement To Arbitrate. ....................................................................................... 17

    VI.   The Arbitration Provision Is Not Barred By Rules Of Attorney
        Professional Conduct. ........................................................................................... 18

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*9103 Basil Ct. Partners LLC v. Monarc Constr., Inc.*,
    2024 WL 3819522 (Md. Ct. Spec. App. Aug. 15, 2024)........................................................21

*Allstate Ins. Co. v. Stinebaugh*,
    374 Md. 631 (2003) ........................................................................................................12

*Att'y Grievance Comm'n v. McLaughlin*,
    372 Md. 467 (2002) ........................................................................................................22

*Att'y Grievance Comm'n of Maryland v. Korotk*,
    318 Md. 646 (1990) ........................................................................................................22

*Att'y Grievance Comm'n of Maryland v. Shapiro*,
    441 Md. 367 (2015) ........................................................................................................22

*Att'y Grievance Comm'n of Maryland v. Steinberg*,
    395 Md. 337 (2006) ........................................................................................................22

*Att'y Grievance Comm'n of Maryland v. Young*,
    473 Md. 94 (2021) ..........................................................................................................22

*Boland v. Amazon.com Sales, Inc.*,
    628 F. Supp. 3d 595 (D. Md. 2022)..................................................................................7

*Boyle v. Anderson*,
    301 Va. 52 (2022) ............................................................................................................6

*Braude v. Robb*,
    255 Md. App. 383 (2022) ................................................................................................7

*Brendsel v. Winchester Const. Co.*,
    162 Md. App. 558 (2005), *aff'd*, 392 Md. 601 (2006).....................................................10, 11

*Cain v. Midland Funding*,
    452 Md. 141 (2017) ........................................................................................................11

*Castellanos v. Mariner Fin., LLC*,
    2018 WL 488725 (D. Md. Jan. 19, 2018)........................................................................10

*Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*,
    807 F.3d 553 (4th Cir. 2015) ..........................................................................................21

*City of Emporia v. Cnty. of Greensville,*
    81 Va. App. 28 (2024) ...............................................................................................8

*Dipnarine v. Champion Opco, LLC,*
    2025 WL 896333, at \*7 (D. Md. Mar. 24, 2025)................................................13, 14

*Doctor's Assocs., Inc. v. Casarotto,*
    517 U.S. 681 (1996)...............................................................................................21

*Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*
    274 Md. 307 (1975) ...............................................................................................12

*Gannett Fleming, Inc. v. Corman Constr., Inc.,*
    243 Md. App. 376 (2019) ................................................................................12, 14

*Gelber v. Glock,*
    293 Va. 497 (2017) .................................................................................................18

*Gertz v. Anne Arundel Cnty.,*
    339 Md. 261 (1995) ..................................................................................................5

*Hagerstown Block Co. v. Durbin,*
    2015 WL 5926086 (Md. Ct. Spec. App. July 15, 2015)........................................16

*Harris v. Bridgford,*
    153 Md. App. 193 (2003) .........................................................................................9

*Iraq Middle Mkt. Dev. Found. v. Harmoosh,*
    848 F.3d 235 (4th Cir. 2017) ...................................................................................9

*In Re Brandon,*
    2021 WL 1346604 (Md. Ct. Spec. App. Apr. 12, 2021) ...........................................5

*In re Ismailoff (Golan),*
    14 Misc. 3d 1229(A) (N.Y. Sur. 2007).....................................................................6

*In re Laher,*
    496 F.3d 279 (3d Cir. 2007).......................................................................................7

*In re Swain Landing LaPlata JC, LLC,*
    Case No. 25-184-ELG (Bankr. D.D.C. 2025)...........................................................3

*Mayo v. Dean Witter Reynolds, Inc.,*
    258 F. Supp. 2d 1097 (N.D. Cal.), *amended,* 260 F. Supp. 2d 979 (N.D. Cal.
    2003) ......................................................................................................................20

*MicroStrategy, Inc. v. Lauricia,*
    268 F.3d 244 (4th Cir. 2001) ....................................................................................9

*Pabst Brewing Co. v. Frederick P. Winner, Ltd.*,
    478 Md. 61 (2022) ................................................................................8

*Post v. Bregman*
    349 Md. 142 (1998) ...........................................................................21

*The Redemptorists v. Coulthard Servs., Inc.*,
    145 Md. App. 116 (2002) ................................................12, 15, 16, 21

*Saturn Distrib. Corp. v. Williams*,
    905 F.2d 719 (4th Cir. 1990) ........................................................4, 20

*Sfreddo v. Sfreddo*,
    59 Va. App. 471 (2012) ......................................................................7

*Shaw v. Litz Custom Homes, Inc.*,
    2021 WL 5853779 (Md. Ct. Spec. App. Dec. 9, 2021) .......................9

*Smith v. Lindemann*,
    710 F. App'x 101 (3d Cir. 2017) ..................................................5, 20

*Stauffer Const.Co. v. Bd. of Educ.*,
    54 Md. App. 658 (1983) ...................................................................13

*Walter v. Drayson*,
    2007 WL 2694399 (D. Haw. Sept. 12, 2007) ....................................7

**Statutes**

9 U.S.C. § 2 ..............................................................................................4, 20

11 U.S.C. § 362(a)(1) ....................................................................................3

Md. Code Ann., Cts. & Jud. Proc. § 3-206 ..................................................4

Md. Code Ann., Cts. & Jud. Proc. § 3-207(c) ............................................20

Md. Code Ann., Est. & Trusts § 15-102 .......................................................8

Va. Code Ann. § 64.2-752(A) ......................................................................18

Va. Code Ann. § 64.2-778 ......................................................................8, 18

**Other Authorities**

CONSTRUCTION, BLACK'S LAW DICTIONARY (12th ed. 2024) ..................14

Md. R. of Prof'l Conduct 19-301.8(h) ........................................................18

Restatement (Second) of Trusts § 197 (1959) ................................................................6

VA LEGIS 165 (2025), 2025 Virginia Laws Ch. 165 (H.B. 2243)...................................8

Va. Sup. Ct. R. pt. 6, sec. II ........................................................................................20

Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("Mr. Bolog as Trustee"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby submit this motion for reconsideration of the Court's order denying their petition for an order compelling arbitration of all the Whitewater Investment Claims[1] and a concurrent stay of the Whitewater Investment Claims in this action until resolution of such arbitration (the "Petition for Arbitration"), and state as follows:

## **INTRODUCTION**

On April 19, 2025, the Bolog Defendants filed their Petition for Arbitration. On May 5, 2025, Plaintiffs filed their opposition. Thereafter, the Court scheduled a hearing in this action for June 11, 2025.  While the Bolog Defendants were in the process of finalizing their reply in support of the Petition for Arbitration, the Court issued its Order denying the Petition for Arbitration on three grounds: (a) the Whitewater Trust Agreement is not a "contract" or "agreement" subject to compulsory arbitration under Virginia law; (b) the Bolog Defendants waived their right to seek arbitration "through their actions and omissions"; and (c) the Whitewater Investment Claims are not within the scope of the arbitration provision of the Whitewater Trust Agreement. Respectfully, and as will be argued herein, the Bolog Defendants propound fulsome and substantive responses to each of these grounds, warranting reconsideration.

Under Maryland Law, a non-final judgment "is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties." Md. Rules 2-602(a)(3). Accordingly, and based on the following responses to Plaintiffs' Opposition to the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Bolog Defendants' Petition for Arbitration or in Plaintiffs' Opposition thereto.

Petition for Arbitration (the "Opposition" or "Opp."), the Bolog Defendants respectfully request that the Court reconsider its Order denying the Bolog Defendants' Petition for Arbitration.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to the Petition for Arbitration (the "Opposition" or "Opp.") represents yet another transparent attempt by Plaintiffs to renege on an agreement made between Ms. Engelhorn and Mr. Bolog. This action hinges on Ms. Engelhorn's giftor's remorse over the $10 million gift she validly, freely and irrevocably gave to the JAREB Irrevocable Trust. Now, Plaintiffs seek to eliminate, by fiat, the binding arbitration agreement embodied in the Whitewater Trust Agreement between Ms. Engelhorn and Mr. Bolog. The Bolog Defendants respectfully request that the Court reconsider its Order and reject Plaintiffs' Opposition for the following reasons.

*First*, the arbitration provision in the Whitewater Trust Agreement is enforceable because it is a binding agreement between its signatories: Mr. Bolog and Ms. Engelhorn in their capacities as trustees and Ms. Engelhorn in her capacity as the grantor. Plaintiffs' argument that a trust agreement creates no contractual obligations is inaccurate. Plaintiffs rely on case law addressing an arbitration provision between a trustee and a trust-beneficiary, which are not the circumstances present. Here, by contrast, the Bolog Defendants seek to enforce an arbitration provision agreed to by the signatories to the Whitewater Trust Agreement, which is an enforceable contractual provision, which the Plaintiffs' cases do not remotely address.

*Second*, the Petition for Arbitration is timely. The Bolog Defendants' participation in this litigation is limited and has not evidenced an intent to waive their right to compel arbitration. Indeed, the Bolog Defendants have consistently taken the position that the Whitewater Investment Claims are subject to mandatory arbitration and should not be litigated until resolution of the Petition for Arbitration by the Court. The only reason that the Bolog Defendants did not file their

2

Petition earlier is that they—unlike Plaintiffs—did not come into possession of the full version of

the Whitewater Trust Agreement, which contained the text of the relevant arbitration provision,

until shortly before the Petition was filed.

*Third,* the Whitewater Investment Claims do not fall outside the scope of the arbitration

clause—respectfully, that is a matter for the arbitrator to determine, not the Court. Section 9 of the

Whitewater Trust Agreement incorporates the rules of the American Arbitration Association,

under which the "arbitrator shall have the power to rule . . . [on] the arbitrability of any claim or

counterclaim, without any need to refer such matters first to a court." Ex. D at 14. As courts

routinely hold, such a provision constitutes an agreement to submit any questions regarding

arbitrability to the arbitrator.

In any event, the plain terms of the arbitration provision set forth in the Whitewater

Revocable Trust Agreement encompass the Whitewater Investment Claims. Each of these claims

concerns investments made by the then co-Trustees Mr. Bolog and Ms. Engelhorn in their

capacities as trustees of the Whitewater Trust, and the application of the terms of the Whitewater

Trust Agreement to those investments. And because Darnestown Road, Science Park, and Swain

Landing[2] are all the subject of these same claims, as appropriate, any arbitration over the claims

against Mr. Bolog must, necessarily, include the claims against them as well. At a minimum, the

Whitewater Investment Claims as to Darnestown Road, Science Park, and Swain Landing, should

be stayed pending any aspect of the Whitewater Investment Claims that are sent to arbitration.

*Fourth*, Ms. Engelhorn cannot unilaterally amend the terms of the Whitewater Trust

---

[2] The Bolog Defendants recognize that Swain Landing filed a bankruptcy petition (*In re Swain Landing LaPlata JC, LLC*, Case No. 25-184-ELG (Bankr. D.D.C. 2025)) and this Court subsequently stayed all claims against Swain Landing as part of the automatic stay requirements under 11 U.S.C. § 362(a)(1). The Bolog Defendants take no position as to whether the automatic stay should also stay the Petition for Arbitration solely as to the Whitewater Investment Claims as they relate to Swain Landing.

3

Agreement to eliminate, by fiat, its applicable arbitration provision retroactively. This provision is part of a binding agreement made between Mr. Bolog and Ms. Engelhorn as signatories to the Whitewater Trust Agreement. And, even if Ms. Engelhorn could remove the arbitration provision (which she cannot), no such amended copy (or factual attestation of its removal) has been submitted into evidence in this action by Plaintiffs. Regardless, the Federal Arbitration Act ("FAA") is clear that an arbitration provision "shall be valid, *irrevocable*, and enforceable." 9 U.S.C. § 2 (emphasis added); *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-206 ("a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is *irrevocable*") (emphasis added). Indeed, the Court did not find in its Order that Ms. Engelhorn revoked the arbitration provision.

*Lastly*, the arbitration provision is not barred by attorney ethics rules. Plaintiffs have not met their burden to show that Mr. Bolog had any role in drafting the arbitration provision in the Whitewater Trust Agreement. Indeed, he did not. And, additionally, in serving as a trustee of the Whitewater Trust, Mr. Bolog was not acting in his role as attorney for Ms. Engelhorn. Thus, any attorney ethics rules are inapplicable to Mr. Bolog when serving in his trustee capacity. Regardless, the FAA preempts any state ethics rules, and dictates that the arbitration provision is enforceable as to the Whitewater Investment Claims. "State laws are subject to preemption not only if they directly contradict federal law, but also if they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir. 1990). Indeed, a "rule prohibiting the inclusion of an arbitration provision in an attorney-client representation agreement" is "preempted by the FAA." *Smith v. Lindemann*, 710 F. App'x 101, 105 (3d Cir. 2017). The Bolog Defendants

note that the Court did not state in its Order that the arbitration provision would be barred by attorney ethics rules and ask that, on reconsideration, it again find arbitration is enforceable here.

## ARGUMENT

### I.    THIS COURT IS PERMITTED TO RECONSIDER ITS PRIOR ORDER.

Maryland Rule 2–602(a)(3) "makes clear that an order that does not adjudicate all of the claims in an action, or that adjudicates less than an entire claim, or that adjudicates the liabilities of fewer than all the parties to the action is not a final judgment and may be revised at any time before the entry of a final judgment." *Gertz v. Anne Arundel Cnty.*, 339 Md. 261, 272–273 (1995). "[A]n order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action . . . is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties"). *In Re Brandon*, 2021 WL 1346604, at *6 (Md. Ct. Spec. App. Apr. 12, 2021) (granting second summary judgment motion on same grounds as first motion) (internal citations omitted).

Given this liberal standard of revision, the Bolog Defendants ask that the Court reconsider its Order and grant the Petition for Arbitration.

### II.    THE TRUST AGREEMENT'S ARBITRATION CLAUSE IS AN ENFORCEABLE AGREEMENT TO ARBITRATE.

The arbitration provision in Section 9 of the Whitewater Trust Agreement, which encompasses controversies between the *trustees* or other *parties* to the Whitewater Trust Agreement—Mr. Bolog and Ms. Engelhorn—is enforceable here. *See* Ex. A at 10. Plaintiffs cite to no rule prohibiting enforcement of an arbitration provision between signatories to a trust. Indeed, there is none.

5

Instead, Plaintiffs quote liberally from the Virginia Supreme Court case *Boyle v. Anderson* for their proposition that a trust agreement is not a contract and, therefore, any arbitration provision is unenforceable. 301 Va. 52 (2022); *see* Opp. at 6. But *Boyle* is distinguishable from the circumstances here where a trustee seeks to enforce an arbitration provision against a trustee or settlor. In finding that the arbitration provision in *Boyle* was not enforceable, the Supreme Court of Virginia specifically noted that the "fiduciary duties a *trustee owed to the beneficiaries of the trust*" differ from those duties owed between contracting parties and that its reasoning was "without deciding" whether "a *trustee's* obligations might constitute an 'agreement.'" *Boyle*, 301 Va. at 57, 59 (emphasis original). Indeed, the court in *Boyle* based its decision on Section 197 of the Restatement of Trusts, entitled the "Nature of Remedies of *Beneficiary*" which addresses only "the remedies of the beneficiary against the trustee." *See* Restatement (Second) of Trusts § 197 (1959) (emphasis added); *Boyle*, 301 Va. 52, at 57. The Supreme Court of Virginia thus did not address whether an arbitration provision in a trust agreement is enforceable between trustees or between a trustee and grantor.

Contrary to Plaintiffs' unsupported position, Court's routinely enforce arbitration provisions as between trustees. *See, e.g.*, *In re Ismailoff (Golan)*, 14 Misc. 3d 1229(A) (N.Y. Sur. 2007). Mr. Bolog is not a "beneficiary" of the Whitewater Trust, he was a co-trustee with Ms. Engelhorn. And in bringing her claims in this action, Ms. Engelhorn is not acting in her role as a beneficiary of the Whitewater Trust, but, as stated clearly on the case caption in this action, as "*trustee* of the Whitewater Revocable Trust dated September 30, 2021" (emphasis added).

The Whitewater Trust Agreement itself states in Section 12 that it is "binding upon and inures to the benefits of the parties," i.e. the signatories to the agreement, Ms. Engelhorn and Mr. Bolog. Ex. A at 15. And while courts in Maryland and Virginia do not appear to have directly

addressed the issue of whether a trust agreement creates contractual obligations between signatories of a trust agreement, other jurisdictions have found that a trust agreement does establish a contractual relationship with enforceable terms. *See, e.g.*, *In re Laher*, 496 F.3d 279, 289 (3d Cir. 2007) ("All trusts can be described as contractual relationships insofar as the obligations of all the parties are set forth in an agreement[.]"); *Walter v. Drayson*, 2007 WL 2694399, at *4 n.3 (D. Haw. Sept. 12, 2007) ("The Court recognizes that the Trust Agreements are contracts between . . . *the Settlor*, and . . . *the Trustees*, for the benefit of Plaintiff, a third-party beneficiary.") (emphasis added). The Bolog Defendants contend that the Court find similarly here.

All of the requisite elements to establish a contract between Mr. Bolog and Ms. Engelhorn are present. *See Sfreddo v. Sfreddo*, 59 Va. App. 471, 488 (2012) ("The basic elements of a contract are an offer, acceptance, and consideration."); *Braude v. Robb*, 255 Md. App. 383, 397 (2022) (In Maryland, a "valid contract is formed by . . . an offer and acceptance and consideration."). Ms. Engelhorn offered the role of trustee to Mr. Bolog, which he accepted. And, as consideration, in return for Mr. Bolog's services as trustee, he was entitled to receive "reasonable compensation." Ex. A at 7, Section 5.K. And, because the arbitration provision is subject to the rules of the American Arbitration Association, it is the "arbitrator [who] ha[s] the power to determine the existence or validity of a contract of which an arbitration clause forms a part." Ex. D at 15; *see Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 601 (D. Md. 2022) (compelling arbitration where the parties incorporated the rules of the American Arbitration Association because they "contracted to arbitrate the arbitrability" of the claims).

That a dispute between signatories to trust agreement is subject to arbitration is also consistent with statutory trust principles. Virginia trust law, which governs the Whitewater Trust, contemplates that a trustee may "[r]esolve a dispute concerning the *interpretation of the trust or*

*its administration* by mediation, *arbitration*, or other procedure for alternative dispute resolution." Va. Code Ann. § 64.2-778[3] (emphasis added). Maryland trust law does the same. *See* Md. Code Ann., Est. & Trusts § 15-102 ("a fiduciary may prosecute, defend, or submit to arbitration any actions, claims, or proceedings in any jurisdiction for the protection of the fiduciary estate"). Accordingly, both Virginia and Maryland not only do not bar arbitration provisions in a trust agreement, they, instead, account for their validity. *See City of Emporia v. Cnty. of Greensville*, 81 Va. App. 28, 38–39 (2024) ("[W]e disfavor a construction of statutes that renders any part of the statute useless or superfluous . . . Every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.") (internal citations omitted); *see also Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 75 (2022) ("we construe the statute . . . so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory") (internal citations omitted). The Bolog Defendants request that the Court do the same here, reconsider its Order, and find the arbitration provision in Section 9 of the Whitewater Trust Agreement enforceable as to the Whitewater Investment Claims.

## III.   THE BOLOG DEFENDANTS TIMELY ASSERTED—AND DID NOT WAIVE— THEIR RIGHT TO COMPEL ARBITRATION.

Plaintiffs argue that by responding to Plaintiffs' complaint and by filing counterclaims, the Bolog Defendants have waived their contractual right to arbitrate under the Whitewater Trust Agreement. But there is no rule in Maryland prohibiting the Bolog Defendants from petitioning this Court to arbitrate the Whitewater Investment Claims after defending against Plaintiffs' claims.

---

[3] This section of the Virginia code was amended and signed into law by the Governor of Virginia on March 19, 2025. These amendments changed the numbering of this subsection but did not disturb the text of this particular provision. VA LEGIS 165 (2025), 2025 Virginia Laws Ch. 165 (H.B. 2243).

Plaintiffs' argument is inaccurate as a matter of law and equity and the Bolog Defendants respectfully request that the Court reconsider its Order finding waiver

To begin with, the Maryland Uniform Arbitration Act ("MUAA") "embodies a legislative policy in favor of the enforcement of agreement to arbitrate." *Harris v. Bridgford*, 153 Md. App. 193, 201 (2003). So does the Federal Arbitration Act. *See Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241 (4th Cir. 2017) (acknowledging the "strong federal policy favoring arbitration") (internal citations omitted). To that end, even "resort[ing] to litigation prior to filing a petition with the court to order arbitration d[oes] not constitute, as a matter of law, a knowing and intentional waiver of [the] right to arbitrate." *Harris*, 153 Md. App. at 201. The Bolog Defendants did not *initiate* litigation, but have defended against Plaintiffs' factually and legally deficient claims. Courts in Maryland have clearly "rejected any per se rule that a party who initiates litigation waives arbitration as a matter of law." *Shaw v. Litz Custom Homes, Inc.*, 2021 WL 5853779, at *7 (Md. Ct. Spec. App. Dec. 9, 2021); *see also MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) ("Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration."). And if no such rule exists for a party *initiating* litigation, it certainly does not exist for a party *defending* litigation.

Instead, the "dominant theme running through [Maryland] cases is that conduct constituting a waiver of the contractual right of arbitration must be so inconsistent with the continued assertion of that right as to reflect an intention to repudiate it." *Brendsel v. Winchester Const. Co.*, 162 Md. App. 558, 575 (2005), *aff'd*, 392 Md. 601 (2006). Here, the Bolog Defendants have not waived their right to enforce the arbitration clause in the Whitewater Trust Agreement and have not acted inconsistently with an intention to compel arbitration. In *Brendsel*, plaintiff brought a petition to establish a mechanic's lien on defendant's property under Maryland statutory

law. *Brendsel*, 162 Md. App at 562. The court rejected the argument that plaintiff's *initiation* of the action evidenced an intent to waive arbitration rights because plaintiff only sought to comply with and enforce their statutory rights. *Id*. Additionally, the court granted the petition to arbitrate even though motions for summary judgment had been filed and discovery had commenced. *Id*. Even more so than the plaintiff in *Brendsel*, the Bolog Defendants did not initiate this action and, at the time the Petition for Arbitration was filed, had not moved for summary judgment, had not propounded discovery requests, objected to Plaintiffs' discovery requests on the grounds that they are premature pending arbitration, and had simply complied with statutory deadlines in responding to Plaintiffs' claims and bringing their own counterclaims. The Bolog Defendants have only participated in this action to a limited extent, and as required by statutory deadlines, in order to protect and preserve their rights.

Contrary to Plaintiffs' protestations (Opp. at 9), the Bolog Defendants did indeed assert in their General Answer a defense that Plaintiffs' claims "are barred by written instruments," i.e. the Whitewater Trust Agreement, and requested a "trial by jury of all claims and issues *so triable*." Ex. B at 3 (emphasis added).  To the extent any of Plaintiffs' claims are not triable, because they are arbitrable, then they should be heard in arbitration. Regardless, "[f]ailing to assert arbitration as an affirmative defense, delay, or participation in litigation do not alone constitute default." *Castellanos v. Mariner Fin., LLC*, 2018 WL 488725, at *2 (D. Md. Jan. 19, 2018).

Plaintiffs' argument that the Bolog Defendants waived arbitration because they filed counterclaims and that some of those counterclaims might also be arbitrable (Opp. at 9) is not dispositive as to whether the Bolog Defendants waived their right to arbitration. *See Brendsel*,  162 Md. App. at 565. The Bolog Defendants filed such counterclaims in accordance with the time-restrictions under Md. Rules 2-331(d), four days before serving the Arbitration Letter on Plaintiffs.

Plaintiffs' reliance on *Cain v. Midland Funding* is inapposite, as the court there addressed whether

a party *initiating* an action waived its right to arbitrate. 452 Md. 141 (2017). That is not the

situation here. The Bolog Defendants simply exercised their procedural obligation to assert

counterclaims against Plaintiffs in this Court within the statutory deadline (Md. Rules 2-331(d)),

while simultaneously seeking to bring the Whitewater Investment Claims to arbitration. To the

extent Plaintiffs seek to compel the Bolog Defendants' counterclaims into arbitration, the Bolog

Defendants have no objection to arbitrating them in conjunction with the Whitewater Investment

Claims—indeed, such consolidation would promote judicial economy and efficiency.

Plaintiffs' reference to the Bolog Defendants' position on *WTP*'s petition for arbitration is

wholly irrelevant, as that matter concerned whether Plaintiffs' claims against the Bolog Defendants

were subject to the arbitration provision in the engagement agreement between Ms. Engelhorn and

WTP. None of Plaintiffs' cherry-picked quotations concerning the Bolog Defendants' arguments

about WTP's petition to compel arbitration have any relevance here. In their response to WTP's

petition, the Bolog Defendants specifically said that the claims against them were not arbitrable

because the "arbitration provision at issue is found in the *engagement letter executed by and*

*between WTP and Ms. Engelhorn—none of the Bolog Defendants is a party to that arbitration*

*agreement*." Ex. C at 1 (emphasis added). And any statements made at the subsequent hearing

were made in a similar context, not as a general statement that none of Plaintiffs' claims in this

action could be subject to arbitration. As Mr. Gansler said at the hearing, the Bolog Defendants

"have no dog in the fight" between WTP and Ms. Engelhorn. Ex. F at 32:15-16. Indeed, the Bolog

Defendants did not even come into possession of the full version of the Whitewater Trust

Agreement, which contained the text of the relevant arbitration provision at issue here, until after

the conclusion of initial briefing on the Plaintiffs' Complaint and the subsequent hearing held by

the Court. *See* Gansler Affidavit ¶¶ 4-5; Bolog Affidavit ¶¶ 5-7. And, regardless, the arbitration provision in the engagement letter between WTP and Ms. Engelhorn was specific to a litigation matter that "was long over" by the time "any of the transactions in this case occurred" and has no relevancy to the Whitewater Investment Claims here. Ex. F at 32:1-3.

Plaintiffs cases are distinguishable, inapposite, and even support the Bolog Defendants' position. The court in *Gannett Fleming, Inc. v. Corman Constr., Inc.* provided a lax standard for enforcing an arbitration provision, finding that where an arbitration agreement "do[es] not limit the period in which arbitration can be demanded," it can be sought even after expiration of those same claims under the statute of limitations. 243 Md. App. 376 (2019). *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.* provides Plaintiffs with no support, as the court there found that the petition for arbitration was indeed timely filed. 274 Md. 307 (1975). Neither does *The Redemptorists v. Coulthard Servs., Inc.*, where the court found as timely an arbitration petition filed six months after the action was initiated, and even after defendant had already filed a motion to dismiss and participated in the litigation. 145 Md. App. 116 (2002). And the Court rejected the arbitration petition brought by plaintiff in *Allstate Ins. Co. v. Stinebaugh* only because plaintiff sought to compel arbitration *two years* after the underlying case was initially filed and only *after* the parties had already reached a settlement. 374 Md. 631 (2003). Nothing of the sort has happened here, as the Bolog Defendants served the Arbitration Letter on Plaintiffs just *one month* after they obtained a copy of the Whitewater Trust Agreement and 6.5 months after Plaintiffs initiated this action on September 10, 2024.[4]

---

[4] The appellate court in *Stauffer Constr. Co. v. Bd. of Educ.* only remanded the issue of arbitration back to the circuit court for further evaluation of whether "by failing to make a timely demand . . . or . . . by filing a lawsuit against appellee, appellant has effectively waived its contractual right to arbitration." 54 Md. App. 658 (1983). But it did not find the petition was untimely.

Because the Bolog Defendants have only participated in this action to the extent necessary to protect their procedural rights and comply with statutory obligations in an effort to defend against Plaintiffs' claims, they respectfully request that the Court reconsider its Order that they have waived their right to arbitration under the Whitewater Trust Agreement.

## IV.    AS THE ARBITRATOR WILL DETERMINE, THE WHITEWATER INVESTMENT CLAIMS FALL WITHIN THE ARBITRATION CLAUSE'S SCOPE.

### A.    Questions Of Arbitrability Should Be Decided By The Arbitrator.

The Bolog Defendants respectfully request that any decisions on the scope of the arbitration provision in the Whitewater Trust Agreement and whether it encompasses the Whitewater Investment Claims be determined by the arbitrator, not this Court. The Bolog Defendants further request that the Court reconsider its Order finding the claims non-arbitrable and instead compel arbitration for such a determination by the arbitrator.

"Courts have generally held that the express incorporation of arbitration forum rules constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to the arbitrator." *Dipnarine v. Champion Opco, LLC*, 2025 WL 896333, at *7 (D. Md. Mar. 24, 2025). Here, Section 9 of the Whitewater Trust Agreement provides: "arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association." Ex. A at 14. And under those rules, the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Ex. D at 14. Because the Whitewater Trust Agreement incorporates the rules of the American Arbitration Association, "questions regarding the scope of the Arbitration Agreement should not be determined by this Court, but by the arbitrator." *Dipnarine*, 2025 WL 896333 at *7. Additionally, courts in Maryland "should grant a petition to stay arbitration

on the grounds of substantive arbitrability only if the dispute clearly lies beyond the scope of the arbitration clause at issue. Otherwise, the dispute—including the threshold-arbitrability determination—should be handed over to the arbitrator." *Gannett Fleming, Inc.* 243 Md. App. at 401 (2019).

### B. The Whitewater Investment Claims Are Arbitrable.

Should the Court reconsider its Order and find that it is the proper forum to adjudicate the arbitrability of the Whitewater Investment Claims, the plain language of the arbitration provision in Section 9 of the Whitewater Trust Agreement encompasses:

> *Any controversy between the trustees, or between any other parties to this trust*, including beneficiaries, *involving the construction or application of any of the terms*, provisions, or conditions of this trust agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

Ex. A at 13 (emphasis added).

Plaintiffs argue that none of the Whitewater Investment Claims that the Bolog Defendants seek to arbitrate concern the "construction or application" of the terms of the Whitewater Trust Agreement. Opp. at 17. This is incorrect. "Construction" is the "act or process of interpreting or explaining the meaning of a writing." CONSTRUCTION, BLACK'S LAW DICTIONARY (12th ed. 2024). The Whitewater Investment Claims all concern the interpretation of terms of the Whitewater Trust Agreement to determine whether Mr. Bolog was authorized to make certain investments. Provisions of the Whitewater Trust Agreement that would be relevant to this analysis include:

- **Section 5.B**: Empowering the trustee to "retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage . . . any real or personal property";

- **Section 5.F**: Allowing the trustee to "execute, acknowledge, and deliver documents";

- **Section 5.H**: Permitting the trustee to "borrow funds from any party (including the

trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable"; and

- **Section 5.T**: Granting the Trustee the power "do all things that the grantor would be able to do were the grantor the absolute owner of the trust property" on the assumption that all actions taken by a trustee are "taken in good faith."

Ex. A at 6, 10.

The Whitewater Investment Claims concern alleged transactions made by Mr. Bolog,[5] as a trustee of the Whitewater Trust, which "caused Plaintiff Trust's bank account" to purchase a loan provided to Science Park and "directed the Plaintiff Trust's bank . . . to wire $350,000 to Darnestown Road, Inc.," and whether such investments were consistent with these terms of Whitewater Trust Agreement. *See* Ex. G., Second Amended Complaint ("SAC") ¶¶ 51, 62. The Whitewater Investment Claims are therefore "controvers[ies] . . . involving the construction or application of any of the terms of the Whitewater Trust Agreement." And to the extent any ambiguity exists, a "court must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, reflecting a strong public policy in favor of arbitration." *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 150 (2002).

### C.    The Arbitration Provision Is Enforceable by Darnestown Road, Science Park, and Swain Landing.

There is no dispute that if the arbitration clause is valid, Mr. Bolog can enforce it. As to the other Defendants, Plaintiffs are incorrect that because Darnestown Road, Science Park, and Swain Landing are not parties to the Whitewater Trust Agreement they cannot enforce the arbitration provision. Opp. at 18.

---

[5] Although Mr. Bolog had no involvement with Swain Landing, nor Ms. Engelhorn's decision to invest in Swain Landing, an attorney sent a letter on behalf of Ms. Engelhorn as "Trustee of the Whitewater Revocable Trust" that she "does not have the appetite to continue the Swain's Landing project any longer." *See* Ex. E. Accordingly, the claims against Swain Landing would likewise fall within the mandatory arbitration provisions of Section 5 and 9 of the Whitewater Trust Agreement.

Courts in Maryland "ha[ve] explained that equitable estoppel allows a *non-signatory* to compel arbitration when a signatory to a written agreement containing an arbitration clause must 'rely on' the terms of the written agreement [containing the arbitration clause] in asserting [its] claims against the non-signatory." *Hagerstown Block Co. v. Durbin*, 2015 WL 5926086, at *8 (Md. Ct. Spec. App. July 15, 2015) (internal quotations omitted) (emphasis added). Here, because the Whitewater Investment Claims are brought against Mr. Bolog, Darnestown Road, Science Park, and Swain Landing based on Mr. Bolog's role as a trustee under the Whitewater Trust Agreement and his alleged (and untrue) undisclosed relationships with these entities while serving as a trustee of the Whitewater Trust (SAC ¶¶ 53, 65, 74), Plaintiffs should be barred by equitable estoppel from preventing Darnestown Road, Science Park, and Swain Landing from enforcing the arbitration provision.

Even if the Court were to find otherwise, because these claims necessarily hinge on Plaintiffs' allegations whether Mr. Bolog properly disclosed any alleged conflict of interest, they should nonetheless be stayed pending resolution of any aspects of the Whitewater Investment Claims that are sent to arbitration. This will narrow the relevant issues and streamline any future proceedings before this Court. *See The Redemptorists*, 145 Md. App. at 125 ("The issues as to the non-contracting parties should be stayed pending the outcome of the arbitration.").

## V.      MS. ENGELHORN CANNOT UNILATERALLY AND RETROACTIVELY TERMINATE HER AGREEMENT TO ARBITRATE.

Plaintiffs argue that because the Whitewater Trust is a revocable trust, the settlor, i.e. Ms. Engelhorn, has authority to amend or modify its arbitration provisions at will. Opp. at 9-10. This is a bold and absurd position for which Plaintiffs provide no factual or legal support. The Court did not appear to address this issue in its Order and the Bolog Defendants include it for the purposes of completeness of argument and edification of the Court.

Plaintiffs argue that "Ms. Engelhorn by filing this action, modified the trust to exclude the claims asserted in this litigation from any obligation to arbitrate." Opp. at 9-10. But they do not attach a modified copy of the Whitewater Trust Agreement reflecting such amendments. Nor do they include any attestation that the arbitration provision was actually modified or removed in its entirety in accordance with Section 8 of the Whitewater Trust Agreement, requiring that the grantor deliver by "written instrument . . . to the trustee" any amendment. Ex. A at 13. The unsworn allegations in the Second Amended Complaint only go so far as to say that Ms. Engelhorn amended the Whitewater Trust Agreement to remove Mr. Bolog as a trustee (SAC ¶¶ 5, 58) but does not state if, or what, other amendments were made to its text.

Plaintiffs' argument that by virtue of filing this action Ms. Engelhorn amended the Whitewater Trust Agreement to exclude the Whitewater Investment Claims from arbitration is absurd on its face, as such a position would necessarily allow for unilateral invalidation of any and all arbitration provisions in a trust simply by filing a lawsuit. Any party could entice another party to enter into a trust agreement with an arbitration agreement which the other party relies upon, and then, lose all arbitration rights because the other party unilaterally files a complaint in a court of law. It would be the end of arbitration provisions in trust agreements and for trustees if this absurd argument was allowed by the Court. Instead, the Bolog Defendants respectfully request that the Court find that the binding agreement to arbitrate as stated in Section 9 of the Whitewater Trust Agreement continues to exist, and is enforceable, between Mr. Bolog and Ms. Engelhorn.

Additionally, Plaintiffs' citations to Virginia trust law are inapplicable here as they concern the rights of *beneficiaries* and the settlor's control over trust *property* in a revocable trust. *See* Va. Code Ann. § 64.2-752(A) ("rights of the *beneficiaries* are subject to the control of . . . the settlor") (emphasis added). Virginia courts acknowledge the right of a settlor who established a revocable

trust to "maintain[] control over the [trust] *property*." *Gelber v. Glock*, 293 Va. 497, 505-506

(2017) (emphasis added). But Plaintiffs have cited to no case or authority stating that Virginia (or

any other state) trust law allows for a grantor to discard *contractual provisions* of a trust agreement

in their entirety. Indeed, just the opposite: Virginia trust law recognizes that a trustee is able to

"[r]esolve a dispute concerning the *interpretation of the trust or its administration* by mediation,

*arbitration*, or other procedure for alternative dispute resolution." Va. Code Ann. § 64.2-778

(emphasis added).

## VI.   THE ARBITRATION PROVISION IS NOT BARRED BY RULES OF ATTORNEY PROFESSIONAL CONDUCT.

Plaintiffs' argument that under Maryland's attorney ethics rules—particularly Rule 19-

301.8(h) of the Maryland Rules of Professional Conduct ("MRPC")—the public policy of the state

of Maryland prevents enforcement of arbitration clauses between an attorney and client (Opp. at

11-14) fails here for numerous reasons. As with Section IV, the Bolog Defendants include this

argument for the edification of the Court, but note that the Court did not find credence to this

argument in its Order.

*First*, by its very terms, the Rule does not apply here. The Rule only prohibits "an

agreement prospectively limiting the attorney's liability to a client for malpractice." MRPC Rule

19-301.8(h). None of the Whitewater Investment Claims are grounded in *malpractice*. The only

claim for malpractice brought by Plaintiffs concerns the formation of the JAREB Trust. SAC

¶¶ 113-120. Thus, on its face, Rule 19-301.8(h) is inapplicable to the Whitewater Investment

Claims. This Court's prior ruling that WTP could not enforce the arbitration provision embodied

in the engagement agreement between WTP and Ms. Engelhorn based on Rule 19-301.8(h)(1) has

no bearing here because the arbitration provision in the Whitewater Trust Agreement does not

prospectively limit malpractice claims between a client and attorney, it addresses disputes

concerning the Whitewater Trust Agreement.

*Second*, even if the claims at issue were for malpractice (they are not), Plaintiffs have not satisfied their burden that *Mr. Bolog* drafted the Whitewater Trust Agreement's arbitration provision. Paragraph 30 of the Second Amended Complaint alleges that an attorney with WTP named MaryEllen Willman "recorded a time entry that was billed by Defendant WTP to Plaintiff Engelhorn for drafting a 'revocable trust.' It is believed that Ms. Willman was billing for the drafting of the Whitewater Revocable Trust[.]" (SAC ¶ 30.) Paragraph 33 alleges that "Plaintiff Engelhorn, with the assistance of Defendant WTP, and its attorneys, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees. Attorneys at Defendant WTP had drafted the Whitewater Revocable Trust dated September 30, 2021." (SAC ¶ 33.) But nowhere in the Second Amended Complaint did Plaintiffs allege, much less prove, that *Mr. Bolog* had any role in drafting the Whitewater Trust Agreement or its arbitration provision. And they have provided no attestation to that effect in connection with their Opposition to the Petition for Arbitration either, nor have they cited to it elsewhere in the record. Indeed, this is for good reason: Mr. Bolog did not draft the arbitration provision.

Thus, even if Maryland law applied to the enforceability of the arbitration provision, Plaintiffs' scattershot citations to a series of Maryland attorney grievance commission cases presuming that agreements between an attorney and client are invalid (Opp. at 15-16) are irrelevant: Plaintiffs have not pointed to evidence in the record that *Mr. Bolog* took any action to prospectively limit his liability to Ms. Engelhorn or the Whitewater Trust. Moreover, not only did Mr. Bolog not act unethically, but because the Whitewater Investment Claims concern Mr. Bolog's actions taken in his role as a trustee of the Whitewater Trust, not as Ms. Engelhorn's (or the Whitewater Trust's) attorney, he was not bound by any ethical rules limiting his ability concerning

an arbitration clause with Ms. Engelhorn.[6]

Third, regardless, Plaintiffs' reliance on Maryland state attorney grievance commission

cases is irrelevant because the FAA preempts any state law concerning the enforceability of

arbitration provisions. Indeed, a "rule prohibiting the inclusion of an arbitration provision in an

attorney-client representation agreement" is "preempted by the FAA." *Smith*, 710 F. App'x 101 at

105; *see Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097, 1099 (N.D. Cal.), *amended*,

260 F. Supp. 2d 979 (N.D. Cal. 2003) (preempting certain ethics standards for arbitrators); *see also*

*Saturn Distrib. Corp.* 905 F.2d at 726 (4th Cir. 1990) ("The Federal Arbitration Act does not allow

such singular hostility to the formation of arbitration agreements.") And the FAA is clear that a

"written provision in any . . . contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid,

irrevocable, and enforceable." 9 U.S.C. § 2; *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-207(c)

(Under the Maryland Uniform Arbitration Act, the Court "shall order arbitration" upon a finding

that a valid arbitration agreement exists.)

Indeed, as the Supreme Court has found, "[c]ourts may not . . . invalidate arbitration

agreements under state laws applicable only to arbitration provisions," as "Congress precluded

States from singling out arbitration provisions for suspect status, requiring instead that such

provisions be placed upon the same footing as other contracts." *Doctor's Assocs., Inc. v. Casarotto*,

517 U.S. 681, 687 (1996) (internal citations omitted). According to Plaintiffs' own arguments, the

attorney ethics rules that they cite single out arbitration provisions to suspect status. Thus, even

"where state law prohibits outright the arbitration of a . . . claim . . . [t]he conflicting rule is

---

[6] Plaintiffs briefly contend that should Virginia's rules of professional conduct apply, the arbitration
provision in the Whitewater Trust Agreement would still be unenforceable. But for the same reasons as
stated above, such argument also fails. *See* Va. Sup. Ct. R. pt. 6, sec. II.

displaced by the FAA," which will compel arbitration. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 570 (4th Cir. 2015) (internal quotations omitted).

Without any articulation of a public policy against enforcing arbitration because of attorney ethics rules, the FAA's public policy in favor of arbitration should—and under the Supremacy Clause, must—win the day. *9103 Basil Ct. Partners LLC v. Monarc Constr., Inc.*, 2024 WL 3819522, at *4 (Md. Ct. Spec. App. Aug. 15, 2024) (The FAA was enacted to apply to states in an effort to "declare[ ] a national policy favoring arbitration."); *see also The Redemptorists*, 145 Md. App. at 125 (Maryland law reflects "a strong public policy in favor of arbitration."). Accordingly, the Bolog Defendants respectfully request that the Court find that this aspect of public policy holds, a valid enforceable arbitration agreement exists, and compel arbitration on the Whitewater Investment Claims.

In short, Plaintiffs have not carried their burden of showing that Mr. Bolog drafted the arbitration provision in the Whitewater Trust Agreement, and have propounded no cases[7] stating that an arbitration provision between an attorney and client is unenforceable.[8] Regardless, the

---

[7] Plaintiffs rely heavily on *Post v. Bregman* 349 Md. 142 (1998), for their proposition that the Maryland Attorney Rules of Professional Conduct articulate a "statement of public policy with the force and effect of law and that a contract that violates a rule can be unenforceable." (Opp. at 13.) But *Bregman* is inapposite and, to the extent relevant, supports the Bolog Defendants' position. The court in *Bregman* addressed whether a contingency fee-sharing agreement between two attorneys, which did not impact the client's net recovery, may have violated Rule 19-301.5(e)'s "requir[ement] either that the division be in proportion to the services performed or that, by written agreement with the client, the lawyers assume joint responsibility for the representation." *Post*, 349 Md at 155. But *Bregman*'s endorsement that the Maryland Rules of Professional Conduct "constitute a supervening statement of public policy," is measured by its statement that the professional conduct rules are not a "*per se* defense, rendering invalid or unenforceable otherwise valid . . . agreements *merely because of rule violations that are merely technical, incidental, or insubstantial or when it would be manifestly unfair and inequitable not to enforce the agreement*." *Id*. at 168. Accordingly, even if Rule 19-301.8(h) were applicable to the circumstances here (it is not), any alleged violation by Mr. Bolog would be technical and insubstantial to the broader issue of whether Mr. Bolog has the right to enforce the arbitration provision in Section 9 of the Whitewater Trust Agreement.

[8] *Att'y Grievance Comm'n of Maryland v. Korotki*, 318 Md. 646 (1990) (fee arrangement); *Att'y Grievance Comm'n v. McLaughlin*, 372 Md. 467 (2002) (fees); *Att'y Grievance Comm'n of Maryland v. Shapiro*, 441 Md. 367 (2015) (attorney misconduct); *Att'y Grievance Comm'n v. Steinberg*, 395 Md. 337, 365 (2006)

attorney ethics rules relied on by Plaintiffs are preempted by the Federal Arbitration Act, which

promotes the public policy of enforcing arbitration provisions. Accordingly, the attorney ethics

rules cited by Plaintiffs are inapplicable here.

## **CONCLUSION**

Accordingly, the Bolog Defendants respectfully request that the Court reconsider its Order

and (1) issue an order granting the Bolog Defendants' Petition for Arbitration and compelling

Plaintiffs to arbitrate the Whitewater Investment Claims and (2) stay the Whitewater Investment

Claims pending adjudication of the Petition for Arbitration.

---

(*release* of malpractice claim); *Att'y Grievance Comm'n of Maryland v. Young*, 473 Md. 94 (2021) (*settling* malpractice claim). Similarly, their reliance on Ethics Doc. 1990-12 is inapposite as it addresses a fee dispute. *See* Opp. Ex. 4.

Dated:    June 9 , 2025

Respectfully submitted,

Cadwalader, Wickersham & Taft LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of June, 2025, a copy of the foregoing was served electronically via MDEC upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 25-184-ELG |
| Swain Landing LaPlata JC, LLC | ) | United States Bankruptcy Court |
| | ) | for the District of Columbia |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Claudia Engelhorn, *et al.* | ) | Case No. _____ |
| | ) | United States Bankruptcy Court |
| Plaintiffs, | ) | for the District of Maryland |
| | ) | |
| v. | ) | Case No. C-24-CV-24-002631 |
| | ) | Circuit Court for Baltimore City, |
| Erik D. Bolog, *et al.* | ) | Maryland |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## NOTICE OF REMOVAL

Comes now Swain Landing LaPlata JC, LLC ("Swain Landing" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 1334 and 1452 of Title 28 of the United States Code and Federal Rule of Bankruptcy Procedure 9027, and hereby gives notice of the removal of the above-captioned matter from the Circuit Court for Baltimore City, Maryland to the United States District Court for the District of Maryland (which, pursuant to Local Rule 402 of that court, results in referral of the matter to the United States Bankruptcy Court for the District of Maryland), and in support thereof notes as follows:

1.      This is a multiparty lawsuit in which, pertinently, Claudia Engelhorn ("Ms. Engelhorn"), acting in her capacity as trustee of the Whitewater Revocable Trust Dated September 30, 2021 (the "Trust") and White Pearl, LLC ("White Pearl") are suing, *inter alia*, the Debtor for (i) imposition of a constructive trust comprised of $585,000.00 or, in the alternative, disgorgement of a comparable sum of money; (ii) dissolution and liquidation of Swain Landing; (iii) appointment

1

of a receiver over the assets of Swain Landing; and (iv) other, unspecified relief, arising under common law.

2.      The plaintiffs' claims against the Debtor stem from an investment, by White Pearl, in the Debtor, for which White Pearl was given a membership interest in the Debtor. The plaintiffs appear to contend the subject investment—for reasons that the Debtor vehemently disputes—to have been the byproduct of inequitable and/or wrongful behavior and, accordingly, to now invite litigious recourse.

3.      On May 15, 2025, Swain Landing filed a petition for chapter 11 protection, pursuant to the allowances of Section 301 of Title 11 of the United States Code, thereby commencing case number 25-184-ELG in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Case").

4.      The Bankruptcy Case is driven by facts and events unrelated to this litigation, being centered on an effort to avoid the recission of a land sale contract that, in turn, resulted in the Debtor losing its sole asset less than 90 days before the Bankruptcy Case was commenced.

5.      The Bankruptcy Case does, however, require Swain Landing to fashion and confirm a plan of reorganization through which the claims of creditors will be liquidated and paid, with the claim of White Pearl being the second largest known claim against the Debtor's estate (albeit with the largest claim being both contingent and disputed for myriad reasons unrelated to this adversary proceeding).

6.      Adjudication of the claims of White Pearl and Ms. Engelhorn will bear directly on the administration of the Debtor's estate, insofar as resolution of the claims will both (i) determine the amount, *vel non*, of White Pearl's allowed unsecured claim against the Debtor's estate; and (ii) impact whether White Pearl is permitted to emerge from bankruptcy as a reorganized entity or,

rather, must suffer the fate of dissolution. The claims are thusly core in nature. 28 U.S.C. § 157(b)(2)(A).

7.      The claim of White Pearl against the Debtor must be adjudicated as a claim against the Debtor's estate. That claim is thusly also core in nature. 28 U.S.C. § 157(b)(2)(B).

8.      The claims of White Pearl and Ms. Engelhorn also impact the adjustment of the debtor/creditor relationship, especially insofar as the putative claim of White Pearl is the second largest such claim against the Debtor's estate. The claims are thusly further core in nature. 28 U.S.C. § 157(b)(2)(O).

9.      Insofar as these claims against the Debtor render this a core proceeding, jurisdiction over this case is properly vested in the District Court and, by virtue of standing referral, this Honorable Court. 28 U.S.C. § 1334(a).

10.      Insofar as the claims against the Debtor's co-defendants are related to the claims against the Debtor, jurisdiction over this case is further properly vested in the District Court and, by virtue of standing referral, this Honorable Court. 28 U.S.C. § 1334(b).

11.      The Debtor consents to the entry of final orders and judgments by this Honorable Court or, should this matter be transferred to the United States Bankruptcy Court for the District of Columbia, to the entry of such final orders and judgments by that Honorable Court.

*[Signature on Following Page]*

3

Respectfully submitted,

Dated: June 10, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-444-4600
E-mail: mac@mbvesq.com
Client Protection Fund ID: 0912170262
*Proposed Chapter 11 Counsel for Swain
Landing LaPlata JC, LLC, Debtor-in-
Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of June, 2025, a copy of the foregoing was

served electronically upon filing via the MDEC system, thereby generating notices to all other

parties in the state court litigation and satisfying the service and filing rigors of Federal Rule of

Bankruptcy Procedure 9027(b).

/s/ Maurice B. VerStandig
Maurice B. VerStandig

4

**CIRCUIT COURT FOR BALTIMORE CITY**
**MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**Case Number:**              **C-24-CV-24-002631**
**Other Reference Number(s):**

**CLAUDIA ENGELHORN, ET AL. VS. ERIK BOLOG, ET AL.**

## CIVIL NON-JURY HEARING SHEET

**DATE:** 6/11/2025          **JUDGE:** PAUL CUCUZZELLA

**Court Reporter:** ☐ Court Smart ☒ _____          **Court Clerk:** **BG/JB**

**INTERPRETER:** ☐ present ☐ needed – language type: N/A _____
**(party needs to submit Interpreter request form)**

☒ **ALL PARTIES PRESENT**                    ☐ **PARTIES NOT PRESENT:**

**PLT/Pet:** Attorney Henderson          **DEF/Resp:** Attorney Gansler
☐ **FTA** ☐ **not served**                    ☐ **FTA** ☐ **not served**
**PLT/Pet:** Attorney Gardner            **DEF/Resp:** Attorney Murphy
☐ **FTA** ☐ **not served**                    ☐ **FTA** ☐ **not served**
**PLT/Pet:** _____                     **DEF/Resp:** _____
☐ **FTA** ☐ **not served**                    ☐ **FTA** ☐ **not served**

☐ **MOTION(s):**

_____
_____
_____
_____
_____
_____
_____
_____
_____

☐ **TESTIMONY TAKEN**

☐ **HEARING NOT CONCLUDED AND TO RESUME ON** _____

☐ **Agreement/ Consent placed on the record**          ☐ **Order(s) to be submitted by:** ☐ **the Court**
☐ **Counsel**

☐ **JUDGMENT IN FAVOR OF THE PLAINTIFF AGAINST THE DEFENDANT IN THE AMOUNT OF**
$_____

**Plus** ☐ **INTEREST** ☐ **COSTS**

☐ **JUDGMENT IN FAVOR OF THE DEFENDANT AGAINST THE PLAINTIFF IN THE AMOUNT OF**
$_____

☐ **FOR COSTS ONLY**

**Judgment(s) to be entered.  Clerk to close case if there are no open motions.**

☐ **Exhibits Marked & / or Entered**

**Hearing Notes:**
At the call of the case, the parties were
**Advised on record that the notice was filed for case to be moved to Federal Court.**

_____

_____

_____


**After the case closure, if there are any costs due clerk to send task to civil/family billing.**