# **EXHIBIT 1**

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## BOLOG DEFENDANTS' PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS

Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("Mr. Bolog as Trustee"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown Road") (collectively, the "Bolog Defendants") hereby petition for an order compelling arbitration of all the claims that arise under the Whitewater Revocable Trust Dated September 30, 2021 ("Whitewater Trust" or "Trust"), Exh. A, *i.e.*, those claims related to transactions involving Science Park, Darnestown Road, and Swain Landing ("Whitewater Claims"), as more precisely defined below.  The Bolog Defendants also hereby request a concurrent stay of the Whitewater Claims until the resolution of such arbitration.

## **INTRODUCTION**

Not only are the Whitewater Claims without merit, they should have never been brought before this Court in the first place, if for no other reason than that they are unambiguously subject to mandatory arbitration under the Whitewater Trust. The Bolog Defendants sent the "written request" to Plaintiffs triggering their obligation to submit the Whitewater Claims to arbitration and absolve this Court and the parties to litigate formal motion practice concerning arbitration. Plaintiffs flatly refused. Plaintiffs' failure to arbitrate the Whitewater Claims in the first instance, and now their abject and unjustified failure to do so after the Bolog Defendants' issued a binding written request to do so, only serves to reinforces that Plaintiffs' goal here in this litigation is to tarnish Mr. Bolog and his hard-earned, decades-long reputation as an outstanding attorney and savvy businessman.

For the reasons set forth below, the Court should (1) stay the Whitewater Claims pending adjudication of this Petition and (2) issue an order compelling Plaintiffs to arbitrate the Whitewater Claims.

## **FACTUAL BACKGROUND**

As alleged in the Second Amended Complaint, Mr. Bolog served as the co-trustee of the Whitewater Trust from its inception until on or around November 3, 2022. (SAC ¶¶ 33, 58). With the full approval of his co-trustee Ms. Engelhorn, the Whitewater Trust engaged in certain transactions related to Science Park, Darnestown Road, and Swain Landing, and the Whitewater Claims constitute controversies arising under the Whitewater Trust, that must be arbitrated now that Plaintiff Engelhorn has been served with a request for arbitration in writing.

Specifically, Section 9 of the Whitewater Trust Agreement requires the arbitration of "any controversy . . . involving the construction or application of any of the terms, provisions, or conditions of this trust" between the trustee and a party "on the written request of either or any disagreeing party to the trust . . . ."  Arbitration "on written request" of the trustee is *mandatory*: Section 9 provides that any such controversy "*shall* . . . be submitted to arbitration."  (Emphasis added).  Exh. A.

The Whitewater Claims comprise the following claims in the Second Amended Complaint ("SAC"):

- Counts X and XI (constructive trust over Darnestown Road, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

All of these counts relate to transactions that the Whitewater Trust--with Mr. Bolog's full disclosure of all waivable conflicts, and at the insistence of Ms. Engelhorn--became involved in with two different entities affiliated with Mr. Bolog. With respect to Science Park, the Whitewater Trust purchased a loan from a regional bank relating to Science Park for approximately $3,352,650. SAC ¶¶ 50-51. This loan was secured by a deed of trust on an office building located

in Greenbelt, Maryland. The property was sold soon thereafter, and the Whitewater Trust was repaid all principal, interest, and costs, totaling approximately $3.7 million—a profit of approximately $350,000. Indeed, Plaintiffs admit in the SAC itself that the the payoff for the Trust was $3,689,662.77, and that the Trust was paid *exactly that amount*. Thus, not only do the Science Park claims fail to allege damages, the opportunity proved very lucrative for Ms. Engelhorn and the Whitewater Trust.

With respect to Darnestown Road, the Whitewater Trust loaned that entity funds in connection with the operation of a 100,000 square foot shopping center located in Richmond, Virginia. The Second Amended Complaint conveniently, and fatally, fails to allege the material and necessary facts that such loan is not yet due, and that any claim for damages is not ripe. At the time of these loans were issued, Mr. Bolog served as co-trustee of the Whitewater Trust.

Consistent with the above and in accordance with the express terms of Section 9 of the Whitewater Trust, by letter dated March 27, 2025 counsel for the Bolog Defendants served Ms. Engelhorn's counsel with a "written request" for arbitration of the claims in the SAC that arise under the Whitewater Trust, *i.e.*, the Whitewater Claims ("Arbitration Letter"). Exh. B. The Arbitration Letter also requested that Ms. Engelhorn's counsel voluntarily dismiss the Whitewater Claims from this action by no later than April 4, 2025. On that date, counsel for Plaintiffs responded that they "will not be taking any of the requested actions," necessitating the filing of this Petition. Exh. C.

## ARGUMENT

I.     **THE COURT SHOULD APPLY MARYLAND LAW TO PROCEDURAL ISSUES AND VIRGINIA LAW TO SUBSTANTIVE ISSUES.**

As an initial matter, because plaintiffs initiated this action in this Court, the procedural law of Maryland applies. *See Am. Hous. Pres., LLC v. Hudson SLP, LLC*, No. 1241 Sept.term 2015,

2016 WL 7496181, at *9 (Md. Ct. Spec. App. Dec. 20, 2016) ("where a contract's governing law differs from that of the forum state, the court shall apply the laws of the forum to procedural matters").

As for substantive matters, the Whitewater Trust Agreement unequivocally states that the Whitewater Trust Agreement "and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law." Exh. A, Section 10. Accordingly, substantive questions concerning the interpretation and validity of the Whitewater Trust are governed by the laws of the Commonwealth of Virginia.

## II.    THE COURT SHOULD ISSUE AN IMMEDIATE STAY OF ALL PROCEEDINGS RELATED TO THE WHITEWATER CLAIMS.

The plain language of Maryland's Uniform Arbitration Act ("MUAA") requires that this action be stayed by the filing of this petition: "A court shall stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made." Md. Code Ann., Cts. & Jud. Proc. § 3-209(a) (emphasis added); see *Questar Homes of Avalon, LLC* v. *Pillar Constr., Inc.*, 388 Md. 675, 685 (2005). As set forth above, the Whitewater Claims are subject to a mandatory contractual arbitration clause, triggering arbitration by "written request." Exh. A. Accordingly, the Bolog Defendants respectfully request that the Court issue a stay of proceedings, including discovery.

## III.    THE COURT SHOULD ISSUE AN ORDER COMPELLING ARBITRATION OF THE WHITEWATER CLAIMS.

Under the MUAA, when one party refuses to arbitrate, the other "may file a petition with a court to order arbitration." Md. Code Ann., Cts. & Jud. Proc. § 3-207(a). "If the court determines that the agreement exists, *it shall order arbitration*." *Id.* § 3-207(c) (emphasis added). Because of Maryland's strong "public policy favoring the use of arbitration to resolve disputes, courts should

resolve doubts about the scope of arbitrable issues in favor of arbitrability." *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 400-01 (2019); *see also Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 551, 649 A.2d 365, 373 (1994) ("the public policy favoring arbitration would be frustrated if arbitration agreements were not enforced"). Further, "the use of a broad, all encompassing arbitration clause ordinarily leads to the presumption that the parties intended the arbitration of all disputes." *Cont. Const., Inc. v. Power Tech. Ctr. Ltd. P'ship*, 100 Md. App. 173, 178 (1994).

Where, as here "the arbitration clause calls for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly excluded." *Cont. Const., Inc. v. Power Tech. Ctr. Ltd. P'ship*, 100 Md. App. 173, 178 (1994). The Whitewater Trust Agreement is extraordinarily broad, covering "[a]ny controversy between the trustees . . . involving the construction of application of any of the terms, provisions, or conditions of this trust agreement" between the trustee and a party "on the written request of either or any disagreeing party to the trust" on "written request" of the trustee, *i.e.* Mr. Bolog, "*shall . . . be submitted to arbitration.*" Exh. B. Moreover, counsel for Plaintiff's summary refusal to arbitrate does not even attempt to explain why arbitration is not required under this language, rendering the necessity of arbitration effectively undisputed.

There is no question here that the Whitewater Claims concern a "controversy between the trustees" and must be submitted to mandatory arbitration. The Whitewater Claims relating to Science Park and Darnestown concern transactions that Mr. Bolog, as Trustee of the Whitewater Trust, made—with full authority under the Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using Trust funds. The Whitewater Claims therefore involve "controvers[ies]" within the scope of the mandatory arbitration provisions of Section 9 of the Trust.

And, although Mr. Bolog had no involvement, in any capacity whatsoever with the Swain Landing transaction, according to counsel for Whitewater, the Swain Landing transaction is a Whitewater Trust transaction which occurred while Mr. Bolog was the co-Trustee of the Whitewater Trust and thus, the Plaintiffs' claims relating to Swain Landing also fall within the mandatory arbitration provisions of Section 9 of the Whitewater Trust.  *See* letter from Tony Williams, (counsel for Whitewater Trust to Mike Postal), attached hereto as Exh. D.  Accordingly, those claims likewise fall within Section 9 of the Whitewater Trust Agreement's mandatory arbitration provision

## **CONCLUSION**

For the foregoing reasons, the Bolog Defendants respectfully request that the Court (1) stay all proceedings in this action pending adjudication of this Petition and (2) issue an order compelling the arbitration of the Whitewater Claims.

Dated:        April 18, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated October 11,
2021; Darnestown Road, Inc.; and Science Park
Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a copy of the foregoing was

served electronically via MDEC upon counsel of record, and remaining parties served via first

class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road,
Inc.; and Science Park Associates, LLC*

E-FILED; Baltimore City Circuit Court
Docket: 4/18/2025 5:19 PM; Submission: 4/18/2025 5:19 PM
Envelope: 20856792

# EXHIBIT A

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

### TABLE OF CONTENTS

SECTION 1.    CREATION OF TRUST ........................................................... 1
SECTION 2.    TRUST DURING GRANTOR'S LIFETIME ......................... 1
SECTION 3.    UPON GRANTOR'S DEATH ................................................ 2
  A.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY ........ 2
  B.    CASH DISTRIBUTION ................................................................. 2
  C.    PAYMENT OF INDEBTEDNESS ................................................ 2
  D.    DISTRIBUTION OF BALANCE OF TRUST ............................... 2
SECTION 4.    TRUSTEES ............................................................................ 3
  A.    SUCCESSOR TRUSTEES ............................................................ 3
  B.    COMPENSATION ........................................................................ 3
  C.    RESIGNATION ............................................................................ 3
  D.    REMOVAL .................................................................................... 4
  E.    EMERGENCY ACTION .............................................................. 4
  F.    EMPLOYMENT OF INVESTMENT ADVISOR ......................... 4
SECTION 5.    POWERS OF TRUSTEE ...................................................... 5
  A.    RETAIN RESIDENCE IN TRUST .............................................. 5
  B.    DEAL WITH PROPERTY ........................................................... 6
  C.    MARGIN AND BANK ACCOUNTS ........................................... 6
  D.    REGISTER IN NOMINEE FORM ............................................... 6
  E.    DISPOSE OF CLAIMS ................................................................ 6
  F.    EXECUTE DOCUMENTS ............................................................ 6
  G.    DIVIDE PROPERTY ................................................................... 6
  H.    BORROW FUNDS OR MAKE LOANS ....................................... 6
  I.    EMPLOY AGENTS ...................................................................... 6
  J.    MAKE TAX ELECTIONS ........................................................... 7
  K.    CARRY ON BUSINESS .............................................................. 7
  L. S CORPORATION STOCK ............................................................. 7
  M.    TREAT AS COMMON FUND .................................................... 8
  N.    RECEIVE ADDITIONAL PROPERTY ...................................... 8
  O.    MERGE TRUSTS ........................................................................ 9
  P.    DIVIDE TRUSTS ......................................................................... 9
  Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS ........... 9
  R.    DEAL WITH DIGITAL ASSETS ............................................... 9
  S.    KEEP INFORMATION CONFIDENTIAL ................................. 10
  T.    DO ALL THINGS WITH FINAL AUTHORITY ....................... 10
SECTION 6.    DUTIES OF TRUSTEE ...................................................... 10

A.  PAY DEATH TAXES AND SATISFY CASH NEEDS ..............................................10
B.  PAY DELIVERY EXPENSES ....................................................................................10
C.  PAY DIRECTLY TO BENEFICIARIES ....................................................................10
D.  DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E.  MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS ......................................................................................................................11
F.  MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE ..........................................................................................................................11
G.  PAY INCOME AT TERMINATION OF TRUSTS ..................................................11
H.  ADMINISTER WITHOUT COURT SUPERVISION ..............................................11
I.  RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ..........................11
SECTION 7.    INCAPACITY ...........................................................................................12
A.  DETERMINATION OF INCAPACITY .....................................................................12
B.  DURATION OF INCAPACITY ..................................................................................12
C.  EFFECT OF INCAPACITY ........................................................................................13
D.  REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.    REVOCATION OR AMENDMENT ........................................................13
SECTION 9.    RESOLUTION OF CONTROVERSIES ...................................................13
SECTION 10.    GOVERNING LAW ...............................................................................14
SECTION 11.    RULE AGAINST PERPETUITIES ........................................................15
SECTION 12.    BINDING AGREEMENT .......................................................................15
    SCHEDULE A .........................................................................................................17
    SCHEDULE B .........................................................................................................18
    SCHEDULE C .........................................................................................................19
    SCHEDULE D .........................................................................................................20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone. Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

**SECTION 1. CREATION OF TRUST.** The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property. The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement. This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

**SECTION 2.    TRUST DURING GRANTOR'S LIFETIME.** During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs. However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

**SECTION 3.**     **UPON GRANTOR'S DEATH.**   Upon the grantor's death, this trust shall be administered and disposed of as follows.

  **A.**     **DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.**   The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

  **B.**     **CASH DISTRIBUTION.**   The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them. If none are then living, this gift shall lapse.

  **C.**     **PAYMENT OF INDEBTEDNESS.**   The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

  **D.**     **DISTRIBUTION OF BALANCE OF TRUST.**   The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia. If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*     2

## SECTION 4.    TRUSTEES.

**A.    SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees. The grantor appoints as a successor trustee any person or corporation so designated.

**B.    COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00). Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

**C.    RESIGNATION.** A trustee may resign at any time by an instrument in writing. No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

**D.    REMOVAL.** The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

**E.    EMERGENCY ACTION.** If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

**F.    EMPLOYMENT OF INVESTMENT ADVISOR.** The successor trustee then serving shall continue to engage the services of the investment advisor employed by

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    4

the grantor at the time of her death or incapacity to manage the investment of the trust property. If no investment advisor was employed by the grantor at the time of her death or incapacity, the successor trustee shall engage a professional investment advisory firm to manage the investment of the trust property.

SECTION 5.    POWERS OF TRUSTEE. In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, the powers listed below, which they may exercise without prior or subsequent approval by any court. In addition, the grantor specifically incorporates the provisions of §64.2-105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers listed below. The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct. For convenience the grantor is referring to these fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the singular and plural, include each other wherever appropriate in any reference to any person or corporation in this agreement.

A.    RETAIN RESIDENCE IN TRUST. To retain in any trust any residence transferred to the trust by the grantor. The trustee shall permit the grantor to occupy the residence, rent free, for whatever period of time the trustee may reasonably determine. The trustee is not required to make any charge against income or principal for depreciation. The trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                5

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.    DEAL WITH PROPERTY.**  To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.    MARGIN AND BANK ACCOUNTS.**  To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.    REGISTER IN NOMINEE FORM.**  To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.    DISPOSE OF CLAIMS.**  To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.    EXECUTE DOCUMENTS.**  To execute, acknowledge, and deliver documents.

**G.    DIVIDE PROPERTY.**  To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.    BORROW FUNDS OR MAKE LOANS.**  To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.    EMPLOY AGENTS.**  To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    6

**J.   MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

**K.   CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**L.   S CORPORATION STOCK.** During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

(1) **Electing Small Business Trust.** If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

(2) **Qualified Subchapter S Trust.** If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

(a) If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b)    Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c)    The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d)    The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

**(3)    Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

**(a)**    The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

**(b)**    No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.    TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.    RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**O.    MERGE TRUSTS.**  To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P.    DIVIDE TRUSTS.**  To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q.    DEAL WITH GENERATION-SKIPPING TRANSFERS.**  To deal with any potential generation-skipping transfer (GST) as follows:

**(1)    Fund With Appreciating Assets.**  To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)    Disregard GST Tax Consequences.**  To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax. The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)    Make Distributions From Divided Trusts.**  With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

**(a)    **To make distributions of income and principal to skip persons from the exempt trust;

**(b)    **To make distributions of income and principal to non-skip persons from the non-exempt trust; and

**(c)    **To pay estate, inheritance and other death taxes from the non-exempt trust.

**R.    DEAL WITH DIGITAL ASSETS.**  To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.     KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.     DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

**SECTION 6.     DUTIES OF TRUSTEE.** The grantor authorizes the trustee and

any successor trustees, without prior or subsequent approval by any court:

**A.     PAY DEATH TAXES AND SATISFY CASH NEEDS.** Subject to the provisions of Section 6.I of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise. Taxes include interest and also penalties not caused by negligence or bad faith. Subject to the provisions of Section 6.I of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate. Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust: (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes. In no event shall there be any right of reimbursement from any person.

**B.     PAY DELIVERY EXPENSES.** To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.     PAY DIRECTLY TO BENEFICIARIES.** To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.    DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**    Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:   (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.    MAKE BINDING DECISIONS WITH RESPECT TO DISCRE-TIONARY PAYMENTS.**    In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person. No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust. All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.    MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**    No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee. No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.    PAY INCOME AT TERMINATION OF TRUSTS.**    To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary. If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.    ADMINISTER WITHOUT COURT SUPERVISION.**    To administer all trusts without court supervision. If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.    RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.** Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

WHITEWATER Revocable Trust Agreement

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

## SECTION 7.    INCAPACITY.

 **A.    DETERMINATION OF INCAPACITY.**    Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

  **(1)**    Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

  **(2)**    A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

  **(3)**    Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

 **B.    DURATION OF INCAPACITY.**    Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

---

WHITEWATER Revocable Trust Agreement

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

**C.    EFFECT OF INCAPACITY.**

(1)    If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues.  If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)    If the grantor is determined to be incapacitated, then notwithstanding any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement.  If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

**D.    REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.**  Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney.  The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court.  The decision of any attorney in fact, parent or guardian is binding on all persons.

**SECTION 8.    REVOCATION OR AMENDMENT.**  The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person.  In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime.  This trust shall become irrevocable upon the grantor's death.

**SECTION 9.    RESOLUTION OF CONTROVERSIES.**  Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

**SECTION 10.    GOVERNING LAW.** This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    14

SECTION 11.    RULE AGAINST PERPETUITIES.    The common law rule
against perpetuities shall not apply to this agreement and the trusts created by this agreement.

SECTION 12.    BINDING AGREEMENT.    This agreement is binding upon and
inures to the benefit of the parties and their respective personal representatives, successors in
interest, and successors in trust.

EXECUTED on September 30, 2021.

WITNESS:

_____ _____ (SEAL)
CLAUDIA ENGELHORN, Grantor

_____ _____ (SEAL)
CLAUDIA ENGELHORN, Trustee

_____ _____ (SEAL)
ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction
aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees
named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction
aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable
trust agreement, and acknowledged it to be his act and deed.

_____
Notary Public

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN,** grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021,** have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_(signature)_ (SEAL)
CLAUDIA ENGELHORN, Grantor

---

**WHITEWATER** Revocable Trust Agreement

# SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials Grantor | Trustee | Date Transferred |
|-------|-----------------|------------------|---------|------------------|
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |
|       |                 |                  |         |                  |

**WHITEWATER** Revocable Trust Agreement

## SCHEDULE B

### DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me. I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, to the person named, if, in each case, that person is living 30 days after my death.

| *Description of Personal Property* | *Desired Recipient And Relationship* |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | CLAUDIA ENGELHORN |

---

**WHITEWATER** Revocable Trust Agreement

# SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

_Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260_                    19

## SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me.  To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
## DATED
## SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN**, hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court, including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers, some of which are listed below, and all of which they may exercise without prior or subsequent approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                          2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                 3

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_(signature)_ Arlington NC

**CLAUDIA ENGELHORN**, Grantor _(signature)_ (SEAL)

_(signature)_ Arlington NC

**CLAUDIA ENGELHORN**, Trustee _(signature)_ (SEAL)

_(signature)_ Fairfax VA

**ERIK D. BOLOG**, Trustee _(signature)_ (SEAL)

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be her act and deed.

_(signature)_
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, and acknowledged the foregoing abstract of trust to be his act and deed.

_(signature)_
Notary Public

Fairfax, VA

_(Notary seal: SHONTA DENISE JOHNSON, NOTARY PUBLIC, REG # 7861193, MY COMMISSION EXPIRES 08/31/2024, COMMONWEALTH OF VIRGINIA)_

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                          4

## ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
## DATED SEPTEMBER 30, 2021

I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

**EXECUTED** as of September 30, 2021.

WITNESS:

_____               _____ (SEAL)
                                                CLAUDIA ENGELHORN

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

_____
Notary Public

SHONTA DENISE JOHNSON
NOTARY PUBLIC
REG # 7861193
MY COMMISSION
EXPIRES
08/31/2024
COMMONWEALTH OF VIRGINIA

# EXHIBIT B

# CADWALADER

Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Avenue N.W., Washington, D.C. 20006
Tel +1 202 862 2200   Fax +1 202 862 2400
www.cadwalader.com

March 27, 2025

**VIA ELECTRONIC MAIL**

Wes P. Henderson
Patrick D. Gardiner
Henderson Law, LLC
2127 Espey Court, Suite
204 Crofton, MD 21114

Re:    *Request For Arbitration Under Section 9 Of The Whitewater Revocable Trust, Dated September 30, 2021; For Payment of Legal Fees and Costs Under Section 9; And For Compensation As Trustee Under Section 5*

Dear Mr. Henderson:

As set forth more fully below, this letter represents the written request of my client, Mr. Erik D. Bolog, in both his individual capacity and, during all relevant times, his capacity as Trustee of the Whitewater Revocable Trust Agreement of September 30, 2021 (the "Whitewater Trust" or the "Trust"),[1] to: (a) arbitrate the Whitewater Investment Claims (as defined below); (b) receive immediate payment from the Trust for Mr. Bolog's attorney's fees and costs incurred defending against the Whitewater Investment Claims; and (c) receive compensation from the Trust for services as Trustee of the Trust.

## I.    Mandatory Arbitration Of Claims Brought By The Whitewater Trust

Section 9 of the Whitewater Trust requires the arbitration of "any controversy . . . involving the construction or application of any of the terms, provisions, or conditions of this trust" between the trustee and a party "on the written request of either or any disagreeing party to the trust . . . ."   Arbitration "on written request" of the trustee is *mandatory*: stating that any such controversy "*shall* . . . be submitted to arbitration."   (Emphasis added).

Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant to the claims you have asserted in the Second Amended Complaint in *Claudia Engelhorn, et al. v. Erik Bolog, et al.*, C-24-CV-002631, Cir. Ct. for Balt. City, Md. (the "Engelhorn Litigation"), that relate to investments and/or loans using funds from the Whitewater Trust in Science Park Associates,

---

[1] As stated in Section 10 of the Trust, "[a]ll questions pertaining to the . . . construction of the [Trust] agreement shall be determined, and the trust shall be administered, under Virginia Law."

**C A D W A L A D E R**

LLC ("Science Park"), Darnestown Road, Inc. ("Darnestown"), and Swain Landing LaPlata JC, LLC ("Swain Landing") (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown, and Swain Landing, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park).

The Whitewater Investment Claims relating to Science Park and Darnestown concern investments that Mr. Bolog, as Trustee of the Whitewater Trust, made—with full authority under the Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using Trust funds. The Whitewater Investment Claims therefore involve "controvers[ies]" within the scope of the mandatory arbitration provisions of Section 9 of the Trust. And, although Mr. Bolog had no involvement, in any capacity whatsoever, relating to the Whitewater Trust's investment in Swain Landing, to the extent there are allegations that such an investment was made with Whitewater Trust funds during the time he was Trustee, those claims would likewise fall within Section 9's mandatory arbitration provisions.

Accordingly, Mr. Bolog hereby serves on Ms. Engelhorn this written request to submit the Whitewater Investment Claims to arbitration, to be conducted in compliance with the commercial Arbitration Rules of the American Arbitration Association, as provided in Section 9 of the Trust, and with the other applicable terms of Section 9. In addition, because arbitration of the Whitewater Investment Claims is mandatory in light of this written request, I hereby request that you file a voluntary motion to dismiss those claims with prejudice by no later than April 4, 2025. If the Whitewater Trust does not dismiss the Whitewater Investment Claims by this deadline, we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

## II.    Trust's Obligation To Immediately Pay Mr. Bolog For Fees And Costs Incurred

Section 9 of the Trust separately provides that "[t]he defense of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust." The "litigation" to which this sentence refers encompasses not only arbitration, which has separate cost-recovery language, but any civil litigation. This is abundantly evident from context: the first sentence of the paragraph in which the language creating the payment obligation appears states that "the grantor [Ms. Engelhorn] desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets." The Trust's obligation to pay litigation fees and costs is unconditional and immediate—there is no language limiting the circumstances under which the Trust must pay or deferring payment to some future time.

# C A D W A L A D E R

Accordingly, I hereby request that Ms. Engelhorn, as Trustee, immediately disburse from the Trust $150,000 and pay Mr. Bolog that amount, following the attached payment instructions. Because the Engelhorn Litigation remains active and ongoing, Mr. Bolog continues to accrue costs and expenses in defending against the Whitewater Investment Claims. We will keep you apprised, on a monthly basis, of additional legal fees and expenses incurred by Mr. Bolog that are required to be paid for by the Whitewater Trust in defense of the Whitewater Investment Claims.

We will expect prompt and timely payment of all incurred legal fees and expenses.

### III.     Trust's Obligation To Pay Mr. Bolog's Compensation For Trustee Services

Lastly, Section 5.K. of the Whitewater Trust entitles Mr. Bolog to compensation for his services as Trustee.  Mr. Bolog served as Trustee of the Whitewater Trust for 13 months, from its creation on September 30, 2021, until November 2022, when Ms. Engelhorn, through counsel, notified Mr. Bolog that he was being removed as Trustee.  During his time as Trustee, Mr. Bolog performed all of the duties required of him as Trustee, providing numerous valuable services benefitting the Trust and Ms. Engelhorn. To-date, Mr. Bolog has received no compensation whatsoever for those services, in direct contravention of the provisions of Section 5.K. of the Trust and the governing law of the Commonwealth of Virginia. *See* Whitewater Trust, Section 10 (providing that Virginia law governs); Va. Code Ann. § 64.2-761 (providing that "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances.")[2]

Given that the Trust held in excess of $100 million of assets at the time Mr. Bolog was the Trustee, Mr. Bolog hereby demands payment for his services as Trustee of the Whitewater Trust in the amount of at least $500,000 based on the customary and reasonable fee of at least 0.5% of the trust assets.

*       *       *

Accordingly, we ask that you (a) voluntarily dismiss the claims in *Engelhorn, et al. v. Bolog, et al.,* by no later than April 4, 2025 and (b) pay Mr. Bolog as demanded above within twenty-one days of the date of this letter or we will take the appropriate action to stay the litigation and proceed to arbitration as mandated by the Whitewater Trust Agreement.

We look forward to your prompt attention to these requests.

---

[2] Mr. Bolog is also entitled to "be reimbursed out of the trust property, with interest as appropriate for" any "[e]xpenses that were properly incurred in the administration of the trust." Va. Code Ann. § 64.2-762.

**CADWALADER**

Sincerely,

Douglas Gansler

E-FILED; Baltimore City Circuit Court
Docket: 4/18/2025 5:19 PM; Submission: 4/18/2025 5:19 PM
Envelope: 20856792

# EXHIBIT C

**Howard, J.B.**

| | |
|---|---|
| **From:** | Wes Henderson <wph@hendersonlawllc.com> |
| **Sent:** | Friday, April 4, 2025 4:53 PM |
| **To:** | Schrieber, Zack; Patrick Gardiner; Katie Dold |
| **Cc:** | Gansler, Douglas; Howard, J.B. |
| **Subject:** | RE: C-24-CV-24-002631: Claudia Engelhorn, et al.  v.  Erik Bolog, et al |

[ WARNING: External Email ]

Dear Doug:

I am writing to acknowledge receipt of your correspondence dated March 27, 2025.

The requests contained in your letter lack merit and fail as a matter of law.  Accordingly, our clients will not be taking any of the requested actions.

Should you have any questions or concerns, do not hesitate to contact me.

Regards,
Wes



**Wes P. Henderson, Esquire**
Henderson Law, LLC

2127 Espey Court, Suite 204
Crofton, MD 21114
Phone: (410) 721-1979
Fax: (410) 721-2258
Email: wph@hendersonlawllc.com
Web: www.HendersonLawLLC.com



**CONFIDENTIALITY NOTICE AND DISCLAIMER**
This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify me immediately that you have received this message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.

**TAX INFORMATION**
Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Schrieber, Zack <Zack.Schrieber@cwt.com>
**Sent:** Thursday, March 27, 2025 7:01 PM
**To:** Wes Henderson <wph@hendersonlawllc.com>; Patrick Gardiner <patrick@hendersonlawllc.com>; Katie Dold <KDold@hendersonlawllc.com>
**Cc:** Gansler, Douglas <Douglas.Gansler@cwt.com>; Howard, J.B. <J.B.Howard@cwt.com>
**Subject:** C-24-CV-24-002631: Claudia Engelhorn, et al. v. Erik Bolog, et al

Counsel,

Please see the attached correspondence.

Best,

**Zachary Schrieber**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Tel: +1 (212) 504-6166
Fax: +1 (212) 504-6666
zack.schrieber@cwt.com
www.cadwalader.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

E-FILED; Baltimore City Circuit Court
Docket: 4/18/2025 5:19 PM; Submission: 4/18/2025 5:19 PM
Envelope: 20856792

# EXHIBIT D



Anthony Williams

anthony.williams@dentons.com
D    +1 212-905-8308

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

dentons.com

April 17, 2024

**Via Email to: MikePostal@TenacityGroup.com**

Michael Postal

Re:    Swain's Landing LaPlata JC LLC re: Member Withdraw and Return of Capital Contribution

Dear Mr. Postal:

This letter follows our telephone discussion on November 21, 2023 and last email correspondence on February 12, 2024.

As you know, we represent Claudia Engelhorn as Trustee of the Whitewater Revocable Trust dated September 30, 2021 (the "Trust"). As Anthony Williams has expressed to you several times, Ms. Engelhorn does not have the appetite to continue the Swain's Landing project any longer and wishes to have her capital contribution of $585,000.00 returned to her.

Per our previous discussions:

- You indicated you are working with a new investor for Swain Landing LaPlata JC LLC ("Swain") who may be able to purchase Claudia's interest.
- You thought you would be able to get Claudia's principal, and potentially some interest, back to her by the end of the first quarter of this year.
- You stated the Project has been delayed due to the Town of LaPlata's ("Town") water availability problem and, therefore, have not made a formal presentation to the investor yet.
- You stated you planned on making the presentation to the new investor regardless of the status of Town's the water availability problem.

We are now past the end of the first quarter. We appreciate your prompt response on when you believe our client will be receiving her capital contribution back.

Very truly yours,

*Patricia L Lincoln*

Patricia L. Lincoln
on behalf of Anthony Williams

AW:pl

Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

US_ACTIVE\126672132\V-1