# Exhibit B

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

| | | |
|---|---|---|
| **CLAUDIA ENGELHORN,** *et al.,* | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | **Case No.: C-24-CV-24-002631** |
| | ) | |
| | ) | |
| **WHITEFORD, TAYLOR & PRESTON, LLP et al.,** | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| **ERIK D. BOLOG** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DARNESTOWN ROAD, INC.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SCIENCE PARK ASSOCIATES, LLC** | ) | |
| | ) | |
| *Counterclaim Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CLAUDIA ENGELHORN** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CLAUDIA ENGELHORN, AS TRUSTEE OF THE WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021** | ) | |
| | ) | |
| *Counterclaim Defendants* | ) | |

## BOLOG DEFENDANTS' COUNTERCLAIMS

Counterclaim Plaintiffs Erik D. Bolog ("Mr. Bolog"), Science Park Associates, LLC, and Darnestown Road, Inc. (collectively, the "Counterclaim Plaintiffs"), bring these counterclaims against Counterclaim Defendants Claudia Engelhorn and Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("Trustee" and collectively with Ms. Engelhorn, the "Counterclaim Defendants") and allege the following:

## NATURE OF THE ACTION

1.      These are counterclaims that Mr. Bolog never imagined he would be forced to bring against one-time friend, business colleague and former client, Ms. Claudia Engelhorn, individually and as the Trustee of the Whitewater Revocable Trust, dated September 30, 2021 ("WWT").

2.      Mr. Bolog first became acquainted with Ms. Engelhorn when he successfully represented her in a massive cross-border litigation, during the height of the global COVID pandemic, traveling back and forth from the United States to Europe, with threats on his life because of his involvement in a very public legal battle. It would not be an understatement to say that Mr. Bolog risked his health, well-being, and physical safety in relation to his representation of Ms. Engelhorn. *See* **Exhibit C** at 1.

3.      Ms. Engelhorn is the daughter of Curt Engelhorn, who, according to Ms. Engelhorn, was at one time the self-proclaimed wealthiest man in Germany, with an estimated $10 billion value of his estate and affiliated entities at the time of his death.  Approximately 25 years before his death, Mr. Engelhorn funded the Manheim Trust, created for the benefit of Ms. Engelhorn and her children in the amount of $500 million, to be managed as a family office. Ms. Engelhorn has served as the life trustee of the Manheim Trust, which paid her a salary of

approximately $1,000,000 per year and loaned her approximately $30,000,000 to fund her lifestyle and various litigations.

4.      Mr. Engelhorn, who became a resident of Gstaad, Switzerland, towards the end of his life, and later died in Gstaad, left his entire estate to his (fourth) wife. Unsatisfied with the $500 million her father gifted to the Manheim Trust (for the benefit of her and her three children), Ms. Engelhorn chose to pursue a forced heirship claim to her statutory entitlement from her father's estate under the laws of Switzerland (the "Switzerland Litigation").

5.      As a result of his dogged and tireless efforts representing Ms. Engelhorn in the Switzerland Litigation, Mr. Bolog obtained a $130 million, tax-free settlement, on behalf of Ms. Engelhorn.

6.      After paying 100% of her legal fees and expenses to Mr. Bolog's then-law firm, Whiteford Taylor & Preston, LLP ("WTP"), Ms. Engelhorn decided, on her own, to fund an irrevocable trust known as the JAREB Irrevocable Trust Dated October 11, 2021 ("JAREB Irrevocable Trust") for the benefit of Mr. Bolog and his children, in the amount of $10,000,000 (the "Gift"). *See* **Exhibit C** at 1-2.

7.      From the date of the Gift to the JAREB Irrevocable Trust through the early summer of 2022, Ms. Engelhorn continued her professional relationship and personal friendship with Mr. Bolog. For the 11 months after she made the Gift, Ms. Engelhorn, Mr. Bolog, and others, travelled domestically and internationally for business and pleasure to Spain, Ireland, Hawaii, the Bahamas, Nashville, New York, Charleston, South Carolina, Virginia, West Virginia, and San Francisco, and spent countless days together—in business meetings, on family outings, and at celebrations, including spending New Year's Eve 2021, together with Mr. Bolog's significant other.

8.      Additionally, after settlement of the Switzerland Litigation, Ms. Engelhorn insisted that Mr. Bolog act as her co-trustee for a trust known as the Whitewater Revocable Trust, dated September 30, 2021—*i.e.*, the WWT—which was funded with an initial $100 million from the settlement proceeds Mr. Bolog obtained for her in the Switzerland Litigation.

9.      Mr. Bolog, with the full knowledge and approval of his then-law firm Whiteford Taylor & Preston, agreed to serve as a co-trustee of the WWT.

10.     Then, on or around July 6, 2022, after Ms. Engelhorn and Mr. Bolog had had a falling out because Mr. Bolog had admonished her after she made a racially hateful statement to an African-American family at a restaurant—telling the family that it was nice that they were allowed to eat in restaurants—and after Mr. Bolog's significant other, who was also had become good friends with Ms. Engelhorn, counseled Ms. Engelhorn against terminating her relationship with her daughter because her daughter was involved in a same-sex relationship, a relationship that Ms. Engelhorn believed would result in her daughter going to "hell," and approximately nine months after Ms. Engelhorn made the irrevocable Gift, including voluntarily, knowingly, and intentionally transferring to the JAREB Irrevocable Trust the $10 million from her Bank of America Bank personal bank account, constituting the Gift, which in October 2021 was received and accepted by the JAREB Irrevocable Trust, Ms. Engelhorn sent an email, attempting to revoke the irrevocable Gift.  A copy of the email is attached hereto as **<u>Exhibit D</u>**.[1]  This email stated that she made the Gift when she was intoxicated and that Mr. Bolog had transferred the money from Ms. Engelhorn's personal bank account to the JAREB Irrevocable Trust.  Neither of these assertions were true.  Ms. Engelhorn was not intoxicated at the time that she, and she alone, executed the Notice of Gift, which was notarized, nor was she intoxicated days later when she, and

---

[1]  The undersigned have implemented certain limited redactions to **<u>Exhibit D</u>** to protect personally identifiable information, including banking information and personal email addresses.

she alone, initiated and authorized the $10 million Gift to the JAREB Irrevocable Trust in a verified

phone call with Bank of America (satisfying all of Bank of America's security protocols).  Mr.

Bolog had no involvement with the transfer by Ms. Engelhorn of the Gift.

11.    The JAREB Irrevocable Trust, through counsel, responded to the email,

advising Ms. Engelhorn that it would not allow her to revoke her irrevocable Gift.

12.    Then, approximately a year later, during the summer of 2023, at the

invitation of Ms. Engelhorn's new attorney Anthony Williams, a partner at the international law

firm, Dentons, Mr. Bolog and his attorney travelled to New York City to discuss the Gift.  At that

meeting Mr. Williams stated a new version of why Ms. Engelhorn wished to revoke the irrevocable

Gift, stating that she was "on the spectrum" and not very smart.  Then, shortly after he was advised

of the actual facts concerning the transfer—more specifically that Ms. Engelhorn transferred the

funds from her personal bank account at Bank of America, with no involvement by Mr. Bolog and

that the Notice of Gift was notarized—Mr. Williams offered to resolve the matter by splitting the

$10 million Gift, requesting that Mr. Bolog return $5 million.  Mr. Williams further offered that,

if that compromise was acceptable, he would have Ms. Engelhorn file a gift tax return in the

amount of $5 million and had further advised that Ms. Engelhorn had not yet filed a gift tax return

for the $10 million Gift as a result of his advice.  Of course, if Ms. Engelhorn did not know that

she had made the Gift, she would have never been considering the need to file a gift tax return.

This suggested resolution by Mr. Williams was rejected.

13.    Frustrated by the JAREB Irrevocable Trust's unwillingness to allow Ms.

Engelhorn to revoke the irrevocable Gift, Ms. Engelhorn then embarked on a scorched-earth

mission to destroy Mr. Bolog's career and his financial well-being.  She began this by defaming

and slandering Mr. Bolog to clients and friends of Mr. Bolog.

14.    Then, on or around July 11, 2024, new attorneys for Ms. Engelhorn sent a letter to WTP, a third-party, defaming Mr. Bolog and impugning his capacity as an attorney, his honesty, and his commitment to his ethical obligations.  In this letter, Ms. Engelhorn, through her agent Wes Henderson, defamed Mr. Bolog by stating the following:

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added).

15.    Then, 35 months after making the Gift, and almost two years after Ms. Engelhorn and Mr. Bolog had a falling out, Ms. Engelhorn, in the above-captioned action, accused Mr. Bolog of inappropriate and unethical conduct in obtaining the very Gift she insisted on making for the benefit of Mr. Bolog and his family.

16.    Mr. Bolog has now been forced to bring these counterclaims to seek redress for wrongs and reputational damage he has suffered and continues to suffer at the hands of Ms. Engelhorn.

## JURISDICTION AND VENUE

17.    Jurisdiction over this Counterclaim is proper with this Court under Md. Code Ann., Cts. & Jud. Proc. § 1-501, § 6-102(a), and § 6-103(b)(1)-(6); as well as Md. Code Ann., Est. & Trusts § 14.5-202.

18.    This Court has jurisdiction to declare the parties' "rights, status, and other legal relations whether or not further relief is or could be claimed." Md. Code Ann., Cts. & Jud. Proc. § 3-403.

19.    Jurisdiction is also proper with this Court for the adjudication of counterclaims.

20.     Venue is proper in Baltimore City, Maryland, under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), §6-201(b), and §6-202(8).

21.     Venue is proper with this Court for the adjudication of counterclaims.

## PARTIES

22.     Counterclaim Plaintiff Erik D. Bolog whose principal place of business is Washington, DC is an individual. Mr. Bolog has served, and continues to serve, as trustee of the JAREB Irrevocable Trust since October 11, 2021.

23.     Counterclaim Plaintiff Science Park Associates, LLC is a limited liability company with its principal place of business in the State of Maryland.

24.     Counterclaim Plaintiff Darnestown Road, Inc. is a corporation with its principal place of business in the State of Maryland.

25.     Counterclaim Defendant Claudia Engelhorn is an individual and resides in the State of Tennessee.

26.     Counterclaim Defendant Claudia Engelhorn is the Trustee for the Whitewater Revocable Trust dated September 30, 2021, as amended.

## FACTUAL ALLEGATIONS

### A.     Defamation

27.     On or around July 1, 2024, Wes Henderson, of the law firm Henderson Law LLC, and acting as an agent of Ms. Engelhorn, sent a letter to WTP, defaming Mr. Bolog (the "Defamatory Letter," attached hereto as **Exhibit A**).

28.     The Defamatory Letter impugned Mr. Bolog's capacity as an attorney, his honesty, and his commitment to his ethical obligations.

29.     For example, the Defamatory Letter contained the following libelous and defamatory statements:

- "Mr. Bolog defrauded Ms. Engelhorn";

- "Mr. Bolog improperly caus[ed] the transfer of $10M to a trust created for his benefit";

- "Ms. Engelhorn may not have been Mr. Bolog's *first and only victim*" (emphasis added);

30.     These statements constitute defamation *per se*.

**B.     Whitewater Trust Agreement**

31.     Mr. Bolog, at the insistence of Ms. Engelhorn, served as a co-trustee of the Whitewater Revocable Trust (attached hereto as **Exhibit B**) from its inception until November 3, 2022.  During this time Mr. Bolog, as Trustee had all of the authority bestowed upon him by the Whitewater Revocable Trust.

32.     Under all relevant times herein, Mr. Bolog was the co-trustee of the Whitewater Revocable Trust.

33.     The Whitewater Revocable Trust failed to pay Mr. Bolog a reasonable trustee fee for his services as its trustee, overseeing $100 Million of assets.

34.     Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust.  Pursuant to Virginia law, which governs the Whitewater Revocable Trust, Mr. Bolog is entitled to be paid a reasonable trustee fee for his services for the 13 months he served as the co-trustee.

35.     Under Section 9 of the Whitewater Revocable Trust, Mr. Bolog, as a co-trustee, is indemnified by the Whitewater Revocable Trust for the cost of defending all forms of litigation relating to any actions against him as Trustee of the Whitewater Revocable Trust. Additionally, pursuant to Section 9 of the Whitewater Revocable Trust, all legal fees and costs incurred by Mr. Bolog for any claims relating to his actions as Trustee of the Whitewater Revocable Trust are to be immediately paid by the Whitewater Revocable Trust.

36.    To date, the Whitewater Revocable Trust has not paid Mr. Bolog's legal fees and costs relating to his services on behalf of the Whitewater Revocable Trust.

37.    On or around March 2022, with Ms. Engelhorn's full knowledge and consent, the Whitewater Revocable Trust purchased a loan and security interest from a regional bank relating to an entity, Science Park Associates, LLC, for approximately $3,352,650 (the "Science Park Investment"). This loan was secured by a deed of trust on an office building located at 9001 Edmonston Lane, Greenbelt, Maryland (the "Greenbelt Property").

38.    Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC overhearing Mr. Bolog discussing the opportunity to purchase the loan documents with another investor, and thereafter, insisting on the Whitewater Revocable Trust making the investment.

39.    The Greenbelt Property was shortly thereafter sold by Science Park Associates, LLC and the Whitewater Revocable Trust was repaid all principal, interest and costs. This was an opportunistic investment and proved very profitable for Ms. Engelhorn and the Whitewater Revocable Trust (Ms. Engelhorn is the sole beneficiary of the Whitewater Revocable Trust).

40.    Mr. Bolog, in his capacity as the co-Trustee of the Whitewater Revocable Trust was completely authorized (without Ms. Engelhorn's consent) to make the Science Park Investment on behalf of the Whitewater Revocable Trust. However, Mr. Bolog fully informed his co-Trustee, Ms. Engelhorn, about the investment and Ms. Engelhorn, after being fully apprised of any and all conflicts of interest relating to the investment, insisted and approved of the Whitewater Revocable Trust investment and the purchase of the loan and security instruments.

41.    At the time of the sale of the Greenbelt Property, the Whitewater Revocable Trust was represented by Dentons, a large international law firm, that provided the payoff

calculation to the Whitewater Revocable Trust and accepted, without any objection or complaint, the total amount due pursuant to the loan documents it purchased relating to the Greenbelt Property, thereby profiting by approximately $330,000.00.

42.     Similarly, the Whitewater Revocable Trust, with the full knowledge and consent of both Whitewater Revocable Trust Trustees, Ms. Engelhorn and Mr. Bolog, made a $350,000 loan to Darnestown Road, Inc., relating to a 100,000 square foot operating shopping center located in Richmond, Virginia (the "Darnestown Road Loan").  Whitewater Revocable Trust, through Ms. Engelhorn, learned of this opportunity while sitting in Mr. Bolog's office in Washington, DC, overhearing Mr. Bolog discussing the loan for the property with another lender, and thereafter, insisting on the Whitewater Revocable Trust making the loan.  Ms. Engelhorn was fully aware of and consented to a waiver of the conflicts of interest that existed as a result of Mr. Bolog's and WTP's decades long representation of the ownership entity of the Richmond Shopping Center and Darnestown Road, Inc.  The Darnestown Road Loan is not yet mature.

43.     Ms. Engelhorn, who is a sophisticated business person, in charge of more than $630 million of assets (over $500 million of her family office assets and $130 million of the Whitewater Revocable Trust assets), requested, after full disclosure of all potential conflicts, that she be able to make the Darnestown Road Loan to profit from the interest.

44.     Complete loan documents and conflict waivers were fully discussed and signed.

45.     The Darnestown Road loan is not due until December 31, 2025.

46.     At the time the Science Park Investment and the Darnestown Road Loan was made, interest rates on bank accounts were paying approximately 1%.  Ms. Engelhorn, as Trustee, wanted a higher yield on the Whitewater Revocable Trust assets and was fully motivated

to take advantage of business opportunities which she, on behalf of the Whitewater Revocable Trust, learned about from Mr. Bolog.

47.     The Darnestown Road Loan was at an interest rate of 8%.

48.     The Science Park Investment was at an interest rate of 9%.

49.     Upon information and belief, and based upon a letter sent by Ms. Engelhorn's attorneys at Dentons to defendant Michael Postal, a certain investment made in Swain Landing LaPlata JC LLC ("Swain Landing") is owned by the Whitewater Revocable Trust.

50.     As alleged in the Second Amended Complaint, Ms. Engelhorn sold a home she owned in Tennessee and the proceeds were transferred to Swain Landing for a real estate investment.

51.     Mr. Bolog had no involvement with the Swain Landing investment other than at Ms. Engelhorn's directive, communicated with developer of the investment to ascertain the investment amount.

52.     However, the Second Amended Complaint alleges that Mr. Bolog, who was the Trustee of WWT, should have taken certain action(s) relating to the investment.  As a result of the fact that WWT purportedly owns the Swain Landing Investment, and Mr. Bolog was the co-trustee of the WWT at the time of the investment, the WWT must indemnify Mr. Bolog for any purported liability and immediately pay all of his legal fees and costs associated with his defense of the Second Amended Complaint.

C.      **Ms. Engelhorn Abuses the Court Process by Filing this Action**

53.     Plaintiffs initiated this action on September 10, 2024.

54.     On February 5, 2025, Ms. Engelhorn along with Plaintiffs filed the Second Amended Complaint.

55.     The Second Amended Complaint contains numerous allegations that are either intentionally deceptive to the Court or demonstrably false on their face, and reveal the true ulterior motive behind Ms. Engelhorn's filing, namely to assert professional and ethical breaches against Mr. Bolog for the sole purpose of causing him personal pain, suffering, and harm and of attempting to destroy his professional reputation and ability to practice law; her sole motive for attempting to revoke the irrevocable Gift was to harm Mr. Bolog, not to use the judicial process for a proper purpose or to recover the funds.

56.     Upon information and belief, Ms. Engelhorn brought the Second Amended Complaint expecting that Mr. Bolog would submit to the pressure of defending against a multi-million dollar action and return the Gift (which he could not, anyway, because it belongs to the JAREB Irrevocable Trust) to preserve his reputation in the face of baseless and unsubstantiated claims.

57.     For example, paragraphs 35-37 of the Second Amended Complaint address the transfer of the $10M Gift from Ms. Engelhorn to the JAREB Irrevocable Trust. But the Second Amended Complaint deceptively and intentionally avoids that it was Ms. Engelhorn who actually initiated and completed the transfer of the Gift and instead implies that Mr. Bolog transferred the Gift.

58.     The only way for Ms. Engelhorn to have effectuated the Gift was for her, herself, to initiate the transfer through a direct phone call with Bank of America (after following all of its security protocols) and through the use of a personal security confirmation code sent to her and read back to the bank. Her instructions to make the Gift to the Bank of America satisfied all of the security protocols and Mr. Engelhorn, and only Ms. Engelhorn, was able to and did start and complete the Gift by authorizing Bank of America to transfer $10 Million from her personal

account to the JAREB Irrevocable Trust account, all of which was done without any involvement from Mr. Bolog.

59.    In another example, paragraph 36 of the Second Amended Complaint describes Mr. Bolog directing Ms. Engelhorn to sign documents upside down. But, of course, Ms. Engelhorn's conclusory allegations ignore that Ms. Engelhorn's signature on the documents appear right-side up.  But in reality, Ms. Engelhorn knows that none of the documents that she signed, which were notarized, caused the Gift to occur, she, and only she had the authority to direct the Gift to be made and if she didn't know exactly what she was doing, as she eloquently articulated in the Notice of Gift, she would have simply not have directed Bank of America to make the irrevocable Gift during the call that was required to transfer the $10 Million.

60.    Indeed, the Second Amended Complaint baselessly and conclusory accuses Mr. Bolog of tricking Ms. Engelhorn, not explaining documents to her, deceiving her into thinking she was signing routine documents, and not providing her an opportunity to review documents before pressuring her into signing them.

61.    Ms. Engelhorn is a centi-millionaire who doesn't seriously need, nor care about the Gift, but instead, her filing of this action is solely to seek vengeance against Mr. Bolog and seeks to punish him following the end of their friendship and thereafter suffering from Giftor's remorse.

## COUNT I
### (DEFAMATION)
(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn)

62.    Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count I.

63.    Ms. Engelhorn has made false and defamatory statements to and through third parties, including, but not limited, to lawyers at WTP.

64.     These libelous defamatory statements by Ms. Engelhorn through her attorneys at Henderson Law LLC were made on or around July 1, 2024, within the past year of the date of these counterclaims.

65.     None of the defamatory statements are true and Ms. Engelhorn and her agents knew that the statements were untrue at the time the statements were made and sent to WTP.

66.     The Defamatory Letter was sent to a third party, WTP.

67.     Ms. Engelhorn's defamatory statements about Mr. Bolog were in furtherance of her objective to cast heinous aspersions on Mr. Bolog in an effort to inflict the maximum amount of economic and reputational damage against Mr. Bolog.

68.     Because Ms. Engelhorn's statements accuse Mr. Bolog of violating the law, and accuse him of a lack of integrity in his practice of law, his honesty, and his commitment to ethical obligations, and her statement that he has done this to other clients, Ms. Engelhorn's false statements constitute defamation *per se*.

69.     In making these defamatory statements, Ms. Engelhorn, injured Mr. Bolog's professional reputation, and caused Mr. Bolog personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

70.     Additionally, as a result of her defamatory statements, Mr. Bolog has suffered assumed and actual damages including, but not limited to, loss and injury to his business, harm to his name and reputation, out-of-pocket losses incurred in defending against the Second Amended Complaint, personal humiliation, embarrassment, emotional pain, emotional harm, and emotional suffering.

71.     Ms. Engelhorn's knowingly or recklessly false statements were a substantial factor in causing the above stated injuries to Mr. Bolog.

72.    As a direct result of Ms. Englehorn's defamatory statements, Mr. Bolog suffered injury to his professional reputation and damages in excess of $20 Million.

## COUNT II
## (INDEMNIFICATION)

(Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science Park Associates LLC against Counterclaim Defendant Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust dated September 30, 2021)

73.    Counterclaim Plaintiffs Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC  incorporate each of the allegations and preceding paragraphs as set forth above into this Count II.

74.    The Whitewater Revocable Trust indemnifies in two separate respects.

75.    *First*, it provides for immediate payment of litigation fees and costs.

76.    *Second*, the Whitewater Revocable Trust indemnifies Mr. Bolog against loss.

77.    Section 9 of the Whitewater Revocable Trust provides that "[t]he defense of [Trust-related] litigation, including costs incurred by . . . the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust."

78.    The "litigation" to which this sentence in Section 9 refers encompasses any civil litigation.

79.    The obligation of the Whitewater Revocable Trust to pay litigation fees and costs is unconditional and immediate—there is no language limiting the circumstances under which the Whitewater Revocable Trust must pay or an opportunity to defer such payments to some future time.

80.    Mr. Bolog was the Trustee of the Whitewater Trust during all times relevant to the following claims asserted by Plaintiffs in the Second Amended Complaint that relate to

investments using funds from the Whitewater Revocable Trust in Science Park Associates, LLP, Darnestown Road, Inc., and Swain Landing (collectively, the "Whitewater Investment Claims"):

- Counts X and XI (constructive trust over Darnestown Road, Inc. and Swain Landing LaPlata JC, LLC, respectively);

- Counts XIII and XIV (dissolution and liquidation of Swain Landing Swain Landing LaPlata JC, LLC); and

- Counts XVII, XVIII, and XIX (fraudulent conveyance, fraud, and unjust enrichment related to Science Park Associates, LLC).

81.     The Whitewater Investment Claims all concern investments that Mr. Bolog, as Trustee of the Whitewater Revocable Trust, made—with full authority under the Whitewater Revocable Trust and with the full knowledge, awareness, and participation of Ms. Engelhorn—using funds of the Whitewater Revocable Trust.

82.     In addition to the immediate obligation to pay all defense costs (legal fees and costs), the Whitewater Trust is obligated to indemnify Mr. Bolog as trustee against damages arising from "any act or omission" under Section 5 of the Whitewater Revocable Trust.

83.     Science Park Associates, LLP, Darnestown Road, LLC., and Swain Landing are third-party beneficiaries under the Whitewater Revocable Trust and are also indemnified under Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

84.     Accordingly, Mr. Bolog is indemnified for defending all of the Whitewater Investment Claims as provided in Sections 5 and 9 of the Whitewater Revocable Trust and with the other applicable terms of the Whitewater Revocable Trust.

## COUNT III
## (ABUSE OF PROCESS)
(Counterclaim Plaintiffs Mr. Erik Bolog as an individual and trustee against Counterclaim
Defendant Claudia Engelhorn)

85.     Counterclaim Plaintiff Erik Bolog as an individual and as trustee
incorporate each of the allegations and preceding paragraphs as set forth above into this Count III.

86.     Ms. Engelhorn has willfully and maliciously used the court process for an
illegal purpose: to punish and oppress Mr. Bolog and seek vengeance on him following the end of
their friendship.

87.     After Mr. Bolog refused to return the irrevocable Gift (which he could not,
regardless), Ms. Engelhorn initiated this action.

88.     Ms. Engelhorn either knew, or acted with intentional and/or reckless
disregard for the truth, that the allegations in the Second Amended Complaint were false or
deceptive.

89.     Ms. Engelhorn has used the court process to inflict reputational harm on Mr.
Bolog and coerce him into returning the Gift.

90.     Because of Ms. Engelhorn's actions, Mr. Bolog has suffered reputational
damage, loss and injury to his business, harm to his name and reputation, out-of-pocket losses
incurred in defending against the Second Amended Complaint, personal humiliation,
embarrassment, emotional pain, emotional harm, and emotional suffering.

91.     Mr. Bolog is also entitled to punitive damages as a result of Ms. Engelhorn's
willful and malicious abuse of process.

## COUNT IV
## (BREACH OF CONTRACT)
(Counterclaim Plaintiff Erik Bolog against Counterclaim Defendant Claudia Engelhorn, as
Trustee of the Whitewater Revocable Trust dated September 30, 2021)

92.     Counterclaim Plaintiff Erik Bolog incorporates each of the allegations and preceding paragraphs as set forth above into this Count IV.

93.     Under Section 5.K. of the Whitewater Revocable, Trust, Mr. Bolog is entitled to compensation for his services as trustee of the Whitewater Revocable Trust.

94.     In his role as trustee of the Whitewater Revocable Trust, Mr. Bolog performed valuable services for the Whitewater Revocable Trust from its inception through November 2022, serving as the trustee of a trust with over $130 Million in assets.

95.     Mr. Bolog has not received compensation for serving as the trustee for the Whitewate Trust for 13 months, and pursuant to Virginia law, which governs Whitewater Revocable Trust, Mr. Bolog is owed reasonable compensation for performing these services, and hereby demands payment in an amount of at least $500,000.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Mr. Bolog, individually and as trustee, Science Park Associates, LLC, and Darnestown Road, Inc., ask the Court to enter judgment in their respective favor against all Counterclaim Defendants as follows:

a)  Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the defamatory statements identified above in Count I;

b)  Enter judgment in favor of Erik Bolog against Counterclaim Defendant Ms. Claudia Engelhorn for liability on the abuse of process identified above in Count III;

c)  Award Erik Bolog compensatory damages, together with pre- and post-judgment interest in an amount to be determined at trial on Counts I and III;

d)  Award Erik Bolog punitive damages in an amount to be determined at trial on Counts I and III;

e)  Enter judgment on Count II that Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC are indemnified under the Whitewater Revocable Trust for the costs and disbursements of defending the Whitewater Investment Claims;

f)   Award Erik Bolog, Darnestown Road, Inc., and Science Park Associates, LLC the costs and disbursements of defending this action, including reasonable attorneys' fees and court costs, in an amount to be determined at trial under Count II;

g)   Award Erik Bolog a minimum of $500,000 on Count IV for his services as trustee of the Whitewater Revocable Trust, during which time neither Ms. Engelhorn nor the Whitewater Revocable Trust provided any compensation to Mr. Erik Bolog; and

h)   Grant Counterclaim Plaintiffs any such other, further, and different relief that the Court may deem just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

96.    Counterclaim Plaintiffs demand a jury trial for all claims and issues in this Counterclaim that are triable before a jury.

Dated:      March 24, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,


Douglas F. Gansler (Bar Number: 8912180208)
J.B. Howard (Bar Number: 9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this March 24th, 2025, a copy of the foregoing was served electronically via MDEC upon counsel of record, and remaining parties served via first class mail.

**Counsel of Record Served via MDEC:**
Wes P. Henderson
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
Kirk E. MacKinnon Morrow
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue, Unit 103
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**Swain Landing LaPlata JC, LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court, Apt. 606
Clinton, MD 2073

Respectfully,

Douglas F. Gansler (8912180208)
J.B. Howard (9106200125)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300
j.b.howard@cwt.com

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*