## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 25-184-ELG |
| Swain Landing LaPlata JC, LLC | ) | United States Bankruptcy Court |
| | ) | for the District of Columbia |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | |
| Claudia Engelhorn, *et al.* | ) | Case No. 25-00159 |
| | ) | United States Bankruptcy Court |
| Plaintiffs, | ) | for the District of Maryland |
| | ) | |
| v. | ) | |
| | ) | |
| Erik D. Bolog, *et al.* | ) | |
| | ) | |
| Defendants | ) | |
| ————————————————— | ) | |

## OPPOSITION TO MOTION FOR ABSTENTION AND REMAND

Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Chapter 11 Counsel for Swain Landing*
*LaPlata JC, LLC, Debtor-in-Possession*

## <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................. 1

II.    Relevant Facts and Allegations ..................................................................... 3

      a.  Plaintiff's Allegations .......................................................................... 4

      b.  Swain Landing Bankruptcy ................................................................... 5

III.    Argument: The Motion Merits Denial ........................................................... 7

      a.  Mandator Abstention is Inapplicable Since this is a Core Proceeding and Because this Case Could Have Been Independently Brought in Federal Court ................................................................................................... 7

          i.  This Case Could Have Been Commenced in Federal Court ..................... 8

          ii.  This is a Core Proceeding ..................................................... 11

      b.  The Centrality of this Case to the Debtor's Estate Militates Against Discretionary Abstention ................................................................... 14

      c.  Analysis of Equitable Remand Occasions the Same Result ............................... 21

IV.    Conclusion .............................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Abbey v. Modern Afr. One, LLC*,
2004 U.S. Dist. LEXIS 2392 (D.D.C. Feb. 18, 2004) ................................................ 11

*Bayerische Landesbank v. Aladdin Capital Management, LLC*,
692 F.3d 42 (2d Cir. 2012) ........................................................................................ 9

*Camofi Master LDC v. United States Coal Corp.*,
527 B.R. 138 (Bankr. S.D.N.Y. 2015) ...................................................................... 21

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008) .............................................. 15

*Chassels v. Krepps*,
174 A.3d 896 (Md. App. 2017) ................................................................................ 12

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976) ............................................................................................ 14, 20

*Colvin v. Amegy Mortg. Co., L.L.C.*,
507 B.R. 169 (W.D. Tex. 2014) ............................................................................... 11

*ConAgra Foods, Inc. v. Americold Logistics, LLC*,
776 F.3d 1175 (10th Cir. 2015) ............................................................................... 10

*CostCommand, LLC v. WH Adm'rs., Inc.*,
820 F.3d 19 (D.C. Cir. 2016) .................................................................................... 9

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959) .................................................................................................. 14

*Curtis v. Loether*,
415 U.S. 189 (1974) .................................................................................................. 20

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
683 F. Supp. 1463 (S.D.N.Y. 1988) .......................................................................... 9

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023) ....................................................................... 15

*Hugger v. Rutherford Inst.*,
63 F. App'x 683 (4th Cir. 2003) ............................................................................... 9

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021) ..................................................................... 15

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ............................................................................ 7

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004) ..................................................................... 14

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011) .................................................................... 14

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ........................................ 20

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) .................................................................................... 15

*In re Rosales*,
2012 Bankr. LEXIS 4366 (Bankr. W.D. Tex. Sep. 21, 2012) .................................. 21

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995) ........................................................................................ 7

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013) .......................................... 7

*Jakks Pac., Inc. v. Accasvek, LLC*,
270 F. Supp. 3d 191 (D.D.C. 2017) ........................................................................... 9

*Johnson v. Columbia Props. Anchorage LP*,
437 F.3d 894 (9th Cir. 2006) ..................................................................................... 9

*LaRoach v. Bridgepoint Healthcare, LLC*,
2018 U.S. Dist. LEXIS 206541 (D.D.C. Dec. 7, 2018) ........................................... 10

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*
*(In re Mid-Atlantic Handling Sys., LLC)*,
304 B.R. 111 (Bankr. D.N.J. 2003) ......................................................................... 12

iv

*Mass Transit Admin. v. Granite Constr. Co.*,
471 A.2d 1121 (Md. App. 1984)................................................................ 13

*MCBB Corp. v. Planned Cmty. Developers*,
2020 U.S. Dist. LEXIS 75864 (S.D. Tex. Apr. 14, 2020) ......................... 10

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) ................................................................... 14

*Power Plant Entm't Casino Resort Ind., LLC v. Mangano*,
484 B.R. 290 (Bankr. D. Md. 2012) ......................................................... 16

*Sergent v. McKinstry*,
472 B.R. 387 (E.D. Ky. 2012) ................................................................. 10

*Shipley Garcia*,
2012 U.S. Dist. LEXIS 110153 (S.D. Tex. 2012) ...................................... 10

*Sligh v. Doe*,
596 F.2d 1169 (4th Cir. 1979) ................................................................... 9

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005)......................... 17

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) .......................................................... 14

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) .................... 7, 15

*Yueh-Lan Wang v. New Mighty U.S. Tr.*,
843 F.3d 487 (D.C. Cir. 2016) ................................................................. 10

**Statutes**

11 U.S.C. § 541 ............................................................................................................. 13

28 U.S.C. § 151 ............................................................................................................. 20

28 U.S.C. § 157 ........................................................................................................ *passim*

28 U.S.C. § 1332 ............................................................................................................. 8

28 U.S.C. § 1334 .................................................................................................. 7, 8, 11

28 U.S.C. § 1367 ........................................................................................................... 10

Comes now Swain Landing LaPlata JC, LLC, debtor-in-possession ("Swain Landing" or the "Debtor"), by and through undersigned counsel, and in opposition to the Motion for Abstention and Remand (the "Motion," as found at DE #43) filed by Claudia Engelhorn, individually and as trustee of a trust ("Ms. Engelhorn"), alongside White Pearl, LLC ("White Pearl") (collectively, the "Plaintiffs" and each a "Plaintiff") states as follows:

## I.     Introduction

Ms. Engelhorn and White Pearl are suing Swain Landing for nearly $600,000.00, disputing the equity composition of Swain Landing, and petitioning for the judicial dissolution of Swain Landing. The Debtor, meanwhile, is seeking to use the Subchapter V process to reorganize its affairs, liquidate the claims of its putative creditors, regain a parcel of real estate lost to a recission judgment, and confirm a plan in accord with the rigors of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). It should thusly come as little surprise that Swain Landing is endeavoring to resolve the above-captioned litigation in connection with the entity's reorganizational efforts, removing this case in accord with the allowances of Title 28 and promptly seeking a transfer of venue to the United States Bankruptcy Court for the District of Columbia.

In the Motion, however, the Plaintiffs protest that their litigation ought to be promptly returned to the Baltimore City Circuit Court, generally positing that (i) Swain Landing is only implicated in three counts of a sweeping complaint that touches various other parties as well; (ii) state law claims predominate *sub judice*; (iii) having this matter adjudicated in bankruptcy court would somehow benefit Swain Landing's co-defendants (though, quite sincerely, it remains wholly unclear what benefit is being suggested here); and (iv) the Plaintiffs refuse to consent to the entry of final orders by a bankruptcy court. These contentions are universally unavailing.

1

For whatever reason, the Plaintiffs saw fit to sue Swain Landing—for a palpable sum of money—alongside several other defendants. Presumably, if the Plaintiffs did not think their claims intertwined and related, the Plaintiffs would not have cobbled all of these parties together in a single lawsuit. And, unsurprisingly, one of the non-debtor co-defendants has now sued Swain Landing, for indemnity and contribution, in the United States Bankruptcy Court for the District of Columbia. *See Bolog v. Swain Landing*, Case No. 25-10019 (Bankr. D.D.C. 2025). So it is at-best hypocritical for the Plaintiffs to insist that there is not a common thread or nexus running through their own sprawling complaint, that they really ought not have actually sued all of these parties together, and that realizing a judgment against one defendant would not have a financial impact upon other defendants.

Similarly, while the Plaintiffs' claims may sound in state law, the assertions against Swain Landing are—as the Motion seems to tepidly acknowledge—statutorily core in nature. The judicial dissolution of Swain Landing would most certainly impact administration of Swain Landing's estate. Lien-centric constructive trust claims against the Debtor most certainly constitute claims against the estate. And the entirety of each cause of action against Swain Landing assuredly constitutes an effort to adjust the debtor-creditor relationship between the Debtor and the Plaintiffs herein.

As for a jurisdictional benefit to co-defendants, the Debtor—quite sincerely, and without any feigned ignorance—cannot distill or ascertain what the Plaintiffs are endeavoring to suggest. The Federal Rules of Civil Procedure (as adopted by Title VII of the Federal Rules of Bankruptcy Procedure) so closely mirror the Maryland Rules as to leave no cognizable difference in pleading standards. It does not appear there exist any topically-relevant splits between the District of Columbia Circuit and the Fourth Circuit. And there is no apparent theory where a choice of laws

analysis will invite a different outcome in bankruptcy court than in state court. If anything, a bankruptcy court is better equipped to expeditiously administer a contentious case through the ongoing oversight of a single judge.

Similarly, the Plaintiffs' failure to consent to entry of final orders is of no moment. Whether they desire such or not, the Plaintiffs will be bound by the entry of final orders on core matters. And whether this case is transferred to the District of Columbia, or remains in the District of Maryland, one will not need to venture outside the same exact building to appear before an Article III judge at trial or if exceptions are taken to any reports and recommendations.

The bigger issue, though, is that the Plaintiffs are asking for extraordinary relief—that a federal court shirk the exercise of Congressionally-vested federal jurisdiction—for reasons that seem rather ordinary in nature. Scant is the plaintiff who embraces removal of litigation, just as scant is the putative creditor who embraces a debtor's bankruptcy petition. That Ms. Engelhorn and White Pearl are discontented Swain Landing is endeavoring to reorganize, and that Swain Landing has elected to avail itself of the jurisdictional synergies associated therewith, comes as thoroughly unsurprising. But such discontent is hardly reason to remand, or abstain from hearing, a case that literally threatens a debtor's very existence.

## II.    Relevant Facts and Allegations

While a motion for remand and/or abstention is assuredly not an appropriate forum in which to litigate the merits of a case, a brief overview of the Plaintiffs' allegations against Swain Landing, and of Swain Landing's bankruptcy case, is informative of why the Motion ought to be denied:

### a. Plaintiffs' Allegations

1.     Ms. Engelhorn is alleging that she engaged a local law firm to represent her interests in a legal dispute and that firm, in turn, assigned Mr. Bolog—then an attorney at the firm—to work on the case. *See* Second Amended Complaint, DE #1-4, at ¶ 25.

2.     Ms. Engelhorn and White Pearl are accusing Michael Postal ("Mr. Postal") and Erik Bolog ("Mr. Bolog") of scheming to "embezzle[]" $585,000.00 from Ms. Engelhorn. *Id.* at ¶¶ 68-69 (including the section header immediately preceding).

3.     The Plaintiffs theorize that Mr. Bolog knew Ms. Engelhorn was selling a home in Tennessee, thereby fetching roughly $1.3 million in cash proceeds, and that Mr. Bolog then worked with Mr. Postal to have $585,000.00 of those funds routed to Swain Landing. *Id.* at ¶¶ 69-73.

4.     The pleading in this case posits that "Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties. Defendant Bolog willfully and. with reckless disregard, failed to make reasonable efforts to verify facts relevant to a purported investment between Defendant Swain Landing and NVR Homes." *Id.* at ¶ 74.

5.     The Plaintiffs expressly assert the transfer of money to Swain Landing to have been "fraudulent[]," *id.* at ¶ 76, that Mr. Bolog is "a member of Defendant Swain Landing," *id.* at ¶ 109, "[t]hat, under the principles of equity and good conscience, Defendant Swain Landing should not be permitted to retain any of Plaintiff White Pearl, LLC's funds transferred by Defendant Bolog to

Defendant Swain Landing," *id.* at ¶ 147, and that Mr. Bolog "will specifically benefit, among other things, from" Swain Landing's acquisition of real property, *id.* at ¶ 155.

### b. Swain Landing Bankruptcy

6.      On May 15, 2025, Swain Landing filed a petition for Subchapter V relief, pursuant to the allowances of Section 301 of the Bankruptcy Code. *See In re Swain Landing JC, LLC*, Case No. 25-184-ELG (Bankr. D.D.C. 2025).

7.      The Swain Landing bankruptcy was precipitated by the entity's loss of its singular real estate asset to a judgment of recission. *Id.* at DE #1, pp. 10, 18.

8.      Shortly after seeking bankruptcy relief, Swain Landing sued to avoid the loss of the real estate asset. *See Swain Landing LaPlata JC, LLC v. Swain*, Case No. 25-10013 (Bankr. D.D.C. 2025).

9.      Swain Landing has not listed Mr. Bolog as an equity holder or former equity holder in any of its bankruptcy filings. *See In re Swain Landing JC, LLC*, Case No. 25-184-ELG (Bankr. D.D.C. 2025) at DE #1, *passim*.

10.      Swain Landing has scheduled the claim of White Pearl as being disputed and contingent. *Id.* at p. 13.

11.      Swain Landing has indicated that it believes White Pearl owns 50% of the entity's outstanding membership interests, though such is assuredly disputed by White Pearl in light of the allegations quoted above. *Id.* at pp. 22, 24.

12.      While Ms. Engelhorn and White Pearl have moved to dismiss Swain Landing's bankruptcy on myriad grounds, *id.* at DE #25, the Debtor has opposed the subject motion by noting, *inter alia*, that Swain Landing well satisfies the rigors of being a small business and, under a

governing operating agreement, vested Mr. Postal with authority to act on behalf of the entity as its manager, *id.* at DE #31.

13.     In an effort to efficiently administer its bankruptcy estate, to consolidate all pending legal matters in a single court, and to promptly seek adjudication of contentions that (i) White Pearl is *not* an equity holder of Swain Landing; (ii) Mr. Bolog *is* an equity holder of Swain Landing; and (iii) Swain Landing should be judicially dissolved, the Debtor removed this litigation, *see* DE #1 (in the instant case), and then immediately moved to transfer venue to the District of Columbia, *id.* at DE #2.

14.     Subsequently, Mr. Bolog has filed suit against the Debtor, as an adversary proceeding in the United States Bankruptcy Court for the District of Columbia, positing that if he is indebted to Ms. Engelhorn and/or White Pearl, Swain Landing is legally bound to indemnify him for such liability and/or to contribute to the satisfaction of any judgment debt. *See Bolog v. Swain Landing*, Case No. 25-10019 (Bankr. D.D.C. 2025).

All of which is to posit the following: Swain Landing is trying to reorganize in chapter 11. Meanwhile, White Pearl is denying owning half of Swain Landing, Ms. Engelhorn is suggesting Mr. Bolog owns part of Swain Landing, White Pearl is arguing Swain Landing should be dissolved, White Pearl is alleging Swain Landing to owe not less than $585,000.00, White Pearl is claiming entitlement to an equitable lien over the assets of Swain Landing's bankruptcy estate, and Mr. Bolog is asserting Swain Landing to be bound to indemnify him for any debt to Ms. Engelhorn. Or, stated otherwise, what comes of this litigation is going to have a profound—if not dizzying—impact upon Swain Landing's reorganizational aspirations.

III.     **Argument: The Motion Merits Denial**

    a.  **Mandator Abstention is Inapplicable Since this is a Core Proceeding and Because this Case Could Have Been Independently Brought in Federal Court**

The Plaintiffs initially posit that this is, somehow, not a core proceeding. *See* Motion, DE #43-1, at p. 7. And while it is easy to point to the various manners in which the foregoing litany of factual incongruities and legal allegations invoke statutorily core subject matter, *see* 28 U.S.C. § 157(b)(2)(A-B, K, O), a more careful examination of the Motion reveals the Plaintiffs are not actually making this argument. It appears, rather, that Ms. Engelhorn and White Pearl are simply asserting the causes of action against Swain Landing's co-defendants, to which Swain Landing is not a party, are non-core in nature. *Id.* at pp. 7-9. This may well be true but, equally, this is immaterial.

As observed by this court in which Swain Landing's bankruptcy case is pending, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language of the mandatory abstention statute itself:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this

7

section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not be a core proceeding; *and* (ii) the case must also be devoid of any independent basis to have been commenced in a "court of the United States."

### i.      This Case Could Have Been Commenced in Federal Court

Taking the second Section 1334(c)(2) prong first, mandatory abstention is inapplicable for the simple reason that this case very well could have been brought in federal court in the first instance. Assuming the veracity of the Plaintiffs' own allegations, there exists complete diversity between the parties to this lawsuit and the amount in controversy well exceeds $75,000.00. Those criteria are all that would have been required for this suit to have originally been brought in district court.

Familiarly, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States. . ." 28 U.S.C. § 1332(a).

Here, Ms. Engelhorn alleges that she is a citizen of the State of Tennessee. *See* DE #1-4 at ¶ 1. She also alleges she is the sole member of White Pearl, *id.* at ¶ 3, and the trustee of the Whitewater Revocable Trust, *id.* at ¶ 2. A good faith reading of the pleading suggests the

defendants to uniformly be citizens of the State of Maryland and the District of Columbia. *Id.* at

¶¶ 5-13.[1]

So the question becomes whether Ms. Engelhorn, her trust, or White Pearl may be deemed

to also have Maryland or District of Columbia citizenship. And case law makes clear that question

is answered in the negative, as a limited liability company (like White Pearl) takes the citizenship

of each of its members and the citizenship of each of its members' members. *See, e.g.*, *Jakks Pac.,*

*Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191, 195 (D.D.C. 2017) ("For the purposes of diversity

jurisdiction, '[u]nincorporated associations, including LLCs, have the citizenship of each of their

members.' The citizenship of the members of an LLC is traced all the way through—that is, when

a member of an LLC is itself an LLC, the citizenship of the members of that LLC are relevant for

diversity purposes, and so on.") (quoting *CostCommand, LLC v. WH Adm'rs., Inc.*, 820 F.3d 19,

21 (D.C. Cir. 2016) (citing *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381

(2016)); citing *Johnson v. Columbia Props. Anchorage LP*, 437 F.3d 894, 899 (9th Cir. 2006);

*Bayerische Landesbank v. Aladdin Capital Management, LLC*, 692 F.3d 42, 49 (2d Cir. 2012)).

---

[1] Critically, while there is a dispute as to whether or not White Pearl is a member of Swain Landing (an occurrence that, in turn, would inflict Swain Landing with the same citizenship as White Pearl for reasons set forth *infra*, and thereby invite an absence of diversity jurisdiction), Ms. Engelhorn and White Pearl plainly allege such to not be the case. *See, e.g.*, Second Amended Complaint, DE #1-4, at ¶ 74 ("Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security. . ."). The actual citizenship of White Pearl is thusly "a preliminary question of fact to be determined by the trial court." *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 688 (4th Cir. 2003) (quoting *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)). Since that question of fact appears to be coterminous with a question of fact central to at least one of White Pearl's theories of relief (namely, that nothing was given in exchange for the entity's monies), this is a question of fact best reserved for trial. Where, as here, facts at issue in a case also inform determination of subject matter jurisdiction, such disputes are properly deferred to trial. *See, e.g., Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 683 F. Supp. 1463, 1487 (S.D.N.Y. 1988) ("Moreover, further discovery may turn up new facts relevant to the issue of subject matter jurisdiction, and these facts may in turn influence this Court's interpretation of facts already proffered by the parties.").

Similarly, a trust (like Ms. Engelhorn's) takes the citizenship of its trustee. *See, e.g.*, *Yueh-Lan Wang v. New Mighty U.S. Tr.*, 843 F.3d 487, 494 (D.C. Cir. 2016) ("We think Winston's reading of *Americold*—that is, the citizenship of a traditional trust depends only on the trustees' citizenship—is the better one.") (citing *ConAgra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175 (10th Cir. 2015)); *LaRoach v. Bridgepoint Healthcare, LLC*, 2018 U.S. Dist. LEXIS 206541, at *7 (D.D.C. Dec. 7, 2018) (". . . the citizenship of a traditional trust is coextensive with the citizenship of the trustees.") (citing *Yueh-Lan Wang*, 843 F.3d at 494).

Swain Landing alone is being sued for at least $585,000.00. *See, supra,* § II(a). Moreover, a plain reading of the Plaintiffs' pleading reveals the actual sum in controversy to be well in excess of $20 million. So the monetary threshold of diversity jurisdiction is also satisfied.

Further, even if diversity jurisdiction were found to be lacking, the existence of a core claim against Swain Landing, *see, infra,* §III(a)(ii), creates an independent basis for jurisdiction sufficient to defeat mandatory abstention. *See, e.g.*, *Sergent v. McKinstry*, 472 B.R. 387, 403 (E.D. Ky. 2012) ("Because the Court can exercise supplemental jurisdiction over the Sergent Claims, the five-part test for mandatory abstention is not satisfied."); *MCBB Corp. v. Planned Cmty. Developers*, 2020 U.S. Dist. LEXIS 75864, at *7 (S.D. Tex. Apr. 14, 2020) ("Supplemental jurisdiction under 28 U.S.C. § 1367(a) constitutes an independent basis for federal jurisdiction for purposes of mandatory abstention.") (citing *Shipley Garcia*, 2012 U.S. Dist. LEXIS 110153, 2012 WL 3249544, at *11 (S.D. Tex. 2012)).

Critically, the mandatory abstention analysis need go no further. As noted above, such abstention requires *both* the absence of a core proceeding *and* the pendency of a suit that could not have been commenced in federal court. Here, this lawsuit very clearly could have been brought in

10

any district court of the United States (provided venue was therein proper).[2] And, as such, the

rigors of Section 1334(c)(2) are facially inapplicable *sub judice*.

###    ii.        This is a Core Proceeding

Even if, *arguendo*, there were some flaw in the existence of independent federal

jurisdiction, mandatory abstention would still be inappropriate for the simple reason that the claims

against Swain Landing are, as the Plaintiffs seem to passively acknowledge, core in nature. The

Debtor is being sued for more than half a million dollars and the Plaintiffs are, additionally, seeking

dissolution of Swain Landing. To their credit, the Plaintiffs do not meaningfully assert these claims

to be non-core in nature and a review of the operative pleading well demonstrates why that is the

case.

Title 28 of the United States Code sets forth a non-exhaustive list of "core" proceedings.

*See, e.g.*, 28 U.S.C. § 157(b)(2); *Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169, 181 (W.D.

Tex. 2014) ("A non-exhaustive list of "core proceedings" appears in 28 U.S.C. § 157(b)(2). . .");

*Abbey v. Modern Afr. One, LLC*, 2004 U.S. Dist. LEXIS 2392, at *13 n.10 (D.D.C. Feb. 18, 2004).

Pertinently, those items include:

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> . . .
>
> (K) determinations of the validity, extent, or priority of liens;

---

[2] There seems to exist a dispute, between non-debtor parties, as to whether or not parts of this case are required to be arbitrated. Swain Landing takes no position on this issue and the suggestion that suit could have been brought in federal court ought not be construed as a suggestion to the contrary.

. . .

(O)other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

There are three causes of action brought against the Debtor: Count XI, for imposition of a constructive trust; Count XIII for dissolution and liquidation of Swain Landing; and Count XIV, also seeking dissolution and liquidation of Swain Landing alongside the appointment of a receiver to take charge of Swain Landing. *See* Second Amended Complaint, DE #1-4, at pp. 35-41.

The claim for imposition of a constructive trust is the oddest of the troika. Putting aside, for purposes of the instant Motion, that imposition of a constructive trust is not actually a recognized cause of action, *Chassels v. Krepps*, 174 A.3d 896, 904 (Md. App. 2017), this putative claim is stated in such a fashion as to transmute what would normally not be per se core into something that is definitionally core.

The general rule is that a pre-petition monetary claim only becomes core if subsequently asserted—directly or indirectly—through a proof of claim. *See, e.g.*, *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 123 (Bankr. D.N.J. 2003) ("Because the proof of claim filed by Maintainco encompasses the same issues as those raised by the removed state law proceeding (in fact, the state court complaint was attached to the proof of claim), the filing, without more, converted the underlying action into a core proceeding under § 157(b)(2)(B). . .").

Here, the deadline for the Plaintiffs to file a proof of claim is also—coincidentally—the deadline for Swain Landing to docket this brief. So, before a hearing on the Motion is had, it will be objectively known whether or not the Plaintiffs have transmuted Count XI into an indisputably core claim. But such also will not matter because of the manner in which this claim for money

12

damages is being stated: the Plaintiffs are not suing for entry of a garden variety monetary judgment; the Plaintiffs are suing for imposition of a constructive trust.

Under Maryland law, a constructive trust attaches to "specific property," creating an "equitable lien" thereupon. *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. App. 1984). And Count XI of the Second Amended Complaint may be thusly understood to not be an ordinary request for monetary relief, the core nature of which depends on the docketing of a proof of claim, but rather a claim against specific property of the Debtor's estate, 28 U.S.C. § 157(b)(2)(B), seeking the determination of the validity and extent of a claimed equitable lien against the estate's property, 28 U.S.C. § 157(b)(2)(K), the determination of which will mightily "concern[] the administration of the estate," 28 U.S.C. § 157(b)(2)(A).

Count XIII and XIV are also core, for far more simplistic reasons. The Plaintiffs are seeking the dissolution of Swain Landing and/or to place all the assets of Swain Landing—the very assets that presently comprise the entity's bankruptcy estate, 11 U.S.C. § 541—in the hands of a receiver. Certainly the dissolution of the Debtor would "concern[] the administration of the estate," 28 U.S.C. § 157(b)(2)(A), while also rather directly "affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O). And transferring all of the estate's assets to a third party receiver would, no doubt, do similarly.

As noted *supra*, the Plaintiffs do not appear to genuinely dispute that there exist core claims against Swain Landing. The foregoing analysis shows such to be for good reason: seeking the liquidation of a debtor in bankruptcy, seeking to transfer the assets of a bankruptcy estate to a receiver, and seeking the placement of an equitable lien upon assets of a bankruptcy estate, are as assuredly core as just about any claims one could bring. And it necessarily follows that mandatory

abstention is inapplicable to the case *sub judice*, not merely because this is a proceeding that could have been commenced in federal court but, too, because this case is eminently core in nature.

### b. The Centrality of this Case to the Debtor's Estate Militates Against Discretionary Abstention

The Plaintiffs next urge that this Honorable Court discretionarily abstain from hearing the instant case. Again, they also appear to markedly hedge in so doing, suggesting that such abstention might only be as to the "Non-Swain Claims," Motion, DE #43-1, at p. 10. Similarly, the Motion urges that an equitable remand may be appropriate, noting the criteria for such to be largely similar to that of permissive abstention, *id.* at p. 17. Problematically, however, the Plaintiffs neither acknowledge the dramatic departure from precedent such would entail nor the factual impediments to affording such relief.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate

14

a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In petitioning for this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc*., 222 B.R. 254, 257 (D. Md. 1998)).

The Plaintiffs suggest a more expansive set of twelve factors, Motion, DE #43-1, at p. 11, relying on this Honorable Court's ruling in *Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter Hayden Co.)*, 304 B.R. 725 (Bankr. D. Md. 2004):

> (1) efficiency in the administration of the debtor's estate;

> (2) the extent to which state issues predominate over bankruptcy issues;

> (3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

15

(4) the presence of a related proceeding commenced in state court;

(5) the existence of a jurisdictional basis other than [Section] 1334(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(9) the burden of the federal court's docket;

(10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) whether non-debtor parties are involved in the proceeding.

*Porter-Hayden Co.*, 304 B.R. at 735 (Bankr. D. Md. 2004*) (quoting *MacLeod v. Dalkon Shield Claimants Trust*, 967 F. Supp. 856, 858 (D. Md. 1997) (quoting *In re Eastport Assoc.*, 935 F.2d 1071, 1075-76 (9th Cir. 1991))). For purposes of symmetry between the briefs, Swain Landing will analyze all of the *Porter-Hayden* factors, though the Debtor also notes the applicable standard will ultimately turn on which court hears the Motion (something that should not invite a materially different result, insofar as the District of Columbia factors and the District of Maryland factors are largely similar in nature).

Taking the first factor, it would be enormously inefficient for the Debtor's estate to be partially administered in a bankruptcy court and partially administered in a state court. Indeed, endeavoring to reorganize Swain Landing in chapter 11, while a state court oversees adjudication of an effort to force the liquidation of Swain Landing and to vest all the assets of Swain Landing in the hands of a receiver, would be not merely inefficient but, too, facially incongruitous. The imagination need not venture far to envision a hearing on plan confirmation being followed by one on summary judgment and the utter chaos that would ensue if one court permitted the Debtor to reorganize while the other court directed the Debtor to be liquidated.

16

Vis a vis the second question, this is a case where the state law claims *are* bankruptcy issues. As noted *supra*, the Plaintiffs are not actually suing the Debtor for a vanilla money judgment; they are, instead, seeking imposition of a constructive trust over assets that constitute the Debtor's bankruptcy estate, alongside the forced liquidation of the Debtor. As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at *29 (B.A.P. 9th Cir. Sep. 14, 2005). So while the Plaintiffs' claim may sound in state law, the remedies being sought in furtherance of those claims are fully bankruptcy-centric in the context of a small business debtor yearning to reorganize.

In assessing the third criterion, there are no "difficult or unsettled questions of state law" at issue. Yes, the Plaintiffs are trying to upend decades of precedent in urging that imposition of a constructive trust is a cause of action and not merely a remedy. But such does not render this "difficult" or "unsettled;" such merely portends poorly for the viability of the Plaintiffs' claims.

On the fourth question, there does not appear to be any related proceeding commenced in state court. While the Debtor has not keenly followed a seemingly-related matter pending in the state courts of New York, concerning an effort to take out-of-state discovery, such appears to be a discreet matter of a purely-procedural variety and not a substantive proceeding. By contrast, however, there is an exceedingly related proceeding pending in the United States Bankruptcy Court for the District of Columbia, where Mr. Bolog has sued the Debtor for indemnity and contribution related to the Plaintiffs' claims in this litigation.

The fifth factor also militates against equitable abstention: as discussed in Section III(a)(i), *supra*, this is a case for which independent federal jurisdiction exists since the Plaintiffs allege

facts inviting a complete diversity of citizenship and the amount in controversy well exceeds $75,000.

The sixth inquiry is "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." As noted *passim*, the relatedness of this proceeding to Swain Landing's chapter 11 case is relatively extensive. If the Plaintiffs were merely seeking a money judgment, the overlap between the two proceedings might be lesser. Yet insofar as White Pearl is seeking both the imposition of a constructive trust over the assets of the Debtor, and the forced dissolution of the Debtor, it is genuinely difficult to meaningfully parcel one case from the other.

The seventh consideration is the substance—in lieu of form—of "core" proceedings. This is particularly important *sub judice*; while none of the causes of action are express federal questions, each of the three claims will, as noted above and throughout, have a profound impact on the Debtor's estate. That a putative creditor is trying to (i) place a lien on estate assets; (ii) tender estate assets to a receiver; and (iii) have the Debtor dissolved, creates—both for each individual claim and in the aggregate—a palpably core proceeding.

The eighth question is "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court." This appears to be the criterion on which the Plaintiffs are most reliant in their Motion, with some emphasis being placed on differentiating the claims against the Debtor from those against third parties. Problematically, however, the web of claims does not appear to be ripe for such a simplistic disentanglement. It is not merely that Mr. Bolog has now sued Swain Landing for indemnity and contribution (something that, unto itself, makes separation of the claims against Mr. Bolog from those against the Debtor nearly impossible). It is, rather, also that the operative pleading has other inextricable points of overlap. By way of anecdote only, Count XII is against Mr. Postal—but not against Swain Landing—for

18

"aiding and abetting breaches of fiduciary duty," on the theory that the movement of monies from Ms. Engelhorn, to Swain Landing, was part and parcel of a larger scheme carried out by those owing her a fiduciary duty. Equally problematically, the same cause of action—Count XII—seeks, *inter alia*, the remedy of imposing a constructive trust on any benefits received by Mr. Postal on account of his allegedly aiding and abetting Mr. Bolog. And that petitioned-for relief, in turn, creates a paradigm where it seems the broader claims against Mr. Bolog are part and parcel of the claim against Mr. Postal which, in turn, is wholly premised upon the formation and funding of the Debtor. There simply does not appear to be any sensible mechanism of severing certain claims without overly-complicating the adjudication of others.

The ninth inquiry is the burden on this Honorable Court's docket. There does not appear to be any reason to surmise this case would place an undue burden on the docket of either this Honorable Court or the United States Bankruptcy Court for the District of Columbia. The latter court, in which the Debtor's main case is pending, is familiarly one of the quieter bankruptcy courts in the United States, generally averaging only around 400 cases per year (including consumer chapter 7 and 13 filings) and, anecdotally, is a court well seasoned at utilizing the resultant temporal flexibility to regularly entertain adversary proceedings in a prompt and accommodating fashion.

The tenth factor is the likelihood of forum shopping. Plainly, Swain Landing sought chapter 11 relief to pursue an avoidance action as a means of regaining real property lost to a recission judgment. This litigation was not the objective underlying the Debtor's bankruptcy case at its filing and, notwithstanding the flurry of briefings since-filed in this case post-removal, remains little more than a core dispute necessitating resolution as part of the reorganization process.

The eleventh factor is the right to a trial by jury. It appears this is a case where some claims are triable to a jury and some claims are not, with the causes of action being asserted against Swain Landing being uniformly equitable and accordingly of the latter variety for which there does not exist any right to trial by jury. *See, e.g., Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974). ("If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand.  And  if this legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."). Critically, however, there exists a jury box in both this Honorable Court and the United States Bankruptcy Court for the District of Columbia, just as there exist jury boxes in the district courts situated in the same buildings as both courts and of which both courts serve as a statutory "unit," 28 U.S.C. § 151.

The final consideration is the existence of non-debtor parties in the proceedings. Swain Landing does not dispute that there are myriad non-debtor parties in this case. It bears notation that entry of an adverse judgment may cause at least one of the special purpose entity defendants to become a debtor in bankruptcy, but Swain Landing certainly recognizes that, as of present, there are no other implicated debtors.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2, 2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, 424 U.S. at 813. There is simply no basis to make such an exception in this case, where nearly every factor militates against abstention and where the administration of the Debtor's estate hangs in the

proverbial balance. This Honorable Court is well equipped to oversee this litigation, has a docket that can ably accommodate this litigation, and has jurisdiction over this litigation.

### c.  Analysis of Equitable Remand Occasions the Same Result

The Motion also seeks an equitable remand. *See* Motion, DE #43-1, at pp. 17-19. As noted by the Plaintiffs, such a consideration turns on virtually the same precise set of facts. *Id.* at p. 17. *See also Camofi Master LDC v. United States Coal Corp.*, 527 B.R. 138, 143 n.3 (Bankr. S.D.N.Y. 2015). And where the two notions are viewed as not completely overlapping, courts nonetheless assess such requests using the same factors. *In re Rosales*, 2012 Bankr. LEXIS 4366, at *13 (Bankr. W.D. Tex. Sep. 21, 2012).

Insofar as these factors are discussed in some detail above, *see, supra,* § III(b), the Debtor will forbear from repeating the same analysis and simply incorporates the foregoing arguments by reference.

### IV.   Conclusion

WHEREFORE, Swain Landing respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 7, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-444-4600
E-mail: mac@mbvesq.com
*Chapter 11 Counsel for Swain Landing*
*LaPlata JC, LLC, Debtor-in-Possession*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of August, 2025, a copy of the foregoing was

served electronically upon filing via this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig