# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>       Debtor. | Case No. 25-184-ELG<br>(United States Bankruptcy Court<br>for the District of Columbia) |
| Claudia Engelhorn, *et al.*<br><br>       Plaintiffs,<br><br>       v.<br><br>Erik D. Bolog, *et al.*<br><br>       Defendants. | Case No. 1:25-ap-00159<br>(United States Bankruptcy Court for the District of Maryland) |

## REPLY OF BOLOG PARTIES IN SUPPORT OF
## MOTION TO TRANSFER VENUE (ECF NO. 59)

The Bolog Parties[1] respectfully submit this reply in support of their Motion to transfer this matter to the D.C. Bankruptcy Court (the "Motion," ECF No. 59) pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087, and respectfully state as follows.

## PRELIMINARY STATEMENT

The only issue presented on this Motion is whether the Civil Action should be adjudicated (a) by itself in this bankruptcy court (thereby requiring the parties and witnesses to participate in two separate trials on overlapping legal and factual issues concerning Mr. Bolog's conduct) or (b) in a neighboring bankruptcy court that is overseeing the Debtor's bankruptcy, including several related claims against the estate by both the Engelhorn Parties and the Bolog Parties. As set forth

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion or Plaintiffs' Objection thereto (the "Objection," ECF No. 62).

in the Bolog Parties' Motion (and the Debtor's transfer motion before that (ECF No. 3)), the orderly administration of justice calls for transfer to the D.C. Bankruptcy Court so that claims related to the Debtor's bankruptcy case can be addressed in a single proceeding in one forum. And while the Engelhorn Parties would prefer to litigate in state court, the issue of remand and/or abstention is for another day. Indeed, in attempting to shoehorn their remand arguments into the debate here, the Engelhorn Parties tacitly concede that they have no valid basis to avoid transfer.[2]

As the Engelhorn Parties themselves have acknowledged, all of their claims are interrelated and belong together as a single civil action, stating: "This Civil Action [i.e., all of it] arises from the conduct of Erik D. Bolog ('Mr. Bolog'), who was Claudia Engelhorn's former attorney, trustee, confidant, advisor and friend." ECF No. 43-1 at 4. By voluntarily dismissing their claims against Swain Landing here, and refiling them as proofs of claim against the Debtor in the D.C. Bankruptcy Court, the Engelhorn Parties have already acknowledged that transfer is appropriate. In the interests of justice and efficiency, the Court should now transfer the remainder of the Engelhorn Parties' claims to the D.C. Bankruptcy Court. Indeed, all of the Engelhorn Parties' claims are related, and Mr. Bolog's indemnification and contribution claims against the Debtor pending in the D.C. Bankruptcy Court (which are contingent upon the validity and amount of the Engelhorn Parties' claims against the Bolog Parties) directly impact the Debtor's bankruptcy estate, and further support transfer.

In objecting to transfer, the Engelhorn Parties raise seven factors for this Court to evaluate. All of them are either neutral or weigh in favor of transfer. Moreover, the Engelhorn Parties'

---

[2] As the Engelhorn Parties recognize, this Court has already determined it will address remand and abstention only if necessary *after* transfer has been decided. *See* Objection at 2, n.2. Indeed, "if transfer is appropriate" (which it is), the D.C. Bankruptcy Court "would be better positioned to adjudicate the [Engelhorn Parties'] Motion to Remand." *In re Virginia True Corp.*, 2020 WL 1696103, at *5 (Bankr. E.D. Va. Mar. 30, 2020) Accordingly, this Court should "resolve the Motion to Transfer first." *Id.*

hypocritical accusations of "gamesmanship" and "forum shopping" are baseless. *See* Objection at 1. If anyone is playing games, it is the Engelhorn Parties. After filing the Civil Action as a single proceeding consisting of related claims, and opposing the transfer of any of those claims to the D.C. Bankruptcy Court, the Engelhorn Parties chose, at the 11th hour, to re-file the *very same* SAC at issue here as proofs of claim in the Debtor's Bankruptcy Case (*see* ECF No. 59-2), and voluntarily dismiss the Debtor from the Civil Action the Friday before a Monday morning hearing on the Debtor's Motion to Transfer (ECF No. 58), in a transparent attempt avoid a hearing (and decision) on the Debtor's motion to transfer. The Court should not countenance such bad faith conduct.

## **ARGUMENT**

A court may transfer a proceeding under 28 U.S.C. § 1412 in (a) the interest of justice *or* (b) the convenience of the parties. As the Bolog Parties showed in the Motion, both are present here. The Engelhorn Parties cite no binding authority, or even cases within this district, for their assertion that the Court should analyze the seven factors identified in their opposition on a motion to transfer. Regardless, even if the Court chooses to adopt this framework, all of the relevant factors are either neutral or weigh in favor of granting the Bolog Parties' Motion.

*All* of the claims in the SAC (**Exhibit A**) are "related to" administration of the Debtor's bankruptcy estate as they all hinge on Mr. Bolog's honesty and integrity in his course of dealings with Ms. Engelhorn and her related entities. The state of Maryland has no particular or unique interest in the Civil Action, as none of the Engelhorn Parties are citizens, or governed by the laws of, Maryland. Judicial efficiency dictates that the overlapping issues of law, fact, and discovery, be adjudicated in one proceeding. And the Engelhorn Parties' choice of forum, Maryland *state* court, is irrelevant when determining which of two different *federal* venues would be appropriate.

I.      **The Civil Action Should Be Transferred In The Interests Of Justice**

    A.      **The Economic Administration Of The Bankruptcy Estate**

"Equal weight is not given to all the factors in this calculus; indeed '[t]he most important of these factors is ... the economic and efficient administration of the estate.'" *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Ent. Corp.*, 532 B.R. 259, 274 (E.D. Va. 2015) (internal citations omitted). Here, this factor tilts heavily in favor of transfer to ensure that Mr. Bolog's indemnification and contribution claims against the Debtor are adjudicated in the context of its bankruptcy.

The Engelhorn Parties effectively concede that this factor is at best neutral for them, contending that "[p]roceeding in Maryland or in the District of Columbia will not economically impact the bankruptcy estate." Objection at 6. But where, as here, "the parties are no strangers to the Bankruptcy Case and have been litigating related issues and claims in the context of the Bankruptcy Case," transfer is appropriate. *In re Virginia True Corp.*, 2020 WL 1696103, at *6 (Bankr. E.D. Va. Mar. 30, 2020).

To begin with, the Engelhorn Parties' Objection ignores a key aspect of the Debtor's bankruptcy estate: it is now subject to the *exact same claims* that were previously asserted by the Engelhorn Parties here. The Engelhorn Parties' voluntary dismissal of their claims against Swain Landing only supports transfer. Those claims have not been extinguished or adjudicated—they have simply been repurposed as proofs of claim against the Debtor. *See* ECF No. 59-2.

Furthermore, the Engelhorn Parties' argument that Mr. Bolog's claims for indemnification and contribution against the Debtor arise only following any adjudication of liability (if any) (Objection at 6) only reinforces the point that the Civil Action should be heard in connection with the Debtor's Bankruptcy Case. Should Mr. Bolog's liability exceed $3,424,000.00, then Mr. Bolog's indemnification claims against the Debtor would render the Debtor ineligible for

subchapter V relief. *See* 11 U.S.C. § 101(51D). This interconnected liability directly impacts administration of the Debtor's estate and the rights of creditors. Adjudicating all potential claims against the Debtor based on the same set of facts in one singular proceeding is in the interest of efficient administration of the Debtor's estate.

Additionally, the Engelhorn Parties' reliance on the Bolog Parties' petition to compel arbitration of certain claims involving the Whitewater Revocable Trust is misplaced. As matters stand, arbitration has been denied, rendering the point moot. Even if reconsidered, the arbitration question weighs in favor of transfer, as the court adjudicating the Debtor's Bankruptcy Case is best positioned to conduct a "particularized inquiry into the nature of the claim[s]" the Bolog Parties have sought to compel into arbitration "and the facts of the [Debtor's] bankruptcy" proceeding to determine whether arbitration would be appropriate. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006).[3]

### B. The Presumption In Favor Of Trying Cases "Related To" A Bankruptcy Case In The Court In Which The Bankruptcy Is Pending Is Applicable Here

"The general presumption is that proper venue for a proceeding related to a bankruptcy case is the district hearing the bankruptcy." *In re Virginia True Corp.*, 2020 WL 1696103, at *6 (internal citations omitted).

Here, all of the claims asserted by the Engelhorn Parties in the SAC are "related to" the Debtor's Bankruptcy Case.

- *First*, as the Engelhorn Parties implicitly concede (Objection at 2), the claims against Mr. Bolog related to the Debtor (Counts V, VII, XIII, and XIV) are clearly related to Swain Landing's bankruptcy.

---

[3] The Engelhorn Parties' argument that the Bolog Parties did not consent to entry of final orders or judgment (Objection at 2) is irrelevant as it does not differentiate between the two bankruptcy courts at issue.

- *Second*, the Engelhorn Parties' claims against Michael Postal (Counts XII, XIII, and XIV), a part owner of the Debtor and its managing member, remain pending and are likewise related to the Debtor's bankruptcy.

- *Third*, the other claims related to investments made by the Whitewater Revocable Trust (i.e., the claims related to Darnestown Road and Science Park (Counts III, IV, VI, VII, X, XVII, XVIII, and XIX)) are likewise related to the Debtor's bankruptcy case. Indeed, all of these "Whitewater Investment Claims" turn on the terms of the Whitewater Revocable Trust, and whether Mr. Bolog acted in accordance with his rights and obligations as a trustee, and are all subject to the arbitration provision in the Whitewater Revocable Trust agreement.

- *Finally*, as to the allegations concerning the Gift, the Engelhorn Parties assert that it was "just the beginning" of Mr. Bolog's "scheme" in his dealings with Ms. Engelhorn. (*See* Case No. 25-00184, ECF No. 41 at 5.) By their own admission, the claims concerning the Gift are part of the same set of facts as their other claims.

In sum, the Engelhorn Parties themselves have tied together all of their claims in the SAC. All of their claims concerning the Bolog Parties hinge on the same underlying accusations concerning the honesty and integrity of Mr. Bolog in his professional relationship with his former client, Ms. Engelhorn, and whether, in the words of the Engelhorn Parties, he committed "fraud" and "embezzlement." ECF No. 43-1 at 4.[4]

---

[4] The Engelhorn Parties assert just two claims solely against Whiteford, Taylor & Preston LLP, both tied to their allegations against Mr. Bolog: (1) Count II for allegedly negligently hiring and retaining Mr. Bolog as an attorney with the firm and (2) Count XX for allegedly aiding and abetting Mr. Bolog's breaches of his fiduciary duties owed to the Engelhorn Parties.

There is no doubt that Ms. Engelhorn, Mr. Bolog, and Mr. Postal will all be necessary for discovery in *both* this Civil Action and the Debtor's Bankruptcy Case, and other witnesses will be called for trial or confirmation testimony in both proceedings as well. If transfer is not effectuated, the parties and witnesses will likely need to duplicate efforts and expenses necessary for document review and production, organize and sit for multiple depositions on overlapping topics, and submit to multiple instances of trial testimony.

### C. Considerations Of Judicial Efficiency Weigh In Favor Of Transfer

This factor further weighs in favor of transfer. Not transferring this proceeding will create inefficient judicial proceedings by doubling the number of trials on the same set of facts and law. *See In re Virginia True Corp.*, 2020 WL 1696103, at *6 (finding transfer is appropriate to avoid two courts addressing "litigation of similar, if not identical, issues"). Accordingly, the Civil Action should be transferred for efficient adjudication before the D.C. Bankruptcy Court, rather than piecemeal adjudication across multiple courts.[5]

### D. The Parties Will Receive A Fair Trial In The D.C. Bankruptcy Court

As the Engelhorn Parties concede (Objection at 7), a trial held by either this Court or the D.C. Bankruptcy Court would be fair for all parties, and thus this factor is "neutral." *See In re Virginia True Corp.*, 2020 WL 1696103, at *6.

### E. There Is No "Local Controversy" Which The State Of Maryland State Has An Interest In Adjudicating Within Its Borders

The Civil Action is not a "local" Maryland controversy. As alleged in the SAC, none of the Engelhorn Parties are Maryland citizens or governed under the laws of the state of Maryland:

---

[5] The Engelhorn Parties baldly assert that transfer would "significantly hinder" adjudicating any of their claims related to the Gift. Objection at 7. They offer no evidence—or argument—in support of this proposition. If anything, all of the Engelhorn Parties' claims would be adjudicated in an efficient manner should transfer occur as discovery, motions for summary judgment, and trial—if necessary—would proceed on an expedited timeline consistent with the confirmation schedule for the Debtor.

Ms. Engelhorn is a resident of Tennessee (SAC ¶ 1); her Whitewater Revocable Trust is governed under the laws of Virginia (Ex. B at 1, 14); and White Pearl is a Delaware entity. SAC ¶¶ 1-3. The funds underlying the Gift (and the investments made by the Whitewater Revocable Trust) came from Mr. Bolog's representation of Ms. Engelhorn in overseas litigation. *See, e.g.,* ECF No. 43-3 ¶ 8. Mr. Bolog is a member of the bar in multiple states, including the District of Columbia and Virginia, in addition to Maryland. SAC ¶ 5. And importantly, Mr. Bolog worked out of Defendant Whiteford Taylor & Preston's office in the District of Columbia, and thus the acts of purported malpractice and other misconduct occurred in D.C., not Maryland. *See, e.g.*, *id*. ¶ 31.[6]

To the extent relevant conduct occurred outside of D.C., it occurred in Massachusetts and New York, not Maryland. Ms. Engelhorn alleges that she signed and had notarized the JAREB Irrevocable Trust Agreement dated October 11, 2021, the Notice of Gift, and wire instructions at her vacation home in Massachusetts. *Id*. ¶ 36. And two key witnesses, Ms. Sarah Mayo (the notary public who witnessed Ms. Engelhorn's signature on the documents concerning the Gift) and Ms. Jennifer Shaw (Ms. Engelhorn's banker at Bank of America who personally witnessed Ms. Engelhorn orally confirm transfer of the Gift pursuant to Bank of America's security protocols), are based in Massachusetts and New York, respectively, as confirmed in their recent depositions—neither of which was held in Maryland.

The Engelhorn Parties' argument that their claims against the Blog Parties are based in-part on the Maryland Rules of Professional Conduct is unavailing. The Engelhorn Parties assert in the SAC that the professional rules of conduct in both Maryland and the District of Columbia are highly similar, if not the same. *See* SAC ¶ 29 ("That all three jurisdictions in which Defendant

---

[6] *See, e.g*, Case No. 7:21-cv-00094, ECF No. 30 at 18 (reflecting Mr. Bolog's address with Whiteford, Taylor & Preston, LLP in the District of Columbia in January 2022, the same time-period as the SAC).

Bolog is licensed to practice law have certain prohibitions and restrictions against soliciting and/or receiving gifts from clients, as set forth below"); *id.* ¶ 38 ("Maryland Rule 19-301.8(c) is conceptually the same as Rule 1.8 of the D.C. Rules of Professional Conduct."). Indeed, the Engelhorn Parties' acknowledge that the District of Columbia looks to Maryland law for guidance. Objection at 7-8. And, despite making a conclusory assertion that the two sets of "applicable law are not identical" and that their similarities (and differences) "requires explanation," they provide no argument for how the two jurisdictions' similar rules of professional conduct might be interpreted differently in any relevant respect (nor any argument for why a choice of law analysis would render the Maryland Rules of Professional Conduct applicable instead of those of the District of Columbia). *See, e.g.*, Objection at 7-9.

F. **Any Judgment By The D.C. Bankruptcy Court Is Enforceable**

Any judgment rendered by the D.C. Bankruptcy Court would have identical force as one rendered by this Court. As the Engelhorn Parties' acknowledge, this "factor weighs neither for nor against transfer." Objection at 10.

G. **Plaintiffs' Original Choice Of Forum Is Not Relevant And Does Not Outweigh Other Relevant Factors**

Contrary to the Engelhorn' Parties bald assertion (Objection at 10), this factor does not weigh against transfer. A plaintiff's "choice of forum is not entitled to as much deference when analyzing transfer under [28 U.S.C.] § 1412," the provision at issue here, "as when analyzing transfer under 28 U.S.C. § 1404."[7] *Gibbs*, 2018 WL 1460705, at *15. Indeed, Section 1412 "carries a presumption in favor of the court in which the debtor's bankruptcy case is pending." *Id*.

---

[7] Even if the Bolog Parties had moved under 28 U.S.C. § 1404, transfer would still be appropriate for the "convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404.

-9-

Even absent this presumption, because the Engelhorn Parties' initiated the Civil Action in Maryland *state* court, their choice of forum "is not entitled to as much weight," as neither this Court nor the D.C. Bankruptcy Court constitutes their original choice of forum. *See, e.g.*, *Schniper v. ServisFirst Bancshares, Inc.*, 2022 WL 374838, at *8 (W.D.N.C. Feb. 7, 2022). The Engelhorn Parties have moved for remand and abstention, evidencing their desire to be in state court. But here, the choice is between two different bankruptcy courts. Lastly, as noted above, *none* of the Engelhorn Parties are citizens of Maryland and all of the relevant conduct took place outside Maryland. This factor weighs in favor of transfer.

## II.   **The Civil Action Should Be Transferred For The Convenience Of The Parties**

While the interests of justice favor transfer, the Civil Action should also be transferred to the D.C. Bankruptcy Court for the convenience of the Parties. Here, because all of the Engelhorn Parties and Mr. Bolog have asserted proofs of claim against the Debtor, Mr. Bolog has filed an adversary proceeding alleging claims for indemnification and contribution, and the Engelhorn Parties moved to dismiss the Debtor's Bankruptcy Case, they "are active participants" in the Debtor's Bankruptcy Case. *See In re Virginia True Corp.*, 2020 WL 1696103, at *7; *see also Hilton Worldwide, Inc.*, 532 B.R. at 275 (finding transfer appropriate where objectors to transfer were "already parties to [the Debtor's] pending" bankruptcy case). It would serve the convenience of the parties to consolidate all related matters in one forum.

## CONCLUSION

Based upon the foregoing, the Court should grant the Motion and transfer the entirety of the Civil Action to the D.C. Bankruptcy Court.

Dated: September 2, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Respectfully,

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300


By: */s/ Matthew M. Karlan*
Matthew M. Karlan*
(signed by Douglas F. Gansler with permission of Matthew M. Karlan)
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Matthew.Karlan@cwt.com
Telephone: (212) 504-6000

*Admitted *pro hac vice*

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September, 2025, a copy of the foregoing was served electronically via CM/ECF, and remaining parties served via first class mail.

**Counsel of Record Served via CM/ECF:**

Sam J. Alberts
**Dentons US LLP**
1900 K St NW
Washington, DC 20006

Wes P. Henderson
Patrick Gardiner
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice Belmont VerStandig
**The VerStandig Law Firm, LLC**
9812 Falls Road #114-160
Potomac, MD 20854
*Counsel for Defendant Swain Landing LaPlata JC, LLC*

**Parties Served Via First Class Mail:**

**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

*/s/ Douglas Gansler*

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*