## EXHIBIT B

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

## TABLE OF CONTENTS

SECTION 1.  CREATION OF TRUST ................................................................. 1
SECTION 2.  TRUST DURING GRANTOR'S LIFETIME ................................... 1
SECTION 3.  UPON GRANTOR'S DEATH ........................................................ 2
  A.  DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY .................. 2
  B.  CASH DISTRIBUTION ........................................................................ 2
  C.  PAYMENT OF INDEBTEDNESS ......................................................... 2
  D.  DISTRIBUTION OF BALANCE OF TRUST ........................................ 2
SECTION 4.  TRUSTEES ................................................................................. 3
  A.  SUCCESSOR TRUSTEES .................................................................. 3
  B.  COMPENSATION ............................................................................... 3
  C.  RESIGNATION ................................................................................... 3
  D.  REMOVAL ......................................................................................... 4
  E.  EMERGENCY ACTION ...................................................................... 4
  F.  EMPLOYMENT OF INVESTMENT ADVISOR ..................................... 4
SECTION 5.  POWERS OF TRUSTEE ............................................................. 5
  A.  RETAIN RESIDENCE IN TRUST ....................................................... 5
  B.  DEAL WITH PROPERTY .................................................................... 6
  C.  MARGIN AND BANK ACCOUNTS ...................................................... 6
  D.  REGISTER IN NOMINEE FORM ........................................................ 6
  E.  DISPOSE OF CLAIMS ....................................................................... 6
  F.  EXECUTE DOCUMENTS ................................................................... 6
  G.  DIVIDE PROPERTY ........................................................................... 6
  H.  BORROW FUNDS OR MAKE LOANS ................................................. 6
  I.  EMPLOY AGENTS ............................................................................. 6
  J.  MAKE TAX ELECTIONS .................................................................... 7
  K.  CARRY ON BUSINESS ...................................................................... 7
  L. S CORPORATION STOCK ................................................................... 7
  M.  TREAT AS COMMON FUND .............................................................. 8
  N.  RECEIVE ADDITIONAL PROPERTY .................................................. 8
  O.  MERGE TRUSTS ............................................................................... 9
  P.  DIVIDE TRUSTS ................................................................................ 9
  Q.  DEAL WITH GENERATION-SKIPPING TRANSFERS ......................... 9
  R.  DEAL WITH DIGITAL ASSETS .......................................................... 9
  S.  KEEP INFORMATION CONFIDENTIAL ............................................ 10
  T.  DO ALL THINGS WITH FINAL AUTHORITY ..................................... 10
SECTION 6.  DUTIES OF TRUSTEE ............................................................. 10

A.   PAY DEATH TAXES AND SATISFY CASH NEEDS.............................................. 10
B.   PAY DELIVERY EXPENSES.............................................................................. 10
C.   PAY DIRECTLY TO BENEFICIARIES ............................................................... 10
D.   DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES .. 11
E.   MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY
PAYMENTS .................................................................................................................. 11
F.   MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED
TRUSTEE ..................................................................................................................... 11
G.   PAY INCOME AT TERMINATION OF TRUSTS ............................................. 11
H.   ADMINISTER WITHOUT COURT SUPERVISION ......................................... 11
I.   RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS ......................... 11
SECTION 7.   INCAPACITY........................................................................................ 12
A.   DETERMINATION OF INCAPACITY ............................................................. 12
B.   DURATION OF INCAPACITY ......................................................................... 12
C.   EFFECT OF INCAPACITY ............................................................................... 13
D.   REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS ...... 13
SECTION 8.   REVOCATION OR AMENDMENT....................................................... 13
SECTION 9.   RESOLUTION OF CONTROVERSIES ................................................. 13
SECTION 10.   GOVERNING LAW............................................................................. 14
SECTION 11.   RULE AGAINST PERPETUITIES ...................................................... 15
SECTION 12.   BINDING AGREEMENT .................................................................... 15
SCHEDULE A ................................................................................................ 17
SCHEDULE B ................................................................................................ 18
SCHEDULE C ................................................................................................ 19
SCHEDULE D ................................................................................................ 20

# REVOCABLE TRUST AGREEMENT
## OF
## CLAUDIA ENGELHORN

THIS REVOCABLE TRUST AGREEMENT is executed on September 30, 2021, by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees, either of whom may act alone. Any reference in this trust agreement to the "trustee" shall apply to any trustee or trustees then serving.

**SECTION 1. CREATION OF TRUST.**   The grantor transfers, and the trustees accept, in trust, all of the property listed on the attached schedule of property. The trustees shall administer and dispose of it, together with any other property which the trustees may later receive, as set forth in this agreement. This trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

**SECTION 2.**   **TRUST DURING GRANTOR'S LIFETIME.**   During the lifetime of the grantor, the trustee shall pay the net income from the trust, including income accrued to the date of this agreement, or whatever amounts the grantor directs, in monthly or more frequent installments to the grantor.

In addition, the trustee may at any time or times pay to or for the benefit of the grantor so much or all of the principal of the trust as the trustee in the liberal exercise of discretion considers appropriate for her maintenance, support, health, comfort or well-being.

Furthermore, the grantor, in her sole and absolute discretion, may at any time withdraw whatever amounts of principal of the trust as the grantor directs. However, this right may not be exercised if the grantor is incapacitated at the time of such withdrawal.

**SECTION 3.**      **UPON GRANTOR'S DEATH.**   Upon the grantor's death, this trust shall be administered and disposed of as follows.

**A.**      **DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY.**   The grantor directs that those items listed on Schedule B of this trust agreement be distributed as specified on that schedule, and that the balance of the tangible personal property be distributed equally among those of the grantor's children who are then living.

**B.**      **CASH DISTRIBUTION.**   The trustee shall first distribute the sum of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the grantor's friend, **MARCIA S. BOSCO**, if she is then living, or if she is then deceased, to her children, **ISADORA BOSCO** and **TRISTON BOSCO**, in equal shares, or all to the survivor of them.  If none are then living, this gift shall lapse.

**C.**      **PAYMENT OF INDEBTEDNESS.**   The trustee shall then pay in full and discharge any unpaid balance, both as to principal and interest, owed by the grantor to the Mannheim Trust and the grantor's named children, **RICHARD BUSSMANN** and **COURTNEY BUSSMANN**, as evidenced by those certain promissory notes executed by the grantor as borrower and not paid from other funds by or on behalf of the grantor.

**D.**      **DISTRIBUTION OF BALANCE OF TRUST.**   The trustee shall then distribute the balance of the trust to the **CE FOUNDATION**, a charitable foundation organized under the laws of the Commonwealth of Virginia.  If such entity is no longer in existence at the time of distribution, the trustee shall distribute its share to another entity or organization(s) that, in the trustee's sole judgment, has functions most nearly similar to the defunct entity.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    2

## SECTION 4.   TRUSTEES.

A.   **SUCCESSOR TRUSTEES.** If either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-five (35) years of age and has accepted his/her appointment as successor trustee shall serve as trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2) the last serving individual trustee, if living and able to do so, or (3) if not, the then-living beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees. The grantor appoints as a successor trustee any person or corporation so designated.

B.   **COMPENSATION.** For services as trustee, each successor trustee shall be entitled to a trustee's fee, to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000.00). Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

C.   **RESIGNATION.** A trustee may resign at any time by an instrument in writing. No accounting or court proceeding upon any change in trustees is required, unless specifically requested by a present or anticipated beneficiary or a present or successor trustee.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    3

No successor trustee is personally liable for any act or omission of any predecessor trustee. The grantor excuses each trustee from giving bond.

      **D.**    **REMOVAL.** The individual trustee(s) serving from time to time may remove any corporate trustee by written notice or accept the resignation of any corporate trustee. Simultaneously with the removal or resignation, the individual trustee(s) shall designate as successor trustee a bank or trust company authorized to act as trustee in any jurisdiction. The grantor appoints as successor trustee any such bank or trust company so designated. No trustee may (1) make any discretionary payment of income or principal that would discharge a personal legal obligation of any person who has the right to remove any trustee, or (2) terminate any trust under the special termination provisions that would result in any benefit to, or discharge a personal legal obligation of, any person who has the right to remove any trustee.

      **E.**    **EMERGENCY ACTION.** If (1) the whereabouts of any individual trustee is unknown to the other trustee(s), or if (2) in the sole judgment of the other trustee(s), any individual trustee is not readily accessible or is so ill or otherwise incapacitated as to be unable practically to signify approval or disapproval of any proposed action by the trustees, then the other trustee(s), in their absolute discretion, may take whatever action they consider advisable without obtaining the approval of that individual trustee. Any action taken by the other trustee(s) is binding on all persons. The other trustee(s) are relieved of any liability for any action taken in good faith under the conditions stated above.

      **F.**    **EMPLOYMENT OF INVESTMENT ADVISOR.** The successor trustee then serving shall continue to engage the services of the investment advisor employed by

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*        4

the grantor at the time of her death or incapacity to manage the investment of the trust property.
If no investment advisor was employed by the grantor at the time of her death or incapacity, the
successor trustee shall engage a professional investment advisory firm to manage the investment
of the trust property.

SECTION 5.     POWERS OF TRUSTEE.  In addition to any powers given to the
trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any
successor trustees, the powers listed below, which they may exercise without prior or subsequent
approval by any court.  In addition, the grantor specifically incorporates the provisions of §64.2-
105 and §64.2-778 of the Code of Virginia to the extent they are not inconsistent with the powers
listed below.  The grantor recognizes that the powers and duties granted to and imposed on the
trustee impose heavy and difficult burdens on the trustee.  In order to induce the trustee to
exercise these powers and duties in the manner the trustee believes will most closely
approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or
discretion in good faith by the trustee is binding on all persons.  The trust shall indemnify and
hold each individual trustee harmless for any act or omission of such trustee, except for an act of
gross negligence or willful misconduct.  For convenience the grantor is referring to these
fiduciaries in the masculine singular; however, the masculine, feminine, and neuter, and the
singular and plural, include each other wherever appropriate in any reference to any person or
corporation in this agreement.

A.     RETAIN RESIDENCE IN TRUST.  To retain in any trust any residence
transferred to the trust by the grantor.  The trustee shall permit the grantor to occupy the
residence, rent free, for whatever period of time the trustee may reasonably determine.  The
trustee is not required to make any charge against income or principal for depreciation.  The
trustee shall pay from the principal of the trust all taxes, assessments, homeowner's insurance

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    5

premiums, repair and maintenance expenses, and the cost of any improvements, connected with the residence. If the trustee considers it advisable, he may sell the residence and buy another residence, and may thereafter make further sales and purchases of residences. In that case, the provisions of this paragraph will apply to the other residence or residences.

**B.    DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust. The trustee is authorized to sell, lease or mortgage any property of the trust for any period even if it extends beyond the period in which an interest would be required to vest under the common law, including the common law rule against perpetuities, if it were to apply to this agreement and to the trusts created under this agreement.

**C.    MARGIN AND BANK ACCOUNTS.** To buy, sell and trade in securities of any nature, including short sales and on margin. The trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the trustee with such brokers as security for loans and advances made to the trustee. The trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the trustee may choose.

**D.    REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**E.    DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**F.    EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**G.    DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**H.    BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**I.    EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                     6

**J.    MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return. The trustee may determine in a fair, equitable and practical manner how all trustee commissions, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income. The trustee may allocate capital gain to income rather than principal.

**K.    CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**L.    S CORPORATION STOCK.** During any period when any trust is not treated for tax purposes as a grantor-owned trust under Internal Revenue Code Sections 671 or 678, the trustee may elect to hold any S corporation stock held by the trust as a separate "electing small business trust" as defined in Internal Revenue Code Section 1361(e)(1) or as a separate "qualified subchapter S trust," as defined in Internal Revenue Code Section 1361(d)(3). In making this determination, the trustee may consider any changes to the terms and conditions of the trust that will be required as a result of either election. For purposes of this agreement, "S corporation stock" means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated, or intends to be treated under Internal Revenue Code Section 1361(a), as an "S corporation" for federal income tax purposes.

(1) **Electing Small Business Trust.** If the trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify the trust or portion thereof as an "electing small business trust", the trustee shall (a) apportion to the electing small business trust a reasonable share of the unallocated expenses of all trusts created under this agreement, in accordance with the applicable provisions of the Internal Revenue Code and Treasury Regulations; and (b) administer the trust as an electing small business trust under Internal Revenue Code Section 1361(e).

(2) **Qualified Subchapter S Trust.** If the trustee elects under Internal Revenue Code Section 1361(d) to qualify the trust or portion thereof as a "qualified subchapter S trust", the trustee shall (a) administer the qualified subchapter S trust in accordance with the same provisions contained in the trust to which the S corporation stock was originally allocated; provided, however, that the provisions of this subparagraph N(2) of Section 9 control the administration of the trust to the extent that they are inconsistent with the provisions of the original trust; (b) maintain the qualified subchapter S trust as a separate trust held for the benefit of one beneficiary as required in Internal Revenue Code Section 1361(d)(3); and (c) request that the current income beneficiary of the trust, with the assistance of the trustee, make an election in accordance with Internal Revenue Code Section 1361(d)(2) to qualify the trust as a qualified subchapter S trust within the meaning of Internal Revenue Code Section 1361(d)(3).

---

**WHITEWATER** Revocable Trust Agreement

(a) If under the terms of this agreement, there is more than one person who has a present right to receive income distributions from the trust originally holding the S corporation stock, the trustee shall segregate the S corporation stock into separate qualified subchapter S trusts for each person who has a present right to receive income distributions so that each trust has one current income beneficiary.

(b)    Until the first to occur of (i) the death of the current income beneficiary and (ii) the date on which the qualified subchapter S trust no longer holds any S corporation stock (the "QSST termination date"), the trustee shall distribute to the current income beneficiary, at least annually, all of the trust's "net income," as that term is defined in Internal Revenue Code Section 643(b). Until the QSST termination date, the trustee may only distribute principal to the current income beneficiary of the qualified subchapter S trust. If a qualified subchapter S trust terminates during the lifetime of the current income beneficiary, the trustee shall distribute all assets of the qualified subchapter S trust to the current income beneficiary.

(c)    The trustee shall characterize receipts and expenses of any qualified subchapter S trust in a manner consistent with Internal Revenue Code Section 643(b).

(d)    The trustee may not merge or consolidate any qualified subchapter S trust with the assets of another trust if doing so would jeopardize the qualification of either trust as a qualified subchapter S trust.

(3)    **Governance of Trusts.** The following additional provisions apply to any separate trust created under this paragraph N.

(a)    The trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the terms of this agreement shall be construed in a manner that is consistent with the trust qualifying as an electing small business trust or as a qualified subchapter S trust.

(b)    No method of distribution permitted under this Section 9.N may be used in a manner that would jeopardize the qualification of the trust as an electing small business trust or as a qualified subchapter S trust. If the continuation of any trust would, in the trustee's opinion, result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the trustee may, in addition to the power to sell or otherwise dispose of the stock, distribute the stock to the person who is then entitled to receive the income from the trust.

**M.    TREAT AS COMMON FUND.** To treat any trust as a common fund for investment and administrative purposes.

**N.    RECEIVE ADDITIONAL PROPERTY.** To receive and to administer in trust any additional property from any source.

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    8

**O.** **MERGE TRUSTS.** To merge any trust held under this agreement with any other trusts created by the grantor under will or agreement, if the terms of the other trusts are substantially similar and if they are for the primary benefit of the same persons.

**P.** **DIVIDE TRUSTS.** To divide any trust held under this agreement into two or more separate trusts according to the fair market value of the trust assets on the date of division.

**Q.** **DEAL WITH GENERATION-SKIPPING TRANSFERS.** To deal with any potential generation-skipping transfer (GST) as follows:

**(1)** Fund With Appreciating Assets. To fund any trust that is exempt from GST tax with assets which, in the judgment of the trustee, are most likely to appreciate in value in the future.

**(2)** Disregard GST Tax Consequences. To make any required or permitted distributions from any trust without regard to (a) whether the distributions will be subject to GST tax, (b) the amount of the GST tax, or (c) the identity of the person or entity responsible for paying the GST tax. The trustee shall make no adjustment of any beneficiary's interest in any trust because of the payment or non-payment of any GST tax on account of a distribution made to him or her.

**(3)** Make Distributions From Divided Trusts. With respect to trusts that have been divided into a trust exempt from GST tax and a trust not exempt from GST tax:

**(a)** To make distributions of income and principal to skip persons from the exempt trust;

**(b)** To make distributions of income and principal to non-skip persons from the non-exempt trust; and

**(c)** To pay estate, inheritance and other death taxes from the non-exempt trust.

**R.** **DEAL WITH DIGITAL ASSETS.** To (i) access, use and control the grantor's digital devices, including but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar digital device which currently exists or may exist as technology develops for the purpose of accessing, modifying, deleting, controlling, or transferring the grantor's digital assets and (ii) to access, modify, delete, control, and transfer the grantor's digital assets, including but not limited to, emails received, email accounts, digital music, digital photographs, digital videos, software licenses, social network accounts, file sharing accounts, financial accounts, banking accounts, domain registrations, DNS service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, other online accounts, and similar digital items which currently exist or may exist as technology develops, and (iii) to obtain, access, modify, delete, and control the grantor's

---

**WHITEWATER** Revocable Trust Agreement

passwords and other electronic credentials associated with the grantor's digital devices and digital assets described above.

**S.    KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**T.    DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

**SECTION 6.    DUTIES OF TRUSTEE.** The grantor authorizes the trustee and any successor trustees, without prior or subsequent approval by any court:

**A.    PAY DEATH TAXES AND SATISFY CASH NEEDS.** Subject to the provisions of Section 6.I of this agreement, to pay all taxes due because of the grantor's death, whether with respect to property passing under this agreement, under the grantor's will, or otherwise. Taxes include interest and also penalties not caused by negligence or bad faith. Subject to the provisions of Section 6.I of this agreement, the trustee shall also pay all debts, administration expenses, legacies, and other cash requirements of the grantor's estate. Payment shall be made from the entire trust available for distribution under Section 3.D before its distribution to its beneficiaries.

However, the following taxes shall not be paid from the trust: (1) any tax resulting from the inclusion in the grantor's gross estate of property over which the grantor has a general power of appointment, (2) any tax resulting from the inclusion in the grantor's gross estate of property in which the grantor has a qualifying income interest for life, (3) any generation-skipping transfer tax, and (4) any additional tax imposed by Internal Revenue Code §2032A or a corresponding provision of state law.

In no event shall any payment be made from any assets that are excludible from the grantor's gross estate for federal estate tax purposes. In no event shall there be any right of reimbursement from any person.

**B.    PAY DELIVERY EXPENSES.** To pay from the trust the cost of safeguarding and delivering all gifts made under this agreement.

**C.    PAY DIRECTLY TO BENEFICIARIES.** To make all payments of income and principal directly to the beneficiary entitled to them and not to any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, or

---

**WHITEWATER** Revocable Trust Agreement

encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary.

**D.   DISTRIBUTE TO OR FOR INCAPACITATED OR MINOR BENEFICIARIES.**   Notwithstanding any other provision of this agreement, to make distributions from any trust to or for the benefit of any beneficiary who is incapacitated or who is a minor, without the necessity of obtaining a receipt or the approval of any court, in any one or more of the following ways:  (1) directly to the beneficiary; (2) directly in payment of the beneficiary's expenses; (3) if the beneficiary is a minor, to a custodian for the minor named by the trustee to be held as a gift made under any applicable Uniform Transfers to Minors Act or Uniform Gifts to Minors Act, with the custodial arrangement continuing until the beneficiary reaches 21 years of age; or (4) to a relative, friend, guardian, committee, conservator, or other person or institution who in the trustee's judgment is responsible for the beneficiary or for the property of the beneficiary, whether or not appointed by any court.

**E.   MAKE BINDING DECISIONS WITH RESPECT TO DISCRETIONARY PAYMENTS.**   In making discretionary payments of income or principal to any person, to do so after taking into consideration, or without taking into consideration, as the trustee considers appropriate, any other income or financial resources reasonably available to the person. No creditor of any beneficiary, including any governmental agencies that may furnish services, payments, or benefits to a beneficiary, shall have any claim to any of the income or principal of any trust. All aspects of decisions with respect to discretionary payments of income and principal shall be made by the trustee in his absolute discretion and are binding on all persons.

**F.   MAKE CERTAIN DECISIONS WITHOUT PARTICIPATION OF INTERESTED TRUSTEE.**   No successor trustee may make any discretionary payment of income or principal from any trust if such payment would discharge a personal legal obligation of that trustee. No individual trustee, other than the grantor, may participate in any decision with respect to any insurance policy on the life of the trustee that may be a part of any trust unless there is only one trustee.

**G.   PAY INCOME AT TERMINATION OF TRUSTS.**   To pay any net income of any trust unpaid or accrued at the death of any trust beneficiary to the next succeeding beneficiary, without apportionment to the estate of the deceased beneficiary.  If a trust is the successor, payment will be made to the income beneficiary and not to its trustee.

**H.   ADMINISTER WITHOUT COURT SUPERVISION.**   To administer all trusts without court supervision. If it becomes advisable to apply to a court for any purpose, the trustee shall request the court to take jurisdiction of the specific matter only and not of any trust as a whole.

**I.   RESTRICTIONS ON USE OF RETIREMENT PLAN BENEFITS.**   Notwithstanding any contrary provision in this agreement, and except as is provided in this section, from and after the grantor's death the trustee shall not distribute to or for the benefit of

---

**WHITEWATER** Revocable Trust Agreement

the grantor's estate, or to or for the benefit of any charitable organization or any other non-individual beneficiary, any retirement plan benefits which are subject to the "minimum distribution rules" of Internal Revenue Code §401(a)(9) and applicable regulations. It is the grantor's intent that all such retirement plan benefits be distributed to, or held for the benefit of, only individual beneficiaries within the meaning of Internal Revenue Code §401(a)(9) and applicable regulations. Accordingly, the grantor directs that any such retirement plan benefits may not be used to make payment of the grantor's debts, taxes and other claims against the grantor's "estate" except to the minimum extent that would be required under applicable state or federal law in the absence of any specific provision on the subject in the grantor's will or this agreement. This section shall not apply to any charitable bequest which is specifically directed to be funded with retirement benefits or proceeds by other provisions of this agreement. As used in this section, the term "retirement plan" shall mean any qualified retirement plan, individual retirement account or other retirement arrangement.

### SECTION 7.    INCAPACITY.

    **A.    DETERMINATION OF INCAPACITY.**   Any individual shall be deemed to be "incapacitated" for all purposes of this agreement if the grantor or any trustee comes into possession of any of the following:

    **(1)**   Written certificates of incapacity, which the recipient believes to be currently valid, executed and acknowledged by two physicians. In each certificate, the physician shall state that (i) he is certified by a recognized medical licensing body, (ii) he has examined the individual, and (iii) he has concluded that such individual was unable to act rationally and prudently in his own financial best interest because of accident, illness, deterioration, or other similar cause, whether physical or mental, progressive, intermittent or chronic. The grantor, by written instrument filed with trust records, may designate one or both of the physicians who shall examine herself for purposes of determining her own competency. If the grantor has designated less than two physicians, or if less than two of the named physicians are able or willing to serve, then the agent nominated by the grantor under an advance directive - appointment of health care agent, shall designate the needed number of physicians to examine the grantor.

    **(2)**   A court order, which the recipient believes to be currently valid, holding the individual to be legally incapacitated to act on his own behalf, or appointing a guardian of his person or property.

    **(3)**   Other evidence that the recipient believes to be credible and still applicable that the individual has disappeared, is unaccountably absent, or is being detained under duress, so that he is effectively unable to look after his own financial best interest.

    **B.    DURATION OF INCAPACITY.**   Once an individual has been determined to be incapacitated, he or she shall continue to be treated as incapacitated until the certificates, court order, and/or circumstances have been revoked or become inapplicable. Any

---

physician's certificate may be revoked by a similar certificate to the effect that the individual is no longer incapacitated, executed either by the two original certifying physicians or by two other licensed physicians.

### C.   EFFECT OF INCAPACITY.

(1)   If any trustee or other fiduciary is determined to be incapacitated, he may not continue to serve as such while his incapacity continues. If and when he ceases to be incapacitated, he may resume serving as a fiduciary.

(2)   If the grantor is determined to be incapacitated, then notwithstanding any other provision of this agreement, the grantor will have no power to (i) withdraw income or principal from the trust during her lifetime, (ii) remove any trustee, or (iii) revoke or amend any part of this agreement. If and when the grantor ceases to be incapacitated, the grantor may resume exercising all of these powers.

### D.   REPRESENTATION OF INCAPACITATED INDIVIDUALS AND MINORS.

Notwithstanding any other provision in this agreement, the interests of any incapacitated individual may be represented by any person appointed as an attorney in fact of the incapacitated individual under a valid durable power of attorney. The interests of any minor may be represented by a parent or guardian of the minor, whether or not appointed by any court. The decision of any attorney in fact, parent or guardian is binding on all persons.

**SECTION 8.   REVOCATION OR AMENDMENT.** The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person. In addition, the grantor's agent under a valid general durable power of attorney may exercise the grantor's powers to revoke, amend or direct distributions of trust property by a written instrument signed by the agent and delivered to the trustee during the grantor's lifetime. This trust shall become irrevocable upon the grantor's death.

**SECTION 9.   RESOLUTION OF CONTROVERSIES.** Any controversy between the trustees, or between any other parties to this trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this trust

---

WHITEWATER Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    13

agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial arbitrator whose decision shall be final and conclusive upon both parties. The cost of arbitration shall be borne by the losing party or in such proportion as the arbitrator(s) shall decide. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

Furthermore, the grantor desires that this trust, the trustee and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this trust and disbursement of the assets. Additionally, the grantor has taken great care to designate, through the provisions of this trust, how the grantor wants the assets of the trust distributed. Therefore, if a beneficiary, or a representative of a beneficiary, or one claiming a beneficial interest in the trust, should legally challenge this trust, its provisions or asset distributions, then all assets to such challenging beneficiary shall be retained in trust and distributed to the remaining beneficiaries named in this trust agreement, as if such challenging beneficiary and his or her issue has predeceased the distribution of the trust assets. The defense of such litigation, including costs incurred by representatives of the grantor's estate, the trustees of this trust and their agents, attorneys, accountants and representatives, shall be paid for by the trust.

SECTION 10.   GOVERNING LAW. This agreement and the trusts created by it have been accepted by the trustee in the Commonwealth of Virginia. All questions pertaining to the validity and construction of the agreement shall be determined, and the trust shall be administered, under Virginia law.

WHITEWATER Revocable Trust Agreement

**SECTION 11.    RULE AGAINST PERPETUITIES.** The common law rule against perpetuities shall not apply to this agreement and the trusts created by this agreement.

**SECTION 12.    BINDING AGREEMENT.** This agreement is binding upon and inures to the benefit of the parties and their respective personal representatives, successors in interest, and successors in trust.

**EXECUTED** on September 30, 2021.

WITNESS:

_____        _____ (SEAL)
                                        **CLAUDIA ENGELHORN**, Grantor

_____        _____ (SEAL)
                                        **CLAUDIA ENGELHORN**, Trustee

_____        _____ (SEAL)
                                        **ERIK D. BOLOG**, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the grantor and, one of the trustees named in this revocable trust agreement, and acknowledged it to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG**, one of the trustees named in this revocable trust agreement, and acknowledged it to be his act and deed.

_____
Notary Public

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                    15

## ASSET TRANSFER
## ACKNOWLEDGMENT AND RELEASE

I, **CLAUDIA ENGELHORN**, grantor of the foregoing **WHITEWATER REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 30, 2021,** have been advised of the importance of assuring that my trust be properly funded with assets in order to accomplish my estate planning goals. I understand that it is my obligation and responsibility to transfer my assets and to confirm that the transfers of such assets have in fact been effectively completed. I hereby release the law firm of WHITEFORD, TAYLOR & PRESTON, LLP of any and all liability that may arise out of an omitted, incomplete or ineffective asset transfer. I intend this release to be binding on my successors and beneficiaries. Furthermore, I understand that it is my responsibility to maintain the records of the trust assets in a current and complete manner.

September 30, 2021

_Claudia Engelhorn_ (SEAL)
CLAUDIA ENGELHORN, Grantor

---

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                16

# SCHEDULE A

## ASSETS

The following schedule of assets is a record of any assets transferred to the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and includes any attached memorandum, any asset titled in the name of the trust, and any personal property assigned to the trust.

| Asset | Estimated Value | Initials | | Date Transferred |
|-------|-----------------|----------|---------|------------------|
|       |                 | Grantor  | Trustee |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |
|       |                 |          |         |                  |

**WHITEWATER** Revocable Trust Agreement

## SCHEDULE B

## DESIRED DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

Some of my personal belongings have special meaning to me.  I desire that, after my death, these items, as listed below, be distributed from the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** to the person named, if, in each case, that person is living 30 days after my death.

*Description of Personal Property*          *Desired Recipient And Relationship*

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

                                    _____
                                    CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703)280-9260*                18

## SCHEDULE C

## ADVANCEMENTS

The following gifts and distributions made during my lifetime shall be considered advancements. When the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, is divided into shares after my death, I direct the trustee to make an equitable adjustment for those advancements listed below that were made to persons for whom a share of the trust is then set apart.

| *Recipient* | *Amount* | *Grantor's Initials* | *Date* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

## SCHEDULE D

## LOANS AND INDEBTEDNESS

The following loans have been made by me.  To the extent that any such indebtedness from any person for whom a share of the trust is to be set apart remains outstanding when the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** is divided into shares after my death, I direct the trustee to allocate such indebtedness to the share of the indebted person.

| _Recipient_ | _Amount_ | _Grantor's Initials_ | _Date_ |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAUDIA ENGELHORN

**WHITEWATER** Revocable Trust Agreement

# ABSTRACT OF TRUST
## OF
## WHITEWATER REVOCABLE TRUST
## DATED
## SEPTEMBER 30, 2021

I, **CLAUDIA ENGELHORN**, hereby certify that I have created a revocable trust. That revocable trust agreement was executed on September 30, 2021 by **CLAUDIA ENGELHORN**, of Fairfax County, Virginia, as grantor, and **CLAUDIA ENGELHORN** and **ERIK D. BOLOG**, as trustees. The trust shall be known as the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**.

Any reference in the trust agreement to the "trustee" shall apply to any trustee or trustees then serving. If two or more trustees are ever serving as such, any administrative or ministerial powers and duties may be exercised by any one trustee. If more than two trustees are ever serving as such, any action may be undertaken by the consent of a majority of the trustees then serving.

**CLAUDIA ENGELHORN** and **ERIK D. BOLOG** are the trustees of this trust, either of whom may act alone. The grantor is also the beneficiary of the trust during her lifetime. Under Section 4.A of the trust agreement, if either trustee ceases to serve as trustee for any reason, the other shall continue to serve as trustee. If both trustees cease to serve as trustee for any reason, then the grantor's son, **RICHARD BUSSMANN**, shall serve as trustee. If he fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **MARGARET BLADES**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then the grantor's daughter, **COURTNEY BUSSMANN**, shall serve as trustee. If she fails to serve or ceases to serve as trustee for any reason, then a grandchild of the grantor who has attained thirty-

five (35) years of age and has accepted his/her appointment as successor trustee shall serve as

trustee. If at any time or times there is no individual trustee serving, then (1) the grantor, or (2)

the last serving individual trustee, if living and able to do so, or (3) if not, the then-living

beneficiaries of the trusts, by majority vote, shall designate one or more successor trustees.

In addition to any powers given to the trustee by statute, common law, or rule of court,

including the powers specified in §64.2-105 and §64.2-778 of the Code of Virginia, under

Section 5 of the trust agreement, the trustee, and any successor trustees, have additional powers,

some of which are listed below, and all of which they may exercise without prior or subsequent

approval by any court:

**DEAL WITH PROPERTY.** To retain, invest in, sell at public or private sale, mortgage, lease, exchange, manage, subdivide, develop, build, alter, repair, improve, raze, abandon, buy and sell puts, calls, futures and futures options, or otherwise deal with or dispose of any real or personal property, regardless of its nature, the lack of diversification of any trust, or the fact that any arrangement with respect to such property extends beyond the duration of any trust.

**REGISTER IN NOMINEE FORM.** To register any property in the name of a nominee or in other form without disclosure of the fiduciary capacity.

**DISPOSE OF CLAIMS.** To pay, extend, renew, prosecute, defend, compromise or submit to arbitration all rights, obligations, or claims of any trust against others or of others against any trust.

**EXECUTE DOCUMENTS.** To execute, acknowledge, and deliver documents.

**DIVIDE PROPERTY.** To make any division or distribution in cash, in kind, or partly in cash and partly in kind, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets. The division of, values assigned to, and beneficiaries selected to receive, any property is binding on all persons.

**BORROW FUNDS OR MAKE LOANS.** To borrow funds from any party (including the trustee), or to make loans, for any purpose connected with the administration of any trust, upon whatever terms, periods of time, and security the trustee considers advisable.

**EMPLOY AGENTS.** To employ brokers, investment counsel, custodians, realtors, accountants, attorneys, and other agents, and to delegate powers and discretions to any of them.

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                    2

**MAKE TAX ELECTIONS.** To make any tax election permitted by any tax law, and to file any tax return. There shall be no adjustment of any interests because of any such election or return.

**CARRY ON BUSINESS.** Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; to serve in any capacity with the business; to receive reasonable compensation for such services, in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

**KEEP INFORMATION CONFIDENTIAL.** In light of the grantor's desire that the provisions of this trust agreement are to remain confidential as to all parties, to reveal information concerning the benefits paid to any particular beneficiary only to such individual. Accordingly, no other individual shall have the right to information concerning the benefits paid to any other beneficiary.

**DO ALL THINGS WITH FINAL AUTHORITY.** To do all things that the grantor would be able to do were the grantor the absolute owner of the trust property. All decisions taken in good faith are binding on all persons.

The grantor recognizes that the powers and duties granted to and imposed on the trustee impose heavy and difficult burdens on the trustee. In order to induce the trustee to exercise these powers and duties in the manner the trustee believes will most closely approximate the intentions of the grantor, the grantor stipulates that any exercise of any power or discretion in good faith by the trustee is binding on all persons. The trust shall indemnify and hold each individual trustee harmless for any act or omission of such trustee, except for an act of gross negligence or willful misconduct.

---

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP ▪ Attorneys At Law ▪ (703) 280-9260*                    3

THE UNDERSIGNED declare under penalty of perjury that the foregoing abstract of trust, executed on September 30, 2021, is true and correct.

WITNESS:

_____ witness NC        _____ (SEAL)
                                    CLAUDIA ENGELHORN, Grantor

_____ witness NC        _____ (SEAL)
                                    CLAUDIA ENGELHORN, Trustee

_____ Fairfax VA        _____ (SEAL)
                                    ERIK D. BOLOG, Trustee

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN,** the grantor and one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and acknowledged the foregoing abstract of trust to be her act and deed.

_____
Notary Public

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **ERIK D. BOLOG,** one of the trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021,** and acknowledged the foregoing abstract of trust to be his act and deed.

_____
Notary Public

Fairfax, VA

_____

Abstract of **WHITEWATER** Revocable Trust Agreement

*Whiteford, Taylor & Preston, LLP • Attorneys At Law • (703) 280-9260*                 4

# ASSIGNMENT OF TANGIBLE PERSONAL PROPERTY
## TO
## WHITEWATER REVOCABLE TRUST
### DATED SEPTEMBER 30, 2021

I assign and transfer to CLAUDIA ENGELHORN and ERIK D. BOLOG, trustees of the **WHITEWATER REVOCABLE TRUST DATED SEPTEMBER 30, 2021**, all of my right, title and interest in all tangible personal property that I currently own, wherever located, except for any registered motor vehicle, boat or vessel, to be administered and disposed of as part of that trust.

I further declare that all tangible personal property that I hereafter acquire, except for any registered motor vehicle, boat or vessel not titled in the name of the trust, shall be acquired by me in my capacity as trustee of the revocable trust referred to above.

I agree to execute such further assurances as may be required to effectuate the purposes of this assignment.

**EXECUTED** as of September 30, 2021.

WITNESS:

_____          _____ (SEAL)
                                          CLAUDIA ENGELHORN

DISTRICT OF COLUMBIA, ss:

I HEREBY CERTIFY that on September 30, 2021, before me, a notary public of the jurisdiction aforesaid, personally appeared **CLAUDIA ENGELHORN**, the person named in the foregoing assignment of tangible personal property, and acknowledged it to be her act and deed.

_____
Notary Public