**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>         Debtor. | Case No. 25-184-ELG<br>(United States Bankruptcy Court<br>for the District of Columbia) |
| Claudia Engelhorn, *et al.*<br><br>         Plaintiffs,<br><br>         v.<br><br>Erik D. Bolog, *et al.*<br><br>         Defendants. | Case No. 1:25-ap-00159<br>(United States Bankruptcy Court for<br>the District of Maryland) |

**THE BOLOG PARTIES' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND (ECF NO. 43)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................. 3

    A.    The Civil Action ................................................................................... 3

    B.    Swain Landing Bankruptcy ................................................................. 7

ARGUMENT .................................................................................................................. 9

  I.   THE COURT SHOULD TRANSFER THE CIVIL ACTION TO THE D.C.
      BANKRUPTCY COURT BEFORE ADJUDICATING THE REMAND MOTION ........ 9

 II.  MANDATORY ABSTENTION IS INAPPLICABLE HERE ......................................... 10

    A.    Mandatory Abstention Is Inappropriate Because This Is A "Core Proceeding" ........ 11

    B.    Mandatory Abstention Is Also Inappropriate Because The Court Has An Independent
         Basis For Jurisdiction—Supplemental Jurisdiction Of Interrelated Claims Against
         The Non-Debtor Defendants .................................................................. 12

    C.    The Civil Action Cannot Be Timely Adjudicated In State Court In Light Of The
         Pending Subchapter V Bankruptcy ........................................................ 14

III.  PERMISSIVE ABSTENTION IS INAPPROPRIATE ................................................... 16

    A.    Factor 1: Efficiency In The Administration Of The Debtor's Estate ........................ 17

    B.    Factor 2: The Extent To Which State Issues Predominate Over Bankruptcy Issues.. 17

    C.    Factor 3: Whether The Issues Involve Difficult Or Unsettled Questions Of State Law
         That Would Be Better Addressed By A State Court .................................................. 18

    D.    Factor 4: The Presence Of A Related Proceeding Commenced In State Court ......... 18

    E.    Factor 5: The Existence Of A Jurisdictional Basis Other Than Section 1334 ........... 19

    F.    Factor 6: The Degree Of Relatedness Or Remoteness Of The Proceeding To The
         Main Bankruptcy Case ............................................................................ 19

    G.    Factor 7: The Substance Rather Than Form Of An Asserted "Core Proceeding" ..... 20

    H.    Factor 8: The Feasibility Of Severing State Law Claims From Core Bankruptcy
         Matters To Allow Judgments To Be Entered In State Court ..................................... 20

    I.    Factor 9: The Burden On The Federal Court's Docket ............................................. 22

    J.    Factor 10: The Likelihood That The Commencement Of The Proceeding In Federal
         Court Involves Forum Shopping By One Of The Parties .......................................... 22

    K.    Factor 11: The Existence Of A Right To A Jury Trial .............................................. 23

    L.    Factor 12: Whether Non-Debtor Parties Are Involved In The Proceeding ................ 24

IV.  EQUITABLE REMAND IS NOT WARRANTED ......................................................... 24

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  285 B.R. 127 (Bankr. S.D.N.Y. 2002) ................................................................23

*In re Automated Recovery Sys. of New Mexico, Inc.*,
  648 B.R. 392 (Bankr. D.N.M. 2023) ......................................................11, 13, 20

*In re Automated Recovery Sys. of New Mexico, Inc.*,
  No. 22-10225, 2022 WL 17184548 (Bankr. D.N.M. Nov. 22, 2022) ....................15

*In re Baltimore Motor Coach Co.*,
  103 B.R. 103 (D. Md. 1989) ................................................................................11

*In re Bay Vista of Virginia, Inc.*,
  394 B.R. 820 (Bankr. E.D. Va. 2008) ..................................................................24

*Beal v. U.S. Bank*,
  No. 10 Civ. 1401, 2010 WL 2541165 (S.D.N.Y. June 8, 2010) .............................9

*Blanton v. IMN Fin. Corp.*,
  260 B.R. 257, 265 (M.D.N.C. 2001) ....................................................................24

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, No. CIVA 07-1936
  RCL, 2008 WL 2690731 (D.D.C. July 2, 2008), *aff'd sub nom. Capitol Hill
  Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir.
  2009) .................................................................................................................19

*In re Carolina Sleep Shoppe, LLC*,
  No. 24-40057, 2025 WL 1122411 (Bankr. W.D.N.C. Apr. 15, 2025) ...................15

*Clawson v. FedEx Ground Package Sys., Inc.*,
  451 F. Supp. 2d 731 (D. Md. 2006) .....................................................................15

*In re DBSI, Inc.*,
  409 B.R. 720 (Bankr. D. Del. 2009) .....................................................................22

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
  534 B.R. 500 (S.D.N.Y. 2015).............................................................................19

*In re DPH Holdings Corp.*,
  No. 12 Civ. 9292 (PAE), 2013 WL 3948683 (S.D.N.Y. Aug. 1, 2013)................16

*Equal Rts. Ctr. v. Equity Residential*,
  483 F. Supp. 2d 482 (D. Md. 2007) ............................................................................ 20-21

*Fantle v. Fantle*,
  782 A.2d 377 (Md. Ct. Spec. App. 2001) ........................................................................ 18

*In re Foxwoods Hills Prop. Owners Ass'n, Inc.*,
  No. AP 20-80049-HB, 2021 WL 1812668 (Bankr. D.S.C. May 5, 2021) ............................ 15

*In re Freeway Foods of Greensboro, Inc.*,
  449 B.R. 860 (Bankr. M.D.N.C. 2011) .......................................................... 17, 19, 22, 24

*Greenwood Grp., Inc. v. L3Harris Techs. Integrated Sys., LP*
  No. CIV-24-849-G, 2025 WL 898078 (W.D. Okla. Mar. 24, 2025) ...................................... 12

*In re HRNC Dissolution Co.*,
  No. 02-14261, 2015 WL 5299468 (Bankr. E.D. Ky. Sept. 9, 2015), *aff'd sub
  nom. In re HNRC Dissolution Co.*, 585 B.R. 837 (B.A.P. 6th Cir. 2018), *aff'd*,
  761 F. App'x 553 (6th Cir. 2019) .................................................................................... 11

*In re Kaiser Grp. Int'l, Inc.*,
  421 B.R. 1 (Bankr. D.D.C. 2009) .................................................................................... 23

*KeyBank Nat'l Ass'n v. Franklin Advisors, Inc.*,
  600 B.R. 214 (S.D.N.Y. 2019) ........................................................................................ 18

*In re Lazar*,
  237 F.3d 967 (9th Cir. 2001) ...................................................................................... 9, 10

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
  487 B.R. 158 (S.D.N.Y. 2013) ........................................................................................ 16

*Luxford v. Dalkon Shield Claimant's Tr.*,
  No. CIV. A. K-96-1383, 1997 WL 1048338 (D. Md. June 24, 1997) .................................... 10

*MBNA Am. Bank., N.A. v. Hill*,
  436 F.3d 104 (2d Cir. 2006) ........................................................................................... 17

*MacLeod v. Dalkon Shield Claimants Tr.*,
  967 F. Supp 856 (D. Md. 1997) ...................................................................................... 16

*In re Merry-Go-Round Enters., Inc.*,
  222 B.R. 254 (D. Md. 1998) ........................................................................................... 20

*In re Morgantown Excavators, Inc.*,
  No. 12-1473, 2013 WL 4829165 (Bankr. N.D.W. Va. Sept. 9, 2013) .................................. 15

*In re Nat'l Small Bus. All., Inc.*,
 642 B.R. 345 (Bankr. D.D.C. 2022) ......................................................................20

*O'Bannon v. Friedman's, Inc.*,
 473 F. Supp. 2d 490 (D. Md. 2006) ................................................................ 12-13

*Power Plant Ent. Casino Resort Indiana, LLC v. Mangano*,
 484 B.R. 290 (Bankr. D. Md. 2012) ......................................................................15

*Rahl v. Bande*,
 316 B.R. 127 (S.D. N.Y. 2004)...............................................................................13

*In re River Ctr. Holdings, LLC*,
 288 B.R. 59 (Bankr. S.D.N.Y. 2003).....................................................................19

*Sabre Technologies, L.P. v. TSM Skyline Exhibits, Inc.*,
 2008 WL 4330897 (S.D. Tex. Sep. 18, 2008) .......................................................13

*Sago v. Wal-Mart Stores, Inc.*
 280 F. Supp. 2d 578 (S.D. Miss. 2003)..................................................................20

*Snead v. Bd. of Educ. of Prince George's Cnty.*,
 815 F. Supp. 2d 889 (D. Md. 2011) .......................................................................13

*In re Tronox*,
 603 B.R. 712 (Bankr. S.D.N.Y. 2019)....................................................................16

*Tubbs v. Agspring Mississippi Region, L.L.C.*,
 No. CV 3:21-03268, 2022 WL 1164803 (W.D. La. Apr. 4, 2022) *report and
 recommendation adopted*, No. CV 3:21-03268, 2022 WL 1164014 (W.D. La.
 Apr. 19, 2022)....................................................................................................13, 14

*In re TXNB Internal Case*,
 483 F.3d 292 (5th Cir. 2007) .................................................................................11

*In re Valley Media, Inc.*,
 289 B.R. 27 (Bankr. D. Del. 2003) .........................................................................21

*Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*,
 No. 3:18-CV-1144, 2018 WL 6977710 (M.D. Pa. Dec. 10, 2018) *report and
 recommendation adopted*, No. 3:18-CV-1144, 2019 WL 123896 (M.D. Pa.
 Jan. 7, 2019)......................................................................................................... 8-9

*In re WorldCom, Inc. Sec. Lit.*,
 293 B.R. 308 (S.D.N.Y. 2003)...............................................................................10

**Statutes & Rules**

11 U.S.C. § 101(51D) ....................................................................................................16

28 U.S.C. § 157(b) ........................................................................................................20

28 U.S.C. § 157(b)(2)(B) ..............................................................................................11

28 U.S.C. 1332 ..............................................................................................................12

28 U.S.C. § 1334(c)(2) ..................................................................................................10

28 U.S.C. § 1367(a) ......................................................................................................12

28 U.S.C. § 1412 .............................................................................................................9

Md. Rules 2-212 ............................................................................................................14

Defendants Erik D. Bolog ("Mr. Bolog"), Erik D. Bolog as Trustee of the JAREB Irrevocable Trust, dated October 11, 2021, Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc. ("Darnestown Road") (collectively, the "Bolog Parties") respectfully submit this memorandum of law in opposition to the Motion for Abstention and Remand (ECF No. 43 & 43-1, the "Remand Motion") filed by Claudia Engelhorn, Individually ("Ms. Engelhorn"), and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended ("Whitewater Trust"), and White Pearl, LLC ("White Pearl," and collectively with Ms. Engelhorn and Whitewater Trust, the "Engelhorn Parties").[1]

## **PRELIMINARY STATEMENT**

The Engelhorn Parties filed this action against a group of individuals and entities purportedly affiliated with Mr. Bolog, asserting a series of baseless claims all allegedly related to Mr. Bolog's services as an attorney with the law firm Whiteford, Taylor & Preston LLP ("WTP") for Ms. Engelhorn and trustee for her Whitewater Trust. One of those defendants—Swain Landing LaPlata JC LLC (the "Debtor" or "Swain Landing")—has since sought bankruptcy protection and exercised its right to remove the Civil Action to this Court. Because the Engelhorn Parties' claims against the Bolog Parties are double-knotted with those asserted against the Debtor, the Engelhorn Parties' Remand Motion should be denied in full. Indeed, the Engelhorn Parties assert that Mr. Bolog is personally liable for more than $20 million in connection with the Engelhorn Parties' investment in the Debtor and that Mr. Bolog and the Debtor are *jointly and severally liable* for

---

[1] References to "ECF No. __" refer to documents filed on this Court's docket. References to "D.C. Dkt. No. __" refer to documents file on the D.C. Bankruptcy Court's (defined below) main docket in Case No. 25-00184. References to "Adv. Pro. No. __" refer to documents filed in the D.C. Adversary Proceeding (defined below) in Adv. Proc. No. 25-10019. Citations to the Remand Motion herein are to the *Memorandum in Support of Motion for Abstention and Remand* (ECF No 43-1). Capitalized terms used herein but that are undefined shall have the meanings ascribed to them in the Remand Motion. Citations to Ex. ___ are to the Declaration of Douglas F. Gansler filed concurrently with this Opposition.

hundreds of thousands of dollars in damages. And while the Bolog Parties' vehemently deny any liability, should the Engelhorn Parties' claims succeed, the Bolog Parties seek full indemnity from Swain Landing in its pending D.C. Bankruptcy Proceeding—one of the largest claims against the estate.

As a threshold matter, the Court should exercise its discretion to grant the pending Motion to Transfer Venue (ECF No. 3, the "Transfer Motion"), and defer adjudication of the Remand Motion to the U.S. Bankruptcy Court for the District of Columbia (the "D.C. Bankruptcy Court"), where the Debtor's bankruptcy case is pending and is now subject to a motion to dismiss by the Engelhorn Parties. As shown in the Transfer Motion, the requirements for transfer under 28 U.S.C. § 1412 are met, and permitting the D.C. Bankruptcy Court to address the Remand Motion would promote judicial economy and coherent case management.

If the Court is inclined, however, to immediately consider the Remand Motion, it should be denied in full. *First*, mandatory abstention is inapplicable for multiple independently sufficient reasons. First and foremost, the Engelhorn Parties have asserted claims against the Debtor which render the entire Civil Action a "core proceeding," which alone defeats mandatory abstention. Moreover, mandatory abstention does not apply here for the additional (and also independently sufficient) reasons that (a) the Court has an independent basis for federal jurisdiction over the claims against the Bolog Parties (supplemental jurisdiction and diversity jurisdiction) and (b) the claims cannot be timely adjudicated in state court given the pace of the Debtor's bankruptcy proceeding and the discovery and trial schedule that had been ordered by the Circuit Court for Baltimore City, Maryland in the Civil Action before its removal to this Court.

*Second*, the Engelhorn Parties have failed to carry their burden with respect to permissive abstention. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction

given to them, and here, the factors considered by courts in addressing permissive abstention weigh heavily in favor of retaining jurisdiction. Chief among these considerations is efficiency. As the Engelhorn Parties acknowledge in their Second Amended Complaint (ECF No. 43-2, Ex. A to Remand Motion, the "<u>SAC</u>"), the claims in this action addresses Mr. Bolog's "reliability," "trustworthiness," and "ability to . . . oversee the monies of clients and third parties" as an attorney and trustee. (SAC ¶ 22.) The Engelhorn Parties' allegations will all fail on the merits, but for present purposes, the point is that they should fail together: the Engelhorn Parties brought these claims together as a single action because they allegedly constitute the same case or controversy.

*Finally*, for similar reasons, the Court should reject the Engelhorn Parties' argument that the Civil Action can be remanded on equitable grounds. Litigating all of the claims from the Civil Action in conjunction with the Debtor's bankruptcy proceedings will reduce the potential for inconsistent adjudications and promote party and judicial efficiency with respect to, among other things, discovery, the propriety of arbitration, and dispositive motions.

Accordingly, the Remand Motion should be denied in full.

## **BACKGROUND**

### A.    The Civil Action

The Engelhorn Parties assert a litany of false allegations in the Civil Action, which are vigorously contested by the Bolog Parties and have been, and will continue to be, shown to be highly inaccurate through the course of discovery. As the Engelhorn Parties' acknowledge, all their claims concerning the Bolog Parties hinge on the same underlying accusations concerning the honesty and integrity of Mr. Bolog in his professional relationship with his former client, Ms. Engelhorn, and whether he committed "fraud" and "embezzlement" (Remand Motion at 4) and engaged in a "scheme" in his dealings with Ms. Engelhorn. (*See* D.C. Dkt. No. 41 at 5.)

The Engelhorn Parties' claims against the Bolog Parties are for common law fraud and breach of fiduciary duty concerning Ms. Engelhorn's $10 million gift (the "Gift") to a trust she established for the benefit of Mr. Bolog and his family (the "JAREB Trust," defined below) and for allegedly failing to disclose purported relationships between Mr. Bolog and three entities—the Debtor, Darnestown Road, and Science Park—before Ms. Engelhorn's Whitewater Trust and/or affiliated entities invested in and/or purchased loans owed by these companies. Many of these claims are premised on Mr. Bolog's alleged violation of his duties as a trustee of the Whitewater Trust. All of the claims will fail. Nevertheless, for the purposes of responding to the Remand Motion, relevant portions of the SAC are presented here for the benefit of the Court.

Mr. Bolog successfully represented Ms. Engelhorn in a massive cross-border litigation in Switzerland, obtaining for her a $130 million tax-free settlement which she used to fund the Whitewater Trust. (SAC ¶¶ 25-26, ECF No. 43-3 ¶¶ 2-5.) Ms. Engelhorn asked Mr. Bolog to serve along with her as a co-trustee of the Whitewater Trust. (SAC ¶ 33, ECF No. 43-3 ¶¶ 8-9.) Thereafter, as documented in Ms. Engelhorn's notarized notice of intent to make the $10 million Gift (the "Notice of Gift"), Ms. Engelhorn sought to give Mr. Bolog a gift "for the benefit of you and your family . . . because of our relationship and my desire to share my good fortune with my very dear friend and his family." (Ex. B at 2.) Ms. Engelhorn's intentions were confirmed at the deposition of her former banker Ms. Jennifer Shaw (a Managing Director and Private Client Advisor with Bank of America), who stated that the Gift was a way for "Ms. Engelhorn to thank [Mr. Bolog] for standing by her during a very hard time when no one else really supported her." (Ex. D at 197:22-198:11.) To that end, Ms. Engelhorn initiated the Gift to be transferred to the JAREB Irrevocable Trust, dated October 11, 2021 (the "JAREB Trust"), and understood she had

-4-

made the Gift (*id*. at 197:8-19), with Ms. Engelhorn serving as the grantor and Mr. Bolog as trustee of the JAREB Trust. (SAC ¶ 35.)

But following a falling-out between Ms. Engelhorn and Mr. Bolog in July 2022—9 months after the Gift was effectuated—Ms. Engelhorn first expressed her giftor's remorse and sought its return. (ECF No. 43-3 ¶ 10.) Ms. Engelhorn's rationale for why the Gift was not properly effectuated has been a moving target. First, on July 6, 2022, she claimed she signed the Notice of Gift when she was "alcoholically induced." (Ex. A.) This assertion was directly contradicted by the deposition testimony of the notary public who stated that Ms. Engelhorn did not appear intoxicated or confused when she signed the Notice of Gift. (Ex. C at 31:8-16, 72:1-8.) Then, over a year later, in the summer of 2023, her then attorneys at the international law firm Dentons said she did not properly effectuate the Gift because she was incapable of understanding the complexities surrounding effectuation of the Gift due to her purported condition on the autism spectrum. (Ex. E at 2.) This explanation was equally absurd, as Ms. Engelhorn is a sophisticated business woman managing hundreds of millions of dollars in trust funds. And, regardless, it would still not be nearly *three full years* before Ms. Engelhorn initiated the Civil Action after effectuation of the Gift.

The SAC offers yet another story. According to Plaintiffs' latest fantastical account, Mr. Bolog visited Ms. Engelhorn on October 11, 2021, while she was vacationing at her home in Cape Cod, Massachusetts, where he allegedly told Ms. Engelhorn that he needed her to sign some unspecified "documents" and have them notarized. (SAC ¶ 36.) The SAC claims that Mr. Bolog "tricked" Ms. Engelhorn into signing the documents, "lull[ing] her into believing" that they concerned "routine matters." (*Id*. ¶ 36.) But as the notary public (Ms. Sarah Mayo) who witnessed Ms. Engelhorn sign the documents testified, Mr. Bolog "g[a]ve her [each] document and

explain[ed] what it was." (Ex. C at 31:20-21; 32:7-9; 47:15-17.) Bizarrely, Ms. Engelhorn also alleges that Mr. Bolog "directed [her] to sign numerous documents that were upside down" (SAC ¶ 36)—as if, even if true, Ms. Engelhorn was incapable of turning the documents right side up to read them before signing. Unsurprisingly, this did not occur. As Ms. Mayo made clear, the documents were presented to Ms. Engelhorn "[r]ight-side up" and she expressed no confusion about signing them. (Ex. C 32:24-33:5.) Indeed, Ms. Engelhorn's signature is right side up on the documents. (*See, e.g.*, Ex. B at 3.)

Among the documents signed by Ms. Engelhorn was the Notice of Gift, which memorializes Ms. Engelhorn's "intentions relating to making a gift to an irrevocable trust for the benefit of [Mr. Bolog] and [his] family." (Ex. B at 1.) Although this document was a mere two pages long and written in simple, plain English without "legalese," Ms. Engelhorn alleges that she did not read it and therefore did not know she was giving away $10 million. (SAC ¶ 36.) But, as Ms. Mayo noted at her deposition, Ms. Engelhorn "understood the documents and was signing them of her own free will." (Ex. C at 31:22-24; 34:5-22; 38:3-7, 12-15, 43:8-44:2, 45:16-46:16.)

In any event, the evidence will indisputably show that Ms. Engelhorn herself authorized the transfer of funds from her bank accounts to those of the JAREB Trust in phone calls with her bankers at Bank of America and acknowledged such transfer in writing as well. As Ms. Shaw confirmed, Bank of America followed its security protocols, including verbal confirmation by Ms. Engelhorn, in connection with the Gift and "[Ms. Engelhorn] approved the transfer." (Ex. D at 229:5-230:3.)

The Engelhorn Parties' allegations that this was "just the beginning" are equally frivolous. (*See* D.C. Dkt. No. 41 at 5.) Plaintiffs allege that Mr. Bolog omitted certain connections with

investment vehicles in which he caused the Engelhorn Parties to invest (*See* SAC ¶¶ 53, 65, 74.)

Specifically, the Engelhorn Parties allege that Mr. Bolog did not disclose: (1) his ownership

interest in Science Park when the Whitewater Trust acquired debt owed by Science Park (SAC ¶¶

46-53); (2) his interest in Darnestown Road when the Whitewater Trust invested $350,000 in

Darnestown Road (SAC ¶¶ 62-65); and (3) his alleged interest in the Debtor or connections to its

members when the Whitewater Trust invested $585,000 in the Debtor. (SAC ¶¶ 68-74.)[2] All of

these claims hinge on, and fail under, the terms of the Whitewater Trust Agreement and Mr.

Bolog's powers and authority as a trustee, as well as the actual facts.

### B.    Swain Landing Bankruptcy

On May 15, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under chapter

11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), in

the D.C. Bankruptcy Court. The Debtor's case is proceeding under subchapter V, Case No. 25-00184

(the "Bankruptcy Case"). In the petition, the Debtor listed the Civil Action in its Official Form 207

as a pending legal action. (*See* D.C. Dkt. No. 1 in Case No. 25-00184.)

On June 10, 2025, the Debtor removed the Civil Action to this Court. *See* ECF No. 1. The

same day, the Debtor moved to transfer the Civil Action to the D.C. Bankruptcy Court, which

motion is scheduled to be heard on August 11, 2025. *See* ECF No. 3 (the "Transfer Motion").

On June 24, 2025, Mr. Bolog filed an adversary proceeding against the Debtor in the D.C.

Bankruptcy Court (Adv. Proc. No. 25-10019, the "D.C. Adversary Proceeding"), asserting claims

for contribution and indemnification against the Debtor related to Claims V, VII, XIII, and XIV

asserted by the Engelhorn Parties in the Civil Action. As most relevant here, in Count V, the

---

[2] The Bolog Parties have argued in their pending Arbitration Petition that these claims are subject to mandatory arbitration under the Whitewater Trust Agreement.

Engelhorn Parties assert a claim against Mr. Bolog for common law fraud and breach of fiduciary duty for alleged misrepresentations and failure to disclose a prior relationship with the Debtor, and seek to hold Mr. Bolog liable for compensatory damages in excess of $75,000.00 and punitive damages of $20 million. (SAC ¶¶ 105-112, Claim V.)[3] In the remaining claims, the Engelhorn Parties have sued both Mr. Bolog and the Debtor for the judicial dissolution of the Debtor and distribution of its assets, including the return of a $585,000.00 investment made in the Debtor by the Engelhorn Parties, allegedly orchestrated by Mr. Bolog. (SAC ¶¶ 157-162, Claims XII-XIV.) The Whitewater Trust and White Pearl allege that Mr. Bolog and the Debtor are jointly and severally liable for the $585,000.00 investment, along with prejudgment interest and attorneys' fees and other professionals' fees and costs. (*Id*.) Notably, Mr. Bolog's indemnification and contributions claims against the Debtor would be one of, if not the biggest, claims in the Debtor's Bankruptcy Case.[4]

Meanwhile, the Debtor's Bankruptcy Case has moved forward since the Petition Date. On June 11, 2025, the U.S. Trustee held and completed the Meeting of Creditors pursuant to section 341 of the Bankruptcy Code; on June 30, 2025, the Bankruptcy Court authorized the Debtor to maintain its existing bank account (*see* D.C. Dkt. No. 20); and on July 7, 2025, the Bankruptcy Court authorized the Debtor's retention of bankruptcy counsel. (*See* D.C. Dkt. No. 23). The Debtor filed its plan of reorganization on July 21, 2025, and the D.C. Bankruptcy Court has scheduled a confirmation hearing for August 27, 2025. (*See* D.C. Dkt. Nos. 34-35 in Case No. 25-00184.)

---

[3] As the evidence will show, Mr. Bolog had no prior relationship with the Debtor and it was the Debtor's principal, Mr. Michael Postal, who first introduced Ms. Engelhorn to Mr. Bolog.

[4] *See* Adv. Pro. No. 1 & D.C. Dkt. No. 34.

## ARGUMENT

I. **THE COURT SHOULD TRANSFER THE CIVIL ACTION TO THE D.C. BANKRUPTCY COURT BEFORE ADJUDICATING THE REMAND MOTION**

A motion to transfer venue should be decided before a motion to remand, especially in the context of an adversary proceeding:

> [W]here a party's claims either arise out of or relate to a bankruptcy proceeding that is pending or was administered in another court, courts have generally found that motions to transfer venue should be considered before a motion for remand or dismissal.

*Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, No. 3:18-CV-1144, 2018 WL 6977710, at *3 (M.D. Pa. Dec. 10, 2018)*, report and recommendation adopted*, No. 3:18-CV-1144, 2019 WL 123896 (M.D. Pa. Jan. 7, 2019) (internal citations omitted).

Here, as shown in the Transfer Motion, transfer to the D.C. Bankruptcy Court is warranted under 28 U.S.C. § 1412 "in the interest of justice or for the convenience of the parties." While the Bolog Parties do not seek to repeat the merits of the Transfer Motion here, the Bolog Parties respectfully emphasize that transfer to the D.C. Bankruptcy Court will promote the most efficient resolution of the abstention and remand issues because the D.C. Bankruptcy Court already has jurisdiction over the Debtor's estate, proceedings in connection with the Bankruptcy Case, and the D.C. Adversary Proceeding. In addition, after the Transfer Motion was filed and fully briefed, the Engelhorn Parties filed a motion to dismiss the Debtor's Bankruptcy Case in the D.C. Bankruptcy Court. Thus, the D.C. Bankruptcy Court has, or will, become closely involved with the factual and legal issues comprising the Bankruptcy Case and should rule on the merits of the Remand Motion. *See Beal v. U.S. Bank*, No. 10 Civ. 1401, 2010 WL 2541165 at *4 (S.D.N.Y. June 8, 2010) (granting transfer to the court where the bankruptcy case was pending because "[t]he same and closely related claims have been asserted in that case, and defenses to those claims have been raised that implicate rulings of the Bankruptcy Court in the Bankruptcy Case").

## II.    <u>MANDATORY ABSTENTION IS INAPPLICABLE HERE</u>

Mandatory abstention is not applicable here for numerous reasons. As a threshold matter, while the Fourth Circuit has not ruled definitely on the issue, courts have held that mandatory abstention cannot apply to removed cases such as this. "[A]bstention can exist only where there is a parallel proceeding in state court." *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001) (internal citations omitted). Upon removal, the entire Civil Action was removed to this Court. "Accordingly, because there is no pending state proceeding," the statutes governing abstention, "are simply inapplicable to this case." *Id*. at 982.

Even if abstention were potentially applicable, a court must abstain from adjudicating a removed "proceeding" only when it is "based upon a state-law claim or cause of action which is related to a case under title 11, but which could not have been commenced in federal court absent jurisdiction under this section," 28 U.S.C. § 1334(c)(2), and "can be timely adjudicated" in state court. *Luxford v. Dalkon Shield Claimant's Tr.*, No. CIV. A. K-96-1383, 1997 WL 1048338, at *1 (D. Md. June 24, 1997); 28 U.S.C. § 1334(c)(2). A "party is not entitled to mandatory abstention" where, as here "it fails to prove any *one* of the statutory requirements." *In re WorldCom, Inc. Sec. Lit*., 293 B.R. 308, 331 (S.D.N.Y. 2003) (emphasis in original).

The Engelhorn Parties have not shown that any of the relevant elements are present here. *First*, the Civil Action is a "core proceeding" as it involves the allowance or disallowance of claims against the Debtor. *Second*, according to the SAC's allegations, this Court possesses an independent basis for jurisdiction beyond § 1334(b) through supplemental and diversity jurisdiction. *Third*, the Engelhorn Parties have not demonstrated that a Maryland state court could adjudicate the Civil Action timely in light of the fact that, among other things, the Debtor's Bankruptcy Case is a subchapter V proceeding and the Debtor has already filed its plan of

reorganization with a confirmation hearing scheduled for this month, while the Maryland state court set a trial to commence a year from now.

### A.   Mandatory Abstention Is Inappropriate Because This Is A "Core Proceeding"

Mandatory abstention is improper here because the Civil Action involves one or more claims against the Debtor and is therefore a "core proceeding" under 28 U.S.C. § 157(b)(2)(B).[5] The Engelhorn Parties do not seriously dispute that at least *some* of the claims in this proceeding— those seeking relief from the Debtor—are "core," nor could they. That tacit concession is fatal to their mandatory abstention argument, as "the term 'proceeding' refers to an entire adversary proceeding, not just a claim in the proceeding." *In re Automated Recovery Sys. of New Mexico, Inc.*, 648 B.R. 392, 401 (Bankr. D.N.M. 2023). As such, abstention applies "only if *none* of the multiple state law claims are core. If a proceeding has core and noncore claims, § 1334(c)(2) does not require abstention." *Id.* at 402 (emphasis added); *see also In re HRNC Dissolution Co.*, No. 02-14261, 2015 WL 5299468, at *5 (Bankr. E.D. Ky. Sept. 9, 2015), *aff'd sub nom. In re HNRC Dissolution Co.*, 585 B.R. 837 (B.A.P. 6th Cir. 2018), *aff'd*, 761 F. App'x 553 (6th Cir. 2019) ("mandatory abstention is inappropriate so long as some claims within an action are core").

Accordingly, the Engelhorn Parties' assertions that their "claims in the Civil Action do not arise under the Bankruptcy Code or in a case under the Bankruptcy Code" (Remand Motion at 3) and that "The Civil Action Is A Non-Core Proceeding" (Remand Motion at 7) are erroneous. The *proceeding* is core, and that fact defeats mandatory abstention.

---

[5] *See id.* ("core proceedings" include the "allowance or disallowance of claims against the estate"); *In re Baltimore Motor Coach Co.*, 103 B.R. 103, 107 (D. Md. 1989) (Mandatory abstention is not proper in the present context where the cause of action is a core proceeding."); *In re TXNB Internal Case*, 483 F.3d 292, 300–01 (5th Cir. 2007) (holding, in a dispute between two non-debtor parties, the "district court was correct not to remand . . . [because] claims against [debtors] would be core bankruptcy proceedings not entitled to mandatory abstention").

**B.   Mandatory Abstention Is Also Inappropriate Because The Court Has An Independent Basis For Jurisdiction**

Mandatory abstention is also improper for the independent reason that the Court may exercise diversity and supplemental jurisdiction over the claims against the non-debtor defendants.

To begin, the Civil Action could have originally been brought in federal court based on diversity of citizenship. *See* 28 U.S.C. § 1332. Under diversity jurisdiction, a federal court has jurisdiction of an action if "the matter in controversy exceeds the sum or value of $75,000" and "is between . . . citizens of different states." *Id*. Here, the Engelhorn Parties have alleged no less than $20 million in damages. (*See, e.g.*, SAC ¶ 83.) And according to their SAC, there is complete diversity between the Engelhorn Parties (Tennessee and Delaware) and the defendants in the Civil Action (Maryland and Washington, D.C.). (*See, e.g.*, SAC at 1-3).[6]

The Engelhorn Parties argue that the Civil Action could not have been *removed* on the basis of diversity jurisdiction because some of the defendants are citizens of Maryland. (Remand Motion at 14.) But whether one of the defendants could have removed the Civil Action has no bearing on whether the case could have been initiated in federal court; according to the SAC, it could, and the Engelhorn Parties should not be heard to argue otherwise.

Additionally, federal courts may exercise supplemental jurisdiction if other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). These types of claims "form part of the same case or controversy" when they "share a 'common nucleus of operative fact' such that it would ordinarily be expected that the plaintiff try the claims in the same proceeding" and "revolve around a central

---

[6] *See, e.g., Greenwood Grp., Inc. v. L3Harris Techs. Integrated Sys., LP*, No. CIV-24-849-G, 2025 WL 898078, at *2 (W.D. Okla. Mar. 24, 2025) (when addressing jurisdictional questions on a pretrial motion, "the allegations in the complaint are accepted as true to the extent they are uncontroverted").

fact pattern." *O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 492 (D. Md. 2006). "[S]upplemental jurisdiction is a doctrine of flexibility" that grants courts "wide latitude." *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 897 (D. Md. 2011),

As relevant here, a court may exercise supplemental jurisdiction over any non-core claims so long as the Civil Action contains "at least one core claim." *Tubbs v. Agspring Mississippi Region, L.L.C.*, No. CV 3:21-03268, 2022 WL 1164803, at *6 (W.D. La. Apr. 4, 2022), *report and recommendation adopted*, No. CV 3:21-03268, 2022 WL 1164014 (W.D. La. Apr. 19, 2022); *see also Rahl v. Bande*, 316 B.R. 127, 134-135 (S.D.N.Y. 2004) (mandatory abstention "is inapplicable here because . . . the Court has supplemental jurisdiction over the remaining claims").

Furthermore, bankruptcy courts apply a policy of "prevent[ing] duplicative, inefficient litigation." *Automated Recovery Systems*, 648 B.R. at 400. "The main benefit of supplemental jurisdiction is that it fosters convenience and efficiency. By allowing a single federal court to resolve all related claims and proceedings, the doctrine avoids wasteful duplicative litigation." *Id* (internal citations omitted). "If the district court cannot exercise supplemental jurisdiction over removed actions that were commenced before the bankruptcy case—which is typical—the result would be needless duplication of effort, waste of resources, and the possibility of inconsistent results." *Id*. at 400-401.

Two cases in particular demonstrate this point. In *Sabre Techs. v. TSM Skyline Exhibits, Inc.*, a state court action was filed against three defendants. 2008 WL 4330897, at *3 (S.D. Tex. Sep. 18, 2008). Subsequently, one of the defendants commenced a bankruptcy proceeding. After the state court action was removed, the plaintiff moved to abstain and remand under § 1334(c)(2). The district court denied the motion, ruling that it had core jurisdiction over some of plaintiff's claims and supplemental jurisdiction over the remainder following removal. *Id*. Similarly, in *Tubbs*

*v. Agspring Mississippi Region LLC*, state court litigation without independent federal jurisdiction was removed to bankruptcy court following the initiation of bankruptcy by one of the parties. 2022 WL 1164803, at *6 (W.D. La. April 4, 2022). Like the court in *Sabre Technologies*, the *Tubbs* court declined to abstain, citing its core and supplemental jurisdiction.

Here, in addition to possessing jurisdiction over the Civil Action pursuant to section 1334(b), this Court also has supplemental jurisdiction over the claims against the non-debtor defendants as all of the claims stem from a common nucleus of operative fact: Mr. Bolog's relationship with Ms. Engelhorn as her former attorney and trustee of her Whitewater Trust, and his honesty and integrity in his course of dealings with her and her affiliated entities. Indeed, in bringing these claims together in a single Civil Action, the Engelhorn Parties have acknowledged that their claims all "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." *See* Md. Rules 2-212.

### C.    The Civil Action Cannot Be Timely Adjudicated In State Court In Light Of The Pending Subchapter V Bankruptcy

Finally, mandatory abstention is also improper because the state court cannot timely adjudicate the Civil Action relative to the promptness of this Court or the D.C. Bankruptcy Court.[7]

Courts consider the following factors in determining whether a state court can timely adjudicate a proceeding: (i) "any backlog in the state court system"; (ii) "the status of bankruptcy proceedings"; (iii) "the complexity of the issues brought in the action"; and (iv) "whether the state court proceeding will lengthen the administration or liquidation of the estate." *In re Foxwood Hills*

---

[7] Of course, if the bankruptcy case is dismissed by the D.C. Bankruptcy Court, as the Engelhorn Parties have requested, then this timing factor will cease to be relevant—all the more reason to transfer this action to the D.C. Bankruptcy Court for consideration of the remand motion among other bankruptcy matters.

*Prop. Owners Ass'n, Inc.*, No. AP 20-80049-HB, 2021 WL 1812668, at *3 (Bankr. D.S.C. May 5, 2021) (internal quotations omitted).

Furthermore, "claims against Debtor are core and need to be adjudicated as soon as practicable in [a] subchapter V case." *In re Automated Recovery Sys.*, No. 22-10225, 2022 WL 17184548, at *7 (Bankr. D.N.M. Nov. 22, 2022); *see also In re Carolina Sleep Shoppe, LLC*, No. 24-40057, 2025 WL 1122411, at *1 (Bankr. W.D.N.C. Apr. 15, 2025) ("Subchapter V cases will move fast") (internal citations omitted); *In re Morgantown Excavators, Inc.*, No. 12-1473, 2013 WL 4829165, at *4 (Bankr. N.D.W. Va. Sept. 9, 2013) (bankruptcy courts may have the "ability to advance the ends of this proceeding faster than the State court").

Applying the factors,[8] mandatory abstention is unwarranted here. Under the scheduling order issued by the Circuit Court for Baltimore City, Maryland, before removal, a trial would not commence until June 15, 2026. (*See* Remand Motion Ex. C, ECF No. 43-4.) Meanwhile, the Debtor's subchapter V case demands swift resolution as the Debtor has already filed a plan of reorganization and the D.C. Bankruptcy Court has scheduled a confirmation hearing for August 27, 2025. (*See* D.C. Dkt. No. 35.) And the intertwined claims of fraud and breach of fiduciary duty directly impact the allowance of claims against the estate, which bankruptcy courts are best positioned to expedite without undue delay.

---

[8] The Engelhorn Parties erroneously cite *Power Plant Ent. Casino Resort Indiana, LLC v. Mangano*, 484 B.R. 290 (Bankr. D. Md. 2012) for the proposition that a "presumption" exists in favor of a finding that the state court can adjudicate the matter timely. *See* Remand Motion at 9. However, the *Power Plant Ent.* court first established four specific factors for evaluating timeliness and only found there to be a "presumption" because there was "a complete absence of evidence" regarding the factors. *Id*. The Bolog Parties address the relevant factors herein. Furthermore, by ignoring these factors in the Remand Motion, the Engelhorn Parties have effectively waived their argument on this element because they deprived the Bolog Parties of the opportunity to respond to any specific contentions advanced by the Engelhorn Parties. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

Additionally, the Engelhorn Parties assert claims against Mr. Bolog for which Mr. Bolog, in turn, has asserted an indemnification claim and contribution claim against the Debtor. *See generally* D.C. Adversary Proceeding. In the event Mr. Bolog's liability exceeds $3,424,000.00, Mr. Bolog's indemnification claims against the Debtor would render the Debtor ineligible for subchapter V relief. *See* 11 U.S.C. § 101(51D). This interconnected liability directly impacts administration of the Debtor's estate and the rights of all creditors. Thus, the Civil Action should be efficiently adjudicated in one forum—the D.C. Bankruptcy Court—rather than piecemeal across multiple courts.

## III.    **PERMISSIVE ABSTENTION IS INAPPROPRIATE**

The Court should reject the Engelhorn Parties' request for permissive abstention under 28 U.S.C. § 1334(c)(1). To begin with, as noted above in connection with mandatory abstention, permissive abstention is also inapplicable here because there is no pending state proceeding. *See Supra* at 9-10. Even if it were potentially available, "[c]ourts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' and may abstain only for a 'few extraordinary and narrow exception[s]." *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 164 (S.D.N.Y. 2013) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 813 (1976)). Accordingly, "[c]ourts must be sparing in their exercise of permissive abstention." *In re DPH Holdings Corp.*, No. 12 Civ. 9292 (PAE), 2013 WL 3948683, at *11 (S.D.N.Y. Aug. 1, 2013) (internal citations and quotations omitted). The burden is on the Engelhorn Parties to show that permissive abstention is appropriate. *See In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019).

As shown below, the Engelhorn Parties have not made such a showing with respect to any of the twelve factors considered by courts when analyzing a motion for permissive abstention. *See MacLeod v. Dalkon Shield Claimants Tr.*, 967 F. Supp. 856, 858 (D. Md. 1997).

A.    **Factor 1: Efficiency In The Administration Of The Debtor's Estate**

The Bankruptcy Case and the D.C. Adversary Proceeding are already proceeding in the

D.C. Bankruptcy Court. It would be more efficient for one court to adjudicate *all* the issues relevant

to the Debtor's estate, including the Civil Action, and have the parties submit briefing, conduct

discovery, and present oral argument before one court. *See In re Freeway Foods of Greensboro,*

*Inc.*, 449 B.R. 860, 880 (Bankr. M.D.N.C. 2011) ("It is more efficient if only one court is required

to familiarize itself with the voluminous record that is sure to evolve in these cases.").[9]

B.    **Factor 2: The Extent To Which State Issues Predominate Over Bankruptcy**
      **Issues**

It is of no moment that the Engelhorn Parties' claims are rooted in state law because

"bankruptcy courts address matters of state law regularly." *In re Freeway Foods of Greensboro,*

*Inc.*, 449 B.R. at 881. Regardless, the Civil Action is a "core proceeding," which gives rise to

issues of federal bankruptcy law—such as the Debtor's eligibility to proceed under subchapter V

and the interplay between the FAA and the Bankruptcy Code—that should be adjudicated by a

bankruptcy court.

Additionally, the Bolog Parties have moved to compel arbitration of the claims related to

the Debtor, Science Park, and Darnestown Road under the Whitewater Trust Agreement, an issue

governed by the Federal Arbitration Act, not state law.[10] Thus, the court may be called upon to

conduct a "particularized inquiry into the nature of the claim and the facts of the specific

bankruptcy" and whether arbitrating the Whitewater Trust Claims would conflict with the goals of

---

[9] Although the Bolog Parties have argued that certain claims should be arbitrated, the relevant point here is that the decision whether to compel arbitration should be made by one court as to all such claims.

[10] Plaintiffs have argued (incorrectly) that the Whitewater Trust Agreement containing the arbitration provision is not an enforceable contract under Virginia law, but a Maryland state court is no better positioned to address questions of Virginia law than is a federal bankruptcy court.

the Bankruptcy Code. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). That

analysis likewise turns on federal, not state, law.

### C. Factor 3: Whether The Issues Involve Difficult Or Unsettled Questions Of State Law That Would Be Better Addressed By A State Court

None of the Engelhorn Parties' claims concern difficult or unsettled questions of Maryland

law. This consideration "'significantly undercuts the degree to which the state law factor weighs

in favor of remand.'" *KeyBank Nat'l Ass'n v. Franklin Advisors, Inc.*, 600 B.R. 214, 233 (S.D.N.Y.

2019). In arguing that there are outstanding issues of state law, the Engelhorn Parties' point to the

application of the Maryland Attorneys' Rules of Professional Conduct and Maryland's common

law. (Remand Motion at 12-13.) But the Engelhorn Parties have not articulated how either is

"difficult" or "unsettled." Instead, they posit that "[s]tate law and state statutes are best interpreted

by state courts" (Remand Motion at 13) without addressing what interpretation is necessary that

could not be done based on existing case law and would necessarily need to be conducted in

Maryland state court.

In reality, the factors that must be considered in adjudicating the Civil Action are well

established. The terms of the JAREB Irrevocable Trust Agreement and Whitewater Trust

Agreement are clear. And the elements of a gift under Maryland law are clear as well, as is the fact

that each of the elements has been satisfied here with respect to the Gift. *See Fantle v. Fantle*, 782

A.2d 377, 383 (Md. Ct. Spec. App. 2001) (elements of a gift are (1) donative intent, (2) delivery,

and (3) acceptance).

### D. Factor 4: The Presence Of A Related Proceeding Commenced In State Court

As the Engelhorn Parties acknowledge, "[t]here is currently no State Court action

pending." (Remand Motion at 13.) The Bolog Parties agree. Even more so, proceedings related to

the Civil Action are currently pending in the D.C. Bankruptcy Court, including the Debtor's

-18-

Bankruptcy Case and Mr. Bolog's D.C. Adversary Proceeding and proof of claim against the Debtor. Accordingly, there is a federal presumption that core proceedings should proceed together in the bankruptcy court. *See Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 521 (S.D.N.Y. 2015) ("the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy").

### E.    Factor 5: The Existence Of A Jurisdictional Basis Other Than Section 1334

As set forth above, there is a jurisdictional basis other than under section 1334 in the form of supplemental and diversity jurisdiction. *See Supra* II.B.

### F.    Factor 6: The Degree Of Relatedness Or Remoteness Of The Proceeding To The Main Bankruptcy Case

This case and the Debtor's bankruptcy are "inextricably linked." *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, No. CIVA 07-1936 RCL, 2008 WL 2690731, at *6 (D.D.C. July 2, 2008), *aff'd sub nom. Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009).

To begin with, the issues in the Civil Action are inextricably intertwined with the Engelhorn Parties' claims against the Debtor. *See Supra* 13-15. The outcome of the Civil Action will impact the liabilities of the Debtor's estate, most notably by virtue of the indemnity and contribution claim Mr. Bolog has asserted against the Debtor. Indeed, courts will find this factor weighs against abstention or remand where "the outcome of this adversary proceeding may have an effect on the liabilities of [the debtor's] estate, by reason of indemnity claims." *In re River Ctr. Holdings, LLC*, 288 B.R. 59, 70 (Bankr. S.D.N.Y. 2003). This is particularly applicable where, as here, the party opposing remand or abstention "is one of the largest . . . creditors in the main bankruptcy case" and "has filed a proof of claim." *In re Freeway Foods of Greensboro, Inc*., 449 B.R. at 881.

Additionally, the amount of Mr. Bolog's indemnity claims (if any) will determine whether the Debtor is eligible to proceed under subchapter V. If Mr. Bolog's claims against Swain Landing exceed $3,424,000, Swain Landing cannot proceed as a subchapter V debtor and must dismiss its case or convert to chapter 11, which certainly meets the modest threshold of merely "impacting" the bankruptcy estate—especially when this Court considers the material differences between subchapter V and chapter 11 proceedings.[11]

### G. Factor 7: The Substance Rather Than Form Of An Asserted "Core Proceeding"

The Civil Action is a core proceeding without elevating form over substance. "Core proceedings include, but are not limited to," "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b); *see Automated Recovery Sys.*, 648 B.R. at 401. Here, the Civil Action is plainly a core proceeding because it includes claims asserted by the Engelhorn Parties against the Debtor's estate which, as shown above, renders the entire Civil Action a "core proceeding."[12]

### H. Factor 8: The Feasibility Of Severing State Law Claims From Core Bankruptcy Matters To Allow Judgments To Be Entered In State Court

It would not be feasible or efficient to sever the Engelhorn Parties' claims against the Bolog Parties—or those against any of the Defendants—from the claims against the Debtor.

At the threshold, the Engelhorn Parties' argument that the "Non-Swain Claims" should be severed from the "Swain Claims" (Remand Motion at 15) is irrelevant because the Engelhorn Parties have not actually *moved* for severance of any claims.

---

[11] *See In re Nat'l Small Bus. All., Inc.*, 642 B.R. 345, 348 (Bankr. D.D.C. 2022) ("the treatment and requirements under chapter 11 and Subchapter V are materially different").

[12] The Engelhorn Parties' cited cases are unavailing as neither relied on this factor in ordering remand. In *Sago v. Wal-Mart Stores, Inc.*, the court ordered remand because the plaintiffs' claims were not related to *plaintiffs'* own bankruptcy proceeding. 280 F. Supp. 2d 578, 587 (S.D. Miss. 2003). And in *In re Merry-Go-Round Enters., Inc.*, the Maryland Bankruptcy Court remanded because it was then "burdened with one of the heaviest dockets." 222 B.R. 254, 259 (D. Md. 1998). The Engelhorn Parties have propounded no such argument in the Remand Motion.

Even if the Engelhorn Parties had sought severance, "[c]ourts have recognized a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed." *Equal Rts. Ctr. v. Equity Residential,* 483 F. Supp. 2d 482, 489 (D. Md. 2007). In determining whether severance is proper, courts consider: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *Id*. Furthermore, even when severance may be feasible, permissive abstention may still be "unadvisable as it would create judicial efficiency." *In re Valley Media, Inc.*, 289 B.R. 27, 32 (Bankr. D. Del. 2003).

Here, each of the four factors weighs against severance. *First*, the issues are not "significantly different from one another," instead they all hinge on Mr. Bolog's honesty and integrity as counsel to Ms. Engelhorn and trustee to her Whitewater Trust. As the Engelhorn Parties themselves have argued, their allegations in the Civil Action against Mr. Bolog are all part of one "scheme [by Mr. Bolog] against Ms. Engelhorn." (*See* D.C. Dkt. No. 41 at 5.) *Second*, there will likely be overlapping witnesses addressing all of the claims in the Civil Action, with the main testimony likely coming from Mr. Bolog and Ms. Engelhorn. *Third*, the Bolog Parties would be prejudiced if the claims were severed because they would need to present briefing, conduct discovery, sit for and conduct depositions, and possibly testify at trial in multiple different proceedings on overlapping factual and legal issues. *Fourth*, the Engelhorn Parties have not argued they will be prejudiced if severance does not take place, nor can they; if remand is denied, the Civil Action will be litigated in federal bankruptcy court in Maryland or D.C. and none of their procedural or discovery rights will be impaired.

Thus, even if the Engelhorn Parties had moved for severance (which they have not), under traditional severance analysis, a court would not sever the claims in the Civil Action between the claims against the Debtor and against the non-debtor defendants. Rather, adjudicating the entire the Civil Action "in one court will reduce the potential for inconsistent adjudications, duplicative discovery, and duplicative motions, and will allow for more efficient administration of the Debtor's estate than would be possible if these actions were allowed to proceed in different courts." *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. at 880.

I.      **Factor 9: The Burden On The Federal Court's Docket**

There is no evidence that the federal court's docket—whether this Court or in the D.C. Bankruptcy Court—would be burdened by the Civil Action. The Engelhorn Parties do not argue otherwise, instead merely noting that the Maryland Circuit Court previously entered a scheduling order for the Civil Action. (Remand Motion at 15.) That may be true, but it is irrelevant to whether *this* Court is burdened by the Civil Action. To the contrary, the D.C. Bankruptcy Court's docket would likely be burdened if it is handcuffed from timely adjudicating core proceedings such as the Civil Action that have a global effect on administration of the Debtor's bankruptcy estate.

J.      **Factor 10: The Likelihood That The Commencement Of The Proceeding In Federal Court Involves Forum Shopping By One Of The Parties**

The Engelhorn Parties have provided no evidence that the Debtor has engaged in forum shopping, nor have they identified any delay or prejudice caused by removal, nor have they cited any cases in support of their position.

"[T]here is no indication" of "forum shopping" where, as here, the main bankruptcy case was filed in an appropriate venue and the debtor seeks to litigate the adversary proceeding in the same venue as the main bankruptcy case. *See In re DBSI, Inc.*, 409 B.R. 720, 730 (Bankr. D. Del. 2009). Here, Washington D.C. is a proper bankruptcy venue as it is where the Debtor maintains

its principal place of business and the Debtor seeks to adjudicate the Civil Action in the D.C.

Bankruptcy Court. Thus, there is no threat of forum shopping.

Moreover, the Bankruptcy Case is serving a legitimate reorganization purpose: to avoid a

loss of the Debtor's real estate asset, using the allowances of Section 547 of the Bankruptcy Code.

(*See* D.C. Dkt. No. 31 at 1.) The Debtor has filed a plan of reorganization on which a confirmation

hearing is scheduled for the end of August. A debtor is entitled to have core proceedings heard by

the federal court and the way for that process to commence was to remove the Civil Action.[13]

**K.       Factor 11: The Existence Of A Right To A Jury Trial**

The right to a jury trial does not weigh in favor of abstention. As the Engelhorn Parties

admit, "not all of [their] claims would be subject to a jury trial." (Remand Motion at 17.)

Regardless, judicial efficiency and economy would dictate that a bankruptcy court "complete the

pretrial matters in this case." *In re Kaiser Grp. Int'l, Inc.*, 421 B.R. 1, 18 (Bankr. D.D.C. 2009).

This includes discovery, adjudicating the Bolog Parties' Arbitration Petition, and addressing

motions for summary judgment. Then, if some of the claims in the Civil Action were to proceed

to trial, "the district court can withdraw the reference to the bankruptcy court and conduct a jury

trial." *Id*. Accordingly, this factor is "not [given] very great weight" because such claims "could

he heard, if necessary by a district judge" and "the most important concerns are that [the Engelhorn

Parties'] claims against all defendants be litigated together and in a coordinated way." *In re

Adelphia Commc'ns Corp.*, 285 B.R. 127, 147 (Bankr. S.D.N.Y. 2002).

---

[13] The Engelhorn Parties' only purported evidence of forum shopping—a vague reference to an unrelated
proceeding initiated against both Messrs. Bolog and Postal—is irrelevant (and prejudicial) as it has no
relevance here and was resolved over a decade ago with both Messrs. Bolog and Postal being dismissed at
the initial motion-to-dismiss stage.

L.    **Factor 12: Whether Non-Debtor Parties Are Involved In The Proceeding**

Non-debtor parties are involved in the proceeding, but the claims against them are intertwined with those against the Debtor. The Engelhorn Parties have asserted multiple claims against the Debtor—with factual allegations and legal grounds similar to those against other defendants—and Mr. Bolog has asserted claims against the Debtor in its bankruptcy proceeding for indemnification and contribution. The claims and issues against non-debtor parties and the Debtor are intertwined with one another and would be best adjudicated within one forum. Regardless, even where the "defendants are non-debtor parties," and "have no claim to assert against the debtor," courts may deny permissive abstention. *In re Bay Vista of Virginia, Inc.*, 394 B.R. 820, 845 (Bankr. E.D. Va. 2008).

## IV.    <u>EQUITABLE REMAND IS NOT WARRANTED</u>

As the Engelhorn Parties argue, the same factors used by a court to address permissive abstention apply to equitable remand. *See* Remand Motion 17; *see also Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001) ("[V]irtually the same (if not identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of remand under § 1452(b).") (internal quotations omitted). Because the Engelhorn Parties have not shown permissive abstention is warranted, they fail in their pursuit of equitable remand as well.

As set forth above, it would not be efficient to litigate the Civil Action in the Maryland Circuit Court while the D.C. Adversary Proceeding and the Bankruptcy Case move forward in the D.C. Bankruptcy Court. The Civil Action and the D.C. Adversary Proceeding both involve the same operative set facts. *See In re Freeway Foods of Greensboro, Inc.*, 449 B.R. at 880. Furthermore, the Engelhorn Parties' assertion that principles of comity "strongly favor" remand because "but for" the Debtor's bankruptcy proceeding the Civil Action would have remained in

Maryland state court (*see* Remand Motion at 18) is unpersuasive. Such an argument would call into question removal of all state cases following a party's bankruptcy petition. Where, as here, the Civil Action has not "progressed much" and does not "involve novel state law issues," issues of comity are not implicated. *In re Freeway Foods of Greensboro, Inc*., 449 B.R. at 888. Nor have the Engelhorn Parties shown they are prejudiced as their assertion that they will incur "added expense" (Remand Motion at 18) is speculative and unsupported by any evidence; such a bald and conclusory assertion is not sufficient to show prejudice. *See In re Freeway Foods of Greensboro, Inc*., 449 B.R. at 888. Additionally, litigating all of the claims from the Civil Action and the D.C. Adversary Proceeding with respect to, among other things, discovery matters, the propriety of arbitration, and liability "will reduce the potential for inconsistent adjudications." *Id*. at 880. Lastly, and for the same reasons articulated in connection with permissive abstention (*see supra* III.H) the claims in the Civil Action, rooted in straightforward allegations of fraud and breach of fiduciary duty, present neither novel questions of state law nor intricate complexities that demand specialized expertise beyond the capabilities of this Court or the D.C. Bankruptcy Court.

As with permissive abstention, the Court should not grant remand on equitable grounds.

## <u>CONCLUSION</u>

For the foregoing reasons, the Engelhorn Parties' Remand Motion should be denied.

Dated:    August 7, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

By: */s/ Matthew M. Karlan*
Matthew M. Karlan
(signed by Douglas F. Gansler with permission of
Matthew M. Karlan)
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Matthew.Karlan@cwt.com
Telephone: (212) 504-6000

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2025, a copy of the foregoing was

served on counsel of record electronically via CM/ECF, and remaining parties by first class mail.

**Counsel of Record Served via CM/ECF:**
Sam J. Alberts (sam.alberts@dentons.com)
**Dentons US LLP**
1900 K St NW
Washington, DC 20006

Wes P. Henderson (wph@hendersonlawllc.com)
Patrick Gardiner (patrick.hendersonlawllc.com)
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly (jconnolly@zuckerman.com)
William J. Murphy (wmurphy@zuckerman.com)
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice Belmont VerStandig (mac@mbvesq.com)
**The VerStandig Law Firm, LLC**
9812 Falls Road #114-160
Potomac, MD 20854
*Counsel for Defendant Swain Landing LaPlata JC, LLC*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,*
*Individually and as Trustee of the JAREB*
*Irrevocable Trust Agreement dated*
*October 11, 2021; Darnestown Road,*
*Inc.; and Science Park Associates, LLC*