Wes P. Henderson, Esq. (DC Bar #502935)
Patrick D. Gardiner, Esq. (DC Bar #1630864)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
Email: wph@hendersonlawllc.com
Email:  patrick@hendersonlawllc.com

Sam J. Alberts (DC Bar # 443260)
David F. Cook (DC Bar #1708239)
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 408-7004
Email: sam.alberts@dentons.com

*Co-Counsel for Claudia Engelhorn,
Individually and on behalf of the Whitewater Revocable Trust,
and White Pearl, LLC*

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>        Debtor. | Chapter 11 Case No. 24-184-ELG<br>Adv. Proc. No. 25-10044-ELG<br>United States Bankruptcy Court<br>for the District of Columbia |
| Claudia Engelhorn, *et al*.<br><br>        Plaintiffs,<br><br>v.<br><br>Erik D. Bolog, *et al*.<br><br>        Defendants. | |

### PLAINTIFFS' RENEWED MOTION FOR REMAND AND/OR ABSTENTION

Plaintiffs and Counter-Defendants, Claudia Engelhorn, individually and as Trustee for the Whitewater Revocable Trust, as amended, and White Pearl, LLC (collectively "Plaintiffs"), hereby file this Renewed Motion for Remand and/or Abstention (the "Motion"), and in support thereof respectfully state as follows:

## INTRODUCTION

Pending before this Court is Plaintiffs' Motion for Leave to File an Amended Complaint and filing of the Third Amended Complaint ("TAC") [Doc.#39] (the "Motion to Amend"). If the Motion to Amend is granted, the Civil Action (as defined below), which had been previously amended to dismiss the Debtor as a defendant, will be further narrowed in order to dismiss all claims in any way based upon Swand Landing, as well as Science Park, and Darnestown Road. In turn, this Honorable Court should lack subject matter jurisdiction over the remaining claims and counterclaims in the Civil Action, all of which are based upon Maryland state law. Accordingly, remand will not only be appropriate – it should be required. However, even if jurisdiction were somehow found to exist, compelling grounds for permissive abstention and equitable remand mandate remanding this matter to the Circuit Court for Baltimore City, Maryland.

## BACKGROUND

In 2024, Plaintiffs filed a twenty-count complaint for damages and other relief based principally on claims of legal malpractice and fraud in the Circuit Court for Baltimore City, Maryland, designated as Case No.: C-24-cv-24-002631 (the "Civil Action"). A copy of the operative Second Amended Complaint is attached hereto as Exhibit A. The Civil Action arises from the conduct of Erik D. Bolog ("Mr. Bolog"), who was Claudia Engelhorn's former attorney, trustee, confidant, and advisor. It is alleged that, while Mr. Bolog was employed by Whiteford, Taylor & Preston, LLP ("WTP") and acting within the course and scope of his employment with

WTP, he engaged in multiple instances of intentional misconduct wherein he used the Plaintiffs' assets to enrich himself, his business ventures, and his friends, and billed the Plaintiffs for his and other WTP employees' time in engaging in said misconduct.

The SAC alleged four categories of misconduct against Mr. Bolog and the other Defendants: (1) a fraudulent $10 Million "Gift"[1] to the JAREB Irrevocable Trust;[2] (2) embezzlement to save Mr. Bolog and Michael Postal's investment in the Science Park Property; (3) fraud and embezzlement into Mr. Bolog's company, Darnestown Road, Inc.; and (4) embezzlement and fraud related to the Debtor, Swain Landing LaPlata JC, LLC. The Debtor, Swain Landing LaPlata JC, LLC, was a named party in only three of the twenty counts (Counts XI, XIII, and XIV).

On March 24, 2025, Defendants Bolog, Science Park Associates, LLC, and Darnestown Road, Inc., filed Counterclaims against Ms. Engelhorn and the Whitewater Trust. *See* Exhibit B. The Counter-Plaintiffs assert claims for Defamation, Abuse of Process, Indemnification, and Breach of Contract. *See* Counterclaim, generally. Creditor White Pearl, LLC, is not a party to any of the Counterclaims. *Id.* Debtor Swain Landing is likewise not a party to the Counterclaims. *Id.* Counter-Plaintiffs specifically assert that they "had no involvement with the Swain Landing investment…" *See* Exhibit B ¶51. These will be referred to collectively as the "Counterclaims."

On May 15, 2025, Swain Landing LaPlata JC, LLC (the "Debtor"), a Maryland delisted entity, filed for bankruptcy protection (the "DC Bankruptcy Case") under subchapter V of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia (the "Court").

---

[1] Throughout this paper Movants refer to the $10 Million transfer as a "Gift" as a mere shorthand, and they do not concede that the transfer was in fact a valid gift.

[2] Mr. Bolog was the primary beneficiary of the JAREB Trust.

On June 10, 2025, the Debtor removed the entirety of the Civil Action to the United States Bankruptcy Court for the District of Maryland and later sought transfer to this Court. While the case was still pending in the United States Bankruptcy Court for the District of Maryland, Plaintiffs filed a Motion for Abstention and Remand on or about July 10, 2025 [Doc. #43].   On August 7, 2025, Plaintiffs filed Proofs of Claim in the main Chapter 11 Proceeding, [Claims #2-1, 3-1, 4-1, and 5-1]. Therefore, since there was no longer any purpose to pursuing the civil claims against the Debtor, on August 8, 2025, the Plaintiffs voluntarily dismissed the Debtor from the case. [Doc. #58].

On June 24, 2025, Erik Bolog, individually, asserted an adversary proceeding against the Debtor in this Court. *See Erik D. Bolog v. Swain Landing LaPlata JC, LLC*, Case No.: 25-10019-ELG.  In that action, Mr. Bolog asserts two causes of action: Count I – Contribution and Count II- Indemnification. (the "Bolog v. Swain Claims"). A copy of the Complaint in connection with the Bolog v. Swain Claims is attached hereto as Exhibit C.

On October 10, 2025, this Court conducted a hearing on Plaintiffs' Motion for Abstention and Remand. At that time, this Court declined to permissively abstain or equitably remand this action to the Circuit Court and found that the remaining non-Swain claims were sufficiently "related to" Debtor's Chapter 11 Bankruptcy to grant the Court jurisdiction. On October 30, 2025, Plaintiffs filed a Motion for Leave to Amend Complaint and to File a Third Amended Complaint. [Doc. # 79]. The proposed TAC seeks to simplify and streamline this case by focusing on the alleged $10 Million gift. The proposed TAC is attached hereto as Exhibit D.  While Plaintiffs have meritorious claims against the Debtor and the Defendants stemming from the Swain transfer, the Science Park transfer, and the Darnestown Road transfer, they seek to simplify this action and focus on the largest claim.

4

## ARGUMENT

**A. Upon granting the Motion to Amend and the Filing of the TAC, the Bankruptcy Court should not have jurisdiction over the remaining Claims in the Civil Action.**

While the Court has not yet ruled on the Plaintiffs' Motion for Leave to File an Amended Complaint, if leave is granted, the Court should thereupon reevaluate subject matter jurisdiction. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025). That is because the United States Supreme Court has held that jurisdiction follows the operative complaint – not the original pleading. *Id*. at 37-38.

In *Royal Canin*, the Court's analysis concerned removal under 28 U.S.C.S. § 1441 and supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367. The Court explained at length that even if federal courts have jurisdiction at the time of removal, subsequent amendments that delete federal questions, or destroy diversity, strip the courts of jurisdiction and require remand. *Id*. at 35-37. The reverse would likewise be true if the federal court lacked subject-matter jurisdiction over a claim at the time of removal, but a plaintiff amends the complaint to add diverse parties or to invoke federal-question jurisdiction; it is the amended complaint that controls. *Id*. "In short, the rule in original [jurisdiction] cases that jurisdiction follows the amended (i.e., now operative) pleading applies across the board." *Id*. at 37 (bracketed text added) (parentheticals in original).

Bankruptcy Courts, before *Royal Canin*, would frequently rely on *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U. S. 426, 428-429(1991) (per curiam) when asserting that the bankruptcy court's jurisdictional analysis was limited to the facts and pleadings as they existed at the time the case was commenced. *See e.g., PNC Bank, N.A. v. Rolsafe Int'l, LLC (In re Rolsafe Int'l, LLC)*, 477 B.R. 884, 895 (Bankr. M.D. Fla. 2012) (finding that a court's "related to" jurisdiction is tested at the time the case is commenced and subsequent actions do not affect it) (citing *Freeport-McMoRan Inc.*); *Empire State Bldg. Co., L.L.C. v. N.Y. Skyline, Inc. (In re N.Y. Skyline, Inc.)*, 471

B.R. 69, 78 (Bankr. S.D.N.Y. 2012) (same).   However, the Supreme Court, in *Royal Canin,* distinguished *Freeport-McMoRan Inc*., noting that the rule that the operative complaint controls jurisdiction "does not apply when an amendment merely substitutes a successor-in-interest for the first-named defendant. In that situation, the former steps into the latter's shoes, and the diversity jurisdiction founded on the initial complaint thus continues." *Royal Canin*, 604 U.S. 22, at 37 n.6 (citing *Freeport-McMoRan Inc*.). Thus, the principles underlying *Royal Canin* would likewise apply to this Court's assessment of its own jurisdiction following an amendment to the Plaintiffs' Complaint.

This Court may only hear and determine the remaining claims if subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334. "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.S. § 1334 (b). A bankruptcy court derives its jurisdiction from the jurisdiction of the district court and may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11... and may enter appropriate orders and judgments" in such cases and proceedings. 28 U.S.C. § 157(b) (emphasis added); *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007).  "Core proceedings" are proceedings that either *arise under* the Bankruptcy Code or *arise in* a case under the Bankruptcy Code. *Porter-Hayden Co. v. First State Mgmt. Group, Inc.* (*In re Porter Hayden Co.*), 304 B.R. 725, 730 n.3 (Bankr. D. Md. 2004); 1 COLLIER ON BANKRUPTCY ¶ 3.02[2] at 3-32 (15th ed. 2008).

Since it does not appear to be disputed that the claims in the TAC and Counterclaim do not "arise under title 11" nor "arise in a case under title 11," the issue of remand will be governed by whether the remaining claims are "related to" a case under title 11. While "related to" jurisdiction is broad, it is not unlimited. "In order for a bankruptcy court to have 'related to' jurisdiction over

6

a matter under 28 U.S.C. § 1334(b), the court must inquire whether the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Enovational Corp. v. Md.* (*In re Enovational Corp.*), No. 22-00055-ELG, 2023 Bankr. LEXIS 1878, at *10 (Bankr. D.D.C. July 27, 2023) (*quoting Pacor v. Higgins* (*In re Pacor*), 743 F.2d 984, 994 (3d Cir. 1984) (internal quotations omitted) (bracketing in original). "A matter is 'related to a case under title 11,' 28 U.S.C. § 1334(b), if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Capitol Hill Grp. v. DCA Capitol Hill LTAC, LLC* (*In re Specialty Hosp. of Wash., LLC*), 580 B.R. 302, 314 (D.D.C. 2017) (quoting *Pacor*). "If a particular claim does not relate to the debtor's bankruptcy case, *i.e.*, does not affect the administration of the estate, it does not fall within § 1334 no matter how close its connection to the facts underlying a particular adversary proceeding." *Herman v. Sonier (In re Herman)*, Nos. 19-0071 (Chapter 11), 19-10028, 2020 Bankr. LEXIS 1751, at *4-5 (Bankr. D.D.C. July 3, 2020) (quoting *Premium of America, LLC v. Sanchez (In re Premium Escrow Servs., Inc.)*, 342 B.R. 390, 406 (Bankr. D.D.C. 2006).

While claims may be factually related to a Debtor in bankruptcy, "related to" jurisdiction turns on whether the outcome of the TAC could alter the debtor's rights, liabilities, and options, etc. *See e.g.*, *Premium of America, LLC v. Sanchez (In re Premium Escrow Servs., Inc.)*, 342 B.R. 390, 406 (Bankr. D.D.C. 2006) (where Debtor and non-debtor plaintiff asserted an adversary proceeding against defendant for defamation, Court lacked "related to" jurisdiction as to non-Debtor plaintiff's claims because outcome would not impact the debtor's estate.); *EastJun Coop., LLC v. Spike Club LLC (In re Wilson)*, Nos. 12-32715-WIL, 13-10019, 2013 Bankr. LEXIS 2983, at *2 (Bankr. D.D.C. July 24, 2013) (Where a bank sued a non-debtor defendant LLC for possession of real estate, shareholder-debtor's interest in the defendant LLC, and any risk that

debtor's shares will be less valuable to debtor if the bank prevails, was insufficient to create "related to" jurisdiction).

In the present case, none of the claims in the TAC are "related to" the Title 11 Proceeding. The TAC eliminates all liability associated with Swain, including any joint liability of Mr. Bolog or other defendants stemming from the transfer of $585,000 from Plaintiffs to the Debtor. While irrelevant for jurisdictional purposes, the TAC also eliminated the Science Park and Darnestown Claims. There is no possibility that the outcome of the TAC claims will have any impact on the Debtor's estate, and it extinguishes any claim for contribution or indemnification by Mr. Bolog or other defendants for the same, thereby nullifying the Bolog v. Swain Claims. Therefore, upon the acceptance of the TAC, this Court would not have subject matter jurisdiction over the remaining claims in the Civil Action, and the Court should remand the Civil Action back to the Circuit Court for Baltimore City.

**B. Under 28 U.S.C. § 1334(c)(1), the Court should permissively Abstain From Hearing all Claims and Remand This Matter to the State Court.**

In the event this Court determines that it has jurisdiction over the remaining claims herein, this  Court should abstain from hearing the entirety of the Civil Action and remand the case back to the State Court. Section 1334(c)(1), which authorizes permissive abstention, states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).  Traditionally, when deciding whether to permissively abstain, courts consider the following twelve factors:

(1) efficiency in the  administration of the debtor's estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

8

(3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

(4) the presence of a related proceeding commenced in state court;

(5) the existence of a jurisdictional basis other than § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(9) the burden of the federal court's docket;

(10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) whether non-debtor parties are involved in the proceeding.

*Power Plant Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012) (citing *In re Porter—Hayden Co.*, 304 B.R. 725, 735 (Bankr.D.Md.2004). *See also Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, Nos. 18-00434, 18-10013, 2018 Bankr. LEXIS 3955, at *21 (Bankr. D.D.C. Dec. 14, 2018) (applying the twelve factors set forth in *Mangano*).

    *1.   <u>Efficiency in the administration of the debtor's estate</u>.*

The remaining claims in the Civil Action do not have anything to do with the administration of the Debtor's estate and therefore will not materially affect the efficiency of the administration of the Debtor's estate. Irrespective of the outcome of the claims in the TAC or the Counterclaims, the debtor will not incur any additional liabilities or debts. As set forth herein above, the TAC moots Mr. Bolog's Contribution and Indemnification claims, and a verdict against the remaining Defendants for the remaining claims will not effect the Debtor's estate.

2.      _The extent to which state law issues predominate over bankruptcy issues._

Federal courts should defer to state courts when state law issues predominate, particularly where, as here, the claims implicate Maryland's strong public policy governing attorney conduct and fiduciary duties. This factor heavily weighs in favor of this Court abstaining from hearing the claims asserted in the Civil Action. There are no bankruptcy issues in the Civil Action whatsoever. The state law claims stemming from the $10 Million Transfer are at the center of this litigation. Moreover, the Bolog Defendants have filed an extensive motion for reconsideration of the Circuit Court's prior denial of their Petition to Compel Arbitration, and Counter-Defendants have a pending Motion to Dismiss the Counterclaim, all of which involve the application of complex Maryland common law (and in some instances Virginia law), the Maryland Rules, and the law of the case.[3]   State courts have "particular expertise" to decide the state law questions that predominate in the Civil Action. *See Patterson v. Morris*, 337 B.R. 82, 98 (E.D. La. 2006).

This factor supports abstention.

3.      _Whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court._

The Civil Action involves complex questions of State law, strong Maryland public policy as embodied in the Maryland Attorneys' Rules of Professional Conduct, and their impact on the validity of the alleged $10 million "Gift," as well as State common law malpractice, fraud, respondeat superior, *etc*. The Claims in the TAC primarily arise from the plain language of Md. Rule 19-301.8 (c) (MARPC 1.8(c)), and the comments thereto. "An attorney shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the attorney or a person related to the attorney any substantial gift unless the

---

[3] Plaintiffs assert that the granting of the TAC moots the Bolog Parties' Arbitration Motions.  Nonetheless, as of the date of this filing, the motions remain pending.

attorney or other recipient of the gift is related to the client…" Md. Rule 19-301.8(c).[4]   In explaining the Maryland judiciary's relationship with, and the enforceability of, the MARPC, the Maryland Supreme Court has explained:

> In Maryland, the rules contained in MLRPC do not constitute "self-imposed internal regulations." They are not precatory guidelines adopted by lawyers or by lower levels of the court system, but are rules adopted by this Court (Md. Rule 16-812) in the exercise of its inherent Constitutional authority to regulate the practice of law. *Attorney General v. Waldron, supra,* 289 Md. 683, 426 A.2d 929. Together with the rules governing admission to the Bar, rules pertaining to attorney trust and bank accounts, rules governing the disciplining of lawyers, and other rules governing specific conduct by lawyers (*see,* for example, Rule 16-401), they serve to regulate virtually every aspect of the practice of law, establishing both general and particular standards for how lawyers must handle funds belonging to them or to others and how they may and may not deal with each other, with the courts, with their clients, with adverse parties, with witnesses, and with the community at large.

> Unquestionably, so thorough a regulation of an occupation and professional calling, the integrity of which is vital to nearly every other institution and endeavor of our society, constitutes an expression of public policy having the force of law. We made the point with unmistakable clarity in *Waldron* -- that "the power generally to regulate matters regarding the profession and its practitioners, are reposed inherently in the judiciary" ( *Waldron*, 289 Md. at 694), that "the obligation of the judicial branch of government to monitor and manage its own house are not hollow proclamations of power, for the placement of this responsibility with the judiciary represents a recognition of the special, and to a degree, unique relationship that has evolved over the years between the legal profession and the tribunals of justice it serves" ( *Waldron*, 289 Md. at 695), and that, although the Legislature may act "to aid the courts in the performance of their judicial functions," the judicial branch nonetheless retains the "fundamental authority and responsibility" to "carry out its constitutionally required function, an aspect of which . . . is the supervision of practicing lawyers." *Waldron*, 289 Md. at 699. S*ee also In Re Application of Allan S.*, 282 Md. 683, 689 387 A.2d 271, 275 (1978): "Upon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State." MLRPC represents the exercise of that authority, the discharge of that responsibility. ***To the extent, therefore, that the pronouncements of other courts are based on a different view of the function and authority of the Code in their respective States, they are simply not relevant to the Maryland situation.***

---

[4] The District of Columbia has a similar rule.  "A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client, including a testamentary gift, except where the client is related to the donee…"  D.C. Bar Appx. A, Rule 1.8(b).

> MLRPC constitutes a statement of public policy by the only entity in this State
> having the Constitutional authority to make such a statement, and it has the force
> of law. The mere fact that lawyers may be disciplined -- even disbarred -- for
> violating those rules attests to the legal significance of the rules.

*Post v. Bregman*, 349 Md. 142, 162-64 (1998) (emphasis supplied).

The Circuit Court would be in the best position to apply these purely state-law concepts to the facts and proceedings at issue in the Civil Action, which they and their judges regularly adjudicate and enforce.[5] As to liability issues in this matter, there will be complex questions that arise within the unique context of a relationship of trust and confidence, *i.e.*, the attorney-client relationship and trustee-beneficiary relationship. *See Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 100 (2000). While non-Debtor Defendants have argued at times that the law of other jurisdictions, such as the District of Columbia, controls various issues in the case, none of them have as yet asserted that an issue of Federal or Bankruptcy law is the basis of any claim or defense. *In re Railworks Corp.*, 345 B.R. 529, 541 (Bankr. D. Md. 2006) ("While this Court could endeavor to decipher the finer points of California law based on the claims asserted, the California Superior Court is in a better position to adjudicate these State law claims.")

This factor weighs heavily in favor of abstention.

4.      *The presence of a related proceeding commenced in state court.*

This factor weighs neither for nor against abstention, as the Civil Action was removed from the Circuit Court for Baltimore City to the Bankruptcy Courts.

---

[5] This is not to say that the Bankruptcy Court could not understand or come to understand these issues. But the Bankruptcy Court faces these issues in far fewer frequency than the Circuit Court such that adjudication in the Circuit Court in Maryland, would be far more efficient.

5.      _The existence of a jurisdictional basis for federal jurisdiction apart from the debtor's bankruptcy filing._

When applying this factor, the Court in *Mangano* evaluated whether there was an additional basis other than "§1334…that allows this case to be brought to the United States *Bankruptcy Court,*" not federal courts generally. *Mangano*, 484 B.R. 290, 300 (Bankr. D. Md. 2012) (emphasis added). There is no conceivable basis for Bankruptcy jurisdiction over the remaining claims in the Civil Action other than the Debtor's filing of the Bankruptcy Case and the Debtor's mistaken assertion that the entirety of the Civil Action is "related to" Swain Landing's bankruptcy proceeding under 28 U.S.C.S. §1334(b). Moreover, there was no other way for these claims to have reached the federal court other than through 28 U.S.C.S. §1334. The state-law claims asserted in the TAC and the Counterclaim do not invoke federal-question jurisdiction under 28 U.S.C. § 1331. Some of the Defendants are Maryland citizens, and the Plaintiffs sued them in Maryland state court. "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C.S. § 1441 (b)(2) (clarification supplied).

This factor favors abstention.

6.      _The degree of relatedness or remoteness of the proceeding to the main bankruptcy case._

To the extent that this Court finds that it has "related to" jurisdiction, as set forth above, the degree of relatedness is *de minimis*. The remaining Claims and Counterclaims will not result in a judgment against the Estate, as it is not a party to the remaining claims. The Plaintiffs no longer seek recovery of the $585,000 that formed the basis of the Swain Claims from Mr. Bolog or the remaining Defendants in the Civil Action. This factor favors abstention.

13

8.      *The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court.*

This factor neither weighs in favor of nor against abstention, as no core bankruptcy issues remain.

9.      *The burden of the bankruptcy court's docket.*

The Plaintiffs have no reason to believe that this case would burden either this Court or the Circuit Court's docket. As such, this factor weighs slightly against abstention.

10.     *The likelihood that the commencement of the proceeding in federal court involves forum-shopping by one of the parties.*

The Debtor's removal was a coordinated attempt with the Bolog Parties, at forum shopping, designed to obstruct Plaintiffs' right to a trial in its chosen forum. During the October 10, 2025, hearing, the Court found that both parties appear to be attempting to litigate the case in their chosen forum. However, the standard is "the likelihood that the *commencement of the proceeding in federal court* involves forum-shopping by one of the parties." *Mangano*, 484 B.R. 290, 301 (Bankr. D. Md. 2012); *In re Porter-Hayden Co*., 304 B.R. 725 at 735 (same); *MacLeod by & Through MacLeod v. Dalkon Shield Claimants Tr.,* 967 F. Supp. 856, 858 (D. Md. 1997) (same). Moreover, the Plaintiffs are plaintiffs. "[C]ourts have repeatedly said that a plaintiff's choice of forum should be honored when possible, that a plaintiff is prejudiced by the loss of its chosen forum, and that legitimate doubts as to the existence of federal jurisdiction must be resolved against removal and in favor of remand." *Powder Mill Vill. v. Miller (In re Miller)*, Nos. 23-19179-MCR (Chapter 7), 24-00222-MCR, 24-00246-MCR, 2025 Bankr. LEXIS 2556, at *37 (Bankr. D. Md. Oct. 3, 2025).

There is no dispute that the Civil Action was commenced in federal court on June 10, 2025. [MD Doc. #1]. While the DC Bankruptcy Proceeding was pending since May 15, 2025, it is notable

14

that the Debtor waited until after the Circuit Court denied the Bolog Parties' Petition to Compel Arbitration on June 4, 2025, to seek removal. Exhibit E.[6] Moreover, the Debtor removed the case the day before a hearing on Plaintiffs' Motion to Dismiss the Bolog Parties' Counterclaims, scheduled for June 11, 2025. *See* Exhibit E (noting that the June 11, 2025, hearing would address the Motion to Dismiss Counterclaim). After the dismissal of the Debtor, the Bolog Parties supported the removal and have become the lead opponents to abstention and/or remand. *See* MD Doc. #56 (Sealed-Bolog Parties' Memo of Law in Opp. to Plaintiffs' Motion for Abstention and Remand). Nonetheless, at the October 10, 2025, hearing, the Debtor continued to oppose abstention and remand, even though it was no longer a party to the Civil Action. [Doc.#73].

Finally, as previously established, the Debtor's managing member, Michael Postal, is a co-defendant[7] and long-term friend of Mr. Bolog with a history of being co-defendants in at least one other bankruptcy case in this Court. *See Law Offices of Williams Johnson v. MY New Hampshire, LLC*, Adv. Case No. 09-10047-SMT, in the U.S. Bankruptcy Court for the District of Columbia.

The relationship between the parties, the timing of their actions, and the Debtor's willingness to allow Mr. Bolog to select the forum of his choosing, all indicate a coordinated effort at forum shopping.

This factor heavily favors abstention.

---

[6] The timing of removal is relevant when deciding whether the removing party is engaged in forum shopping.  *See* e.g., *Horne v. Humphreys (In re James F. Humphreys & Assocs., L.C.)*, 554 B.R. 355, 367 (Bankr. S.D. W. Va. 2016) ("it can hardly be said that the timing of the [removal] — on the eve of the pretrial conference and trial in the State Court Action — leaves any doubt that one motivation for it was a desire to break free of Judge Alsop's reins.") (clarification added).
[7] If the TAC is accepted, then Mr. Postal will no longer be a defendant.

11.    _The existence of a right to jury trial._

Plaintiffs requested a jury trial, and the Counter-Plaintiffs requested a jury trial on their Counterclaims.[8] While not all claims may mandate a jury trial (*i.e.*, declaratory judgment), the overwhelming majority do. None of the Parties has consented to this Court conducting a jury trial. As such, any jury trial would need to be conducted in the United States District Court for the District of Columbia. Although the Bankruptcy Court could retain jurisdiction prior to trial if the Civil Action were to remain in Washington, DC, the Maryland nature of the Civil Action justifies returning this matter to be heard by a Maryland jury.

12.    _Whether non-debtor parties are involved in the proceeding._

The Civil Action consists solely of claims by and between non-Debtor parties. This factor heavily favors abstention.

An analysis of all the foregoing factors strongly favors permissive abstention.

**C. Under 28 U.S.C. § 1452(b), the Court should equitably remand the remaining claims in this Civil Action.**

Section 1452(b) provides, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on ***any equitable ground***." 28 U.S.C. § 1452(b) (emphasis added). "[V]irtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b)." *In re Merry-Go-Round Enterprises, Inc.*, 222 B.R. 254, 256 (D. Md. 1998). This does not, however, mean that the two doctrines have merged. *Id*. at 257. In fact, a court's discretion to remand a case is even broader than its discretion to abstain, as a court

---

[8] If any of the Counterclaims are not dismissed following the consideration of Plaintiffs/Counter-Defendants' Motion to Dismiss the Counterclaim, then the Counter-Defendants will demand a jury trial with respect to the Counterclaim as well.

may remand a case on any "appropriate ground." *Id.* (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 133 (1995)). Moreover, remand of a case is the mechanism for implementing abstention. *Id.*

In evaluating the propriety of remand on these grounds, courts have looked to an array of factors:

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of applicable state law;
>
> (4) comity;
>
> (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;
>
> (6) the existence of the right to a jury trial; and
>
> (7) prejudice to the involuntarily removed defendants.

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, Civil Action No. 07-1936 (RCL), 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998) (internal quotations omitted). "Any one of the relevant factors may provide a sufficient basis for equitable remand under § 1452(b) 's unusually broad grant of authority. . . ." *In re Wilson*, Nos. 12-32715-WIL, 13-10018, 2013 Bankr. LEXIS 3142, at *3 (Bankr. D.D.C. Aug. 5, 2013) (quoting *Fed. Home Loan Bank of Chi. v. Bank of Am.*, 448 B.R. 517, 525 (C.D. Cal. 2011)) (internal quotations omitted).

Factors one, two, three, five, and six were fully addressed in the previous sections and favor remand of the entire Civil Action to the State Court, and Plaintiffs adopt and incorporate said arguments herein by reference. Plaintiffs will discuss factors four and seven herein.

17

Factor four (comity) strongly favors remand and is at the heart of both permissive abstention and equitable remand. Comity is the principle under which the federal courts (as a courtesy) should defer to state courts when such deference is appropriate. *See Patterson*, 337 B.R. 82, at 99. Here, deference to the State Court is entirely appropriate, given that, but for the filing of the DC Bankruptcy Case, the Civil Action would not have been subject to removal. Moreover, the Civil Action (and the defenses articulated thus far) involve only questions of state law. As a result, in the interest of comity, this Court should "extend the courtesy to the state court of interpreting its own laws." *Id*.

Finally, factor seven (prejudice to the removed parties) favors remand. Plaintiffs are prejudiced by the fact that removal of the Civil Action will deprive Plaintiffs of their chosen forum – the State Court. Moreover, the Plaintiffs will suffer prejudice in the form of needless delay and added expense, as Plaintiffs have been forced to retain specialized bankruptcy counsel to assist with this adversary proceeding even though the Debtor is no longer a party hereto. In contrast, the Defendants will face no prejudice if remand is granted, and the Debtor will not suffer any prejudice or ill effect.

## CONCLUSION

For the reasons set forth above, the Court should grant the relief requested and provide Plaintiffs with all further relief as warranted by law and equity.

Dated: November 18, 2025                    Respectfully submitted:

                                           /s/        *PDG*_____
                                           Wes P. Henderson, Esq. (Fed. Bar #502935)
                                           Patrick D. Gardiner, Esq. (Fed. Bar #1630864)
                                           HENDERSON LAW, LLC
                                           2127 Espey Court, Suite 204
                                           Crofton, Maryland 21114
                                           T: (410) 721-1979
                                           F: (410) 721-2258
                                           wph@hendersonlawllc.com
                                           patrick@hendersonlawllc.com

                                           *Attorneys for Plaintiffs and Counter-*
                                           *Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of November, 2025, a copy of the foregoing was sent via CM-ECF on the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in-Possession*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC, and Darnestown Road, Inc*

AND via first-class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103
Takoma Park, MD 20912

*Defendant pro se*

/s/        PDG
Patrick D. Gardiner, Esq. (Fed. Bar #1630864)