**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>　　　　　　Debtor. | Case No. 25-184-ELG<br>(United States Bankruptcy Court<br>for the District of Columbia) |
| Claudia Engelhorn, *et al.*<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>Erik D. Bolog, *et al.*<br><br>　　　　　　Defendants. | Adv. Proc. No. 25-10044-ELG |

**THE BOLOG PARTIES' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR
<u>REMAND AND/OR ABSTENTION (ECF NO. 87)</u>**

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ................................................................................................. 1

**BACKGROUND** ................................................................................................................ 4

**ARGUMENT** ................................................................................................................... 9

   **I.**  **THIS COURT RETAINS SUBJECT MATTER JURISDICTION OVER THE
REMAINING CLAIMS IN THE CIVIL ACTION** ..................................................... 9

     **A.**  **Related-To Jurisdiction Is Assessed As Of The Time Of Removal** ....................... 9

     **B.**  **The Court Retains Related-To Jurisdiction Today** ................................................ 12

     **C.**  **The Court Also Has Diversity Jurisdiction** ........................................................... 14

   **II.**  **AS THE COURT ALREADY HELD, PERMISSIVE ABSTENTION IS ASSESSED
AS OF THE DATE OF REMOVAL AND IS INAPPROPRIATE HERE** ............... 15

   **III.**  **EQUITABLE REMAND IS NOT WARRANTED** ..................................................... 16

     **A.**  **The Engelhorn Parties' Time To Move For Remand Has Expired** ..................... 16

     **B.**  **The Totality Of The Circumstances Weighs Against Equitable Remand** ........... 17

     **C.**  **Plaintiffs Have Not Met Their Burden Under The Articulated Factors** ............. 19

     **D.**  **Plaintiffs' Reliance On Other Equitable Factors Is Unavailing** .......................... 26

**CONCLUSION** ................................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 222 S. Caldwell St., Ltd. P'ship*,
  409 B.R. 770 (Bankr. W.D.N.C. 2009), *amended* (June 22, 2009) ................................... 9-10

*In re Adelphia Commc'ns Corp.*,
  285 B.R. 127 (Bankr. S.D.N.Y. 2002) .............................................................................. 25-26

*In re AFY, Inc.*,
  902 F.3d 884 (8th Cir. 2018) ................................................................................................11

*In re Automated Recovery Systems of New Mexico, Inc.*,
  648 B.R. 392 (Bankr. D.N.M. 2023) ................................................................................ 22-23

*In re Bay Vista of Virginia, Inc.*,
  394 B.R. 820 (Bankr. E.D. Va. 2008) ....................................................................................26

*Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc.*,
  174 B.R. 28 (S.D.N.Y. 1994) .................................................................................................10

*CAMOFI Master LDC v. U.S. Coal Corp.*,
  527 B.R. 138 (Bankr. S.D.N.Y. 2015) ...................................................................................17

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, No. CIVA 07-1936
  RCL, 2008 WL 2690731 (D.D.C. July 2, 2008), *aff'd sub nom. Capitol Hill
  Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir.
  2009) .................................................................................................................................23, 26

*In re Celotex Corp.*,
  124 F.3d 619, 626 (4th Cir. 1997) ...................................................................................... 9-10

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ...............................................................................................................12

*In re DBSI, Inc.*,
  409 B.R. 720 (Bankr. D. Del. 2009) ......................................................................................24

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
  534 B.R. 500 (S.D.N.Y. 2015) .......................................................................................... 21-22

*In re DPH Holdings Corp.*,
  No. 12 Civ. 9292 (PAE), 2013 WL 3948683 (S.D.N.Y. Aug. 1, 2013) ........................... 15-16

*Fantle v. Fantle*,
  782 A.2d 377 (Md. Ct. Spec. App. 2001) ..............................................................................21

*Firefighters' Ret. Sys. v. Consulting Grp. Servs., LLC*,
  541 B.R. 337 (M.D. La. 2015) ........................................................................ 9-13

*Firefighters' Ret. Sys. v. Eisneramper, LLP*,
  No. CV 14-182-SDD-SCR, 2015 WL 5353204 (M.D. La. Aug. 18, 2015) ,
  *report and recommendation adopted*, No. CV 14-182-SDD-SCR, 2015 WL
  5438600 (M.D. La. Sept. 14, 2015) ....................................................................22

*In re Freeway Foods of Greensboro, Inc.*,
  449 B.R. 860 (Bankr. M.D.N.C. 2011)...................................................... 19-20, 26

*Greenwood Grp., Inc. v. L3Harris Techs. Integrated Sys., LP*,
  No. CIV-24-849-G, 2025 WL 898078 (W.D. Okla. Mar. 24, 2025)......................14

*Guerrero v. Satterwhite*,
  No. CIV .A H-13-1325, 2014 WL 1052417 (S.D. Tex. Mar. 18, 2014) ....................... 2-3, 17

*In re Kaiser Grp. Int'l, Inc.*,
  421 B.R. 1 (Bankr. D.D.C. 2009) ....................................................................19, 25

*KeyBank Nat'l Ass'n v. Franklin Advisors, Inc.*,
  600 B.R. 214 (S.D.N.Y. 2019)...........................................................................21

*In re KSRP, Ltd.*,
  809 F.3d 263 (5th Cir. 2015) ............................................................................11

*In re Lazar*,
  237 F.3d 967 (9th Cir. 2001) ............................................................................15

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
  487 B.R. 158 (S.D.N.Y. 2013)...................................................................... 15-16

*MBNA Am. Bank, N.A. v. Hill*,
  436 F.3d 104 (2d Cir. 2006)..............................................................................20

*McLaughlin v. Holder*,
  864 F.Supp 2d 134 (D.D.C. 2012) ....................................................................16

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  522 F.Supp. 2d 557 (S.D.N.Y. 2007)............................................................. 2-3, 17

*In re Murray Energy Holdings Co.*,
  662 B.R. 604 (Bankr. S.D. Ohio 2024)................................................................11

*New England Wood Pellet, LLC v. New England Pellet, LLC*,
  419 B.R. 133 (D.N.H. 2009) .............................................................................17

*In re Pettus Props., Inc.*,
No. 10-31632, 2012 WL 956915 (Bankr. W.D.N.C. Mar. 20, 2012) ......................................4

*Rahl v. Bande*,
316 B.R. 127 (S.D.N.Y. 2004).......................................................................................... 22-23

*In re River Ctr. Holdings, LLC*,
288 B.R. 59 (Bankr. S.D.N.Y. 2003)................................................................................ 23-24

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)...........................................................................................................10, 14

*Sabre Techs. v. TSM Skyline Exhibits, Inc.*,
2008 WL 4330897 (S.D. Tex. Sep. 18, 2008) .......................................................................23

*Sherley v. Sebelius*,
689 F.3d 776 (D.C. Cir. 2012) ...............................................................................................15

*In re Tronox*,
603 B.R. 712 (Bankr. S.D.N.Y. 2019) ...................................................................................16

*Tubbs v. Agspring Mississippi Region, L.L.C,*,
No. CV 3:21-03268, 2022 WL 1164803 (W.D. La. Apr. 4, 2022) , *report and
recommendation adopted*, No. CV 3:21-03268, 2022 WL 1164014 (W.D. La.
Apr. 4, 2022) ..................................................................................................................... 22-23

*In re WorldCom, Inc. Sec. Litig.*,
294 B.R. 553 (S.D.N.Y. 2003), *aff'd sub nom. California Pub. Employees'
Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) ....................................................10

**Statutes**

11 U.S.C. § 101(51D) ..................................................................................................... 4-5, 13

28 U.S.C. § 1332........................................................................................................................14

28 U.S.C. § 1334..............................................................................................................2, 10, 15

28 U.S.C. § 1447(c) ............................................................................................................. 16-17

28 U.S.C. § 1450.........................................................................................................................3

28 U.S.C. § 1441 ............................................................................................................. 14-15, 22

The Bolog Parties[1] respectfully submit this opposition to Plaintiffs' Renewed Motion for

Remand and/or Abstention (ECF No. 87, the "Renewed Remand Motion" or "Renewed Mot.").

### PRELIMINARY STATEMENT

The Engelhorn Parties' relentless forum shopping must come to an end. Ever since the

Debtor, Swain Landing LaPlata JC LLC ("Swain Landing"), removed this action nearly six months

ago, the Engelhorn Parties have dragged their feet and taken apart their own case—piece by

piece—in a transparently desperate effort to escape this Court's jurisdiction and swift resolution

on the merits. In addition to a failed motion to dismiss the bankruptcy, Plaintiffs engaged in claim

splitting (voluntarily dismissing their claims against the Debtor without prejudice only to refile the

same complaint as a proof of claim), unsuccessfully opposed a routine transfer motion,

unsuccessfully sought remand and abstention, refused to participate in a Rule 26(f) conference or

depositions, moved to stay discovery in their own case, and recently amended their proofs of claim

to try and conceal their connection to this action.

Most recently, Plaintiffs voluntarily dismissed with prejudice *half* of their claims in the

SAC—including supposedly meritorious claims purportedly worth more than $20 million in

damages. As a prelude to yet another attempt to escape what Plaintiffs view as an inhospitable

forum, the Engelhorn Parties have stipulated to "streamline" this proceeding through a third

amended complaint (the "TAC") dismissing all of their claims except those related to the Gift, i.e.

the $10 million gift made by Ms. Engelhorn to the JAREB Irrevocable Trust. While dismissal of

---

[1] "Bolog Parties" refers to Defendants Erik D. Bolog as an individual and Trustee of the JAREB Irrevocable Trust, dated October 11, 2021 ("Mr. Bolog"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc. ("Darnestown Road") (collectively, the "Bolog Parties"). "Plaintiffs" refers to Claudia Engelhorn, Individually ("Ms. Engelhorn"), and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended ("Whitewater Trust"), and White Pearl, LLC ("White Pearl," and collectively with Ms. Engelhorn and Whitewater Trust, the "Engelhorn Parties"). Other capitalized terms used herein but that are undefined have the meanings ascribed to them in the Renewed Remand Motion.

those meritless claims was well advised, none of these procedural machinations deprives this Court of jurisdiction or warrants abstention or remand.

*First*, this Court retains subject matter jurisdiction. The Court already found that it had related-to jurisdiction over the Civil Action. (ECF No. 73, 1:41:30-1:41:50.) The Engelhorn Parties have pointed to no case that disrupts the Court's prior analysis or calls for a reevaluation. But even if this Court were to reevaluate jurisdiction today based on the TAC, it possesses both related-to jurisdiction and diversity jurisdiction, either of which is sufficient. The Court has already held there is diversity jurisdiction, and it continues to have diversity jurisdiction today because the Engelhorn Parties seek north of $10 million in damages from the Bolog Parties and WTP (the remaining defendants), who are each diverse from Ms. Engelhorn (the sole remaining plaintiff). The Court also retains related-to bankruptcy jurisdiction because the outcome of this litigation will have a conceivable effect on the bankruptcy estate, including through both the Bolog Parties' counterclaims and their adversary proceeding against the Debtor, each of which seeks compensation for the costs of litigating Plaintiffs' claims.

*Second*, the Court already held that "abstention is considered as of the date of removal and, therefore, neither mandatory nor permissive abstention under 28 U.S.C. § 1334(c) are applicable." (ECF No. 75 at 2.) That is the law of the case, Plaintiffs have not sought reconsideration, and nothing about the facts "as of the date of removal" has, or could, change. In any event, abstention is impossible because there is no pending state court proceeding.

*Third*, equitable remand should be denied as both untimely and inequitable. At the threshold, remand should be denied because the Renewed Remand Motion was filed after the 30-day deadline. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d 557, 561-62 (S.D.N.Y. 2007) (30-day limit for remand applies to removal made under

"bankruptcy removal statute"); *Guerrero v. Satterwhite*, No. CIV.A. H-13-1325, 2014 WL 1052417, at *4 (S.D. Tex. Mar. 18, 2014) (objections to removal based on bankruptcy jurisdiction lobbed "30 days after remand" are "forfeited"). But even if Plaintiffs' second remand motion were timely, Plaintiffs have provided no basis to avoid the Court's "virtually unflagging obligation" to exercise its jurisdiction.

If anything, remand has become even *less* appropriate with the passage of time as the Engelhorn Parties have engaged in relentless delay to steer their own case out of this Court. The Engelhorn Parties refused to engaged in a Rule 26(f) discovery conference before this Court ruled on the Engelhorn Parties' first remand motion and then, after it ruled in favor of the Bolog Parties, refused to meet and confer on a proposed scheduling order to move the Civil Action forward. The Bolog Parties were prepared to depose Ms. Engelhorn in November and proceed to summary judgment shortly thereafter when the Engelhorn Parties, *as plaintiffs*, moved to stay discovery and refused to participate. There is no excuse for Plaintiffs' delay—indeed, under the scheduling order issued by the Maryland Circuit Court prior to removal, which remains operative,[2] discovery is to conclude on January 7, 2026. While Plaintiffs' delays in producing documents will likely require a short extension (*see* ECF No. 86 at ¶ 31), once document productions are complete, the Bolog Parties stand ready to depose Ms. Engelhorn and seek summary judgment. The Engelhorn Parties' submission of the TAC to "streamline" the outstanding claims and issues will only assist in expediting that timeline. At this time, as summary judgment is on the horizon, sending the Civil Action back to the Maryland Circuit Court would only cause unnecessary delay and prejudice the Bolog Parties, who wish to see the Civil Action to prompt completion.

---

[2] *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").

The Civil Action has now been pending in federal court for six months, nearly as long as it was before the Maryland Circuit Court. This Court is well familiar with the Parties, the facts of the Civil Action, the procedural posture, and is best positioned to adjudicate the Civil Action to its conclusion. "In considering whether equitable remand and permissive abstention are justified . . . the Court begins with the presumption in favor of this Court exercising jurisdiction . . . and not abstaining in favor of the State Court." *In re Pettus Props., Inc.*, No. 10-31632, 2012 WL 956915, at *4 (Bankr. W.D.N.C. Mar. 20, 2012). The Court already denied remand and abstention once, and it should do so again here. For the foregoing reasons, the Court should deny the Renewed Remand Motion.

## **BACKGROUND**

On September 10, 2024, Plaintiffs initiated this action in the Circuit Court for Baltimore City, Maryland under Case No. C-24-CV-24-002631 (the "Civil Action") asserting a litany of baseless claims against the Bolog Parties. On February 5, 2025, the Engelhorn Parties filed a second amended complaint (the "SAC"). On March 24, 2025, the Bolog Parties asserted four counterclaims against the Engelhorn Parties: (i) defamation of Mr. Bolog; (ii) indemnification by the Whitewater Revocable Trust for any actions purportedly taken by Mr. Bolog while serving as co-trustee of the Whitewater Trust, including allegedly making an investment in Swain Landing; (iii) abuse of process for asserting baseless allegations against Mr. Bolog, including those related to Swain Landing; and (iv) breach of contract for failing to compensate Mr. Bolog for his services as co-trustee of the Whitewater Trust.

On May 15, 2025, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the D.C. Bankruptcy Court. The Debtor's case is proceeding under subchapter V, Case No. 25-00184 (the "Debtor's Bankruptcy Case"). In the

petition, the Debtor listed the Civil Action in its Official Form 207 as a pending legal action. (*See* ECF No. 1 in the Debtor's Bankruptcy Case.) On June 24, 2025, Mr. Bolog initiated the Bolog Adversary Proceeding, requesting that this Court "enter judgment that Mr. Bolog is indemnified by [the Debtor] for the costs and disbursements of defending the Swain Landing Claims"[3] asserted by Plaintiffs in the Civil Action. (ECF No. 1 in the Bolog Adversary Proceeding at 7.)

On June 10, 2025, the Debtor removed the Civil Action to the United States Bankruptcy Court for the District of Maryland and simultaneously moved for transfer to this Court. At the time of removal, the Civil Action was still in its early stages. Only one non-party witness had been deposed and no party witnesses had even been noticed for a deposition. The Engelhorn Parties had produced a limited number of documents, approximately half of their now total document productions to-date. And under the Maryland Circuit Court's operative schedule, the first case deadline—for the Engelhorn Parties to disclose expert witnesses—was not set to expire until months later on August 11, 2025. On July 10, 2025, the Engelhorn Parties filed their original motion for abstention and remand. (ECF No. 42, the "Original Remand Motion").

On July 21, 2025, the Debtor filed its *Subchapter V Plan of Reorganization* (ECF No. 34 in Case No. 25-00184) (the "Plan"). The Plan noted that in a chapter 7 liquidation, a trustee could pursue an avoidance action to recover certain real estate with an estimated value of about $1.5 million that, after fees and costs, would leave about $1.25 million available for disbursement to creditors. (*Id*. at 3-4.) But, under the Plan as proposed by Swain Landing, creditors would receive the lesser of approximately $5.9 million or all allowed claims. (*Id*.) The Plan listed Mr. Bolog as one of Class 1 constituents by virtue of the Bolog Adversary Proceeding. (*Id*. at 6-7.) On August

---

[3] "Swain Landing Claims" refers to Counts V, VII, XI, XIII, and XIV of the SAC.

7, 2025, the Engelhorn Parties each filed separate proofs of claim against the Debtor (*see* Claim Nos. 2-5), attaching the SAC from the Civil Action in support.

Since removal to the Maryland bankruptcy court, the Engelhorn Parties have abandoned litigating the merits of the Civil Action to instead focus on dismantling their own case in a transparent attempt at forum shopping. On August 8, 2025, the Engelhorn Parties voluntarily dismissed the Debtor from the Civil Action (ECF No. 57), seeking to nullify the Debtor's then-pending transfer motion and block the Civil Action from being transferred to this Court. Recognizing the efficiencies of adjudicating the Civil Action in conjunction with Swain Landing's bankruptcy, on August 10, 2025, the Bolog Parties filed their own motion to transfer. (ECF No. 58.) Following a hearing on September 15, 2025, Judge Rice of the Maryland bankruptcy court stated that it was "strongly self-evident" that the Civil Action was connected to the Debtor[4] and transferred the Civil Action to this Court. (*See* ECF No. 68.)

Separately, on July 10, 2025, the Englehorn Parties moved to dismiss the Debtor's Bankruptcy Proceeding in its entirety on the grounds that Swain Landing was not authorized to initiate its own bankruptcy petition. (ECF No. 25 in the Debtor's Bankruptcy Case.) After a hearing, that motion was likewise denied by this Court. (ECF No. 59.)

The Bolog Parties, on the other hand, have sought to keep the Civil Action moving toward summary judgment—but have been thwarted by Plaintiffs at every turn. On July 23, 2025, the Bolog Parties served document requests on Ms. Engelhorn. Under Rule 34(b)(2) of the Federal Rules of Civil Procedure, Ms. Engelhorn's responses and objections were due thirty days thereafter on August 22, 2025. Ms. Engelhorn failed to respond within thirty days as required and, therefore, waived any objection. Retroactively, however, Ms. Engelhorn claimed no obligation to respond

---

[4] The Bolog Parties are able to provide the Court with an audio file of the hearing upon request.

until the Parties engaged in a Rule 26(f) conference. (*See* ECF No. 86-2.) On September 25, 2025, without conceding that a Rule 26(f) conference was necessary, the Bolog Parties proposed that the parties "have one next week so that doesn't hold things up." (ECF No. 86-3 at 2.) The Engelhorn Parties responded that they could "make 11 AM on Wednesday for a call on our end." (ECF No. 86-9 at 1.) But in the morning of October 1, 2025, just hours before the scheduled Rule 26(f) conference, the Engelhorn Parties backtracked, stating that they "do not view this call as a Rule 26(f) conference, nor do [they] believe such a conference is appropriate at this time" until resolution of their then-pending Original Remand Motion was resolved. (ECF No. 86-3 at 1.)

On October 10, 2025, this Court held a hearing on, and denied, the Original Remand Motion. (ECF No. 75.) After first finding that the Court possessed at least "related-to" jurisdiction over the Civil Action, the Court denied the Engelhorn Parties' request for mandatory abstention, permissive abstention, and equitable remand. (ECF Nos. 73 & 75.) The Court directed the Engelhorn Parties, the Bolog Parties, and WTP to meet-and-confer on a proposed schedule for the Civil Action. (ECF No. 73, 1:49:20-1:49:30.)

That never happened. Instead, the Engelhorn Parties engaged in further obfuscation and delay. In the afternoon of October 10, 2025, following the hearing, counsel for the Engelhorn Parties stated they would "circulate a proposed Scheduling Order." (*See* ECF No. 86-4 at 2.) On the morning of October 13, 2025, counsel for the Engelhorn Parties informed the Bolog Parties that they had been unable to draft the scheduling order due to illness but would "try to get a document circulated either later today or early tomorrow morning." (*Id* at 1.) On October 14, 2025, counsel for the Engelhorn Parties communicated to the Bolog Parties and WTP that it "may take a few more days to circulate a draft of the scheduling order and set up a call to discuss any issuers [sic]." (ECF No. 86-5 at 1.) No such proposed scheduling order was ever circulated.

Instead, on October 30, 2025, the reason underlying the Engelhorn Parties' dilatory tactics became clear when they filed *two* motions to further delay resolution of the Civil Action. *First*, the Engelhorn Parties filed a *Motion for Leave to Amend Complaint* (ECF No. 79) and submit a Third Amended Complaint (the "TAC") removing certain claims from the SAC—Counts that sought, in total, $20 million in purported damages—and preserving only those claims concerning the Gift. Under the TAC, Ms. Engelhorn would become the sole plaintiff asserting claims against just three of the original nine defendants (1) Mr. Bolog in his individual capacity, (2) Mr. Bolog as trustee of the JAREB Irrevocable Trust, and (3) WTP. [5] *Second*, the Engelhorn Parties—as *plaintiffs*— filed their *Motion to Stay Discovery or in Alternative for Protective Order* (ECF No. 81). Two weeks later, in connection with filing the Renewed Remand Motion, the Engelhorn Parties withdrew the proofs of claim filed by Ms. Engelhorn and the Whitewater Trust, and amended the proof of claim filed by White Pearl to remove explicit reference to the SAC.

Notwithstanding Plaintiffs' machinations, the Bolog Parties have continued their efforts to complete discovery and move for summary judgment. The Bolog Parties noticed the deposition of Ms. Engelhorn for November 17, 2025, and only adjourned her deposition when Ms. Engelhorn's counsel made clear that Plaintiffs were still "currently finalizing logistics with an IT vendor to conduct a search of Plaintiffs' emails," meaning Plaintiffs had not conducted a search, let alone a review, of Ms. Engelhorn's email inbox. (*See* ECF No. 86-7 at 1.) While no timetable has been provided for when the Engelhorn Parties' production will be finished, the Bolog Parties have requested that the Court set January 7, 2026, as the deadline for the parties to complete document

---

[5] The Parties filed a *Stipulation* (ECF No. 93) on December 9, 2025, dismissing with prejudice Counts III-V, X, XII-XIV, and XVII-XIX and part of Count VII of the SAC (the "Dismissed Claims") and agreeing that the Engelhorn Parties may file the TAC subject to certain terms and conditions. The Stipulation has not yet been ordered by the Court.

productions. (*See* ECF No. 86 ¶ 31.) Thereafter, the Bolog Parties believe they can timely complete review of any final document productions, take the deposition of Ms. Engelhorn, and move for summary judgment in the first quarter of 2026.

Meanwhile, the Bankruptcy Case remains pending with a confirmation hearing scheduled for February 17, 2025. So does the Bolog Adversary Proceeding which asserts Mr. Bolog's claims for attorneys' fees and costs from Swain Landing for defending the Swain Landing Claims in the SAC.

## ARGUMENT

## I.    THIS COURT RETAINS SUBJECT MATTER JURISDICTION OVER THE REMAINING CLAIMS IN THE CIVIL ACTION

The Court already decided this issue: "notwithstanding the change of circumstances since the date of removal (i.e., the voluntary dismissal of the Debtor as a named defendant), the Court finds that it has subject matter jurisdiction over the underlying complaint." (ECF No. 75.) Even if the Court were required to reconsider its prior jurisdictional finding (and it is not), the Court should find that it has both related-to and diversity jurisdiction following submission of the TAC.

### A.    Related-To Jurisdiction Is Assessed As Of The Time Of Removal

It is well established that a bankruptcy court's jurisdiction is assessed as of the time of removal—"if 'related to' jurisdiction exists at the time of removal, subsequent events do not divest the district court of subject matter jurisdiction."[6] *Firefighters' Ret. Sys. v. Consulting Grp. Servs., LLC*, 541 B.R. 337, 348 (M.D. La. 2015) (internal citations omitted); *see In re 222 S. Caldwell St., Ltd. P'ship*, 409 B.R. 770, 784 (Bankr. W.D.N.C. 2009), *amended* (June 22, 2009) ("even dismissal of the underlying bankruptcy case does not divest a bankruptcy court of subject matter

---

[6] Although the Court found that the Civil Action was a "core matter when it was removed" (ECF No. 73 at 1:31:50-54), it focused its analysis on related-to jurisdiction. (ECF No. 73, 1:41:30-1:41:40.)

jurisdiction over a pending adversary proceeding"); *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997) ("[W]e note that if 'related to' jurisdiction actually existed at the time of Rapid's removal of the Contribution Action to the district court, Rapid's global settlement with the Celotex bankruptcy estate and the treatment of Owens' claim under the Confirmed Plan could not divest the district court of that subject matter jurisdiction . . . Thus, our analysis may not be informed by our knowledge of the Confirmed Plan or Rapid's settlement with the Celotex bankruptcy estate."); *In re WorldCom, Inc. Sec. Litig.*, 294 B.R. 553, 556 (S.D.N.Y. 2003), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) ("federal jurisdiction arising under Section 1334 is determined, like federal jurisdiction generally, on the basis [of] the facts at the time of removal"). Indeed, "[t]he issue is not what the effect on the debtor's estate is now, but rather what does the Complaint reveal might have been the effect on the debtor's estate at the time [movant] petitioned for removal." *Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 33 (S.D.N.Y. 1994). "[T]he proper question is: was there 'related to' jurisdiction *then*?" *Id.*

Seeking a different rule, the Engelhorn Parties cite the Supreme Court's recent decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), but that case is inapplicable here. There, the Court addressed the loss of federal question jurisdiction following removal and its impact on supplemental jurisdiction over state law claims. The Court held that federal courts lose jurisdiction where "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind." *Id.* at 30. That did not happen here—none of the claims in the SAC were federal claims, and federal jurisdiction was not based on federal-question jurisdiction. Moreover, the *Royal Canin* decision does not so much as mention bankruptcy, bankruptcy jurisdiction, or Section 1334. *See* 28 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive

jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

Notably, while *Royal Canin* was issued nearly a year ago, Plaintiffs have pointed to no bankruptcy case interpreting *Royal Canin* in the manner they propose.[7] There is good reason: the underlying premise of *Royal Canin*—the "well-pleaded complaint rule"—does not apply to related-to bankruptcy jurisdiction. In *Royal Canin*, the Court limited its analysis to the allegations in plaintiff's "well pleaded complaint," finding that "[i]f the complaint presents no federal question, a federal court may not hear the suit." *Royal Canin*, 640 U.S. at 26. The premise of the decision is that the plaintiff is, in large part, the master of her complaint, and can therefore create or destroy federal jurisdiction through amendments. But federal-question jurisdiction is not at play here; this Court has "related to" bankruptcy jurisdiction. And as courts have repeatedly held, "the well-pleaded complaint rule does not apply in determining whether a bankruptcy court has 'related to' jurisdiction over a removed case." *In re KSRP, Ltd.*, 809 F.3d 263, 268 n.3 (5th Cir. 2015); *In re AFY, Inc.*, 902 F.3d 884, 889 (8th Cir. 2018) ("The bankruptcy court here invoked jurisdiction based on § 1334 and civil proceedings related to cases under Title 11. As such, the well-pleaded complaint rule is inapplicable."); *In re Murray Energy Holdings Co.*, 662 B.R. 604, 616 (Bankr. S.D. Ohio 2024) ("[R]elated-to jurisdiction is a separate and independent jurisdictional grant. So it is relevant that, as this Court has held, the well-pleaded complaint rule does not apply in the context of related-to jurisdiction."); *see also Firefighters' Ret. Sys.*, 541 B.R. at 348 (The "'well-

---

[7] The Engelhorn Parties note that *Royal Canin* distinguished *Freeport-McMoran Inc* (Renewed Mot. at 5-6), but the Bolog Parties do not rely on *Freeport*. In any event, the Supreme Court did not overrule *Freeport*.

pleaded complaint' rule is used to determine whether there is 'arising under' jurisdiction in bankruptcy, but it is not applicable in 'related to' bankruptcy removal cases.").[8]

### B.     The Court Retains Related-To Jurisdiction Today

Even if the Court were to find it necessary to reassess jurisdiction, it is clearly present here. The test for whether "related-to" jurisdiction is present is broad so that the bankruptcy courts "might deal efficiently and expeditiously with *all matters connected* with the bankruptcy estate," including "more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (emphasis added) (internal quotations omitted). Indeed, "a civil proceeding is related to bankruptcy" if "the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy." *Id*. The "proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. (internal quotations omitted).

Here, the Civil Action has a conceivable impact on the Debtor's estate. Under the counterclaims, Mr. Bolog (as well as Science Park and Darnestown Road) seeks the "immediate payment of litigation fees and costs" for defending against claims related to his service as trustee of the Whitewater Trust, which includes claims related to Swain Landing. (*See* ECF No. 87-4 at 15-16, 18-19.) Similarly, in the Bolog Adversary Proceeding, Mr. Bolog seeks indemnification

---

[8] As the Fifth Circuit has explained, "[t]he state court pleadings on which a notice of removal relies need only raise the facts necessary for a court to determine that a suit between third parties may conceivably have an effect on a bankruptcy estate." *In re KSRP, Ltd.*, 809 F.3d at 268 n.3 ("For example, in this case, Sidharthan need not have pleaded his cross-claim against KSRP in state court before removal—indeed, it is doubtful he could have done so after KSRP was nonsuited from the state case and filed for bankruptcy. ... Even unfiled but potential indemnity claims are sufficient to show a conceivable effect on a bankruptcy case and give rise to 'related to' jurisdiction.").

from Swain Landing "for the costs and disbursements of defending the Swain Landing Claims." (*See* ECF No. 1 in Bolog Adversary Proceeding at 7.) As the Engelhorn Parties are no doubt aware, the Bolog Parties have expended significant resources and expenses in defending against these claims, including responding to discovery, propounding document requests, seeking arbitration, filing a motion to dismiss, and litigating numerous jurisdictional motions. Payment by the Debtor, Plaintiffs, or both of the litigation fees and costs related to the Swain Landing Claims will have a direct impact on the Debtor's estate. If "the outcome of this case is that [the Bolog Parties] succeed in fully or partially recovering" their right to attorneys' fees and costs from Plaintiffs, this "would reduce the amount" claimed from the Debtor "and thereby potentially benefit other creditors.  This conceivable effect is sufficient to establish related-to jurisdiction." *Firefighters' Ret. Sys.*, 541 B.R. at 356.

The Bolog Parties have *already* incurred fees in the course of defending the Swain Landing Claims regardless of their dismissal. The Engelhorn Parties are therefore incorrect that the TAC would nullify the Bolog Adversary Proceeding and that the TAC eliminates "all claims in any way based upon Swand [sic] Landing, as well as Science Park, and Darnestown Road" (Renewed Mot. at 2, 8) because the issue of attorneys' fees and costs is a live issue ripe for adjudication. The Counterclaims therefore have an impact on the Debtor's estate, and the Court should find that it has "related-to" jurisdiction over the Civil Action.

Furthermore, a full and complete determination of the amount of attorneys' fees and costs owed by the Debtor to Mr. Bolog must be evaluated in the context of the Debtor's Bankruptcy Proceeding to determine if the Debtor remains below the cap of $3,424,000.00, for subchapter V relief. *See* 11 U.S.C. § 101(51D). This interconnected liability directly impacts administration of

the Debtor's estate and the rights of all creditors. Thus, the Civil Action should be efficiently adjudicated in one forum—this Court—rather than piecemeal across multiple courts.

### C.       The Court Also Has Diversity Jurisdiction

Finally, even if the Court lacked related-to jurisdiction by virtue of Plaintiffs' amendment (which it does not), it nonetheless retains diversity jurisdiction in the alternative. Whereas the plaintiff's amendment in *Royal Canin* destroyed the jurisdiction of federal courts, here, the Engelhorn Parties have done the opposite—they have enhanced the basis for complete diversity. By excising Swain Landing as a party, Plaintiffs have removed any argument that complete diversity is lacking due to one of the Plaintiffs being a member of Swain Landing. As *Royal Canin* stated, "the elimination of a non-diverse defendant by way of amendment ensures that a case can proceed in federal court, though it could not have done so before." 604 U.S. at 37.

Here, the TAC could have been brought in federal court based on diversity of citizenship. *See* 28 U.S.C. § 1332; *see also* ECF No. 73, 1:39:40-1:40:00 ("there would likely be diversity jurisdiction"). Under diversity jurisdiction, a federal court has jurisdiction of an action if "the matter in controversy exceeds the sum or value of $75,000" and "is between . . . citizens of different States." 28 U.S.C. § 1332. The Engelhorn Parties have alleged no less than $10 million in damages. (*See, e.g.*, TAC ¶ 48.) And according to the TAC, there is complete diversity between the sole remaining plaintiff, Ms. Engelhorn (Tennessee), and the two defendants, Mr. Bolog (Maryland) and WTP (Maryland).[9] (*See, e.g.*, TAC at 1-5.) And this Court has rejected the argument that

---

[9] The Engelhorn Parties have alleged that WTP is a "limited liability partnership formed under the laws of the State of Maryland" and "operates as a law firm, with its principal place of business in Baltimore City, Maryland." (TAC ¶ 5.) That allegation alone should be sufficient to create complete diversity between plaintiff and defendants under the TAC. *See, e.g., Greenwood Grp., Inc. v. L3Harris Techs. Integrated Sys., LP*, No. CIV-24-849-G, 2025 WL 898078, at *2 (W.D. Okla. Mar. 24, 2025) (when addressing jurisdictional questions on a pretrial motion, "the allegations in the complaint are accepted as true to the extent they are uncontroverted"). Indeed, no party has asserted that WTP is a citizen of Tennessee. To the

diversity jurisdiction is inapplicable here based on 28 U.S.C. § 1441(b)(2). (ECF No. 73, 1:31:18-1:31:40.)

## II.   AS THE COURT ALREADY HELD, PERMISSIVE ABSTENTION IS ASSESSED AS OF THE DATE OF REMOVAL AND IS INAPPROPRIATE HERE

Permissive abstention should be denied for two independently sufficient threshold reasons.[10]

*First*, the Court previously held "that mandatory and permissive abstention is considered as of the date of removal and, therefore, neither mandatory nor permissive abstention under 28 U.S.C. § 1334(c) are applicable." (ECF No. 75; *see also* ECF No. 73, 1:46:05-1:46:15.) That decision is law of the case. Absent "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice," which Plaintiffs have not shown, "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*" *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012) (internal citations omitted).

*Second*, abstention cannot apply to a removed case, such as this, as "abstention can exist only where there is a parallel proceeding in state court." *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001) (internal citations omitted). Upon removal, the entire Civil Action was removed to this Court. "Accordingly, because there is no pending state proceeding," the statutes governing abstention "are simply inapplicable to this case." *Id*. at 982.

Even if the issue were still open, and even if abstention were possible here, the Court should reject the Engelhorn Parties' request for permissive abstention under 28 U.S.C. § 1334(c)(1).

---

extent the Court requires additional analysis concerning the citizenship of WTP, the Bolog Parties request that they be permitted to conduct limited discovery and submit supplemental briefing on this particular issue.

[10] The Engelhorn Parties do not argue that mandatory abstention under 28 U.S.C. § 1334(c)(2) is applicable here and therefore concede it does not apply.

"Courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' and may abstain only for a 'few extraordinary and narrow exception[s].'" *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 164 (S.D.N.Y. 2013) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 813 (1976)). Accordingly, "[c]ourts must be sparing in their exercise of permissive abstention." *In re DPH Holdings Corp.*, No. 12 Civ. 9292 (PAE), 2013 WL 3948683, at *11 (S.D.N.Y. Aug. 1, 2013) (internal citations and quotations omitted). The burden is on the Engelhorn Parties to show that permissive abstention is appropriate. *See In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019).

Plaintiffs have again failed to carry their burden. This Court has already ruled on permissive abstention in favor of the Bolog Parties and the circumstances have not changed for the majority of the relevant factors. The Engelhorn Parties have not properly moved for reconsideration here, and even if they had, the Court would be correct to "exercise its discretion by denying a motion for reconsideration" because the Renewed Remand Motion "raise[s] ... arguments for reconsideration [that] the court ha[s] ... already rejected on the merits." *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012). Even if the Court were to revisit its prior rulings on each of the factors, as shown below, the result would be the same.[11]

### III.    EQUITABLE REMAND IS NOT WARRANTED

#### A.    The Engelhorn Parties' Time To Move For Remand Has Expired

As a threshold matter, remand should be denied as untimely. Swain Landing removed the Civil Action on June 10, 2025. While the bankruptcy removal statute contains no specific time limit by which a motion to remand must be filed, courts adjudicating motions for equitable remand

---

[11] Because the Court has already ruled definitively on the impropriety of abstention here, the twelve abstention factors raised by Plaintiffs in the discussion of equitable remand are addressed below.

under 28 U.S.C. § 1452 have applied the 30-day limit to seek remand found in 28 U.S.C. § 1447(c), which provides that a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d 557, 561-62 (S.D.N.Y. 2007) ("Section 1447 applies to a motion to remand regardless of whether the action was removed under section 1441 (the general removal statute) or section 1452 (the bankruptcy removal statute."); *See Guerrero v. Satterwhite*, No. CIV.A. H-13-1325, 2014 WL 1052417, at *4 (S.D. Tex. Mar. 18, 2014) (finding that objections to removal lobbed "30 days after remand" are "forfeited"); *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133, 146, n.14 (D.N.H. 2009) (noting that the 30-day limitation in 28 U.S.C. § 1447(c) applies to cases removed under bankruptcy jurisdiction). The Renewed Remand Motion was filed on November 18, 2025, more than five months after removal was effectuated. Accordingly, the Engelhorn Parties' untimely request for remand should be denied on that basis alone.

### B.    The Totality Of The Circumstances Weighs Against Equitable Remand

As the Court noted, equitable remand is determined by "the totality of circumstances." (ECF No. 73 at 1:47:32-1:47:37; ECF No. 75 at 2.) And while courts often evaluate certain factors when addressing equitable remand, they are "'merely illustrative' and do not constrain a court in its *discretionary* equitable remand analysis." *CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 143 (Bankr. S.D.N.Y. 2015) (internal quotations omitted) (emphasis added). The Court should exercise its discretion when evaluating equitable remand and retain jurisdiction over the Civil Action.

This Court remains in the best position to bring the Civil Action to conclusion, especially following the "streamlining" of matters in the TAC. The Bolog Parties are prepared to notice and take the deposition of Ms. Engelhorn within weeks of the Engelhorn Parties' completion of their

document productions, in all likelihood before the end of January 2026. Summary judgment motions will be filed shortly thereafter, with briefing completed likely in the first quarter of 2026. Additionally, in Maryland State Court, the Civil Action was heard by multiple judges, with no permanent assignment, and no dedicated familiarity with the facts of the case. Here, this Court has already become familiar with the facts and parties, held several hearings, adjudicated the Original Remand Motion, has now evaluated multiple motions, and is best positioned to see this case to completion.

Instead of litigating the merits of the Civil Action, the Engelhorn Parties have done little more than forum shop and seek delay: (a) they opposed transfer to this Court (and lost); (b) they sought remand and/or abstention (and lost); (c) they dismissed the Debtor from the Civil Action; (d) they dismissed *half* of their own claims and a purported $20 million in alleged damages; (e) they withdrew and reformulated their proofs of claim against the Debtor; (f) they engaged in dilatory discovery tactics; and (g) they moved to stay discovery (as *plaintiffs*). Enough is enough. The Bolog Parties must be given the opportunity to complete discovery and move forward with summary judgment. And the quickest and most efficient way to bring this case to conclusion is for it to proceed before this Court.

As this Court stated at the hearing on the Original Remand Motion, "I don't want this case to be playing ping pong" so "this Court is to exercise its jurisdiction unless there's a clear and intentional reason not to." (ECF No. 73, 1:47:44-1:47:50; 1:48:15-1:48:20.) The Engelhorn Parties have articulated no reason to alter that conclusion; indeed, there remains every reason for this Court to retain jurisdiction over the Civil Action. The Bolog Parties request that the Court find the same here as it did on the Original Remand Motion.

### C.    Plaintiffs Have Not Met Their Burden Under The Articulated Factors

As Plaintiffs note, courts look to similar factors when evaluating both permissive abstention and equitable remand. (*See* Renewed Mot. at 16-17.) Because the Engelhorn Parties addressed certain factors in the Renewed Remand Motion, the Bolog Parties do so here as well.

### 1.    Factor 1: Efficiency In The Administration Of The Debtor's Estate

Currently, the Debtor's Bankruptcy Case, the White Pearl Proof of Claim, the Civil Action, the Counterclaims, and the Bolog Adversary Proceeding are all pending before this Court. It would be more efficient for one court to adjudicate *all* the issues relevant to the Debtor's estate. This includes Mr. Bolog's adversary proceeding and proof of claim for attorneys' fees and costs against Swain Landing and his claims against the Engelhorn Parties for such fees and costs as Mr. Bolog's recovery in one proceeding will affect his prospects in the other. *See In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 880 (Bankr. M.D.N.C. 2011) ("It is more efficient if only one court is required to familiarize itself with the voluminous record that is sure to evolve in these cases."). Regardless, *even if* the Counterclaims were "unlikely to have a significant effect on the efficient administration of the bankruptcy estate" this factor does not, on its own, "indicate permissive remand or abstention is warranted here." *In re Kaiser Grp. Int'l, Inc.*, 421 B.R. 1, 18 (Bankr. D.D.C. 2009).

Additionally, it is possible—if not likely—that a representative of the Debtor will be a witness in the course of discovery, and trial, addressing the Counterclaims to assist in the factual determination over the source of the initial investment from the Engelhorn Parties to Swain Landing and whether Mr. Bolog in his role as a trustee of the Whitewater Trust had any

involvement in the investment.[12] It is clear that the Bolog Adversary Proceeding remains intertwined together with the Counterclaims.

Therefore, adjudicating the Civil Action here would allow for all of the relevant issues to be heard, and decided, before one court. While in the Maryland Circuit court, three different judges addressed motions filed in the Civil Action: (1) Judge Charles Dorsey III; (2) Judge Paul J. Cucuzzella; and (3) Judge John S. Nugent.

Accordingly, this factor weights against permissive abstention and equitable remand.

2.    Factor 2: The Extent To Which State Issues Predominate Over Bankruptcy Issues

"[B]ankruptcy courts address matters of state law regularly." *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. at 881. Indeed, in denying the Engelhorn Parties' Original Remand Motion, this Court was prepared to address the very same state law issues that remain in the TAC. Regardless, significant bankruptcy issues must still be determined by the Court, including the interplay between the Counterclaims and the Bolog Adversary Proceeding, the impact on the Debtor's estate, and whether such relief would preclude the Debtor from seeking subchapter V relief.[13]

---

[12] The SAC alleged that the Whitewater Trust is a 50% owner in Swain Landing. SAC ¶ 12 ("Upon information and belief, the members of Defendant Swain Landing are as follows: (1) The Whitewater Revocable Trust dated September 30, 2021, as amended (50% owner).") But it was White Pearl which asserted a proof of claim against the Debtor. *See* Proof of Claim No. 5.

[13] Furthermore, as the Engelhorn Parties acknowledge, the Bolog Parties have a pending motion to reconsider arbitration of the claims related to the Debtor, Science Park, and Darnestown Road under the Whitewater Trust Agreement (Renewed Mot. at 10), an issue governed by the Federal Arbitration Act, not state law. And while the filing of the proposed TAC may moot the arbitration petition, to the extent it remains pending, or needs to be supplemented or amended, the decision whether to compel arbitration should be made by the same court as the one adjudicating other aspects of the disputes between the Engelhorn Parties, the Bolog Parties, and Swain Landing. And, if so, this Court may be called upon to conduct a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). That analysis turns on federal, not state, law.

3.      Factor 3: Whether The Issues Involve Difficult Or Unsettled Questions
Of State Law That Would Be Better Addressed By A State Court

None of the Engelhorn Parties' claims concern difficult or unsettled questions of Maryland

law. This consideration "'significantly undercuts the degree to which the state law factor weighs

in favor of remand.'" *KeyBank Nat'l Ass'n v. Franklin Advisors, Inc.*, 600 B.R. 214, 233 (S.D.N.Y.

2019). In arguing that there are outstanding issues of state law, the Engelhorn Parties' point to the

application of the Maryland Attorneys' Rules of Professional Conduct and Maryland's common

law. (Renewed Mot. at 10-12.) But the Engelhorn Parties have not articulated how either is

"difficult" or "unsettled."

Indeed, this Court already found that it may, and routinely does, interpret the rules of

professional conduct.

> Every court in the country has to apply some standard of rules of
> professional responsibility, I think every federal court utilizes those
> of its state court, and in this case, [Rule] 1.8 is the same between any
> of the relevant jurisdictions I believe that we are dealing with . . .
> [this Court] frequently interprets state laws and has to interpret the
> application of rules of professional responsibility to the members
> that practice in front of it, so I don't believe that weighs in favor of
> abstention at this point.

(ECF No. 73 at 1:38:45-1:39:25.) This factor weighs in favor of denying abstention and remand.[14]

4.      Factor 4: The Presence Of A Related Proceeding In State Court

As the Engelhorn Parties acknowledge, "the Civil Action was removed from the Circuit

Court for Baltimore City to the Bankruptcy Courts." (Renewed Mot. at 12.) Thus, there is no

pending state court action. Regardless, there is a federal presumption that the claims related to

---

[14] Following submission of the TAC, the only relevant Maryland state law is whether the Gift was validly
effectuated and the factors that must be considered to reach that determination are well established. The
terms of the JAREB Irrevocable Trust Agreement are clear, as are the elements of a gift under Maryland
law as well, as is the fact that each of the elements has been satisfied here with respect to the Gift. *See
Fantle v. Fantle*, 782 A.2d 377, 383 (Md. Ct. Spec. App. 2001) (elements of a gift are (1) donative intent,
(2) delivery, and (3) acceptance).

Swain Landing in the Counterclaims along with the Bolog Adversary Proceeding should proceed together in a singular bankruptcy court. *See Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 521 (S.D.N.Y. 2015) ("the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy"). This factor weighs against abstention and remand.

5.     <u>Factor 5: The Existence Of A Jurisdictional Basis Other Than Section 1334</u>

As set forth above, there is a jurisdictional basis other than section 1334: diversity jurisdiction. And as the Court also already found, the Engelhorn Parties' argument based on 28 U.S.C. § 1441(b)(2) (Renewed Mot. at 13) is unavailing. (ECF No. 73, 1:31:18-1:31:40); *see also Firefighters' Ret. Sys. v. Eisneramper, LLP*, No. CV 14-182-SDD-SCR, 2015 WL 5353204, at *12 (M.D. La. Aug. 18, 2015), *report and recommendation adopted*, No. CV 14-182-SDD-SCR, 2015 WL 5438600 (M.D. La. Sept. 14, 2015) (denying abstention where the court "has an independent basis for federal jurisdiction—diversity").

In addition, because jurisdiction is assessed at the time of removal, this Court also has supplemental jurisdiction over any non-core claims because the Civil Action contained at least one core claim, the Swain Landing Claims, at the time of removal. As relevant here, a court may exercise supplemental jurisdiction over any non-core claims so long as the Civil Action contains "at least one core claim." *Tubbs v. Agspring Mississippi Region, L.L.C.*, No. CV 3:21-03268, 2022 WL 1164803, at *6 (W.D. La. Apr. 4, 2022), *report and recommendation adopted*, No. CV 3:21-03268, 2022 WL 1164014 (W.D. La. Apr. 19, 2022); *see also Rahl v. Bande*, 316 B.R. 127, 134-

135 (S.D.N.Y. 2004) ("the Court has supplemental jurisdiction over the remaining claims").[15] "The

main benefit of supplemental jurisdiction is that it fosters convenience and efficiency. By allowing

a single federal court to resolve all related claims and proceedings, the doctrine avoids wasteful

duplicative litigation." *In re Automated Recovery Systems of New Mexico, Inc.*, 648 B.R. 392, 400

(Bankr. D.N.M. 2023) (internal quotations omitted).

This factor weighs against abstention and remand.

6. <u>Factor 6: The Degree Of Relatedness Or Remoteness Of The Proceeding
To The Main Bankruptcy Case</u>

Even after the TAC, the Civil Action and the Debtor's Bankruptcy Case remain

"inextricably linked." *See Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, No. CIVA

07-1936 RCL, 2008 WL 2690731, at *6 (D.D.C. July 2, 2008), *aff'd sub nom. Capitol Hill Grp.

v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009). Indeed, the Engelhorn

Parties have alleged that they initiated the Civil Action to address whether Mr. Bolog engaged in

a "scheme" in his dealings with Ms. Engelhorn, including with respect to Swain Landing. (*See*

ECF No. 41 at 5 in Debtor's Bankruptcy Case.)

The outcome of the Counterclaims in the Civil Action will impact the liabilities of the

Debtor's estate, which could total significant amounts in attorneys' fees and costs in an estate that

may have as little as $1.25 million in assets distributable to creditors. Additionally, the ability for

the Debtor to proceed under subchapter V could be impacted as well. Therefore, "the outcome of

---

[15] Two cases in particular demonstrate this point. In *Sabre Techs. v. TSM Skyline Exhibits, Inc.*, a state court action was filed against three defendants. 2008 WL 4330897, at *3 (S.D. Tex. Sep. 18, 2008). Subsequently, one of the defendants commenced a bankruptcy proceeding. After the state court action was removed, the plaintiff moved to abstain and remand under § 1334(c)(2). The district court denied the motion, ruling that it had core jurisdiction over some of plaintiff's claims and supplemental jurisdiction over the remainder following removal. *Id*. Similarly, in *Tubbs v. Agspring Mississippi Region LLC*, state court litigation without independent federal jurisdiction was removed to bankruptcy court following the initiation of bankruptcy by one of the parties. 2022 WL 1164803, at *6 (W.D. La. April 4, 2022). Like the court in *Sabre Technologies*, the *Tubbs* court declined to abstain, citing its core and supplemental jurisdiction.

this adversary proceeding may have an effect on the liabilities of [the debtor's] estate, by reason

of indemnity claims." *In re River Ctr. Holdings, LLC*, 288 B.R. 59, 70 (Bankr. S.D.N.Y. 2003).

       7.      <u>Factor 7: The Substance Rather Than Form Of An Asserted "Core Proceeding"</u>

Plaintiffs do not argue this factor and thus concede it in favor of the Bolog Parties.

       8.      <u>Factor 8: The Feasibility Of Severing State Law Claims From Core Bankruptcy Matters To Allow Judgments To Be Entered In State Court</u>

As this Court found in the Original Remand Motion, "I don't think you can scalpel" out

the Debtor from the Civil Action. (ECF No. 73 at 1:42:10-1:42:15.) The Bolog Parties request the

Court find similarly here based on the interplay between the Counterclaims and Bolog Adversary

Proceeding.  Regardless, as the Engelhorn Parties acknowledge (Renewed Mot. at 14), this factor

is, at best for them, neutral as to abstention and remand.

       9.      <u>Factor 9: The Burden On The Federal Court's Docket</u>

The Engelhorn Parties concede that this factor weighs "against abstention." (Renewed Mot.

at 14.) This Court previously stated that the Court "definitely ha[s] trial dates available before

June" and "that's what I'm here for." (ECF No. 73 at 1:42:50-1:43:26.) Indeed, to the extent there

has been any burden on this Court's docket, it is only due to Plaintiffs' serial procedural motions

(e.g., seeking twice to remand, to stay, and to amend).

      10.      <u>Factor 10: The Likelihood That The Commencement Of The Proceeding In Federal Court Involves Forum Shopping</u>

"[T]here is no indication" of "forum shopping" where, as here, the main bankruptcy case

was filed in an appropriate venue and the debtor seeks to litigate the adversary proceeding in the

same venue as the main bankruptcy case. *See In re DBSI, Inc.*, 409 B.R. 720, 730 (Bankr. D. Del.

2009).

The Engelhorn Parties lob baseless assertions of a "coordinated attempt" between the Debtor and the Bolog Parties to remove the Civil Action to this Court (Renewed Mot. at 14) when it has been the Engelhorn Parties who have engaged in forum shopping over a period of months instead of litigating the merits of their own case. *See supra* at 1, 6. And their purported evidence in support of forum shopping by the Bolog Parties is baseless. To begin with, the Civil Action "wasn't removed by the Bolog Parties, it was removed by the Debtor." (ECF No. 73 at 1:44:25-1:44:30.) Therefore, any implication that the timing of removal on the eve of the June 11, 2025, hearing in the Maryland Circuit Court on the Bolog Parties' Counterclaims is nothing more than speculation. Regardless, if the Engelhorn Parties wanted to adjudicate their motion to dismiss the Counterclaims, nothing has prevented them from doing so before this Court (or before the Maryland Bankruptcy Court prior to transfer).[16]

Accordingly, this factor weighs against permissive abstention and equitable remand.

11.    Factor 11: The Existence Of A Right To A Jury Trial

As the Engelhorn Parties admit, "not all of [their] claims may mandate a jury trial." (Renewed Mot. at 16.) As this Court previously found, "this court can hold jury trials" and the "district court here holds a number of jury trials," and, in any case, "there's going to be a lot of pretrial before we get to that anyway." (ECF No. 73 at 1:44:50-1:45:10.); *see also In re Kaiser Grp. Int'l, Inc.*, 421 B.R. 1, 18 (Bankr. D.D.C. 2009) (judicial efficiency and economy would dictate that a bankruptcy court "complete the pretrial matters in this case"). This includes overseeing the completion of discovery and motions for summary judgment, both of which are now within reach. Then, if some of the claims in the Civil Action proceed to trial, "the district

---

[16] The Engelhorn Parties' vague reference to an unrelated proceeding initiated against both Messrs. Bolog and Postal is irrelevant (and prejudicial) as it has no relevance here and was resolved over a decade ago with both Messrs. Bolog and Postal dismissed at the initial motion-to-dismiss stage.

court can withdraw the reference to the bankruptcy court and conduct a jury trial." *Id*. Accordingly, this factor is "not [given] very great weight" because such claims "could be heard, if necessary, by a district judge." *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 147 (Bankr. S.D.N.Y. 2002). Any concern about a jury trial at this stage is "speculati[ve]" and mere "conjecture." *See Capitol Hill Grp.*, 2008 WL 2690731, at *6.

12.    Factor 12: Whether Non-Debtor Parties Are Involved In The Proceeding

Even following submission of the TAC, both debtor and non-debtor parties remain involved in the proceeding because of the Counterclaims and Bolog Adversary Proceeding. The Counterclaims and the Bolog Adversary Proceeding are intertwined with one another and would be best adjudicated within one forum. Regardless, even where the "defendants are non-debtor parties," and "have no claim to assert against the debtor," courts may deny permissive abstention. *In re Bay Vista of Virginia, Inc.*, 394 B.R. 820, 845 (Bankr. E.D. Va. 2008). Accordingly, this factor is neutral concerning abstention and remand.

**D.    Plaintiffs' Reliance On Other Equitable Factors Is Unavailing**

The Engelhorn Parties' assertion that principles of comity "strongly favor" remand because "but for" the Debtor's bankruptcy proceeding the Civil Action would have remained in Maryland state court (*see* Renewed Mot. at 18) is unpersuasive. First of all, if the Engelhorn Parties' position were correct, it would call into question removal of *all* state cases following a party's bankruptcy petition. That cannot be the rule and the Engelhorn Parties cite no case in support of such a proposition. Instead, where, as here, the Civil Action had not "progressed much" at the time of removal—discovery was still in early stages and no deadline on the operative scheduling order had yet expired—and does not "involve novel state law issues," issues of comity are not implicated. *In re Freeway Foods of Greensboro, Inc*., 449 B.R. at 888.

Additionally, the Engelhorn Parties' assertion that there is a "Maryland nature" to the Civil Action should be given no weight. (Renewed Mot. at 16.) This is not a relevant factor, and even if it were, as Ms. Engelhorn herself is not a resident of Maryland, the key incidents in the TAC took place in Massachusetts (TAC ¶ 34), and at least two of the key witnesses—Ms. Sarah Mayo (the notary public who witnessed effectuation of the Gift) and Ms. Jennifer Shaw (Ms. Engelhorn's former banker)—live in Massachusetts and New York, respectively. Moreover, Mr. Bolog worked in WTP's DC office, not its Maryland office. (ECF No. 87-4 ¶ 38.) And his work for Ms. Engelhorn involved litigating in Europe. (*Id.* ¶ 4.)

The Engelhorn Parties have also failed to show any prejudice from litigating in this court. Their assertion that they have incurred "added expense" through retaining "specialized bankruptcy counsel" and "needless delay" is inaccurate on its face. (Renewed Mot. at 18.) The Engelhorn Parties' "specialized bankruptcy counsel," presumably the law firm Dentons, did not even sign the Renewed Remand Motion and did not argue the Original Remand Motion before this Court at the October 10, 2025, hearing. They also did not sign the Engelhorn Parties' other filings before this Court: (a) the Engelhorn Parties' *Motion to Stay Discovery* (ECF No. 81) and (b) their *Motion for Leave to Amend Complaint* (ECF No. 79). Except for the Engelhorn Parties' repeated attempts at forum shopping, no specialized bankruptcy knowledge is needed to litigate the remaining claims in the TAC. And any "needless delay" is the fault of the Engelhorn Parties alone, who sought to stay discovery (ECF No. 81), have been dilatory in producing remaining documents in their possession, refused to be deposed, and have *again* sought a change of forum.

## <u>CONCLUSION</u>

For the foregoing reasons, the Engelhorn Parties' Renewed Remand Motion should be denied in its entirety.

Dated:    December 9, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Douglas F. Gansler (Bar Number: 425465)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

By: /s/ Matthew M. Karlan
Matthew M. Karlan*
(signed by Douglas F. Gansler with permission of
Matthew M. Karlan)
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Matthew.Karlan@cwt.com
Telephone: (212) 504-6000

*pro hac vice pending

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of December, 2025, a copy of the foregoing was

served on counsel of record electronically via CM/ECF, and remaining parties by first class mail.

**Counsel of Record Served via CM/ECF:**
Sam J. Alberts (sam.alberts@dentons.com)
**Dentons US LLP**
1900 K St NW
Washington, DC 20006

Wes P. Henderson (wph@hendersonlawllc.com)
Patrick Gardiner (patrick.hendersonlawllc.com)
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly (jconnolly@zuckerman.com)
William J. Murphy (wmurphy@zuckerman.com)
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice Belmont VerStandig (mac@mbvesq.com)
**The VerStandig Law Firm, LLC**
9812 Falls Road #114-160
Potomac, MD 20854
*Counsel for Defendant Swain Landing LaPlata JC, LLC*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (Bar Number: 425465)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog,
Individually and as Trustee of the JAREB
Irrevocable Trust Agreement dated
October 11, 2021; Darnestown Road, Inc.;
and Science Park Associates, LLC*